## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ENTERASYS NETWORKS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-11298-DPW |
| ) | |
| FOUNDRY NETWORKS, INC. and ) | |
| EXTREME NETWORKS, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

### EXTREME NETWORKS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO SEVER CLAIMS AGAINST IT FROM CLAIMS AGAINST FOUNDRY NETWORKS

This is a patent infringement case. Plaintiff Enterasys Networks, Inc. ("Enterasys") claims that it owns six patents and that products made by defendants Extreme Networks, Inc. ("Extreme") and Foundry Networks, Inc. ("Foundry") infringe those patents. Defendants Extreme and Foundry are independent companies that design and build their own products and sell them in competition with each other. Rather than sue Extreme and Foundry separately, Enterasys has improperly joined the two defendants in this one case. The plain language of Rule 20, which governs the joinder of parties, does not permit joinder in these circumstances. Enterasys does not seek any relief against Extreme and Foundry "in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences." FED. R. CIV. P. 20(a). Rather, Enterasys is attempting to squeeze two cases into one: combining independent claims against Foundry and Enterasys that are logically and factually distinct from one another.

I.      **JOINDER IS IMPERMISSIBLE WHEN A PLAINTIFF ALLEGES INDEPENDENT ACTS OF PATENT INFRINGEMENT AGAINST MULTIPLE DEFENDANTS**

Extreme and Foundry each design and sell their own computer network hardware and software products.  *See* Stitt Decl. ¶¶ 3–4.  Enterasys's skeletal Complaint alleges the following: (1) Enterasys owns six patents in this field; (2) Extreme has infringed these patents; and (3) Foundry has infringed these patents as well.

Foundry and Extreme are separate companies that compete against one another in the marketplace.  *See* Stitt Decl. ¶ 5.  Accordingly, Enterasys does not—and cannot—allege that Foundry and Extreme infringe the six patents in suit jointly, that one has induced the other to infringe or that one has contributed to the other's infringement.  There is no allegation of joint action.  There is not even a hint in the pleadings that Extreme's alleged infringement and Foundry's alleged infringement are in any way connected.    Thus, the Court must view Enterasys's allegations of infringement against Extreme as entirely distinct from its allegations of infringement against Foundry.

"[T]he court must drop a party who has been misjoined pursuant to Fed.R.Civ.P. 20."  *Nat'l Union Fire Ins. Co. v. Mass. Municip. Wholesale Elec. Co.*, 117 F.R.D. 321, 322 (D. Mass. 1987).  Rule 20 has a "threshold requirement" that a plaintiff's claims against multiple defendants be "in respect of or aris[e] out of the same transaction, occurrence, or series of transactions or occurrences."  *Abdullah v. Acands, Inc.*, 30 F.3d 264, 268 & n.5 (1st Cir. 1994).  Claims of infringement against independent companies do not meet this threshold requirement because they arise out of separate acts by separate actors.

Other courts faced with analogous attempts to join claims alleging independent acts of infringement against independent defendants have rejected them as improper under Rule 20.  In, *Androphy v. Smith & Nephew, Inc.,* 31 F. Supp. 2d 620, 623 (N.D. Ill. 1998), the court concluded

that, "[c]learly, the common transaction requirement has not been met as to the claims against Stryker and Howmedica," two accused infringers that "are separate companies that independently design, manufacture and sell different products in competition with each other." *Accord Philips Elecs. N. Am. Corp. v. Contec Corp.*, 220 F.R.D. 415, 417–18 (D. Del. 2004) ("Allegations of infringement against two unrelated parties based on different acts do not arise from the same transaction."); *Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122, 127–28 (S.D.N.Y. 2003) ("[T]he fact that two parties may manufacture or sell similar products, and that these sales or production may have infringed the identical patent owned by the plaintiffs is not sufficient to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a)."); *Multi-Tech Sys., Inc. v. Net2Phone, Inc.*, No. 00-346 ADM/RLE, 2000 U.S. Dist. LEXIS 22683, at *21–*25 (D. Minn. June 26, 2000) (citing cases);[1] *New Jersey Machine Inc. v. Alford Indus., Inc.*, 21 U.S.P.Q.2d 2033, 2034–35, 1991 U.S. Dist. LEXIS 20376 (D.N.J. Oct. 7, 1991)[2] ("Infringement of the same patent by different machines and parties does not constitute the same transaction or occurrence to justify joinder."), *aff'd*, 983 F.2d 1087 (Fed. Cir. 1992). *See also* 8 DONALD S. CHISUM, CHISUM ON PATENTS § 21.03[6][a], at 21-579 to 21-581 (2003 Cumul. Supp.) ("[A plaintiff] cannot join . . . independent infringing manufacturers.") ("The same transaction test will be met when the conduct of the infringers is interrelated or each infringer occupies a position in a chain of production, distribution, and use of the accused infringing product. Contrariwise, the test will not be met when the conduct of the accused infringers is not so interrelated and the only basis for joinder is that they are engaged in similar acts of infringement.").

---

[1] A copy of this decision is attached hereto as Exhibit 1.
[2] A copy of this decision is attached hereto as Exhibit 2.

Directly on point is *Lucent Technologies, Inc. v. Extreme Networks, Inc. and Foundry Networks, Inc.*, C.A. No. 03-508-JJF, slip op. (D. Del. Feb. 6, 2004).[3]  In *Lucent*, another company, sued the same defendants in this case, Extreme and Foundry for independent acts of patent infringement. In that case, Extreme was accused of infringing five patents and Foundry was accused of infringing four of the same five patents.   Foundry moved to sever on the grounds that joinder was improper.  The court allowed Foundry's motion, "conclud[ing] that Lucent has not alleged facts which make joinder . . .  appropriate," and ordered separate trials with the first named defendant trying its case first. *Id.* at 3.

Accordingly, the Court must sever Enterasys's claims against Extreme and Foundry. *Nat'l Union Fire Ins. Co.*, 117 F.R.D. at 322.

## II.   SEPARATE TRIALS ARE APPROPRIATE IN VIEW OF THE COMPLEXITY OF THE CASE AND THE SENSITIVE INFORMATION THAT WILL BE REVEALED AT TRIAL

Even if severance were not required as a result of Enterasys's failure to meet the requirements of Rule 20(a), the Court should exercise its discretion under Rules 20(b) and 42(b) to sever Enterasys's claims against Extreme from its claims against Foundry.   Rule 42(b) provides that "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim" so long as the Court preserves the parties' rights to a jury trial.  Similarly, Rule 20(b) provides that the Court "may order separate trials or make other orders to prevent delay or prejudice."  In view of the complexity of this case and the sensitive information that will be revealed at a trial, severance is appropriate.

---

[3] A copy of this decision is attached hereto as Exhibit 3.

In its Complaint, Enterasys fails to identify which of Extreme's and Foundry's products allegedly infringe which of the over 125 claims of the six patents-in-suit.  Within the past six years—the statute of limitations for patent infringement—Extreme has manufactured and sold over fifty products in the general field of the patents-in-suit, computer networking.  *See* Stitt Decl. ¶ 3.  Thus, as filed, Enterasys's claims against each defendant could theoretically encompass thousands of claims of infringement.  Although this number will undoubtedly be reduced significantly over the course of this case, the large potential number of claims against each defendant shows that combining Enterasys's claims against Extreme with Enterasys's claims against Foundry further complicates what are already two independently complex disputes between Enterasys and each of the defendants.  In the interests of simplifying discovery and ensuring that jurors will be able to give each defendant a fair trial, focusing their undivided attention on that defendant's unique products and distinct arguments, severance is appropriate.

Moreover, Extreme and Foundry are competitors in the marketplace for computer networking products.  Extreme expects that the evidence in this case will consist in large part of sensitive information that Extreme and Foundry each consider to be their respective trade secrets.  The Court should not permit Enterasys to unnecessarily put Extreme and Foundry in a situation where disclosures made as a result of this litigation will cause exposure of secret information developed after significant cost and investment by the defendants.  Although the parties may be able to successfully prevent disclosure of trade secrets during discovery, a joint trial would present an insurmountable obstacle to the parties' efforts to prevent improper disclosure, subjecting both Extreme and Foundry to significant harm.

In the *Lucent* case, after the court allowed Foundry's motion to sever, the parties were able to cooperate to combine discovery when appropriate and conduct separate discovery when

appropriate.  The parties consolidated some depositions, such as inventor depositions and third party invalidity depositions.  Discovery relating to Extreme's products was separated from discovery relating to Foundry's products.  The court held a single consolidated *Markman* hearing but ordered two separate trials, with the first named defendant trying its case first, followed by the second named defendant.  Extreme suggests that the Court adopt a similar schedule in this case to both protect the parties' trade secrets and to streamline the process as much as possible.

Accordingly, even if Enterasys's joinder of Extreme and Foundry were proper, the Court should exercise its discretion to order separate trials and, to the extent necessary, segregate discovery so as to prevent disclosure of confidential information.

.                                          Respectfully Submitted,

                                           EXTREME NETWORKS, INC.

                                           By its attorneys,


                                           /s/ Benjamin A. Goldberger
                                           Peter L. Resnik (BBO# 417180)
                                           Benjamin A. Goldberger (BBO# 654357)
                                           McDermott Will & Emery LLP
                                           28 State Street
                                           Boston, Massachusetts  02109-1775
                                           (617) 535-4000

*Of Counsel*

Terrence P. McMahon
Vera M. Elson
Behrooz Shariati
McDermott Will & Emery LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
(650) 813-5000

Dated: August 24, 2005

BST99 1468772-4.065994.0016

6

Multi-Tech Systems, Inc., Plaintiff v. Net2Phone, Inc., a Delaware corporation, Vocaltec Communications, Inc., a Delaware corporation, Vocaltec Communications, Ltd., an Israeli corporation, Dialpad.com, Inc., a California corporation, MediaRing.com, Inc., a California corporation, Phonefree.com, Inc., a Delaware corporation, Zeroplus.com, Inc., a Delaware corporation, E-Net, Inc., a Delaware corporation, Really Easy Internet, Inc., a Texas corporation, Defendants

Civil No. 00-346 ADM/RLE

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA

2000 U.S. Dist. LEXIS 22683

June 26, 2000, Decided

June 26, 2000, Filed

**SUBSEQUENT HISTORY:** Motion granted by Multi-Tech Sys. v. Vocaltec Communs. Ltd., 2000 U.S. Dist. LEXIS 14363 (D. Minn., Aug. 8, 2000)

**DISPOSITION-1:** Defendants' Motions to Sever were granted and all motions to dismiss were denied, Defendant MediaRing.com, Inc.'s motion to dismiss for lack of personal jurisdiction, or in the alternative to transfer was denied and Defendant Dialpad.com, Inc.'s motion to transfer was denied.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff patent owner sued defendants, including a California company, alleging patent infringement under 35 U.S.C.S. § 271(a). The California company moved to dismiss for lack of personal jurisdiction. Several defendants moved to dismiss, sever, and/or transfer.

**OVERVIEW:** The patents at issue related to computer-based communications systems. The California company allowed users to download software for making PC-to-PC and PC-to-Phone calls. The California company's representatives traveled to Minnesota, met with the patent owner, and proposed two business plans. The court determined that personal jurisdiction existed over the California company under Minn. Stat. § 543.19 because, inter alia, (1) the nature and quality of the California company's Internet commercial activity, which involved user credit card payments and computer file transmissions, indicated sufficient minimum contacts with Minnesota, (2) the California company's representatives met with the patent owner in Minnesota, and (3) the California company's forum-related conduct of making its interactive technology available for use by Minnesota residents formed the basis of the alleged patent infringement. The court severed the claims against defendants pursuant to Fed. R. Civ. P. 20(a) and 21(a) because defendants were unrelated, competed in the same marketplace, and provided independent products

and services. Under 28 U.S.C.S. § 1404(a), denying transfer conserved judicial resources.

**OUTCOME:** The court denied the California company's motion to dismiss for lack of personal jurisdiction. The court denied defendants' motions to dismiss or transfer. The court granted defendants' motions to sever.

**CORE TERMS:** personal jurisdiction, patent, com, website, user, technology, residents, occurrence, infringing, spectrum, convenience, infringement, software, interactive, sever, commercial activity, unrelated, motion to dismiss, telephone, assigned, exercise of personal jurisdiction, asserting, infringe, passive, severed, unfair, weigh, patent infringement, right to relief, machine

## LexisNexis(TM) Headnotes

***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction***

***Evidence > Procedural Considerations > Burdens of Proof***

[HN1]In response to a defendant's argument that the court may not properly exercise personal jurisdiction over the defendant, the plaintiff need only submit evidence that, when viewed in the light most favorable to the plaintiff, establishes a prima facie case of personal jurisdiction.

***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction***

[HN2]Specific jurisdiction is conferred when a controversy is related to or arises out of a defendant's contacts with the forum, and there is a relationship among the defendant, the forum, and the litigation.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*

[HN3]Generally, two independent inquiries inform an assessment of personal jurisdiction: (1) whether the applicable state long-arm statute, Minn. Stat. § 543.19, is satisfied, and (2) whether the court's exercise of jurisdiction is consistent with the requisites of due process. The United States Court of Appeals for the Eighth Circuit has recognized, however, that Minnesota has interpreted its long-arm statute to be coextensive with the limits of due process. Accordingly, the present analysis collapses the two inquiries, focusing solely on whether exercising personal jurisdiction over the defendant comports with federal due process.

*Patent Law > Jurisdiction & Review > Personal Jurisdiction & Venue > General Overview*

[HN4]The United States Court of Appeals for the Federal Circuit has exclusive jurisdiction over appeals from district courts whose jurisdiction is based on a claim arising under the patent laws of the United States. Federal Circuit law, rather than regional circuit law, applies when assessing the due process component of personal jurisdiction in the case where the claims arise under patent law. The Federal Circuit considers three factors in determining whether specific personal jurisdiction exists: (1) whether the defendant purposefully directed its activities at residents of the forum, (2) whether the claim arises out of or relates to those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*

*Cyberlaw > Jurisdiction > Constitutional Requirements*

[HN5]The United States Court of Appeals for the Federal Circuit has not yet addressed personal jurisdiction in the Internet context. The United States Court of Appeals for the District of Columbia Circuit, however, has recently articulated the danger of basing personal jurisdiction on the mere accessibility of a defendant's website: This theory of accessibility simply cannot hold water. Indeed, under this view, personal jurisdiction in Internet-related cases would almost always be found in any forum in the country. The District of Columbia Circuit does not believe that the advent of advanced technology, say, as with the Internet, should vitiate long-held and inviolate principles of federal court jurisdiction. The Due Process Clause exists, in part, to give a degree of predictability to the legal system that allows potential

defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit. In the context of the Internet, the expansive theory of personal jurisdiction would shred these constitutional assurances out of practical existence. Sister circuits have not accepted such an approach, and neither shall the District of Columbia Circuit.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*

*Cyberlaw > Jurisdiction > Constitutional Requirements*

[HN6]In determining whether personal jurisdiction may be constitutionally exercised over a defendant, the court must assess the nature and quality of commercial activity that an entity conducts over the Internet. In other words, the nature and quality of the commercial activity conducted on the Internet determine whether defendants purposely availed themselves of the benefits and protections of the forum state's law.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*

*Cyberlaw > Jurisdiction > Constitutional Requirements*

[HN7]In determining the nature and quality of Internet commercial activity, courts have found it helpful to assess the particular type of Internet use involved. Internet use falls into a spectrum of three areas. At one end of the spectrum, a defendant clearly does business over the Internet by entering into contracts with residents of other states. Activities conducted at this end of the spectrum generally support exercise of personal jurisdiction. At the other end of the spectrum, a defendant merely establishes a passive website that does nothing more than advertise on the Internet. Activities conducted at the "passive" end of the spectrum generally do not support exercise of personal jurisdiction. In the middle of the spectrum, a defendant's website allows a user to exchange information with a host computer. Activities conducted "mid-spectrum" are assessed to determine the level of interactivity and commercial nature of the exchange of information that occurs on the web page.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*

*Cyberlaw > Jurisdiction > Constitutional Requirements*

[HN8]If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet computer network, personal jurisdiction over defendant is proper.

*Patent Law > Infringement Actions > Infringing Acts > General Overview*

[HN9]Patent infringement occurs when someone without authority makes, uses, offers to sell or sells any patented invention. 35 U.S.C.S. § 271(a).

*Patent Law > Jurisdiction & Review > Personal Jurisdiction & Venue > General Overview*

[HN10]The relationship between infringing interactive technology and the "wrong" alleged is aptly addressed by one district court: The case is unusual because the use of interactive technology itself allegedly infringes the plaintiff's patent. Specific personal jurisdiction depends on the nature and quality of the defendant's contacts with the forum, so obviously a case in which the contact itself is the wrong is a stronger case for jurisdiction than one in which the contact merely relates to the wrong.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits*

[HN11]Constitutional unreasonableness is assessed under a multi-factored balancing test that weighs any burdens on the defendant against various countervailing considerations, including the plaintiffs interest in the convenient forum and the forum state's interest in resolving controversies flowing from in-state events. Put succinctly, such defeats of otherwise constitutional personal jurisdiction are limited to the rare situation in which the plaintiffs interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum.

*Civil Procedure > Joinder of Claims & Parties > Permissive Joinder of Coparties*

[HN12]Fed. R. Civ. P. 20(a) addresses the permissive joinder of defendants.

*Civil Procedure > Joinder of Claims & Parties > Permissive Joinder of Coparties*

[HN13]See Fed. R. Civ. P. 20(a).

*Civil Procedure > Joinder of Claims & Parties > Permissive Joinder of Coparties*

[HN14]Fed. R. Civ. P. 20 requires an allegation of joint action. Joinder is inappropriate, however, when the operative facts of each transaction are distinct and unrelated to any other. Consequently, where patent infringement claims are brought against multiple, unrelated defendants, courts have held joinder to be inappropriate pursuant to Rule 20.

*Civil Procedure > Joinder of Claims & Parties > Permissive Joinder of Coparties*

[HN15]In the patent infringement context, courts sever defendants that are separate companies that independently design, manufacture and sell different products in competition with each other. Competition between defendants is often sufficient to undermine the "common transaction or occurrence" component of Fed. R. Civ. P. 20.

*Civil Procedure > Joinder of Claims & Parties > Permissive Joinder of Coparties*

[HN16]Infringement of the same patent by different machines and parties does not constitute the same transaction or occurrence where: First, the parties are unrelated, and in fact, compete in the same marketplace. Additionally, marketing and sales efforts concerning the allegedly infringing machines are not common between the parties.

*Civil Procedure > Venue > Change of Venue in Federal Courts*

[HN17]See 28 U.S.C.S. § 1404(a).

*Civil Procedure > Venue > Change of Venue in Federal Courts*

[HN18]The court must consider: (1) the convenience of the parties, (2) the convenience of nonparty witnesses, and (3) the interests of justice. While the plaintiffs choice of forum is an important factor, it may be overcome by a showing that the balance of the factors favors transfer.

*Civil Procedure > Venue > Change of Venue in Federal Courts*

[HN19]In the context of a motion to transfer, though a court may consider many factors, the interests of justice is afforded more weight.

**COUNSEL:** **[*1]** For Multi-Tech Systems, Inc, a Minnesota Corporation, Plaintiff: Darren Brayer Schwiebert, Fredrikson & Byron, Mpls, MN; Kevin D Conneely, Leonard Street and Deinard - Mpls, Mpls, MN; Misti Nelc, Robins Kaplan Miller & Ciresi LLP - Mpls, Mpls, MN; Ronald J Schutz, Robins Kaplan Miller & Ciresi LLP - Mpls, Mpls, MN; Jodene Jensen, St Paul, MN

For NET2PHONE, INC., a Delaware corporation, Defendant: Arthur I Neustadt, Oblon Spivak McClelland Maier & Neustadt, Alexandria, VA; Dean

R Karau, Fredrikson & Byron, PA, Mpls, MN; Kenneth T Cuccinelli, II, Oblon Spivak McClelland Maier & Neustadt, Alexandria, VA; Lora Esch Mitchell, Fredrikson & Byron, PA; Michael Raymond Casey, Oblon Spivak McClelland Maier & Neustadt, Alexandria, VA; Steven C Tabackman, Oblon Spivak McClelland Maier & Neustadt, Alexandria, VA

For DIALPAD.COM, INC., a California corporation, Defendant: Bryan K Anderson, Skjerven Morrill, San Jose, CA; Clarissa W Cook, Law Firm Unknown; James E Parsons, Skjerven Morrill, San Jose, CA; Jay William Schlosser, Briggs & Morgan - Mpls, Mpls, MN; Jeffrey John Keyes, Briggs & Morgan, Mpls, MN; Justin T Beck, Skjerven Morrill, San Jose, CA; Reginald D Steer, Skjerven Morrill, **[*2]** San Jose, CA; Robin Caneff Gipson, Briggs & Morgan - Mpls, Mpls, MN

For STUDIO VISIA, INC., a California corporation, Defendant: Basil Plastiras; Jeff H Eckland, Eckland & Blando, Mpls, MN; William L Roberts, Faegre & Benson - Mpls, Mpls, MN

For MEDIARING.COM, INC., a California corporation, Defendant: Brent K Yamashita, Fenwick & West, Palo Alto, CA; Charlene M Morrow, Fenwick & West, Palo Alto, CA; Darryl M Woo, Fenwick & West, Palo Alto, CA; Deepti Panchawagh-Jain, Fenwick & West, Palo Alto, CA; Greg Sueoka, Fenwick & West, Palo Alto, CA; Jill Hutchinson Bollettieri, General Mills Inc Legal Dept, Mpls, MN; Stephen J Davidson, Leonard Street and Deinard - Mpls, Mpls, MN

For PHONEFREE.COM, INC., a Delaware corporation, Defendant: Carmela DeGruttola, Bickel & Brewer, New York, NY; Daniel L Brown, Bickel & Brewer, New York, NY; Mark Bradley Peterson, Moss & Barnett, Mpls, MN; Porter F Fleming, Law Firm Unknown; Scott J Bornstein, Bickel & Brewer, New York, NY; William A Brewer, III, Bickel & Brewer, New York, NY; Hugh V Plunkett, Lockridge Grindal Nauen, Mpls, MN; Robert K Shelquist, Lockridge Grindal Nauen PLLP, Mpls, MN

For ZEROPLUS.COM, INC., a Delaware corporation, **[*3]** Defendant: Bonnie Dunninger Nathan, Williams & Connolly, Washington, DC; Bruce R Genderson, Williams & Connolly, Washington, DC; David J F Gross, Faegre & Benson - Mpls, Mpls, MN; David C Kiernan, Williams & Connolly, Washington, DC; Eppa Hite, Carr & Ferrell, Palo Alto, CA; Jana D Jobes, Williams & Connolly, Washington, DC; Jerry W Snider, Faegre & Benson - Mpls, Mpls, MN; John S Ferrell, Carr & Ferrell, Palo Alto, CA; Julie Knox

Chosy, Faegre & Benson - Mpls, Mpls, MN; Stuart C Clark, Carr & Ferrell, Palo Alto, CA

For E-NET, INC., a Delaware corporation, Defendant: Bonnie Dunninger Nathan, Williams & Connolly, Washington, DC; Bruce R Genderson, Williams & Connolly, Washington, DC; David J F Gross, Faegre & Benson - Mpls, Mpls, MN; David C Kiernan, Williams & Connolly, Washington, DC; Eppa Hite, Carr & Ferrell, Palo Alto, CA; Jana D Jobes, Williams & Connolly, Washington, DC; Jerry W Snider, Faegre & Benson - Mpls, Mpls, MN; John S Ferrell, Carr & Ferrell, Palo Alto, CA; Julie Knox Cbosy, Law Firm unknow; Stuart C Clark, Carr & Ferrell, Palo Alto, CA

For REALLY EASY INTERNET INC, a Texas corporation, Defendant: Ernest W Grumbles, III, Merchant & Gould - Mpls, Mpls, MN; Jacob **[*4]** M Holdreith, Robins Kaplan Miller & Ciresi LLP - Mpls, Mpls, MN; Patrick D Keating, Haynes & Boone, Dallas, TX; Phillip B Philbin, Haynes & Boone, Dallas, TX

For VOCALTEC COMMUNICATIONS INC., a Delaware corporation, Defendant: Allan J Sternstein, Brinks Hofer Gilson & Lione, Chicago, IL; David S Miller, Bowman and Brooke LLP, Mpls, MN; Kent E Genin, Brinks Hofer Gilson & Lione, Chicago, IL; Meredith Martin Addy, Brinks Hofer Gilson & Lione, Chicago, IL; Richard G Morgan, Bowman & Brooke LLP - Mpls, Mpls, MN; William H Frankel, Brinks Hofer Gilson & Lione, Chicago, IL

For VOCALTEC COMMUNICATIONS, LTD., an Israeli corporation, Defendant: Allan J Sternstein; David S Miller, Bowman and Brooke LLP, Mpls, MN; Kent E Genin, Brinks Hofer Gilson & Lione, Chicago, IL; Meredith Martin Addy, Brinks Hofer Gilson & Lione, Chicago, IL; Richard G Morgan, Bowman & Brooke LLP - Mpls, Mpls, MN; William H Frankel, Brinks Hofer Gilson & Lione, Chicago, IL

For PHONEFREE.COM, INC., Counter Claimant: Mark Bradley Peterson, Moss & Barnett, Mpls, MN; Scott J Bornstein, Bickel & Brewer, New York, NY; William A Brewer, III, Bickel & Brewer, New York, NY; Hugh V Plunkett, Lockridge Grindal Nauen, **[*5]** Mpls, MN; Carmela DeGruttola, Bickel & Brewer, New York, NY; Daniel L Brown, Bickel & Brewer, New York, NY

For Multi-Tech Systems, Inc, Counter Defendant: Darren Brayer Schwiebert, Fredrikson & Byron, Mpls, MN; Kevin D Conneely, Leonard Street and Deinard - Mpls, Mpls, MN; Misti Nelc, Robins Kaplan Miller & Ciresi LLP - Mpls, Mpls, MN; Ronald J Schutz,

Robins Kaplan Miller & Ciresi LLP - Mpls, Mpls, MN; Jodene Jensen, St Paul, MN

For ZEROPLUS.COM, INC., Counter Claimant: Jerry W Snider, Faegre & Benson - Mpls, Mpls, MN; Julie Knox Chosy, Faegre & Benson - Mpls, Mpls, MN

For E-NET, INC., Counter Claimant: Jerry W Snider, Faegre & Benson - Mpls, Mpls, MN; Julie Knox Chosy, Faegre & Benson - Mpls, Mpls, MN

For Multi-Tech Systems, Inc, Counter Defendant: Darren Brayer Schwiebert, Fredrikson & Byron, Mpls, MN; Jodene Jensen, St Paul, MN; Kevin D Conneely, Leonard Street and Deinard - Mpls, Mpls, MN; Misti Nelc, Robins Kaplan Miller & Ciresi LLP - Mpls, Mpls, MN; Ronald J Schutz, Robins Kaplan Miller & Ciresi LLP - Mpls, Mpls, MN

For DIALPAD.COM, INC., Counter Claimant: Bryan K Anderson, Skjerven Morrill, San Jose, CA; Jeffrey John Keyes, Briggs & Morgan, Mpls, MN; **[*6]** Reginald D Steer, Skjerven Morrill, Robin Caneff Gipson, Briggs & Morgan - Mpls, Mpls, MN; Robin Caneff Gipson

For Multi-Tech Systems, Inc, Counter Defendant: Darren Brayer Schwiebert, Fredrikson & Byron, Mpls, MN; Jodene Jensen, St Paul, MN; Kevin D Conneely, Leonard Street and Deinard - Mpls, Mpls, MN; Misti Nelc, Robins Kaplan Miller & Ciresi LLP - Mpls, Mpls, MN; Ronald J Schutz, Robins Kaplan Miller & Ciresi LLP - Mpls, Mpls, MN

For REALLY EASY INTERNET INC, Counter Claimant: Ernest W Grumbles, III, Merchant & Gould - Mpls, Mpls, MN; Jacob M Holdreith, Robins Kaplan Miller & Ciresi LLP - Mpls, Mpls, MN; Patrick D Keating, Haynes & Boone, Dallas, TX; Phillip B Philbin, Haynes & Boone, Dallas, TX

For Multi-Tech Systems, Inc, Counter Defendant: Darren Brayer Schwiebert, Fredrikson & Byron, Mpls, MN; Jodene Jensen, St Paul, MN; Kevin D Conneely, Leonard Street and Deinard - Mpls, Mpls, MN; Misti Nelc, Robins Kaplan Miller & Ciresi LLP - Mpls, Mpls, MN; Ronald J Schutz, Robins Kaplan Miller & Ciresi LLP - Mpls, Mpls, MN

**JUDGES:** ANN D. MONTGOMERY, UNITED STATES DISTRICT JUDGE

**OPINIONBY:** ANN D. MONTGOMERY

**OPINION: MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

Plaintiff **[*7]** asserts patent infringement claims against Defendants. On June 15, 2000, the undersigned United States District Judge heard: (1) Zeroplus.com, Inc.'s motion to sever, or in the alternative, for a protective order [Doc. No. 57]; (2) Defendant MediaRing.com, Inc.'s motion to dismiss for lack of personal jurisdiction, or to sever and transfer [Doc. No. 61]; (3) Defendant Dialpad.com, Inc.'s motion to dismiss, or to sever and transfer [Doc. No. 73]; and(4) Defendant Vocaltec Communications, Inc.'s motion to dismiss or to sever [Doc. No. 79]. For the reasons set forth below, Defendants' motions are granted in part and denied in part.

**II. BACKGROUND**

Plaintiff Multi-Tech Systems, Inc. ("Plaintiff') alleges each Defendant in the above-titled action infringed one or more claims of four patents owned by Plaintiff. These patents relate to computer-based communications systems, including the use of computers to transfer data, voice and/or video in packet form over a communications line. See Compl. at 1-2. While the patents all relate to computer-based communications, the products, systems, and methods utilized by each Defendant differ. Plaintiff does not allege that **[*8]** Defendants have contracted or have otherwise been associated with each other in the design or development of the respective technologies.

**III. DISCUSSION**

**A. Personal Jurisdiction: Defendant MediaRing**

Plaintiff asserts that Defendants, including MediaRing.com, Inc. ("MediaRing"), have "directly, indirectly, contributorily, and/or by inducement" infringed one or more claims of Plaintiffs patents. See Compl. PP 23, 29, 35, 41. MediaRing is a California corporation created in 1998. It has no officers, employees, or agents, including agents for service of process, in Minnesota; it does not maintain any property or any bank accounts in Minnesota.

MediaRing is in the data communication technology business. Plaintiff alleges that MediaRing "makes, uses, offers for sale, or sells a product that uses simultaneous voice and data in engaging in telephone calls over telephone lines using Internet Protocol ("IP")." Compl. P 19. Users can make PC-to-PC calls by downloading MediaRing Talk TM software from MediaRing's website. MediaRing claims not to derive any revenue from PC-to-PC calls. See Ng Decl. at 6-7.

PC-to-Phone calls are also made by downloading MediaRing Talk TM, **[*9]** but only in conjunction with registering as a ValueFone TM user. MediaRing alleges (1) ValueFone TM is a link to a website

provided by another company, DeltaThree, located in Israel, (2) DeltaThree accepts prepayments from the PC user for the voice communication, and (3) DeltaThree reimburses MediaRing for expenses, typically the amount charged by the user's telephone company. Less than 1% of users incurring a charge for ValueFone TM services have Minnesota telephone numbers. MediaRing maintains that both its PC-to-PC and PC-to-Phone programs are provided for free or at cost to attract consumers to view MediaRing-posted advertisements, MediaRing's primary revenue source.

On June 2, 1999, MediaRing representatives traveled to Minnesota, met with Plaintiff, and proposed two business plans in which Plaintiff would bundle MediaRing's allegedly infringing software with Plaintiffs modems. See Sharma Decl. PP 6-10.

MediaRing argues that this Court may not properly exercise personal jurisdiction over MediaRing. [HN1]In response, Plaintiff need only submit evidence that, when viewed in the light most favorable to Plaintiff, establishes a prima facie case of personal jurisdiction. See **[*10]** Aero Sys. Eng'g, Inc. v. Opron, Inc., 21 F. Supp.2d 990, 995 (D. Minn. 1998). Plaintiff asserts that this Court has specific, as opposed to general, jurisdiction over MediaRing. [HN2]Specific jurisdiction is conferred "when a controversy is related to or arises out of a defendant's contacts with the forum, and there is a relationship among the defendant, the forum, and the litigation." Minnesota Mining & Mfg. Co. v. Nippon Carbide Indus. Co., Inc., 63 F.3d 694, 697 (8th Cir. 1995).

[HN3]Generally, two independent inquiries inform an assessment of personal jurisdiction: (1) whether the applicable state long-arm statute, Minn. Stat. § 543.19, is satisfied, and (2) whether this Court's exercise of jurisdiction is consistent with the requisites of due process. See 3D Sys., Inc. v. Aarotech Labs., Inc., 160 F.3d 1373, 1376-77 (Fed. Cir. 1998). The Eighth Circuit has recognized, however, that Minnesota has interpreted its long-arm statute to be coextensive with the limits of due process. See Minnesota Mining, 63 F.3d at 697. Accordingly, the present analysis collapses the two inquiries, focusing solely on **[*11]** whether exercising personal jurisdiction over MediaRing comports with federal due process. See id; see also 3D Systems, 160 F.3d at 1376-77.

[HN4]The Federal Circuit has exclusive jurisdiction over appeals from district courts whose jurisdiction is based on a claim arising under the patent laws of the United States. 3D Systems, 160 F.3d at 1377. "Federal Circuit law, rather than regional circuit law, applies" when assessing the due process component uf personal jurisdiction in the instant case because the claims arise under patent law. Id. The Federal Circuit considers

three factors in determining whether specific personal jurisdiction exists:

> (1) whether the defendant purposefully directed its activities at residents of the forum, (2) whether the claim arises out of or relates to those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair.

Id. at 1378. Plaintiff argues personal jurisdiction should be exercised because "(1) MediaRing has offered to sell, sold, and encouraged the use of its infringing products to Minnesota users through its website; (2) over 12,000 users that registered **[*12]** on MediaRing's web site are Minnesota residents;" (3) MediaRing generated approximately $ 1,100 in revenue from 126 Minnesotans who made PC-to-Phone calls; "(4) MediaRing traveled to Minnesota, met with Multi-Tech, and proposed two business deals in which Multi-Tech would bundle MediaRing's infringing software with Multi-Tech modems; and (5) MediaRing bundles its infringing software with 3Com modems, which are offered for sale and are sold to Minnesota residents in Minnesota." PL's Mem. Opp. to MediaRing Mot. at 2.

[HN5]The Federal Circuit has not yet addressed personal jurisdiction in the Internet context. n1 The District of Columbia's Court of Appeals, however, recently articulated the danger of basing personal jurisdiction on the mere accessibility of a defendant's website:

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - - -

n1 Circuits addressing the issue include GTE New Media Servs. Inc. v. BellSouth Corp., 339 U.S. App. D.C. 332, 199 F.3d 1343, (D.C. Cir. 2000); Mink v. AAAA Development LLC, 190 F.3d 333 (5th Cir. 1999); Cybersell, Inc. v. Cybersell. Inc., 130 F.3d 414 (9th Cir. 1997); Bensusan Restaurant Corp. v. King, 937 F.Supp. 295 (S.D.N.Y. 1996), aff'd, 126 F.3d 25 (2nd Cir. 1997); and CompuServe. Inc. v. Patterson, 89 F.3d 1257 (6th Cir. 1996).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

**[*13]**
This theory [of accessibility] simply cannot hold water. Indeed, under this view, personal jurisdiction in Internet-related cases would almost always be found in any forum in the country. We do not believe that the

advent of advanced technology, say, as with the Internet, should vitiate long-held and inviolate principles of federal court jurisdiction. The Due Process Clause exists, in part, to give "a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *In the context of the Internet, [the defendant] expansive theory of personal jurisdiction would shred these constitutional assurances out of practical existence. Our sister circuits have not accepted such an approach, and neither shall we.* [Emphasis added].

GTE New Media Servs. Inc. v. BellSouth Corp., 339 U.S. App. D.C. 332, 199 F.3d 1343, 1350 (B.C. Cir. 2000) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S.Ct. 559 (1980)). Plaintiff may not simply rely on the fact that "over 12,000 users that registered on MediaRing's website are **[\*14]** Minnesota residents." [HN6]In determining whether personal jurisdiction may be constitutionally exercised over MediaRing, the Court must assess the "nature and quality of commercial activity that an entity conducts over the Internet." Mink v. AAAA Development LLC, 190 F.3d 333, 336 (51h Cir. 1999) (quoting Zippo Mfg. Co. v. Zippo Dot Com. Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). In other words, the nature and quality of the commercial activity conducted on the Internet determine whether defendants purposely availed themselves of the benefits and protections of Minnesota law.

[HN7]In determining the nature and quality of Internet commercial activity, courts have found it helpful to assess the particular type of Internet use involved. Internet use falls into "a spectrum of three areas." Mink, 190 F.3d at 336. At one end of the spectrum, "a defendant clearly does business over the Internet by entering into contracts with residents of other states ...." Id. Activities conducted at this end of the spectrum generally support exercise of personal jurisdiction. See id. (citing CompuServe, Inc. v. Patterson, 89 F.3d 1257 (6th Cir. 1996)). **[\*15]**

At the other end of the spectrum, a defendant "merely establishes a passive website that does nothing more than advertise on the Internet." Id. Activities conducted at the "passive" end of the spectrum generally do not support exercise of personal jurisdiction. Id. (citing Bensusan Restaurant Corp. v. King, 937 F. Supp. 295 (S.D.N.Y. 1996), *aff'd,* 126 F.3d 25 (2nd Cir. 1997)).

In the middle of the spectrum, a defendant's website "allows a user to exchange information with a host computer." Id. Activities conducted "mid-spectrum"

are assessed to determine "the level of interactivity and commercial nature of the exchange of information that occurs" on the web page. Id.

Assessed in the light most favorable to Plaintiff, the contact between Plaintiff and MediaRing appears to fall at the "Internet business" end of the spectrum. In the seminal case of Zippo, the court reasoned that [HN8]"if the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet computer network, personal jurisdiction over defendant is proper." Zippo, 952 F. Supp. at 1124. **[\*16]** The relationship between the ValueFone TM web link and MediaRing is unclear at this juncture. Nonetheless, users must pay for PC-to-Phone calls with a credit card, essentially entering into contracts with MediaRing. Both the free and paid transactions emanating from MediaRing's website require the transmission of computer files over the Internet.

By providing PC-to-PC and PC-to-Phone programs for free or at cost to attract consumers to posted advertisements on its website, MediaRing recognizes that these programs are vital to its marketing strategy and revenue generation. The nature and quality of MediaRing's Internet commercial activity indicate sufficient minimum contacts with Minnesota. Sufficient minimum contacts are also established "mid-spectrum" given the substantial level of interactivity and the commercial nature of the exchange of information that occurs on the website.

Additionally, MediaRing representatives telephoned, and later met with. Plaintiff in Minnesota to discuss two business proposals allegedly relating to the patent technology at issue. See Sharma, Decl. PP 6-10; Harleman Decl. PP 7-9, 11-13. As follow-up to the meetings, MediaRing sent several e-mails **[\*17]** to Plaintiff. See Harleman Decl. PP 15-18, Ex. C, D, E. These actions by MediaRing, coupled with the commercial nature of its website, were purposefully directed at Minnesota, satisfying the requirements of the first factor of the personal jurisdiction analysis.

The second factor to be considered is whether the cause of action arises out of or relates to those activities. [HN9]Patent infringement occurs when someone "without authority makes, uses, offers to sell or sells any patented invention." 35 U.S.C. § 271(a) (1994). For the purposes of the present motion only, the Court assumes it is the use of the interactive technology itself that allegedly infringes Plaintiffs patents. [HN10]The relationship between infringing interactive technology and the "wrong" alleged is aptly addressed by one district court:

This case is unusual because the use of interactive technology itself allegedly infringes the plaintiffs patent. Specific personal jurisdiction depends on the nature and quality of the defendant's contacts with the forum, so obviously a case in which the contact itself is the wrong is a stronger case for jurisdiction than one in which the contact merely [*18] relates to the wrong.

CoolSavings.com., Inc. v. IQ.Commerce Corp., 53 F. Supp.2d 1000, 1003 n.3 (N.D. Ill. 1999). MediaRing's forum-related conduct of making its interactive technology available for use by Minnesota residents forms the basis of the alleged infringement. Because contact between the user and MediaRing's software is the "wrong," its presents an enhanced case for asserting jurisdiction. Similarly, in general terms, MediaRing's offer to sell its allegedly infringing software to Plaintiff as part of MediaRing's business proposals is sufficient to meet the second factor. See 3D Systems, 160 F.3d at 1378; see also CoolSavings, 53 F. Supp.2d at 1003. Plaintiffs claims of infringement arise out of consumers' use of the interactive technology itself and business plans incorporating the accused technology.

The third factor of the analysis places the burden on MediaRing to "prove that jurisdiction would be constitutionally unreasonable." 3D Systems, 160 F.3d at 1380. [HN11]Constitutional unreasonableness is assessed under:

> a multi-factored balancing test that weighs any burdens on the defendant against [*19] various countervailing considerations, including the plaintiffs interest in the convenient forum and the forum state's interest in resolving controversies flowing from in-state events... Put succinctly, "such defeats of otherwise constitutional personal jurisdiction 'are limited to the *rare situation* in which the plaintiffs interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum.'"

Viam Corp., 84 F.3d 424 at 429 (quoting Akro Corp. v. Luker, 45 F.3d 1541, 1549 (Fed. Cir. 1995) (internal citations omitted) (emphasis added). MediaRing has not met its high burden of proving that the interests of Plaintiff and Minnesota in adjudicating the dispute in this forum are so attenuated as to be inherently unfair.

Instead, MediaRing argues against (1) establishing "nationwide jurisdiction" through the Internet, (2) basing personal jurisdiction on its passive advertising, (3) crippling MediaRing with a substantial financial burden, and (4) maintaining this action in Minnesota, a state without "a particular interest [*20] in this suit [that is] based upon federal patent law." MediaRing's Mem. Supp. Mot. Dismiss at 14.

Contrary to MediaRing's first two points, MediaRing's website is not the sole basis for this Court's exercise of personal jurisdiction; MediaRing's representatives entered Minnesota and discussed business proposals incorporating the allegedly infringing technology. As noted by the court in CoolSavings:

> it may seem unfair to subject [defendant] to personal jurisdiction almost anywhere in the country, but to us it seems even more unfair to allow [defendant] to introduce its program to the entire country while remaining subject to personal jurisdiction only in its home state and thus requiring patentees from all over the country to go to [defendant's state] in order to litigate their infringement claims.

53 F. Supp.2d at 1003. Moreover, the David and Goliath analogy implicitly drawn by MediaRing is insufficient to show constitutional unreasonableness. Finally, Minnesota has a legitimate interest in protecting the patents of its residents.

Plaintiff has carried its burden in presenting a prima facie case sufficient to satisfy the first two components [*21] of the personal jurisdiction analysis. MediaRing has not met its heavy burden in rebutting this jurisdiction by establishing the third analytical component. Asserting specific personal jurisdiction under the present facts comports with federal due process.

**B. Severance**

[HN12]Fed. R. Civ. P. 20(a) addresses the permissive joinder of defendants and provides that:

[HN13]all persons ... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or *arising out of the same transactions, occurrences, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.*

(Emphasis added). In short, Plaintiff must show (1) its right to relief arises out of the same transaction or

occurrence and (2) a common question of law or fact common to all defendants. "The purpose of the rule is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." Mosley v. General Motors Corp., 497 F.2d 1330, 1332 (8th Cir. 1974) [*22] citing 7 C. Wright, Federal Practice & Procedure, § 1652 at 265 (1972).

[HN14]Rule 20 requires "an allegation of joint action." Movie Systems, Inc. v. Abel, et al., 99 F.R.D. 129, 130 (D. Minn. 1983). Joinder is inappropriate, however, when "the operative facts of each transaction are distinct and unrelated to any other ...." Id, Consequently, where patent infringement claims are brought against multiple, unrelated defendants, courts have held joinder to be inappropriate pursuant to Rule 20. See, e.g., Androphy v. Smith & Nephew, Inc., 31 F. Supp.2d 620, 623 (N.D. 111. 1998) citing Magnavox Co. v. APF Electronics, Inc., 496 F. Supp. 29 (N.D. 111. 1980) and New Jersey Mach., Inc. v. Alford Indus., Inc., 21 U.S.P.Q.2d 2033, (D.N.J. 1991).

[HN15]In the patent infringement context, courts sever defendants that are "separate companies that independently design, manufacture and sell different products in competition with each other." Androphy, 31 F. Supp.2d at 623. Competition between defendants is often sufficient to undermine the "common transaction or occurrence" component of Rule 20. For example, the court in Magnavox, [*23] reasoned:

> Plaintiffs argue that the similarity of products sold... is sufficient to satisfy the same transaction or occurrence test of Rule 20(a).
>
> The complaint, however, is devoid of allegations concerning any connection between the television games ..., except that they are all alleged to infringe plaintiffs' patents. *There is no indication on this record that the development, marketing or sales effort involving the different products are related in any way.* Therefore, plaintiffs are not asserting "any right to relief . . . arising out of the same transaction, occurrences or series of transactions or occurrences" against all defendants.

Magnavox, 496 F. Supp. at 34 (emphasis added). Similarly, the district court in New Jersey Machine held that [HN16]"infringement of the same patent by different machines and parties does not constitute the same transaction or occurrence" where:

first, the parties are unrelated, and in fact, compete in the same marketplace. Additionally, marketing and sales efforts concerning the allegedly infringing machines are not common between the parties. More significantly, however, the plaintiff fails to adequately [*24] allege or support any connection or substantial similarity between the machines of [each defendant].

New Jersey Machine, 21 U.S.P.Q.2d at 2034-35 (footnotes omitted).

In the present case, Plaintiff asserts infringement claims against unrelated defendants who primarily compete in the same marketplace and provide independent products and services. n2 The only common thread running through the Complaint is Plaintiffs contention that each Defendant infringed one or more of the four patents. Each accused device, however, will have to be considered separately, and the determination of facts and the scope of testimony with respect to one defendant will have little relevance to issues raised by another defendant. Additionally, Plaintiff has failed to make any showing that joinder is necessary to further principles of fundamental fairness, to promote trial convenience, or to expedite the final determination of the instant dispute.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n2 In addition to the above-titled action, Plaintiff has filed three separate suits against three other defendants. All three cases have been assigned to this Court. See Multi-Tech Sys., Inc. v. Gateway 2000, Inc., 00-CV-295 (D. Minn., Feb. 8, 2000); Multi-Tech Sys., Inc. v. Dell Computer Corp., 00-CV-296 (D. Minn., Feb. 8, 2000); Multi-Tech Sys., Inc. v. Compaq, Corp., 00-CV-297 (D. Minn., Feb. 8, 2000).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

[*25]

Accordingly, pursuant to Rule 20(a), the claims against Defendants Zeroplus.com, Inc., MediaRing.com, Inc., Dialpad.com, Inc., and Vocaltec Communications, Inc. are severed and will proceed separately.

## C. Transfer

Defendants MediaRing and Dialpad.com, Inc. ("Dialpad") move to transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a) which provides that [HN17]"for the convenience of the

2000 U.S. Dist. LEXIS 22683

parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In this case, there is no dispute that Plaintiff could have properly commenced this action in the Northern District of California.

[HN18]The Court must consider: (1) the convenience of the parties, (2) the convenience of nonparty witnesses, and (3) the interests of justice. See Radisson Hotels Int'l Inc. v. Westin Hotel Co., 931 F. Supp. 638, 641 (D. Minn. 1996). While the plaintiffs choice of forum is an important factor, it may be overcome by a showing that the balance of the factors favors transfer. See Skyline Displays. Inc. v. Sweeney, 634 F. Supp. 746, 748 (D. Minn. 1986). [*26]

MediaRing and Dialpad maintain that the location of the operative facts and the ease of access to relevant evidence favors the Northern District of California, site of their principal place of businesses, servers, and accused technology. In addition, they argue that the majority of their pertinent witnesses are located in Northern California. In response, Plaintiff argues that its documents as well as pertinent witnesses are located primarily in Minnesota.

The convenience of the parties and witnesses are equally balanced, or, at best, weigh only slightly in favor of transfer. Accordingly, MediaRing and Dialpad have failed "to show that the balance of the factors 'strongly' favors the movant." Graff v. Qwest Communications, Corp., 33 F. Supp.2d 1117, 1121 (D. Minn. 1999).

[HN19]Though a court may consider many factors, the interests of justice is afforded more weight. See, e.g., Graff, 33 F. Supp.2d at 1122; Radisson Hotels, 931 F. Supp. at 641. Plaintiff has brought suit against nine defendants in the above-titled action, and against three defendants in three separate cases. Plaintiff has also been named as a defendant in a recently filed [*27] case to be assigned to this Court. n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n3 Microsoft Corp. v. Multi-Tech Sys., Inc., 00-CV-1412 (D. Minn., June 9, 2000).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Maintaining this case in Minnesota is more efficient and convenient for the parties because this Court has been assigned other cases pertaining to the same patents at issue in the instant action. The Court will be well-positioned to construe patent claims, determine validity, and identify prior art in a consistent manner. Moreover, resolving the claims pertaining to the same patents in this forum will eliminate duplicative discovery as well as the possibility of conflicting claim constructions.

Denying transfer will conserve judicial resources. Therefore, this Court finds that the balance of factors weigh against transfer.

## IV. CONCLUSION

Dascd upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motions to Sever [Doc. Nos. 57, 61, 73 and 79] are **GRANTED** and all motions to dismiss are **DENIED. [*28]** Accordingly, the claims between Plaintiff and Defendants Zeroplus.com, Inc., MediaRing.com, Inc., Dialpad.com, Inc., and Vocaltec Communications, Inc. are hereby severed. The Clerk shall open new files for each of the severed Defendants by use of spaces on the patent case assignment list, thus assigning new case numbers. These cases shall be assigned to Judge Ann D. Montgomery. The Clerk of the Court shall not collect any additional filing fees for these actions.

2. Defendant MediaRing.com, Inc.'s motion to dismiss for lack of personal jurisdiction, or in the alternative to transfer [Doc. No. 61] is **DENIED;** and

3. Defendant Dialpad.com, Inc.'s motion to transfer [Doc. No. 73] is **DENIED.**

ANN D. MONTGOMERY

UNITED STATES DISTRICT JUDGE

Dated: June 26, 2000.

Larson's failure to discontinue the station's practice of playing ASCAP music. The court finds Double Z is jointly and severally liable with Pearson and Larson for the court-awarded damages.

### Liability of Larson and the Teigens to Indemnify Pearson

Pearson has brought a cross claim against Larson and a third party claim against the Teigens individually for indemnification for any losses he incurs as a result of this litigation.

[3] Pearson argues that the purchase agreement requires Double Z to pay all creditors listed in the accounts payable listing regardless of what amount was due and for whatever reason. Pearson claims that since the ASCAP account was included in the purchase agreement, Larson and the Teigens, as stockholders of Double Z, should be entirely liable for this amount.

Contrary to this theory, however, Pearson stated at the trial that payment of the copyright damages was never intended to be included in the purchase agreement. The January 1990 infringement occurred after the execution of the purchase agreement. Larson and the Teigens correctly contend there was no intent to include the copyright infringement damages in the purchase agreement. Pearson's claims for indemnity must fail.

IT IS ORDERED that plaintiffs are entitled to judgment finding Pearson, Larson and Double Z jointly and severally liable for the $40,000 statutory damages previously awarded by this court, together with costs and attorney's fees of $6,325.80 through May 21, 1991. Plaintiff shall have until January 10, 1992 to submit an itemized claim showing time spent by counsel on this case, counsel's hourly rate and the nature and amount of each expense item incurred after May 21, 1991. The other parties shall have until January 31, 1992 to file objections to the reasonableness of the claim. Judgment will be entered after determination of the additional attorney's fees and costs to be awarded.

IT IS FURTHER ORDERED that Pearson is not entitled to indemnification from any other party. Judgment shall be entered dismissing his cross claim and third party claim.

---

**District Court, D. New Jersey**

---

New Jersey Machine Inc. v. Alford Industries Inc.

No. 89-1879 (JCL)

Decided October 7, 1991

### JUDICIAL PRACTICE AND PROCEDURE

**1. Procedure — Parties; standing (§410.07)**

Patent infringement plaintiff's motion to add three parties as defendants is denied, since plaintiff has not shown any connection or substantial similarity between accused devices produced by proposed defendants and those produced by existing defendants, and since infringement of same patent by otherwise unrelated devices and parties does not create right to relief arising out of "same transaction, occurrence, or series of transactions or occurrences" as is required for permissive joinder under Fed.R.Civ.P. 20(a).

### PATENTS

**2. Practice and procedure in Patent and Trademark Office — Reissue — Effect of grant or denial (§110.1309)**

### JUDICIAL PRACTICE AND PROCEDURE

**Procedure — Pleadings (§410.26)**

Patent infringement plaintiff may amend complaint to substitute reissue patents for original patents, but cannot amend in order to claim infringement of both original and reissue patents, since original patent is surrendered upon reissue and superseded by reissue patent and thus cannot be infringed after reissue is complete.

---

Action by New Jersey Machine Inc. against Alford Industries Inc. and Engraph Inc., for patent infringement. On plaintiff's motion to add Thomas R. Pituch, Sancoa International Inc., and Weiler Engineering Inc. as defendants, and to amend complaint to add claim for infringement of certain reissue patents. Motion granted in part and denied in part.

Ira Cohen, of Hart, Baxley, Daniels & Holton, New York, N.Y. (Charles E. Baxley, New York, with him on brief; Paul Sant'-Ambrogio, of Sant'Ambrogio & Purcell, Bloomfield, N.J., of counsel), for plaintiff.

Thomas J. Durling, of Seidel, Gonda, Lavorgna & Monaco, Philadelphia, Pa. (Arthur H. Seidel and Per-Otto L. Erichsen,

Philadelphia, with him on brief; Warren W. Faulk, of Brown & Connery, Westmont, N.J., of counsel), for Engraph Inc.

Steven A. Soffen, of Ostrolenk, Faber, Gerb & Soffen, Washington, D.C. (David R. Simon, of Whitman & Ransom, Newark, N.J., of counsel), for Alford Industries Inc.

Richard J. Botos, of Dressler, Goldsmith, Shore, Sutter & Milnamow, Chicago, Ill. (Talivaldis Cepuritis, Chicago, with him on brief; Ronald A. Graziano, of Tomar, Simonoff, Adourian & O'Brien, Haddonfield, N.J., of counsel), for Weiler Engineering Inc.

Steven K. Kudatzky, of Duane, Morris & Heckscher, Marlton, N.J. (Ronald L. Panitch and Michael R. Nagy, of Panitch, Schwarze, Jacobs & Nadel, Philadelphia, Pa., with him on brief), for Sancoa International Inc. and Thomas R. Pituch.

**Wolfson, U.S. magistrate judge.**

Presently before the Court is the plaintiff's motion to add Thomas R. Pituch, Sancoa International, and Weiler Engineering, Inc., as defendants, pursuant to *Fed. R. Civ. P.* 20, and to amend the complaint, pursuant to *Fed. R. Civ. P.* 15(a), to add the reissue patents. This matter is being considered pursuant to *Fed. R. Civ. P.* 78, and having considered the moving papers and the opposition thereto, the Court, for the reasons discussed below, grants in part and denies in part the plaintiff's motion.

*Plaintiff's Motion to Add Party Defendants.*

The plaintiff seeks to name three additional defendants. This application for permissive joinder is governed by *Fed. R. Civ. P.* 20(a), which reads in pertinent part:

"All persons ... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action."

Thus, *Fed. R. Civ. P.* 20(a) sets forth a two part test for joinder of parties which requires that (1) a right to relief must be asserted against the parties which is predicated upon or arises out of a single transaction or occurrence or series of transactions and occurrences, *and* (2) there must exist some question of law or fact common to all parties which will arise in the action. Both

tests must be satisfied if joinder is to be permitted. *See Paine, Webber v. Merrill Lynch, Pierce,* 564 F.Supp. 1358, 1370 [218 USPQ 212] (D.Del. 1983), *citing Mesa Computer Utilities, Inc. v. Western Union Computer Utilities. Inc.* 67 F.R.D. 634, 636 (D.Del. 1975); *King v. Pepsi-Cola Metropolitan Bottling Co.,* 86 F.R.D. 4, 5 (E.D.Pa. 1979).

Permissive joinder rests within the sound discretion of the court, who must determine whether the proposed joinder "comport[s] with the principles of fundamental fairness." *Shaw v. Munford,* 526 F.Supp. 1209, 1213 (S.D.N.Y. 1981), *citing Desert Empire Bank v. Insurance Company of North America,* 623 F.2d 1371, 1375 (9th Cir. 1980). *Fed. R. Civ. P.* 20 was designed "to promote trial convenience and expedite the final resolution of disputes". *Horton Co. v. International Telephone & Telegraph Corp.,* 85 F.R.D. 369, 371 (W.D.Pa. 1980). The discretionary, but protective, nature of *Fed. R. Civ. P.* 20 is further underscored in subsection (b) thereof, which provides that

"The court may make such orders as will prevent a party from being embarrassed, delayed, or put to expense by the inclusion of a party against whom the party asserts no claim and who asserts no claim against the party, and may order separate trials or make orders to prevent delay or prejudice."

*See also Allied Chemcial Corp. v. Strauss Inc.,* 53 F.R.D. 588, 589 (E.D.Pa. 1971).

[1] New Jersey Machine does not satisfy the two part test of *Fed. R. Civ. P.* 20(a). Specifically, the claims against the proposed defendants do not arise out of the same transaction, occurrence or series of transactions or occurrences as set forth in plaintiff's earlier action against the defendants, Alford Industries and Engraph. Despite plaintiff's lengthy discourse concerning the facts of the alleged infringement by the proposed defendants, it is clear that the allegedly infringing machines are separate and distinct from those machines at issue in the infringement claim against defendants Alford Industries and Engraph. Infringement of the same patent by different machines and parties does not constitute the same transaction or occurrence to justify joinder of the new defendants. See *Paine, Weber, supra,* 564 F.Supp. at 1371.

Contrary to plaintiff's argument that permissive joinders are common place in intellectual property actions, the defendants have more accurately stated the law applicable under these facts. In short, claims of infringement against unrelated defendants, involving different machines, should be tried

separately against each defendant. "Allegations of infringement against two unrelated parties based on different acts do not arise from the same transaction." *Paine, Webber, supra,* 564 F.Supp. at 1371, *citing Siemens Aktiengesellschaft v. Sonotone Corp.,* 370 F.Supp. 970 [179 USPQ 647] (N.D.Ill. 1973). *See also Magnavox Co. v. APF Electronics, Inc.,* 496 F.Supp. 29 [209 USPQ 1094] (N.D.Ill. 1980) (joinder denied where the alleged infringement involved the same patent, but there was no indication that the development, marketing or sales efforts concerning the different infringing products were related in any way).

In the present case, the plaintiff has not demonstrated that the proposed parties are connected to New Jersey Machine's 1989 infringement action nor that the machines involved in the present action are similar to those machines against which plaintiff now alleges infringement. First, the parties are unrelated,[1] and in fact, compete in the same market place. Additionally, marketing and sales efforts concerning the allegedly infringing machines are not common between the parties. More significantly, however, the plaintiff fails to adequately allege or support any connection or substantial similarity between the machines of the proposed defendants and those of the defendants Alford and Engraph. In fact, the defendants provide a detailed description of the key features and elements of the allegedly infringing machines which demonstrate that the machines are different and distinct from each other. Therefore, since the claims of infringement against these unrelated defendants involve different machines, joinder of these new and unrelated parties would be inappropriate at this late stage of the litigation.

*Plaintiff's Motion to Amend Complaint to Add Reissue Patents.*

Contrary to *Fed. R. Civ. P.* 20(a), the more liberal standard of *Fed. R. Civ. P.* 15(a), provides that leave to amend a pleading "shall be freely given when justice so requires." The decision as to whether to

grant or deny such a request rests within the court's discretion, which is guided by the policy that a party ought to be afforded an opportunity to test its claim on the merits. *See Foman v. Davis,* 371 U.S. 178, 182 *Id.* at 182 (1982).

Here, the plaintiff seeks to amend its complaint to add its reissue patents which now supplant the original patents sued upon in plaintiff's original complaint. The defendants merely oppose the form of plaintiff's amendment, contending that, pursuant to 35 U.S.C. §252, the reissue patents should be substituted for the original patent, and not be included as additional patents.

[2] The statute and case law provide that original patents are superseded by reissue patents: "An original patent cannot be infringed once a reissue patent has issued, for the original patent is surrendered." *Seattle Box Co. v. Indus. Crating & Packing,* 731 F.2d 818, 827 [221 USPQ 568] (Fed. Cir. 1984). An exception to this rule has been established by Congress whereby original claims receive continuing effect if the claims of the original and reissued patents are identical. Specifically, "in so far as the claims of the original and reissued patents are identical, such surrender shall not affect any action then pending nor abate any cause of action then existing, and the reissued patent, to the extent that its claims are identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent." 35 U.S.C. §252. Consequently, the plaintiff cannot amend his complaint seeking relief for infringement of both the reissue patents and their corresponding original patents. Consistent with the above-stated law, the plaintiff may amend its complaint to add the reissue patent in substitution only for the original patents named in plaintiff's complaint. Those original patents have now been supplanted and superseded by the reissue patents.

### ORDER

IT IS on this 7th day of October, 1991,

ORDERED that the plaintiff's motion to join the proposed defendants, Thomas R. Pituch, Sancoa International, and Weiler Engineering, Inc., pursuant to *Fed. R. Civ. P.* 20(a) is hereby denied; and it is further

ORDERED that the plaintiff's motion to amend its complaint adding the reissue patents in substitution for the original patents named in plaintiff's complaint consistent with 35 U.S.C. §252 is hereby granted; and it is further

---

[1] Plaintiff attempts to connect these separate infringement claims by pointing to the "continuing predatory conduct of putative defendant Pituch" (plaintiff, NJM's' Memorandum at page 21) who was formerly employed by defendant Engraph for approximately 14 years. However, plaintiff fails to sufficiently demonstrate any connection between Pituch's activities at Engraph and at Sancoa International, where he is currently employed as General Manager. Without more, Pituch's prior relationship with Engraph is inadequate to support joinder.

ORDERED that the plaintiff file its amended complaint within 10 days from the date of this Order.

---

### District Court, N.D. Illinois

Illinois Tool Works Inc. v. The Rawlplug Co. Inc.

No. 90 C 1742

Decided August 6, 1991

### PATENTS

**1. Infringement — Construction of claims (§120.03)**

**Infringement — Defenses — Prosecution history estoppel (§120.1105)**

Accused device does not infringe plaintiff's patent claim for drywall anchor either literally or under doctrine of equivalents, since claim requires "notch means" in drilling end of anchor "adjacent" anchor's body, since elongated separation plane extending along entire central longitudinal axis of drill end in accused device cannot fairly be regarded as "notch" or as being "adjacent" body of accused anchor, and since prosecution history of patent estops plaintiff from contending that elongated separation plane of accused device satisfies those limitations.

**2. Infringement — Construction of claims (§120.03)**

**Infringement — Literal infringement (§120.05)**

**Infringement — Doctrine of equivalents — In general (§120.0701)**

Accused device does not infringe plaintiff's patent claim for drywall anchor either literally or under doctrine of equivalents, since claim requires drill tip of anchor to be "generally flat pointed extension" of body of anchor and to include "spoon-like indentation," and since drill tip of accused device, which consists of two cutting blades and two guide blades, includes no "spoon-like indentation" and cannot be considered "generally flat" inasmuch as it includes eight separate surfaces.

**Particular patents — General and mechanical — Wall anchor**

4,601,625, Ernst, Petersen, and Sledz, self drilling threaded insert for drywall, summary judgment of non-infringement granted.

---

Action by Illinois Tool Works Inc. against The Rawlplug Co. Inc., for patent infringement. On defendant's motion for summary judgment. Granted.

Prior decision: 17 USPQ2d 1412

Granger Cook, Jr. and Stephen B. Heller, of Cook, Egan, McFarron & Manzo, Chicago, Ill.; Thomas W. Buckman and Neal C. Johnson, Glenview, Ill., for plaintiff.

Dennis J. Mondolino, Janet Weintraub, and Thomas J. Perkowski, of Hopgood, Calimafde, Kalil, Blaustein & Judlowe, New York, N.Y.; Alan D. Dolinko, of Chuhak & Tecon, Chicago, Ill., for defendant.

**Grady, J.**

The court has fully considered the materials submitted by the parties on defendant's motion for summary judgment and has concluded that there is no genuine issue of material fact as to whether defendant's Zip-It anchor infringes Claims 1 and 10 of plaintiff's U.S. Patent No. 4,601,625. As a matter of claim interpretation, defendant's anchor does not infringe those claims.

### *CLAIM 1*

This claim specifies "notch means" in the drilling end of the anchor "adjacent" the body of the anchor. The court interprets this claim to denote a relatively small cross-sectional cut at the junction of the body and the drilling end. It is described that way in the patent ("at the juncture of the threaded portion and the drilling portion, weakening slots 45 facilitate the lateral deflection of the blade . . .," (Column 3, Lines 5-8)) and illustrated that way in the only patent drawing which refers to the structure (Fig. 2). The structure designated 45 in Fig. 2 is a small indentation at the junction of the body and the drilling portion of the anchor. It is tiny in relation to the length of the drilling portion and is aptly termed a "notch" as that term is commonly understood. The notches are so small that they are difficult to see on the physical samples of plaintiff's anchor which have been submitted to the court. Book of Exhibits, Memorandum of Rawlplug Company, Inc. in Support of Motion for Summary Judgment Pursuant to Rule 56, Fed. R. Civ. P. ("Defendant's Memorandum"), Exh. E

More importantly, this "notch" means was plaintiff's response to the examiner's rejection of Claim 1 in light of *Einhorn*. Claim 1 originally recited only "means for allowing passage of an elongated fastener

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2004 FEB -9  AM 10: 23

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LUCENT TECHNOLOGIES, INC.,          :
                                    :
        Plaintiff,                  :
                                    :
                                    :   Civil Action No. 03-508-JJF
                                    :
        v.                          :
                                    :
EXTREME NETWORKS, INC. and,         :
FOUNDRY NETWORKS, INC.,             :
                                    :
        Defendants.                 :

## MEMORANDUM ORDER

Presently before the Court is the Motion to Sever for Improper Joinder (D.I. 26-1) of Foundry Networks, Inc. ("Foundry"). For the reasons discussed, the Court will grant the motion.

On May 27, 2003, Lucent Technologies, Inc. ("Lucent") filed a lawsuit asserting that certain of its patents were being infringed by Foundry and Extreme Networks, Inc. ("Extreme"). Defendants each filed an answer on July 16, 2003. Foundry contends that its alleged infringement does not arise out of the same transaction, occurrence, or series of transactions or occurrences as Extreme's alleged infringement. Foundry asserts that, therefore, its joinder with Extreme in the instant lawsuit was improper. Foundry is concerned about the effects continued joinder may have in forcing the disclosure of confidential information.

Extreme contends that it is premature to consider severance. Extreme contends that the case is presently undeveloped and commonality between the defendants is unclear. Extreme argues that, as the case develops, the issues to be litigated and the parties litigating them may change. Extreme contends that waiting to sever the case will be the more efficient course of action, but does not oppose severance so long as it is allowed a complete and singular trial.

Lucent contends that this case should not be severed. Lucent contends that under the liberal standard of Federal Rule of Civil Procedure 20 ("Rule 20"), joinder was not improper. Further, Lucent contends that even if joinder was improper, the Court should consolidate the case under Federal Rule of Civil Procedure 42 ("Rule 42") and render the motion to sever moot.

Joinder under Rule 20 is appropriate if the relief sought arises "out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all []persons will arise in the action." FED. R. CIV. P. 20. Under Rule 42, "[w]hen actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions" and "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to

expedition and economy, [the court] may order a separate trial."
FED. R. CIV. P. 20.   Whether to grant or deny severance is left to
the discretion of the trial judge.   See U.S. v. Donsky, 825 F.2d
746, 754 (3d Cir. 1987) (citing United States v. Boyd, 595 F.2d
120, 125 (3d Cir.1978).

The Court concludes that Lucent has not alleged facts which
make joinder in the instant action appropriate.

NOW THEREFORE, IT IS HEREBY ORDERED this 6 day of February
2004, that Foundry's Motion to Sever for Improper Joinder (D.I.
26-1) is **GRANTED**.   The Court will consider an application for
consolidated discovery if the parties agree.

Joseph J. Farnan Jr.
UNITED STATES DISTRICT JUDGE

3