IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| ENTERASYS NETWORKS, INC.,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | Civil Action No. 05-11298-DPW |
| v.  ) | |
| ) | |
| FOUNDRY NETWORKS, INC.; and  ) | |
| EXTREME NETWORKS, INC.,  ) | |
| ) | |
| Defendants.  ) | |

**ENTERASYS NETWORKS, INC.'S MEMORANDUM IN OPPOSITION
TO EXTREME NETWORKS, INC.'S MOTION TO SEVER**

Plaintiff Enterasys Networks, Inc. ("Enterasys") hereby opposes Defendant Extreme Networks, Inc.'s ("Extreme") Motion to Sever Claims Against It From Claims Against Foundry Networks ("Foundry"), which was filed with this Court on August 24, 2005[1] (the "Motion to Sever").

**INTRODUCTION**

This is a patent infringement case in which Enterasys asserts that Extreme and Foundry each infringe six of Enterasys' patents relating to networking infrastructure products, including switch and router products. Enterasys respectfully requests that the Court deny Extreme's Motion to Sever. Extreme's Motion to Sever should be denied because judicial economy is best served by the current joinder of the defendants and—pursuant to Rule 20 of the Federal Rules of Civil Procedure—the joinder is permissible. While Enterasys does not oppose Extreme's request

---

[1] On August 31, 2005, Defendant Foundry filed its Joinder in Extreme's Motion to Sever (the "Foundry Joinder"). Enterasys respectfully submits this Memorandum in Opposition to both Extreme's Motion to Sever and Foundry's Joinder.

for separate trials, the request is premature because such separate trials can be accomplished pursuant to F.R.C.P. Rule 20(b) without the need to sever the parties now.  In the alternative, if the Court finds severance appropriate, Enterasys contends that any severed matters should be consolidated for all pretrial proceedings.  Accordingly, if severance is ordered, Enterasys respectfully requests that the Court exercise its discretion under Rule 42 of the Federal Rules of Civil Procedure to order consolidation of the matters for all pretrial proceedings.

Each of the six patents-in-suit are asserted against both Extreme and Foundry, and Enterasys expects that substantially the same claims will be asserted against the products of each defendants, with only minimal variations.  Accordingly, common legal and factual questions abound and the Court will eventually be asked to conduct a single *Markman* hearing to construe the common patent claims.  Given these common patent claims, the claims asserted against each defendant involve common, identical, issues of patent validity and substantially overlapping issues of infringement.  Enterasys, therefore, expects that the defendants will assert many of the same defenses, raising additional common questions of fact and law.

Moreover, an examination of the answers filed recently by Extreme and Foundry shows common theories of defense, including invalidity.  As the case proceeds, Enterasys expects several other common defenses to be asserted by the defendants.  An examination of Foundry's answer to the Complaint shows some of the myriad defenses that Foundry has already asserted, and that Extreme will likely eventually assert, including laches, lack of standing, patent marking defense, prosecution history estoppel, inequitable conduct, etc.  Accordingly, with respect to discovery and motions that the defendants may bring in this matter, it is likely that both defendants will assert additional common defenses and substantially identical arguments in response to Enterasys' claims of infringement.  Enterasys further expects, therefore, that the

defendants will take substantially identical discovery of Enterasys' witnesses, and raise substantially identical motions throughout this matter. Given the plethora of common issues of fact and law, Extreme's Motion to Sever should be denied.

## FACTUAL BACKGROUND

Enterasys filed its Complaint in this matter on June 21, 2005. The Complaint alleges that Extreme and Foundry each infringe six of Enterasys' patents relating to networking infrastructure products, including switch and router products. Both Extreme and Foundry were served on June 21, 2005. Foundry answered the Complaint on August 22, 2005. Extreme answered the Complaint on August 22, 2005, and subsequently filed its Motion to Sever on August 24, 2005. Foundry filed its Joinder in Extreme's Motion to Sever on August 31, 2005.

## ARGUMENT

**I.   EXTREME'S MOTION TO SEVER SHOULD BE DENIED BECAUSE THE REQUIREMENTS OF RULE 20 HAVE BEEN MET AND JUDICIAL ECONOMY IS BEST SERVED BY PROCEEDING IN A SINGLE ACTION**

Extreme's Motion to Sever should be denied because there is a nucleus of common operative facts and law in the claims asserted against Foundry and Extreme, and Enterasys' claims against Extreme and Foundry arise out of the same series of transactions or occurrences. *See* F.R.C.P. 20(a). It is undisputed that Enterasys commonly alleges that each defendant is liable for infringement of the same six patents. It also cannot be disputed that these claims will involve several common issues of fact and law, including the validity of the patents-in-suit and the scope and construction of the individual claims of the patents. Especially in a patent case such as this, the interests of justice and judicial economy—and expenses and efforts of all parties and the Court—would be best served by keeping the parties joined in the current action.

Interestingly, Extreme itself argued against severance in the *Lucent Technologies, Inc. v. Extreme Networks. Inc., et al.* decision that it relies on in, and attaches as Exhibit 3 to, its moving papers. In the *Lucent* matter, Extreme contended that the motion to sever was premature and that the better course was to wait for the case to develop through discovery before deciding whether to sever the case.

Severing Extreme from this action now would only result in a waste of resources for each of the parties and this Court. Even if the cases were severed, as set forth below, it is likely that the parties would proceed simultaneously until the point of trial anyway, whether that occurs by having one case or, in the alternative, two cases consolidated for pretrial matters. To the extent both Extreme and Foundry remain in the case up to the time of trial, there is no impediment to then ordering a trial separate for each defendant pursuant to F.R.C.P. 20(b). That issue need not be decided at this early stage; the issue of separate trials can be reexamined once pretrial proceedings are finalized.

### A.     The Court Has The Discretion To Permit Joinder Of Multiple Defendants In A Patent Infringement Case

In its Motion to Sever, Extreme contends that it is improper to join multiple defendants in a patent infringement case when the defendants are competitors. This premise is untrue and this Court has the discretion to permit the joinder of Extreme and Foundry in this action. Contrary to Extreme's position, other courts have allowed joinder of multiple, competitor defendants in patent infringement cases analogous to this one. *See SRI International, Inc. v. Internet Security Systems, Inc., et al.*, 2005 U.S. Dist. LEXIS 6797 (D. Del. April 13, 2005) (denying motions to sever filed by two competitor defendants);[2] *Mymail, Ltd. v. American Online, Inc., et al.*, 223 F.R.D. 455, 456 (E.D. Tex. 2004) (rejecting the same "hypertechnical" reading of Rule 20

---

[2] A copy of this decision is attached hereto as Exhibit 1.

propounded by Extreme); *Maganvox Company v. APF Electronics, Inc.*, 496 F. Supp. 2d 29 (N.D. Ill. 1980) (denying motion to sever in patent case involving multiple unrelated defendants and noting that judicial economy would be best served by keeping the parties consolidated for pretrial proceedings, that any risk of prejudice could be eliminated, and that the Court could order separate trials if needed).

The purpose of Federal Rule of Civil Procedure 20 is to promote trial convenience and expedite final determination of disputes, thereby preventing multiple lawsuits. *See Saval v. BL, Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983). To that end, Rule 20 strongly encourages joinder of parties. *See League to Save Lake Tahoe v. Tahoe Reg. Plan. Agcy.*, 558 F.2d 914, 917 (9th Cir. 1977). Under Rule 20(a), Extreme and Foundry can be joined as defendants in this action if:

> there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any questions of law or fact common to all defendants will arise in the action.

The "transaction or occurrence" prong of Rule 20 "permits all reasonably related claims for relief by or against different parties to be tried in a single proceeding." *Saval*, 710 F.2d at 1031. Moreover, in order to meet the "transactions or occurrences" prong, Enterasys need only show that "there is some connection or logical relationship between the various transactions or occurrences." *Mymail*, 223 F.R.D. at 456 (internal citation omitted). This logical relationship exists when a "nucleus of operative facts or law" is present. *Id.* Here, such a nucleus of operative facts *and* law exist, and the Court should deny Extreme's Motion to Sever.

**B.  Questions Of Law Or Fact Common To Both Defendants Will Arise In This Action**

It cannot be disputed that questions of fact *and* law common to both defendants will arise in this matter. Courts facing similar situations in patent cases have denied motions to sever. In

*SRI*, 2005 U.S. Dist. LEXIS 6797, the Court considered motions to sever filed by the two defendants in a case involving alleged infringement of four patents dealing with computer network protection systems.  In *SRI*, the defendants asserted invalidity defenses.  *Id.* at *11.  The Court noted that "[i]t is the experience of this court that patents over the same technology often give rise to the same questions of law and fact (*e.g.*, same prior art references, same level of ordinary skill in the art)."  *Id.*  In denying the motions to sever, the Court added that "[i]t would be an inefficient use of judicial resources for this court to perform all of these tasks twice, once for [each defendant]."

Here, Enterasys opted to initiate one lawsuit rather than two lawsuits because the infringement of Enterasys' patents by the defendants' similar products results in numerous, identical questions of fact *and* law pertinent to both defendants.  Enterasys expects that substantially the same claims will be asserted against the products of each defendants, with only minimal variations.   Accordingly, common questions of law (and fact) exist among Enterasys' claims against both defendants and the Court will eventually be asked to conduct a single *Markman* hearing to construe these common patent claims.  As Extreme appears to concede, it would be an enormous waste of judicial resources—and cause undue prejudice to Enterasys and undue risk of inconsistent rulings of law—to sever the defendants and potentially conduct separate *Markman* hearings aimed at construing identical claims.

Further, the causes of action asserted against each defendant involve common, identical, issues of patent validity and substantially overlapping issues of infringement.  Enterasys expects, therefore, that the defendants will assert many of the same defenses, raising additional common questions of fact and law.  The similarity of the positions of the defendants is underscored by the

theories of defense raised by each defendant in its answer to the Complaint, including challenges to the validity of the patents.

As the case proceeds, Enterasys expects several other common defenses to be asserted by the defendants. The myriad defenses that Foundry has already asserted, and that Extreme will likely eventually assert, include laches, lack of standing, patent marking defense, prosecution history estoppel, inequitable conduct, etc. Accordingly, with respect to discovery and motions that the defendants may bring in this matter, it is likely that both defendants will assert common defenses and substantially identical arguments in response to Enterasys' claims of infringement. Enterasys further expects, therefore, that the defendants will take substantially identical discovery of Enterasys' witnesses, and raise substantially identical motions throughout this matter.

It cannot be disputed, therefore, that common questions of fact *and* law will arise in this matter.

> C. **Enterasys' Claims Against The Defendants Also Arise Out Of The Same Transaction, Occurrence Or Series Of Transactions Or Occurrences**

In its Motion to Sever, Extreme essentially urges the Court to adopt a belief that infringement by different defendants cannot satisfy Rule 20's "transaction or occurrence" requirement. Federal courts have have rejected the "hypertechnical" reading of Rule 20(a) set forth by Extreme. For example, in *Mymail*, the court explained that such an argument:

> fails to recognize the realities of complex, and particularly patent, litigation . . . . The Court disagrees with such a per se rule that elevates form over substance. Such an interpretation does not further the goals of Rule 20, especially for discovery and motion purposes.

*Mymail,* 223 F.R.D. at 457.

As in *Mymail*, here, there is a "connection or logical relationship" between the claims Enterasys asserts against Foundry and Extreme because Enterasys claims that both defendants have infringed the same six patents, which all relate to networking infrastructure products, including switch and router products. *Mymail,* 223 F.R.D. at 456. As a result, as set forth above, and as recognized by the Courts in *Mymail* and *SRI*, the same exact issues will emerge with respect to both defendants, and the Court will be asked to examine the same prior art references, make similar claim construction rulings, etc. The Court in *Mymail* went on to explain how damaging severance can be in patent cases in particular. The Court added that the "prospect of inconsistent claims construction favors resolving patent cases in the same forum when possible." Moreover, not only would such duplication of effort result in a tremendous waste of resources, but would also prejudice Enterasys in that it would potentially have to deal with separate rulings of law from different courts.

Additionally, collaboration among the defendants is not necessary to join multiple defendants in one patent infringement action. *Magnavox,* 496 F. Supp. 2d 29, involved a similar situation and the Court refused to sever defendants. The plaintiff in *Magnavox* brought three suits, each against multiple defendants, alleging patent infringement. *Id.* at 31-2. In analyzing the defendants' motion to sever, the Court observed that the defendants had sold different infringing products, and that the defendants were not related to one another in any manner "except that they are all alleged to infringe plaintiffs' patent." *Id.* at 34. The Court denied severance, noting that judicial economy would be best served by keeping the parties consolidated for pretrial proceedings, that any risk of prejudice could be eliminated, and that the Court could order separate trials if needed. *Id.*

This case is distinguishable from two of the cases cited by Extreme in support of its proposition. In *New Jersey Machine Inc v. Alford Indus., Inc.*, 1991 U.S. Dist. LEXIS 20376 (D.N.J. 1991), the court denied joinder of an additional party late in the litigation after comparing the machines of the original defendant and of the proposed additional defendants and finding that they were markedly different machines. In *Phillips Elecs. N. Am. Corp. v. Contec Corp.*, 220 F.R.D. 415 (D. Del. 2004), the court decided to sever the case after fact discovery had been completed. Here, fact discovery has not yet been commenced, and neither the parties or the Court are in a position to confirm or deny whether the products or methods utilized by the defendants are similar or dissimilar so as to render them not logically connected for purposes of Rule 20.

### D.     Extreme's Argument That Separate Trials Are Appropriate Does Not Support Severance

In its Motion to Sever, Extreme contends that the Court should sever the case to allow for separate trials. Enterasys does not disagree that separate trials may be appropriate at the time of trial, and agrees that the Court has the discretion to order separate trials pursuant to F.R.C.P. 20(b). However, Enterasys disagrees with Extreme's assertion that a need for separate trials means severance is appropriate; the two ideas are not linked as Extreme suggests. To the contrary, as envisioned within Rule 20, the Court should deny Extreme's Motion to Sever at this stage, allow the case to proceed as a single action, and then order separate trials at the time of trial if appropriate. Enterasys respectfully submits that this is the best approach given the plethora of common questions of fact and law present in this action.

In addition, Extreme contends that severance is appropriate, and separate trials warranted, given the potential confidential information that would be disclosed at a joint trial. This argument is specious for at least two reasons. First, even if the Court ordered two, separate

trials, those trials would undoubtedly be open to the public so that any person (competitor or otherwise) could attend and potentially hear about Extreme's business. Second, as discussed above, entry of a appropriate protective order would limit any risk of prejudice regarding the disclosure of sensitive business information. Parties with sensitive information in intellectual property cases often agree to such protective orders. Enterasys is confident that counsel for the parties can work together and with the Court to devise confidentiality and discovery protections as needed. In fact, such protections are envisioned by the Federal Rule of Civil Procedure 20(b) proclamation that the Court has the authority to "make other orders to prevent delay or prejudice" as needed.

For all of these reasons, joinder of the defendants here is permissible, and the Court should deny Extreme's Motion to Sever.

**II.    EVEN IF THE COURT DECIDES TO SEVER THE CASE, THE COURT SHOULD NEVERTHELESS EXERCISE ITS DISCRETION UNDER RULE 42 TO CONSOLIDATE THE CASES FOR ALL PRETRIAL PROCEEDINGS IN THE INTEREST OF JUDICIAL ECONOMY**

In the event the Court decides to sever the claims asserted against Extreme, Enterasys respectfully requests that the Court exercise its discretion under F.R.C.P. 42 by consolidating the cases and maintaining all claims and both defendants in this case together in a single case (with a single docket number) for all pretrial purposes. Consolidation for all pretrial purposes is the simplest and most practical way to manage the case up until trial. Further, Enterasys does not object to Extreme's request for separate trials for the defendants, which the Court can order in a consolidated case pursuant to F.R.C.P. 42(b).

In its Motion to Sever, Extreme admits that consolidation is appropriate for certain pretrial activities, such as inventor depositions, third party invalidity depositions, and claim construction (i.e., a single *Markman* hearing). *See* Motion to Sever, at pp. 5-6. In addition, in

the *Lucent* case trumpeted by Extreme, the Court ordered such consolidation. Rather than engage in piece-meal consolidation, however, Enterasys submits that the most efficient and practical way to manage the two severed cases would be to consolidate them for *all* pretrial purposes. As addressed above, any concerns Extreme has regarding its confidential business information can be resolved by way of an appropriate protective order, which is routinely done in intellectual property cases such as this.

## CONCLUSION

For all of the foregoing reasons, Enterasys respectfully request that this Court deny Extreme's Motion to Stay in its entirety. In the alternative, if the Courts finds that it is appropriate to sever the defendants, Enterasys agrees that consolidation is appropriate and respectfully requests that this Court enter an Order consolidating the separate case for *all* pretrial proceedings.

Dated:  September 7, 2005                     Respectfully submitted,

ENTERASYS NETWORKS, INC.

By its attorneys,

  /s/ Alan E. McKenna_____
Christopher P. Sullivan (BBO No.485120)
Marc N. Henschke (BBO No. 636146)
Alan E. McKenna (BBO No. 644556)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
800 Boylston Street, 25th Floor
Boston, MA 02199
Tel. (617) 267-2300

A. James Anderson (*Pro Hac Vice*)
Marla R. Butler (*Pro Hac Vice*)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2600 One Atlanta Plaza
950 East Paces Ferry Rd. N.E.
Atlanta, GA 30326-1386
Tel. (404) 760-4300

Robert A. Auchter (*Pro Hac Vice*)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P
Suite 1200
1801 K Street, N.W.
Washington, D.C. 20006
Tel. (202) 775-0725

LEXSEE 2005 US DIST LEXIS 6797

SRI INTERNATIONAL, INC., Plaintiff, v. INTERNET SECURITY SYSTEMS, INC. and SYMANTEC CORPORATION, Defendants.

Civ. No. 04-1199-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*2005 U.S. Dist. LEXIS 6797*

**April 13, 2005, Decided**

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] For Timothy Devlin, Esquire of Fish & Richardson, Wilmington, Delaware. Howard G. Pollack, Esquire and Michael J. Curley, Esquire of Fish & Richardson, Redwood City, California, for Plaintiff.

Richard L. Horwitz, Esquire and David E. Moore, Esquire of Potter Anderson & Corroon, Wilmington, Delaware, for Defendant Internet Security Systems, Inc.. Of Counsel: Holmes J. Hawkins, III, Esquire and Natasha H. Moffitt, Esquire of King & Spalding, Atlanta, Georgia.

Richard K. Herrmann, Esquire of Blank Rome, Wilmington, Delaware, for Defendant Symantec Corporation. Of Counsel: Lloyd R. Day, Jr., Esquire, Robert M. Galvin, Esquire and Paul S. Grewal, Esquire of Day Casebeer Madrid & Batchelder, Cupertino, California.

**JUDGES:** ROBINSON, Chief Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

**MEMORANDUM OPINION**

Dated: April 13, 2005
Wilmington, Delaware

**ROBINSON, Chief Judge**

**I. INTRODUCTION**

On August 26, 2004, plaintiff SRI International, Inc. ("SRI") filed this suit against defendants Internet Security Systems, Inc. ("ISS-DE") and Symantec Corporation ("Symantec") alleging infringement of four of its patents by Symantec and two of its patents by ISS-DE. (D.I. 1)

This court [*2] has jurisdiction over this action pursuant to *28 U.S.C. § 1331*. Pending before this court are ISS-DE's motion to dismiss or sever and transfer the action to the Northern District of Georgia, and Symantec's motion to sever and transfer this action to the Northern District of California. (D.I. 10, 14)

**II. BACKGROUND**

According to ISS-DE, it is a Delaware corporation and serves as the holding company for Internet Security Systems, Inc. ("ISS-GA"). (D.I. 12, Ex. C at P 4) SRI argues that ISS-DE is more than just a holding company because only one entity is listed with the Securities and Exchange Commission ("SEC"), Internet Security Systems INC/GA, and it is listed as incorporated in Delaware. (D.I. 19, Ex. B) ISS-GA is headquartered in Georgia. (Id. at P 1) ISS-GA researches and develops computer network security products, including the accused Proventia and SiteProtector products, at its engineering facilities in Georgia. (Id. at P 3)

ISS-DE asserts that it does not develop, manufacture or sell any products, it is strictly a holding company for ISS-GA. (Id. at P 4) SRI argues, however, that ISS-DE's Form 10-K, filed with the Securities [*3] and Exchange Commission ("SEC"), makes clear that it offers "a proactive line of security solutions that provide protection against a variety of ever-changing threats for gateways, networks, servers and desktops, and includes security software and appliances. (D.I. 19, Ex. B at 3) Furthermore, SRI contends that the Form 10-K indicates that ISS-DE grossed over $240 million in revenue in 2002 and employs over 1,100 people. (Id. at 18 and 27) The two companies allegedly maintain separate accounting records and have their own officers and employees. (Id. at PP 5, 6) ISS-DE admits that it has "regulatory and oversight obligations" for ISS-GA, but asserts that the day-to-day production activities are controlled by ISS-GA. (Id. at P 6) Dun & Bradstreet, however, classifies ISS-DE as one operational entity, headquarted in Georgia, but incor-

porated in Delaware. (D.I. 18, Ex. D) Dun & Bradstreet does not classify ISS-DE as a holding company, but instead states that ISS-DE is in the business of "prepackaged software and custom computer programming." (Id.)

Symantec is a Delaware corporation with its principal place of business in Cupertino, California. (D.I 15 at 3) Symantec [*4] offers software and services to help businesses secure and manage computer networks. (Id.) Symantec is the maker of the accused product, ManHunt. (Id. at 4)

SRI is a California non-profit research institute. (D.I. 18 at 3) SRI developed a system to detect and stop certain activity on computer networks and to identify network security breaches. (Id. at 4) SRI received numerous patents on its systems.

In January of 2004, SRI initiated licensing negotiations with Symantec. (D.I. 19, Ex. J at P 5; D.I. 15 at 5) SRI and Symantec negotiated via letter, telephone and met at SRI's headquarters in Menlo Park, California. (D.I. 15 at 3) The negotiations were unsuccessful and no agreement was reached between the parties. (Id.)

SRI then contacted Symantec's competitor ISS via letter stating that it believed ISS's products infringed some of SRI's patents and that SRI was undergoing negotiations with a number of companies and would be "open to discussing license terms with ISS." n1 (D.I. 12, Ex. C at P 7; D.I. 19, Ex. H at P 2) After numerous communications, including a second letter from SRI indicating that it "takes intellectual property matters seriously," the two companies [*5] began license negotiations. (D.I. 12, Ex. C at P 8; D.I. 19, Ex. H at PP 3-10)

 n1 It is unclear whether the letter was intended for ISS-GA or ISS-DE.

On August 17, 2004, ISS-GA filed a declaratory judgment action against SRI in the Northern District of Georgia seeking a declaration that its products do not infringe SRI's *United States Patents Nos. 6,321,338* ("the '338 patent"), *6,484,203* ("the '203 patent"), 6,704,874 ("the '874 patent"), *6,708,212* ("the '212 patent") and *6,711,615* ("the '615 patent"). n2 (D.I. 12, Ex. C at P 10) On August 20, 2004, there was a telephone conference between SRI and ISS-GA, in which ISS-GA's engineers asked SRI engineers questions regarding SRI's technology. (D.I. 19, Ex. H at P 24) At the close of the conversation, ISS-GA's engineers asked for copies of various technical papers written by SRI scientists on the technology, which were sent to ISS-GA on August 20.

 n2 According to SRI, license negotiations between ISS-GA and SRI were still ongoing at the time the declaratory judgment action was filed. (D.I. 19, Ex. H at P 26)

[*6]
On August 26, 2004, SRI filed this action against ISS-DE and Symantec. (D.I. 1) SRI states that Symantec's ManHunt product infringes the *'338*, *'203*, *'212* and *'615* patents. SRI further alleges that ISS-DE's Site Protector and Proventia products infringe the *'615* and *'203* patents. SRI alleges that it filed its claims against Symantec and ISS-DE in one case in order to enforce its patent rights in an efficient manner. (D.I 18 at 6)

### III. ISS-DE'S MOTION TO DISMISS

#### A. Standard of Review

Because the parties have referred to matters outside the pleadings, Idd-DE's motion to dismiss shall be treated as a motion for summary judgment. See *Fed. R. Civ. P. 12(b)(6)*. A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. The moving party bears the burden of proving that no genuine issue of material fact exists. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986).* [*7] "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995)* (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita, 475 U.S. at 587* (quoting *Fed. R. Civ. P. 56(e)*). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).* The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).* [*8] If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a

matter of law. See *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*.

### B. Discussion

SRI asserts that ISS-DE is liable for any alleged patent infringement. ISS-DE claims it is not liable because it does not directly manufacture or sell the accused products and is merely ISS-GA's sole shareholder.

A parent company is not liable for the actions of a subsidiary solely because it is a subsidiary. See *United States v. Bestfoods, 524 U.S. 51, 61, 141 L. Ed. 2d 43, 118 S. Ct. 1876 (1998)*. A finding of liability requires piercing the corporate veil. Id. Prior case law establishes two distinct tests for determining when piercing the corporate veil is appropriate: (1) the alter ego test; or (2) agency test. See, e.g., *Pearson v. Component Tech. Corp., 247 F.3d 471, 484-486 (3d Cir. 2001)*; *C.R. Bard Inc. v. Guidant Corp., 997 F. Supp. 556, 559-560 (D. Del. 1998)*; *Mobil Oil Corp. v. Linear Films, Inc., 718 F. Supp. 260, 265-272 (D. Del. 1989)*. [*9]

#### 1. Alter Ego Test

A corporate subsidiary can be considered the alter ego of its parent corporation where there is a lack of attention to corporate formalities or complete domination and control by the parent corporation. See *Mobil Oil Corp., 718 F. Supp. at 266*. Under Delaware law, however, a close connection alone is not sufficient, there must be a showing that the parent/subsidiary relationship would work a fraud, injustice or inequity. See *C.R. Bard, Inc., 997 F. Supp. at 559*; *Mobil Oil Corp., 718 F. Supp. at 267*.

Based on the record, it is unclear whether ISS-GA is ISS-DE's alter ego. ISS-DE is listed by the SEC and Dunn & Bradestreet as headquartered in Atlanta. ISS-DE is described as being in the business of producing network security products, as opposed to being listed as a holding company. From the facts of record, it is unclear what the relationship is between ISS-DE and ISS-GA; therefore, it is unclear whether their relationship will work an injustice on the patent system.

#### 2. Agency Test

If a parent corporation directs the allegedly infringing activity, it can be liable for its subsidiary's infringement. [*10] The focus of this test is on "the arrangement between the parent and the subsidiary, the authority given in that arrangement, and the relevance of that arrangement to the plaintiff's claim." *C.R. Bard, Inc., 997 F. Supp. at 560*. In order for the parent corporation to be liable under this test, there must be "a close connection between the relationship of the corporations and the cause of action." Id.

Because it is unclear what the relationship is between ISS-DE and ISS-GA, it is unclear how much control ISS-DE has over ISS-GA. It is undisputed that ISS-DE has some control over ISS-GA because it has oversight and regulatory obligations for ISS-GA. At some point, it must be able to direct ISS-GA's activities to fulfill these obligations. However, it is unclear whether it directed the alleged infringing activities at issue.

Therefore, ISS-DE's motion to dismiss is denied without prejudice to renew if, as discovery proceeds, it becomes evident that ISS-DE cannot be liable either independently or under the alter ego or agency tests.

### IV. MOTIONS TO SEVER

*Federal Rule of Civil Procedure 21* gives courts discretion to [*11] sever parties due to misjoinder. Under *Federal Rule of Civil Procedure 20(a)*, defendants can be joined together if

> there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

*Fed. R. Civ. Proc. 20(a) (2005)* (emphasis added). This court finds that there are common transactions or occurrences, and questions of fact or law that warrant joinder of the defendants.

Plaintiff alleges patent infringement, which will require this court to hold Markman hearings and construe the asserted claims. Plaintiff has asserted four patents against Symantec and only two of those patents against ISS-DE. Nonetheless, all of the patents asserted arise out of computer network protection systems. It is the experience of this court that patents over the same technology often give rise to the same questions of law and fact (e.g., same prior art references, same level of ordinary skill [*12] in the art).

Both ISS-DE and Symantec have asserted invalidity defenses that will require this court to consider the validity of the asserted patents. These defenses will require the court to determine the date of conception and reduction to practice, the relevance of prior art and the level of ordinary skill in the art. It would be an inefficient use of judicial resources for this court to perform all of these tasks twice, once for ISS-DE and once for Symantec. Therefore, ISS-DE's and Symantec's motions to sever are denied at this stage of the proceedings.

## V. MOTIONS TO TRANSFER

Under *28 U.S.C. § 1404(a)*, a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interests of justice. Congress intended *§ 1404* to give district courts discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988)* (quoting *Van Dusen v. Barrack, 376 U.S. 612, 622, 11 L. Ed. 2d 945, 84 S. Ct. 805 (1964))*; *Affymetrix, Inc. v. Synteni, Inc., 28 F.Supp.2d 192, 208 (D. Del. 1998).* [*13]

The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." *Bergman v. Brainin, 512 F. Supp. 972, 973 (D. Del. 1981)* (citing *Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970).* "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail". *ADE Corp. v. KLA-Tencor Corp., 138 F.Supp.2d 565, 567 (D. Del. 2001); Shutte, 431 F.2d at 25.*

The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *C.R. Bard, Inc. v. Guidant Corp., 997 F. Supp. 556, 562 (D. Del 1998); Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc., 2001 U.S. Dist. LEXIS 20803, 2001 WL 1617186 (D. Del. Nov. 28, 2001); Continental Cas. Co. v. Am. Home Assurance Co., 61 F.Supp.2d 128, 131 (D. Del. 1999).* Although transfer of an action is usually considered as less inconvenient to a plaintiff if the plaintiff has not chosen its "'home turf' or a forum where the alleged wrongful activity [*14] occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." *In re M.L.-Lee Acquisition Fund II, L.P., 816 F. Supp. 973, 976 (D. Del. 1993).*

Here, the plaintiff chose Delaware because both defendants are Delaware corporations and Delaware is the only forum with jurisdiction over both ISS-DE and Symantec. As already stated by this court, defendants are properly joined in order to conserve judicial resources and ensure a uniform evaluation of the patents in suit. In the interest of efficiency and justice, this court declines to transfer their respective cases, as neither forum would have jurisdiction over both defendants. n3

n3 ISS-DE argues that SRI's claims against it should be transferred to the District of Georgia because ISS-GA filed a declaratory judgment action against SRI in that district before SRI filed the suit at bar. "When a declaratory action can resolve the various legal relations in dispute and afford relief from the controversy that gave rise to the proceeding, and absent sound reason for a change of forum, a first-filed declaratory action is entitled to precedence as against a later-filed patent infringement action." *Genentech, Inc. v. Eli Lilly & Co., 998 F.2d 931, 938 (Fed. Cir. 1993)*, abrogated on other grounds, *Wilton v. Seven Falls Co., 515 U.S. 277, 132 L. Ed. 2d 214, 115 S. Ct. 2137 (1995).* As the court has already stated, the relationship between ISS-DE and ISS-GA is unclear; therefore, it is also unclear whether the Georgia suit will adjudicate the issue facing this court (i.e., whether ISS-DE infringed the asserted patents). If ISS-DE and ISS-GA are in fact two distinct companies, as ISS-DE argues, then the first to file rule would not apply.

[*15]

## VI. CONCLUSION

For the reasons stated, ISS-DE's motion to dismiss is denied without prejudice. ISS-DE's and Symantec's motions to sever are denied, as are their motions to transfer. An order consistent with this memorandum opinion shall issue.

### ORDER

At Wilmington this 13th day of April, 2005, consistent with the memorandum opinion issued this same date;

IT IS ORDERED that:

1. Defendant ISS-DE's motion to dismiss (D.I. 10) is denied without prejudice;

2. Defendant ISS-DE's motion to sever and transfer (D.I. 10) is denied; and

3. Defendant Symantec's motion to sever and transfer (D.I. 14) is denied.

Sue L. Robinson

United States District Judge