## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

ENTERASYS NETWORKS, INC,

   Plaintiff,

 v.

FOUNDRY NETWORKS, INC. and
EXTREME NETWORKS, INC.,
   Defendants.

Civil Action No. 05-CV-11298 (DPW)

## FOUNDRY NETWORKS, INC.'S MOTION TO COMPEL ANSWERS TO INTERROGATORIES NOS. 2 AND 3 FROM ENTERASYS NETWORKS, INC.

### INTRODUCTION

Defendant Foundry Networks, Inc. ("Foundry") moves to compel plaintiff Enterasys Networks, Inc. ("Enterasys") to immediately answer Interrogatories Nos. 2 and 3, which seek the identification of Enterasys' infringement claims against Foundry. Enterasys simply refuses to state its infringement claims against Foundry, saying that although it has the information, it just doesn't want to share it now.

Interrogatory No. 2 asks for Enterasys to describe in detail and to provide a claim chart explaining how Enterasys reads its six patents-in-suit to cover the Foundry accused products. Interrogatory No. 3 asks for Enterasys to state the facts it had in its possession when it brought this suit, on which it based its analysis concerning the products it has accused in this suit.

Enterasys does not dispute that Foundry is entitled to an answer to Interrogatory No. 2; it simply refuses to answer the question until July 17, 2006, the court-imposed *deadline* for answering these questions, even though in setting this deadline, this Court clearly stated that Foundry could seek an earlier answer in response to interrogatories.

With respect to Interrogatory No. 3, seeking the *facts* on which it brought this suit, Enterasys refuses to provide a substantive answer on the basis of privilege and work product, saying that it will only provide a substantive answer in response to a Rule 11 motion.

Interrogatories Nos. 2 and 3 are directed to the facts Enterasys has *now* to support its allegations that Foundry's products infringe. Enterasys doesn't challenge the propriety of the interrogatories or what they seek, or say it doesn't have the answers -- the only issue appears to be that it doesn't want to share the information now absent a court order. Yet, without answers now to these interrogatories, there is no way for Foundry to frame the issues going forward in discovery, or to know whether it is appropriate to bring a Rule 11 motion charging Enterasys with a failure of pre-suit diligence.

Enterasys' refusal to answer Interrogatory No. 2 until the last minute, in mid-July, and its refusal to answer Interrogatory No. 3 absent a Rule 11 motion, raises serious questions as to whether Enterasys ever had a basis to assert its patents against Foundry in the first place.

Accordingly, Foundry respectfully requests that Enterasys be ordered to immediately answer Foundry's Interrogatory Nos. 2 and 3, with such answers to be provided by Enterasys within five days of an Order of this Court.

## I.      BRIEF BACKGROUND

### A.      Enterasys Simply Refuses to Provide the Answers, Although It Says It Conducted a Pre-Trial Investigation, and That It Knows What Products It Intends to Accuse, and Why.

This is a patent case that Enterasys filed against two independent defendants, Foundry and Extreme Networks, Inc., almost one year ago, on June 21, 2005.[1] (Docket No. 1). (Foundry

---

[1] Defendants Foundry and Extreme moved to sever the case and Judge Woodlock allowed the motion, and directed Enterasys to file a separate complaint against Extreme, with the new case to be consolidated with this action for trial management. (*See* Electronic Order of 11/3/2005).

and Extreme are separate companies that compete against one another in the marketplace and have no relation, except that they are both competitors of Enterasys.)

Enterasys states that it "first formed the belief that Foundry products were infringing in March of 2004" when "outside counsel had exclusively performed a detailed pre-suit investigation in that time frame that included both claim construction and infringement analysis." (Ex. B, Enterasys' Response to Interrogatory No. 3).

However, nearly a year into this case, Enterasys has not provided any detailed information related to its infringement case in response to Foundry's discovery requests.[2]

## B.  Enterasys Has Been Deficient In Its Discovery Obligations.

This case is currently in "Phase I" of discovery, which has been limited to the liability issues of infringement, invalidity, and unenforceability.  (*See* Docket Nos. 28, 31).

On March 3, 2006, Foundry and Enterasys exchanged their first sets of document requests.  To date, Foundry has produced over 57,000 pages of documents to Enterasys.  However, Enterasys has not produced a *single* document to Foundry.

On March 14, 2006, Foundry served its first set of interrogatories on Enterasys.  (A copy is attached as Ex. A).  In response, on April 13, 2006, Enterasys provided substantive answers to only two of Foundry's eleven interrogatories.[3]  On April 26, 2006, after the parties had met and conferred at Foundry's request, Enterasys provided certain supplemental responses, but it still refuses to provide any detailed information in response to Interrogatories Nos. 2 and 3, describing the merits of its case.  (A copy is attached as Ex. B).  Enterasys has not served any interrogatories on Foundry in this case.

---

[2] Only after Foundry raised the issue, Enterasys provided Foundry with a list of two or three claims of each patent that Enterasys believes covers Foundry's products, with lists of accused products and features.  However, Enterasys refuses to tell Foundry in detail *how* the accused products infringe until July 17, 2006.

[3] This motion to compel only addresses certain of the interrogatories that Enterasys refused to answer.  Foundry reserves the right to move to compel on Enterasys' other insufficient interrogatory responses.

## II.    **ARGUMENT**

### A.    **Enterasys Should Be Ordered To Answer Foundry's Interrogatory No. 2 Now Because Enterasys' "Premature" Objection Is Improper.**

Interrogatory No. 2 asks Enterasys to provide its infringement contentions:

> Describe in detail and provide a claim chart showing how each FOUNDRY PRODUCT identified in Interrogatory No. 1 infringes each of the corresponding claims.  ENTERASYS' response to this interrogatory should:  A) identify a proposed construction for each element of each asserted claim that ENTERASYS identifies as being infringed; B) identify specifically where each element of each asserted claim is found within each FOUNDRY PRODUCT, including citation to any supporting evidence; C) identify for each asserted claim element that ENTERASYS contends is a means-plus-function element governed by 35 U.S.C. § 112(6), the structures, acts, or materials in each FOUNDRY PRODUCT that performs the claimed function; and D) state whether each element of each asserted claim is literally present or present under the doctrine of equivalents.

Enterasys doesn't dispute that Foundry is entitled to an answer to Interrogatory

No. 2.  It seems that Enterasys simply doesn't want to provide its answer *now*, despite the

fact that this case has been pending for almost a year.  Enterasys objected to this question

as follows:

> Enterasys further objects to this Interrogatory – particularly when read in conjunction with Interrogatory No. 1 above – as contrary to the Court's Scheduling Order entered in this case on November 18, 2005 because it purports to require that *Enterasys either actually or effectively provide detailed claim construction charts identifying asserted claims and accused products at this premature juncture in the case.  Consistent with that Scheduling Order, Enterasys is not required to, and accordingly will not, provide detailed claim construction charts of their equivalents until July 17, 2006.*
> (emphasis added).

Apparently, Enterasys has decided to argue that a Court-ordered *deadline* for Enterasys to

serve infringement construction charts identifying asserted claims and products accused of literal

or doctrine of equivalents infringement is the same as its *due date*.  There is nothing in the

Scheduling Order, however, that precludes Foundry from finding out about Enterasys'

infringement case *before* July 17, 2006, whether by use of interrogatories, depositions, or

otherwise. (Docket No. 31, at 1).

At the Scheduling Conference on November 3, 2005, the Court made clear that

Defendants *could* seek this information before the July 17, 2006 deadline:

> DEFENDANT'S COUNSEL:        We also have a concern,
> Your Honor, with some of the deadlines the plaintiff is proposing.
> This starts with the July 17, 2006 date that Enterasys is proposing
> on page three of the joint schedule. Those next three entries, we
> believe, can simply be dealt with through interrogatories. Because
> what this does is permit them to go longer even if they know their
> preliminary contentions without telling us.
>
> THC COURT:     I don't understand what you mean by that.
>
> DEFENDANT'S COUNSEL:        Simply that we would like to
> know what the --
>
> THE COURT:     Why aren't the claim construction -- why aren't
> the claim constructions the functional equivalent of interrogatories,
> anyway?
>
> DEFENDANT'S COUNSEL:        Well, that comes much later.
> We need to know their theories of infringement much earlier than
> that. *And, so, we'd like to simply serve interrogatories asking*
> *those questions and they can tell us what their contentions are,*
> *their theories of infringement.*
>
> THE COURT:     *What prevents you from that here?*
>
> DEFENDANT'S COUNSEL:        *Well, if we can do that as*
> *well, then that's fine, Your Honor.* My only concern --
>
> THE COURT:     I'm not going to -- I won't get into the specifics,
> I don't think, of the way you conduct your discovery with the
> exception of the claim construction charts which I think are, on
> balance, a pretty good idea. *If you want to propound*
> *interrogatories during that time period, go ahead. I don't see that*
> *as a problem.*

(Ex. C, Nov. 3, 2005 Tr. at 18-19) (emphasis added).

Importantly, Enterasys has offered no reason why it *needs* to wait until July 17, 2006 to tell Foundry about its current infringement contentions, especially in light of its assertion that Enterasys "first formed the belief that Foundry products were infringing in *March of 2004*" when "outside counsel had exclusively performed a detailed pre-suit investigation in that time frame *that included both claim construction and infringement analysis*." (Ex. B, Enterasys' Response to Interrogatory No. 3) (emphasis added).

There is no justification (other than delay for the sake of delay) for plaintiff Enterasys to refuse to tell the defendants on what basis it brought this suit, or how it contends Foundry's products infringe the patents-in-suit.

Enterasys' position, that Foundry cannot "ferret out Enterasys' infringement contentions at once via interrogatories rather than having Enterasys afforded a Court ordered date certain by which it would need to serve claim construction charts," is wrong. (Ex. D, Apr. 18, 2006 Letter from M. Henschke to J. Oczek). The Court heard Enterasys' concern at the Scheduling Conference, and rejected it once.

Foundry has the right to a detailed answer to Interrogatory No. 2 so that it can frame the infringement issues going forward in Phase I of discovery. Enterasys has had these answers for *over two years*. Enterasys should stop hiding the ball. Otherwise, all discovery should be stayed until Enterasys has properly and adequately identified its infringement contentions. *See Network Caching Techs., L.L.C. v. Novell Inc.*, 67 U.S.P.Q.2d 1034, 1040 (N.D. Cal. 2002) (staying all discovery until the plaintiff had adequately identified their infringement contentions in that case).

**B.      Enterasys Should Also Be Ordered To Answer Interrogatory No. 3 Which Is Directed To What *Facts* Enterasys Has To Support Its Contention That Foundry's Products Allegedly Infringe.**

Interrogatory No. 3 asks:

> For each FOUNDRY PRODUCT identified in ENTERASYS'
> response to Interrogatory No. 1, state all facts concerning
> ENTERASYS' forming of its belief that the FOUNDRY PRODUCT
> infringes, including, but not limited to, the date that ENTERASYS
> first learned of the FOUNDRY PRODUCT; the date ENTERASYS
> first came to believe the FOUNDRY PRODUCT was allegedly
> infringing; the PERSONS, DOCUMENTS and things involved in
> informing ENTERASYS about the FOUNDRY PRODUCT and in
> forming ENTERASYS's belief that the FOUNDRY PRODUCT is
> infringing; and all efforts that ENTERASYS undertook to
> substantiate its belief that the FOUNDRY PRODUCT is allegedly
> infringing, including, but not limited to, all acquisition, testing and
> reverse-engineering of FOUNDRY PRODUCTS and the individuals
> involved in such efforts.

Despite the clarity of Interrogatory No. 3 and its request for the *facts* in Enterasys' possession regarding its claims against Foundry, Enterasys objected to providing any substantive answer on the basis of attorney-client privilege and work product:

> On grounds of the attorney-client privilege and/or the work product
> doctrine, Enterasys declines to provide any further information
> concerning this pre-suit investigation except as necessary in response
> to any motion filed by Foundry under Federal Rule of Civil
> Procedure 11.

Enterasys' response evades the crucial inquiry:  what *factual* basis did Enterasys have for its claims of infringement?  Enterasys says that it conducted *two* pre-suit investigations, one in March of 2004 and the other in March of 2005.  It says that these pre-suit investigations were based upon "Foundry's publicly available technical and product marketing documents."  (Ex. B, Enterasys' Response to Interrogatory No. 3).  Since Enterasys claims that it obtained Foundry's technical and product marketing documents prior to filing suit, it should be a simple matter for Enterasys to state now how it believed Foundry's accused products infringed and the foundation for that belief.

The underlying facts that result from Enterasys' pre-suit investigation are not privileged or protected by work product.  Merely saying that a "pre-filing investigation" occurred in March

2004, does not contain any *factual detail* as to what investigation or testing was conducted on Foundry's accused products.

Enterasys' assertion of privilege and work product simply cannot apply to the *facts* in its possession that support its contention that Foundry's products infringe. Facts are not privileged or protected. *See Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) ("Because the work product doctrine is intended only to guard against the divulging of attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within the work product."); *Phillips Electronics North America Corp. v. Universal Electronics, Inc.*, 892 F.Supp. 108, 110 (D. Del. 1995) ("plaintiff may not rely on Rule 26(b)(3) or claims of work product as a basis for refusing to respond to discovery requests seeking the disclosure of non-privileged facts.").

By failing to answer Interrogatory No. 3 in any detail, Enterasys is trying to deprive Foundry of sufficient information to understand Enterasys' theories of infringement, including knowledge of what documents Enterasys had and consulted, what efforts it undertook to form its belief that the Foundry products infringe the patents-in-suit, and whether Enterasys actually obtained and evaluated any Foundry products for purposes of filing suit. Indeed, Enterasys refuses even to tell Foundry if it had a factual basis to bring this suit.

The Federal Circuit has recognized the importance of ensuring that a plaintiff have a factual and evidentiary basis for every single patent claim it asserts. "Advancing even a single invalid theory," the court noted, "forces the defendant to respond and to do work it should not have been required to do." *Antonious* v. *Spalding & Evenflo Cos.*, 275 F.3d 1066, 1075 (Fed. Cir. 2002) (quoting *Frantz v. U.S. Powerlifting Fed'n*, 836 F.2d 1063, 1067 (7th Cir. 1987) (Posner, J.)). "Each claim takes up the time of the legal system and the opposing side. A single

claim . . . may occasion the expenditure of hundreds or thousands of hours, as opposing counsel try to verify or refute the allegations and theories." *Id.*

The Federal Circuit has also stated that an accused infringer must be provided with the type of factual information which Foundry seeks: "In bringing a claim of infringement, the patent holder, if challenged, must be prepared to demonstrate to both the Court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement." *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2001). By improperly asserting the attorney-client and/or work product privilege to Interrogatory No. 3, Enterasys has failed to provide Foundry with the necessary facts to move forward in this litigation.

Accordingly, Enterasys should be ordered to immediately answer Interrogatory No. 3.

## III.    <u>CONCLUSION</u>

Foundry respectfully requests that Enterasys be ordered to immediately answer Foundry's Interrogatories Nos. 2 and 3, with such answers to be provided by Enterasys within five days of an Order of this Court.

Dated:  April 27, 2006

Respectfully Submitted,

DEFENDANT FOUNDRY NETWORKS, INC.

By Its Attorneys,

_/s/ Jeremy P. Oczek_

Steven M. Bauer (BBO #542531)
Jeremy P. Oczek (BBO #647509)
PROSKAUER ROSE LLP
One International Place
Boston, MA  02110-2600
Telephone:  (617) 526-9600
Facsimile:   (617) 526-9899
sbauer@proskauer.com
joczek@proskauer.com

William L. Anthony, Jr. (admitted pro hac vice)
I. Neel Chatterjee (admitted pro hac vice)
Michael F. Heafey (BBO # 556931)
Sanjeet K. Dutta (admitted pro hac vice)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 614-7400
Facsimile:   (650) 614-7401
wanthony@orrick.com
nchatterjee@orrick.com
mheafey@orrick.com
sdutta@orrick.com

## Certificate Pursuant To Rule 7.1

The undersigned counsel hereby certifies that counsel for the parties have conferred in an attempt to resolve or narrow the issues presented by this motion, and that counsel for plaintiff Enterasys would not agree to the relief sought by this motion.

_/s/ Jeremy P. Oczek_

Jeremy P. Oczek

**<u>Certificate of Service</u>**

The undersigned hereby certifies that this document was filed through the ECF system on April 27, 2006 and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

_/s/ Jeremy P. Oczek_

Jeremy P. Oczek

# **EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

ENTERASYS NETWORKS, INC,

         Plaintiff,

   v.

FOUNDRY NETWORKS, INC. and
EXTREME NETWORKS, INC.,

        Defendants.

Civil Action No. 05-CV-11298 (DPW)

## FOUNDRY NETWORKS, INC.'S FIRST SET OF INTERROGATORIES (NOS. 1-11) TO PLAINTIFF ENTERASYS NETWORKS, INC.

Defendant Foundry Networks, Inc. hereby propounds the following interrogatories to Plaintiff Enterasys Networks, Inc. in accordance with the provisions of Rules 26 and 33 of the Federal Rules of Civil Procedure. Plaintiff shall answer the interrogatories in writing, separately and fully under oath, within thirty days of service of these interrogatories.

## DEFINITIONS

These interrogatories incorporate the definitions set forth in Foundry Networks, Inc.'s First Request for Production of Documents and Things to Plaintiff Enterasys Networks, Inc. and the Uniform Definitions in Discovery Requests of Local Rule 26.5 from the District of Massachusetts. In addition, the term "FOUNDRY PRODUCT" as used herein means any product designed, developed, manufactured, licensed, marketed, or sold by FOUNDRY.

## INSTRUCTIONS

A.     Each interrogatory is to be answered fully, unless good faith objected to, in which event, ENTERASYS shall state the reasons for ALL of its objections in detail. If an objection pertains to only a portion of an interrogatory, or to a word or phrase contained within an interrogatory, ENTERASYS shall state its objection to that portion only, and respond to the

remainder of the interrogatory, using its best efforts to do so. No part of an interrogatory may be left unanswered merely because an objection is interposed to another part of the interrogatory.

B.      If, in responding to any of these interrogatories, ENTERASYS encounters any ambiguity in construing either the interrogatory or a definition or instruction relevant to it, ENTERASYS shall set forth the matter deemed ambiguous and the construction used in responding to the interrogatory.

C.      If an interrogatory is silent as to the time period for which a response is sought, ENTERASYS shall identify or disclose ALL information or facts known, in whole or in part, at any time prior to and up through, the date of ENTERASYS' responses to these interrogatories.

D.      If ENTERASYS asserts a claim of attorney-client privilege, work product immunity, or any other privilege or immunity in objecting to any interrogatory or part of any interrogatory, ENTERASYS shall provide the following information for each claim:

(a)      the nature of the privilege being claimed (including work product or privilege);

(b)      the specific portion of the interrogatory to which the objection relates; and

(c)      if the privilege is being asserted concerning information contained in a particular DOCUMENT or communication, ENTERASYS shall identify:

(i)      the date or estimated date that the DOCUMENT was authored or generated or the communication was made;

(ii)      each author of the DOCUMENT or participant in the communication;

(iii)      each addressee or recipient of a copy of the document;

(iv)      the name and title of each PERSON who at any time has read or had possession of the document or of any copy thereof;

(v)      ALL grounds for any claim that the document is privileged or otherwise protected from discovery, in sufficient detail so as to allow for resolution of the propriety of such claim; and

(vi)      provide a summary of the subject matter of the DOCUMENT or communication sufficient to enable an evaluation of the claim of privilege.

E.      If any DOCUMENT or thing otherwise responsive to any interrogatory has been lost, discarded, or destroyed since its preparation or receipt, ENTERASYS shall identify, as completely as possible, the DOCUMENT or thing, and give full particulars or circumstances under which the document or thing was lost or destroyed, including, without limitation, each DOCUMENT'S date, the general nature of the DOCUMENT (*e.g.*, letter, memorandum, fax, electronic mail, etc.), the subject matter of the DOCUMENT, each author or originator, each PERSON indicated as an addressee or copy recipient, or known by ENTERASYS to have received a copy of the DOCUMENT or thing, and the DOCUMENT's former custodians.  In addition, as to each such DOCUMENT or thing, the following information shall be supplied:

(a)     date of disposal, loss or destruction;

(b)     manner of disposal, loss or destruction;

(c)     reason for disposal or destruction, or an explanation of the loss;

(d)     identity of the PERSON authorizing the disposal or destruction;

(e)     identity of the PERSON having knowledge of the disposal, loss or destruction;

(f)     identity of the PERSON who destroyed, lost or disposed of the DOCUMENT or thing; and

(g)     identity of any PERSON believed to have possession, custody or control of the DOCUMENT or thing.

F.      These interrogatories shall be deemed to be continuing and in the event that ENTERASYS becomes aware of additional knowledge or information responsive in whole or in part thereto after the date of answering specified herein above, ENTERASYS shall furnish such additional knowledge and information to FOUNDRY'S attorneys of record promptly after acquiring such additional knowledge or information.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Separately identify each FOUNDRY PRODUCT that ENTERASYS contends infringes any of the PATENTS-IN-SUIT, by name, product number, and/or description, and for each such product, include the specific claims that are allegedly infringed, and whether that alleged infringement is direct, contributory and/or by inducement.

**INTERROGATORY NO. 2:**

Describe in detail and provide a claim chart showing how each FOUNDRY PRODUCT identified in Interrogatory No. 1 infringes each of the corresponding claims. ENTERASYS' response to this interrogatory should: A) identify a proposed construction for each element of each asserted claim that ENTERASYS identifies as being infringed; B) identify specifically where each element of each asserted claim is found within each FOUNDRY PRODUCT, including citation to any supporting evidence; C) identify for each asserted claim element that ENTERASYS contends is a means-plus-function element governed by 35 U.S.C. § 112(6), the structures, acts, or materials in each FOUNDRY PRODUCT that performs the claimed function; and D) state whether each element of each asserted claim is literally present or present under the doctrine of equivalents.

**INTERROGATORY NO. 3:**

For each FOUNDRY PRODUCT identified in ENTERASYS' response to Interrogatory No. 1, state all facts concerning ENTERASYS' forming of its belief that the FOUNDRY PRODUCT infringes, including, but not limited to, the date that ENTERASYS first learned of the FOUNDRY PRODUCT; the date ENTERASYS first came to believe the FOUNDRY PRODUCT was allegedly infringing; the PERSONS, DOCUMENTS and things involved in informing ENTERASYS about the FOUNDRY PRODUCT and in forming ENTERASYS's belief that the FOUNDRY PRODUCT is infringing; and all efforts that ENTERASYS undertook to substantiate its belief that the FOUNDRY PRODUCT is allegedly infringing, including, but

not limited to, all acquisition, testing and reverse-engineering of FOUNDRY PRODUCTS and the individuals involved in such efforts.

**INTERROGATORY NO. 4:**

For each FOUNDRY PRODUCT identified in Interrogatory No. 1, identify the PERSON or PERSONS employed by or associated with ENTERASYS most knowledgeable regarding the structure, function, and operation of each such FOUNDRY PRODUCT.

**INTERROGATORY NO. 5:**

For each asserted claim of the PATENTS-IN-SUIT identified in response to Interrogatory No. 1, describe the circumstances surrounding the alleged invention of the claim, including but not limited to, the identity of ALL PERSONS involved in the conception of the alleged invention; the precise date of conception of the alleged invention; where the conception took place; the date of the first written description of the alleged invention; the date of first disclosure of the alleged invention to a PERSON other than the named inventor(s); the date of first testing of the alleged invention; the date of first actual reduction to practice of the alleged invention; where the first actual reduction to practice took place; ALL corroborating witnesses; the steps constituting diligence from conception to actual or constructive reduction to practice; the identify of each first product which incorporated any invention claimed in the patent; the date of first use of the alleged invention by a PERSON other than by a named inventor; the date of first advertisement or promotion of the alleged invention; the date of first sale or offer for sale of the alleged invention; and ALL project names, numbers, codes, descriptions, or other identifiers, whether external or internal, used by ENTERASYS and/or any prior owners of the PATENTS-IN-SUIT (including DEC or CABLETRON) relating to development of the subject matter of each of the PATENTS-IN-SUIT.

**INTERROGATORY NO. 6:**

Identify ALL articles, systems, products, components and/or devices ever sold by ENTERASYS and/or any prior owners of the PATENTS-IN-SUIT (including DEC or CABLETRON) which use an invention claimed in any of the PATENTS-IN-SUIT, and for each

such article, system, product, component or device, state which PATENTS-IN-SUIT covers that article, system, product, component or device, its date of commercial sale (beginning and end), and the PERSONS at ENTERASYS most knowledgeable about the design, development, testing, manufacture, marketing, sale, and licensing of each such article, system, product, component or device.

**INTERROGATORY NO. 7:**

Describe the marking of each article, system, product, component and/or device that has been marked with the number of any of the PATENTS-IN-SUIT in any manner pursuant to 35 U.S.C. § 287, including, but not limited to, any marking by ENTERASYS and/or any prior owners of the PATENTS-IN-SUIT (including DEC or CABLETRON), and any licensees (whether current or otherwise) of the PATENTS-IN-SUIT. For purposes of this interrogatory, the phrase "describe the marking" means provide: the name of the patented article, system, product, component or device; a product number, part number, or other identifying number; a description of the article, system, product, component or device; a list of all patent numbers that have been marked in any manner on the patented article, system, product, component or device; the date(s) that each patented article, system, product, component or device was first marked with each of the patent numbers; and, for each patent number marked on each patented article, system, product, component or device, information regarding whether the patented article, system, product, component or device was marked continuously with each patent number following the first marking with that patent number.

**INTERROGATORY NO. 8:**

Identify ALL prior art and ALL articles, references, products (whether on-sale or in public use) or other evidence that ENTERASYS is aware of or that ANY person or entity, including any PATENT AGENCY, has contended or asserted is prior art or otherwise relevant to the validity or invalidity of ANY claim of the PATENTS-IN-SUIT.

**INTERROGATORY NO. 9:**

Identify ALL PERSONS who participated in the prosecution of the PATENTS-IN-SUIT and related applications, including without limitation the PERSONS who provided technical input, drafted the application(s), prosecuted the application(s) before the PTO or other PATENT AGENCY, conducted prior art searches, reviewed prior art search results, drafted affidavits, drafted amendments, reviewed or commented on communications from the PTO or other PATENT AGENCY, prepared or filed papers in the PTO or other PATENT AGENCY and participated in interviews with the PTO or other PATENT AGENCY.  With respect to each PERSON identified, state the nature and duration of his or her involvement.

**INTERROGATORY NO. 10:**

State ALL facts and identify ALL DOCUMENTS, communications, and things concerning the transfer of ownership or rights relating to any PATENTS-IN-SUIT, including ANY contracts, transfer agreements or assignments, between ENTERASYS and any third party, including DEC or CABLETRON.

**INTERROGATORY NO. 11:**

Identify ALL DOCUMENTS and witnesses on which ENTERASYS intends to rely at trial in this action.

Dated:  March 14, 2006

DEFENDANT FOUNDRY NETWORKS, INC.

By Their Attorneys,

_____

Steven M. Bauer
Jeremy P. Oczek
PROSKAUER ROSE LLP
One International Place
Boston, MA  02110-2600
Telephone:  (617) 526-9600
Facsimile:  (617) 526-9899

William L. Anthony, Jr.
I. Neel Chatterjee
Michael F. Heafey
Sanjeet K. Dutta
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 614-7400
Facsimile:  (650) 614-7401

## CERTIFICATE OF SERVICE

I, Jeremy P. Oczek, hereby certify that on March 14, 2006, I caused the attached Foundry Networks, Inc.'s First Set of Interrogatories (Nos. 1-11) to Plaintiff Enterasys Networks, Inc. to be served by upon counsel of record for Enterasys Networks, Inc. by the following methods:

***Via Hand Delivery and E-Mail:***

Christopher P. Sullivan, Esq.
Marc N. Henschke, Esq.
Alan E. McKenna, Esq.
Robins, Kaplan, Miller & Ciresi LLP
800 Boylston Street, 25th Floor
Boston, MA  02199
E-mail:  cpsullivan@rkmc.com
E-mail:  mnhenschke@rkmc.com
E-mail:  aemckenna@rkmc.com

***Via E-mail Only:***

A. James Anderson, Esq.
Marla R. Butler, Esq.
Robins, Kaplan, Miller & Ciresi LLP
2600 One Atlanta Plaza
950 East Paces Ferry Road, N.E.
Atlanta, GA  30326-1386
E-mail:  ajanderson@rkmc.com
E-mail:  mrbutler@rkmc.com

***Via E-mail Only:***

Robert A. Auchter, Esq.
Robins, Kaplan, Miller & Ciresi LLP
Suite 1200
1801 K Street, N.W.
Washington, D.C. 20006
E-mail:  raauchter@rkmc.com

Jeremy P. Oczek

# **<u>EXHIBIT B</u>**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

_____

ENTERASYS NETWORKS, INC.,                )         Civil Action No: 05-CV-11298 (DPW)
                                         )
                Plaintiff,               )
                                         )
v.                                       )
                                         )
FOUNDRY NETWORKS, INC.,                  )
                                         )
                Defendant.               )
_____ )

## PLAINTIFF ENTERASYS NETWORKS, INC.'S FIRST SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANT FOUNDRY NETWORKS, INC.'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Enterasys

Networks, Inc. ("Enterasys" or "Plaintiff") hereby supplements and corrects its initial responses

and objections to the First Set Of Interrogatories served by Defendant Foundry Networks, Inc.

("Foundry" or "Defendant") on or about March 14, 2006.

## GENERAL RESPONSE

Enterasys, based upon its current knowledge, understanding, and belief concerning the

information available to it as of the date on which these Responses are made, responds and

objects as set forth below to Foundry's First Set of Interrogatories.  These Responses, while

based on diligent investigation by Enterasys and its counsel, reflect only the current state of

Enterasys' knowledge, understanding, and belief respecting the matters about which inquiry was

made.  Enterasys has not completed its investigation of the facts relating to this case, its

discovery in this action, nor its preparation for trial.  As this action proceeds, Enterasys

anticipates that further facts may be discovered, and without in any way obligating itself to do so,

Enterasys reserves the right to modify or supplement its Responses with such pertinent information as it may subsequently discover. Furthermore, these Responses are given without prejudice to using or relying upon subsequently discovered information at trial, nor using or relying upon information omitted from these Responses as a result of mistake, error, oversight or inadvertence. Enterasys further reserves the right to produce additional facts and evidence at trial, and to object on appropriate grounds to the introduction of any evidence included in these Responses.

Specific objections to an interrogatory, part, or subpart thereof are made on an individual basis in Enterasys' Responses below. In addition to those specific objections, Enterasys objects generally as follows:

## GENERAL OBJECTIONS

1.      Enterasys objects to the "Instructions" and "Definitions" contained or incorporated into Foundry's interrogatories insofar as they seek to impose obligations beyond those set forth in the Federal Rules of Civil Procedure or the Local Rules Of The United States District Court For The District Of Massachusetts.

2.      Enterasys objects to each of the interrogatories propounded by Foundry, and to each part and subpart thereof, to the extent that they seek information protected by the attorney-client privilege or the work product doctrine. The specific objections stated below on the grounds of attorney-client privilege and/or the work product doctrine in no way limit the generality of this objection. Nothing contained in these Responses is intended to be or should be considered a waiver of any attorney-client privilege, work product protection, privacy right, trade secret or confidential information protection, or any other applicable privilege or doctrine. To the extent that any interrogatory, part, or subpart thereof may be construed as calling for

disclosure of information protected by such privileges or doctrines, a continuing objection to each and every such interrogatory, part, and subpart is hereby imposed.

3.      Enterasys objects to each of the interrogatories propounded by Foundry insofar as they seek information that is neither relevant to a claim or a defense of a party herein, nor reasonably calculated to lead to the discovery of admissible evidence.

4.      Enterasys objects to each of the interrogatories propounded by Foundry insofar as they seek information that, by reason of public filings or otherwise, is already in Foundry's possession or is readily accessible to Foundry.

5.      Enterasys objects to each of the interrogatories propounded by Foundry insofar as they are redundant, overlapping, and duplicative of other discovery Foundry is seeking in this case and are therefore burdensome, oppressive, and annoying.

6.      Enterasys objects to each of the interrogatories propounded by Foundry insofar as they are vague, ambiguous, or unintelligible.

7.      Enterasys objects to the "Definitions" incorporated into Foundry's interrogatories insofar as they purport to define the term "ENTERASYS PATENTS" to include patents that have no familial relationship with any of the patents-in-suit and merely "cite" to one or more of the patents-in-suit.

8.      Enterasys objects to the "Definitions" incorporated into Foundry's interrogatories insofar as they purport to define the term "INDUSTRY STANDARD" to include "any standard or RFC associated with data networking technology," thereby implicating standards or RFCs that are not directly relevant to one or more of the inventions disclosed in the patents-in-suit. Enterasys has previously identified the standards and RFCs that it believes to be of direct

relevance in the "Definitions" section provided in its own set of document requests served upon Foundry on March 3, 2006.

9.     Enterasys objects to the "Instructions" contained in Foundry's interrogatories insofar as they purport to require the production of a privilege log with a level of detail which exceeds that mandated by the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Massachusetts.

<u>**SPECIFIC RESPONSES AND OBJECTIONS**</u>

Enterasys hereby incorporates its General Response and General Objections set forth above into its Specific Responses and Objections set forth below.

<u>**INTERROGATORY NO. 1:**</u>

Separately identify each FOUNDRY PRODUCT that ENTERASYS contends infringes any of the PATENTS-IN-SUIT, by name, product number, and/or description, and for each such product, include the specific claims that are allegedly infringed, and whether that alleged infringement is direct, contributory and/or by inducement.

<u>**RESPONSE TO INTERROGATORY NO. 1:**</u>

Enterasys objects to this Interrogatory on grounds that it calls for information that is protected from disclosure by the attorney-client privilege and/or by the work product doctrine; that it is overly broad, unduly burdensome, vague, and ambiguous; and that it seeks information neither relevant to a claim or defense of a party nor reasonably calculated to lead to the discovery of admissible evidence.

Enterasys further objects to this Interrogatory -- particularly when read in conjunction with Interrogatory No. 2 below -- as contrary to the Court's Scheduling Order entered in this case on November 18, 2005 because it purports to require that Enterasys either actually or effectively

4

provide detailed claim construction charts identifying asserted claims and accused products at this premature juncture of the case.  Consistent with that Scheduling Order, Enterasys is not required to, and accordingly will not, provide detailed claim construction charts or their equivalents until July 17, 2006.

Subject to and without waiving its objections, Enterasys states that it is, and will be, asserting at least the following patent claims in this case:

Claims 1, 5, 20 and 21 of U.S. Patent No. 5,251,205 (the "'205 patent").

Claims 1 and 10 of U.S. Patent No. 5,390,173 (the "'173 patent").

Claims 1 and 4 of U.S. Patent No. 6,128,665 (the "'665 patent").

Claims 1 and 25 of U.S. Patent No. 6,147,995 (the "'995 patent").

Claims 1, 6, 14 and 20 of U.S. Patent No. 6,539,022 (the "'022 patent").

Claims 1 and 15 of U.S. Patent No. 6,560,236 (the "'236 patent").

Enterasys expressly reserves the right to add additional asserted claims to the above list at the time it provides claim construction charts on July 17, 2006, or at any time thereafter, as evidence and events may warrant.

Enterasys is, and will be, accusing of infringing one or more of the asserted claims listed above every Foundry product sold or licensed during the relevant damages period belonging to any of the following product families: (i) FastIron; (ii) NetIron; (iii) ServerIron; (iv) TurboIron; (v) BigIron; (vi) EdgeIron; (vii) AccessIron; and (viii) any software used in connection with any accused feature contained in any product from these families including, but not necessarily limited to, IronView software.

Enterasys is, and will be, asserting that one or more of the claims listed above read on the following accused features contained in some or all of the accused products listed above:

The asserted claims of the '205 patent read on Multi-Protocol Label Switching ("MPLS") features as that term is used in Foundry's own technical and marketing literature. These claims also more generally read on features involving any routing algorithm that can be used to calculate packet routes for all received packets regardless of the multiple different routing protocol suites (e.g., the TCP/IP protocol suite; the OSI protocol suite; etc.) to which such packets may conform, and without the need to convert the destination address of any packet to an addressing convention associated with a routing protocol suite different from the one to which that packet conforms.

The asserted claims of the '173 patent read on features that add a second internal header to a data packet that consists of a field or fields that contain local source and/or destination addresses that have been translated or derived from the typically longer unique network source and/or destination addresses (e.g., MAC addresses) contained in a first header. These second internal headers are sometimes described in Foundry's own technical and marketing literature as "internal Foundry headers," "Foundry internal headers," and/or as "optimized headers."

The asserted claims of the '665, '995, and '236 patents read on VLAN features, including IEEE 802.1Q VLANs, port-based VLANs, protocol-based VLANs, MAC-based VLANs, subnet-based VLANs, and default VLANs as those terms are used in Foundry's own technical and marketing literature.

The asserted claims of the '022 patent read on IGMP snooping features, including RFC 1112 IGMP features, RFC 2236 IGMP features, and RFC 3376 IGMP features as those terms are used in Foundry's own technical and marketing literature.

Enterasys is alleging direct infringement by accused Foundry products under 35 U.S.C. §271(a) relative to the asserted claims listed above that are directed to "a network bridge," "a port based default VLAN," "a computer program product," or "a computer-readable storage medium comprising program instructions."

Enterasys is principally alleging inducement of infringement and contributory infringement by accused Foundry products under 35 U.S.C. §271(b) and (c) relative to the asserted claims listed above that are directed to a "network of information handling devices" or a "packet data communications network." In these instances, the direct infringers are Foundry's customers. However, Enterasys may also allege direct infringement against Foundry relative to such claims to the extent that the evidence shows that Foundry has used accused products in networks present at its own facilities, has tested accused products in a network environment, or has demonstrated accused products in a network environment for customers or others.

Enterasys will supplement or correct its response to this Interrogatory, if necessary, at an appropriate interval of this case in a manner consistent with the requirements of Federal Rule of Civil Procedure 26(e).

**<u>INTERROGATORY NO. 2:</u>**

Describe in detail and provide a claim chart showing how each FOUNDRY PRODUCT identified in Interrogatory No. 1 infringes each of the corresponding claims. ENTERASYS' response to this interrogatory should: A) identify a proposed construction for each element of each asserted claim that ENTERASYS identifies as being infringed; B) identify specifically where each element of each asserted claim is found within each FOUNDRY PRODUCT, including citation to any supporting evidence; C) identify for each asserted claim element that ENTERASYS contends is a means-plus-function element governed by 35 U.S.C. § 112(6), the

structures, acts, or materials in each FOUNDRY PRODUCT that performs the claimed function; and D) state whether each element of each asserted claim is literally present or present under the doctrine of equivalents.

## RESPONSE TO INTERROGATORY NO. 2:

Enterasys objects to this Interrogatory on grounds that it calls for information that is protected from disclosure by the attorney-client privilege and/or by the work product doctrine; that it is overly broad, unduly burdensome, vague, and ambiguous; and that it seeks information neither relevant to a claim or defense of a party nor reasonably calculated to lead to the discovery of admissible evidence.

Enterasys further objects to this Interrogatory -- particularly when read in conjunction with Interrogatory No. 1 above -- as contrary to the Court's Scheduling Order entered in this case on November 18, 2005 because it purports to require that Enterasys either actually or effectively provide detailed claim construction charts identifying asserted claims and accused products at this premature juncture of the case. Consistent with that Scheduling Order, Enterasys is not required to, and accordingly will not, provide detailed claim construction charts or their equivalents until July 17, 2006.

Subject to and without waiving its objections, Enterasys hereby incorporates by reference as if set forth fully herein its Response To Interrogatory No. 1 above.

Enterasys will supplement or correct its response to this Interrogatory, if necessary, at an appropriate interval of this case in a manner consistent with the requirements of Federal Rule of Civil Procedure 26(e).

## INTERROGATORY NO. 3:

For each FOUNDRY PRODUCT identified in ENTERASYS' response to Interrogatory

8

No. 1, state all facts concerning ENTERASYS' forming of its belief that the FOUNDRY PRODUCT infringes, including, but not limited to, the date that ENTERASYS first learned of the FOUNDRY PRODUCT; the date ENTERASYS first came to believe the FOUNDRY PRODUCT was allegedly infringing; the PERSONS, DOCUMENTS and things involved in informing ENTERASYS about the FOUNDRY PRODUCT and in forming ENTERASYS's belief that the FOUNDRY PRODUCT is infringing; and all efforts that ENTERASYS undertook to substantiate its belief that the FOUNDRY PRODUCT is allegedly infringing, including, but not limited to, all acquisition, testing and reverse-engineering of FOUNDRY PRODUCTS and the individuals involved in such efforts.

**RESPONSE TO INTERROGATORY NO. 3:**

Enterasys objects to this Interrogatory on grounds that it calls for information that is protected from disclosure by the attorney-client privilege and/or by the work product doctrine; that it is overly broad, unduly burdensome, vague, and ambiguous; and it seeks information neither relevant to a claim or defense of a party nor reasonably calculated to lead to the discovery of admissible evidence.

Enterasys further objects to this Interrogatory on grounds that it incorporates by reference Interrogatory No. 1 above which -- particularly when read in conjunction with Interrogatory No. 2 above -- is contrary to the Court's Scheduling Order entered in this case on November 18, 2005 because it purports to require that Enterasys either actually or effectively provide detailed claim construction charts identifying asserted claims and accused products at this premature juncture of the case. Consistent with that Scheduling Order, Enterasys is not required to, and accordingly will not, provide detailed claim construction charts or their equivalents until July 17, 2006.

Enterasys also objects to this Interrogatory on grounds that it calls for information relating

to issues that are outside the scope of Phase I fact discovery as established by the Court's Scheduling Order entered in this case on November 18, 2005.

Subject to and without waiving its objections, Enterasys states that it first formed the belief that Foundry products were infringing in March of 2004 based upon the advice of outside counsel. At the request of Enterasys' former Intellectual Property Counsel, Paul M. Coryea, Esq. ("Coryea"), outside counsel had exclusively performed a detailed pre-suit investigation in that time frame that included both claim constructions and infringement analyses. This pre-suit investigation principally focused upon Foundry's publicly available technical and product marketing documents.

Later, in and around March of 2005, a second detailed pre-suit investigation was exclusively performed by outside counsel at the request of Coryea. This second pre-suit investigation again included both claim constructions and infringement analyses, and again was principally focused on Foundry's publicly available technical and product marketing documents.

To the extent that any of the Foundry documents considered or relied upon during either pre-suit investigation remain in Foundry's possession, custody, or control, Enterasys will produce them in this case in response to any Foundry document requests that call for their production.

On grounds of the attorney-client privilege and/or the work product doctrine, Enterasys will not provide any further information concerning these pre-suit investigations except as necessary in response to any motion filed by Foundry under Federal Rule of Civil Procedure 11.

**INTERROGATORY NO. 4:**

For each FOUNDRY PRODUCT identified in Interrogatory No. 1, identify the PERSON or PERSONS employed by or associated with ENTERASYS most knowledgeable regarding the

structure, function, and operation of each such FOUNDRY PRODUCT.

**RESPONSE TO INTERROGATORY NO. 4:**

Enterasys objects to this Interrogatory on grounds that it calls for information that is protected from disclosure by the attorney-client privilege and/or by the work product doctrine; that it is overly broad, unduly burdensome, vague, and ambiguous; and it seeks information neither relevant to a claim or defense of a party nor reasonably calculated to lead to the discovery of admissible evidence; and that it seeks knowledge concerning Foundry products that is already uniquely within Foundry's own possession, custody, or control.

Enterasys further objects to this Interrogatory on grounds that it incorporates by reference Interrogatory No. 1 above which -- particularly when read in conjunction with Interrogatory No. 2 above -- is contrary to the Court's Scheduling Order entered in this case on November 18, 2005 because it purports to require that Enterasys either actually or effectively provide detailed claim construction charts identifying asserted claims and accused products at this premature juncture of the case. Consistent with that Scheduling Order, Enterasys is not required to, and accordingly will not, provide detailed claim construction charts or their equivalents until July 17, 2006.

Subject to and without waiving its objections, Enterasys states that Mark Hurley ("Hurley") and Carl Piper ("Piper") of their Product Management group have a general familiarity with certain Foundry products as the result of working on competitive product comparisons for use by Enterasys' sales force. Neither Hurley nor Piper have a detailed technical understanding of Foundry products of the type that could be expected of an engineer.

Vala Afshar has tested certain Foundry products for purposes of assessing their interoperability with Enterasys products within a network environment.

11

Enterasys will supplement or correct its response to this Interrogatory, if necessary, at an appropriate interval of this case in a manner consistent with the requirements of Federal Rule of Civil Procedure 26(e).

## INTERROGATORY NO. 5:

For each asserted claim of the PATENTS-IN-SUIT identified in response to Interrogatory No. 1, describe the circumstances surrounding the alleged invention of the claim, including but not limited to, the identity of ALL PERSONS involved in the conception of the alleged invention; the precise date of conception of the alleged invention; where the conception took place; the date of the first written description of the alleged invention; the date of first disclosure of the alleged invention to a PERSON other than the named inventor(s); the date of first testing of the alleged invention; the date of first actual reduction to practice of the alleged invention; where the first actual reduction to practice took place; ALL corroborating witnesses; the steps constituting diligence from conception to actual or constructive reduction to practice; the identify of each first product which incorporated any invention claimed in the patent; the date of first use of the alleged invention by a PERSON other than by a named inventor; the date of first advertisement or promotion of the alleged invention; the date of first sale or offer for sale of the alleged invention; and ALL project names, numbers, codes, descriptions, or other identifiers, whether external or internal, used by ENTERASYS and/or any prior owners of the PATENTS-IN-SUIT (including DEC or CABLETRON) relating to development of the subject matter of each of the PATENTS-IN-SUIT.

## RESPONSE TO INTERROGATORY NO. 5:

Enterasys objects to this Interrogatory on grounds that it calls for information that is protected from disclosure by the attorney-client privilege and/or by the work product doctrine;

that it is overly broad, unduly burdensome, vague, and ambiguous; and that it seeks information neither relevant to a claim or defense of a party nor reasonably calculated to lead to the discovery of admissible evidence.

Enterasys further objects to this Interrogatory on grounds that it incorporates by reference Interrogatory No. 1 above which -- particularly when read in conjunction with Interrogatory No. 2 above -- is contrary to the Court's Scheduling Order entered in this case on November 18, 2005 because it purports to require that Enterasys either actually or effectively provide detailed claim construction charts identifying asserted claims and accused products at this premature juncture of the case. Consistent with that Scheduling Order, Enterasys is not required to, and accordingly will not, provide detailed claim construction charts or their equivalents until July 17, 2006.

Enterasys also objects to this Interrogatory pursuant to Federal Rule of Civil Procedure 33(a) and Local Rule 26.1(C) of the United States District Court for the District of Massachusetts as presenting multiple separate discovery requests in that it contains discrete subparts relating to issues such as first public sale and use, and/or to Enterasys, Cabletron, and DEC products, that are not logical extensions of the basic underlying request for information pertaining to inventive activities relevant to the subject matter of the patents-in-suit.

Subject to and without waiving its objections, Enterasys provides the following information concerning the dates of invention for the patents-in-suit:

For U.S. Patent No. 5,251,205 (the "'205 patent"), the date of conception was not later than April of 1989 and the date of first reduction to practice was not later than July of 1989. Enterasys bases these dates upon information contained in the invention record which it presently intends to withhold from production on grounds of attorney-client privilege.

For U.S. Patent No. 5,390,173 (the "'173 patent"), the dates of conception and first reduction to practice were not later than July of 1991. Enterasys bases these dates upon information contained in the invention record which it presently intends to withhold from production on grounds of attorney-client privilege.

For U.S. Patent No. 6,128,665 (the "'665 patent"), the constructive conception and first reduction to practice dates were not later than December 30, 1996.

For U.S. Patent No. 6,147,995 (the "'995 patent") the constructive conception and first reduction to practice dates were not later than November 15, 1995.

For U.S. Patent No. 6,539,022 (the "'022 patent"), the constructive conception and first reduction to practice dates were not later than April 25, 1995.

For U.S. Patent No. 6,560,236 (the "'236 patent"), the date of conception was not later than March of 1992 and the date of first reduction to practice was not later than November of 1992. Enterasys bases these dates upon information contained in the invention record which it presently intends to withhold from production on grounds of attorney-client privilege.

Enterasys is presently unaware of any persons other than the named inventors for each of the respective patents-in-suit as having been involved in these inventive activities, or as being able to serve as corroborating witnesses. These issues remain under investigation by Enterasys, and Enterasys expects to discover additional information about these issues from discovery in this case, including from third party discovery.

Enterasys will supplement or correct its response to this Interrogatory, if necessary, at an appropriate interval of this case in a manner consistent with the requirements of Federal Rule of Civil Procedure 26(e).

## INTERROGATORY NO. 6:

Identify ALL articles, systems, products, components and/or devices ever sold by ENTERASYS and/or any prior owners of the PATENTS-IN-SUIT (including DEC or CABLETRON) which use an invention claimed in any of the PATENTS-IN-SUIT, and for each such article, system, product, component or device, state which PATENTS-IN-SUIT covers that article, system, product, component or device, its date of commercial sale (beginning and end), and the PERSONS at ENTERASYS most knowledgeable about the design, development, testing, manufacture, marketing, sale, and licensing of each such article, system, product, component or device.

## RESPONSE TO INTERROGATORY NO. 6:

Enterasys objects to this Interrogatory on grounds that it calls for information that is protected from disclosure by the attorney-client privilege and/or by the work product doctrine; that it is overly broad, unduly burdensome, vague, and ambiguous; and that it seeks information neither relevant to a claim or defense of a party nor reasonably calculated to lead to the discovery of admissible evidence.  Enterasys further objects to this Interrogatory for the reasons set forth in Marc N. Henschke, Esq.'s letter to I. Neel Chatterjee, Esq. dated March 27, 2006.

Subject to and without waiving its objections, Enterasys states that it does not presently know which of the products sold by it or by Cabletron System, Inc. ("Cabletron") practice or embody any of the inventions claimed in the patents-in-suit.  Indeed, this is not information that Enterasys has had reason to ascertain or maintain as part of its regular business activities. Enterasys suspects that certain of these inventions have been widely practiced in virtually every Enterasys and Cabletron product sold since the mid to late 1990s, and Enterasys has now undertaken an investigation into these matters.  However, given that such an investigation will

require the enormous effort of analyzing hundreds of products sold over the past decade under six

different patents, Enterasys does not expect to have any final answer to these inquiries in the

immediate future.

As to determining which products sold by Digital Equipment Corporation ("Digital")

practice or embody any of the inventions claimed in the patents-in-suit, Enterasys does not believe

that it has sufficient information within its possession, custody, or control to arrive at a definitive

conclusion.  By way of background, Cabletron acquired Digital's Networking Products Group

business division on February 7, 1998.  However, on September 25, 2000, Cabletron later sold

this same Networking Products Group business division to an unrelated third party entity known

as DNPG LLC.  In connection with this sale, Cabletron was required to transfer to DNPG LLC

essentially every non-IP related asset associated with the former Digital business division,

including all computers and computer systems, all technical documents and data relating to

Digital products, and all business and financial documents and data.  Nevertheless, Enterasys is

now undertaking an investigation into these matters as they apply to Digital products.

Enterasys will supplement or correct its response to this Interrogatory, if necessary, at an

appropriate interval of this case in a manner consistent with the requirements of Federal Rule of

Civil Procedure 26(e).

**<u>INTERROGATORY NO. 7:</u>**

Describe the marking of each article, system, product, component and/or device that has

been marked with the number of any of the PATENTS-IN-SUIT in any manner pursuant to 35

U.S.C. § 287, including, but not limited to, any marking by ENTERASYS and/or any prior

owners of the PATENTS-IN-SUIT (including DEC or CABLETRON), and any licensees

(whether current or otherwise) of the PATENTS-IN-SUIT. For purposes of this interrogatory, the

phrase "describe the marking" means provide: the name of the patented article, system, product, component or device; a product number, part number, or other identifying number; a description of the article, system, product, component or device; a list of all patent numbers that have been marked in any manner on the patented article, system, product, component or device; the date(s) that each patented article, system, product, component or device was first marked with each of the patent numbers; and, for each patent number marked on each patented article, system, product, component or device, information regarding whether the patented article, system, product, component or device was marked continuously with each patent number following the first marking with that patent number.

## RESPONSE TO INTERROGATORY NO. 7:

Enterasys objects to this Interrogatory on grounds that it calls for information that is protected from disclosure by the attorney-client privilege and/or by the work product doctrine; that it is overly broad, unduly burdensome, vague, and ambiguous; and that it seeks information neither relevant to a claim or defense of a party nor reasonably calculated to lead to the discovery of admissible evidence. Enterasys further objects to this Interrogatory on grounds that it calls for information relating to issues that are outside the scope of Phase I fact discovery as established by the Court's Scheduling Order entered in this case on November 18, 2005.

Enterasys will respond to this Interrogatory to the extent that it is included in an appropriate set of Phase II fact discovery served on or after October 3, 2006.

## INTERROGATORY NO. 8:

Identify ALL prior art and ALL articles, references, products (whether on-sale or in public use) or other evidence that ENTERASYS is aware of or that ANY person or entity, including any PATENT AGENCY, has contended or asserted is prior art or otherwise relevant to

the validity or invalidity of ANY claim of the PATENTS-IN-SUIT.

## RESPONSE TO INTERROGATORY NO. 8:

Enterasys objects to this Interrogatory on grounds that it calls for information that is protected from disclosure by the attorney-client privilege and/or by the work product doctrine; that it is overly broad, unduly burdensome, vague, and ambiguous; and that it seeks information neither relevant to a claim or defense of a party nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving its objections, Enterasys states that it is unaware of any potential prior art references within the meaning of 35 U.S.C. §§ 102 and/or 103 except for the references cited in the various official prosecution histories for the patents-in-suit. Pursuant to Federal Rule of Civil Procedure 33(d), Enterasys declines to identify these potential prior art references in response to this Interrogatory because Enterasys intends to produce all of the file wrappers that are in its possession during discovery and, in any event, such file wrappers are readily publicly available to Foundry. Accordingly, the burden of deriving or ascertaining information about potential prior art cited in such file wrappers is substantially the same for Foundry as it would be for Enterasys.

Enterasys will supplement or correct its response to this Interrogatory, if necessary, at an appropriate interval of this case in a manner consistent with the requirements of Federal Rule of Civil Procedure 26(e).

## INTERROGATORY NO. 9:

Identify ALL PERSONS who participated in the prosecution of the PATENTS-IN-SUIT and related applications, including without limitation the PERSONS who provided technical input, drafted the application(s), prosecuted the application(s) before the PTO or other PATENT

AGENCY, conducted prior art searches, reviewed prior art search results, drafted affidavits,

drafted amendments, reviewed or commented on communications from the PTO or other

PATENT AGENCY, prepared or filed papers in the PTO or other PATENT AGENCY and

participated in interviews with the PTO or other PATENT AGENCY. With respect to each

PERSON identified, state the nature and duration of his or her involvement.

**RESPONSE TO INTERROGATORY NO. 9:**

Enterasys objects to this Interrogatory on grounds that it calls for information that is

protected from disclosure by the attorney-client privilege and/or by the work product doctrine;

that it is overly broad, unduly burdensome, vague, and ambiguous; and that it seeks information

neither relevant to a claim or defense of a party nor reasonably calculated to lead to the discovery

of admissible evidence.

Pursuant to Federal Rule of Civil Procedure 33(d), Enterasys declines as a general matter

to provide information concerning all persons involved in the prosecution of the patents-in-suit

and related patents in response to this Interrogatory.  Enterasys intends to produce in this case all

official file wrappers and prosecuting attorneys files that are in its possession.  Moreover, these

official file wrappers are also readily publicly available to Foundry.  Accordingly, the burden of

deriving or ascertaining the information that Foundry has requested is substantially the same for

Foundry as it would be for Enterasys.  Nevertheless, solely as a courtesy to Foundry, Enterasys

hereby provides the following information relating to the prosecutions of the patents-in-suit which

Enterasys had already compiled independent of being served with this Interrogatory:

## U.S. Patent No. 5,251,205 (the "'205 patent")

Digital retained the outside law firm of Fish & Richardson to prosecute the '205 patent

application.  The Fish & Richardson attorneys with primary responsibility for this prosecution

were:  Robert E. Hillman, Esq.; David L. Feigenbaum, Esq.; and Thomas W. Humphrey, Esq.

The in-house Digital attorney with primary responsibility for overseeing the prosecution of the '205 patent application was Maureen Stretch, Esq.  Other Digital personnel who may have made legal, technical, or administrative contributions to this prosecution were:  Kenneth F. Kozik, Esq.; A. Sidney Johnston, Esq.; Carter Pledger, Esq.; Dick Paciulan, Esq.; John G. Mesaros; Ross W. Callon; Radia Perlman; Joyce D. Lange; and/or Joyce A. Willette.

Digital retained the outside law firm of Jones, Tullar & Cooper, P.C. ("Jones Tullar") to perform a novelty search of potential relevance to the subject matter of the '205 patent application.  The Jones Tullar attorney with primary responsibility for conducting that search was William A. Blake, Esq.

### U.S. Patent No. 5,390,173 (the "'173 patent")

Digital retained the outside law firm of Arnold, White & Durkee ("Arnold White") to prepare the initial '173 patent application and drawings.  The Arnold White attorney with primary responsibility for performing those services was John G. Graham, Esq.  Other Arnold White personnel who may have made legal or administrative contributions to this prosecution were:  Michael Lynch, Esq.; D.C. Toedt, III, Esq.; and Susan Love.  The '173 patent application was subsequently prosecuted by in-house Digital attorneys.

The in-house Digital attorneys with primary responsibility for overseeing Arnold White, and for subsequently prosecuting the '173 patent application, were A. Sidney Johnston, Esq. and Kenneth F. Kozik, Esq.  Other Digital personnel who may have made legal, technical, or administrative contributions to this prosecution were:  Barry N. Young; Anne Thamer; Deidre Tymann; Barry A. Spinney; Joyce D. Lange; and Andrea Crowe.

Digital retained the outside law firm of Jones Tullar to perform a novelty search of potential relevance to the subject matter of the '173 patent application. The Jones Tullar attorney with primary responsibility for conducting that search was William A. Blake, Esq.

### U.S. Patent No. 6,128,665 (the "'665 patent")

Digital retained the outside law firm of Bookstein & Kudirka, P.C., which later changed its name to Kurdika & Jobse, LLP (collectively, "Kurdika"), to prosecute the '665 patent application. The Kurdika attorneys with primary responsibility for the prosecution were Steven G. Saunders, Esq. and Paul E. Kudirka, Esq.

The Digital in-house attorney with primary responsibility for overseeing the prosecution of the '665 patent was Mary Steubing, Esq.

Cabletron retained the outside law firm of Wolf, Greenfield & Sacks, P.C. ("Wolf Greenfield") to prosecute the '665 patent application. The Wolf Greenfield attorneys with primary responsibility for the prosecution were Therese A. Hendricks, Esq. and Paul D. Sorkin, Esq. Other Wolf Greenfield personnel who may have made legal, technical, or administrative contributions to this prosecution were: M. Lawrence Oliverio, Esq.; Lindsay G. McGuiness, Esq.; and Edward J. Russavage.

The Cabletron in-house attorney with primary responsibility for overseeing the prosecution of the '665 patent was Norma Henderson, Esq. Other Cabletron personnel who may have made technical or administrative contributions to this prosecution were: Carol Iturralde; Henry Yang; Anil Rijhsinghani; and/or Sandra Nackel.

The outside law firm of Williams, Morgan, and Amerson ("Williams Morgan") briefly participated in the prosecution of the '665 patent application while operating under the mistaken

belief that Compaq Computer Corporation had acquired rights to that application from Digital. The Williams Morgan attorney involved in that mistaken undertaking was Jeffrey A. Pyle, Esq.

## U.S. Patent No. 6,147,995 (the "'995 patent")

Cabletron retained the outside law firm of Wolf Greenfield to prosecute the '995 patent application. The Wolf Greenfield attorneys with primary responsibility for the prosecution were Therese A. Hendricks, Esq. and Paul D. Sorkin, Esq. Another Wolf Greenfield employee who may have made an administrative contribution to this prosecution was Christine Doyle.

The in-house Cabletron attorney with primary responsibility for overseeing the prosecution of the '995 patent application was Norma Henderson, Esq. Other Cabletron personnel who may have made technical or administrative contributions to this prosecution were: Phil Andlauer; Mike Skubisz; and/or Sandra Nackel.

## U.S. Patent No. 6,539,022 (the "'022 patent")

Cabletron and Enterasys each retained the outside law firm of Wolf Greenfield to prosecute the '022 patent application. The Wolf Greenfield attorneys with primary responsibility for the prosecution were: Therese A. Hendricks, Esq.; Daniel P. McLoughlin, Esq.; James H. Morris, Esq.; and Paul D. Sorkin, Esq. Another Wolf Greenfield employee who may have made an administrative contribution to this prosecution was Gail Driscoll.

The in-house Cabletron attorney with primary responsibility for overseeing the prosecution of the '022 patent application was Norma Henderson, Esq. Another Cabletron employee who may have made an administrative contribution to this prosecution was Sandra Nackel.

The in-house Enterasys attorney with primary responsibility for overseeing the

prosecution of the '022 patent application was Chris A. Caseiro, Esq.  Another Enterasys employee who may have made an administrative contribution to this prosecution was Sandra Nackel.

## U.S. Patent No. 6,560,236 (the "'236 patent")

Cabletron and Enterasys each retained the outside law firm of Wolf Greenfield to prosecute the '236 patent application.  The Wolf Greenfield attorneys with primary responsibility for the prosecution were:  Therese A. Hendricks, Esq.; Daniel P. McLoughlin, Esq.; James H. Morris, Esq.; and John N. Anastasi, Esq.  Another Wolf Greenfield employee who may have made an administrative contribution to this prosecution was Gail Driscoll.

The in-house Cabletron attorney with primary responsibility for overseeing the prosecution of the '236 patent application was Norma Henderson, Esq.  Another Cabletron employee who may have made an administrative contribution to this prosecution was Sandra Nackel.

The in-house Enterasys attorney with primary responsibility for overseeing the prosecution of the '236 patent application was Chris A. Caseiro, Esq.  Another Enterasys employee who may have made an administrative contribution to this prosecution was Sandra Nackel.

Enterasys will supplement or correct its response to this Interrogatory, if necessary, at an appropriate interval of this case in a manner consistent with the requirements of Federal Rule of Civil Procedure 26(e).

## INTERROGATORY NO. 10:

State ALL facts and identify ALL DOCUMENTS, communications, and things

concerning the transfer of ownership or rights relating to any PATENTS-IN-SUIT, including

ANY contracts, transfer agreements or assignments, between ENTERASYS and any third party,

including DEC or CABLETRON.

**RESPONSE TO INTERROGATORY NO. 10:**

Enterasys objects to this Interrogatory on grounds that it calls for information that is

protected from disclosure by the attorney-client privilege and/or by the work product doctrine;

that it is overly broad, unduly burdensome, vague, and ambiguous; and that it seeks information

neither relevant to a claim or defense of a party nor reasonably calculated to lead to the discovery

of admissible evidence.  Enterasys further objects to this Interrogatory on grounds that it calls for

information relating to issues that are outside the scope of Phase I fact discovery as established by

the Court's Scheduling Order entered in this case on November 18, 2005.

Subject to and without waiving its objections, Enterasys provides the following

information:

### U.S. Patent No. 5,251,205 (the "'205 patent")

Inventors Ross W. Callon, Radia J. Perlman, Eric C. Rosen, and John Harper each

assigned his or her entire right, title, and interest in and to U.S. Application Ser. No. 07/577,437

to Digital by written instrument dated February 25, 1991.

Digital assigned its entire right, title, and interest in and to the '205 patent to Cabletron by

written instrument dated February 6, 1998.

Cabletron assigned its entire right, title, and interest in and to the '205 patent to Enterasys

Networks, Inc. ("Enterasys") by written instrument dated September 29, 2000.

### U.S. Patent No. 5,390,173 (the "'173 patent")

Inventors Robert J. Simcoe and George Varghese each assigned his entire right, title, and interest in and to U.S. Application Ser. No. 07/965,651 to Digital by written instrument dated March 18, 1993.

Inventor Robert E. Thomas assigned his entire right, title, and interest in and to U.S. Application Ser. No. 07/965,651 to Digital by written instrument dated March 26, 1993.

Inventor Barry A. Spinney assigned his entire right, title, and interest in and to U.S. Application Ser. No. 07/965,651 to Digital by written instrument dated April 9, 1993.

Digital assigned its entire right, title, and interest in and to the '173 patent to Cabletron by written instrument dated February 6, 1998.

Cabletron assigned its entire right, title, and interest in and to the '173 patent to Enterasys by written instrument dated September 29, 2000.

## U.S. Patent No. 6,128,665 (the "'665 patent")

Inventor Carol E. Iturralde assigned her entire right, title, and interest in and to U.S. Application Ser. No. 08/774,541 to Digital by written instrument dated April 23, 1997.

Digital assigned its entire right, title, and interest in and to U.S. Application Ser. No. 08/774,541 to Cabletron by written instrument dated February 6, 1998.

Cabletron assigned its entire right, title, and interest in and to U.S. Application Ser. No. 08/774,541 to Enterasys by written instrument dated September 29, 2000.

## U.S. Patent No. 6,147,995 (the "'995 patent")

Inventors Kurt A. Dobbins, Philip C. Andlauer, and Michael Skubisz each assigned his entire right, title, and interest in and to U.S. Application Ser. No. 08/559,738 to Cabletron by

written instrument dated January 17, 1996.

Cabletron assigned its entire right, title, and interest in and to U.S. Application Ser. No. 09/387,317 to Enterasys by written instrument dated September 29, 2000.

### U.S. Patent No. 6,539,022 (the "'022 patent")

Inventor Kenneth E. Virgile assigned his entire right, title, and interest in and to U.S. Application Ser. No. 08/428,403 to Standard Microsystems Corporation ("Standard Microsystems") by written instrument dated May 31, 1995.

Standard Microsystems assigned its entire right, title, and interest in and to U.S. Application Ser. No. 08/428,403 to Cabletron by written instrument dated January 12, 1996.

Cabletron assigned its entire right, title, and interest in and to U.S. Application Ser. No. 09/299,970 to Enterasys by written instrument dated September 29, 2000.

### U.S. Patent No. 6,560,236 (the "'236 patent")

Inventor Barry A. Spinney assigned his entire right, title, and interest in and to U.S. Application Ser. No. 08/081,622 to Digital by written instrument dated June 14, 1993.

Inventors George Varghese, Robert Eugene Thomas, and Robert Simcoe each assigned his entire right, title, and interest in and to U.S. Application Ser. No. 08/081,622 to Digital by written instrument dated June 15, 1993.

Inventors John Bassett, Peter Higginson, and Graham Cobb each assigned his entire right, title, and interest in and to U.S. Application Ser. No. 08/081,622 to Digital by written instrument dated June 21, 1993.

Digital assigned its entire right, title, and interest in and to U.S. Application Ser. No.

08/731,905 to Cabletron by written instrument dated February 6, 1998.

Cabletron assigned its entire right, title, and interest in and to U.S. Application Ser. No. 09/411,773 to Enterasys by written instrument dated September 29, 2000.

Copies of each of the assignment instruments identified above will be produced to the extent that they are in Enterasys' possession, custody, or control.

Enterasys will provide information concerning other (non-assignment) types of transfers of rights in the patents-in-suit, if any, to the extent that Foundry requests such information in an appropriate set of Phase II fact discovery served on or after October 3, 2006.

Enterasys will supplement or correct its response to this Interrogatory, if necessary, at an appropriate interval of this case in a manner consistent with the requirements of Federal Rule of Civil Procedure 26(e).

## INTERROGATORY NO. 11:

Identify ALL DOCUMENTS and witnesses on which ENTERASYS intends to rely at trial in this action.

## RESPONSE TO INTERROGATORY NO. 11:

Enterasys objects to this Interrogatory on grounds that it calls for information that is protected from disclosure by the attorney-client privilege and/or by the work product doctrine; that it is overly broad, unduly burdensome, vague, and ambiguous; and that it seeks information neither relevant to a claim or defense of a party nor reasonably calculated to lead to the discovery of admissible evidence. Enterasys further objects to this Interrogatory as premature at this early stage of the case in which discovery is just commencing.

Subject to and without waiving its objections, Enterasys states that it will identify the documents and witnesses that it intends to rely upon at trial in a manner, and at a time, consistent with the requirements of Federal Rule of Civil Procedure 26 and whatever Pre-trial Order is ultimately entered by the Court in this case.

Dated:  April 26, 2006                                  Respectfully served,


ENTERASYS NETWORKS, INC.

As to responses:

By its Executive VP of Strategic Affairs and Chief Legal Officer,

_____
Gerald M. Haines II

As to objections:

By its attorneys,

_____
Christopher P. Sullivan, Esq. (BBO No.485120)
Marc N. Henschke, Esq. (BBO No. 636146)
Alan E. McKenna (BBO No. 644556)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
800 Boylston Street, 25th Floor
Boston, MA 02199
Tel. (617) 267-2300

Of Counsel:
A. James Anderson, Esq. *(pro hac vice)*
Marla R. Butler, Esq. *(pro hac vice)*
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2600 One Atlanta Plaza
Atlanta, GA 30326-1386
Tel. (404) 760-4300

Robert A. Auchter, Esq. *(pro hac vice)*
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
1801 K Street, N.W.
Washington, DC  20006
Tel. (202) 775-0725

28

## CERTIFICATE OF SERVICE

I, Marc N. Henschke, hereby certify that on April 26, 2006, I caused the attached *Plaintiff Enterasys Networks, Inc.'s First Supplemental Responses And Objections To Defendant Foundry Networks, Inc.'s First Set Of Interrogatories* to be served as indicated below via first class mail and/or by e-mail (PDF attachment) upon Defendant's counsel of record at the following addresses:

### Via First Class Mail & E-Mail (PDF Attachment)

I. Neel Chatterjee, Esq.
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
<nchatterjee@orrick.com>

### Via E-Mail (PDF Attachment)

Jeremy P. Oczek, Esq.
<joczek@proskauer.com>

K. Mudurian
<kmudurian@orrick.com>

Y. Steinberg
<ysteinberg@orrick.com>

Dated: April 26, 2006                    _____
                                          Marc N. Henschke

# **EXHIBIT C**

1            UNITED STATES DISTRICT COURT

2              DISTRICT OF MASSACHUSETTS

3    * * * * * * * * * * * * * * *
                                 *
4    ENTERASYS NETWORKS, INC.      *
                    Plaintiff    *
5                                  *
         VERSUS                    *    CA-05-11298-DPW
6                                  *
     FOUNDRY NETWORKS, INC.        *
7    EXETREME NETWORKS, INC.       *
                    Defendants    *
8                                  *
     * * * * * * * * * * * * * * *

9
         BEFORE THE HONORABLE DOUGLAS P. WOODLOCK

10
             UNITED STATES DISTRICT COURT JUDGE

11
                         HEARING

12
                   NOVEMBER 3, 2005

13
     APPEARANCES:

14
         CHRISTOPHER P. SULLIVAN, ESQ. AND ALAN E.
15       McKENNA, ESQ., Robins, Kaplan, Miller &
         Ciresi, LLP, 800 Boylston Street, Suite 2500,
16       Boston, Massachusetts  02199, on behalf of
         the Plaintiff

17
         ROBERT A. AUCHTER, ESQ., Robins, Kaplan, Miller &
18       Ciresi, LLP, 1801 K Street, N.W., Suite 1200,
         Washington, D.C.  20006, on behalf of the
19       Plaintiff

20       STEVEN M. BAUER, ESQ. AND JEREMY P. OCZEK, ESQ.,
         Proskauer, Rose, LLP, One International Place,
21       22nd Floor, Boston, Massachusetts  02110, on
         behalf of Foundry Networks, Inc., Defendant

22
         PETER L. RESNIK, ESQ., McDermott, Will & Emery,
23       LLP, 28 State Street, Boston, Massachusetts
         02109, on behalf of Exetreme Networks, Inc.,
24       Defendant

25    (Appearances continued next page)

```
1    motion --

2              MS. ELSON:  Thank you, Your Honor.

3              THE COURT:  -- to come back here.  It won't be

4    a happy day for all of us if that happens.

5              MR. SULLIVAN:  Well, it wouldn't be so for me,

6    Your Honor.

7              THE COURT:  I think you've identified who

8    would be least happy in court.

9              So, now --

10             MS. ELSON:  We also have a concern, Your

11   Honor, with some of the deadlines the plaintiff is

12   proposing.  This starts with the July 17, 2006 date that

13   Enterasys is proposing on page three of the joint

14   schedule.  Those next three entries, we believe, can

15   simply be dealt with through interrogatories.  Because

16   what this does is permit them to go longer even if they

17   know their preliminary contentions without telling us.

18             THE COURT:  I don't understand what you mean

19   by that.

20             MS. ELSON:  Simply that we would like to know

21   what the --

22             THE COURT:  Why aren't the claim construction --

23   why aren't the claim constructions the functional

24   equivalent of interrogatories, anyway?

25             MS. ELSON:  Well, that comes much later.
```

1      We need to know their theories of infringement much

2      earlier than that.  And, so, we'd like to simply serve

3      interrogatories asking those questions and they can tell

4      us what their contentions are, their theories of

5      infringement.

6              THE COURT:  What prevents you from doing that

7      here?

8              MS. ELSON:  Well, if we can do that as well,

9      then that's fine, Your Honor.  My only concern --

10             THE COURT:  I'm not going to -- I won't get

11     into the specifics, I don't think, of the way in which

12     you conduct your discovery with the exception of the

13     claim construction charts which I think are, on balance,

14     a pretty good idea.  If you want to propound

15     interrogatories during that time period, go ahead.  I

16     don't see that as a problem.

17             MS. ELSON:  The one concern here is the

18     deadline for us to serve invalidity contentions.  We

19     will certainly do our best to provide all our best

20     contentions at the time.  But given the lateness with

21     which we will be seeing narrowing of the claims, there

22     may turn out to be some piece of prior art we find later

23     we'd simply like to be able to supplement at that time

24     and not necessarily have to be a drop-dead deadline.  If

25     there's good cause, if we found the art later, we'd like

# <u>EXHIBIT D</u>

# ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

800 BOYLSTON STREET
25TH FLOOR
BOSTON, MA 02199-7610
TEL: 617-267-2300  FAX: 617-267-8288
www.rkmc.com

ATTORNEYS AT LAW

MARC N. HENSCHKE
617-859-2784
mnhenschke@rkmc.com

April 18, 2006

*VIA E-MAIL (PDF ATTACHMENT)*

Jeremy P. Oczek, Esq.
Proskauer Rose, LLP
One International Place
Boston, MA 02110

Re: *Enterasys Networks v. Foundry Networks and Extreme Networks*
*Civ. Act. No. 05-11298-DPW (D. Mass)*
**Our File No.:  070610.0001**

Dear Jeremy:

We are in receipt of your letter to me dated April 14, 2006 which requests a meet-and-confer concerning Enterasys' recently served responses and objections to Foundry's first set of interrogatories.

As an initial matter, certain misstatements in your letter require correction.  For example, you suggest multiple times that Enterasys has "fail[ed] to respond to … [Foundry's] interrogatories," when in fact Enterasys timely served written responses to all such interrogatories on April 13, 2006.  Moreover, despite the fact that Enterasys has expressly agreed to provide information responsive to all of Foundry's interrogatories either now or at appropriate intervals in the case, you wrongly assert without basis that Enterasys has "refused" to do so.

Your letter is quite correct, however, in noting that Enterasys has objected to certain of Foundry's interrogatories on grounds of their prematurity.  As you are aware, the Court has entered a detailed Scheduling Order in this case establishing the deadlines by which certain pre-trial events must occur.  For example, the Order gives Enterasys until July 17, 2006 to serve Foundry with claim construction charts that will preliminarily identify which claims of the patents-in-suit are being asserted against which Foundry products.  Accordingly, Foundry's service of interrogatories on March 14, 2006 purporting to require that Enterasys *immediately* provide such claim charts at a time several months prior to the Court's established deadline clearly contravenes both the letter and the spirit of the governing Scheduling Order.

Notably, your letter misunderstands both the context and the substance of the parties' colloquy with the Court at the Scheduling Order hearing.  Recall that Foundry entered that hearing arguing that it should be permitted to ferret out Enterasys' infringement contentions at

Jeremy P. Oczek, Esq.
April 18, 2006
Page 2

once via interrogatories rather than having Enterasys afforded a Court ordered date certain by which it would need to serve claim construction charts. But the Court rejected Foundry's argument, instead holding that Enterasys would be required to provide its infringement contentions only on a "claim construction chart basis" by July 17, 2006. See (Hearing Tr., p. 17). While the Court did indicate that as a general matter Foundry was not precluded from serving earlier sets of discovery, the Court offered a caveat that this was "with the exception of the claim construction charts which I think are, on balance, a pretty good idea" to be scheduled as due on July 17th. (Id., p. 19).[1]

I am available for a telephonic meet-and-confer to address the issues raised in your letter later this week on either Thursday afternoon or anytime on Friday. Please let me know what times will work best.

We look forward to hearing from you.

Sincerely,

Marc N. Henschke

MNH:nah
cc:    I. Neel Chatterjee, Esq. (*VIA FIRST CLASS MAIL & EMAIL*)
       K. Mudurian (*VIA EMAIL*)
       Y. Steinberg (*VIA EMAIL*)

35030780

---

[1] In marked contrast to the position now asserted in your letter, at the hearing counsel for both Foundry and Extreme clearly understood the unwanted implications of the Court's scheduling decision. Indeed, Steven Bauer complained about how Enterasys' proposal -- which the Court ultimately adopted -- required "no narrowing of the claims at all" until July 17, 2006. (Hearing Tr., p. 16). Moreover, Vera Elson likewise lamented about the "lateness with which we will be seeing [a] narrowing of the claims" by Enterasys. (Id., p. 19). Simply put, arguments that Defendants already made *and lost* at the Scheduling Order hearing are unavailable as a basis for now attempting to justify premature discovery requests.