**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| ENTERASYS NETWORKS, INC., ) | Civil Action No: 05-CV-11298 (DPW) |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| FOUNDRY NETWORKS, INC. AND ) | |
| EXTREME NETWORKS, INC., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF ENTERASYS NETWORKS, INC.'S MEMORANDUM IN OPPOSITION TO
DEFENDANT FOUNDRY NETWORKS, INC.'S MOTION TO COMPEL FURTHER
ANSWERS TO ITS INTERROGATORIES NOS. 2 AND 3**

## TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ...................................................................... 1

II.   PROCEDURAL BACKGROUND................................................................... 4

    A.    The Parties' Competing Pretrial Schedules Proposed In Their Joint
        Statement To The Court................................................................................ 4

    B.    The Court's Adoption Of Enterasys' Proposed Pretrial Schedule
        Establishing A July 17, 2006 Due Date For Service Of Enterasys' Claim
        Construction Charts ..................................................................................... 4

    C.    Foundry's Refusal To Provide Discovery Unless Enterasys Agreed To
        Supplement Its Responses To Foundry's Interrogatory Nos. 2 And 3 ................. 5

    D.    Enterasys' Supplemental Response To Interrogatory No. 2 Identifying The
        Asserted Patent Claims, The Accused Products, The Accused Product
        Features, And The Nature Of The Infringement...................................................... 6

    E.    Enterasys' Supplemental Response To Interrogatory No. 3 And
        Accompanying Document Production Providing The Factual
        Underpinnings Of Its Pre-Suit Infringement Investigation................................... 9

    F.    Foundry's Renewed Refusal To Provide Discovery Despite Having
        Received Supplemental Interrogatory Responses.................................................. 9

III.  ARGUMENT..................................................................................................... 11

    THE COURT SHOULD DENY FOUNDRY'S ABUSIVE MOTION TO
    COMPEL IN ITS ENTIRETY BECAUSE ENTERASYS HAS ALREADY
    PROVIDED SUFFICIENTLY COMPLETE ANSWERS TO FOUNDRY'S
    INTERROGATORY NOS. 2 AND 3 .............................................................. 11

    A.    Enterasys Has Made A More Than Satisfactory Good Faith Response To
        Interrogatory No. 2....................................................................................... 11

        1.    Foundry's Premature Demand That Enterasys *Immediately* Serve
            Claim Construction Charts Contravenes The Court's Scheduling
            Order Which Expressly Establishes A Service Due Date Of July
            17, 2006.............................................................................................. 11

        2.    Foundry's Assertion That It Cannot Comprehend The Relevant
            Scope Of Discovery Absent Receiving A Claim Construction
            Chart Is Specious And Belied By Its Own Prior Representations............ 13

i

B.    Enterasys Has Made A More Than Satisfactory Good Faith Response To
Interrogatory No. 3.................................................................................................. 14

1.    Enterasys Has Disclosed The Factual Circumstances Surrounding
Its Pre-Suit Infringement Investigations And Has Made an 11,000-
Page Document Production Containing The Materials It Relied
Upon................................................................................................... 14

2.    Foundry's Demands For Still Further Information Are Improperly
Directed At Obtaining Enterasys' Attorney Work Product And
Privileged Attorney-Client Communications ........................................... 17

IV.    CONCLUSION............................................................................................................ 19

# I.
## PRELIMINARY STATEMENT

Plaintiff Enterasys Networks, Inc. ("Enterasys") hereby submits its memorandum in opposition to the Motion to Compel Further Answers to Interrogatory Nos. 2 and 3 ("Mot.") that Defendant Foundry Networks, Inc. ("Foundry") filed with the Court on April 27, 2006. According to Foundry's Motion, Enterasys should be required to: **(i)** immediately produce claim construction charts[1] at a premature stage of the case in direct contravention of the Court's Scheduling Order; and **(ii)** disclose the legal analysis developed during its pre-filing infringement investigations which is protected by the attorney work product doctrine and the attorney-client privilege. But because Enterasys has already provided sufficiently complete answers to the interrogatories at issue, and because Foundry can articulate no legal basis or legitimate need for receiving this additional information, the present Motion must be summarily denied.

With respect to its Interrogatory No. 2, Foundry argues that Enterasys should be compelled to *immediately* produce claim construction charts. However, this issue has been explicitly addressed in the Court's Scheduling Order which provides that Enterasys shall have until July 17, 2006 "to serve claim construction charts identifying asserted claims and products accused of … infringement." In establishing this date certain at an interim point in the discovery period, the Court expressly considered and rejected Foundry's alternative proposal that claim charts could be pursued at earlier stages of the litigation by way of interrogatories. Disregarding the Court's ruling, Foundry went on to propound Interrogatory No. 2 in March of 2006, and

---

[1] For purposes of the present motion, both parties are using the term "claim construction charts" to refer to charts that provide detailed infringement analyses consisting of element-by-element comparisons of the asserted patent claims with the accused products.

began demanding that Enterasys provide claim charts some four months prior to their Court-established due date.[2]

In any event, Foundry's purported need for the immediate production of claim construction charts is simply not credible. Foundry contends that without having formal claim charts in hand, it cannot possibly understand what issues are relevant to the case for discovery purposes. To put that argument in perspective, consider that oftentimes in patent cases claim charts are not served until the time of summary judgment motions or *Markman* hearings that occur *after the close of discovery*. Moreover, when it has suited Foundry's purposes, Foundry has understood the case sufficiently well to assert affirmative defenses on its own behalf of non-infringing uses, claim construction estoppel, and patent invalidity, and Foundry has also produced voluminous quantities of alleged "prior art" that it claims invalidate the patents-in-suit. If asserted in good faith, each of these defenses would require that Foundry first have undertaken a detailed infringement analysis of its own that necessarily would reflect a substantial appreciation of the relevant issues.

Moreover, Foundry's supposed inability to understand this case is belied by its own prior representations to Enterasys. Initially, Foundry informed Enterasys that it could not understand the case -- or provide any meaningful discovery -- unless Enterasys were to identify the asserted patent claims, the accused products, and the accused product features. But after Enterasys supplemented its interrogatory responses so as to provide Foundry with all of this requested information, Foundry pulled a bait and switch and instead began to assert that the case was incomprehensible in the absence of formal claim charts. On this newly minted basis, Foundry has continued refusing to provide any meaningful discovery to Enterasys, demonstrating that the

---

[2] Tellingly, despite moving to compel Enterasys to immediately produce claim charts, Foundry is simultaneously refusing to produce its own claim charts responsive to Enterasys' discovery requests on the basis of a "prematurity" objection. (See, infra, p. 10.).

true purpose of its present Motion is to preemptively create an excuse for ongoing noncompliance with its own discovery obligations.[3]

With respect to its Interrogatory No. 3, Foundry ostensibly seeks to compel Enterasys to disclose the *factual circumstances* surrounding its pre-filing infringement investigations. Yet Enterasys has already done so by identifying when these investigations took place, who performed them, and what types of activities they entailed. Moreover, Enterasys has also made an extraordinary 11,000-page document production to Foundry containing the materials that Enterasys considered and relied upon as part of its pre-filing investigations. Thus, in reality the additional information that Foundry demands is the *legal analysis* undertaken by Enterasys' outside counsel which is clearly protected by the attorney work product doctrine and the attorney-client privilege. Remarkably, in responding to Enterasys' discovery requests directed at Foundry's own pre-filing investigations, Foundry has refused to produce any responsive materials on grounds of privilege, and has taken the position that such materials are in fact so privileged that they are too sensitive even to be listed on a privilege log as required by the Federal Rules. (See, infra, p. 10).

For all of these reasons that are discussed in greater detail below, Enterasys respectfully requests that the Court deny the present Motion in its entirety, and by doing so deprive Foundry of the improper excuses that it has heretofore been invoking as a pretext for refusing to comply with its own discovery obligations.

---

[3] As Foundry is well aware from recent meet-and-confer sessions, it faces an imminent motion to compel from Enterasys unless its bad faith refusals to provide discovery are promptly withdrawn.

## II.
## PROCEDURAL BACKGROUND

**A.**     **The Parties' Competing Pretrial Schedules Proposed In Their Joint Statement To The Court**

Leading up to the November 3, 2005 Rule 16(b) Scheduling Conference, the parties filed a Joint Statement and Discovery Plan ("Joint Statement") which put forth proposed pre-trial schedules.  (*See* Exh. 1 to Henschke Decl.).[4]  In the Joint Statement, all parties acknowledged that a necessary focusing of issues would need to occur before trial, but offered competing proposals as to the mechanism and timing of how to achieve this result.  (*See id.* at pp. 2-3).

Enterasys proposed the establishment of "clear dates [during the discovery process] by which it must identify accused products and produce claim construction charts identifying asserted claims."  (*See id.* at 2).  To this end, Enterasys proposed July 17, 2005 as the date it would be required "to serve claim construction charts identifying asserted claims and products accused of literal or doctrine of equivalents infringement."  (*See id.* at 3).

Defendants, by contrast, claimed that it was "[n]ot necessary" to set a specific date for the exchange because discovery of claim charts could "be addressed through interrogatories" at any time during the discovery process.  (*See id.* at 2-3).

**B.**     **The Court's Adoption Of Enterasys' Proposed Pretrial Schedule Establishing A July 17, 2006 Due Date For Service Of Enterasys' Claim Construction Charts**

At the November 3, 2005 scheduling conference, the Court indicated that it would adopt the pretrial schedule proposed by Enterasys, expressly stating that it "want[ed] to have the claim construction chart process" whereby claim charts would be due on a set date.  (*See* Henschke Decl., at Exh. 2, p. 23).  This decision is reflected in the Court's Scheduling Order which

---

[4]  As used herein, the term "Henschke Decl." is a reference to the Declaration Of Marc N. Henschke In Opposition To Defendant Foundry Networks, Inc.'s Motion to Compel Further Answers to Its Interrogatories Nos. 2 and 3, filed concurrently herewith under separate cover.

expressly set July 17, 2006 as the date on which Enterasys must provide claim charts to defendants.  (*See* Exh. 3 to Henschke Decl.).

Although the Court indicated that the parties could serve discovery immediately following the Scheduling Order, the Court ruled that claim charts were to be an exception to the regular discovery process and, as such, the claim charts would be due according to the Court-ordered schedule.  (*See* Henschke Decl. at Exh. 2, pp. 19, 23).  In this regard, the Court carved out the production of claim charts as an exception to the regular discovery process, commenting that it would not "get into the specifics…of the way in which you conduct your discovery *with the exception of the claim construction charts*" for which it considered a July 17, 2006 due date to be "a pretty good idea."  (*Id*. at 19) (emphasis added).

Despite arguments by Defendants that a set date for the exchange of claim charts was not necessary, the Court sided with Enterasys' position that a set date was the appropriate mechanism and it ordered Enterasys to serve its claim charts upon the defendants on July 17, 2006.  (*See* Exh. 3 to Henschke Decl.).

C.    **Foundry's Refusal To Provide Discovery Unless Enterasys Agreed To Supplement Its Responses To Foundry's Interrogatory Nos. 2 And 3**

After the Court issued its Scheduling Order, Enterasys served requests for the production of documents upon Foundry.  In its responses to Enterasys' document requests (Foundry's "Document Responses"), Foundry offered a series of objections and issued blanket refusals to produce responsive documents for most requests.  (*See* Exh. 4 to Henschke Decl.).  In a May 1, 2006 letter, Enterasys discussed many of these deficiencies in Foundry's responses, a review of which will provide the Court with a good flavor of Foundry's abusive discovery tactics.  (*See* Exh. 5 to Henschke Decl.).

Foundry consistently sought to justify its refusals to produce discovery by claiming that it could not meaningfully understand the issues in the case.  Specifically, Foundry identified four

5

areas where it needed additional information from Enterasys.  The first two areas are set forth in Foundry's April 14, 2006 letter in which it claimed that it had "no way to frame the issues in this case" unless Enterasys (1) "identif[ied] the claims being asserted against Foundry;" and (2) "identif[ied] the Foundry products being accused of infringement."  (*See* Henschke Decl. at Exh. 6, p. 2).  Third, as identified in repeated objections in its Document Responses, Foundry further asserted that it could not understand what issues were "relevant" in the case unless Enterasys identified the "accused features of Foundry products" alleged to infringe the patents-in-suit.  (*See* Henschke Decl. at Exh. 4, pp. 15-100, 104-116).  Fourth, as set out in its Interrogatory No. 3, Foundry claimed that it needed to understand the factual circumstances surrounding Enterasys' pre-filing investigations before it would agree to provide meaningful discovery.  (*See* Henschke Decl. at Exh. 6, p. 2).

The parties met to confer about Foundry's requests for additional information, and Enterasys agreed to supplement its responses to Foundry's discovery in the four categories identified by Foundry as obstacles to its being able to provide meaningful responses to Enterasys' discovery requests.

**D.    Enterasys' Supplemental Response To Interrogatory No. 2 Identifying The Asserted Patent Claims, The Accused Products, The Accused Product Features, And The Nature Of The Infringement**

Consistent with the April 20, 2006 telephonic meet and confer, Enterasys supplemented its responses ("Supplemental Responses") to Foundry's Interrogatory Nos. 2 and 3 on April 26, 2006.[5]  (*See* Exh. 7 to Henschke Decl.).  In its supplemental response to Interrogatory No. 2, Enterasys addressed the first three issues raised by Foundry.  (*See id.,* p. 5.).

First, Enterasys made preliminary identifications of the core patent claims it will assert, stating:

---

[5]  Within a day of Enterasys serving its Supplemental Responses, Foundry filed the present Motion.

> *Subject to and without waiving its objections, Enterasys states that it is, and will be, asserting at least the following patent claims in this case:*
>
> *Claims 1, 5, 20 and 21 of U.S. Patent No. 5,251,205 (the "'205 patent").*
>
> *Claims 1 and 10 of U.S. Patent No. 5,390,173 (the "'173 patent").*
>
> *Claims 1 and 4 of U.S. Patent No. 6,128,665 (the "'665 patent").*
>
> *Claims 1 and 25 of U.S. Patent No. 6,147,995 (the "'995 patent).*
>
> *Claims 1, 6, 14 and 20 of U.S. Patent No. 6,539,022 (the "'022 patent).*
>
> *Claims 1 and 15 of U.S. Patent No. 6,560,236 (the "'236 patent").*
>
> *Enterasys expressly reserves the right to add additional asserted claims to the above list at the time it provides claim construction charts on July 17, 2006, or at any time thereafter, as evidence and events may warrant.*

(*Id.*, p. 5).

Second, Enterasys identified the families of Foundry products it is accusing of infringement:

> *Enterasys is, and will be, accusing of infringing one or more of the asserted claims listed above every Foundry product sold or licensed during the relevant damages period belonging to any of the following product families: (i) FastIron; (ii) NetIron; (iii) ServerIron; (iv) TurboIron; (v) BigIron; (vi) EdgeIron; (vii) AccessIron; and (viii) any software used in connection with any accused feature contained in any product from these families including, but not necessarily limited to, IronView software.*

(*Id.*).

Third, Enterasys' supplemental response describes the particular features of the accused Foundry products that infringe:

> *Enterasys is, and will be, asserting that one or more of the claims listed above read on the following accused features contained in some or all of the accused products listed above:*

7

> *The asserted claims of the '205 patent read on Multi-Protocol Label Switching ("MPLS") features as that term is used in Foundry's own technical and marketing literature. These claims also more generally read on features involving any routing algorithm that can be used to calculate packet routes for all received packets regardless of the multiple different routing protocol suites (e.g., the TCP/IP protocol suite; the OSI protocol suite; etc.) to which such packets may conform, and without the need to convert the destination address of any packet to an addressing convention associated with a routing protocol suite different from the one to which that packet conforms.*

> *The asserted claims of the '173 patent read on features that add a second internal header to a data packet that consists of a field or fields that contain local source and/or destination addresses that have been translated or derived from the typically longer unique network source and/or destination addresses (e.g., MAC addresses) contained in a first header. These second internal headers are sometimes described in Foundry's own technical and marketing literature as "internal Foundry headers," "Foundry internal headers," and/or as "optimized headers."*

> *The asserted claims of the '665, '995, and '236 patents read on VLAN features, including IEEE 802.1Q VLANs, port-based VLANs, protocol-based VLANs, MAC-based VLANs, subnet-based VLANs, and default VLANs as those terms are used in Foundry's own technical and marketing literature.*

> *The asserted claims of the '022 patent read on IGMP snooping features, including RFC 1112 IGMP features, RFC 2236 IGMP features, and RFC 3376 IGMP features as those terms are used in Foundry's own technical and marketing literature. (See id. at 6).*

(*Id.,* p. 6).

In addition, Enterasys explained its theories of infringement:

> *Enterasys is alleging direct infringement by accused Foundry products under 35 U.S.C. §271(a) relative to the asserted claims listed above that are directed to "a network bridge," "a port based default VLAN," "a computer program product," or "a computer-readable storage medium comprising program instructions."*

> *Enterasys is principally alleging inducement of infringement and contributory infringement by accused Foundry products under 35 U.S.C. §271(b) and (c) relative to the asserted claims listed above that are directed to a "network of information handling devices" or a "packet data communications network." In these instances,*

> *the direct infringers are Foundry's customers.  However,*
> *Enterasys may also allege direct infringement against Foundry*
> *relative to such claims to the extent that the evidence shows that*
> *Foundry has used accused products in networks present at its own*
> *facilities, has tested accused products in a network environment,*
> *or has demonstrated accused products in a network environment*
> *for customers or others.*

(*Id.* at 7).

**E.    Enterasys' Supplemental Response To Interrogatory No. 3 And Accompanying Document Production Providing The Factual Underpinnings Of Its Pre-Suit Infringement Investigation**

The fourth category of information Foundry claimed it needed before it could respond to Enterasys' discovery requests, as set out in its Interrogatory No. 3, consisted of additional information relating to the factual details of Enterasys' pre-filing investigations.  (*See* Henschke Decl. at Exh. 8, pp. 4-5).  In addressing these issues in its supplemental response to Interrogatory No. 3, Enterasys supplied the following factual information: (1) that Enterasys performed two pre-filing investigations—the first in March of 2004 and the second in March of 2005; (2) that these investigations were performed exclusively by outside counsel at the request and direction of Enterasys' Intellectual Property Counsel Paul Coryea; (3) that each of these investigations included analyses of both claim constructions and infringement by Foundry; (4) and, that the investigations were based principally upon Foundry's publicly available technical and product marketing documents.  (*See* Henschke Decl. at Exh. 7, p. 10).  In addition, Enterasys followed its supplemental response to Interrogatory No. 3 with an extraordinary document production of more than 11,000 pages containing those documents still within its possession, custody or control that it relied upon during these pre-filing investigations.

**F.    Foundry's Renewed Refusal To Provide Discovery Despite Having Received Supplemental Interrogatory Responses**

Despite Enterasys' satisfying Foundry's requests for information regarding (1) asserted claims; (2) accused products; (3) accused features; and (4) its pre-filing investigations, Foundry

in a May 4, 2006 letter, signaled a continued refusal to respond to Enterasys' discovery requests. (*See* Henschke Decl. at Exh. 9, p. 2). In that letter, Foundry raised a newly minted excuse for its refusal to provide meaningful discovery. (*See id.*). Foundry now claimed that without Enterasys' claim charts, it "cannot respond" and "cannot fully comply with [Enterasys'] discovery requests." (*See id.*).

Nevertheless, the defenses that Foundry asserted in its answer to Enterasys' complaint, which require good faith obligations under Fed. R. Civ. P. 8 and 11, suggest that Foundry *does* have an understanding of the issues in this case. (*See* Henschke Decl. at Exh. 10, pp. 7-8). Despite its inability to "frame the issues of the case" and understand the alleged infringement in this case, Foundry has managed to assert invalidity, claim construction estoppel and laches defenses in its answer. (*See id.*). In addition, Foundry has apparently understood the issues of the case well enough to produce more than 40,000 pages of documents it claims to be invalidating prior art. (*See* Mot. at 3).

Tellingly, Foundry has objected to requests made by Enterasys for the same information it now seeks to compel from Enterasys. In its own Responses, Foundry refuses to produce claim charts -- the very thing it seeks to compel from Enterasys -- because it claims that such production is *premature*. (*See* Henschke Decl. at Exh. 4, p. 87). Similarly, despite moving to compel additional information about Enterasys' pre-filing investigations, Foundry's Document Responses carry a general objection that states:

> *Foundry objects to any requirement in these Requests that Foundry identify or produce any privileged document generated after the filing of this lawsuit, or that reflects a pre-filing investigation. Such material is clearly privileged, and it is unduly burdensome to require the inclusion of such material in any privilege log.*

(*Id.* at 4).  Thus, not only does Foundry refuse to produce any pre-filing investigation materials, it considers such materials so privileged it refuses to eveninclude them on a privilege log.  (*See id.*).

## III.
## ARGUMENT

### THE COURT SHOULD DENY FOUNDRY'S ABUSIVE MOTION TO COMPEL IN ITS ENTIRETY BECAUSE ENTERASYS HAS ALREADY PROVIDED SUFFICIENTLY COMPLETE ANSWERS TO FOUNDRY'S INTERROGATORY NOS. 2 AND 3

**A.**     **Enterasys Has Made A More Than Satisfactory Good Faith Response To Interrogatory No. 2**

By providing information about the claims it is likely to assert at trial and the infringement theories at issue, Enterasys has more than satisfied its good faith obligations to respond to Foundry's Interrogatory No. 2.  Enterasys' supplemental response to Interrogatory No. 2 has given Foundry ample information to "frame the issues in this case," and therefore the Court should deny Foundry's Motion to compel additional claim construction information in advance of the Court-set July 17, 2006 due date.

**1.**     **Foundry's Premature Demand That Enterasys *Immediately* Serve Claim Construction Charts Contravenes The Court's Scheduling Order Which Expressly Establishes A Service Due Date Of July 17, 2006**

The Court's Scheduling Order setting a July 17th due date for Enterasys to serve claim charts on Defendants could not be more clear.  (*See* Exh. 3 to Henschke Decl.).  Foundry's request that Enterasys serve claim charts now -- more than two months before the Court's due date -- directly contravenes the Scheduling Order.  (*See id.*).  Moreover, a premature serving of claim charts would deprive Enterasys from the benefit of discovery from Foundry before it refines its core infringement contentions.  Accordingly, the Court should deny Foundry's present Motion.

Despite the Court's rejection of its argument that a due date should not be established for Enterasys' service of claim charts, Foundry maintains that it is entitled to procure them via its discovery requests. (*See* Mot. at 4-5). Enterasys agrees that the Court -- both during the November 3, 2005 scheduling conference and in the Scheduling Order that followed -- was clear about its position on the issue of claim charts; however, that clarity militates a conclusion that is directly opposite to Foundry's argument. (*See* Henschke Decl. at Exh. 2, pp. 18-19, 23; Exh. 3). At the November Scheduling Conference, the Court stated that it would not "get into the specifics…of the way in which you conduct your discovery *with the exception of the claim construction charts*" for which it considered a July 17, 2006 due date to be "a pretty good idea." (*See* Henschke Decl. at Exh. 2, p. 19) (emphasis added). This statement, when read in conjunction with the Scheduling Order, demonstrates that the Court sided with Enterasys regarding a July 17th due date for the service of Enterasys' claim charts.[6]

Foundry's assertion that discovery should be stayed until Enterasys produces claim charts is based wholly upon a misplaced reliance on a case whose outcome was determined by a unique local rule with no equivalent in the District of Massachusetts. *See Network Caching Techs*., *L.L.C. v. Novell, Inc*., 67 U.S.P.Q.2d 1034, 1040 (N.D. Cal. 2002). There, the court temporarily stayed discovery because plaintiff did not provide adequate preliminary infringement contentions at the time *required by Patent Local Rule 3-1. See id.* This rule requires parties alleging infringement to provide claim charts on a specific date -- *i.e.*, within 10 days of the initial case management conference. *See id.* at 1038. Thus, Foundry's analogy to *Network Caching* could only be relevant to this case if Enterasys failed to serve claim charts on the July 17th due date set by the Court's Scheduling Order. *See id.* Because Foundry lacks any legal basis to require the

---

[6] As noted *supra* at p. 10, Foundry is asking for something that it is unwilling to provide to Enterasys -- *viz.*, Foundry has refused to provide any documents relating to the construction or interpretation of the Enterasys patents because such a request is purportedly *premature*. (*See* Henschke Decl. at Exh. 4, p. 87).

immediate production of Enterasys' claim charts and its position is directly opposite to the Court's Scheduling Order, its Motion should be denied.

>   **2.    Foundry's Assertion That It Cannot Comprehend The Relevant Scope Of Discovery Absent Receiving A Claim Construction Chart Is Specious And Belied By Its Own Prior Representations**

Foundry's pleadings and discovery actions demonstrate that Foundry's claims that it needs Enterasys' claim charts to "frame the issues of the case" are specious and unfounded. Despite its inability to "frame the issues of the case" and understand the alleged infringement in this case, Foundry somehow managed to assert invalidity, claim construction estoppel and non-infringing use defenses in its Answer. (*See* Henschke Decl. at Exh. 10, pp. 7-9). In addition, Foundry has been able to produce roughly 47,000 pages of alleged prior art supposedly without understanding the patent claims that Enterasys will assert at trial. (*See* Mot. at 3). If asserted in good faith, each of these defenses would require that Foundry first have undertaken a detailed infringement analysis of its own reflecting a substantial appreciation of the relevant issues.

Foundry's Motion fails to acknowledge that Enterasys has already provided the exact information Foundry originally claimed it needed in order to respond to Enterasys' discovery requests. The Motion does not acknowledge that, in its Supplemental Responses, Enterasys identified: (1) between two and four claims it will be asserting for each of the six patents in suit; (2) the specific Foundry products it accuses of infringing; (3) the features on Foundry products that asserted claims read on;[7] and (4) its direct, contributory and inducement theories of infringement. (*See* Henschke Decl. at Exh. 7, pp. 4-8). Nor does it acknowledge that Enterasys' document production of Foundry materials relied upon during its pre-filing investigations also provides ample evidence of the issues in the litigation. As a consequence, Enterasys continues to

---

[7] Enterasys' identification of accused features in its Supplemental Responses should definitively address Foundry's ubiquitous objection that it "cannot fully assess the relevance" of Enterasys' document requests. (*See generally*, Ex. G, Responses to Requests 10-101 and 106-120).

be baffled by Foundry's persistent refusals to provide adequate responses to its discovery requests.

**B.**     **Enterasys Has Made A More Than Satisfactory Good Faith Response To Interrogatory No. 3**

Similarly, the Court should deny Foundry's motion to compel as it pertains to Interrogatory No. 3 because Enterasys has provided a good faith response to Foundry's request. Moreover, by providing Foundry with the factual circumstances surrounding its pre-filing investigations of infringement, Enterasys has given Foundry more than enough information to assess whether Enterasys has satisfied its obligations under Fed. R. Civ. P. Rule 11 and Rule 26. Accordingly, Foundry's motion to compel further answers to its Interrogatory No. 3 should be denied.

Foundry's insistence that it needs more information about Enterasys' pre-filing investigations suggests that, its contentions notwithstanding, it actually seeks privileged information by clothing its discovery request in the garb of "facts." Yet, Enterasys has provided facts that constitute a good faith response to Interrogatory No. 3. (*See* Henschke Decl. at Exh. 7, p. 10). The only logical explanation for Foundry's insistence is that it seeks more than simply facts -- *i.e.*, it seeks the mental impressions and privileged communications of Enterasys and its outside counsel developed during the course of two pre-filing investigations. The Court should reject this attempted end-run around the attorney-client privilege and the attorney work product doctrine by denying Foundry's Motion as it pertains to Interrogatory No. 3.

**1.**     **Enterasys Has Disclosed The Factual Circumstances Surrounding Its Pre-Suit Infringement Investigations And Has Made an 11,000-Page Document Production Containing The Materials It Relied Upon**

Contrary to Foundry's claims, Enterasys has provided substantial information regarding its pre-filing investigations through its Supplemental Responses and accompanying document production. (*See* Henschke Decl. at Exh. 7, p. 10). The information provided and the documents

produced demonstrate the factual bases of Enterasys' pre-filing investigations.  (*See id.*).

Moreover, Enterasys' response to Interrogatory No. 3 and accompanying document production

constitute a representation that it and its counsel have conducted multiple, reasonable inquiries,

and that the infringement allegations have evidentiary support or are likely to so have after a

reasonable opportunity for discovery.  (*See id.*).

     As disclosed in its Supplemental Responses, Enterasys first learned that Foundry was

infringing the six patents in suit during a pre-filing investigation in March of 2004.[8]  (*See id.*).

One year later, Enterasys conducted a second pre-filing investigation.  (*See id.*).  Further,

Enterasys' supplemental response to Interrogatory No. 3 disclosed to Foundry that each

investigation was performed *exclusively* by outside counsel at the request of its in-house

intellectual property counsel.  (*See id.*).  This response also states that each investigation

included claim construction and infringement analyses.  (*See id.*).  And, Enterasys' response to

Interrogatory No. 3 noted that both pre-filing investigations "principally focused upon Foundry's

publicly available technical and product marketing documents."  (*See id.*).  Finally, its response

to Interrogatory No. 3 pledged to produce Foundry documents relied upon during these

investigations -- a pledge it has since honored.[9]  As a result, Foundry's claims that Enterasys'

response "does not contain any factual detail" are unfounded.  (*See* Mot. at 8).

     Moreover, Enterasys' supplemental response to Interrogatory No. 3 amply satisfies

Foundry's claim that it needs this information to assess whether it should bring a Rule 11 Motion

---

[8]  Enterasys' disclosure that it first learned of Foundry's infringement in March of 2004 establishes a clear point in time for purposes of asserting any laches defense.

[9]  Enterasys subsequently made an 11,384 page document production which contained documents in its possession, custody or control relied upon by Enterasys or its counsel performing the pre-filing investigations.

against Enterasys.[10]  (See Mot. at 2).  Under Rule 11, a claimant's counsel carries an obligation to certify:

> to the best of [his] … knowledge, information, and belief, formed after an inquiry reasonable under the circumstances … the allegations and other factual contentions [contained therein] have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

*See* Fed. R. Civ. P. 11(b)(3).  In the patent infringement context, the Federal Circuit has held that an infringement analysis is the "key factor in determining whether a patentee [has] performed a reasonable pre-filing inquiry."  *See Q-Pharma, Inc. v. Andrew Jergens*, 360 F.3d 1295, 1302 (Fed. Cir. 2004).  Moreover, "[a]n infringement analysis can simply consist of a good faith, informed comparison of the claims of a patent against the accused subject matter."  *See View Eng'g.*, 208 F.3d at 986 (Fed. Cir. 2000).

By giving Foundry information concerning (1) when pre-filing investigations were conducted; (2) who conducted them; (3) the fact that these investigations consisted of claim constructions and infringement analysis against Foundry products; (4) the documents principally relied upon to conduct the investigations, Enterasys has clearly provided enough information for Foundry to gauge whether its Rule 11 obligations have been met.  Foundry's attempt to compel Enterasys to provide additional "factual detail" to its pre-filing investigations is simply an impermissible attempt to gain a strategic advantage by gaining access to the protected impressions of counsel.  Accordingly, this Court should deny Foundry's Motion as it pertains to Interrogatory No. 3.

---

[10]  In its motion, Foundry, citing *View Engineering, Inc. v. Robotic Vision Systems*, takes case language out of context to suggest that it has "challenged" Enterasys to "demonstrate…exactly why it believed before filing the claim that it had a reasonable chance of proving infringement."  (*See* Mot. at 9, *citing* 208 F.3d 986 (Fed. Cir. 2000)).  Unlike Foundry's present motion, *View Engineering* came to the court on a Rule 11 motion for sanctions, not a discovery dispute.  *See* 208 F.3d at 986.  Only in the context of a Rule 11 motion is a patentee required to waive privilege with respect to its pre-suit investigation.

**2.    Foundry's Demands For Still Further Information Are Improperly Directed At Obtaining Enterasys' Attorney Work Product And Privileged Attorney-Client Communications**

Contrary to its contentions, Foundry does not simply seek "facts" regarding Enterasys' pre-filing investigations; rather it apparently seeks to gain an understanding of Enterasys' legal strategies and impressions that are protected from discovery.  (*See* Mot. at 2, 8).  Indeed, Foundry in its Motion states that it needs information about Enterasys' pre-filing investigations so it can "understand Enterasys' theories of infringement."  (Mot. at 8).  Thus, it is evident that Foundry is seeking a window into the attorney's work product of how Enterasys has construed the patent claims and how it applied these constructions to accused products sold by Foundry.  (*See* Ex. E at 2).[11]  Because Foundry's demands for further information about Enterasys' pre-filing investigations seek information protected by the attorney-client privilege and/or the attorney work-product doctrine, Foundry should not be permitted to compel further answers to its Interrogatory No. 3.

The additional information Foundry seeks is protected by the attorney work product doctrine because it was (1) "prepared in anticipation of litigation" and (2) conducted by attorneys at the direction of Enterasys' IP counsel.  *See* FED. R. CIV. P. 26(b)(3).  Nevertheless, Foundry insists that it is entitled to discovery relating to Enterasys' pre-filing investigations so it can understand Enterasys' theories of infringement.  (*See* Mot. at 8).[12]  Simply put, Foundry is not

---

[11]  Foundry's Motion fails to demonstrate that the circumstances surrounding its request militate a by-pass of the work-product doctrine.  It has not shown that it "has a substantial need" for the pre-filing work product protected information; nor has it shown that it has been "unable without undue hardship to obtain the substantial equivalent … by other means."  *See* Fed. R. Civ. P. 26(b)(3).  It follows, moreover, that Foundry has not even come close to meeting the heightened standard that would permit it to have access to "opinion" work product that shows the mental impressions, conclusions, opinion, or legal theories of the attorney concerning this litigation.  *See Upjohn Co. v. U.S.*, 449 U.S. 383, 400 (1981); *see also In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003) (holding that "opinion" work product receives "near absolute protection from discovery").

[12]  Foundry's Interrogatory No. 3 does not seek Enterasys' theories of infringement as they stand today; rather it impermissibly seeks the infringement theories of Enterasys and its counsel as they existed during the pre-filing investigations.  (*See* Henschke Decl. at Exh. 8, pp. 4-5).

entitled to how counsel interpreted the patents during the pre-filing investigations; nor is it entitled to how counsel applied those interpretations to the accused products. *See Phillips Elecs. N. Am. Corp. v. Universal Elecs. Inc.*, 892 F. Supp. 108, 110 (D. Del. 1995). Enterasys has supplied the factual underpinnings of these analyses above, but steadfastly maintains that it is not obligated to provide any insight into the mental impressions of the attorneys conducting the investigations. *See State of Maine v. U.S. Dept. of Interior*, 298 F.3d 60, 66 (1st Cir. 2002*); In re Grand Jury Subpoena*, 220 F.R.D. 130, 141 (D. Mass. 2004); *Phillips*, 892 F. Supp. at 110.

Moreover, to the extent Foundry's requests in Interrogatory No. 3 seek information that reflects confidential communications between Enterasys and its counsel, this Court should deny the present motion under the attorney-client privilege. *See U.S. v. United States Shoe Machinery Co*., 89 F. Supp. 357, 358-59 (D. Mass. 1950). Accordingly, Enterasys should not be compelled to produce any documents or other information that reflect any confidential communication between Enterasys and its counsel made for "purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding." *See id.; see also* Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine*, (4th Ed. 2001) at 46. Compelling Enterasys to provide such information would run counter to the policy goals— namely the encouragement of "full and frank communication between attorneys and their clients" to "promote broader public interests in the observance of law and administration of justice"—articulated by the Supreme Court in *Upjohn Co. v. United States*. *See* 499 U.S. 383, 390 (1981).

To permit Foundry to compel additional information about Enterasys' pre-filing investigations would be to delve into areas of discovery that are protected by the attorney-client privilege and the work-product doctrine. Such discovery would only provide Foundry with fodder to try to limit Enterasys to the infringement identified during March of 2004 and 2005

without affording it the benefit of the discovery process.  For the foregoing reasons, the Court

should deny Foundry's motion as it pertains to Interrogatory No. 3.


## IV.
## CONCLUSION

For the foregoing reasons, Enterasys respectfully requests that the Court deny in its

entirety Foundry's present motion to compel further answers to its Interrogatory Nos. 2 and 3.

Dated:  May 11, 2006                          Respectfully submitted,

                                             ENTERASYS NETWORKS, INC.

                                             By its attorneys,

                                             _/s/ Marc N. Henschke_____
                                             Christopher P. Sullivan, Esq. (BBO No.485120)
                                             Marc N. Henschke, Esq. (BBO No. 636146)
                                             Alan E. McKenna (BBO No. 644556)
                                             Robins, Kaplan, Miller & Ciresi L.L.P.
                                             800 Boylston Street, 25th Floor
                                             Boston, MA 02199
                                             Tel. (617) 267-2300

Of Counsel:
A. James Anderson, Esq. *(pro hac vice)*
Marla R. Butler, Esq. *(pro hac vice)*
Robins, Kaplan, Miller & Ciresi L.L.P.
2600 One Atlanta Plaza
Atlanta, GA 30326-1386
Tel. (404) 760-4300

Robert A. Auchter, Esq. *(pro hac vice)*
Robins, Kaplan, Miller & Ciresi L.L.P.
1801 K Street, N.W.
Washington, DC  20006
Tel. (202) 775-0725

35031271.2

## CERTIFICATE OF SERVICE

I, Marc N. Henschke, hereby certify that on May 11, 2006, I caused the attached *Plaintiff Enterasys Networks, Inc.'s Memorandum In Opposition To Defendant Foundry Networks, Inc.'s Motion To Compel Further Answers To Its Interrogatories Nos. 2 And 3* to be served electronically pursuant to the Court's CM/ECF electronic filing system upon Defendants' respective counsel of record as indicated by asterisks below:

### Counsel for Defendant Foundry Networks, Inc.

William L. Anthony, Jr., Esq.*
I. Neel Chatterjee, Esq.*
Michael F. Heafey, Esq.
Sanjeet K. Dutta, Esq.
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025

Steven M. Bauer, Esq.*
Jeremy P. Oczek, Esq.*
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110-2600

### Counsel for Defendant Extreme Networks, Inc.

Terrence P. McMahon, Esq.*
Vera M. Elson, Esq.*
David H. Dolkas, Esq.
MCDERMOTT, WILL & EMERY LLP
3150 Porter Drive
Palo Alto, CA  94303-1212

Peter L. Resnik, Esq.*
Benjamin A. Goldberger, Esq.*
MCDERMOTT, WILL & EMERY LLP
28 State Street
Boston, MA  02109-1775

Christopher D. Bright, Esq.
MCDERMOTT, WILL & EMERY LLP
18191 Von Karman Avenue, Suite 400
Irvine, CA  92612-7107

Dated:  May 11, 2006                    __/s/ Marc N. Henschke_____
                                        Marc N. Henschke