# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

_____

|  |  |  |
|---|---|---|
| ENTERASYS NETWORKS, INC., | ) | Civil Action No: 05-CV-11298 (DPW) |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| FOUNDRY NETWORKS, INC. AND | ) |  |
| EXTREME NETWORKS, INC., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

_____

## DECLARATION OF MARC N. HENSCHKE IN OPPOSITION TO DEFENDANT FOUNDRY NETWORKS, INC.'S MOTION TO COMPEL FURTHER ANSWERS TO ITS INTERROGATORIES NOS. 2 AND 3

**I, MARC N. HENSCHKE**, declare as follows:

1.      I am an attorney with the law firm of Robins, Kaplan, Miller & Ciresi L.L.P., counsel of record for the named Plaintiff Enterasys Networks, Inc. ("Enterasys") in the above-referenced action.  I submit this Declaration in opposition to Defendant Foundry Networks, Inc.'s ("Foundry's") Motion To Compel Further Answers To Its Interrogatories Nos. 2 And 3 From Enterasys Networks, Inc. (Court Docket No. 36).  I have personal knowledge of the facts stated herein and, if sworn as a witness, I could and would testify competently thereto.

2.      Attached hereto as Exhibit 1 is a true and correct copy of the Joint Statement And Discovery Plan filed as Court Docket No. 28 in this action on October 27, 2005.

3.      Attached hereto as Exhibit 2 is a true and correct copy of the transcript of the Scheduling Conference held on November 3, 2005 with the Hon. Douglas P. Woodlock and filed as Court Docket No. 29 in this action.

4.      Attached hereto as Exhibit 3 is a true and correct copy of the Court's Scheduling Order of Hon. Douglas P. Woodlock filed as Court Docket No. 31 in this action on November 18, 2005.

5.      Attached hereto as Exhibit 4 is a true and correct copy of Defendant Foundry Networks, Inc.'s Responses And Objections To Plaintiff Enterasys Networks, Inc.'s First Set Of Requests For Production Of Documents (Nos. 1-120) served upon Enterasys on April 3, 2006.

6.      Attached hereto as Exhibit 5 is a true and correct copy of a letter to Jeremy P. Oczek from Marc N. Henschke dated May 1, 2006, which discusses the deficiencies in Foundry's Responses to Enterasys' Requests for Production Of Documents dated April 3, 2006.

7.      Attached hereto as Exhibit 6 is a true and correct copy of a letter to Marc N. Henschke from Jeremy P. Oczek dated April 14, 2006 concerning Enterasys' responses and objections to Foundry Networks, Inc.'s First Set Of Interrogatories (Nos. 1-11) To Plaintiff Enterasys Networks, Inc. dated March 14, 2006.

8.      Attached hereto as Exhibit 7 is a true and correct copy of Plaintiff Enterasys Networks, Inc.'s First Supplemental Responses And Objections To Defendant Foundry Networks, Inc.'s First Set Of Interrogatories served upon Foundry on April 26, 2006.

9.      Attached hereto as Exhibit 8 is a true and correct copy of Foundry Networks, Inc.'s First Set Of Interrogatories (Nos. 1-11) To Plaintiff Enterasys Networks, Inc. served upon Enterasys on April March 14, 2006.

10.     Attached hereto as Exhibit 9 is a true and correct copy of a letter to Marc N. Henschke from Jeremy P. Oczek dated May 4, 2006 concerning various discovery matters.

11.     Attached hereto as Exhibit 10 is a true and correct copy of Foundry Networks, Inc.'s Answer To Enterasys Networks, Inc.'s Complaint filed as Court Docket No. 14 in this action on August 22, 2005.

I declare under penalty of perjury that the foregoing is true and correct and that this Declaration is executed on this 11th day of May, 2006 at Boston, Massachusetts.

/s/ Marc N. Henschke
MARC N. HENSCHKE

35031346

<u>**CERTIFICATE OF SERVICE**</u>

I, Marc N. Henschke, hereby certify that on May 11, 2006, I caused a true and correct copy of the attached *Declaration of Marc N. Henschke In Opposition To Defendant Foundry Networks, Inc.'s Motion To Compel Further Answers To Its Interrogatories Nos. 2 And 3* to be served electronically pursuant to the Court's CM/ECF electronic filing system upon Defendants' respective counsel of record as indicated by asterisks below:

<u>**Counsel for Defendant Foundry Networks, Inc.**</u>

William L. Anthony, Jr., Esq.*
I. Neel Chatterjee, Esq.*
Michael F. Heafey, Esq.
Sanjeet K. Dutta, Esq.
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025

Steven M. Bauer, Esq.*
Jeremy P. Oczek, Esq.*
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110-2600

<u>**Counsel for Defendant Extreme Networks, Inc.**</u>

Terrence P. McMahon, Esq.*
Vera M. Elson, Esq.*
David H. Dolkas, Esq.
MCDERMOTT, WILL & EMERY LLP
3150 Porter Drive
Palo Alto, CA  94303-1212

Peter L. Resnik, Esq.*
Benjamin A. Goldberger, Esq.*
MCDERMOTT, WILL & EMERY LLP
28 State Street
Boston, MA  02109-1775

Christopher D. Bright, Esq.
MCDERMOTT, WILL & EMERY LLP
18191 Von Karman Avenue, Suite 400
Irvine, CA  92612-7107

Dated:  May 11, 2006                    /s/ Marc N. Henschke
                                        Marc N. Henschke

# Exhibit 1

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

|  |  |
|---|---|
| ENTERASYS NETWORKS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>FOUNDRY NETWORKS, INC. and<br>EXTREME NETWORKS, INC.,<br><br>Defendants. | No. 05-CV-11298 (DPW) |

## JOINT STATEMENT AND DISCOVERY PLAN

Pursuant to Local Rule 16.1(D), and Federal Rules of Civil Procedure 16(b) and (c) and 26(f), Plaintiff Enterasys Networks, Inc. ("Enterasys") and Defendants Foundry Networks, Inc. ("Foundry") and Extreme Networks, Inc. ("Extreme") (collectively "Defendants") hereby submit a joint statement containing, inter alia, their alternative proposed pretrial schedules.

### I. NATURE OF THE CASE

Enterasys has filed this action pursuant to the patent laws of the United States, 35 U.S.C. § 1 et seq., alleging that Foundry and Extreme have each infringed, and continue to infringe, one or more claims of six different issued U.S. patents covering technologies relevant to networking infrastructure products (the "Enterasys Patents"). Foundry and Extreme have each denied these infringement allegations, and have asserted various affirmative defenses and/or counterclaims for declaratory relief principally contending that the Enterasys Patents are non-infringed, invalid, or otherwise unenforceable by Enterasys.

## II. PROPOSED PRETRIAL SCHEDULES

Set forth below are alternative pretrial schedules proposed by Enterasys on the one hand, and by Defendants on the other hand. Except where indicated, the parties agree as to the basic types, sequencing and timing of pretrial events, including a phasing of discovery.[1]

The parties disagree as to an issue related to focusing the case to prepare it for trial. While the parties agree that the case ultimately to be tried will be focused on a limited number of claims, they disagree as to the best pre-trial method to achieve that result. Enterasys seeks to narrow the number of asserted claims by establishing clear dates by which it must identify accused products and produce claim construction charts identifying asserted claims, followed by the Defendants identification of items of prior art and production of their responsive claim construction charts. Defendants believe that Enterasys should be required to provide its infringement contentions in response to interrogatories and, before claim construction, commit to a specified number of claims per patent it intends to try to the jury. Enterasys contends that such a limitation on the number of claims it can assert per patent is unnecessary and has no basis in law or fact. Defendants' contend that their approach allows for certain infringement and invalidity discovery before claim construction to allow Enterasys to pick its strongest claims for trial, and that such an approach is increasingly followed by Court's throughout this country and allows for more expeditious and cost-effective resolution of disputes, as the issues in the case are narrowed and more clearly framed.

Defendants further recognize that the trajectory of the case may be significantly affected by the Court's claim construction or *Markman* order, and in recognition of this possibility, they

---

[1] For the Court's convenience, proposed events and dates about which the parties agree are shown in a single merged cell, whereas areas of disagreement are shown in alternative side-by-side cells.

also propose a further alternative schedule for the Court's consideration. Rather than being anchored to fixed dates, this further alternative schedule is triggered by the Court's *Markman* order and all subsequent dates are calculated from that date.

As discussed, *infra*, in Section VII, Defendants have joined in a motion to sever the claims that Enterasys has asserted herein against Foundry from those that it has asserted against Extreme. Should the Court ultimately grant Defendants' pending motion and divide this case into two separate civil actions, the parties respectfully reserve their rights to make appropriate modifications to their alternative pretrial schedules proposed below.

| Pre-Trial Event | Enterasys' Proposed Date | Defendants' Proposed Date |
|---|---|---|
| Initial Rule 16(b) scheduling conference | November 3, 2005 | |
| Deadline to exchange Local Rule 26.2(a) automatic disclosures | November 17, 2005 | |
| Beginning of Phase I fact discovery limited to non-willful infringement, invalidity, and unenforceability issues | November 17, 2005 (or upon earlier completion of automatic disclosures) | |
| Deadline to file motions to join other parties or to amend the pleadings | July 17, 2006 | |
| Deadline for Enterasys to identify no more than four claims per patent to be construed and asserted at trial. Enterasys may not add or substitute claims except by agreement of all parties or by showing good cause. | Enterasys disagrees with such requirements and contends that they have no basis in fact or law | July 17, 2006 |
| Deadline for Enterasys to serve claim construction charts identifying asserted claims and products accused of literal or doctrine of equivalents infringement | July 17, 2006 | Not necessary. Can be addressed through interrogatories. |
| Deadline for Defendants to serve invalidity contentions identifying each asserted item of prior art and the basis on which it anticipates or renders obvious each asserted patent claim | August 4, 2006 | Not necessary. Can be addressed through interrogatories. |

| | | |
|---|---|---|
| Deadline for Defendants to serve responsive claim construction charts identifying which claim elements they admit are present in any accused products, and as to all other claim elements their bases for denying that said elements are present | August 18, 2006 | Not necessary. Can be addressed through interrogatories. |
| Simultaneous exchange of preliminary proposed constructions for the claim elements that each party contends should be construed by the Court | September 1, 2006 | |
| Deadline for Defendants to provide notice of intention to rely upon opinions of counsel to potentially avoid willful infringement findings | September 15, 2006 | |
| Deadline to file a joint claim construction statement providing shared constructions of claim elements on which the parties agree, and alternative proposed constructions of disputed claim elements | September 18, 2006 | |
| Beginning of Phase II fact discovery encompassing all issues, including those issues addressed during Phase I | October 3, 2006 | |
| Deadline for all parties to file their opening claim construction briefs | October 18, 2006 | |
| Deadline for all parties to file their claim construction reply briefs | November 20, 2006 | |
| *Markman* claim construction hearing | January 10, 2007 | |
| Cut-off date for Phase II fact discovery: all Phase II fact discovery shall be initiated so as to be completed on or before this date | February 28, 2007 | |
| Rule 16 status conference | March 1, 2007 | |
| Deadline to identify experts and to serve initial expert reports relating to issues for which a party bears the burden of proof | March 16, 2007 | |
| Deadline to identify rebuttal experts and to serve rebuttal expert reports | April 16, 2007 | |
| Cut-off date for expert discovery: all expert discovery shall be initiated so as to be completed on or before this date | May 31, 2007 | |
| Deadline to file dispositive motions | July 2, 2007 | |
| Deadline to file oppositions to dispositive motions | July 30, 2007 | |
| Rule 16(d) final pretrial conference | September 3, 2007 | |
| Trial begins | October 1, 2007 | To be set at final pretrial conference |

## DEFENDANTS' FURTHER ALTERNATIVE SCHEDULE BASED ON THE DATE OF THE COURT'S *MARKMAN* RULING[2]

| Claim Construction Order Issues | | |
|---|---|---|
| Beginning of Phase II fact discovery encompassing all issues, including those issues addressed during Phase I | | Upon issuance of claim construction order |
| Cut-off date for Phase II fact discovery: all Phase II fact discovery shall be initiated so as to be completed on or before this date | | 90 days after claim construction decision |
| Rule 16 status conference | | 10 days after claim construction decision or as Court determines |
| Deadline to identify experts and to serve initial expert reports relating to issues for which a party bears the burden of proof | | 30 days after discovery cutoff |
| Deadline to identify rebuttal experts and to serve rebuttal expert reports | | 60 days after discovery cutoff |
| Cut-off date for expert discovery: all expert discovery shall be initiated so as to be completed on or before this date | | 90 days after discovery cutoff |
| Deadline to file dispositive motions | | 120 days after discovery cutoff |
| Deadline to file oppositions to dispositive motions | | 150 days after discovery cutoff |
| Rule 16(d) final pretrial conference | | 180 days after discovery cutoff |

## III. NONAPPLICABILITY OF DISCOVERY EVENT LIMITATIONS

The parties are in agreement that not all of the discovery event limitations set forth in

Local Rule 26.1(C) and Federal Rules of Civil Procedure 30(a)(2)(A) and 33(a) should apply in

this case. However, as detailed below, the parties have certain disagreements about what

alternative limitations should be substituted in their place.

---

[2] Enterasys disagrees in its entirety with Defendants' further alternative proposal that sets deadlines based on the Court's issuance of its *Markman* ruling.

## Document Requests

With respect to document requests, the parties agree that each party should be permitted to serve two sets of document requests on each opposing party during Phase I discovery. In addition, the parties agree that each party should be permitted to serve two additional sets of document requests on each opposing party during Phase II discovery.

## Depositions

### Enterasys' Position

With respect to depositions, Enterasys proposes that it be permitted to take 25 non-expert depositions, and that the Defendants be collectively permitted to take a total of 36 non-expert depositions.[3] Enterasys proposes this limit of 36 deposition for the Defendants due to the significant common interests that they share with respect to certain deponents and issues, including: (i) inventorship; (ii) prosecution of the patents-in-suit; (iii) invalidity; (iv) unenforceability; and (v) Enterasys' lost profits damages.

### Defendants' Position

It will be necessary to take 16 inventor depositions plus multiple plaintiff and third-party depositions on 6 patents with over 100 claims currently in issue; defendants propose that each party be permitted 200 hours of non-expert depositions to encourage the parties to allocate time efficiently to those depositions that require more time and minimize the amount of time used on depositions that can be completed in a short session.

---

[3] Under Enterasys' deposition proposal, all depositions must be completed within the time period set forth in Fed. R. Civ. P. 30(d)(2) with the following exceptions: (i) each inventor may be deposed for up to two seven-hour days, so long as any two-day depositions are concluded on consecutive days; and (ii) each party shall be permitted a single deposition of each other party of up to twenty-one hours under Fed. R. Civ. P. 30(b)(6). These limitations on the time periods of depositions may be modified on a case-by-case basis by mutual agreement among the parties and the deponent, or by order of the Court for good cause shown.

### Interrogatories

With respect to interrogatories, the parties agree that each party be permitted to serve 25 interrogatories on each opposing party.  A single interrogatory requesting a position for all asserted claims or accused products shall be counted as one interrogatory and will not be considered compound.

### Requests for Admission

With respect to requests for admissions, the parties agree that each side be permitted to serve 50 requests for admissions upon each opposing party.  Requests for admission to authenticate documents, for a date of public use, public disclosure, or printed publication shall not be counted under this limit.

### IV. SUPPLEMENTATION OF EXPERT REPORTS FOLLOWING CLAIM CONSTRUCTION

If no claim construction order has been entered by the Court when the parties must exchange opening and rebuttal expert reports, the parties will use only their own proposed claim construction as the basis for their respective expert's opinions, and when the Court issues a claim construction order, the parties may supplement their respective expert reports only to the extent the Court's construction is different from their own proposed claim construction. The party bearing the burden of proof will have fifteen (15) business days to serve supplemental expert reports based on the Court's claim construction order. The responding party shall have fifteen (15) business days to serve supplemental rebuttal reports to respond to any supplemental expert report received. At trial, no impeachment is permitted based on supplementation permitted under this provision.

### V. NON-CONSENT TO TRIAL BY MAGISTRATE

The parties do not consent to trial by a magistrate judge.

## VI. **LOCAL RULE 16.1(D)(3) CERTIFICATES**

Counsel for the parties have conferred with their respective clients with a view toward establishing a budget for the costs of conducting this litigation, and for purposes of considering the resolution of this litigation through alternative dispute resolution programs. Certificates attesting to these client consultations are attached hereto as Exhibits A through C.

## VII. **OTHER MATTERS**

On August 24, 2005, pursuant to Federal Rule of Civil Procedure 21, Extreme filed a currently pending motion to sever Enterasys' patent infringement claims against Extreme from Enterasys' patent infringement claims against Foundry. On August 31, 2005, Foundry filed a notice of joinder in Extreme's motion. Enterasys filed opposition papers on September 7, 2005, and Extreme filed a further reply brief on September 19, 2005. Accordingly, the motion to sever has already been fully briefed by the parties, and they are prepared to argue that motion at the initial scheduling conference should it still remain pending at that time.

On an unrelated note, the parties anticipate jointly seeking the Court's approval in the near future for a protective order governing the use and treatment of confidential information in this case.

Dated: October 27, 2005           Respectfully submitted,

ENTERASYS NETWORKS, INC.

By its attorneys,

/s/ Alan E. McKenna
Christopher P. Sullivan, Esq. (BBO No.485120)
Marc N. Henschke, Esq. (BBO No. 636146)
Alan E. McKenna (BBO No. 644556)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
800 Boylston Street, 25th Floor
Boston, MA 02199
Tel. (617) 267-2300

Of Counsel:

A. James Anderson, Esq.
Marla R. Butler, Esq.
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2600 One Atlanta Plaza
950 East Paces Ferry Road, N.E.
Atlanta, GA  30326-1386
Tel. (404) 760-4300

Robert A. Auchter, Esq.
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
1801 K Street, N.W.
Washington, DC  20006
Tel. (202) 775-0725

FOUNDRY NETWORKS, INC.

By its attorneys,

/s/ Steven M. Bauer
Steven M. Bauer, Esq.
Jeremy P. Oczek, Esq.
PROSKAUER ROSE LLP
One International Place, 22nd Floor
Boston, MA 02110-2600
Tel. (617) 526-9600

Of Counsel:

William Anthony, Esq.
I. Neel Chatterjee, Esq.
Michael F. Heafey, Esq.
Raymis H. Kim, Esq.
Sanjeet K. Dutta, Esq.
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Tel. (650) 614-7400

EXTREME NETWORKS, INC.

By its attorneys,

/s/ Peter L. Resnik
Peter L. Resnik, Esq. (BBO No. 417180)
Benjamin A. Goldberger, Esq. (BBO No. 654357)
MCDERMOTT WILL & EMERY LLP
28 State Street
Boston, MA  02109-1775
Tel. (617) 535-4000

Of Counsel:

Terrence P. McMahon, Esq.
Vera M. Elson, Esq.
Behrooz Shariati, Esq.
MCDERMOTT WILL & EMERY LLP
3150 Porter Drive
Palo Alto, CA  94304-1212
Tel. (650) 813-5000

## CERTIFICATE OF SERVICE

I, Alan E. McKenna, hereby certify that on October 27, 2005, I caused the attached *Joint Statement And Discovery Plan* to be served by first class mail upon Defendants' counsel of record (and electronically on CM/ECF system participants) at the following addresses:

Steven M. Bauer
Jeremy P. Oczek
PROSKAUER ROSE LLP
One International Place, 22nd Floor
Boston, MA 02110-2600

William Anthony
I. Neel Chatterjee
Michael F. Heafey
Raymis H. Kim
Sanjeet K. Dutta
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025

Peter L. Resnik
Benjamin A. Goldberger
MCDERMOTT WILL & EMERY LLP
28 State Street
Boston, MA 02109-1775

Terrence P. McMahon
Vera M. Elson
Behrooz Shariati
MCDERMOTT WILL & EMERY LLP
3150 Porter Drive
Palo Alto, CA 94304-1212

Dated: October 27, 2005                 /s/ Alan E. McKenna _____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

|  |  |
|---|---|
| ENTERASYS NETWORKS, INC., )<br><br>Plaintiff, )<br><br>v. )<br><br>FOUNDRY NETWORKS, INC. and )<br>EXTREME NETWORKS, INC., )<br><br>Defendants. ) | No. 05-CV-11298 (DPW) |

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 16.1(D)(3)

Pursuant to Local Rule 16.1(D)(3), the undersigned party and its counsel of record have conferred regarding the following issues:

(i)    establishing a budget for the costs of conducting the full course and various alternative courses of this litigation; and

(ii)   possible resolution of this litigation though alternative dispute resolution programs such as those outlined in Local Rule 16.4.

Dated: October 27, 2005

ENTERASYS NETWORKS, INC.          ROBINS, KAPLAN, MILLER & CIRESI L.L.P.


_____          _____
Gerald M. Haines II                       Marc N. Henschke, Esq.
Executive VP of Strategic Affairs
 and Chief Legal Officer

11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| ENTERASYS NETWORKS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 05-CV-11298 (DPW) |
| | ) | |
| v. | ) | |
| | ) | |
| FOUNDRY NETWORKS, INC. and | ) | |
| EXTREME NETWORKS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 16.1(D)(3)

Pursuant to Local Rule 16.1(D)(3), the undersigned party and his counsel of record have conferred regarding the following issues:

(i)  establishing a budget for the costs of conducting the full course and various alternative courses of this litigation; and

(ii)  possible resolution of this litigation though alternative dispute resolution programs such as those outlined in Local Rule 16.4.

Dated: October 27, 2005

FOUNDRY NETWORKS, INC.

James E. Parsons, Esq.
Director, Intellectual Property

PROSKAUER ROSE LLP

Steven M. Bauer, Esq

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| ENTERASYS NETWORKS, INC., | ) ) ) | No. 05-CV-11298 (DPW) |
| Plaintiff, | ) ) |  |
| v. | ) ) |  |
| FOUNDRY NETWORKS, INC. and EXTREME NETWORKS, INC., | ) ) ) |  |
| Defendants. | ) ) ) |  |

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 16.1(D)(3)

Pursuant to Local Rule 16.1(D)(3), the undersigned party and his counsel of record have conferred regarding the following issues:

    (i)    establishing a budget for the costs of conducting the full course and various alternative courses of this litigation; and

    (ii)    possible resolution of this litigation though alternative dispute resolution programs such as those outlined in Local Rule 16.4.

Dated: October 27, 2005

EXTREME NETWORKS, INC.

_____
Alicia J. Moore
General Counsel

MCDERMOTT WILL & EMERY LLP

_____
Peter L. Resnik, Esq.
BEHROOZ SHARIATI

15

# Exhibit 2

```
 1                  UNITED STATES DISTRICT COURT
 2                   DISTRICT OF MASSACHUSETTS
 3      * * * * * * * * * * * * * * * *
                                      *
 4      ENTERASYS NETWORKS, INC.      *
                        Plaintiff     *
 5                                    *
           VERSUS                     *    CA-05-11298-DPW
 6                                    *
        FOUNDRY NETWORKS, INC.        *
 7      EXETREME NETWORKS, INC.       *
                        Defendants    *
 8                                    *
        * * * * * * * * * * * * * * * *
 9
               BEFORE THE HONORABLE DOUGLAS P. WOODLOCK
10
                 UNITED STATES DISTRICT COURT JUDGE
11
                              HEARING
12
                         NOVEMBER 3, 2005
13
        APPEARANCES:
14
             CHRISTOPHER P. SULLIVAN, ESQ. AND ALAN E.
15           McKENNA, ESQ., Robins, Kaplan, Miller &
             Ciresi, LLP, 800 Boylston Street, Suite 2500,
16           Boston, Massachusetts  02199, on behalf of
             the Plaintiff
17
             ROBERT A. AUCHTER, ESQ., Robins, Kaplan, Miller &
18           Ciresi, LLP, 1801 K Street, N.W., Suite 1200,
             Washington, D.C.  20006, on behalf of the
19           Plaintiff
20           STEVEN M. BAUER, ESQ. AND JEREMY P. OCZEK, ESQ.,
             Proskauer, Rose, LLP, One International Place,
21           22nd Floor, Boston, Massachusetts  02110, on
             behalf of Foundry Networks, Inc., Defendant
22
             PETER L. RESNIK, ESQ., McDermott, Will & Emery,
23           LLP, 28 State Street, Boston, Massachusetts
             02109, on behalf of Exetreme Networks, Inc.,
24           Defendant
25      (Appearances continued next page)
```

Page 2
```
 1    APPEARANCES (CONTINUED):

 2         VERA M. ELSON, ESQ., McDermott, Will & Emery,

           3150 Porter Drive, Palo Alto, California 94304,

 3         on behalf of Exetreme Networks, Inc., Defendant

 4

 5

 6

 7

 8

 9

10

11

12

13

14

                              Courtroom No.  1 - 3rd Floor

15                            1 Courthouse Way

                              Boston, Massachusetts 02210

16                            3:08 P.M. - 3:45 P.M.

17

18

19

           Pamela R. Owens - Official Court Reporter

20         John Joseph Moakley District Courthouse

                1 Courthouse Way - Suite 3200

21              Boston, Massachusetts  02210

22

23    Method of Reporting:  Computer-Aided Transcription

24

25
```

Page 3

1    CA-05-11298-DPW
2        NOVEMBER 3, 2005
3        THE CLERK: Could counsel please identify
4    themselves?
5        MR. SULLIVAN: Good afternoon, Your Honor.
6    Christopher P. Sullivan, Robins, Kaplan, Miller &
7    Ciresi for the Plaintiff, Enterasys.
8        MR. AUCHTER: Robert Auchter with Robins,
9    Kaplan, Miller & Ciresi for the Plaintiff, Enterasys.
10       MR. McKENNA: Alan McKenna, also with Robins,
11   Kaplan for Enterasys.
12       MR. BAUER: Your Honor, Steven Bauer. With
13   me is Jeremy Oczek at the back table from Proskauer for
14   Foundry Networks.
15       THE COURT: Okay.
16       MS. ELSON: Your Honor, Vera Elson of
17   McDermott, Will & Emery on behalf of defendant,
18   Exetreme Networks.
19       MR. RESNIK: Peter Resnik from McDermott,
20   Will & Emery on behalf of Exetreme Networks.
21       THE COURT: There is quite a sound of fury
22   over leading me to believe that this is a patent case
23   with the amount of effort that has been put into staking
24   out positions on discovery.
25       Let me put it a little bit differently. So I

Page 4

1    sever and then I consolidate the cases for purposes of
2    discovery. Is there a problem with that?
3        MR. SULLIVAN: Not from our point of view,
4    Your Honor.
5        MR. RESNIK: Not from our point of view, Your
6    Honor. But I think parts of the discovery may not be
7    consolidated.
8        THE COURT: What exactly?
9        MR. RESNIK: Well, certainly the inquiries
10   into infringement by the individual defendants which
11   aren't relevant to the other defendants' claims.
12       THE COURT: What does that mean in a practical
13   sort of way? Because you're going to have all kind of
14   protective orders; is that it?
15       MR. RESNIK: Well, we're going to be making --
16   particularly during the discovery phase -- a lot of
17   disclosure of very confidential information in the face
18   of a competitor who is a co-defendant in the case.
19   While some of that will be necessary when we get to
20   trial -- because it's a public trial -- those
21   disclosures probably are irrelevant to the case against
22   the co-defendant. And, so, we would urge the Court not
23   to require us to make those disclosures unnecessarily
24   during the pretrial phase. So, by consolidating
25   discovery that goes to issues such as validity of the

Page 5

1    patent, prior art, the inventor depositions, I think
2    much of the discovery will be consolidated. We would
3    ask the Court not to consolidate the depositions of the
4    defendants.
5        THE COURT: How do I sort through that?
6        MR. RESNIK: We would propose to work with the
7    other side and with all the parties and submit a
8    proposal for consolidation of those events that we think
9    ought to be consolidated.
10       MS. ELSON: I can address that, also, Your
11   Honor.
12       THE COURT: Sure.
13       MS. ELSON: We were also in court with Foundry
14   in another patent case. And there have been at least
15   three courts I know of who have followed the proposal
16   we're making, which is because the core issues in the
17   case -- infringement damages -- all involve highly
18   confidential information and source code and are really
19   independent of each other, but the core issue -- the
20   two defenses which the parties have in common are
21   specifically Markman, the claim construction, and
22   validity/enforceability. So those are the two issues
23   that even if you look at the cases that plaintiff cites
24   troubled the courts when they chose not to sever. So,
25   we worked out a proposal, which is along basically the

Page 6

1    same lines followed by Judge Farnan in the District
2    Court of Delaware in the Lucent versus Exetreme and
3    Foundry case, Judge Jordan, also in Delaware in
4    Phillips versus Contac --
5        THE COURT: What I have was Judge Farnan's
6    memorandum declining to sever. I guess what I'm
7    addressing is the more particularized set of orders
8    that would be necessary in this.
9        MS. ELSON: The only order that would be
10   necessary is what we're proposing, which is we would
11   join together in the Markman process, the claim
12   construction process. We would jointly cooperate on
13   taking the 16 inventors in the case which relate to
14   issues of validity generally and enforceability as well
15   as prior art. Beyond that, the concern is the potential
16   sharing of highly confidential information between
17   defendants.
18       THE COURT: Do you and the District of
19   Delaware have in place some orders more specific than
20   the general ruling on severance?
21       MS. ELSON: No. That was it, Your Honor. In
22   fact, I have another sample from Judge White in the
23   Northern District of California. And generally, we're
24   able to work it out with those sorts of guidelines.
25       MR. BAUER: Your Honor, so there would be no

3 (Pages 3 to 6)

Page 7

1  issue in terms of any discovery produced by them to
2  either of us. There is no issue at all. It's really
3  just going to be something -- and by the way, we are
4  cooperative in this -- that it would be just an
5  agreement between us that Foundry wouldn't turn over
6  Foundry documents to Extreme. Extreme wouldn't turn
7  over Exetreme documents to Foundry. And it's really
8  just an agreement between us because everything is going
9  to go over to the other side.
10     THE COURT: Okay.
11     MR. SULLIVAN: I have no problem with that,
12  Your Honor. I just don't want to be in a position where
13  our people are subjected to two different sets of
14  depositions on any topics that the defendants may want
15  to take depositions of our employees or management or
16  experts.
17     THE COURT: Well, the devil is in the details.
18  But I suspect that the core questions, they will be
19  conducted together --
20     MR. BAUER: That's right, Your Honor. The
21  only time --
22     THE COURT: -- and in a non-duplicative
23  fashion.
24     MR. BAUER: The only place there might be
25  something left over would be the 30(b)(6) infringement

Page 8

1  contentions, one of their claims against us versus
2  claims against them.
3     MS. ELSON: But on the core issues, Your
4  Honor, of infringement and damages, that's a concern
5  both in pretrial and in trial, the exposure of that
6  information and I believe the weight of authority.
7  Chisholm, the treatise, as well as the cases, find that
8  even though the theory of liability may be the same, the
9  assertion of claims, the acts that are accused are
10  completely independent and, therefore, joinder is
11  inappropriate in such circumstances, particularly when
12  we are direct competitors with Foundry.
13     THE COURT: Well, I'm more concerned with the
14  practical questions of how this is going to proceed than
15  I am right now with the interesting joinder questions.
16     MS. ELSON: I have for Your Honor, if you
17  wish, a sample of the Judge White order in the '98 case
18  that I can hand up.
19     THE COURT: Well, I guess I want to tease this
20  out just a bit more. And let me understand from the
21  plaintiff if you've heard anything that makes you
22  uncomfortable about it because you are going to be
23  subject to separate depositions, at least as to certain
24  kinds of infringement and damage questions.
25     MR. SULLIVAN: Well, I think Your Honor is

Page 9

1  right. The devil is in the detail. If I understood
2  what Mr. Bauer said to be correct, that they would
3  supply us with all the discovery and that all they would
4  do is not exchange that discovery with each other. I
5  certainly don't have a problem with that.
6     THE COURT: Well, but presumably they are
7  going to be doing depositions of your people with
8  respect to what you claim is their infringement, their
9  separate infringements. Those are going to be separate
10  depositions.
11     MR. SULLIVAN: Yes. And we're fine with that,
12  Your Honor. If they want to do a deposition of our
13  people or our experts with regard to how Foundry is
14  infringing and Extreme is not going to be present by
15  agreement amongst the parties at that deposition, that's
16  fine. I would only ask that there is an issue about the
17  depositions, as I think Your Honor knows from seeing the
18  joint submission. There's a difference as to how many
19  depositions and how long they're going to take. And we
20  would just ask that this not be an abusive situation.
21  But if everyone is acting in good faith, I don't see any
22  particular problem with it.
23     THE COURT: Well, I guess I'm going to sever.
24     The Exetreme case will be drawn separately.
25  And I'd like you to have a separate complaint filed for

Page 10

1  that. I'll waive the filing fee for it. But I just
2  want two separate cases and then I will consolidate them
3  together under the number for this case, 11298.
4     MR. SULLIVAN: That's fine, Your Honor.
5     THE COURT: And we'll proceed on that
6  consolidation basis rather than as a single action.
7     Now, I guess I was looking at your schedule
8  and thinking I hope to live that long. Why so long?
9     MR. SULLIVAN: Well, I think, Your Honor,
10  realistically speaking, as a plaintiff who would like to
11  go to trial as quickly as possible -- however, we are
12  talking about six different patents with lots of
13  different claims. We are talking about two defendants.
14  We're talking a lot of different products. I think
15  that, realistically speaking, it would be difficult to
16  do it much quicker than what is set forth in the joint
17  schedule.
18     THE COURT: All right. So, then let's turn to
19  the Markman questions. I'm not sure I understand why
20  the dispute into all kinds of a schedule with respect to
21  Markman.
22     MR. SULLIVAN: Your Honor, we have no dispute
23  over the alternative schedule. We told the defendants
24  that. What we said is we have not seen any court that
25  was willing to take that burden on themselves. If Your

4 (Pages 7 to 10)

Page 11

1  Honor wishes to take on that alternative schedule, we
2  think it makes a lot of sense, but it does put the onus
3  back on the Court because --
4      THE COURT: Well, it does and it doesn't. I
5  mean, yes, it puts it before me and then you have to sit
6  around and wait.
7      MR. SULLIVAN: Well, as a plaintiff, that's
8  not something that -- you know, the only real downside
9  to us is that if the Court is involved in other things
10 and doesn't get around to making a Markman decision and
11 then we have to wait and this schedule becomes
12 unrealistic.
13     THE COURT: Right.
14     MR. SULLIVAN: But in a lot of ways, the
15 defendant's alternative does make a lot of sense. It's
16 just a question of putting the burden on the Court and
17 then not penalizing the plaintiff in terms of getting a
18 trial date if the Court is too busy to get to resolve
19 the Markman issues.
20     THE COURT: Well, but let me understand what
21 the real alternative is. I spend my time in patent
22 cases trying to figure when to have a Markman hearing.
23 There is no good time to have a Markman hearing as far
24 as I can see. There are some less bad ones maybe. But
25 you seem happy with it in this order --

Page 12

1      MR. SULLIVAN: Yes.
2      THE COURT: -- or this sequence.
3      MR. SULLIVAN: I think the parties have agreed
4  to virtually all of the dates. There is really only --
5  in terms of scheduling, the only issue is whether or not
6  the plaintiffs should be limited to four claims from
7  each patent and have to declare that without the ability
8  to change. We don't think that there's any basis for
9  that. And then we think that we should submit our claim
10 construction charts on the 17th of July and that a few
11 weeks later the defendants should serve their invalidity
12 contentions and then --
13     THE COURT: No. I have that in front of me.
14 So, maybe I ought to back up a bit with this. I mean, I
15 share the view generally that there are never more than
16 four good claims. There rarely are more than five
17 documents worth looking at in a case although you don't
18 learn until trial what they are. But what makes you
19 think you're going to have more than four?
20     MR. SULLIVAN: I don't know, Your Honor. And
21 I think that this -- if we're talking about this six
22 months from now or nine months from now, I would think
23 that would be a lot more appropriate. The problem I
24 have is without having taken any discovery, just
25 standing here at the start of the case, to say that we

Page 13

1  are going to agree that we'll be limited to four claims
2  and that we can never change what those claims are
3  before we have taken any discovery and before we've seen
4  what the contentions are, before we have any indication
5  from the Court as to what the claim construction is
6  going to be --
7      THE COURT: Well, you don't get that until
8  afterwards, anyway.
9      MR. SULLIVAN: I understand. But I think it's
10 -- my answer is, Your Honor, I think it's way premature
11 to force us into that. As a plaintiff, we need to try a
12 coherent case. We know that. And there's no way --
13     THE COURT: Well, no. I'm less concerned with
14 generalities than the specifics of this case. You must
15 know enough about the case to know what your likely
16 claims are going to be --
17     MR. SULLIVAN: We do.
18     THE COURT: -- and highly proliferated beyond
19 four?
20     MR. SULLIVAN: Your Honor, it's the artificial
21 nature of saying four per patent.
22     THE COURT: But just give me -- I mean, should
23 I be staying up late at night worrying about 75 claims
24 for each of the patents?
25     MR. SULLIVAN: No. I don't think so, Your

Page 14

1  Honor.
2      THE COURT: How about six?
3      MR. SULLIVAN: How about seven.
4      THE COURT: All right. I really want to get
5  an idea of whether or not this is going to be --
6      MR. SULLIVAN: I would suspect, Your Honor, by
7  the time we get to trial, that we'll probably be putting
8  forth three or four.
9      THE COURT: Of more concern to me is by the
10 time you get to the Markman hearing, what do you think?
11     MR. SULLIVAN: I think it will probably be in
12 the area of probably no more than seven. But part of
13 the issue here is that the way the defendants have
14 phrased it is we can never raise these again. It may
15 be that after claim construction, the way the Court
16 construes the patent, you know, there could be very
17 valid claims and we're now barred from bringing those
18 claims because we had to make an election before the
19 Court gave us claim construction.
20     THE COURT: Well, I guess I flock with you at
21 least now on this. I mean, you may rue the day. And
22 the day apparently has --
23     MR. BAUER: Your Honor, may I make a comment
24 on that?
25     THE COURT: January 10th, 2007.

5 (Pages 11 to 14)

Page 15

1    MR. BAUER: Your Honor, I think you put your
2    finger directly on the issue. And the reason this
3    calendar is so long is because they don't want to
4    identify. There's right now 125 claims, six patents,
5    and they don't want to identify or narrow the claims at
6    all until July 2006. We all believe that we've spoken,
7    that if there was some preliminary narrowing -- and we
8    don't say in here that they can never change it. We
9    simply say if you can change the number later, just have
10   a reason, good cause. But if there was preliminary
11   narrowing now --
12       THE COURT: No. It says "except by agreement
13   of all parties or by showing good cause." Who gets to
14   determine good cause?
15       MR. BAUER: I think you do, Your Honor.
16       THE COURT: Okay. So, what's the difference?
17       MR. BAUER: That's what I'm saying. We're not
18   saying that they are bound for all time if there is
19   any --
20       THE COURT: Well, then it becomes a little bit
21   like Scherazade. You know, each time they start to
22   unfold another one. Why not get -- you know, when you
23   use a sieve, you start with the top and it kind of works
24   its way through. What's it to you?
25       MR. BAUER: Well, it's only that if we're

Page 16

1    interested in trying to get this thing done sooner than
2    two or two-and-a-half years from now, right now, we have
3    no narrowing of the claims at all, which is why the
4    calendar is as long as it is. And where I hear from
5    counsel today that they do have some narrowing, they had
6    to do some sort of Rule 11 analysis, they must have
7    some narrowing of claims, some identification of
8    products that we could all focus on. And if we had
9    that, perhaps we could get to a Markman hearing sooner.
10   Perhaps we could have a quicker calender. But if we
11   leave the date to July for the scope of this case with
12   all the depositions and everything --
13       THE COURT: Well, but, you see, the incentive
14   structure here is to encourage the plaintiff to move
15   more promptly. So, the plaintiff says that this is what
16   they are prepared to do. They know that they'll have a
17   very unhappy Judge if they have to present or attempt to
18   present a multiplicity. But the earlier discussion, it
19   seems to me, might be useful, might be fruitful.
20       MS. ELSON: Your Honor, may Exetreme weigh in
21   on this one?
22       THE COURT: Sure.
23       MS. ELSON: In my experience, we just did a
24   trial in Denver where we, as the plaintiff, voluntarily
25   narrowed it to five claims per patent well before a

Page 17

1    Markman. At that point where you've done enough
2    discovery and you've seen the other side's documents,
3    you've taken their engineer's deposition, you know you're
4    pretty much down to four or five claims per patent which
5    are your best claims. Judge Alsop in the Northern
6    District limits plaintiffs to two claims per patent,
7    sometimes four. But he outright limits that.
8        THE COURT: Well --
9        MS. ELSON: And what that saves is the --
10       THE COURT: -- for a variety of reasons, this
11   is not San Francisco.
12       MS. ELSON: I understand, Your Honor. I'm
13   just saying that what that saves the defendants is having
14   to do all the discovery and the validity discovery on
15   covering 125 claims because that is so unwieldy and
16   expensive for our clients. And for trial, I would
17   suspect they won't even take four claims per patent to
18   trial. That is also unwieldy. We took ultimately one
19   claim per patent to trial. So, they have a range.
20   And we can make it five. But they have a range of
21   claims that they can choose from for trial.
22       THE COURT: Well, I guess what I'm going to do
23   is leave it for the claim construction chart basis. I
24   understand what you have to say. On the other hand, if
25   on July 17th, it seems absurd, you can make some kind of

Page 18

1    motion --
2        MS. ELSON: Thank you, Your Honor.
3        THE COURT: -- to come back here. It won't be
4    a happy day for all of us if that happens.
5        MR. SULLIVAN: Well, it wouldn't be so for me,
6    Your Honor.
7        THE COURT: I think you've identified who
8    would be least happy in court.
9        So, now --
10       MS. ELSON: We also have a concern, Your
11   Honor, with some of the deadlines the plaintiff is
12   proposing. This starts with the July 17, 2006 date that
13   Enterasys is proposing on page three of the joint
14   schedule. Those next three entries, we believe, can
15   simply be dealt with through interrogatories. Because
16   what this does is permit them to go longer even if they
17   know their preliminary contentions without telling us.
18       THE COURT: I don't understand what you mean
19   by that.
20       MS. ELSON: Simply that we would like to know
21   what the --
22       THE COURT: Why aren't the claim construction --
23   why aren't the claim constructions the functional
24   equivalent of interrogatories, anyway?
25       MS. ELSON: Well, that comes much later.

6 (Pages 15 to 18)

ENTERASYS V FOUNDRY>

Page 19

1  We need to know their theories of infringement much
2  earlier than that. And, so, we'd like to simply serve
3  interrogatories asking those questions and they can tell
4  us what their contentions are, their theories of
5  infringement.
6      THE COURT: What prevents you from doing that
7  here?
8      MS. ELSON: Well, if we can do that as well,
9  then that's fine, Your Honor. My only concern --
10     THE COURT: I'm not going to -- I won't get
11 into the specifics, I don't think, of the way in which
12 you conduct your discovery with the exception of the
13 claim construction charts which I think are, on balance,
14 a pretty good idea. If you want to propound
15 interrogatories during that time period, go ahead. I
16 don't see that as a problem.
17     MS. ELSON: The one concern here is the
18 deadline for us to serve invalidity contentions. We
19 will certainly do our best to provide all our best
20 contentions at the time. But given the lateness with
21 which we will be seeing narrowing of the claims, there
22 may turn out to be some piece of prior art we find later
23 we'd simply like to be able to supplement at that time
24 and not necessarily have to be a drop-dead deadline. If
25 there's good cause, if we found the art later, we'd like

Page 20

1  to be able to add it.
2      THE COURT: That's, I think, implicit in this.
3      MS. ELSON: Thank you, Your Honor.
4      THE COURT: But there has to be good cause for
5  it.
6      MS. ELSON: Certainly.
7      THE COURT: So your schedule takes -- on what
8  you seem to be comfortable takes you down to a Markman
9  hearing on January 10th, 2007. I think we have the day
10 for you. But what is it, Michelle?
11         OFF THE RECORD
12     THE COURT: Just as a -- it's fruitless of me
13 to try to anticipate. But in this case -- because I
14 don't know anything about what you're fighting about --
15 what do you see the Markman hearing as being? How long?
16     MR. SULLIVAN: Your Honor, I would think
17 that's a function of how many claims.
18     THE COURT: Sure is.
19     MR. SULLIVAN: And I would think that --
20     THE COURT: Well, but with the two that you're
21 going to press at that time, how long would that take?
22     MR. SULLIVAN: Well, at that time, I'll know
23 which two.
24     THE COURT: Right.
25     MR. SULLIVAN: I think that I would anticipate

Page 21

1  that this would be handled -- leaving aside any issue
2  as to whether or not the Court desires a tutorial on the
3  technology --
4      THE COURT: Probably. I probably will.
5      MR. SULLIVAN: Would that be included in the
6  time for the Markman hearing?
7      THE COURT: Right.
8      MR. SULLIVAN: Then I would say if we allotted
9  two days or three days, we should probably be able to
10 get through it, assuming that after the tutorial, then
11 the Markman proceeding would proceed like a motion for
12 summary judgment where it's really just lawyer argument
13 and that there's no extrinsic evidence that's brought in
14 and we don't have a mini-trial with witnesses testifying
15 and being cross-examined. If we proceed --
16     THE COURT: I guess I'm just --
17     MR. SULLIVAN: -- contention by contention --
18     THE COURT: Yes. That's the way -- from what
19 little I know of this -- that I think I would want to
20 proceed. That's the best way that I learn about it.
21     MR. SULLIVAN: That's the way we would urge
22 Your Honor. And I think three days at the outside.
23     THE COURT: Okay. So, we will carve that time
24 period out. I mean, I can't believe I'm scheduling
25 2007. I am, so we'll start on Monday the 8th --

Page 22

1      MR. SULLIVAN: That's fine.
2      THE COURT: -- with that and I'll just carve
3  it out. I won't set a trial date to conflict with it at
4  that time. But I'll have the day open for it.
5      MR. SULLIVAN: Thank you, Your Honor.
6      THE COURT: Now, that then gets us, I think,
7  into the alternative deadline process.
8      MR. SULLIVAN: With one exception, I think,
9  Your Honor. Then the issue is whether or not we are
10 going to set a trial date. And I understand Your Honor
11 has severed and --
12     THE COURT: Right. I'm not going to set a
13 trial date until I've got a better idea what's going to
14 happen with this.
15     MR. SULLIVAN: I just -- and I'm apprehensive
16 again because we want to get this to trial as quickly as
17 possible for the Court and the defendants in fairness to
18 everyone. But we would like to get it to trial as
19 quickly as possible.
20     THE COURT: Setting a false trial date isn't
21 going to help you one wit.
22     MR. SULLIVAN: I understand that. But if we
23 leave it the way the defendants have suggested until the
24 final pretrial conference, I'm just concerned that if
25 there isn't a placeholder, that the Court's calendar --

ENTERASYS V FOUNDRY>

Page 23

1  we'll have done all this work and then we're going to
2  have to wait six months for the appropriate trial slot
3  to open up where Your Honor could take this case.
4      THE COURT: I just don't know what to say
5  about that. I think what I'm going to do is say that I
6  can give you the schedule through the Markman hearnig.
7      MR. SULLIVAN: Okay.
8      THE COURT: And then at the Markman hearing,
9  we'll talk about what a reasonable time period is then.
10  I'll have a better idea of --
11      MR. SULLIVAN: That makes all the sense in the
12  world, Your Honor.
13      THE COURT: -- what I think I can do at that
14  point. So, we'll give you that schedule through the
15  Markman claim hearing -- and we'll adopt the one that
16  you've provided there having in mind that with respect
17  to the disputes -- I do want to have the claim
18  construction chart process. But that does not mean that
19  the parties can't use interrogatories at the same time.
20      MR. SULLIVAN: Understand.
21      THE COURT: And I'm not going to require, but
22  certainly think it's prudent to continue to prune at
23  that point, but I'm not going to require a specific
24  number. I think that deals with that.
25      Now, what's the real fight about deposition

Page 24

1  timing? What's going on?
2      MR. SULLIVAN: Your Honor --
3      THE COURT: No. You've gotten to go first too
4  much.
5      MR. BAUER: Your Honor, actually when you look
6  at it, we're in agreement as to the number of days.
7  It's a complicated case in that there's 16 inventors.
8  And most of them are from defunct companies, Digital
9  Equipment, Cabletron. So it's going to -- all right.
10  So we're in agreement on days. The only question is
11  they say 52 days. We're asking for 200 hours which is
12  56 days. I mean, it was a round number. We're asking
13  for 200 hours, that we just get to allocate that as we
14  want. So that if a deposition lasts three hours, we
15  have some time for some place else, if appropriate.
16  And the way I understand their view is if we take three
17  hours for a deposition, that's that. So we're in
18  agreement as to how many --
19      THE COURT: That's that. What do you --
20      MR. BAUER: Well, they say if we take three
21  hours for a deposition, that counts as two days of a
22  deposition. What they agree -- it's in the footnote.
23  They agree that for an inventor, for example --
24      THE COURT: Well, who reads footnotes?
25      MR. BAUER: It's on page six. What they say

Page 25

1  and what we agree is that for an inventory, two days of
2  deposition. So it's one deposition, but two days.
3  So, the way they're proposing it is if we take an
4  inventor and he has nothing to say and it's a one-hour
5  deposition, that's it. What we're suggesting is that if
6  we take a deposition and it's one hour, we have 13 hours
7  that we could use for somebody else somewhere else. And
8  a lot of courts now just find it easier, you count hours
9  at the end of the day instead of days.
10      THE COURT: I'm not sure I understand why the
11  plaintiff objects to that.
12      MR. SULLIVAN: Well, Your Honor, it's just a
13  question of tracking. Under the federal rules, each
14  party is entitled -- each side, I'm sorry. Each side is
15  entitled to 10 depositions and the depositions are
16  presumed to be 7-1/2 hours or 7 hours.
17      THE COURT: No, I understand that. That
18  having been said --
19      MR. SULLIVAN: And that having been said, we
20  understand that we do have 16 inventors. We don't
21  control the inventors. And what we don't want to do is
22  in a situation where we have an inventor in California
23  and have a three-hour deposition one day, and then a
24  week later, we have a two-hour deposition.
25      THE COURT: Well, but nobody wants that. I

Page 26

1  can't imagine that --
2      MR. BAUER: That's not what --
3      THE COURT: -- you're not going to be
4  scheduling more intelligently about that. But I don't
5  think travel time counts, does it?
6      MR. SULLIVAN: No, no, no. We're not
7  suggesting that travel time counts. All I'm saying is
8  that we think by controlling the number of depositions
9  rather than the hours of depositions, we're tracking
10  closer to the federal rules.
11      THE COURT: I think in this one, I'm prepared
12  to go with the idea of hours for your non-expert
13  depositions. I'm a little concerned about the -- but
14  maybe you're not -- about 200 for each of the parties
15  when there's --
16      MR. SULLIVAN: That was my next --
17      THE COURT: -- some consolidation.
18      MR. SULLIVAN: That's my next point, Your
19  Honor. It is not accurate to say we're only a few days
20  apart. They actually have 200 hours of depositions
21  apiece. We think that's excessive. What we had
22  suggested is that we would take 25 times 7 -- 7 hours of
23  deposition, 25 depositions, and that they would have 36
24  depositions, basically, which would be 36 times 7 in
25  terms of the hours, except that inventors could be 14

8 (Pages 23 to 26)

ENTERASYS V FOUNDRY>

Page 27

1　hours and that 30(b)(6) depositions could be 21 hours.
2　　　　MR. BAUER: Your Honor, their total is 52
3　days. Our proposal is 56 days. And it's only because
4　we rounded it to 200 hours.
5　　　　THE COURT: Well, I'm not sure I understand
6　that. But it's 200 hours for each party?
7　　　　MR. BAUER: So that rounds out to about 28
8　days per each party, 56 days total. The proposal that
9　they have --
10　　　　THE COURT: Wait a minute. The plaintiff gets
11　200 hours. You get 200 hours. I'm sorry. At some
12　point, I'll know the difference between Foundry and
13　Exetreme, but I don't know now. But Defendant A gets
14　200 hours and Defendant B gets 200 hours. So that's
15　twice as many as the plaintiff gets.
16　　　　MR. BAUER: We are in agreement as to how many
17　hours they'd get. All the parties have agreed as to the
18　the number of hours the plaintiff gets. So, there is no
19　issue. It's only with respect to the defendants'
20　depositions.
21　　　　THE COURT: Right.
22　　　　MR. BAUER: The defendants' proposal is 56
23　days between the two of them. Their proposal --
24　plaintiff's proposal -- is 52 days between the two of
25　them. We're not -- and that four-day difference is only

Page 28

1　because we put 200 hours in as a round number. So we're
2　happy to make it 52 days and then multiply it by seven
3　hours. And then we're in exactly the same position.
4　　　　THE COURT: All right. So 52 days it is.
5　　　　MR. BAUER: Times seven hours.
6　　　　THE COURT: You have to do the arithmetic. I
7　can't do it.
8　　　　MR. BAUER: All right. But we're saying
9　hours, not --
10　　　　THE COURT: Right. Render those hours.
11　　　　MR. SULLIVAN: How is that to be divided?
12　　　　THE COURT: They have to make a determination
13　among themselves. That's one place where they are going
14　to cooperate. They have got to decide how they allocate
15　their time between them.
16　　　　MR. SULLIVAN: Just so I understand this, then
17　they will have 200 hours of deposition or 400 hours of
18　deposition?
19　　　　THE COURT: They had 52 by 7 --
20　　　　MR. BAUER: Which is 364, I think.
21　　　　THE COURT: -- altogether which is, as I
22　understand it, more or less what you've indicated they
23　should have.
24　　　　MR. SULLIVAN: Well, we said 36. Your Honor,
25　the way this gets confusing is when we talk about

Page 29

1　hours --
2　　　　THE COURT: Let me tell you something: There
3　are other parties here. And as interesting as this is,
4　I think I'd like to move on to --
5　　　　MR. SULLIVAN: That's fine.
6　　　　THE COURT: -- some of the other parties on
7　this. Work out a schedule. My sense is that you don't
8　get the full 200 hours apiece. You get something less
9　than that that is more or less reasonable. And I assume
10　you will be reasonable in doing that. And you've got to
11　share it. You are the ones who have to allocate among
12　yourselves. But I'm not going to get into the specifics
13　of this yet. Again, it wouldn't be a pretty sight if I
14　did.
15　　　　MR. BAUER: Your Honor, there would only a
16　problem, God forbid, if we're at 350 hours at the end of
17　this case.
18　　　　THE COURT: Right. No. Don't tell me. I
19　won't ask.
20　　　　MR. SULLIVAN: Your Honor, just so I'm clear,
21　we have 25 times 7 for the plaintiff in terms of the
22　hours of depositions that we have?
23　　　　THE COURT: That's my understanding.
24　　　　MR. SULLIVAN: Okay. And if that is less than
25　what they are going to have --

Page 30

1　　　　THE COURT: No, it is. It is. But there's a
2　consolidation method, the one that you identified when
3　you filed only one lawsuit for two sets of cases.
4　　　　MR. SULLIVAN: I understand that, Your Honor.
5　I'm just asking that if we have good cause, we can come
6　back to the Court?
7　　　　THE COURT: Yes.
8　　　　MR. SULLIVAN: Fine.
9　　　　THE COURT: Yes, certainly. No one is turned
10　away.
11　　　　MR. SULLIVAN: Thank you, Your Honor.
12　　　　THE COURT: But sometimes when they get here,
13　they're not as happy as if they wouldn't have been here.
14　　　　Okay. So you'll work out a schedule with
15　respect to that and submit it to the Court --
16　　　　MR. SULLIVAN: Yes, Your Honor.
17　　　　THE COURT: -- so that you hammer that out.
18　　　　Now, what other things do we need to address?
19　Anything else?
20　　　　MS. ELSON: If I could just ask for a
21　clarification on the consolidation, Your Honor?
22　　　　THE COURT: Sure.
23　　　　MS. ELSON: So, for infringement and damages,
24　for example, Foundry would not be attending their
25　depositions of our people?

9 (Pages 27 to 30)

NOVEMBER 3, 2005>

Page 31

1    THE COURT: I assume that that's the case.
2    MS. ELSON: Thank you, Your Honor.
3    THE COURT: I'm not going -- there may be some
4    reasons why it's appropriate to do so. I don't think I
5    want to get into that.
6    MS. ELSON: Very good, Your Honor.
7    THE COURT: I'm prepared to consider a
8    reasonable protective order if you think you can't work
9    that out between you. But what essentially you have is
10   a case that -- two cases that are consolidated for
11   purposes of trial management here. And I'm looking
12   right now at the shared issues and less at the
13   individual issues. And it seems to me that the two
14   defendants here are sufficiently vigilant about their
15   own concerns that they're not going to show up at the
16   wrong depositions. And you will allocate that among
17   you.
18   But I'd like you to get back to us within
19   two weeks with just your agreement with respect to
20   depositions -- that is, the gross outline of depositions
21   expressed in hours and shared between the defendants
22   here. I'll leave it to the defendants to allocate their
23   time among themselves. All right?
24   MR. BAUER: Thank you, Your Honor.
25   MR. SULLIVAN: Thank you.

Page 32

1    THE COURT: So I guess I'm anticipating that
2    you're going to have one or the other of you do a
3    deposition of this inventor and that inventor rather
4    than both of you, but you're limited by the time.
5    Okay.
6    MR. SULIVAN: Thank you.
7    THE COURT: Okay. Thank you very much.
8    RECESSED AT 3:45 P.M.
9
10   C E R T I F I C A T E
11   I, PAMELA R. OWENS, Official Court Reporter,
12   U. S. District Court, do hereby certify that the
13   foregoing is a true and correct transcription of the
14   proceedings taken down by me in machine shorthand and
15   transcribed by same.
16
17
18
19
20
21
22
23
24
25

10 (Pages 31 to 32)

**A**

ability 12:7
able 6:24 19:23 20:1 21:9
absurd 17:25
abusive 9:20
accurate 26:19
accused 8:9
acting 9:21
action 10:6
acts 8:9
add 20:1
address 5:10 30:18
addressing 6:7
adopt 23:15
afternoon 3:5
agree 13:1 24:22,23 25:1
agreed 12:3 27:17
agreement 7:5,8 9:15 15:12 24:6,10,18 27:16 31:19
ahead 19:15
Alan 1:14 3:10
allocate 24:13 28:14 29:11 31:16,22
allotted 21:8
Alsop 17:5
alternative 10:23 11:1 11:15,21 22:7
Alto 2:2
altogether 28:21
amount 3:23
analysis 16:6
answer 13:10
anticipate 20:13,25
anticipating 32:1
anyway 13:8 18:24
apart 26:20
apiece 26:21 29:8
apparently 14:22
Appearances 1:13,25 2:1
apprehensive 22:15
appropriate 12:23 23:2 24:15 31:4
area 14:12
argument 21:12
arithmetic 28:6
art 5:1 6:15 19:22,25
artificial 13:20
aside 21:1
asking 19:3 24:11,12 30:5
assertion 8:9
assume 29:9 31:1
assuming 21:10
attempt 16:17

**B**

attending 30:24
Auchter 1:17 3:8,8
authority 8:6

**B**

B 27:14
back 3:13 11:3 12:14 18:3 30:6 31:18
bad 11:24
balance 19:13
barred 14:17
basically 5:25 26:24
basis 10:6 12:8 17:23
Bauer 1:20 3:12,12 6:25 7:20,24 9:2 14:23 15:1,15,17,25 24:5,20,25 26:2 27:2 27:7,16,22 28:5,8,20 29:15 31:24
behalf 1:16,18,21,23 2:3 3:17,20
believe 3:22 8:6 15:6 18:14 21:24
best 17:5 19:19,19 21:20
better 22:13 23:10
beyond 6:15 13:18
bit 3:25 8:20 12:14 15:20
Boston 1:16,21,23 2:15 2:21
bound 15:18
Boylston 1:15
bringing 14:17
brought 21:13
burden 10:25 11:16
busy 11:18

**C**

C 32:10,10
Cabletron 24:9
calendar 15:3 16:4 22:25
calender 16:10
California 2:2 6:23 25:22
carve 21:23 22:2
case 3:22 4:18,21 5:14 5:17 6:3,13 8:17 9:24 10:3 12:17,25 13:12 13:14,15 16:11 20:13 23:3 24:7 29:17 31:1 31:10
cases 4:1 5:23 8:7 10:2 11:22 30:3 31:10
cause 15:10,13,14 19:25 20:4 30:5
CA-05-11298-DPW

1:5 3:1
certain 8:23
certainly 4:9 9:5 19:19 20:6 23:22 30:9
certify 32:12
change 12:8 13:2 15:8 15:9
chart 17:23 23:18
charts 12:10 19:13
Chisholm 8:7
choose 17:21
chose 5:24
Christopher 1:14 3:6
circumstances 8:11
Ciresi 1:15,18 3:7,9
cites 5:23
claim 5:21 6:11 9:8 12:9 13:5 14:15,19 17:19,23 18:22,23 19:13 23:15,17
claims 4:11 8:1,2,9 10:13 12:6,16 13:1,2 13:16,23 14:17,18 15:4,5 16:3,7,25 17:4 17:5,6,15,17,21 19:21 20:17
clarification 30:21
clear 29:20
CLERK 3:3
clients 17:16
closer 26:10
code 5:18
coherent 13:12
come 18:3 30:5
comes 18:25
comfortable 20:8
comment 14:23
common 5:20
companies 24:8
competitor 4:18
competitors 8:12
complaint 9:25
completely 8:10
complicated 24:7
Computer-Aided 2:23
concern 6:15 8:4 14:9 18:10 19:9,17
concerned 8:13 13:13 22:24 26:13
concerns 31:15
conduct 19:12
conducted 7:19
conference 22:24
confidential 4:17 5:18 6:16
conflict 22:3
confusing 28:25
consider 31:7

consolidate 4:1 5:3 10:2
consolidated 4:7 5:2,9 31:10
consolidating 4:24
consolidation 5:8 10:6 26:17 30:2,21
construction 5:21 6:12 12:10 13:5 14:15,19 17:23 18:22 19:13 23:18
constructions 18:23
construes 14:16
Contac 6:4
contention 21:17,17
contentions 8:1 12:12 13:4 18:17 19:4,18,20
continue 23:22
continued 1:25 2:1
control 25:21
controlling 26:8
cooperate 6:12 28:14
cooperative 7:4
core 5:16,19 7:18 8:3
correct 9:2 32:13
counsel 3:3 16:5
count 25:8
counts 24:21 26:5,7
court 1:1,10 2:19 3:15 3:21 4:8,12,22 5:3,5 5:12,13 6:2,5,18 7:10 7:17,22 8:13,19 9:6 9:23 10:5,18,24 11:3 11:4,9,13,16,18,20 12:2,13 13:5,7,13,18 13:22 14:2,4,9,15,19 14:20,25 15:12,16,20 16:13,22 17:8,10,22 18:3,7,8,18,22 19:6 19:10 20:2,4,7,12,18 20:20,24 21:2,4,7,16 21:18,23 22:2,6,12,17 22:20 23:4,8,13,21 24:3,19,24 25:10,17 25:25 26:3,11,17 27:5 27:10,21 28:4,6,9,12 28:19,21 29:2,6,18,23 30:1,6,7,9,12,15,17 30:22 31:1,3,7 32:1,7 32:11,12
Courthouse 2:15,20,20
Courtroom 2:14
courts 5:15,24 25:8
Court's 25:5
covering 17:15
co-defendant 4:18,22
cross-examined 21:15

**D**

damage 8:24
damages 5:17 8:4 30:23
date 11:18 16:11 18:12 22:3,10,13,20
dates 12:4
day 14:21,22 18:4 20:9 22:4 25:9,23
days 21:9,9,22 24:6,10 24:11,12,21 25:1,2,9 26:19 27:3,3,8,8,23 27:24 28:2,4
deadline 19:18,24 22:7
deadlines 18:11
deals 23:24
dealt 18:15
decide 28:14
decision 11:10
declare 12:7
declining 6:6
defendant 1:21,24 2:3 3:17 27:13,14
defendants 1:7 4:10,11 5:4 6:17 7:14 10:13 10:23 12:11 14:13 17:13 22:17,23 27:19 27:22 31:14,21,22
defendant's 11:15
defenses 5:20
defunct 24:8
Delaware 6:2,3,19
Denver 16:24
deposition 9:12,15 17:3 23:25 24:14,17,21,22 25:2,2,5,6,23,24 26:23 28:17,18 32:3
depositions 5:1,3 7:14 7:15 8:23 9:7,10,17 9:19 16:12 25:15,15 26:8,9,13,20,23,24 27:1,20 29:22 30:25 31:16,20,20
desires 21:2
detail 9:1
details 7:17
determination 28:12
determine 15:14
devil 7:17 9:1
difference 9:18 15:16 27:12,25
different 7:13 10:12,13 10:14
differently 3:25
difficult 10:15
Digital 24:8
direct 8:12
directly 15:2

Page 34

disclosure 4:17
disclosures 4:21,23
discovery 3:24 4:2,6,16
    4:25 5:2 7:1 9:3,4
    12:24 13:3 17:2,14,14
    19:12
discussion 16:18
dispute 10:20,22
disputes 23:17
District 1:1,2,10 2:20
    6:1,18,23 17:6 32:12
divided 28:11
documents 7:6,7 12:17
    17:2
doing 9:7 19:6 29:10
DOUGLAS 1:9
downside 11:8
drawn 9:24
Drive 2:2
drop-dead 19:24
D.C 1:18

E
E 1:14 32:10,10
earlier 16:18 19:2
easier 25:8
effort 3:23
either 7:2
election 14:18
Elson 2:2 3:16,16 5:10
    5:13 6:9,21 8:3,16
    16:20,23 17:9,12 18:2
    18:10,20,25 19:8,17
    20:3,6 30:20,23 31:2
    31:6
Emery 1:22 2:2 3:17,20
employees 7:15
encourage 16:14
enforceability 6:14
engineer's 17:3
Enterasys 1:4 3:7,9,11
    18:13
entitled 25:14,15
entries 18:14
Equipment 24:9
equivalent 18:24
ESQ 1:14,15,17,20,20
    1:22 2:2
essentially 31:9
events 5:8
evidence 21:13
exactly 4:8 28:3
example 24:23 30:24
exception 19:12 22:8
excessive 26:21
exchange 9:4
Extreme 1:7,23 2:3
    3:18,20 6:2 7:6,6,7

9:14,24 16:20 27:13
expensive 17:16
experience 16:23
experts 7:16 9:13
exposure 8:5
expressed 31:21
extrinsic 21:13

F
F 32:10
face 4:17
fact 6:22
fairness 22:17
faith 9:21
false 22:20
far 11:23
Farnan 6:1
Farnan's 6:5
fashion 7:23
federal 25:13 26:10
fee 10:1
fight 23:25
fighting 20:14
figure 11:22
filed 9:25 30:3
filing 10:1
final 22:24
find 8:7 19:22 25:8
fine 9:11,16 10:4 19:9
    22:1 29:5 30:8
finger 15:2
first 24:3
five 12:16 16:25 17:4
    17:20
flock 14:20
Floor 1:21 2:14
focus 16:8
followed 5:15 6:1
footnote 24:22
footnotes 24:24
forbid 29:16
force 13:11
foregoing 32:13
forth 10:16 14:8
found 19:25
Foundry 1:6,21 3:14
    5:13 6:3 7:5,6,7 8:12
    9:13 27:12 30:24
four 12:6,16,19 13:1,19
    13:21 14:8 17:4,7,17
four-day 27:25
Francisco 17:11
front 12:13
fruitful 16:19
fruitless 20:12
full 29:8
function 20:17
functional 18:23

fury 3:21

G
general 6:20
generalities 13:14
generally 6:14,23 12:15
getting 11:17
give 13:22 23:6,14
given 19:20
go 7:9 10:11 18:16
    19:15 24:3 26:12
God 29:16
goes 4:25
going 4:13,15 7:3,8
    8:14,22 9:7,9,14,19
    9:23 12:19 13:1,6,16
    14:5 17:22 19:10
    20:21 22:10,12,13,21
    23:1,5,21,23 24:1,9
    26:3 28:13 29:12,25
    31:3,15 32:2
good 3:5 9:21 11:23
    12:16 15:10,13,14
    19:14,25 20:4 30:5
    31:6
gotten 24:3
gross 31:20
guess 6:6 8:19 9:23
    10:7 14:20 17:22
    21:16 32:1
guidelines 6:24

H
hammer 30:17
hand 8:18 17:24
handled 21:1
happen 22:14
happens 18:4
happy 11:25 18:4,8
    28:2 30:13
hear 16:4
heard 8:21
hearing 1:11 11:22,23
    14:10 16:9 20:9,15
    21:6 23:8,15
hearnig 23:6
help 22:21
highly 5:17 6:16 13:18
Honor 3:5,12,16 4:4,6
    5:11 6:21,25 7:12,20
    8:4,16,25 9:12,17
    10:4,9,22 11:1 12:20
    13:10,20 14:1,6,23
    15:1,15 16:20 17:12
    18:2,6,11 19:9 20:3
    20:16 21:22 22:5,9,10
    23:3,12 24:2,5 25:12
    26:19 27:2 28:24

29:15,20 30:4,11,16
    30:21 31:2,6,24
HONORABLE 1:9
hope 10:8
hour 25:6
hours 24:11,13,14,17
    24:21 25:6,8,16,16
    26:9,12,20,22,25 27:1
    27:1,4,6,11,11,14,14
    27:17,18 28:1,3,5,9
    28:10,17,17 29:1,8,16
    29:22 31:21

I
idea 14:5 19:14 22:13
    23:10 26:12
identification 16:7
identified 18:7 30:2
identify 3:3 15:4,5
imagine 26:1
implicit 20:2
inappropriate 8:11
incentive 16:13
included 21:5
independent 5:19 8:10
indicated 28:22
indication 13:4
individual 4:10 31:13
information 4:17 5:18
    6:16 8:6
infringement 4:10 5:17
    7:25 8:4,24 9:8 19:1
    19:5 30:23
infringements 9:9
infringing 9:14
inquiries 4:9
intelligently 26:4
interested 16:1
interesting 8:15 29:3
International 1:20
interrogatories 18:15
    18:24 19:3,15 23:19
invalidity 12:11 19:18
inventor 5:1 24:23 25:4
    25:22 32:3,3
inventors 6:13 24:7
    25:20,21 26:25
inventory 25:1
involve 5:17
involved 11:9
irrelevant 4:21
issue 5:9 7:1,2 9:16
    12:5 14:13 15:2 21:1
    22:9 27:19
issues 4:25 5:16,22
    6:14 8:3 11:19 31:12
    31:13

J
January 14:25 20:9
Jeremy 1:20 3:13
John 2:20
join 6:11
joinder 8:10,15
joint 9:18 10:16 18:13
jointly 6:12
Jordan 6:3
Joseph 2:20
Judge 1:10 6:1,3,5,22
    8:17 16:17 17:5
judgment 21:12
July 12:10 15:6 16:11
    17:25 18:12

K
K 1:18
Kaplan 1:15,17 3:6,9
    3:11
kind 4:13 15:23 17:25
kinds 8:24 10:20
know 5:15 11:8 12:20
    13:12,15,15 14:16
    15:21,22 16:16 17:3
    18:17,20 19:1 20:14
    20:22 21:19 23:4
    27:12,13
knows 9:17

L
L 1:22
lasts 24:14
late 13:23
lateness 19:20
lawsuit 30:3
lawyer 21:12
leading 3:22
learn 12:18 21:20
leave 16:11 17:23 22:23
    31:22
leaving 21:1
left 7:25
let's 10:18
liability 8:8
limited 12:6 13:1 32:4
limits 17:6,7
lines 6:1
little 3:25 15:20 21:19
    26:13
live 10:8
LLP 1:15,18,20,23
long 9:19 10:8,8 15:3
    16:4 20:15,21
longer 18:16
look 5:23 24:5
looking 10:7 12:17
    31:11

lot 4:16 10:14 11:2,14
  11:15 12:23 25:8
lots 10:12
Lucent 6:2

**M**

M 1:20 2:2
machine 32:14
making 4:15 5:16
  11:10
management 7:15
  31:11
Markman 5:21 6:11
  10:19,21 11:10,19,22
  11:23 14:10 16:9
  17:1 20:8,15 21:6,11
  23:6,8,15
Massachusetts 1:2,16
  1:21,23 2:15,21
McDermott 1:22 2:2
  3:17,19
McKENNA 1:15 3:10
  3:10
mean 4:12 11:5 12:14
  13:22 14:21 18:18
  21:24 23:18 24:12
memorandum 6:6
method 2:23 30:2
Michelle 20:10
Miller 1:15,17 3:6,9
mind 23:16
mini-trial 21:14
minute 27:10
Moakley 2:20
Monday 21:25
months 12:22,22 23:2
motion 18:1 21:11
move 16:14 29:4
multiplicity 16:18
multiply 28:2

**N**

narrow 15:5
narrowed 16:25
narrowing 15:7,11
  16:3,5,7 19:21
nature 13:21
necessarily 19:24
necessary 4:19 6:8,10
need 13:11 19:1 30:18
Networks 1:4,6,7,21,23
  2:3 3:14,18,20
never 12:15 13:2 14:14
  15:8
night 13:23
nine 12:22
non-duplicative 7:22
non-expert 26:12

Northern 6:23 17:5
NOVEMBER 1:12 3:2
number 10:3 15:9
  23:24 24:6,12 26:8
  27:18 28:1
N.W 1:18

**O**

objects 25:11
Oczek 1:20 3:13
Official 2:19 32:11
Okay 3:15 7:10 15:16
  21:23 23:7 29:24
  30:14 32:5,7
ones 11:24 29:11
one-hour 25:4
onus 11:2
open 22:4 23:3
order 6:9 8:17 11:25
  31:8
orders 4:14 6:7,19
ought 5:12 14:24
outline 31:20
outright 17:7
outside 21:22
Owens 2:19 32:11

**P**

P 1:9,14,20 3:6
page 1:25 18:13 24:25
Palo 2:2
Pamela 2:19 32:11
part 14:12
particular 9:22
particularized 6:7
particularly 4:16 8:11
parties 5:7,20 9:15 12:3
  15:13 23:19 26:14
  27:17 29:3,6
parts 4:6
party 25:14 27:6,8
patent 3:22 5:1,14
  11:21 12:7 13:21
  14:16 16:25 17:4,6,17
  17:19
patents 10:12 13:24
  15:4
penalizing 11:17
people 7:13 9:7,13
  30:25
period 19:15 21:24
  23:9
permit 18:16
Peter 1:22 3:19
phase 4:16,24
Phillips 6:4
phrased 14:14
piece 19:22

place 1:20 6:19 7:24
  24:15 28:13
placeholder 22:25
plaintiff 1:4,16,19 3:7,9
  5:23 8:21 10:10 11:7
  11:17 13:11 16:14,15
  16:24 18:11 25:11
  27:10,15,18 29:21
plaintiffs 12:6 17:6
plaintiff's 27:24
please 3:3
point 4:3,5 17:1 23:14
  23:23 26:18 27:12
Porter 2:2
position 7:12 28:3
positions 3:24
possible 10:11 22:17,19
potential 6:15
practical 4:12 8:14
preliminary 15:7,10
  18:17
premature 13:10
prepared 16:16 26:11
  31:7
present 9:14 16:17,18
press 20:21
presumably 9:6
presumed 25:16
pretrial 4:24 8:5 22:24
pretty 17:4 19:14 29:13
prevents 19:6
prior 5:1 6:15 19:22
probably 4:21 14:7,11
  14:12 21:4,4,9
problem 4:2 7:11 9:5
  9:22 12:23 19:16
  29:16
proceed 8:14 10:5
  21:11,15,20
proceeding 21:11
proceedings 32:14
process 6:11,12 22:7
  23:18
produced 7:1
products 10:14 16:8
proliferated 13:18
promptly 16:15
proposal 5:8,15,25 27:3
  27:8,22,23,24
propose 5:6
proposing 6:10 18:12
  18:13 25:3
propound 19:14
Proskauer 1:20 3:13
protective 4:14 31:8
provide 19:19
provided 23:16
prudent 23:22

prune 23:22
public 4:20
purposes 4:1 31:11
put 3:23,25 11:2 15:1
  28:1
puts 11:5
putting 11:16 14:7
P.M 2:16,16 32:8

**Q**

question 11:16 24:10
  25:13
questions 7:18 8:14,15
  8:24 10:19 19:3
quicker 10:16 16:10
quickly 10:11 22:16,19
quite 3:21

**R**

R 2:19 32:10,11
raise 14:14
range 17:19,20
rarely 12:16
reads 24:24
real 11:8,21 23:25
realistically 10:10,15
really 5:18 7:2,7 12:4
  14:4 21:12
reason 15:2,10
reasonable 23:9 29:9
  29:10 31:8
reasons 17:10 31:4
RECESSED 32:8
RECORD 20:11
regard 9:13
relate 6:13
relevant 4:11
Render 28:10
Reporter 2:19 32:11
Reporting 2:23
require 4:23 23:21,23
Resnik 1:22 3:19,19 4:5
  4:9,15 5:6
resolve 11:18
respect 9:8 10:20 23:16
  27:19 30:15 31:19
right 7:20 8:15 9:1
  10:18 11:13 14:4
  15:4 16:2 20:24 21:7
  22:12 24:9 27:21
  28:4,8,10 29:18 31:12
  31:23
Robert 1:17 3:8
Robins 1:15,17 3:6,8
  3:10
Rose 1:20
round 24:12 28:1
rounded 27:4

rounds 27:7
rue 14:21
Rule 16:6
rules 25:13 26:10
ruling 6:20

**S**

S 32:12
sample 6:22 8:17
San 17:11
saves 17:9,13
saying 13:21 15:17,18
  17:13 26:7 28:8
says 15:12 16:15
schedule 10:7,17,20,23
  11:1,11 18:14 20:7
  23:6,14 29:7 30:14
scheduling 12:5 21:24
  26:4
Scherazade 15:21
scope 16:11
see 9:21 11:24 16:13
  19:16 20:15
seeing 9:17 19:21
seen 10:24 13:3 17:2
sense 11:2,15 23:11
  29:7
separate 8:23 9:9,9,25
  10:2
separately 9:24
sequence 12:2
serve 12:11 19:2,18
set 6:7 10:16 22:3,10,12
sets 7:13 30:3
Setting 22:20
seven 14:3,12 28:2,5
sever 4:1 5:24 6:6 9:23
severance 6:20
severed 22:11
share 12:15 29:11
shared 31:12,21
sharing 6:16
shorthand 32:14
show 31:15
showing 15:13
side 5:7 7:9 25:14,14
side's 17:2
sieve 15:23
sight 29:13
simply 15:9 18:15,20
  19:2,23
single 10:6
sit 11:5
situation 9:20 25:22
six 10:12 12:21 14:2
  15:4 23:2 24:25
slot 23:2
somebody 25:7

Page 36

| | | | |
|---|---|---|---|
| **sooner** 16:1,9 | 23:3 24:16,20 25:3,6 | 11:18 12:18 14:7 | **want** 7:12,14 8:19 9:12 | **11298** 10:3 |
| **sorry** 25:14 27:11 | 26:22 | 16:24 17:16,18,19,21 | 10:2 14:4 15:3,5 | **1200** 1:18 |
| **sort** 4:13 5:5 16:6 | **taken** 12:24 13:3 17:3 | 22:3,10,13,16,18,20 | 19:14 21:19 22:16 | **125** 15:4 17:15 |
| **sorts** 6:24 | 32:14 | 23:2 31:11 | 23:17 24:14 25:21 | **13** 25:6 |
| **sound** 3:21 | **takes** 20:7,8 | **troubled** 5:24 | 31:5 | **14** 26:25 |
| **source** 5:18 | **talk** 23:9 28:25 | **true** 32:13 | **wants** 25:25 | **16** 6:13 24:7 25:20 |
| **speaking** 10:10,15 | **talking** 10:12,13,14 | **try** 13:11 20:13 | **Washington** 1:18 | **17** 18:12 |
| **specific** 6:19 23:23 | 12:21 | **trying** 11:22 16:1 | **way** 2:15,20 4:13 7:3 | **17th** 12:10 17:25 |
| **specifically** 5:21 | **tease** 8:19 | **turn** 7:5,6 10:18 19:22 | 13:10,12 14:13,15 | **1801** 1:18 |
| **specifics** 13:14 19:11 | **technology** 21:3 | **turned** 30:9 | 15:24 19:11 21:18,20 | |
| 29:12 | **tell** 19:3 29:2,18 | **tutorial** 21:2,10 | 21:21 22:23 24:16 | **2** |
| **spend** 11:21 | **telling** 18:17 | **twice** 27:15 | 25:3 28:25 | **200** 24:11,13 26:14,20 |
| **spoken** 15:6 | **terms** 7:1 11:17 12:5 | **two** 5:20,22 7:13 10:2 | **ways** 11:14 | 27:4,6,11,11,14,14 |
| **staking** 3:23 | 26:25 29:21 | 10:13 16:2 17:6 | **week** 25:24 | 28:1,17 29:8 |
| **standing** 12:25 | **testifying** 21:14 | 20:20,23 21:9 24:21 | **weeks** 12:11 31:19 | **20006** 1:18 |
| **start** 12:25 15:21,23 | **Thank** 18:2 20:3 22:5 | 25:1,2 27:23,24 30:3 | **weigh** 16:20 | **2005** 1:12 3:2 |
| 21:25 | 30:11 31:2,24,25 32:6 | 31:10,13,19 | **weight** 8:6 | **2006** 15:6 18:12 |
| **starts** 18:12 | 32:7 | **two-and-a-half** 16:2 | **we'll** 10:5 13:1 14:7 | **2007** 14:25 20:9 21:25 |
| **State** 1:23 | **theories** 19:1,4 | **two-hour** 25:24 | 21:25 23:1,9,14,15 | **21** 27:1 |
| **STATES** 1:1,10 | **theory** 8:8 | | **we're** 4:15 5:16 6:10,23 | **22nd** 1:21 |
| **staying** 13:23 | **they'd** 27:17 | **U** | 9:11 10:14 12:21 | **25** 26:22,23 29:21 |
| **Steven** 1:20 3:12 | **thing** 16:1 | **U** 32:12 | 14:17 15:17,25 23:1 | **2500** 1:15 |
| **Street** 1:15,18,23 | **things** 11:9 30:18 | **ultimately** 17:18 | 24:6,10,11,12,17 25:5 | **28** 1:23 27:7 |
| **structure** 16:14 | **think** 4:6 5:1,8 8:25 | **uncomfortable** 8:22 | 26:6,9,19 27:25 28:1 | |
| **subject** 8:23 | 9:17 10:9,14 11:2 | **understand** 8:20 10:19 | 28:3,8 29:16 | **3** |
| **subjected** 7:13 | 12:3,8,9,19,21,22 | 11:20 13:9 17:12,24 | **we've** 13:3 15:6 | **3** 1:12 3:2 |
| **submission** 9:18 | 13:9,10,25 14:10,11 | 18:18 22:10,22 23:20 | **White** 6:22 8:17 | **3rd** 2:14 |
| **submit** 5:7 12:9 30:15 | 15:1,15 18:7 19:11,13 | 24:16 25:10,17,20 | **willing** 10:25 | **3:08** 2:16 |
| **sufficiently** 31:14 | 20:2,9,16,19,25 21:19 | 27:5 28:16,22 30:4 | **wish** 8:17 | **3:45** 2:16 32:8 |
| **suggested** 22:23 26:22 | 21:22 22:6,8 23:5,13 | **understanding** 29:23 | **wishes** 11:1 | **30(b)(6)** 7:25 27:1 |
| **suggesting** 25:5 26:7 | 23:22,24 26:5,8,11,21 | **understood** 9:1 | **wit** 22:21 | **3150** 2:2 |
| **Suite** 1:15,18 2:20 | 28:20 29:4 31:4,8 | **unfold** 15:22 | **witnesses** 21:14 | **3200** 2:20 |
| **SULIVAN** 32:6 | **thinking** 10:8 | **unhappy** 16:17 | **WOODLOCK** 1:9 | **350** 29:16 |
| **Sullivan** 1:14 3:5,6 4:3 | **three** 5:15 14:8 18:13 | **UNITED** 1:1,10 | **work** 5:6 6:24 23:1 | **36** 26:23,24 28:24 |
| 7:11 8:25 9:11 10:4,9 | 18:14 21:9,22 24:14 | **unnecessarily** 4:23 | 29:7 30:14 31:8 | **364** 28:20 |
| 10:22 11:7,14 12:1,3 | 24:16,20 | **unrealistic** 11:12 | **worked** 5:25 | |
| 12:20 13:9,17,20,25 | **three-hour** 25:23 | **unwieldy** 17:15,18 | **works** 15:23 | **4** |
| 14:3,6,11 18:5 20:16 | **time** 7:21 11:21,23 14:7 | **urge** 4:22 21:21 | **world** 23:12 | **400** 28:17 |
| 20:19,22,25 21:5,8,17 | 14:10 15:18,21 19:15 | **use** 15:23 23:19 25:7 | **worrying** 13:23 | |
| 21:21 22:1,5,8,15,22 | 19:20,23 20:21,22 | **useful** 16:19 | **worth** 12:17 | **5** |
| 23:7,11,20 24:2 25:12 | 21:6,23 22:4 23:9,19 | | **wouldn't** 7:5,6 18:5 | **52** 24:11 27:2,24 28:2,4 |
| 25:19 26:6,16,18 | 24:15 26:5,7 28:15 | **V** | 29:13 30:13 | 28:19 |
| 28:11,16,24 29:5,20 | 31:23 32:4 | **valid** 14:17 | **wrong** 31:16 | **56** 24:12 27:3,8,22 |
| 29:24 30:4,8,11,16 | **times** 26:22,24 28:5 | **validity** 4:25 6:14 | | |
| 31:25 | 29:21 | 17:14 | **Y** | **7** |
| **summary** 21:12 | **timing** 24:1 | **validity/enforceability** | **years** 16:2 | **7** 25:16 26:22,22,24 |
| **supplement** 19:23 | **today** 16:5 | 5:22 | | 28:19 29:21 |
| **supply** 9:3 | **told** 10:23 | **variety** 17:10 | **0** | **7-1/2** 25:16 |
| **sure** 5:12 10:19 16:22 | **top** 15:23 | **Vera** 2:2 3:16 | **02109** 1:23 | **75** 13:23 |
| 20:18 25:10 27:5 | **topics** 7:14 | **versus** 1:5 6:2,4 8:1 | **02110** 1:21 | |
| 30:22 | **total** 27:2,8 | **view** 4:3,5 12:15 24:16 | **02199** 1:16 | **8** |
| **suspect** 7:18 14:6 17:17 | **tracking** 25:13 26:9 | **vigilant** 31:14 | **02210** 2:15,21 | **8th** 21:25 |
| | **transcribed** 32:15 | **virtually** 12:4 | | **800** 1:15 |
| **T** | **transcription** 2:23 | **voluntarily** 16:24 | **1** | |
| **T** 32:10,10 | 32:13 | | **1** 2:14,15,20 | **9** |
| **table** 3:13 | **travel** 26:5,7 | **W** | **10** 25:15 | **94304** 2:2 |
| **take** 7:15 9:19 10:25 | **treatise** 8:7 | **wait** 11:6,11 23:2 27:10 | **10th** 14:25 20:9 | **98** 8:17 |
| 11:1 17:17 20:21 | **trial** 4:20,20 8:5 10:11 | **waive** 10:1 | **11** 16:6 | |

# Exhibit 3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ENTERASYS NETWORKS INC
   Plaintiff

CIVIL ACTION NO. 05-1128-DPW

v.

FOUNDRY NETWORKS, INC ET AL,
   Defendant

## SCHEDULING ORDER

WOODLOCK, D.J.

     This Order is intended primarily to aid and assist counsel in scheduling and planning the preparation and presentation of cases, thereby insuring the effective, speedy and fair disposition of cases, either by settlement or trial.

     The above-entitled action having been heard on November 3, 2005, it is hereby ORDERED pursuant to Rule 16(b) of the Federal Rules of Civil Procedure and Local Rule 16.1(F), that:

| Pre-Trial Event | DEADLINE |
| --- | --- |
| Deadline for Enterasys to serve claim construction charts identifying asserted claims and products accused of literal or doctrine of equivalents infringement | July 17, 2006 |
| Deadline for Defendants to serve invalidity contentions identifying each asserted item of prior art and the basis on which it anticipates or renders obvious each asserted patent claim | August 4, 2006 |
| Deadline for Defendants to serve responsive claim construction charts identifying which claim elements they admit are present in any accused products, and as to all other claim elements their bases for denying that said elements are present | August 18, 2006 |
| Simultaneous exchange of preliminary proposed constructions for the claim elements that each party contends should be construed by the Court | September 1, 2006 |
| Deadline for Defendants to provide notice of intention to rely upon opinions of counsel to potentially avoid willful infringement findings | September 15, 2006 |

| Deadline to file a joint claim construction statement providing shared constructions of claim elements on which the parties agree, and alternative proposed constructions of disputed claim elements | September 18, 2006 |
|---|---|
| Beginning of Phase II fact discovery encompassing all issues, including those issues addressed during Phase I | October 3, 2006 |
| Deadline for all parties to file their opening claim construction briefs | October 18, 2006 |
| Deadline for all parties to file their claim construction reply briefs | November 20, 2006 |
| Markman claim construction hearing | 3 Days Beginning on January 10, 2007 at 9:00 am |

Further scheduling shall be address at completion of Markman Hearing.

All provisions and deadlines contained in this order having been established with the participation of the parties to this case, any requests for modification must be presented to the judge or magistrate judge, if referred for case management proceedings. Any requests for extension will be granted only for good cause shown supported by affidavits, other evidentiary materials, or reference to pertinent portions of the record. The request shall be made by motion and shall contain the reasons for the request, a summary of the discovery which remains to be taken, and a date certain when the requesting party will complete the additional discovery, join other parties, amend the pleadings or file motions. The Court may then enter a final scheduling order, if necessary.

Counsel are encouraged to seek an early resolution of this matter. Additional case management conferences may be scheduled by the court or upon the request of counsel, if the Court can be of assistance in resolving preliminary issues or in settlement.

By the Court,

/s/ Michelle Rynne
DATED:   November 18, 2005          Deputy Clerk

# Exhibit 4

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

ENTERASYS NETWORKS, INC,

        Plaintiff,

    v.

FOUNDRY NETWORKS, INC. and
EXTREME NETWORKS, INC.,

        Defendants.

Civil Action No. 05-CV-11298 (DPW)

## DEFENDANT FOUNDRY NETWORKS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF ENTERASYS NETWORKS, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS (NOS. 1-120)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of the District of Massachusetts, defendant Foundry Networks, Inc. ("Foundry") hereby responds and objects to plaintiff Enterasys Networks, Inc.'s ("Enterasys") First Set of Requests for Production of Documents ("Requests").

## GENERAL RESPONSES AND OBJECTIONS

Foundry has not completed its discovery, investigation, research, and trial preparation. The following responses and objections are based on information reasonably available to Foundry as of the date of this response. Foundry expressly reserves the right to supplement the following responses and objections, and to change any and all answers therein as additional facts are ascertained, analyses are made, legal research is completed, contentions are made, or as a result of the court's legal determination of issues, including without limitation, the construction of the claims. Foundry therefore reserves the right, at any time, to revise, amend, correct, supplement, modify or clarify its objections and responses, or production made pursuant thereto,

although it does not undertake to do so except to the extent required by Federal Rules of Civil

Procedure 26(e).

Foundry's responses and objections are made without in any way waiving or intending to

waive, but on the contrary preserving and intending to preserve:

> 1. All questions as to competency, relevancy, materiality, privilege, and
>
> admissibility as evidence for any purpose of the responses or subject matter
>
> thereof, in any subsequent proceeding in or the trial of this or any other action;
>
> 2. The right to object on any ground to the use of said responses and
>
> objections, or the subject matter thereof, in any subsequent proceeding in or the
>
> trial of this or any other action; and
>
> 3. The right to object on any ground at any time to other interrogatories,
>
> requests for production, requests for admission, or other discovery procedures
>
> involving or relating to the subject matter of these requests.

Foundry sets forth below its General Objections to the requests. These General

Objections apply to each and every Request, whether or not they are specifically set forth in the

responses and objections to each.

1. Foundry objects to the Requests to the extent that they are overly broad, unduly

burdensome, oppressive, and/or designed solely to harass Foundry.

2. Foundry objects to the Request to the extent that they seek documents and things

not relevant to and/or reasonably calculated to lead to the discovery of admissible evidence.

3. Foundry objects to these Requests to the extent that they seek information

protected by the attorney-client privilege, the attorney work-product doctrine, and/or any other

applicable privilege or immunity. The inadvertent production of any privileged information does

not signify any intent by Foundry to waive any applicable privileges.

4.      Foundry objects to these Requests to the extent that they seek production of "all documents" responsive to request categories on the grounds that such requests are overly broad and unduly burdensome.  Subject to these objections, Foundry will use reasonable diligence to locate documents in its own files, based on an examination of those files reasonably expected to yield responsive documents.  As used in these responses, the phrase "all documents" or phrases of similar import, should be understood to mean those documents Foundry and its counsel are able to locate using reasonable diligence and judgment concerning the whereabouts of responsive documents.  Such phraseology should not be construed as a representation that each and every document in the possession of Foundry has been examined in connection with these responses or any production pursuant thereto.

5.      Any documents identified below are being produced solely for the purpose of this action, and may not be used in any other action.  For every document produced, Foundry reserves its right to interpose at trial all objections to competence, authenticity, relevance, materiality, propriety, admissibility and any and all other objections that would exclude the information from evidence.

6.      Foundry objects to these Requests to the extent that they purport to require Foundry to do anything beyond that which is required by the Federal Rules of Civil Procedure and other applicable law.  In particular, Foundry objects to these Requests on the basis that the produced documents "be segregated and clearly marked or labeled so as to correspond to the specific production requests to which such documents or tangible things are responsive...." Foundry shall produce documents or tangible things as they are kept in the usual course of business.

7.      Foundry objects to each and every Request that uses the terms defined in Local Rule 26.5 to the extent that the request purports to use these terms differently than as defined in

the Local Rule.  Foundry will strictly construe all requests using the definitions provided in the Local Rules.

8.      Foundry objects to these Requests to the extent the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other sources that are more convenient, less burdensome, or less expensive.  Foundry also objects to these requests for production to the extent the burden or expense of discovery sought outweighs the likely benefit.

9.      Foundry objects to any requirement in these Requests that Foundry identify or produce any privileged document generated after the filing of this lawsuit, or that reflects a pre-filing investigation.  Such material is clearly privileged, and it is unduly burdensome to require the inclusion of such material in any privilege log.

10.     Foundry objects to these Requests to the extent that they seek disclosure of information protected by the rights of privacy of third-party non-litigants and/or seek disclosure of information subject to confidentiality agreements or protective orders.

11.     Foundry objects to these Requests to the extent that they are premature as seeking documents and things beyond the scope of the first phase of discovery, which was limited by the Court to issues of infringement and validity of the patent-in-suit.

12.     Foundry objects to the Requests to the extent that they are vague, ambiguous, and/or confusing in that it fails to describe with reasonable particularity the documents and things sought.

13.     Foundry objects to the Request to the extent that they seek documents and things already in Enterasys' possession and/or information that is readily available to Enterasys.  Foundry further objects to the Requests to the extent that the Requests seek documents and things that are equally available to Enterasys through other sources, on grounds that such Requests subject Foundry to unreasonable and undue burden and expense.

14.     Foundry objects to the Requests to the extent that they seek documents and things not in Foundry's possession, custody, or control, or documents and things not owned by or belonging to Foundry, or documents and things that are subject to a non-disclosure obligation pursuant to a confidentiality agreement with a third party.  Foundry further objects to the Requests to the extent that they require a search of Foundry's files that do not reasonably relate to one or more of the specific document production requests contained in the Requests.

15.     Foundry objects to the Requests to the extent that they seek documents and things outside the relevant time period.

16.     Foundry objects to the Requests to the extent that they seek to define terms and/or characterize the evidence in this matter.  To the extent that Foundry adopts any terms used in the Requests, such adoption is specifically limited to these objections and/or responses, or production made pursuant thereto.

17.     Foundry expressly reserves all objections as to relevance, authenticity and/or admissibility of any information disclosed in its objections and/or responses, or production made pursuant thereto.

18.     Nothing herein shall be construed as an admission by Foundry with respect to the admissibility of any characterization contained in the Request.  Foundry's willingness to provide documents and things in response to the Request is not a concession that the subject matter of the particular document request is discoverable, relevant to this action, or admissible as evidence.

19.     Foundry's statement that it will produce documents is not a representation that such documents exist, but only that a reasonably diligent search for such documents, notwithstanding any objections and to the extent the request is understood, will take place.  If any responsive non-privileged, non-work product documents exist to which no objection has

been made, are found to exist and have not yet been produced, such documents will be produced to Enterasys.

20.     Foundry objects to Enterasys' definition of the term "Meeting" as overbroad and unduly burdensome.

21.     Foundry objects to Enterasys' definition of the term "Agreement" as overbroad and unduly burdensome. Foundry objects to the term "Agreement" to the extent it purports to encompass information protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable restriction upon discovery.

22.     Foundry objects to Enterasys' definition of the term "Negotiate" as overbroad and unduly burdensome. Foundry objects to the term "Negotiate" to the extent it purports to encompass information protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable restriction upon discovery.

23.     Foundry objects to Enterasys' definition of "Foundry" to the extent that Enterasys purports to extend these Requests to cover information outside the possession, custody or control of Foundry Networks, Inc.  Foundry further objects to the definition of "Foundry" to the extent that it includes Foundry's parent companies, affiliates or subsidiaries.  No Foundry parent company, affiliate or subsidiary is a party to this lawsuit, and requests directed to a parent company, affiliate or subsidiary would not be relevant to the claim or defenses of a party in this case.  Foundry will interpret these terms as referring only to defendant Foundry Networks, Inc., and will respond only on behalf of Foundry Networks, Inc.  Foundry further objects to the definition of "Foundry" to the extent that it includes Foundry's attorneys, and, as such, seeks information protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable restriction upon discovery.

24.     Foundry objects to the definition of the term "Damages Period" as overly broad and unduly burdensome.  Foundry further object to the these Requests to the extent they seek information and/or documents during the "Damages Period" from June 21, 1999 to the present. Enterasys' claims for damages for Foundry's alleged infringement of the patents in suit are limited to the period Foundry had actual notice of that alleged infringement, in accordance with 35 U.S.C. § 287(a).

25.     Foundry objects to these Requests to the extent they seek information and/or documents concerning "Foundry Products" from June 21, 1999 to the present.  Enterasys' claims for damages for Foundry's alleged infringement of the patents in suit are limited to the period Foundry had actual notice of that alleged infringement, in accordance with 35 U.S.C. § 287(a).

26.     Foundry further objects to the term "Foundry Products" as overbroad, rendering each and every Request in which the term is used unduly burdensome, and as seeking information not relevant to the issues in this case or reasonably calculated to lead to relevant and/or admissible evidence.  Until Enterasys identifies the basis for its allegations of infringement, Foundry cannot fully determine relevance. On that basis, Foundry objects to the definition of Foundry Products as not relevant or likely to lead to admissible evidence.

27.     Foundry further objects to the term "Foundry Technical Documents" as overbroad, rendering each and every Request in which the term is used unduly burdensome, and as seeking information not relevant to the issues in this case or reasonably calculated to lead to relevant and/or admissible evidence.

28.     Until such time as Enterasys discloses and/or clarifies the nature of the relationship between any standard listed in Enterasys' discovery requests and the claims asserted by Enterasys in this litigation, Foundry objects to any discovery referring to such standards as

vague and ambiguous, and as seeking irrelevant evidence not likely to lead to admissible evidence.

29.     Foundry objects to the term "VLAN" as overbroad, rendering each and every Request in which the term is used unduly burdensome, and as seeking information not relevant to the issues in this case or reasonably calculated to lead to relevant and/or admissible evidence. Foundry further objects to the term "VLAN" as vague and ambiguous.

30.     Foundry further to the term "Default VLAN" as overbroad, rendering each and every Request in which the term is used unduly burdensome, and as seeking information not relevant to the issues in this case or reasonably calculated to lead to relevant and/or admissible evidence. Foundry further objects to the term "Default VLAN" as vague and ambiguous.

31.     Foundry objects to the term "VLAN-ID" as overbroad, rendering each and every Request in which the term is used unduly burdensome, and as seeking information not relevant to the issues in this case or reasonably calculated to lead to relevant and/or admissible evidence. Foundry further objects to the term "VLAN-ID" as vague and ambiguous.

32.     Foundry objects to the term "VLAN Tagging" as overbroad, rendering each and every Request in which the term is used unduly burdensome, and as seeking information not relevant to the issues in this case or reasonably calculated to lead to relevant and/or admissible evidence. Foundry further objects to the term "VLAN Tagging" as vague and ambiguous.

33.     Foundry objects to Enterasys' definition of the term "Routing Algorithm" as overbroad and unduly burdensome. Foundry further objects to this term as vague and ambiguous.

34.     Foundry objects to Enterasys' definition of the term "Routing Protocol" as overbroad and unduly burdensome. Foundry further objects to this term as vague and ambiguous.

35.     Foundry objects to Enterasys' definition of the term "Routing Protocol Suite" as overbroad and unduly burdensome. Foundry further objects to this term as vague and ambiguous.

36.     Foundry objects to Enterasys' definition of the term "VLAN Standard Activities" as overbroad and unduly burdensome.

37.     Foundry objects to Enterasys' definition of the term "IGMP Standard Activates" as overbroad and unduly burdensome.

38.     Foundry objects to Enterasys' definition of the term "MPLS Standard Activities" as overbroad and unduly burdensome.

39.     The presence or absence of any general or specific objection does not mean that Foundry does not object on any other grounds.

The foregoing General Objections are incorporated by reference into the following responses, as though fully set forth therein, even though not specifically referred to in such response.

## SPECIFIC RESPONSES AND OBJECTIONS

## REQUEST FOR PRODUCTION NO. 1:

All documents and tangible things in your possession, custody, or control that concern, or refer or relate to, Enterasys.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry

will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 2:**

All documents and tangible things in your possession, custody, or control that concern, or refer or relate to, any of the Enterasys Patents, or any aspects of their respective prosecution histories.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 3:**

All documents and tangible things in your possession, custody, or control that concern, or refer or relate to, any of the named inventors of any of the Enterasys Patents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to

this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 4:**

All documents and tangible things in your possession, custody, or control that concern, or refer or relate to, the existence or subject matter of the present action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Foundry objects to the phrase "subject matter of the present action" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

**REQUEST FOR PRODUCTION NO. 5:**

All documents and tangible things in your possession, custody, or control that constitute Board of Director meeting minutes, or materials provided to any Director, that pertain to Enterasys, the Enterasys Patents, or the existence or subject matter of the present action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Foundry objects to the phrases "meeting minutes" "materials provided to any Director," and "subject matter of the present action" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 6:**

All documents and tangible things in your possession, custody, or control that constitute, reflect, concern, or refer or relate to any communications between Foundry on the one hand, and Enterasys, Cabletron, or DEC on the other hand.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

## REQUEST FOR PRODUCTION NO. 7:

All documents and tangible things in your possession, custody, or control that constitute, reflect, concern, or refer or relate to communications between Foundry on the one hand, and Extreme Networks, Inc. on the other hand, that pertain to Enterasys, the Enterasys Patents, the prosecution histories or inventors of the Enterasys Patents, or the existence or subject matter of the present action.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 7:

Foundry objects to the phrase "subject matter of the present action" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege, joint defense/common interest privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

## REQUEST FOR PRODUCTION NO. 8:

All documents and tangible things in your possession, custody, or control that constitute, reflect, concern, or refer or relate to any actual or contemplated joint defense agreement between Foundry and Extreme Networks, Inc. pertaining to the present action.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 8:

Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege, joint defense/common interest privilege, and/or the work product doctrine.

## REQUEST FOR PRODUCTION NO. 9:

All documents and tangible things in your possession, custody, or control that constitute, reflect, concern, or refer or relate to communications between Foundry on the one hand, and any other person or entity on the other hand, that pertain to Enterasys, the Enterasys Patents, the prosecution histories or inventors of the Enterasys Patents, or the existence or subject matter of the present action.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 9:

Foundry further objects to the phrase "subject matter of the present action" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery

outweighs the likely benefit. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege, joint defense/common interest privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 10:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that concern, or refer or relate to, establishing whether or how any of the Foundry Products support, enable, or implement the VLAN Standards, or whether or how they can be configured to do so.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Foundry objects to the phrases "support, enable, or implement" and "can be configured" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features for the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 11:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to the handling of, and/or the forwarding or filtering decisions made relative to, any data packet received through one of the port based Default VLAN ports contained in any of the Foundry Products, including in circumstances where any destination port for that data packet is either determined or not determined to be a Default VLAN port.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Foundry objects to the phrases " handling of, and/or the forwarding or filtering decisions," "any data packet received through," "port based Default VLAN ports," "destination port," and "either determined or not determined" as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations.  Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to this request

to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 12:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to efforts to filter or otherwise prevent any data packet received through one of the port based Default VLAN ports contained in any of the Foundry Products from being transmitted to any destination port associated with a VLAN other than the Default VLAN.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Foundry objects to the phrases "filter or otherwise prevent," "any data packet received through," "port based Default VLAN ports," "transmitted to any destination port," and "associated with a VLAN" as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations.  Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to

admissible and/or relevant information.  Foundry objects to this request to the extent that it seeks

information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set

forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry

will search for, and if found, produce relevant, non-privileged, non-confidential documents since

June 2005 to present from which information requested by this request may be obtained.

## REQUEST FOR PRODUCTION NO. 13:

All documents and tangible things in your possession, custody, or control (including

Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how

VLAN Tagging occurs or may occur in any of the Foundry Products in relation to any data

packet received through one of the port based Default VLAN ports.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 13:

Foundry objects to this request as overbroad and unduly burdensome.  Foundry further

objects to the phrases "inserting a field in a packet," (in Enterasys' definition of VLAN

Tagging), "any data packet received through" and "port based Default VLAN ports" as vague

and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome,

harassing and not reasonably calculated to lead to the discovery of admissible information.  By

its overbreadth, the Request includes documents which are not relevant to any claim or defense

of any party to this litigation, or for which the burden or expense of the proposed discovery

outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry

products and the basis for its infringement allegations.  Without an identification of the accused

features of the products, Foundry cannot fully assess the relevance of this request, and on that

basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant

information.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

## REQUEST FOR PRODUCTION NO. 14:

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to the handling of, and/or the forwarding or filtering decisions made relative to, any broadcast message received through one of the port based Default VLAN ports contained in any of the Foundry Products, including in circumstances where any destination port for that broadcast message is either determined or not determined to be a Default VLAN port.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 14:

Foundry further objects to the phrases "any broadcast message received through," "port based Default VLAN ports," and "either determined or not determined" as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations.  Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant

information.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 15:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to efforts to filter, discard, or otherwise prevent any broadcast message received through one of the port based Default VLAN ports contained in any of the Foundry Products from being transmitted to any destination port associated with a VLAN other than the Default VLAN.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Foundry objects to the phrases "filter, discard, or otherwise prevent," "any broadcast message received through," "port based Default VLAN ports," "transmitted to any destination port," and "associated with a VLAN" as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations.  Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to

admissible and/or relevant information.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 16:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that concern, or refer or relate to, establishing whether or how any of the Foundry Products allow for, or can be configured to allow for, a port based Default VLAN to be formed on a Hub.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Foundry objects to the phrase "allow for, or can be configured to allow for" and "port-based VLAN" as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations.  Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

## REQUEST FOR PRODUCTION NO. 17:

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how VLAN-IDs are or can be used in any of the Foundry Products in relation to any port based VLAN ports, and/or in relation to any data packets received on such ports.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 17:

Foundry objects to the phrases "designation" (in Enterasys' definition of VLAN-IDs), "port based VLAN ports," and "data packets received " as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations.  Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry

will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 18:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to the handling of, and/or the forwarding or filtering decisions made relative to, any multicast or other data packet received through one of the port based VLAN ports contained in any of the Foundry Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Foundry further objects to the phrases "handling of, and/or the forwarding and filtering decisions," and "multicast or other data packet received " as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

-23-

**REQUEST FOR PRODUCTION NO. 19:**

      All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how any multicast or other data packet received through one of the port based VLAN ports contained in any of the Foundry Products is flooded to all other ports assigned with the same VLAN-ID as the receiving port.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

      Foundry objects to the phrases "handling of, and/or the forwarding and filtering decisions," and "multicast or other data packet received " as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations.  Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

      Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 20:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how determinations are made as to the source and/or destination of any data packet received through one of the port based VLAN ports contained in any of the Foundry Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Foundry objects to the phrases "handling of, and/or the forwarding and filtering decisions," and "multicast or other data packet received " as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations.  Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 21:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to the handling of, and/or the forwarding or filtering decisions made relative to, a data packet received through one of the port based VLAN ports contained in any of the Foundry Products in circumstances where the VLAN-ID associated with the source host and/or end station of that packet is determined to be different from the VLAN-ID associated with the destination of that packet.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Foundry objects to the phrases "handling of, and/or the forwarding and filtering decisions," "designation" (in Enterasys' definition of VLAN-ID), "host and/or end-station," and "determined to be different" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 22:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how any tagged multicast packet received through a port other than one of the port based VLAN ports contained in any of the Foundry Products is flooded to all other ports assigned with the same VLAN-ID as the VLAN-ID contained in that tagged packet.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Foundry objects to the phrases "tagged multicast packet," "port-based VLAN port," "flooded to all other ports," and "designation" (in Enterasys' definition of VLAN-ID), as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

## REQUEST FOR PRODUCTION NO. 23:

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how any tagged multicast packet received through a port other than one of the port based VLAN ports contained in any of the Foundry Products gets untagged.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 23:

Foundry objects to the phrases "tagged multicast packet," "port-based VLAN port," and "untagged" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

## REQUEST FOR PRODUCTION NO. 24:

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how

protocol identifiers are or can be assigned to any of the port based VLAN-IDs used in any of the Foundry Products.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 24:

Foundry objects to the phrases "protocol identifiers," "port-based VLAN-IDs," and "designation" (in Enterasys' definition of VLAN-ID), as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations.  Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

## REQUEST FOR PRODUCTION NO. 25:

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how VLAN Tagging occurs or may occur in any of the Foundry Products in relation to any data packet received through one of the port based VLAN ports.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Foundry objects to the phrases "inserting a field in a packet," (in Enterasys' definition of VLAN Tagging), "any data packet received through" and "port based VLAN ports" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 26:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how any tagged multicast packet received through one of the port based VLAN ports contained in any of the Foundry Products is flooded to all other ports assigned with the same VLAN-ID as the VLAN-ID contained in the tagged packet.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Foundry objects to the phrases "tagged multicast packet," "port based VLAN ports," "flooded to all other ports" and "designation" (in Enterasys' definition of VLAN-ID), as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 27:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how any of the Foundry Products perform VLAN Tagging by replacing a redundant information field contained within a data packet with a VLAN-ID.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Foundry objects to the phrases "inserting a field in a packet," (in Enterasys' definition of VLAN Tagging), "redundant information field" and "designation" (in Enterasys' definition of a VLAN-ID) as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations.  Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 28:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how determinations are made in any of the Foundry Products as to what VLAN-ID is associated with a particular data packet and/or with the source host and/or end station of that data packet.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Foundry objects to the phrases "determinations," "designation" (in Enterasys' definition of VLAN-ID), and "host and/or end station" as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations.  Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 29:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how in any of the Foundry Products a determination as to the VLAN-ID associated with the source host of a broadcast, multicast, or destination unknown data packet affects, impacts, or relates to the handling of, and/or the forwarding or filtering decisions made relative to, such a data packet.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Foundry objects to the phrases "determination," "designation" (in Enterasys' definition of VLAN-ID), and "broadcast, multicast, or destination unknown data packet" and "affects, impacts, or relates to the handling of, and/or the forwarding or filtering decisions made relative to" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 30:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to the content, nature, population, location, programming interface, or use of any tables or other data structures contained in any of the Foundry Products involved in the mapping of VLAN-IDs to associated hosts, end stations, and/or to associated ports.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Foundry objects to the phrases "content, nature, population, location, programming interface, or use," " tables or other data structures," "mapping," and "designation" (in Enterasys' definition of VLAN-ID), and "associated hosts, end stations, and/or to associated ports" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 31:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how VLAN Tagging occurs or may occur in any of the Foundry Products in relation to broadcast, multicast, or destination unknown data packets.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

Foundry objects to the phrases "inserting a field in a packet" (in Enterasys' definition of VLAN-Tagging) and " broadcast, multicast, or destination unknown data packets" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 32:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how any tagged broadcast, multicast, or destination unknown data packet in any of the Foundry Products gets untagged.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

Foundry objects to the phrases "broadcast, multicast, or destination unknown data packets" and "untagged" as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations.  Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 33:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to efforts to filter, discard, or otherwise prevent transmission of any broadcast, multicast, or destination unknown packet received in any of the Foundry Products in circumstances where none of its potential destination ports are determined to be associated with the same VLAN-ID that is associated with its source host and/or end station.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

Foundry objects to the phrases "filter, discard, or otherwise prevent transmission," "broadcast, multicast, or destination unknown packet received," "potential destination ports are determined to be associated," and "designation" (in Enterasys' definition of VLAN-ID), and "associated with its source host and/or end station" as vague and ambiguous. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 34:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to the handling of, and/or the forwarding or filtering decisions made relative to, a broadcast, multicast, or destination

unknown data packet in any of the Foundry Products in circumstances where that packet is of a protocol not supported by the switch that receives it.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Foundry objects to the phrases "filter handling of, and/or the forwarding or filtering decisions made relative to," " broadcast, multicast, or destination unknown data packet," and "packet is of a protocol not supported by the switch that receives it" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 35:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how any of the Foundry Products are or can be used in conjunction with a logical multicast channel

formed by physical links for carrying multicast traffic that establish point-to-point connections between switches.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 35:

Foundry objects to the phrases "logical multicast channel formed by physical links," and "carrying multicast traffic that establish point-to-point connections between switches" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

## REQUEST FOR PRODUCTION NO. 36:

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to identifying or explaining the criteria or bases on which VLAN-IDs are assigned in any of the Foundry Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

Foundry objects to the phrases "to identifying or explaining the criteria or bases," and

"designate" (in Enterasys' definition of VLAN-ID) as vague and ambiguous.  Foundry objects to

this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to

lead to the discovery of admissible information.  By its overbreadth, the Request includes

documents which are not relevant to any claim or defense of any party to this litigation, or for

which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff

has not identified the accused features of Foundry products and the basis for its infringement

allegations.  Without an identification of the accused features of the products, Foundry cannot

fully assess the relevance of this request, and on that basis, objects to the request as irrelevant

and not likely to lead to admissible and/or relevant information.  Foundry objects to this request

to the extent that it seeks information protected by the attorney-client privilege and/or the work

product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set

forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry

will search for, and if found, produce relevant, non-privileged, non-confidential documents since

June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 37:**

All documents and tangible things in your possession, custody, or control (including

Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how

any of the Foundry Products maintain status tables or other status data structures reflecting

whether ports associated with a particular VLAN are in a state of enablement or disablement.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

Foundry objects to the phrases "maintain status tables or other status data structures," "ports associated with a particular VLAN" and "state of enablement or disablement" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 38:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how any of the Foundry Products use Simple Network Management Protocol ("SNMP") messages to maintain any VLAN mapping tables or other mapping data structures.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

Foundry objects to the phrase "maintain any VLAN mapping tables or other mapping data structures" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 39:**

All documents and tangible things in your possession, custody, or control that reflect, concern, or refer or relate to establishing whether or how any of the Foundry Products support, enable, or implement the IGMP Standards, or whether or how they can be configured to do so.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

Foundry objects to the phrase "enable, or implement the IGMP Standards" and "configured to do so" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of

admissible information.  By its overbreadth, the Request includes documents which are not

relevant to any claim or defense of any party to this litigation, or for which the burden or expense

of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused

features of Foundry products and the basis for its infringement allegations.  Without an

identification of the accused features of the products, Foundry cannot fully assess the relevance

of this request, and on that basis, objects to the request as irrelevant and not likely to lead to

admissible and/or relevant information.  Foundry objects to this request to the extent that it seeks

information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set

forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry

will search for, and if found, produce relevant, non-privileged, non-confidential documents since

June 2005 to present from which information requested by this request may be obtained.

## REQUEST FOR PRODUCTION NO. 40:

All documents and tangible things in your possession, custody, or control (including

Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how

determinations are made in any of the Foundry Products as to whether a received packet is a

Multicast Control Packet.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 40:

Foundry objects to the phrases "determinations are made" and "received packet" as vague

and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome,

harassing and not reasonably calculated to lead to the discovery of admissible information.  By

its overbreadth, the Request includes documents which are not relevant to any claim or defense

of any party to this litigation, or for which the burden or expense of the proposed discovery

outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry

products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

## REQUEST FOR PRODUCTION NO. 41:

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how determinations are made in any of the Foundry Products as to the intended destination for any received Multicast Control Packet.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 41:

Foundry objects to the phrases "determinations are made" and "intended destination" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant

information.  Foundry objects to this request to the extent that it seeks information protected by
the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set
forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry
will search for, and if found, produce relevant, non-privileged, non-confidential documents since
June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 42:**

All documents and tangible things in your possession, custody, or control (including
Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how
any of the Foundry Products use Multicast Control Packets to identify or determine the multicast
group memberships of any hosts, end stations, and/or ports.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

Foundry objects to the phrases "to identify or determine the multicast group
memberships" and "hosts, end stations, and/or ports" as vague and ambiguous.  Foundry objects
to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated
to lead to the discovery of admissible information.  By its overbreadth, the Request includes
documents which are not relevant to any claim or defense of any party to this litigation, or for
which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff
has not identified the accused features of Foundry products and the basis for its infringement
allegations.  Without an identification of the accused features of the products, Foundry cannot
fully assess the relevance of this request, and on that basis, objects to the request as irrelevant
and not likely to lead to admissible and/or relevant information.  Foundry objects to this request
to the extent that it seeks information protected by the attorney-client privilege and/or the work
product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 43:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to the content, nature, population, programming interface, or use of any multicast forwarding tables or other multicast forwarding data structures contained in any of the Foundry Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

Foundry objects to the phrases "the content, nature, population, programming interface, or use" and "multicast forwarding tables or other multicast forwarding data structures" as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations.  Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry

will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 44:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how any of the Foundry Products use information learned or determined from received Multicast Control Packets to populate, de-populate, and/or update any multicast forwarding tables or other multicast forwarding data structures.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

Foundry objects to the phrases "use information learned or determined from received Multicast Control Packets," "populate, de-populate, and/or update," and "multicast forwarding tables or other multicast forwarding data structures" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry

will search for, and if found, produce relevant, non-privileged, non-confidential documents since

June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 45:**

All documents and tangible things in your possession, custody, or control (including

Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how

any multicast forwarding tables or other multicast forwarding data structures contained in any of

the Foundry Products correlate, cross-reference, or associate the port on which a Multicast

Control Packet is received with any identified multicast group, and/or with any host and/or end

station that is a member of such a group.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

Foundry objects to the phrases "multicast forwarding tables or other multicast forwarding

data structures," "correlate, cross-reference, or associate the port on which a Multicast Control

Packet is received," and "identified multicast group, and/or with any host and/or end station that

is a member of such a group" as vague and ambiguous.  Foundry objects to this request as it is

overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the

discovery of admissible information.  By its overbreadth, the Request includes documents which

are not relevant to any claim or defense of any party to this litigation, or for which the burden or

expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the

accused features of Foundry products and the basis for its infringement allegations.  Without an

identification of the accused features of the products, Foundry cannot fully assess the relevance

of this request, and on that basis, objects to the request as irrelevant and not likely to lead to

admissible and/or relevant information.  Foundry objects to this request to the extent that it seeks

information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 46:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how determinations are made in any of the Foundry Products as to the source host and/or end station of any received Multicast Control Packet.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

Foundry objects to the phrases "determinations are made," and "source host and/or end station of any received Multicast Control Packet," as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry

will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 47:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how any multicast forwarding tables or other multicast forwarding data structures contained in any of the Foundry Products correlate, cross-reference, or associate the source host and/or end station of any received Multicast Control Packet with any identified multicast group, and/or with any port associated with such a group.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

Foundry objects to the phrases "any multicast forwarding tables or other multicast forwarding data structures," "correlate, cross-reference, or associate," "source host and/or end station of any received Multicast Control Packet" and "identified multicast group, and/or with any port associated with such a group," as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 48:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how determinations are made in any of the Foundry Products as to whether a received data packet has a multicast group as a destination address.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

Foundry objects to the phrases "determinations are made," and "received data packet has a multicast group as a destination address" as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry

will search for, and if found, produce relevant, non-privileged, non-confidential documents since

June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 49:**

All documents and tangible things in your possession, custody, or control (including

Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how

any of the Foundry Products use data contained in any multicast forwarding tables or other

multicast forwarding data structures to make determinations as to the handling of, and/or the

forwarding or filtering of, any received data packet that has a multicast group as a destination

address.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

Foundry objects to the phrases "any multicast forwarding tables or other multicast

forwarding data structures," "to make determinations as to the handling of, and/or the forwarding

or filtering of, any received data packet," and "multicast group as a destination address" as vague

and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome,

harassing and not reasonably calculated to lead to the discovery of admissible information. By

its overbreadth, the Request includes documents which are not relevant to any claim or defense

of any party to this litigation, or for which the burden or expense of the proposed discovery

outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry

products and the basis for its infringement allegations. Without an identification of the accused

features of the products, Foundry cannot fully assess the relevance of this request, and on that

basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant

information. Foundry objects to this request to the extent that it seeks information protected by

the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 50:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to the handling of, and/or the forwarding or filtering decisions made relative to, any data packet with a multicast group destination address in circumstances where any multicast forwarding tables or other multicast forwarding data structures contained in any of the Foundry Products lack any data associated with that multicast group.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

Foundry objects to the phrases "handling of, and/or the forwarding or filtering decisions made relative to," "multicast group destination address," "multicast forwarding tables or other multicast forwarding data structures" and "any data associated with that multicast group" as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations.  Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant

information.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

## REQUEST FOR PRODUCTION NO. 51:

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how the enablement or disablement of IGMP features in any of the Foundry Products affects whether received data packets with multicast group destination addresses will be flooded within a VLAN or on a network-wide basis.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 51:

Foundry objects to the phrases "or disablement of IGMP features," "received data packets with multicast group destination addresses," and "will be flooded" as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations.  Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant

information.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 52:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how a Second Internal Header is applied to any data packet in any of the Foundry Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

Foundry objects to the phrases "or disablement of IGMP features," "received data packets with multicast group destination addresses," and "will be flooded" as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations.  Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 53:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to identifying the content of any Second Internal Header that gets applied to any data packet in any of the Foundry Products including, but not limited to, a specific identification of the types of information and/or fields that are contained in any such Second Internal Header.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 53:**

Foundry objects to the phrases "identifying the content of any Second Internal Header," and "specific identification of the types of information and/or fields" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations.  Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 54:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to identifying the physical location within any of the Foundry Products where any Second Internal Header gets applied to any data packet including, but not limited to, a specific identification of any chips within which such a process occurs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 54:**

Foundry objects to the phrases "identifying the physical location," and "Second Internal Header gets applied to any data packet" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry

will search for, and if found, produce relevant, non-privileged, non-confidential documents since

June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 55:**

All documents and tangible things in your possession, custody, or control (including

Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how

any local source and/or destination addresses contained in any Second Internal Header applied to

any data packet in any of the Foundry Products are translated or derived from the unique source

and/or destination addresses contained in the First Header of any such packet.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

Foundry objects to the phrases "Second Internal Header applied to any data packet," and

"or derived from the unique source and/or destination addresses contained in the First Header" as

vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome,

harassing and not reasonably calculated to lead to the discovery of admissible information.  By

its overbreadth, the Request includes documents which are not relevant to any claim or defense

of any party to this litigation, or for which the burden or expense of the proposed discovery

outweighs the likely benefit.  Foundry objects to this request to the extent that it seeks

information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set

forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry

will search for, and if found, produce relevant, non-privileged, non-confidential documents since

June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 56:**

All documents and tangible things in your possession, custody, or control (including

Foundry Technical Documents) that reflect, concern, or refer or relate to the handling of, and/or

the forwarding or filtering decisions made relative to, any data packet in any of the Foundry Products based upon the content of its Second Internal Header.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

Foundry objects to the phrases "handling of, and/or the forwarding or filtering decisions made relative," and "content of its Second Internal Header" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 57:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how a Second Internal Header get removed from any data packet in any of the Foundry Products.

-60-

**RESPONSE TO REQUEST FOR PRODUCTION NO. 57:**

Foundry objects to the phrase "Second Internal Header get removed from any data packet" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 58:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to identifying the physical location within any of the Foundry Products where any Second Internal Header gets removed from any data packet including, but not limited to, a specific identification of any chips within which such a process occurs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

Foundry objects to the phrase "Second Internal Header gets removed from any data packet" as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations.  Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 59:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how any Second Internal Header applied to any data packet in any of the Foundry Products contains link numbers which serve to locally identify or name any network segments or links.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 59:**

Foundry objects to the phrases "any Second Internal Header applied to any data packet" and "locally identify or name any network segments or links" as vague and ambiguous.  Foundry

objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 60:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) sufficient to identify the number of binary digits (i.e., bits) that comprise any local source and/or destination addresses contained in any Second Internal Header applied to any data packet in any of the Foundry Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 60:**

Foundry objects to the phrases "any local source and/or destination addresses" and "Second Internal Header applied to any data packet" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes

documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 61:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) sufficient to establish whether any of the Foundry Products are capable of handling Fiber Distributed Data Interface ("FDDI") links.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 61:**

Foundry objects to the phrases "capable of handling" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products,

Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 62:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how any Second Internal Header applied to any data packet in any of the Foundry Products contains a field or fields that specify a service class or queue number for that data packet.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 62:**

Foundry objects to the phrases "Second Internal Header applied to any data packet" and "field or fields that specify a service class or queue number" as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations.  Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to

this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 63:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how any Second Internal Header applied to any data packet in any of the Foundry Products contains a field or fields that specify a protocol class for that data packet.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 63:**

Foundry objects to the phrases "Second Internal Header applied to any data packet" and "field or fields that specify a protocol class" as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 64:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how any Second Internal Header applied to any data packet in any of the Foundry Products contains a field or fields that indicate the status of local network congestion.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 64:**

Foundry objects to the phrases "Second Internal Header applied to any data packet" and "field or fields that indicate the status of local network congestion" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations.  Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry

will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 65:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to establishing whether or how any of the Foundry Products support, enable, or implement the MPLS Standards, or whether or how they can be configured to do so.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 65:**

Foundry objects to the phrases "Second Internal Header applied to any data packet" and "field or fields that indicate the status of local network congestion" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 66:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how any Routing Algorithm employed by any of the Foundry Products can be used to calculate packet routes for all received packets regardless of the multiple different Routing Protocol Suites to which such packets may conform.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 66:**

Foundry objects to the phrase "calculate packet routes for all received packets" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 67:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how any Routing Algorithm employed by any of the Foundry Products can be used to calculate packet routes for all received packets without the need to convert the destination address of any packet to an addressing convention associated with a Routing Protocol Suite different from the one to which that packet conforms.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 67:**

Foundry objects to the phrases "calculate packet routes for all received packets" and "without the need to convert the destination address of any packet" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 68:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how any Routing Algorithm employed by any of the Foundry Products that supports multiple Routing Protocols can make use of information contained in any Link State Packets in performing its calculations of packet routes.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 68:**

Foundry objects to the phrases "can make use of information contained in any Link State Packets in performing its calculations of packet routes" and "control packet" (in Enterasys' definition of Link State Packet) as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 69:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, where, or how determinations are made in any of the Foundry Products to perform an MPLS Encapsulation on a data packet.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 69:**

Foundry objects to the phrases "determinations are made" and "data area associated with a new and additional header" (in Enterasys' definition of MPLS Encapsulation) as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 70:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, where, or how determinations are made in any of the Foundry Products to remove a data packet from an MPLS Encapsulation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 70:**

Foundry objects to the phrase "determinations are made" and "data area associated with a new and additional header" (in Enterasys' definition of MPLS Encapsulation) as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 71:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to how it is determined in any of the Foundry Products which Routing Protocol to use when performing an MPLS Encapsulation on a data packet.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 71:**

Foundry objects to the phrase "how it is determined" and "data area associated with a new and additional header" (in Enterasys' definition of MPLS Encapsulation) as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 72:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to identifying which Routing Protocol Suites any of the Foundry Products are capable of supporting.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 72:**

Foundry objects to the phrase "how it is determined" and "data area associated with a new and additional header" (in Enterasys' definition of MPLS Encapsulation) as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 73:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how

any Routing Protocol can be used in any of the Foundry Products to determine if an MPLS

Encapsulation should be performed on a data packet.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 73:**

Foundry objects to the phrase "data area associated with a new and additional header" (in

Enterasys' definition of MPLS Encapsulation) as vague and ambiguous.  Foundry objects to this

request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead

to the discovery of admissible information.  By its overbreadth, the Request includes documents

which are not relevant to any claim or defense of any party to this litigation, or for which the

burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not

identified the accused features of Foundry products and the basis for its infringement allegations.

Without an identification of the accused features of the products, Foundry cannot fully assess the

relevance of this request, and on that basis, objects to the request as irrelevant and not likely to

lead to admissible and/or relevant information.  Foundry objects to this request to the extent that

it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set

forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry

will search for, and if found, produce relevant, non-privileged, non-confidential documents since

June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 74:**

All documents and tangible things in your possession, custody, or control (including

Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how

any Routing Protocol can be used in any of the Foundry Products to determine multiple routes

along which a data packet can be sent.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 74:**

Foundry objects to the phrase "determine multiple routes along which a data packet can be sent" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 75:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to the functionality, architecture, and/or configurability of Foundry's IronWare MPLS Software and PROM.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 75:**

Foundry objects to the phrase "functionality, architecture, and/or configurability" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By

its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 76:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) sufficient to identify by name and model number the chips and/or chipsets used in each of the Foundry Products including, but not limited to, a specific identification of the chips that perform switching and/or routing functions such as packet classification, filtering, encapsulation, and/or forwarding.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 76:**

Foundry objects to the phrase "switching and/or routing functions such as packet classification, filtering, encapsulation, and/or forwarding" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation,

or for which the burden or expense of the proposed discovery outweighs the likely benefit.

Plaintiff has not identified the accused features of Foundry products and the basis for its

infringement allegations.  Without an identification of the accused features of the products,

Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request

as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to

this request to the extent that it seeks information protected by the attorney-client privilege

and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set

forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry

will search for, and if found, produce relevant, non-privileged, non-confidential documents since

June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 77:**

All documents and tangible things in your possession, custody, or control that constitute

functional, hardware, and/or architectural specifications for any of the chips that perform

switching and/or routing functions in any of the Foundry Products such as packet classification,

filtering, encapsulation, and/or forwarding.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 77:**

Foundry objects to the phrases "functional, hardware, and/or architectural specifications"

and "packet classification, filtering, encapsulation, and/or forwarding" as vague and ambiguous.

Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not

reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the

Request includes documents which are not relevant to any claim or defense of any party to this

litigation, or for which the burden or expense of the proposed discovery outweighs the likely

benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its

infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 78:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to any comparisons or contrasts drawn between the functionality, architectures, and/or configurability of Foundry's IronCore, JetCore, and/or Terathon chipsets.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 78:**

Foundry objects to the phrase "comparisons or contrasts drawn between the functionality, architectures, and/or configurability" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to

admissible and/or relevant information.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 79:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect the architecture and/or functional design of any of the chips and/or chipsets used in any of the Foundry Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 79:**

Foundry objects to the phrase "architecture and/or functional design" as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations.  Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry

will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 80:**

All documents and tangible things in your possession, custody, or control that constitute or reflect any indemnifications that Foundry has been provided by any supplier of chips used in any of the Foundry Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 80:**

Foundry objects to the phrase "any indemnifications" and "any supplier of chips" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine. Foundry objects to this request as premature as it seeks documents related to damages that have been portioned to Phase II of discovery.

**REQUEST FOR PRODUCTION NO. 81:**

All documents and tangible things in your possession, custody, or control that constitute or reflect any non-disclosure agreements that Foundry has entered into with any supplier of chips used in any of the Foundry Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 81:**

Foundry objects to the phrase "non-disclosure agreements" and "any supplier of chips" as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations.  Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to this request to the extent it requires the disclosure of confidential and/or proprietary information.

**REQUEST FOR PRODUCTION NO. 82:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) sufficient to identify by name and version number the operating system software that has run in each of the Foundry Products at any and all times during the Damages Period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 82:**

Foundry objects to the phrase "operating system software" as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely

benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations.  Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

## REQUEST FOR PRODUCTION NO. 83:

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) sufficient to identify where within each of the Foundry Products its operating system software physically resides.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 83:

Foundry objects to the phrase "operating system software physically resides" as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations.  Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant

information.  Foundry objects to this request to the extent that it seeks information protected by

the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set

forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry

will search for, and if found, produce relevant, non-privileged, non-confidential documents since

June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 84:**

All documents and tangible things in your possession, custody, or control (including

Foundry Technical Documents) sufficient to identify what memory devices are contained in each

of the Foundry Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 84:**

Foundry objects to the phrase "memory devices are contained" as vague and ambiguous.

Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not

reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the

Request includes documents which are not relevant to any claim or defense of any party to this

litigation, or for which the burden or expense of the proposed discovery outweighs the likely

benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its

infringement allegations.  Without an identification of the accused features of the products,

Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request

as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to

this request to the extent that it seeks information protected by the attorney-client privilege

and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set

forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry

will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 85:**

All documents and tangible things in your possession, custody, or control (including Foundry Technical Documents) that reflect, concern, or refer or relate to whether, when, or how Foundry's network management software -- including its IronView Network Management software -- can be used to configure VLAN, IGMP snooping, and/or MPLS features contained in any of the Foundry Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 85:**

Foundry objects to the phrase "configure VLAN, IGMP snooping, and/or MPLS features" as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations.  Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

## REQUEST FOR PRODUCTION NO. 86:

All documents and tangible things in your possession, custody, or control that constitute, reflect, concern, or refer or relate to any constructions or interpretations of any claim(s) of any of the Enterasys Patents.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 86:

Foundry objects to the phrase "constructions or interpretations" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine. Foundry further objects to this Request on the grounds that it is premature.

## REQUEST FOR PRODUCTION NO. 87:

All documents and tangible things in your possession, custody, or control that constitute, reflect, concern, or refer or relate to any communications, statements, or opinions of your officers, directors, employees, or consultants concerning the actual or potential infringement or non-infringement; validity or invalidity; or enforceability or unenforceability of any claim(s) of any of the Enterasys Patents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 87:**

Foundry objects to the phrases "communications, statements, or opinions of your officers, directors, employees, or consultants" and "actual or potential infringement or non-infringement; validity or invalidity; or enforceability or unenforceability" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry further objects to this request on the grounds that it is premature, as the court has bifurcated discovery on these issues until a later date. Foundry objects to this request to the extent it requires the disclosure of confidential and/or proprietary information.

**REQUEST FOR PRODUCTION NO. 88:**

All documents and tangible things in your possession, custody, or control that constitute, reflect, concern, or refer or relate to any communications, statements, or opinions of any third parties concerning the actual or potential infringement or non-infringement, validity or invalidity; or enforceability or unenforceability of any claim(s) of the Enterasys Patents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 88:**

Foundry objects to the phrases "communications, statements, or opinions any third parties" and "actual or potential infringement or non-infringement; validity or invalidity; or

enforceability or unenforceability" as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations.  Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.  Foundry further objects to this request on the grounds that it is premature as the Court has bifurcated discovery on these issues until a later date..

## REQUEST FOR PRODUCTION NO. 89:

All documents and tangible things in your possession, custody, or control that constitute, reflect, concern, or refer or relate to any legal opinion (including opinion letters or memoranda) concerning the actual or potential infringement or non-infringement; validity or invalidity; or enforceability or unenforceability of any claim(s) of any of the Enterasys Patents.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 89:

Foundry objects to the phrases "legal opinion" and "actual or potential infringement or non-infringement; validity or invalidity; or enforceability or unenforceability" as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery

outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry

products and the basis for its infringement allegations. Without an identification of the accused

features of the products, Foundry cannot fully assess the relevance of this request, and on that

basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant

information. Foundry objects to this request to the extent that it seeks information protected by

the attorney-client privilege and/or the work product doctrine. Foundry further objects to this

request on the grounds that it is premature because the Court has bifurcated discovery on these

issues until a later date.

**REQUEST FOR PRODUCTION NO. 90:**

      All documents and tangible things in your possession, custody, or control that constitute,

reflect, concern, or refer or relate to comparisons or contrasts drawn between the VLAN

Standards, the IGMP Standards, or the MPLS Standards on the one hand, and the scope of any

claim(s) of any of the Enterasys Patents on the other hand.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 90:**

      Foundry objects to the phrase "comparisons or contrasts drawn" as vague and ambiguous.

Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not

reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the

Request includes documents which are not relevant to any claim or defense of any party to this

litigation, or for which the burden or expense of the proposed discovery outweighs the likely

benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its

infringement allegations. Without an identification of the accused features of the products,

Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request

as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to

this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

## REQUEST FOR PRODUCTION NO. 91:

All documents and tangible things in your possession, custody, or control that constitute, reflect, concern, or refer or relate to claim constructions that Foundry has served or filed in any other patent infringement litigations to which it has been a party that involve patents covering networking-related devices or methods.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 91:

Foundry objects to the phrases "litigations" and "networking-related devices or methods" as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations.  Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

**REQUEST FOR PRODUCTION NO. 92:**

All documents and tangible things in your possession, custody, or control that constitute, reflect, concern, or refer or relate to any inventive activity, public knowledge or use, patent, printed publication, or other prior art reference that you contend invalidates -- whether standing alone or in combination with any other reference -- any claim(s) of any of the Enterasys Patents within the meaning of 35 U.S.C. §§ 102 or 103.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 92:**

Foundry objects to the phrase "inventive activity, public knowledge or use, patent, printed publication" as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations.  Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 93:**

All documents and tangible things in your possession, custody, or control that constitute, reflect, concern, or refer or relate to any patentability or state of the art search, literature search, patentability or state of the art opinion, validity search, validity opinion, enforceability opinion, and/or infringement opinion related to the alleged inventions described in the Enterasys Patents or any counterparts or continuations thereof, including, but not limited to, all search reports and opinions, and all patents, publications, and other references identified in such searches and opinions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 93:**

Foundry objects to the phrase "patentability or state of the art search, literature search, patentability or state of the art opinion, validity search, validity opinion, enforceability opinion, and/or infringement opinion" and "alleged invention" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine. To the extent that this request seeks opinions of counsel, this request is premature, as the Court has bifurcated discovery on that issue until a later date.

**REQUEST FOR PRODUCTION NO. 94:**

All documents and tangible things in your possession, custody, or control that constitute, reflect, concern, or refer or relate to references cited by or to the USPTO or any foreign patent office during the prosecution of any of the Enterasys Patents or any counterparts or continuations thereof.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 94:**

Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations.  Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 95:**

All documents and tangible things in your possession, custody, or control that constitute, reflect, concern, or refer or relate to any secondary consideration of non-obviousness (including,

but not limited to, commercial success, long felt need, and industry acquiescence) of the subject matter of any claim(s) of any of the Enterasys Patents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 95:**

Foundry objects to the phrase "secondary consideration of non-obviousness" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 96:**

All documents and tangible things in your possession, custody, or control upon which Defendant intends to rely to establish the level of ordinary skill in the art to which any of the Enterasys Patents pertain.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 96:**

Foundry objects to the phrase "level of ordinary skill in the art to which any of the Enterasys Patents pertain" as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations.  Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 97:**

All documents and tangible things in your possession, custody, or control sufficient to establish when and how Foundry first became aware of the existence of each of the Enterasys Patents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 97:**

Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to

this litigation, or for which the burden or expense of the proposed discovery outweighs the likely

benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its

infringement allegations. Without an identification of the accused features of the products,

Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request

as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to

this request to the extent that it seeks information protected by the attorney-client privilege

and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set

forth above which are incorporated herein by reference, Foundry responds as follows: Foundry

will search for, and if found, produce relevant, non-privileged, non-confidential documents since

June 2005 to present from which information requested by this request may be obtained.

## REQUEST FOR PRODUCTION NO. 98:

All documents and tangible things in your possession, custody, or control that constitute

any unpublished patent applications assigned to Foundry, and/or portions of their prosecution

histories, that reference or cite to any of the Enterasys Patents.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 98:

Foundry objects to the phrase "unpublished patent applications" as vague and ambiguous.

Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not

reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the

Request includes documents which are not relevant to any claim or defense of any party to this

litigation, or for which the burden or expense of the proposed discovery outweighs the likely

benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its

infringement allegations. Without an identification of the accused features of the products,

Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request

as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to
this request to the extent that it seeks information protected by the attorney-client privilege
and/or the work product doctrine.

**REQUEST FOR PRODUCTION NO. 99:**

All documents and tangible things in your possession, custody, or control that constitute
or reflect any explanations, instructions, directions, or training that Foundry has provided or
made available to any of its customers pertaining to how to install, use, configure, and/or repair
any of the VLAN, IGMP snooping, and/or MPLS features contained in any of the Foundry
Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 99:**

Foundry objects to the phrase "explanations, instructions, directions, or training" and
"install, use, configure, and/or repair any of the VLAN, IGMP snooping, and/or MPLS features"
as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly
burdensome, harassing and not reasonably calculated to lead to the discovery of admissible
information.  By its overbreadth, the Request includes documents which are not relevant to any
claim or defense of any party to this litigation, or for which the burden or expense of the
proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused features
of Foundry products and the basis for its infringement allegations.  Without an identification of
the accused features of the products, Foundry cannot fully assess the relevance of this request,
and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or
relevant information.  Foundry objects to this request to the extent that it seeks information
protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set
forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry

will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 100:**

All documents and tangible things in your possession, custody, or control that constitute, reflect, concern, or refer or relate to any information known to Foundry concerning how in practice any of its customers have used or configured any of the VLAN, IGMP snooping, and/or MPLS features contained in any of the Foundry Products that such customers have purchased or licensed.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 100:**

Foundry objects to the phrase "any information known to Foundry" and "or configured any of the VLAN, IGMP snooping, and/or MPLS features" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry

will search for, and if found, produce relevant, non-privileged, non-confidential documents since

June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 101:**

All documents and tangible things in your possession, custody, or control that constitute

or reflect indemnifications provided by Foundry to any of its customers against potential patent

infringement claims brought by third parties targeting the use of any of the Foundry Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 101:**

Foundry objects to the phrase "that constitute or reflect indemnifications" and "against

potential patent infringement claims brought by third parties" as vague and ambiguous.  Foundry

objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably

calculated to lead to the discovery of admissible information.  By its overbreadth, the Request

includes documents which are not relevant to any claim or defense of any party to this litigation,

or for which the burden or expense of the proposed discovery outweighs the likely benefit.

Foundry objects to this request to the extent that it seeks information protected by the attorney-

client privilege and/or the work product doctrine.  Plaintiff has not identified the accused features

of Foundry products and the basis for its infringement allegations.  Without an identification of

the accused features of the products, Foundry cannot fully assess the relevance of this request,

and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or

relevant information.

**REQUEST FOR PRODUCTION NO. 102:**

All documents and tangible things in your possession, custody, or control sufficient to

identify each of Foundry's customers and which of the Foundry Products that each such

customer has purchased or licensed.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 102:**

Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine. Foundry objects to this request as premature as it seeks documents related to damages that have been portioned to Phase II of discovery.

**REQUEST FOR PRODUCTION NO. 103:**

All documents and tangible things in your possession, custody, or control sufficient to identify the first date of sale (and if applicable the last date of sale) of each of the Foundry Products that have been sold or licensed at any or all times during the Damages Period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 103:**

Foundry objects to the phrase "the first date of sale (and if applicable the last date of sale)" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information

protected by the attorney-client privilege and/or the work product doctrine. Foundry objects to this request as premature as it seeks documents related to damages that have been portioned to Phase II of discovery.

**REQUEST FOR PRODUCTION NO. 104:**

All documents and tangible things in your possession, custody, or control that constitute or reflect any standard or extended hardware warranties and/or software warranties that Foundry has provided to its customers that cover any of the Foundry Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 104:**

Foundry objects to the phrase "standard or extended" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine. Foundry objects to this request as premature as it seeks documents related to damages that have been portioned to Phase II of discovery.

**REQUEST FOR PRODUCTION NO. 105:**

All documents and tangible things in your possession, custody, or control that constitute any standard or extended service contracts that Foundry has provided to its customers that cover any of the Foundry Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 105:**

Foundry objects to the phrase "standard or extended service contracts" as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations.  Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine. Foundry objects to this request as premature as it seeks documents related to damages that have been portioned to Phase II of discovery.

**REQUEST FOR PRODUCTION NO. 106:**

All documents and tangible things in your possession, custody, or control that constitute, reflect, concern, or refer or relate to any tests or customer demonstrations undertaken by Foundry in which the VLAN, IGMP snooping, and/or MPLS features contained in any of the Foundry Products have been used within a network environment.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 106:**

Foundry objects to the phrases "tests or customer demonstrations," "features," and "network environment" as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not

relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

## REQUEST FOR PRODUCTION NO. 107:

All documents and tangible things in your possession, custody, or control sufficient to identify which of the Foundry Products that Foundry itself has used in the networks employed at any of its own facilities.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 107:

Foundry objects to the phrases "networks employed at any of its own facilities" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that

basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

## REQUEST FOR PRODUCTION NO. 108:

All documents and tangible things in your possession, custody, or control that constitute, reflect, concern, or refer or relate to any VLAN Standards Activities undertaken by representatives of DEC, Cabletron, Enterasys, or Foundry.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 108:

Foundry objects to the phrases "activities undertaken in connection with the development, approval and/or issuance of the VLAN Standards" (in Enterasys' definition of VLAN Standards Activities) as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 109:**

All documents and tangible things in your possession, custody, or control that constitute, reflect, concern, or refer or relate to any IGMP Standards Activities undertaken by representatives of DEC, Cabletron, Enterasys, or Foundry.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 109:**

Foundry objects to the phrases "activities undertaken in connection with the development, approval and/or issuance of the IGMP Standards" (in Enterasys' definition of IGMP Standards Activities) as vague and ambiguous.  Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations.  Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry

will search for, and if found, produce relevant, non-privileged, non-confidential documents since

June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 110:**

All documents and tangible things in your possession, custody, or control that constitute,

reflect, concern, or refer or relate to any MPLS Standards Activities undertaken by

representatives of DEC, Cabletron, Enterasys, or Foundry.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 110:**

Foundry objects to the phrases "activities undertaken in connection with the

development, approval and/or issuance of the MPLS Standards" (in Enterasys' definition of

MPLS Standards Activities) as vague and ambiguous.  Foundry objects to this request as it is

overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the

discovery of admissible information.  By its overbreadth, the Request includes documents which

are not relevant to any claim or defense of any party to this litigation, or for which the burden or

expense of the proposed discovery outweighs the likely benefit.  Plaintiff has not identified the

accused features of Foundry products and the basis for its infringement allegations.  Without an

identification of the accused features of the products, Foundry cannot fully assess the relevance

of this request, and on that basis, objects to the request as irrelevant and not likely to lead to

admissible and/or relevant information.  Foundry objects to this request to the extent that it seeks

information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set

forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry

will search for, and if found, produce relevant, non-privileged, non-confidential documents since

June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 111:**

All documents and tangible things in your possession, custody, or control that constitute, reflect, concern, or refer or relate to any actual or potential efforts to design-around any claim(s) of any of the Enterasys Patents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 111:**

Foundry objects to the phrases "design-around any claim(s)" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 112:**

All documents and tangible things in your possession, custody, or control that constitute insurance policies that actually or potentially provide coverage to Foundry for any of the liabilities, costs, or expenses arising from this action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 112:**

Foundry objects to the phrases "insurance policies that actually or potentially provide coverage" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 113:**

All documents and tangible things in your possession, custody, or control that constitute, reflect, concern, or refer or relate to Foundry's policies or practices with respect to the retention, destruction, and/or disposition of documents and tangible things (including electronic data) at any time during the Damages Period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 113:**

Foundry objects to the phrases "Foundry's policies or practices" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing

and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 114:**

All documents and tangible things in your possession, custody, or control that constitute organizational charts or other documents from which it is possible to ascertain the identities, titles, and reporting relationships of all officers, directors, and engineering employees of Foundry at any and all times during the Damages Period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 114:**

Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its

infringement allegations.  Without an identification of the accused features of the products,

Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request

as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to

this request to the extent that it seeks information protected by the attorney-client privilege

and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set

forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry

will search for, and if found, produce relevant, non-privileged, non-confidential documents since

June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 115:**

All documents and tangible things in your possession, custody, or control relevant to

proving or disproving the affirmative defense asserted in your Answer that one or more claims of

the Enterasys Patents are invalid.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 115:**

Foundry objects to this request as it is overly broad, unduly burdensome, harassing and

not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth,

the Request includes documents which are not relevant to any claim or defense of any party to

this litigation, or for which the burden or expense of the proposed discovery outweighs the likely

benefit.  Plaintiff has not identified the accused features of Foundry products and the basis for its

infringement allegations.  Without an identification of the accused features of the products,

Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request

as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to

this request to the extent that it seeks information protected by the attorney-client privilege

and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 116:**

All documents and tangible things in your possession, custody, or control relevant to proving or disproving the affirmative defense asserted in your Answer that Enterasys is stopped from asserting certain of its claim constructions in this action as the result of any disclaimers or surrenders of subject matter made by the patentees when prosecuting any of the Enterasys Patents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 116:**

Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry

will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 117:**

All documents and tangible things in your possession, custody, or control relevant to proving or disproving the affirmative defense asserted in your Answer that Enterasys is barred from asserting infringement of one or more claims of the Enterasys Patents as the result of the patentees having committed prosecution laches.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 117:**

Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 118:**

All documents and tangible things in your possession, custody, or control relevant to proving or disproving the affirmative defense asserted in your Answer that Enterasys is barred from asserting infringement of one or more claims of the Enterasys Patents as the result of having unclean hands.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 118:**

Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its infringement allegations. Without an identification of the accused features of the products, Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request as irrelevant and not likely to lead to admissible and/or relevant information. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 119:**

All documents and tangible things in your possession, custody, or control relevant to proving or disproving the affirmative defense asserted in your Answer that Enterasys is barred

from asserting infringement of one or more claims of the Enterasys Patents pursuant to the principles of waiver and/or equitable estoppel.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 119:**

Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set forth above which are incorporated herein by reference, Foundry responds as follows: Foundry will search for, and if found, produce relevant, non-privileged, non-confidential documents since June 2005 to present from which information requested by this request may be obtained.

**REQUEST FOR PRODUCTION NO. 120:**

All documents and tangible things in your possession, custody, or control relevant to proving or disproving the affirmative defense asserted in your Answer that Foundry cannot be liable for infringement under 35 U.S.C. §§ 271(b) or (c) on grounds that some or all of the Foundry Products are capable of substantial non-infringing uses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 120:**

Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit. Plaintiff has not identified the accused features of Foundry products and the basis for its

-115-

infringement allegations.  Without an identification of the accused features of the products,

Foundry cannot fully assess the relevance of this request, and on that basis, objects to the request

as irrelevant and not likely to lead to admissible and/or relevant information.  Foundry objects to

this request to the extent that it seeks information protected by the attorney-client privilege

and/or the work product doctrine.

Subject to and without waiver of these Preliminary Statement and General Objections set

forth above which are incorporated herein by reference, Foundry responds as follows:  Foundry

will search for, and if found, produce relevant, non-privileged, non-confidential documents since

June 2005 to present from which information requested by this request may be obtained.

Dated:  April 3, 2006

DEFENDANT FOUNDRY NETWORKS, INC.

By Their Attorneys,

Steven M. Bauer
Jeremy P. Oczek
PROSKAUER ROSE LLP
One International Place
Boston, MA  02110-2600
Telephone:  (617) 526-9600
Facsimile:   (617) 526-9899

William L. Anthony, Jr.
I. Neel Chatterjee
Michael F. Heafey
Sanjeet K. Dutta
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 614-7400
Facsimile:   (650) 614-7401

**CERTIFICATE OF SERVICE**

I, Jeremy P. Oczek, hereby certify that on April 3, 2006, I caused the attached Foundry Networks, Inc.'s Responses and Objections to Plaintiff Enterasys Networks, Inc.'s First Set of Request for Production of Documents to be served by upon counsel of record for Enterasys Networks, Inc. as follows in accordance with the service agreement among the parties:

***Via First Class Mail and E-Mail:***

Christopher P. Sullivan, Esq.
Marc N. Henschke, Esq.
Alan E. McKenna, Esq.
Jeremy C. McDiarmid, Esq.
Robins, Kaplan, Miller & Ciresi LLP
800 Boylston Street, 25th Floor
Boston, MA  02199
E-mail:  cpsullivan@rkmc.com
E-mail:  mnhenschke@rkmc.com
E-mail:  aemckenna@rkmc.com
E-mail:  jcmcdiarmid@rkmc.com


_____
Jeremy P. Oczek

# Exhibit 5

# ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

800 BOYLSTON STREET
25TH FLOOR
BOSTON, MA 02199-7610
TEL: 617-267-2300 FAX: 617-267-8288
www.rkmc.com

ATTORNEYS AT LAW

MARC N. HENSCHKE
617-859-2784
mnhenschke@rkmc.com

May 1, 2006

*VIA E-MAIL (PDF ATTACHMENT)*

Jeremy P. Oczek, Esq.
Proskauer Rose, LLP
One International Place
Boston, MA 02110

Re: *Enterasys Networks v. Foundry Networks and Extreme Networks*
    *Civ. Act. No. 05-11298-DPW (D. Mass)*
    **Our File No.:  070610.0001**

Dear Jeremy:

Set forth below are what we view as the principal problems and deficiencies with the responses to Enterasys' first set of document requests that were served by Foundry on April 3, 2006. We request an immediate telephonic meet-and-confer in the hope that the parties can successfully resolve these issues without the need for judicial intervention. Please be advised, however, that in the event that these issues cannot be satisfactorily resolved, Enterasys will be left with no choice but to file a motion to compel with the Court.

## Deficiencies Relating To Foundry's General Responses

The following are problems and deficiencies that generally apply to most or all of Foundry's responses to Enterasys' first set of document requests.

First, in every response in which Foundry has agreed to produce documents, Foundry states that it will produce only those document that it deems to be "relevant," as opposed to producing the totality of *responsive* documents. In this regard, Enterasys has no way of knowing what unilateral and subjective determinations Foundry may be making about what it considers as "relevant." Accordingly, please describe in detail every instance in which Foundry is withholding otherwise responsive documents on grounds of their purported irrelevance, or alternatively confirm in writing that there are in fact no responsive documents being withheld by Foundry on this basis.

Second, throughout its responses, Foundry states that it will produce responsive documents only to the extent that they are "non-confidential" in nature. As you are doubtless aware, the parties are currently negotiating a Stipulated Protective Order Regarding The Treatment Of Confidential Information that will soon be filed with the Court. Please confirm in writing that upon the Court's entry of any such Protective Order, Foundry will *sua sponte* withdraw all of its confidentiality objections without the need for Enterasys to take any further action, and that thereafter Foundry will no longer continue to withhold any responsive documents on the basis of these confidentiality objections.

Jeremy P. Oczek, Esq.
May 1, 2006
Page 2

Third, please confirm in writing that upon the Court's entry of the above-referenced Protective Order, Foundry will also *sua sponte* withdraw its current objections to producing any responsive documents or information that may be subject to confidentiality agreements or protective orders with third parties other than the litigants in this case.

Fourth, there is *absolutely no good faith basis* for Foundry's asserted refusal throughout its responses to produce any responsive documents or information generated prior to the June 21, 2005 date on which this case was filed. Indeed, even were Foundry to (wrongly) take the position that Enterasys is not entitled to recover damages on any pre-suit sales of accused Foundry products, that would in no way logically justify a refusal to produce responsive documents or information generated prior to the time when suit was filed. For example, if documents created in the 2003 addressed relevant technologies later used in accused Foundry products sold subsequent to June 21, 2005, it is undeniable that such documents would have to be produced.

More egregiously still, Foundry improperly asserts this same "filing date" objection with respect to Enterasys document requests that are not even directed to accused Foundry products. By way of limited example, in response to Request No. 2 which targets documents in Foundry's possession that concern the patents-in-suit or their prosecution histories, it is irrefutable that the production of such documents is required irrespective of whether they were generated *prior to* or after June 21, 2005. Accordingly, please confirm in writing that Foundry is now agreeing to withdraw in its entirety its objections to producing otherwise responsive documents or information created prior to the time when suit was filed, and that Foundry will no longer continue to withhold responsive documents on this basis.

Fifth, in nearly all of its responses, Foundry asserts an "irrelevance" objection on grounds that Enterasys purportedly "has not identified the accused features of Foundry products." See, e.g., (Response Nos. 10-101, 106-120). As you must be aware, however, Enterasys has in fact expressly identified the accused features of Foundry products in its first supplemental response to Foundry's interrogatories served on April 26, 2006. Accordingly, please confirm in writing that Foundry is now agreeing to withdraw this particular irrelevance objection, and that Foundry will no longer continue to withhold any responsive documents based upon the assertion that it is unaware of what product features Enterasys is accusing of infringement.

Sixth, Foundry is apparently refusing to provide any documents relating to the categories of industry standards specifically identified in Enterasys' document requests. According to Foundry, these document requests are fatally "vague," "ambiguous," and "irrelevant" absent Enterasys clarifying how such standards may relate to the patents-in-suit. By way of clarification, Enterasys hereby asserts that significant overlap appears to exist between the subject matter of the '205 patent and the specified "MPLS Standards;" between the '665, '995, and '236 patents and the specified "VLAN Standards;" and between the '022 patent and the specified "IGMP Standards." In view of this clarification, please confirm in writing that Foundry is now agreeing to withdraw its objections to producing standards-related documents,

Jeremy P. Oczek, Esq.
May 1, 2006
Page 3

and that Foundry will no longer continue to withhold any responsive standards-related materials on the basis of these vagueness, ambiguity, or irrelevancy objections.

Seventh, Foundry objects to virtually every technical term used throughout Enterasys' document requests as being unintelligibly "vague and ambiguous." Foundry raises these objections despite the facts that these terms are precisely defined in the "Definitions" section of Enterasys' document requests, are commonly used and understood in the networking industry, and are likewise employed by Foundry itself in its own technical and product marketing literature. Please describe in detail every instance in which Foundry is withholding potentially responsive documents on grounds that it is unsure as to the meaning of any technical term used in Enterasys' document requests, and we will thereafter provide you with whatever further explanations may be necessary to allow Foundry to make responsiveness determinations.[1] Alternatively, please confirm in writing that Foundry is not in fact withholding any potentially responsive documents owing to its purported uncertainty as to the meaning of any technical terms used by Enterasys.

Eighth, Foundry has *absolutely no good faith basis* for refusing to at least identify -- and to list on a privilege log -- all responsive documents for which it is asserting privilege that relate to any pre-filing investigation concerning Enterasys, the patents-in-suit, and/or other related patents. Indeed, unless these documents are identified by Foundry, Enterasys would have no way of learning that they even exist, much less have the opportunity to assess whether Foundry's assertion of privilege with respect thereto is legitimate. Accordingly, please confirm in writing that Foundry is now agreeing to properly identify and list on a privilege log all responsive documents relating to any pre-suit investigations.

Ninth, Foundry appears to be taking the position that it is refusing to produce any responsive documents that may be located at one of its "parent companies, affiliates or subsidiaries." Please be advised that there are many circumstances in which the law would consider such documents to be within Foundry's own possession, custody, or control such that their production would be required. Accordingly, in order for Enterasys to assess whether those circumstances apply here, please describe in detail every instance in which Foundry is or may be withholding otherwise responsive documents on grounds that they are located at a parent company, affiliate, or subsidiary. Alternatively, please confirm in writing that no responsive documents are being withheld by Foundry on this basis.

## Deficiencies Relating To Foundry's Specific Responses

The following are further problems and deficiencies in addition to the general ones described above that apply to certain of Foundry's specific responses to Enterasys' first set of document requests.

---

[1] Please be advised that if Foundry unreasonably persists in claiming not to understand the meaning of precisely defined and commonly understood technical terms relevant to the networking industry, we will notice a Rule 30(b)(6) deposition directed at testing the veracity of this asserted lack of comprehension.

Jeremy P. Oczek, Esq.
May 1, 2006
Page 4

## Response No. 4

Without any good faith basis, Foundry refuses to produce materials responsive to Request No. 4 which calls for documents that refer or relate to the existence or subject matter of the present action. It goes without saying that nothing could be more self-evidently relevant to the present action than documents that concern the existence or subject matter of the present action. To the extent that Foundry is claiming that the phrase "subject matter of the present action" is vague and ambiguous, Enterasys hereby states that whenever that phrase appears in its document requests, it is meant to refer to any claim or defense asserted by a party in this case. Please confirm in writing that Foundry is now agreeing to produce all documents in its possession, custody, or control responsive to Request No. 4.

## Response No. 8

Without any good faith basis, Foundry refuses to produce any Joint Defense Agreement ("JDA") that it may have executed in this case with co-defendant Extreme responsive to Request No. 8. As a matter of law, JDAs do not give rise to an independent basis for privilege, and are not themselves privileged. Moreover, Enterasys has the right to review the terms of any such JDA to assess whether or not Foundry may have waived its ability to assert attorney-client or work product privileges with respect to materials that it may have shared with Extreme in the course of this litigation. Please confirm in writing that Foundry is now agreeing to produce any JDA in its possession, custody, or control responsive to Request No. 8.

## Response No. 81

Without any good faith basis, Foundry refuses to produce any Non-Disclosure Agreements ("NDAs") responsive to Request No. 81 that it may have executed with suppliers of the chips used in its accused products. As noted above, given the fact that Foundry has asserted a general objection to producing responsive documents to the extent that they may be subject to such NDAs, Enterasys has every right to review the terms of these NDAs in order to assess the legitimacy of Foundry's general objection. Please confirm in writing that Foundry is now agreeing to produce all NDAs in its possession, custody, or control responsive to Request No. 81.

## Response Nos. 87 and 88

Without any good faith basis, Foundry refuses to produce any communications, statements, or opinions made by its officers, directors, employees, consultants, or third parties concerning the actual or potential infringement, validity, or enforceability of the patents-in-suit in response to Request Nos. 87 and/or 88. The relevance of such documents cannot reasonably be questioned given that they would relate directly to the claims and defenses raised by the parties in this case. Indeed, Foundry has acknowledged their relevance by asking for the same categories of documents in its own document requests served on Enterasys. See, e.g., (Foundry Document Request Nos. 9, 20, 32-33, 40, 106, 142, 256, 266-67). Moreover, Foundry's suggestion that these documents would be outside the scope of Phase I fact discovery is

Jeremy P. Oczek, Esq.
May 1, 2006
Page 5

demonstrably incorrect because Phase I by its express terms covers "non-willful infringement, invalidity, and unenforceability issues." Please confirm in writing that Foundry is now agreeing to produce all documents in its possession, custody, or control responsive to Request Nos. 87 and 88.

**Response No. 91**

Without any good faith basis, Foundry refuses to disclose claim constructions for networking-related patents responsive to Request No. 91 that it has served or filed in other litigations. These claim constructions would be relevant to the extent that they cover subject matter that overlaps with any of the patents-in-suit. Moreover, such materials would be relevant to assessing Foundry's assertions throughout its discovery responses that it is unable to comprehend the meanings of numerous technical terms commonly used in the networking industry. Please confirm in writing that Foundry is now agreeing to produce all documents in its possession, custody, or control responsive to Request No. 91.

**Response No. 98**

Without any good faith basis, Foundry refuses to produce any of its unpublished patent applications that reference or cite to any of the patents-in-suit in response to Request No. 98. By helping to establish the dates by which Foundry knew of the existence of the patents-in-suit, these applications could clearly be relevant to Enterasys' allegations in this case of infringement by inducement and/or contributory infringement. Moreover, they could likewise be relevant to infringement and/or invalidity issues to the extent that Foundry has in any way interpreted or commented upon the scope of any of the patents-in-suit as part of the prosecution histories for its unpublished patent applications. Please confirm in writing that Foundry is now agreeing to produce all documents in its possession, custody, or control responsive to Request No. 98.

**Response No. 101**

Without any good faith basis, Foundry refuses to produce any indemnities that it may have provided to its customers relating to their use of Foundry products in response to Request No. 101. These documents could well be relevant to Phase I fact discovery issues by providing insight into what Foundry views as the relationship between the products that it sells or licenses and any allegations of direct infringement made against its customers by third parties such as Enterasys. Please confirm in writing that Foundry is now agreeing to produce all indemnities in its possession, custody, or control responsive to Request No. 101.

**Response No. 102**

Without any good faith basis, Foundry refuses to produce documents sufficient to identify its customers, and the accused Foundry products that each of these customers has purchased or licensed, in response to Request No. 102. Such documents would clearly be relevant to infringement issues within the scope of Phase I fact discovery. Indeed, because Enterasys is charging Foundry with infringement by inducement and/or with contributory

Jeremy P. Oczek, Esq.
May 1, 2006
Page 6

infringement under several of the asserted patent claims, it will be necessary to establish that Foundry's customers are direct infringers relative to these asserted claims. Obviously, it will not be possible for Enterasys to prove direct infringement by Foundry's customers absent knowing the identities of those customers and the Foundry products that they are using. Please confirm in writing that Foundry is now agreeing to produce all documents in its possession, custody, or control responsive to Request No. 102. Alternatively, if Foundry intends to persist in withholding responsive materials, please provide us with a written stipulation in which Foundry acknowledges that all of its customers are direct infringers to the extent that any of Foundry's accused products are found to embody, or to be capable of practicing, any of the inventions covered by any of Enterasys' asserted patent claims.

**Response No. 103**

Without any good faith basis, Foundry refuses to produce documents sufficient to establish the first and last sales dates of each of its accused products in response to Request No. 103. Such documents are clearly relevant to infringement issues within the scope of Phase I fact discovery because they will allow for determinations as to which of these products have been sold during the relevant damages period, and accordingly which of these products will need to be the subject of claim construction charts prepared by the parties and infringement rulings made by the Court. Please confirm in writing that Foundry is agreeing to produce all documents in its possession, custody, or control responsive to Request No. 103.

Please let us know the soonest dates and times that you -- or the appropriate point person at Proskauer or Orrick -- are available to conduct a telephonic meet-and-confer to address the issues raised by this letter. I am generally available to speak with you today or any other day this week. Time is of the essence, and we note that considerable delay in resolving these issues has already been occasioned by your earlier refusal to meet-and-confer with me during our April 20th telephone call in which you asserted your "unpreparedness" and demanded that all of Enterasys' discovery concerns first be set forth in writing.

We look forward to hearing from you.

Sincerely,

Marc N. Henschke

MNH:nah
cc:    I. Neel Chatterjee, Esq. (*VIA FIRST CLASS MAIL & EMAIL*)
       K. Mudurian (*VIA EMAIL*)
       Y. Steinberg (*VIA EMAIL*)

35031050

# Exhibit 6

One International Place
Boston, MA  02110-2600
Telephone 617.526.9600
Fax 617.526.9899

NEW YORK
LOS ANGELES
WASHINGTON
BOCA RATON
NEWARK
NEW ORLEANS
PARIS

Jeremy P. Oczek
Attorney at Law

Direct Dial 617-526-9651
joczek@proskauer.com

# PROSKAUER ROSE LLP

April 14, 2006

**<u>Via E-mail</u>**

Marc N. Henschke, Esq.
Robins, Kaplan, Miller & Ciresi LLP
800 Boylston Street, 25th Floor
Boston, MA  02199

**Re:   Enterasys Networks, Inc. v. Foundry Networks, Inc.** *et al.*
      **Civil Action No. 05-11928-DPW**

Dear Marc:

This concerns Enterasys' responses and objections to Foundry's First Set of Interrogatories, in which Enterasys only provided some answers to three of the eleven interrogatories and refused to: 1) identify the claims being asserted against Foundry; 2) identify the Foundry products being accused of infringement; or 3) state what Enterasys believes are the priority dates for the patents-in-suit.  Enterasys has stated that such Interrogatories are "premature" and that it will not respond to these Interrogatories until "on or after July 17, 2006." (*See* Responses Nos. 1-2, 4-6.)

Judge Woodlock made clear at the November 3, 2005 hearing that Defendants would be able to propound interrogatories regarding Enterasys' infringement contentions *before* the July 17, 2006 deadline for Enterasys to serve claim construction charts (*See* 11-30-2006 Tr. at 18-19):

> MS. ELSON:      . . . And, so, we'd like to simply serve interrogatories asking those questions and they can tell us what their contentions are, their theories of infringement.
>
> THE COURT:      What prevents you from that here?
>
> MS. ELSON:      Well, if we can do that as well, then that's fine, Your Honor. My only concern --
>
> THE COURT:      I'm not going to -- I won't get into the specifics, I don't think, of the way you conduct your discovery with the exception of the claim construction charts which I think are, on balance, a pretty good idea.  If you want to propound interrogatories during that time period, go ahead.  I don't see that as a problem.

**PROSKAUER ROSE LLP**

Marc N. Henschke, Esq.
April 14, 2006
Page 2

Enterasys has stated that it "first formed the belief that Foundry products were infringing the patents-in-suit in March of 2004 when it was presented with the results of a detailed pre-suit investigation performed by outside counsel that included both claim construction and infringement analysis" (*see* Response No. 3). There is no basis to refuse now to tell Foundry what claims are being asserted against Foundry, or what Foundry products are accused of infringement. Without this information, there is no way to frame the issues in this case. *See, e.g., Network Caching Technologies, L.L.C. v. Novell Inc.*, 67 U.S.P.Q.2d 1034 (N.D. Cal. 2002) (staying all discovery in the action until plaintiff served adequate infringement contentions).

We also have other matters that we take issue with, including the total failure by Enterasys to produce any documents and Enterasys's failures to respond to any other interrogatories.

We need to meet and confer to discuss Enterasys' interrogatories responses. We have no opportunity for delay on this, and are prepared to file a motion on this if we cannot reach an immediate agreement. Can we discuss on Tuesday morning, at 10 a.m.?

Sincerely,

Jeremy P. Oczek

# Exhibit 7

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

_____
                                        )

ENTERASYS NETWORKS, INC.,          )        Civil Action No: 05-CV-11298 (DPW)
                                          )

                Plaintiff,         )

                                          )

v.                                           )

                                          )

FOUNDRY NETWORKS, INC.,           )

                                          )

                Defendant.    )
_____ )

**PLAINTIFF ENTERASYS NETWORKS, INC.'S FIRST SUPPLEMENTAL**
**RESPONSES AND OBJECTIONS TO DEFENDANT FOUNDRY NETWORKS, INC.'S**
**FIRST SET OF INTERROGATORIES**

       Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Enterasys

Networks, Inc. ("Enterasys" or "Plaintiff") hereby supplements and corrects its initial responses

and objections to the First Set Of Interrogatories served by Defendant Foundry Networks, Inc.

("Foundry" or "Defendant") on or about March 14, 2006.

**GENERAL RESPONSE**

       Enterasys, based upon its current knowledge, understanding, and belief concerning the

information available to it as of the date on which these Responses are made, responds and

objects as set forth below to Foundry's First Set of Interrogatories.  These Responses, while

based on diligent investigation by Enterasys and its counsel, reflect only the current state of

Enterasys' knowledge, understanding, and belief respecting the matters about which inquiry was

made.  Enterasys has not completed its investigation of the facts relating to this case, its

discovery in this action, nor its preparation for trial.  As this action proceeds, Enterasys

anticipates that further facts may be discovered, and without in any way obligating itself to do so,

Enterasys reserves the right to modify or supplement its Responses with such pertinent information as it may subsequently discover. Furthermore, these Responses are given without prejudice to using or relying upon subsequently discovered information at trial, nor using or relying upon information omitted from these Responses as a result of mistake, error, oversight or inadvertence. Enterasys further reserves the right to produce additional facts and evidence at trial, and to object on appropriate grounds to the introduction of any evidence included in these Responses.

Specific objections to an interrogatory, part, or subpart thereof are made on an individual basis in Enterasys' Responses below. In addition to those specific objections, Enterasys objects generally as follows:

## GENERAL OBJECTIONS

1.     Enterasys objects to the "Instructions" and "Definitions" contained or incorporated into Foundry's interrogatories insofar as they seek to impose obligations beyond those set forth in the Federal Rules of Civil Procedure or the Local Rules Of The United States District Court For The District Of Massachusetts.

2.     Enterasys objects to each of the interrogatories propounded by Foundry, and to each part and subpart thereof, to the extent that they seek information protected by the attorney-client privilege or the work product doctrine. The specific objections stated below on the grounds of attorney-client privilege and/or the work product doctrine in no way limit the generality of this objection. Nothing contained in these Responses is intended to be or should be considered a waiver of any attorney-client privilege, work product protection, privacy right, trade secret or confidential information protection, or any other applicable privilege or doctrine. To the extent that any interrogatory, part, or subpart thereof may be construed as calling for

disclosure of information protected by such privileges or doctrines, a continuing objection to each and every such interrogatory, part, and subpart is hereby imposed.

3.    Enterasys objects to each of the interrogatories propounded by Foundry insofar as they seek information that is neither relevant to a claim or a defense of a party herein, nor reasonably calculated to lead to the discovery of admissible evidence.

4.    Enterasys objects to each of the interrogatories propounded by Foundry insofar as they seek information that, by reason of public filings or otherwise, is already in Foundry's possession or is readily accessible to Foundry.

5.    Enterasys objects to each of the interrogatories propounded by Foundry insofar as they are redundant, overlapping, and duplicative of other discovery Foundry is seeking in this case and are therefore burdensome, oppressive, and annoying.

6.    Enterasys objects to each of the interrogatories propounded by Foundry insofar as they are vague, ambiguous, or unintelligible.

7.    Enterasys objects to the "Definitions" incorporated into Foundry's interrogatories insofar as they purport to define the term "ENTERASYS PATENTS" to include patents that have no familial relationship with any of the patents-in-suit and merely "cite" to one or more of the patents-in-suit.

8.    Enterasys objects to the "Definitions" incorporated into Foundry's interrogatories insofar as they purport to define the term "INDUSTRY STANDARD" to include "any standard or RFC associated with data networking technology," thereby implicating standards or RFCs that are not directly relevant to one or more of the inventions disclosed in the patents-in-suit. Enterasys has previously identified the standards and RFCs that it believes to be of direct

relevance in the "Definitions" section provided in its own set of document requests served upon Foundry on March 3, 2006.

9.      Enterasys objects to the "Instructions" contained in Foundry's interrogatories insofar as they purport to require the production of a privilege log with a level of detail which exceeds that mandated by the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Massachusetts.

**SPECIFIC RESPONSES AND OBJECTIONS**

Enterasys hereby incorporates its General Response and General Objections set forth above into its Specific Responses and Objections set forth below.

**INTERROGATORY NO. 1:**

Separately identify each FOUNDRY PRODUCT that ENTERASYS contends infringes any of the PATENTS-IN-SUIT, by name, product number, and/or description, and for each such product, include the specific claims that are allegedly infringed, and whether that alleged infringement is direct, contributory and/or by inducement.

**RESPONSE TO INTERROGATORY NO. 1:**

Enterasys objects to this Interrogatory on grounds that it calls for information that is protected from disclosure by the attorney-client privilege and/or by the work product doctrine; that it is overly broad, unduly burdensome, vague, and ambiguous; and that it seeks information neither relevant to a claim or defense of a party nor reasonably calculated to lead to the discovery of admissible evidence.

Enterasys further objects to this Interrogatory -- particularly when read in conjunction with Interrogatory No. 2 below -- as contrary to the Court's Scheduling Order entered in this case on November 18, 2005 because it purports to require that Enterasys either actually or effectively

provide detailed claim construction charts identifying asserted claims and accused products at this premature juncture of the case.  Consistent with that Scheduling Order, Enterasys is not required to, and accordingly will not, provide detailed claim construction charts or their equivalents until July 17, 2006.

Subject to and without waiving its objections, Enterasys states that it is, and will be, asserting at least the following patent claims in this case:

Claims 1, 5, 20 and 21 of U.S. Patent No. 5,251,205 (the "'205 patent").

Claims 1 and 10 of U.S. Patent No. 5,390,173 (the "'173 patent").

Claims 1 and 4 of U.S. Patent No. 6,128,665 (the "'665 patent").

Claims 1 and 25 of U.S. Patent No. 6,147,995 (the "'995 patent").

Claims 1, 6, 14 and 20 of U.S. Patent No. 6,539,022 (the "'022 patent").

Claims 1 and 15 of U.S. Patent No. 6,560,236 (the "'236 patent").

Enterasys expressly reserves the right to add additional asserted claims to the above list at the time it provides claim construction charts on July 17, 2006, or at any time thereafter, as evidence and events may warrant.

Enterasys is, and will be, accusing of infringing one or more of the asserted claims listed above every Foundry product sold or licensed during the relevant damages period belonging to any of the following product families: (i) FastIron; (ii) NetIron; (iii) ServerIron; (iv) TurboIron; (v) BigIron; (vi) EdgeIron; (vii) AccessIron; and (viii) any software used in connection with any accused feature contained in any product from these families including, but not necessarily limited to, IronView software.

Enterasys is, and will be, asserting that one or more of the claims listed above read on the following accused features contained in some or all of the accused products listed above:

The asserted claims of the '205 patent read on Multi-Protocol Label Switching ("MPLS") features as that term is used in Foundry's own technical and marketing literature. These claims also more generally read on features involving any routing algorithm that can be used to calculate packet routes for all received packets regardless of the multiple different routing protocol suites (e.g., the TCP/IP protocol suite; the OSI protocol suite; etc.) to which such packets may conform, and without the need to convert the destination address of any packet to an addressing convention associated with a routing protocol suite different from the one to which that packet conforms.

The asserted claims of the '173 patent read on features that add a second internal header to a data packet that consists of a field or fields that contain local source and/or destination addresses that have been translated or derived from the typically longer unique network source and/or destination addresses (e.g., MAC addresses) contained in a first header. These second internal headers are sometimes described in Foundry's own technical and marketing literature as "internal Foundry headers," "Foundry internal headers," and/or as "optimized headers."

The asserted claims of the '665, '995, and '236 patents read on VLAN features, including IEEE 802.1Q VLANs, port-based VLANs, protocol-based VLANs, MAC-based VLANs, subnet-based VLANs, and default VLANs as those terms are used in Foundry's own technical and marketing literature.

The asserted claims of the '022 patent read on IGMP snooping features, including RFC 1112 IGMP features, RFC 2236 IGMP features, and RFC 3376 IGMP features as those terms are used in Foundry's own technical and marketing literature.

Enterasys is alleging direct infringement by accused Foundry products under 35 U.S.C. §271(a) relative to the asserted claims listed above that are directed to "a network bridge," "a port based default VLAN," "a computer program product," or "a computer-readable storage medium comprising program instructions."

Enterasys is principally alleging inducement of infringement and contributory infringement by accused Foundry products under 35 U.S.C. §271(b) and (c) relative to the asserted claims listed above that are directed to a "network of information handling devices" or a "packet data communications network." In these instances, the direct infringers are Foundry's customers. However, Enterasys may also allege direct infringement against Foundry relative to such claims to the extent that the evidence shows that Foundry has used accused products in networks present at its own facilities, has tested accused products in a network environment, or has demonstrated accused products in a network environment for customers or others.

Enterasys will supplement or correct its response to this Interrogatory, if necessary, at an appropriate interval of this case in a manner consistent with the requirements of Federal Rule of Civil Procedure 26(e).

**<u>INTERROGATORY NO. 2:</u>**

Describe in detail and provide a claim chart showing how each FOUNDRY PRODUCT identified in Interrogatory No. 1 infringes each of the corresponding claims. ENTERASYS' response to this interrogatory should: A) identify a proposed construction for each element of each asserted claim that ENTERASYS identifies as being infringed; B) identify specifically where each element of each asserted claim is found within each FOUNDRY PRODUCT, including citation to any supporting evidence; C) identify for each asserted claim element that ENTERASYS contends is a means-plus-function element governed by 35 U.S.C. § 112(6), the

structures, acts, or materials in each FOUNDRY PRODUCT that performs the claimed function; and D) state whether each element of each asserted claim is literally present or present under the doctrine of equivalents.

## RESPONSE TO INTERROGATORY NO. 2:

Enterasys objects to this Interrogatory on grounds that it calls for information that is protected from disclosure by the attorney-client privilege and/or by the work product doctrine; that it is overly broad, unduly burdensome, vague, and ambiguous; and that it seeks information neither relevant to a claim or defense of a party nor reasonably calculated to lead to the discovery of admissible evidence.

Enterasys further objects to this Interrogatory -- particularly when read in conjunction with Interrogatory No. 1 above -- as contrary to the Court's Scheduling Order entered in this case on November 18, 2005 because it purports to require that Enterasys either actually or effectively provide detailed claim construction charts identifying asserted claims and accused products at this premature juncture of the case. Consistent with that Scheduling Order, Enterasys is not required to, and accordingly will not, provide detailed claim construction charts or their equivalents until July 17, 2006.

Subject to and without waiving its objections, Enterasys hereby incorporates by reference as if set forth fully herein its Response To Interrogatory No. 1 above.

Enterasys will supplement or correct its response to this Interrogatory, if necessary, at an appropriate interval of this case in a manner consistent with the requirements of Federal Rule of Civil Procedure 26(e).

## INTERROGATORY NO. 3:

For each FOUNDRY PRODUCT identified in ENTERASYS' response to Interrogatory

No. 1, state all facts concerning ENTERASYS' forming of its belief that the FOUNDRY

PRODUCT infringes, including, but not limited to, the date that ENTERASYS first learned of

the FOUNDRY PRODUCT; the date ENTERASYS first came to believe the FOUNDRY

PRODUCT was allegedly infringing; the PERSONS, DOCUMENTS and things involved in

informing ENTERASYS about the FOUNDRY PRODUCT and in forming ENTERASYS's

belief that the FOUNDRY PRODUCT is infringing; and all efforts that ENTERASYS undertook

to substantiate its belief that the FOUNDRY PRODUCT is allegedly infringing, including, but

not limited to, all acquisition, testing and reverse-engineering of FOUNDRY PRODUCTS and

the individuals involved in such efforts.

## RESPONSE TO INTERROGATORY NO. 3:

Enterasys objects to this Interrogatory on grounds that it calls for information that is

protected from disclosure by the attorney-client privilege and/or by the work product doctrine;

that it is overly broad, unduly burdensome, vague, and ambiguous; and it seeks information

neither relevant to a claim or defense of a party nor reasonably calculated to lead to the discovery

of admissible evidence.

Enterasys further objects to this Interrogatory on grounds that it incorporates by reference

Interrogatory No. 1 above which -- particularly when read in conjunction with Interrogatory No. 2

above -- is contrary to the Court's Scheduling Order entered in this case on November 18, 2005

because it purports to require that Enterasys either actually or effectively provide detailed claim

construction charts identifying asserted claims and accused products at this premature juncture of

the case.  Consistent with that Scheduling Order, Enterasys is not required to, and accordingly

will not, provide detailed claim construction charts or their equivalents until July 17, 2006.

Enterasys also objects to this Interrogatory on grounds that it calls for information relating

to issues that are outside the scope of Phase I fact discovery as established by the Court's Scheduling Order entered in this case on November 18, 2005.

Subject to and without waiving its objections, Enterasys states that it first formed the belief that Foundry products were infringing in March of 2004 based upon the advice of outside counsel.  At the request of Enterasys' former Intellectual Property Counsel, Paul M. Coryea, Esq. ("Coryea"), outside counsel had exclusively performed a detailed pre-suit investigation in that time frame that included both claim constructions and infringement analyses.  This pre-suit investigation principally focused upon Foundry's publicly available technical and product marketing documents.

Later, in and around March of 2005, a second detailed pre-suit investigation was exclusively performed by outside counsel at the request of Coryea.  This second pre-suit investigation again included both claim constructions and infringement analyses, and again was principally focused on Foundry's publicly available technical and product marketing documents.

To the extent that any of the Foundry documents considered or relied upon during either pre-suit investigation remain in Foundry's possession, custody, or control, Enterasys will produce them in this case in response to any Foundry document requests that call for their production.

On grounds of the attorney-client privilege and/or the work product doctrine, Enterasys will not provide any further information concerning these pre-suit investigations except as necessary in response to any motion filed by Foundry under Federal Rule of Civil Procedure 11.

**INTERROGATORY NO. 4:**

For each FOUNDRY PRODUCT identified in Interrogatory No. 1, identify the PERSON or PERSONS employed by or associated with ENTERASYS most knowledgeable regarding the

structure, function, and operation of each such FOUNDRY PRODUCT.

**RESPONSE TO INTERROGATORY NO. 4:**

Enterasys objects to this Interrogatory on grounds that it calls for information that is

protected from disclosure by the attorney-client privilege and/or by the work product doctrine;

that it is overly broad, unduly burdensome, vague, and ambiguous; and it seeks information

neither relevant to a claim or defense of a party nor reasonably calculated to lead to the discovery

of admissible evidence; and that it seeks knowledge concerning Foundry products that is already

uniquely within Foundry's own possession, custody, or control.

Enterasys further objects to this Interrogatory on grounds that it incorporates by reference

Interrogatory No. 1 above which -- particularly when read in conjunction with Interrogatory No. 2

above -- is contrary to the Court's Scheduling Order entered in this case on November 18, 2005

because it purports to require that Enterasys either actually or effectively provide detailed claim

construction charts identifying asserted claims and accused products at this premature juncture of

the case. Consistent with that Scheduling Order, Enterasys is not required to, and accordingly

will not, provide detailed claim construction charts or their equivalents until July 17, 2006.

Subject to and without waiving its objections, Enterasys states that Mark Hurley

("Hurley") and Carl Piper ("Piper") of their Product Management group have a general familiarity

with certain Foundry products as the result of working on competitive product comparisons for

use by Enterasys' sales force. Neither Hurley nor Piper have a detailed technical understanding of

Foundry products of the type that could be expected of an engineer.

Vala Afshar has tested certain Foundry products for purposes of assessing their

interoperability with Enterasys products within a network environment.

Enterasys will supplement or correct its response to this Interrogatory, if necessary, at an appropriate interval of this case in a manner consistent with the requirements of Federal Rule of Civil Procedure 26(e).

## INTERROGATORY NO. 5:

For each asserted claim of the PATENTS-IN-SUIT identified in response to Interrogatory No. 1, describe the circumstances surrounding the alleged invention of the claim, including but not limited to, the identity of ALL PERSONS involved in the conception of the alleged invention; the precise date of conception of the alleged invention; where the conception took place; the date of the first written description of the alleged invention; the date of first disclosure of the alleged invention to a PERSON other than the named inventor(s); the date of first testing of the alleged invention; the date of first actual reduction to practice of the alleged invention; where the first actual reduction to practice took place; ALL corroborating witnesses; the steps constituting diligence from conception to actual or constructive reduction to practice; the identify of each first product which incorporated any invention claimed in the patent; the date of first use of the alleged invention by a PERSON other than by a named inventor; the date of first advertisement or promotion of the alleged invention; the date of first sale or offer for sale of the alleged invention; and ALL project names, numbers, codes, descriptions, or other identifiers, whether external or internal, used by ENTERASYS and/or any prior owners of the PATENTS-IN-SUIT (including DEC or CABLETRON) relating to development of the subject matter of each of the PATENTS-IN-SUIT.

## RESPONSE TO INTERROGATORY NO. 5:

Enterasys objects to this Interrogatory on grounds that it calls for information that is protected from disclosure by the attorney-client privilege and/or by the work product doctrine;

that it is overly broad, unduly burdensome, vague, and ambiguous; and that it seeks information neither relevant to a claim or defense of a party nor reasonably calculated to lead to the discovery of admissible evidence.

Enterasys further objects to this Interrogatory on grounds that it incorporates by reference Interrogatory No. 1 above which -- particularly when read in conjunction with Interrogatory No. 2 above -- is contrary to the Court's Scheduling Order entered in this case on November 18, 2005 because it purports to require that Enterasys either actually or effectively provide detailed claim construction charts identifying asserted claims and accused products at this premature juncture of the case.  Consistent with that Scheduling Order, Enterasys is not required to, and accordingly will not, provide detailed claim construction charts or their equivalents until July 17, 2006.

Enterasys also objects to this Interrogatory pursuant to Federal Rule of Civil Procedure 33(a) and Local Rule 26.1(C) of the United States District Court for the District of Massachusetts as presenting multiple separate discovery requests in that it contains discrete subparts relating to issues such as first public sale and use, and/or to Enterasys, Cabletron, and DEC products, that are not logical extensions of the basic underlying request for information pertaining to inventive activities relevant to the subject matter of the patents-in-suit.

Subject to and without waiving its objections, Enterasys provides the following information concerning the dates of invention for the patents-in-suit:

For U.S. Patent No. 5,251,205 (the "'205 patent"), the date of conception was not later than April of 1989 and the date of first reduction to practice was not later than July of 1989. Enterasys bases these dates upon information contained in the invention record which it presently intends to withhold from production on grounds of attorney-client privilege.

For U.S. Patent No. 5,390,173 (the "'173 patent"), the dates of conception and first reduction to practice were not later than July of 1991.  Enterasys bases these dates upon information contained in the invention record which it presently intends to withhold from production on grounds of attorney-client privilege.

For U.S. Patent No. 6,128,665 (the "'665 patent"), the constructive conception and first reduction to practice dates were not later than December 30, 1996.

For U.S. Patent No. 6,147,995 (the "'995 patent") the constructive conception and first reduction to practice dates were not later than November 15, 1995.

For U.S. Patent No. 6,539,022 (the "'022 patent"), the constructive conception and first reduction to practice dates were not later than April 25, 1995.

For U.S. Patent No. 6,560,236 (the "'236 patent"), the date of conception was not later than March of 1992 and the date of first reduction to practice was not later than November of 1992.  Enterasys bases these dates upon information contained in the invention record which it presently intends to withhold from production on grounds of attorney-client privilege.

Enterasys is presently unaware of any persons other than the named inventors for each of the respective patents-in-suit as having been involved in these inventive activities, or as being able to serve as corroborating witnesses.  These issues remain under investigation by Enterasys, and Enterasys expects to discover additional information about these issues from discovery in this case, including from third party discovery.

Enterasys will supplement or correct its response to this Interrogatory, if necessary, at an appropriate interval of this case in a manner consistent with the requirements of Federal Rule of Civil Procedure 26(e).

**INTERROGATORY NO. 6:**

Identify ALL articles, systems, products, components and/or devices ever sold by ENTERASYS and/or any prior owners of the PATENTS-IN-SUIT (including DEC or CABLETRON) which use an invention claimed in any of the PATENTS-IN-SUIT, and for each such article, system, product, component or device, state which PATENTS-IN-SUIT covers that article, system, product, component or device, its date of commercial sale (beginning and end), and the PERSONS at ENTERASYS most knowledgeable about the design, development, testing, manufacture, marketing, sale, and licensing of each such article, system, product, component or device.

**RESPONSE TO INTERROGATORY NO. 6:**

Enterasys objects to this Interrogatory on grounds that it calls for information that is protected from disclosure by the attorney-client privilege and/or by the work product doctrine; that it is overly broad, unduly burdensome, vague, and ambiguous; and that it seeks information neither relevant to a claim or defense of a party nor reasonably calculated to lead to the discovery of admissible evidence. Enterasys further objects to this Interrogatory for the reasons set forth in Marc N. Henschke, Esq.'s letter to I. Neel Chatterjee, Esq. dated March 27, 2006.

Subject to and without waiving its objections, Enterasys states that it does not presently know which of the products sold by it or by Cabletron System, Inc. ("Cabletron") practice or embody any of the inventions claimed in the patents-in-suit. Indeed, this is not information that Enterasys has had reason to ascertain or maintain as part of its regular business activities. Enterasys suspects that certain of these inventions have been widely practiced in virtually every Enterasys and Cabletron product sold since the mid to late 1990s, and Enterasys has now undertaken an investigation into these matters. However, given that such an investigation will

require the enormous effort of analyzing hundreds of products sold over the past decade under six different patents, Enterasys does not expect to have any final answer to these inquiries in the immediate future.

As to determining which products sold by Digital Equipment Corporation ("Digital") practice or embody any of the inventions claimed in the patents-in-suit, Enterasys does not believe that it has sufficient information within its possession, custody, or control to arrive at a definitive conclusion. By way of background, Cabletron acquired Digital's Networking Products Group business division on February 7, 1998. However, on September 25, 2000, Cabletron later sold this same Networking Products Group business division to an unrelated third party entity known as DNPG LLC. In connection with this sale, Cabletron was required to transfer to DNPG LLC essentially every non-IP related asset associated with the former Digital business division, including all computers and computer systems, all technical documents and data relating to Digital products, and all business and financial documents and data. Nevertheless, Enterasys is now undertaking an investigation into these matters as they apply to Digital products.

Enterasys will supplement or correct its response to this Interrogatory, if necessary, at an appropriate interval of this case in a manner consistent with the requirements of Federal Rule of Civil Procedure 26(e).

**<u>INTERROGATORY NO. 7:</u>**

Describe the marking of each article, system, product, component and/or device that has been marked with the number of any of the PATENTS-IN-SUIT in any manner pursuant to 35 U.S.C. § 287, including, but not limited to, any marking by ENTERASYS and/or any prior owners of the PATENTS-IN-SUIT (including DEC or CABLETRON), and any licensees (whether current or otherwise) of the PATENTS-IN-SUIT. For purposes of this interrogatory, the

phrase "describe the marking" means provide: the name of the patented article, system, product, component or device; a product number, part number, or other identifying number; a description of the article, system, product, component or device; a list of all patent numbers that have been marked in any manner on the patented article, system, product, component or device; the date(s) that each patented article, system, product, component or device was first marked with each of the patent numbers; and, for each patent number marked on each patented article, system, product, component or device, information regarding whether the patented article, system, product, component or device was marked continuously with each patent number following the first marking with that patent number.

## RESPONSE TO INTERROGATORY NO. 7:

Enterasys objects to this Interrogatory on grounds that it calls for information that is protected from disclosure by the attorney-client privilege and/or by the work product doctrine; that it is overly broad, unduly burdensome, vague, and ambiguous; and that it seeks information neither relevant to a claim or defense of a party nor reasonably calculated to lead to the discovery of admissible evidence. Enterasys further objects to this Interrogatory on grounds that it calls for information relating to issues that are outside the scope of Phase I fact discovery as established by the Court's Scheduling Order entered in this case on November 18, 2005.

Enterasys will respond to this Interrogatory to the extent that it is included in an appropriate set of Phase II fact discovery served on or after October 3, 2006.

## INTERROGATORY NO. 8:

Identify ALL prior art and ALL articles, references, products (whether on-sale or in public use) or other evidence that ENTERASYS is aware of or that ANY person or entity, including any PATENT AGENCY, has contended or asserted is prior art or otherwise relevant to

the validity or invalidity of ANY claim of the PATENTS-IN-SUIT.

**RESPONSE TO INTERROGATORY NO. 8:**

Enterasys objects to this Interrogatory on grounds that it calls for information that is protected from disclosure by the attorney-client privilege and/or by the work product doctrine; that it is overly broad, unduly burdensome, vague, and ambiguous; and that it seeks information neither relevant to a claim or defense of a party nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving its objections, Enterasys states that it is unaware of any potential prior art references within the meaning of 35 U.S.C. §§ 102 and/or 103 except for the references cited in the various official prosecution histories for the patents-in-suit.  Pursuant to Federal Rule of Civil Procedure 33(d), Enterasys declines to identify these potential prior art references in response to this Interrogatory because Enterasys intends to produce all of the file wrappers that are in its possession during discovery and, in any event, such file wrappers are readily publicly available to Foundry.  Accordingly, the burden of deriving or ascertaining information about potential prior art cited in such file wrappers is substantially the same for Foundry as it would be for Enterasys.

Enterasys will supplement or correct its response to this Interrogatory, if necessary, at an appropriate interval of this case in a manner consistent with the requirements of Federal Rule of Civil Procedure 26(e).

**INTERROGATORY NO. 9:**

Identify ALL PERSONS who participated in the prosecution of the PATENTS-IN-SUIT and related applications, including without limitation the PERSONS who provided technical input, drafted the application(s), prosecuted the application(s) before the PTO or other PATENT

AGENCY, conducted prior art searches, reviewed prior art search results, drafted affidavits,

drafted amendments, reviewed or commented on communications from the PTO or other

PATENT AGENCY, prepared or filed papers in the PTO or other PATENT AGENCY and

participated in interviews with the PTO or other PATENT AGENCY. With respect to each

PERSON identified, state the nature and duration of his or her involvement.

## RESPONSE TO INTERROGATORY NO. 9:

Enterasys objects to this Interrogatory on grounds that it calls for information that is

protected from disclosure by the attorney-client privilege and/or by the work product doctrine;

that it is overly broad, unduly burdensome, vague, and ambiguous; and that it seeks information

neither relevant to a claim or defense of a party nor reasonably calculated to lead to the discovery

of admissible evidence.

Pursuant to Federal Rule of Civil Procedure 33(d), Enterasys declines as a general matter

to provide information concerning all persons involved in the prosecution of the patents-in-suit

and related patents in response to this Interrogatory.  Enterasys intends to produce in this case all

official file wrappers and prosecuting attorneys files that are in its possession.  Moreover, these

official file wrappers are also readily publicly available to Foundry.  Accordingly, the burden of

deriving or ascertaining the information that Foundry has requested is substantially the same for

Foundry as it would be for Enterasys.  Nevertheless, solely as a courtesy to Foundry, Enterasys

hereby provides the following information relating to the prosecutions of the patents-in-suit which

Enterasys had already compiled independent of being served with this Interrogatory:

### U.S. Patent No. 5,251,205 (the "'205 patent")

Digital retained the outside law firm of Fish & Richardson to prosecute the '205 patent

application.  The Fish & Richardson attorneys with primary responsibility for this prosecution

were:  Robert E. Hillman, Esq.; David L. Feigenbaum, Esq.; and Thomas W. Humphrey, Esq.

The in-house Digital attorney with primary responsibility for overseeing the prosecution of the '205 patent application was Maureen Stretch, Esq.  Other Digital personnel who may have made legal, technical, or administrative contributions to this prosecution were:  Kenneth F. Kozik, Esq.; A. Sidney Johnston, Esq.; Carter Pledger, Esq.; Dick Paciulan, Esq.; John G. Mesaros; Ross W. Callon; Radia Perlman; Joyce D. Lange; and/or Joyce A. Willette.

Digital retained the outside law firm of Jones, Tullar & Cooper, P.C. ("Jones Tullar") to perform a novelty search of potential relevance to the subject matter of the '205 patent application.  The Jones Tullar attorney with primary responsibility for conducting that search was William A. Blake, Esq.

### U.S. Patent No. 5,390,173 (the "'173 patent")

Digital retained the outside law firm of Arnold, White & Durkee ("Arnold White") to prepare the initial '173 patent application and drawings.  The Arnold White attorney with primary responsibility for performing those services was John G. Graham, Esq.  Other Arnold White personnel who may have made legal or administrative contributions to this prosecution were:  Michael Lynch, Esq.; D.C. Toedt, III, Esq.; and Susan Love.  The '173 patent application was subsequently prosecuted by in-house Digital attorneys.

The in-house Digital attorneys with primary responsibility for overseeing Arnold White, and for subsequently prosecuting the '173 patent application, were A. Sidney Johnston, Esq. and Kenneth F. Kozik, Esq.  Other Digital personnel who may have made legal, technical, or administrative contributions to this prosecution were:  Barry N. Young; Anne Thamer; Deidre Tymann; Barry A. Spinney; Joyce D. Lange; and Andrea Crowe.

Digital retained the outside law firm of Jones Tullar to perform a novelty search of potential relevance to the subject matter of the '173 patent application.  The Jones Tullar attorney with primary responsibility for conducting that search was William A. Blake, Esq.

## U.S. Patent No. 6,128,665 (the "'665 patent")

Digital retained the outside law firm of Bookstein & Kudirka, P.C., which later changed its name to Kurdika & Jobse, LLP (collectively, "Kurdika"), to prosecute the '665 patent application.  The Kurdika attorneys with primary responsibility for the prosecution were Steven G. Saunders, Esq. and Paul E. Kudirka, Esq.

The Digital in-house attorney with primary responsibility for overseeing the prosecution of the '665 patent was Mary Steubing, Esq.

Cabletron retained the outside law firm of Wolf, Greenfield & Sacks, P.C. ("Wolf Greenfield") to prosecute the '665 patent application.  The Wolf Greenfield attorneys with primary responsibility for the prosecution were Therese A. Hendricks, Esq. and Paul D. Sorkin, Esq.  Other Wolf Greenfield personnel who may have made legal, technical, or administrative contributions to this prosecution were:  M. Lawrence Oliverio, Esq.; Lindsay G. McGuiness, Esq.; and Edward J. Russavage.

The Cabletron in-house attorney with primary responsibility for overseeing the prosecution of the '665 patent was Norma Henderson, Esq.  Other Cabletron personnel who may have made technical or administrative contributions to this prosecution were:  Carol Iturralde; Henry Yang; Anil Rijhsinghani; and/or Sandra Nackel.

The outside law firm of Williams, Morgan, and Amerson ("Williams Morgan") briefly participated in the prosecution of the '665 patent application while operating under the mistaken

belief that Compaq Computer Corporation had acquired rights to that application from Digital. The Williams Morgan attorney involved in that mistaken undertaking was Jeffrey A. Pyle, Esq.

## U.S. Patent No. 6,147,995 (the "'995 patent")

Cabletron retained the outside law firm of Wolf Greenfield to prosecute the '995 patent application. The Wolf Greenfield attorneys with primary responsibility for the prosecution were Therese A. Hendricks, Esq. and Paul D. Sorkin, Esq. Another Wolf Greenfield employee who may have made an administrative contribution to this prosecution was Christine Doyle.

The in-house Cabletron attorney with primary responsibility for overseeing the prosecution of the '995 patent application was Norma Henderson, Esq. Other Cabletron personnel who may have made technical or administrative contributions to this prosecution were: Phil Andlauer; Mike Skubisz; and/or Sandra Nackel.

## U.S. Patent No. 6,539,022 (the "'022 patent")

Cabletron and Enterasys each retained the outside law firm of Wolf Greenfield to prosecute the '022 patent application. The Wolf Greenfield attorneys with primary responsibility for the prosecution were: Therese A. Hendricks, Esq.; Daniel P. McLoughlin, Esq.; James H. Morris, Esq.; and Paul D. Sorkin, Esq. Another Wolf Greenfield employee who may have made an administrative contribution to this prosecution was Gail Driscoll.

The in-house Cabletron attorney with primary responsibility for overseeing the prosecution of the '022 patent application was Norma Henderson, Esq. Another Cabletron employee who may have made an administrative contribution to this prosecution was Sandra Nackel.

The in-house Enterasys attorney with primary responsibility for overseeing the

prosecution of the '022 patent application was Chris A. Caseiro, Esq. Another Enterasys employee who may have made an administrative contribution to this prosecution was Sandra Nackel.

### U.S. Patent No. 6,560,236 (the "'236 patent")

Cabletron and Enterasys each retained the outside law firm of Wolf Greenfield to prosecute the '236 patent application. The Wolf Greenfield attorneys with primary responsibility for the prosecution were: Therese A. Hendricks, Esq.; Daniel P. McLoughlin, Esq.; James H. Morris, Esq.; and John N. Anastasi, Esq. Another Wolf Greenfield employee who may have made an administrative contribution to this prosecution was Gail Driscoll.

The in-house Cabletron attorney with primary responsibility for overseeing the prosecution of the '236 patent application was Norma Henderson, Esq. Another Cabletron employee who may have made an administrative contribution to this prosecution was Sandra Nackel.

The in-house Enterasys attorney with primary responsibility for overseeing the prosecution of the '236 patent application was Chris A. Caseiro, Esq. Another Enterasys employee who may have made an administrative contribution to this prosecution was Sandra Nackel.

Enterasys will supplement or correct its response to this Interrogatory, if necessary, at an appropriate interval of this case in a manner consistent with the requirements of Federal Rule of Civil Procedure 26(e).

### INTERROGATORY NO. 10:

State ALL facts and identify ALL DOCUMENTS, communications, and things

concerning the transfer of ownership or rights relating to any PATENTS-IN-SUIT, including

ANY contracts, transfer agreements or assignments, between ENTERASYS and any third party,

including DEC or CABLETRON.

**RESPONSE TO INTERROGATORY NO. 10:**

Enterasys objects to this Interrogatory on grounds that it calls for information that is

protected from disclosure by the attorney-client privilege and/or by the work product doctrine;

that it is overly broad, unduly burdensome, vague, and ambiguous; and that it seeks information

neither relevant to a claim or defense of a party nor reasonably calculated to lead to the discovery

of admissible evidence.  Enterasys further objects to this Interrogatory on grounds that it calls for

information relating to issues that are outside the scope of Phase I fact discovery as established by

the Court's Scheduling Order entered in this case on November 18, 2005.

Subject to and without waiving its objections, Enterasys provides the following

information:

**U.S. Patent No. 5,251,205 (the "'205 patent")**

Inventors Ross W. Callon, Radia J. Perlman, Eric C. Rosen, and John Harper each

assigned his or her entire right, title, and interest in and to U.S. Application Ser. No. 07/577,437

to Digital by written instrument dated February 25, 1991.

Digital assigned its entire right, title, and interest in and to the '205 patent to Cabletron by

written instrument dated February 6, 1998.

Cabletron assigned its entire right, title, and interest in and to the '205 patent to Enterasys

Networks, Inc. ("Enterasys") by written instrument dated September 29, 2000.

**U.S. Patent No. 5,390,173 (the "'173 patent")**

24

Inventors Robert J. Simcoe and George Varghese each assigned his entire right, title, and interest in and to U.S. Application Ser. No. 07/965,651 to Digital by written instrument dated March 18, 1993.

Inventor Robert E. Thomas assigned his entire right, title, and interest in and to U.S. Application Ser. No. 07/965,651 to Digital by written instrument dated March 26, 1993.

Inventor Barry A. Spinney assigned his entire right, title, and interest in and to U.S. Application Ser. No. 07/965,651 to Digital by written instrument dated April 9, 1993.

Digital assigned its entire right, title, and interest in and to the '173 patent to Cabletron by written instrument dated February 6, 1998.

Cabletron assigned its entire right, title, and interest in and to the '173 patent to Enterasys by written instrument dated September 29, 2000.

### U.S. Patent No. 6,128,665 (the "'665 patent")

Inventor Carol E. Iturralde assigned her entire right, title, and interest in and to U.S. Application Ser. No. 08/774,541 to Digital by written instrument dated April 23, 1997.

Digital assigned its entire right, title, and interest in and to U.S. Application Ser. No. 08/774,541 to Cabletron by written instrument dated February 6, 1998.

Cabletron assigned its entire right, title, and interest in and to U.S. Application Ser. No. 08/774,541 to Enterasys by written instrument dated September 29, 2000.

### U.S. Patent No. 6,147,995 (the "'995 patent")

Inventors Kurt A. Dobbins, Philip C. Andlauer, and Michael Skubisz each assigned his entire right, title, and interest in and to U.S. Application Ser. No. 08/559,738 to Cabletron by

written instrument dated January 17, 1996.

Cabletron assigned its entire right, title, and interest in and to U.S. Application Ser. No. 09/387,317 to Enterasys by written instrument dated September 29, 2000.

### U.S. Patent No. 6,539,022 (the "'022 patent")

Inventor Kenneth E. Virgile assigned his entire right, title, and interest in and to U.S. Application Ser. No. 08/428,403 to Standard Microsystems Corporation ("Standard Microsystems") by written instrument dated May 31, 1995.

Standard Microsystems assigned its entire right, title, and interest in and to U.S. Application Ser. No. 08/428,403 to Cabletron by written instrument dated January 12, 1996.

Cabletron assigned its entire right, title, and interest in and to U.S. Application Ser. No. 09/299,970 to Enterasys by written instrument dated September 29, 2000.

### U.S. Patent No. 6,560,236 (the "'236 patent")

Inventor Barry A. Spinney assigned his entire right, title, and interest in and to U.S. Application Ser. No. 08/081,622 to Digital by written instrument dated June 14, 1993.

Inventors George Varghese, Robert Eugene Thomas, and Robert Simcoe each assigned his entire right, title, and interest in and to U.S. Application Ser. No. 08/081,622 to Digital by written instrument dated June 15, 1993.

Inventors John Bassett, Peter Higginson, and Graham Cobb each assigned his entire right, title, and interest in and to U.S. Application Ser. No. 08/081,622 to Digital by written instrument dated June 21, 1993.

Digital assigned its entire right, title, and interest in and to U.S. Application Ser. No.

08/731,905 to Cabletron by written instrument dated February 6, 1998.

Cabletron assigned its entire right, title, and interest in and to U.S. Application Ser. No. 09/411,773 to Enterasys by written instrument dated September 29, 2000.

Copies of each of the assignment instruments identified above will be produced to the extent that they are in Enterasys' possession, custody, or control.

Enterasys will provide information concerning other (non-assignment) types of transfers of rights in the patents-in-suit, if any, to the extent that Foundry requests such information in an appropriate set of Phase II fact discovery served on or after October 3, 2006.

Enterasys will supplement or correct its response to this Interrogatory, if necessary, at an appropriate interval of this case in a manner consistent with the requirements of Federal Rule of Civil Procedure 26(e).

## INTERROGATORY NO. 11:

Identify ALL DOCUMENTS and witnesses on which ENTERASYS intends to rely at trial in this action.

## RESPONSE TO INTERROGATORY NO. 11:

Enterasys objects to this Interrogatory on grounds that it calls for information that is protected from disclosure by the attorney-client privilege and/or by the work product doctrine; that it is overly broad, unduly burdensome, vague, and ambiguous; and that it seeks information neither relevant to a claim or defense of a party nor reasonably calculated to lead to the discovery of admissible evidence. Enterasys further objects to this Interrogatory as premature at this early stage of the case in which discovery is just commencing.

27

Subject to and without waiving its objections, Enterasys states that it will identify the documents and witnesses that it intends to rely upon at trial in a manner, and at a time, consistent with the requirements of Federal Rule of Civil Procedure 26 and whatever Pre-trial Order is ultimately entered by the Court in this case.

Dated:  April 26, 2006

Respectfully served,

ENTERASYS NETWORKS, INC.

As to responses:

By its Executive VP of Strategic Affairs and Chief Legal Officer,

Gerald M. Haines II

As to objections:

By its attorneys,

Christopher P. Sullivan, Esq. (BBO No.485120)
Marc N. Henschke, Esq. (BBO No. 636146)
Alan E. McKenna (BBO No. 644556)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
800 Boylston Street, 25th Floor
Boston, MA 02199
Tel. (617) 267-2300

Of Counsel:
A. James Anderson, Esq. (pro hac vice)
Marla R. Butler, Esq. (pro hac vice)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2600 One Atlanta Plaza
Atlanta, GA 30326-1386
Tel. (404) 760-4300

Robert A. Auchter, Esq. (pro hac vice)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
1801 K Street, N.W.
Washington, DC  20006
Tel. (202) 775-0725

28

## CERTIFICATE OF SERVICE

I, Marc N. Henschke, hereby certify that on April 26, 2006, I caused the attached *Plaintiff Enterasys Networks, Inc.'s First Supplemental Responses And Objections To Defendant Foundry Networks, Inc.'s First Set Of Interrogatories* to be served as indicated below via first class mail and/or by e-mail (PDF attachment) upon Defendant's counsel of record at the following addresses:

### Via First Class Mail & E-Mail (PDF Attachment)

I. Neel Chatterjee, Esq.
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
<nchatterjee@orrick.com>

### Via E-Mail (PDF Attachment)

Jeremy P. Oczek, Esq.
<joczek@proskauer.com>

K. Mudurian
<kmudurian@orrick.com>

Y. Steinberg
<ysteinberg@orrick.com>


Dated:  April 26, 2006

_____
Marc N. Henschke

# Exhibit 8

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS

ENTERASYS NETWORKS, INC,

        Plaintiff,

v.

FOUNDRY NETWORKS, INC. and
EXTREME NETWORKS, INC.,

        Defendants.

Civil Action No. 05-CV-11298 (DPW)

## FOUNDRY NETWORKS, INC.'S FIRST SET OF INTERROGATORIES (NOS. 1-11) TO PLAINTIFF ENTERASYS NETWORKS, INC.

Defendant Foundry Networks, Inc. hereby propounds the following interrogatories to Plaintiff Enterasys Networks, Inc. in accordance with the provisions of Rules 26 and 33 of the Federal Rules of Civil Procedure. Plaintiff shall answer the interrogatories in writing, separately and fully under oath, within thirty days of service of these interrogatories.

### DEFINITIONS

These interrogatories incorporate the definitions set forth in Foundry Networks, Inc.'s First Request for Production of Documents and Things to Plaintiff Enterasys Networks, Inc. and the Uniform Definitions in Discovery Requests of Local Rule 26.5 from the District of Massachusetts. In addition, the term "FOUNDRY PRODUCT" as used herein means any product designed, developed, manufactured, licensed, marketed, or sold by FOUNDRY.

### INSTRUCTIONS

A. Each interrogatory is to be answered fully, unless good faith objected to, in which event, ENTERASYS shall state the reasons for ALL of its objections in detail. If an objection pertains to only a portion of an interrogatory, or to a word or phrase contained within an interrogatory, ENTERASYS shall state its objection to that portion only, and respond to the

remainder of the interrogatory, using its best efforts to do so. No part of an interrogatory may be left unanswered merely because an objection is interposed to another part of the interrogatory.

      B.     If, in responding to any of these interrogatories, ENTERASYS encounters any ambiguity in construing either the interrogatory or a definition or instruction relevant to it, ENTERASYS shall set forth the matter deemed ambiguous and the construction used in responding to the interrogatory.

      C.     If an interrogatory is silent as to the time period for which a response is sought, ENTERASYS shall identify or disclose ALL information or facts known, in whole or in part, at any time prior to and up through, the date of ENTERASYS' responses to these interrogatories.

      D.     If ENTERASYS asserts a claim of attorney-client privilege, work product immunity, or any other privilege or immunity in objecting to any interrogatory or part of any interrogatory, ENTERASYS shall provide the following information for each claim:

      (a)     the nature of the privilege being claimed (including work product or privilege);

      (b)     the specific portion of the interrogatory to which the objection relates; and

      (c)     if the privilege is being asserted concerning information contained in a particular DOCUMENT or communication, ENTERASYS shall identify:

      (i)     the date or estimated date that the DOCUMENT was authored or generated or the communication was made;

      (ii)     each author of the DOCUMENT or participant in the communication;

      (iii)     each addressee or recipient of a copy of the document;

      (iv)     the name and title of each PERSON who at any time has read or had possession of the document or of any copy thereof;

      (v)     ALL grounds for any claim that the document is privileged or otherwise protected from discovery, in sufficient detail so as to allow for resolution of the propriety of such claim; and

      (vi)     provide a summary of the subject matter of the DOCUMENT or communication sufficient to enable an evaluation of the claim of privilege.

E.    If any DOCUMENT or thing otherwise responsive to any interrogatory has been lost, discarded, or destroyed since its preparation or receipt, ENTERASYS shall identify, as completely as possible, the DOCUMENT or thing, and give full particulars or circumstances under which the document or thing was lost or destroyed, including, without limitation, each DOCUMENT'S date, the general nature of the DOCUMENT (*e.g.*, letter, memorandum, fax, electronic mail, etc.), the subject matter of the DOCUMENT, each author or originator, each PERSON indicated as an addressee or copy recipient, or known by ENTERASYS to have received a copy of the DOCUMENT or thing, and the DOCUMENT's former custodians.  In addition, as to each such DOCUMENT or thing, the following information shall be supplied:

(a)    date of disposal, loss or destruction;

(b)    manner of disposal, loss or destruction;

(c)    reason for disposal or destruction, or an explanation of the loss;

(d)    identity of the PERSON authorizing the disposal or destruction;

(e)    identity of the PERSON having knowledge of the disposal, loss or destruction;

(f)    identity of the PERSON who destroyed, lost or disposed of the DOCUMENT or thing; and

(g)    identity of any PERSON believed to have possession, custody or control of the DOCUMENT or thing.

F.    These interrogatories shall be deemed to be continuing and in the event that ENTERASYS becomes aware of additional knowledge or information responsive in whole or in part thereto after the date of answering specified herein above, ENTERASYS shall furnish such additional knowledge and information to FOUNDRY'S attorneys of record promptly after acquiring such additional knowledge or information.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Separately identify each FOUNDRY PRODUCT that ENTERASYS contends infringes any of the PATENTS-IN-SUIT, by name, product number, and/or description, and for each such product, include the specific claims that are allegedly infringed, and whether that alleged infringement is direct, contributory and/or by inducement.

**INTERROGATORY NO. 2:**

Describe in detail and provide a claim chart showing how each FOUNDRY PRODUCT identified in Interrogatory No. 1 infringes each of the corresponding claims. ENTERASYS' response to this interrogatory should: A) identify a proposed construction for each element of each asserted claim that ENTERASYS identifies as being infringed; B) identify specifically where each element of each asserted claim is found within each FOUNDRY PRODUCT, including citation to any supporting evidence; C) identify for each asserted claim element that ENTERASYS contends is a means-plus-function element governed by 35 U.S.C. § 112(6), the structures, acts, or materials in each FOUNDRY PRODUCT that performs the claimed function; and D) state whether each element of each asserted claim is literally present or present under the doctrine of equivalents.

**INTERROGATORY NO. 3:**

For each FOUNDRY PRODUCT identified in ENTERASYS' response to Interrogatory No. 1, state all facts concerning ENTERASYS' forming of its belief that the FOUNDRY PRODUCT infringes, including, but not limited to, the date that ENTERASYS first learned of the FOUNDRY PRODUCT; the date ENTERASYS first came to believe the FOUNDRY PRODUCT was allegedly infringing; the PERSONS, DOCUMENTS and things involved in informing ENTERASYS about the FOUNDRY PRODUCT and in forming ENTERASYS's belief that the FOUNDRY PRODUCT is infringing; and all efforts that ENTERASYS undertook to substantiate its belief that the FOUNDRY PRODUCT is allegedly infringing, including, but

not limited to, all acquisition, testing and reverse-engineering of FOUNDRY PRODUCTS and the individuals involved in such efforts.

**INTERROGATORY NO. 4:**

For each FOUNDRY PRODUCT identified in Interrogatory No. 1, identify the PERSON or PERSONS employed by or associated with ENTERASYS most knowledgeable regarding the structure, function, and operation of each such FOUNDRY PRODUCT.

**INTERROGATORY NO. 5:**

For each asserted claim of the PATENTS-IN-SUIT identified in response to Interrogatory No. 1, describe the circumstances surrounding the alleged invention of the claim, including but not limited to, the identity of ALL PERSONS involved in the conception of the alleged invention; the precise date of conception of the alleged invention; where the conception took place; the date of the first written description of the alleged invention; the date of first disclosure of the alleged invention to a PERSON other than the named inventor(s); the date of first testing of the alleged invention; the date of first actual reduction to practice of the alleged invention; where the first actual reduction to practice took place; ALL corroborating witnesses; the steps constituting diligence from conception to actual or constructive reduction to practice; the identify of each first product which incorporated any invention claimed in the patent; the date of first use of the alleged invention by a PERSON other than by a named inventor; the date of first advertisement or promotion of the alleged invention; the date of first sale or offer for sale of the alleged invention; and ALL project names, numbers, codes, descriptions, or other identifiers, whether external or internal, used by ENTERASYS and/or any prior owners of the PATENTS-IN-SUIT (including DEC or CABLETRON) relating to development of the subject matter of each of the PATENTS-IN-SUIT.

**INTERROGATORY NO. 6:**

Identify ALL articles, systems, products, components and/or devices ever sold by ENTERASYS and/or any prior owners of the PATENTS-IN-SUIT (including DEC or CABLETRON) which use an invention claimed in any of the PATENTS-IN-SUIT, and for each

such article, system, product, component or device, state which PATENTS-IN-SUIT covers that article, system, product, component or device, its date of commercial sale (beginning and end), and the PERSONS at ENTERASYS most knowledgeable about the design, development, testing, manufacture, marketing, sale, and licensing of each such article, system, product, component or device.

**INTERROGATORY NO. 7:**

Describe the marking of each article, system, product, component and/or device that has been marked with the number of any of the PATENTS-IN-SUIT in any manner pursuant to 35 U.S.C. § 287, including, but not limited to, any marking by ENTERASYS and/or any prior owners of the PATENTS-IN-SUIT (including DEC or CABLETRON), and any licensees (whether current or otherwise) of the PATENTS-IN-SUIT. For purposes of this interrogatory, the phrase "describe the marking" means provide: the name of the patented article, system, product, component or device; a product number, part number, or other identifying number; a description of the article, system, product, component or device; a list of all patent numbers that have been marked in any manner on the patented article, system, product, component or device; the date(s) that each patented article, system, product, component or device was first marked with each of the patent numbers; and, for each patent number marked on each patented article, system, product, component or device, information regarding whether the patented article, system, product, component or device was marked continuously with each patent number following the first marking with that patent number.

**INTERROGATORY NO. 8:**

Identify ALL prior art and ALL articles, references, products (whether on-sale or in public use) or other evidence that ENTERASYS is aware of or that ANY person or entity, including any PATENT AGENCY, has contended or asserted is prior art or otherwise relevant to the validity or invalidity of ANY claim of the PATENTS-IN-SUIT.

**INTERROGATORY NO. 9:**

Identify ALL PERSONS who participated in the prosecution of the PATENTS-IN-SUIT and related applications, including without limitation the PERSONS who provided technical input, drafted the application(s), prosecuted the application(s) before the PTO or other PATENT AGENCY, conducted prior art searches, reviewed prior art search results, drafted affidavits, drafted amendments, reviewed or commented on communications from the PTO or other PATENT AGENCY, prepared or filed papers in the PTO or other PATENT AGENCY and participated in interviews with the PTO or other PATENT AGENCY. With respect to each PERSON identified, state the nature and duration of his or her involvement.

**INTERROGATORY NO. 10:**

State ALL facts and identify ALL DOCUMENTS, communications, and things concerning the transfer of ownership or rights relating to any PATENTS-IN-SUIT, including ANY contracts, transfer agreements or assignments, between ENTERASYS and any third party, including DEC or CABLETRON.

**INTERROGATORY NO. 11:**

Identify ALL DOCUMENTS and witnesses on which ENTERASYS intends to rely at trial in this action.

Dated:  March 14, 2006                    DEFENDANT FOUNDRY NETWORKS, INC.

By Their Attorneys,

Steven M. Bauer
Jeremy P. Oczek
PROSKAUER ROSE LLP
One International Place
Boston, MA  02110-2600
Telephone:  (617) 526-9600
Facsimile:  (617) 526-9899

William L. Anthony, Jr.
I. Neel Chatterjee
Michael F. Heafey
Sanjeet K. Dutta
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 614-7400
Facsimile:  (650) 614-7401

## CERTIFICATE OF SERVICE

I, Jeremy P. Oczek, hereby certify that on March 14, 2006, I caused the attached Foundry Networks, Inc.'s First Set of Interrogatories (Nos. 1-11) to Plaintiff Enterasys Networks, Inc. to be served by upon counsel of record for Enterasys Networks, Inc. by the following methods:

*Via Hand Delivery and E-Mail:*

Christopher P. Sullivan, Esq.
Marc N. Henschke, Esq.
Alan E. McKenna, Esq.
Robins, Kaplan, Miller & Ciresi LLP
800 Boylston Street, 25th Floor
Boston, MA 02199
E-mail: cpsullivan@rkmc.com
E-mail: mnhenschke@rkmc.com
E-mail: aemckenna@rkmc.com

*Via E-mail Only:*

A. James Anderson, Esq.
Marla R. Butler, Esq.
Robins, Kaplan, Miller & Ciresi LLP
2600 One Atlanta Plaza
950 East Paces Ferry Road, N.E.
Atlanta, GA 30326-1386
E-mail: ajanderson@rkmc.com
E-mail: mrbutler@rkmc.com

*Via E-mail Only:*

Robert A. Auchter, Esq.
Robins, Kaplan, Miller & Ciresi LLP
Suite 1200
1801 K Street, N.W.
Washington, D.C. 20006
E-mail: raauchter@rkmc.com

Jeremy P. Oczek

# Exhibit 9

**PROSKAUER ROSE LLP**

One International Place
Boston, MA 02110-2600
Telephone 617.526.9600
Fax 617.526.9899

NEW YORK
LOS ANGELES
WASHINGTON
BOCA RATON
NEWARK
NEW ORLEANS
PARIS

Jeremy P. Oczek
Attorney at Law

Direct Dial 617-526-9651
joczek@proskauer.com

May 4, 2006

**Via E-mail**

Marc N. Henschke, Esq.
Robins, Kaplan, Miller & Ciresi LLP
800 Boylston Street, 25th Floor
Boston, MA  02199

Re:  **Enterasys Networks, Inc. v. Foundry Networks, Inc.** *et al.*
     **Civil Action No. 05-11298-DPW**

Dear Marc:

This letter concerns various discovery matters in this case.

      1.    Rule 30(b)(6) Deposition of Enterasys' Records Custodian – On April 20, you agreed to provide dates for the previously-noticed Rule 30(b)(6) deposition of Enterasys' records custodian.  In my letter of April 21, I requested that you provide available dates in the weeks of April 24-28, May 1-5, and May 8-12.  It is now May 4, and you have failed to provide any dates as agreed.  Will you promptly provide dates or do we need to seek the Court's intervention on this matter?

      Your letter dated April 21 says that "Enterasys be will pleased to work together with Foundry to establish a mutually satisfactory approach to handling the warehouse storage situation."  However, without knowing any information about Enterasys' records-keeping systems and indexing of warehoused documents, it is impossible for us to work cooperatively with Enterasys regarding its warehoused documents.  Therefore, the Rule 30(b)(6) deposition of Enterasys' records custodian must proceed as soon as possible.

      2.    Documents in Off-site Warehouse Storage – In my letter of April 21, I requested that you produce copies of any indexes for the "approximately 12,000 boxes" of warehoused documents.  When will you produce the indexes?

      3.    Documents Subpoenaed from the Prosecuting Law Firms – As you know, each of the prosecuting law firms that have been subpoenaed in this case have now provided documents to Robins, Kaplan.  In my letter of April 21, I asked for you to tell me a date certain by which you are producing documents pursuant to the subpoenas served on Wolf, Greenfield & Sacks, Lahive & Cockfield, and Fish & Richardson.  When will you be producing these documents?

**PROSKAUER ROSE LLP**

Marc N. Henschke, Esq.
May 4, 2006
Page 2

As a related matter, James Foster at Wolf, Greenfield & Sacks told us that in or about December 2003, Enterasys transferred all of its patent prosecution files at Wolf Greenfield to three locations:  Lahive & Cockfield, Fish & Richardson, and Enterasys' legal department. However, when we spoke with John Steele at Fish & Richardson, Mr. Steele said that Enterasys has never been a client of the firm, although they do have files relating to Digital Equipment Corporation.  Since your firm is handling the subpoenas on behalf of the prosecuting law firms, can you please clarify this matter?

4.     Foundry's Responses to Enterasys' Document Requests – I write in response to your letters dated May 1 and 3.  I am available to meet and confer regarding Foundry's responses to Enterasys' discovery requests on Monday, May 8, as I am scheduled to be out of the office on Friday on business matters.

At the onset, I note that Foundry has now produced over 57,000 pages of documents to Enterasys, and has yet to receive a single document from Enterasys.  Although I'm happy to meet and confer with you about Enterasys' document concerns, the timing of Enterasys' raising this matter suggests that Enterasys is trying to district attention from its own failure to provide any meaningful discovery in this case to date.

Enterasys argues that Foundry's objections based on relevance are improper.  Until Enterasys clearly sets forth its infringement theories, however, Foundry cannot fully comply with the discovery requests and assess their relevance or likelihood to lead to admissible evidence. This deficiency is the subject of Foundry's Motion to Compel that is pending before the Court. Given Enterasys recalcitrance to set forth its basis for accusing Foundry of infringement of six patents-in-suit in detail and, indeed, Enterasys' failure to provide any meaningful discovery, Foundry cannot respond to Enterasys' extensive document requests.  In addition, should any documents be withheld based on confidentiality, they will be produced once a protective order is entered and Enterasys sets forth its infringement theory.

Finally, I note that although your e-mail of April 19 vaguely mentioned discovery issues, Enterasys waited over a week and a half to clearly explain its positions until its letter of May 1. Furthermore, Foundry's responses were served on April 3, and we did not hear from you until we asked to meet and confer on Enterasys' deficient interrogatory responses.

Very truly yours,

Jeremy P. Oczek

# Exhibit 10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

ENTERASYS NETWORKS, INC.,

    Plaintiff,

  v.

FOUNDRY NETWORKS, INC. and
EXTREME NETWORKS, INC.,

    Defendants.

Case No.:  05-11298 (DPW)

**FOUNDRY NETWORKS, INC.'S ANSWER TO**
**ENTERASYS NETWORKS, INC.'S COMPLAINT**

   Foundry Networks, Inc. ("Foundry") answers the Complaint of Enterasys Networks, Inc.

("Enterasys") as follows:

**The Parties**

   1.  Foundry is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 1 and therefore denies all of the allegations contained

therein.

   2.  Foundry admits that is organized under the laws of Delaware.  Foundry answers

that the statements of paragraph 2 are legal conclusions that need not be admitted or denied.  To

the extent that paragraph 2 states factual allegations, Foundry denies each and every remaining

allegation.

   3.  Foundry is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 3 and therefore denies all of the allegations contained

therein.

## Jurisdiction

4.      Foundry answers that the statements of paragraph 4 are legal conclusions that need not be admitted or denied. To the extent that paragraph 4 states factual allegations, Foundry denies each and every remaining allegation as to Foundry, and is without information sufficient to form a belief as to the truth of the allegations with respect to any other defendant and therefore denies all of these allegations.

5.      Foundry admits that it conducts business in the State of Massachusetts. Foundry denies that it maintains a place of business at 201 Edgewater Drive, Wakefield, Massachusetts 01880, and at 7 Technology Drive, Lowell, Massachusetts 01851. Foundry answers that the remaining allegations in paragraph 5 state legal conclusions that need not be admitted or denied. To the extent that paragraph 5 states factual allegations, Foundry denies each and every remaining allegation.

6.      Foundry is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6 and therefore denies all of the allegations contained therein.

7.      Foundry answers that the statements of paragraph 7 are legal conclusions that need not be admitted or denied. To the extent that paragraph 7 states factual allegations, Foundry denies each and every remaining allegation as to Foundry, and is without information sufficient to form a belief as to the truth of the allegations with respect to any other defendant and therefore denies all of the allegations.

8.      Foundry answers that the statements of paragraph 8 are legal conclusions that need not be admitted or denied. To the extent that paragraph 8 states factual allegations, Foundry denies each and every remaining allegation.

-2-

## Factual Background

9.      Foundry answers that the statements of paragraph 9 are legal conclusions that need not be admitted or denied. To the extent that paragraph 9 states factual allegations, Foundry denies each and every remaining allegation. With respect to the each of the patents stated in the Complaint (collectively "Patents-at-issue"), Foundry answers:

(i)      Foundry admits that U.S. Patent No. 5,251,205 ("the '205 patent") is entitled "Multiple Protocol Routing" and was issued on October 5, 1993. Foundry answers that the remaining statements in this paragraph are legal conclusions that need not be admitted or denied. To the extent this paragraph states factual allegations, Foundry denies each and every remaining allegation;

(ii)      Foundry admits that U.S. Patent No. 5,390,173 ("the '173 patent") is entitled "Packet Format In Hub For Packet Data Communication System" and was issued on February 14, 1995. Foundry answers that the remaining statements in this paragraph are legal conclusions that need not be admitted or denied. To the extent this paragraph states factual allegations, Foundry denies each and every remaining allegation;

(iii)      Foundry admits that U.S. Patent No. 6,128,665 ("the '665 patent") is entitled "System For Broadcasting Messages To Each Of Default VLAN Ports In Subset Of Ports Defined As VLAN Ports" and was issued on October 3, 2000. Foundry answers that the remaining statements in this paragraph are legal conclusions that need not be admitted or denied. To the extent this paragraph states factual allegations, Foundry denies each and every remaining allegation;

(iv)      Foundry admits that U.S. Patent No. 6,147,995 ("the '995 patent") is entitled "Method For Establishing Restricted Broadcast Groups In A Switched Network" and was issued on November 14, 2000. Foundry answers that the remaining statements in this

paragraph are legal conclusions that need not be admitted or denied. To the extent this paragraph states factual allegations, Foundry denies each and every remaining allegation;

(v)    Foundry admits that U.S. Patent No. 6,539,022 ("the '022 patent") is entitled "Network Device With Multicast Forwarding Data" and was issued on March 25, 2003. Foundry answers that the remaining statements in this paragraph are legal conclusions that need not be admitted or denied. To the extent this paragraph states factual allegations, Foundry denies each and every remaining allegation;

(vi)    Foundry admits that U.S. Patent No. 6,539,236 ("the '236 patent") is entitled "Virtual Lans" and was issued on May 6, 2003. Foundry answers that the remaining statements in this paragraph are legal conclusions that need not be admitted or denied. To the extent this paragraph states factual allegations, Foundry denies each and every remaining allegation.

10.    Foundry answers that the statements of paragraph 10 are legal conclusions that need not be admitted or denied. To the extent that paragraph 10 states factual allegations, Foundry denies each and every remaining allegation.

11.    Foundry admits the allegations in paragraph 11.

12.    Foundry answers that the statements of paragraph 12 are legal conclusions that need not be admitted or denied. To the extent that paragraph 12 states factual allegations, Foundry denies each and every remaining allegation.

13.    Foundry is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13 and therefore denies all of the allegations contained therein.

-4-

14.     Foundry is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6 and therefore denies all of the allegations contained therein.

15.     Foundry answers that the statements of paragraph 15 are legal conclusions that need not be admitted or denied. To the extent that paragraph 15 states factual allegations, Foundry denies each and every remaining allegation.

## STATEMENT OF CLAIMS

### COUNT I

16.     Foundry realleges and incorporates herein its responses to paragraphs 1-15 as set forth above.

17.     Foundry denies each and every allegation in paragraph 17.

18.     Foundry denies each and every allegation in paragraph 18.

19.     Foundry denies each and every allegation in paragraph 19.

### COUNT II

20.     Foundry realleges and incorporates herein its responses to paragraphs 1-19 as set forth above.

21.     Foundry denies each and every allegation in paragraph 21.

22.     Foundry denies each and every allegation in paragraph 22.

23.     Foundry denies each and every allegation in paragraph 23.

### COUNT III

24.     Foundry realleges and incorporates herein its responses to paragraphs 1-23 as set forth above.

25.     Foundry denies each and every allegation in paragraph 25.

26.     Foundry denies each and every allegation in paragraph 26.

27.     Foundry denies each and every allegation in paragraph 27.

## COUNT IV

28.     Foundry realleges and incorporates herein its responses to paragraphs 1-27 as set forth above.

29.     Foundry denies each and every allegation in paragraph 29.

30.     Foundry denies each and every allegation in paragraph 30.

31.     Foundry denies each and every allegation in paragraph 31.

## COUNT V

32.     Foundry realleges and incorporates herein its responses to paragraphs 1-30 as set forth above.

33.     Foundry denies each and every allegation in paragraph 33.

34.     Foundry denies each and every allegation in paragraph 34.

35.     Foundry denies each and every allegation in paragraph 35.

## COUNT VI

36.     Foundry realleges and incorporates herein its responses to paragraphs 1-35 as set forth above.

37.     Foundry denies each and every allegation in paragraph 37.

38.     Foundry denies each and every allegation in paragraph 38.

39.     Foundry denies each and every allegation in paragraph 39.

## AFFIRMATIVE DEFENSES

### Failure To State A Claim

40.     As its first separate and affirmative defense, Foundry alleges that, on information and belief, Enterasys has failed to state a claim upon which any relief may be granted against Foundry.

## Venue

41.     As its second separate and affirmative defense, Foundry alleges that this forum is improper as it is inconvenient for the parties and does not serve the interests of justice.

## Patent Invalidity

42.     As its third separate and affirmative defense, Foundry alleges based upon information presently available, and without prejudice to further amendment upon information learned during discovery, that one or more of the Patents-at-issue, are invalid because they fail to meet the "conditions of patentability" of 35 U.S.C. §§ 101, 102, 103, and 112, for reasons including, but not limited to, because one or more of the claims lack definitenesss, because the alleged inventions thereof lack utility and one or more of the claims are not enabled, because one or more claims are invalid inasmuch as they are taught by, suggested by, anticipated by, and/or obvious in view of the prior art, and/or are unsupported by the written description of the invention, because no claim of the patents can be validly construed to cover any Foundry product, and because the claims do not embody the best mode contemplated by the inventor of carrying out his invention.

## Claim Construction Estoppel

43.     As its fourth separate and affirmative defense, Foundry alleges that by reason of the proceedings in the United States Patent and Trademark Office during the prosecution of the application for the Patents-at-issue, specifically the admissions, representations, and amendments made on behalf of the applicant for such patent, Enterasys is estopped from asserting any construction of the claims of the Patents-at-issue to cover or include any product made, used, sold, offered for sale, or imported into the United States by Foundry.

-7-

### Laches

44.     As its fifth separate and affirmative defense, Foundry alleges that, on information and belief, Enterasys's claims under the Patents-at-issue are barred by the doctrine of laches due to Enterasys's (and its predecessors'-in-interest) knowledge of Foundry's allegedly infringing actions, Enterasys's (and its predecessors'-in-interest) inexcusable failure to diligently and timely pursue its infringement claims from the time it became aware it had claims against Foundry, and by virtue of the fact that Foundry has been both economically and materially prejudiced and/or injured from Enterasys's (and its predecessors'-in-interest) inexcusable lack of diligence, including (but not limited to) through the loss of records of third parties pertaining to the prior art, and the unreliability of the memories of witnesses who otherwise possess knowledge of the prior art.

### No Standing

45.     As its sixth separate and affirmative defense, Foundry alleges on information and belief that Enterasys does not have standing to bring the claims and/or requests for relief contained in its Amended Complaint against Foundry, because Enterasys does not own the Patents-at-issue, and because necessary and indispensable third parties retain substantial rights to the Patents-at-issue.

### Prosecution Laches

46.     As its seventh separate and affirmative defense, Foundry alleges, on information and belief, that one or more of Enterasys's claims under the Patents-at-issue are barred by the equitable doctrine of prosecution laches due to Enterasys's (and its predecessors'-in-interest) unreasonable delay in prosecution of the Patents-at-issue from the time it first filed applications for the Patents-at-issue in the Patent Trademark Office.

-8-

**Marking**

47.     As its eighth separate affirmative defense, Foundry alleges that prior to receiving a copy of summons and complaint, it had neither actual or constructive notice of any alleged act of infringement on its part, and that, on information and belief, the lawful owner of the Patents-at-issue and licensees of Enterasys had failed substantially and continuously to mark devices that embody one or more of the claims of the Patents-at-issue with proper notice of such Patents-at-issue, as required by 35 U.S.C. §287, such that plaintiff is not entitled to any pre-filing damages pursuant to that provision.

**Unclean Hands**

48.     As its ninth separate and affirmative defense, plaintiff's claims are barred by the doctrine of unclean hands.

**Waiver/Equitable Estoppel**

49.     As its tenth separate and affirmative defense, Foundry alleges that, on information and belief, Enterasys has, through its own conduct and through the conduct of its predecessors-in-interest, intentionally relinquished its known right or privilege to assert infringement of the Patents-at-issue, and hence Enterasys's claims in this action are barred or unenforceable due to waiver and/or equitable estoppel.

**Non-Infringing Uses**

50.     As its eleventh separate and affirmative defense, Foundry alleges that it has not infringed, contributed to the infringement of, or induced the infringement of the Patents-at-issue, and is not liable for infringement thereof. All of Foundry's products have substantial non-infringing uses and therefore, cannot induce or contribute to infringement of the Patents-at-issue.

### Authorization and Consent of the United States Government

51.     As its twelfth separate and affirmative defense, Foundry alleges that it used and/or manufactured some of the products accused of infringing the Patents-at-issue for and with the authorization and consent of the United States Government and that, accordingly, any claims against Foundry with respect to such products may not be pursued in this Court and are subject to other limitations pursuant to 28 U.S.C. § 1498.

### PRAYER FOR RELIEF

WHEREFORE, Foundry prays that this Court enter judgment:

A.     That plaintiff's complaint be dismissed with prejudice;

B.     That the Patents-at-issue, be found not infringed by any actions of Foundry or its customers, suppliers, users, licensees, vendors or vendees, or others using its products either alone or in combination with any other product;

C.     That the Patents-at-issue be found invalid, void and unenforceable;

D.     That plaintiff be ordered to pay the costs incurred by Foundry in responding to this action and Foundry's reasonable attorneys' fees pursuant to 35 U.S.C. §285; and

E.     That Foundry be granted such other and further relief as this Court deems just and warranted under the circumstances.

### JURY DEMAND

Foundry demands a trial by jury as to all issues so triable.

Dated:  August 22, 2005

Respectfully submitted,

/s/ Steven M. Bauer
_____
Steven M. Bauer
Jeremy P. Oczek
PROSKAUER ROSE LLP
One International Place, 22nd Floor
Boston, MA 02110-2600
Telephone:  (617) 526-9600
Facsimile:   (617) 526-9899

Of Counsel:
William Anthony
I. Neel Chatterjee
Michael F. Heafey
Raymis H. Kim
Sanjeet K. Dutta
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 614-7400
Facsimile:   (650) 614-7401

ATTORNEYS FOR DEFENDANT FOUNDRY
NETWORKS, INC.