**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

_____
                                                    )
ENTERASYS NETWORKS, INC.,           )          Civil Action No: 05-CV-11298 (DPW)
                                                    )
                    Plaintiff,                   )
                                                    )
v.                                                  )
                                                    )
FOUNDRY NETWORKS, INC. AND      )
EXTREME NETWORKS, INC.,            )
                                                    )
                    Defendants.              )
_____)


**PLAINTIFF ENTERASYS NETWORKS, INC.'S MOTION TO COMPEL THE
PRODUCTION OF DOCUMENTS FROM DEFENDANT FOUNDRY NETWORKS, INC.**

## TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ........................................................................... 1

II.   PROCEDURAL BACKGROUND........................................................................ 5

     A.    Foundry's Blanket Refusal To Produce Any Technical Documents
           Relevant To Showing How Its Accused Products Operate Except For
           Materials Publicly Available On Its Website............................................. 5

     B.    Foundry's Refusal To Identify Its Customers Whom Enterasys May Be
           Required To Prove Are Direct Infringers Of The Patents-In-Suit (Request
           No. 102) ................................................................................................... 7

     C.    Foundry's Refusal To Produce Unpublished Patent Applications
           Potentially Reflecting Its Knowledge And/Or Construals Of The Patents-
           In-Suit (Request No. 98) ......................................................................... 9

     D.    Foundry's Refusal To Produce Documents Sufficient To Establish The
           First And Last Sales Dates Of Its Various Models Of Accused Products
           (Request No. 103) ................................................................................... 10

     E.    Foundry's Blanket Refusal To Produce All Documents Responsive To
           Enterasys' Requests Unless It Unilaterally And Subjectively Deems Them
           To Be "Relevant"................................................................................... 12

III.  ARGUMENT.................................................................................................... 14

     THE COURT SHOULD COMPEL FOUNDRY TO IMMEDIATELY
     PRODUCE SEVERAL CATEGORIES OF RESPONSIVE DOCUMENTS
     THAT FOUNDRY HAS IMPROPERLY WITHHELD WITHOUT ANY GOOD
     FAITH LEGAL OR FACTUAL BASIS ......................................................... 14

     A.    Foundry Has No Good Faith Basis For Withholding All Non-Public
           Documents .............................................................................................. 14

     B.    Foundry Has No Good Faith Basis For Withholding Documents Sufficient
           To Identify Its Customers Who Are Critical To Enterasys' Direct
           Infringement Claims (Request No. 102)................................................. 17

     C.    Foundry Has No Good Faith Basis For Withholding Its Unpublished
           Patent Applications Which Reference And/Or Construe The Patents-In-
           Suit (Request No. 98)............................................................................. 18

D.    Foundry Has No Good Faith Basis For Withholding Documents Sufficient To Establish The First And Last Sales Dates Of Its Various Models Of Accused Products (Request No. 103) ................................................................... 19

E.    Foundry Cannot Be Permitted To Withhold Responsive Documents In An Unverifiable Manner By Making Objections That Permit It To Unilaterally And Subjectively Decide What Is "Relevant" ................................. 20

IV.    CONCLUSION ............................................................................................................. 21

# I.
## <u>PRELIMINARY STATEMENT</u>

Plaintiff Enterasys Networks, Inc. ("Enterasys") hereby moves for an Order compelling Defendant Foundry Networks, Inc. ("Foundry") to produce critically relevant categories of documents responsive to Enterasys' first set of document requests.  As detailed below, without any good faith legal or factual basis, Foundry has issued blanket refusals to produce certain general categories of documents responsive to all of Enterasys' requests, and has further refused to produce certain specific categories of documents responsive to individual requests.  Foundry's brazen flouting of its discovery obligations can no longer be countenanced, and accordingly Enterasys respectfully requests that the Court grant the present motion in its entirety.

Remarkably, despite this case having been filed nearly a year ago, *Foundry has yet to produce a single non-publicly available document* and it outright refuses to do so.  Thus, in a patent infringement case where the central issues involve determining precisely how Foundry's accused products operate, Foundry has failed to produce any of its key engineering or technical documents such as hardware and software specifications, schematics, chipset specifications, and architectural specifications.  Instead, Foundry has improperly limited the production of documents pertaining to its products to *only those materials that are publicly available on its website*.  As such, Foundry has systematically thwarted Enterasys from obtaining the essential evidence required to perform a comprehensive infringement analysis and to ultimately prove its infringement allegations.

Foundry does not even attempt to argue that it has withheld all non-public documents on grounds that they are somehow non-responsive or irrelevant to the case.  Rather, Foundry's tack is to use its own noncompliance with discovery obligations as leverage in attempting to force Enterasys to provide patent claim charts at a premature stage of the case.  Indeed, Foundry has

1

unequivocally taken the position that it will not produce any non-publicly available documents unless and until Enterasys first discloses its claim charts.  But as Enterasys has elsewhere demonstrated,[1] Foundry's premature demands directly contravene the Court's Scheduling Order which establishes July 17, 2006 as the due date for Enterasys to provide claim charts.  Moreover, because Foundry has refused to produce any non-public engineering or technical documents, the claim charts that it purports to seek can necessarily contain nothing more than the pre-suit infringement analysis undertaken by Enterasys' attorneys which clearly is protected from disclosure as work product.  As a matter of law, such work product protections need only be waived in the context of defending against a Rule 11 motion.  Here, recognizing that it could never prevail on such a motion, Foundry is trying to make an end-run around Rule 11 by employing abusive discovery tactics to obtain work product to which it is not entitled.

Foundry's argument that absent the immediate receipt of claim charts it cannot possibly understand what issues are relevant to the case for discovery purposes -- and therefore cannot comply with its discovery obligations -- is completely specious.  As a point of comparison, oftentimes in patent cases claim charts are not served until the time of summary judgment motions or *Markman* hearings that occur *after the close of discovery*.  In any event, here Enterasys has provided Foundry with interrogatory responses which expressly identify the asserted patent claims, the accused products, the accused product features, and the statutory bases for Enterasys' infringement allegations.  Tellingly, Foundry has proven more than capable of understanding what this case is about whenever its own purposes have been served.  Thus, for

---

[1] Enterasys has already presented the Court with detailed arguments relating to these matters in its brief in opposition to Foundry's motion to compel further answers to interrogatories (*See* Docket No. 37).  That pending motion is currently scheduled to be heard by Magistrate Collings on June 16, 2006.  Because Foundry's motion and the present motion address substantially overlapping issues, Enterasys is requesting that they be heard together simultaneously.

example, Foundry:  **(i)** has produced 17,000 pages of *publicly available* technical documents, but purportedly lacks sufficient understanding to identify any responsive *non-public* technical documents; **(ii)** has asserted affirmative defenses of non-infringing uses, claim construction estoppel, and patent invalidity, each of which would require that Foundry first have undertaken a detailed analysis of the asserted patent claims; **(iii)** has produced 40,000 pages of alleged "prior art" which would have necessitated Foundry's prior construal of the asserted patent claims; and **(iv)** has recently served a third party subpoena on Cisco Systems that provides detailed technical definitions and document requests directed to specific products and product features ostensibly covered by the patents-in-suit.

Aside from its overarching refusal to produce non-public documents, Foundry also is refusing in bad faith to produce certain specific categories of documents responsive to individual Enterasys requests:

**Request No. 102.**  As to patent claims under which Enterasys is accusing Foundry of *indirect* infringement, the law requires Enterasys to prove that Foundry's customers are the *direct* infringers.  Yet Foundry refuses to provide documents sufficient to identify who its customers are and which accused Foundry products they have purchased.

**Request No. 98.**  To establish *indirect* infringement against Foundry, Enterasys also must prove that Foundry was contemporaneously aware of the existence of the patents-in-suit.  But Foundry refuses to produce any of its own unpublished patent applications that cite to the patents-in-suit and would thereby establish Foundry's knowledge of their existence.  Moreover, such applications may also contain Foundry's interpretations and construals of the patents-in-suit which would indisputably be of critical relevance to the case.

**Request No. 103.**  As a matter of law, Enterasys is only entitled to pursue patent infringement claims against accused Foundry products that were sold during certain relevant time periods.  Here, however, Foundry refuses to produce documents sufficient to establish the first and last sales dates of its various models of accused products, thereby precluding Enterasys from determining which products are properly subject to its infringement claims.

Finally, in addition to its outright refusals to produce documents, Foundry also has asserted an improper and unintelligible relevance objection in each of its responses to Enterasys' document requests.  Indeed, even as to requests for which Foundry is agreeing to produce documents, Foundry does not agree to produce *all responsive documents*; rather, Foundry only agrees to produce whatever subsets of responsive documents it unilaterally deems to be "relevant."  When asked about what criteria it is using to determine whether it considers an otherwise responsive document to be "relevant," Foundry has repeatedly declined to provide any explanation whatsoever.  Accordingly, Enterasys is left in the unfair and untenable position of never being able to determine whether or not Foundry has withheld responsive documents on grounds of its subjective belief that they are irrelevant.  In short, the Court should require Foundry to respond to each of Enterasys' document requests in one of three ways:  either **(i)** agree to produce all responsive documents; **(ii)** object to the request in its entirety; or **(iii)** if the request is objected to only in part, identify what categories of responsive documents are being withheld on grounds of their ostensible irrelevance or on any other basis.

For all of these reasons which are addressed in greater detail below, the Court should enter an Order compelling Foundry to immediately produce all improperly withheld documents and to withdraw or modify its improper relevance objections.

## II.
## PROCEDURAL BACKGROUND

**A.**    **Foundry's Blanket Refusal To Produce Any Technical Documents Relevant To Showing How Its Accused Products Operate Except For Materials Publicly Available On Its Website**

Foundry has refused to produce any non-public documents in response to Enterasys First Set of Requests for the Production of Documents and Tangible Things upon Foundry (the "Requests").  Foundry set forth its refusal to produce non-public documents in its initial responses to the Requests (the "Initial Document Responses").  Despite Enterasys' attempts to narrow any dispute and to obtain responsive non-public documents, Foundry has simply reiterated and confirmed on multiple occasions that it is refusing to produce *any* non-public documents to Enterasys.  During a May 22, 2006 meet-and-confer between the parties, Foundry confirmed that it has not, and will not, produce any non-public documents at this time.  (*See* Declaration Of Marc N. Henschke filed contemporaneously herewith ("Henschke Decl.") at ¶ 14).  Then, in a May 26, 2006 letter from its counsel, Foundry once again reiterated that it will not produce non-public documents to Enterasys.  (*See* Henschke Decl. at Exh. 8).  As a result of its unwarranted position, Foundry has failed to produce any of the key technical documents (*e.g.*, hardware specifications, software specifications, schematics, training guides, chipset specifications, architectural specifications) that Enterasys has requested and which Enterasys needs in order to prove its infringement claims.  Indeed, as Foundry readily admits, the only documents it has produced relating to its products are the types that are publicly-available on its website.  (*See* Henschke Decl. at Exh. 6, 8).

Notably, Foundry does not even attempt to suggest that its non-public documents are not responsive or somehow irrelevant.[2]  Instead, Foundry simply refuses to produce its non-public documents unless and until Enterasys first provides Foundry with detailed claim charts and its infringement analysis.  As the Court is aware, Enterasys has already fully addressed this specious argument in its Memorandum In Opposition to Defendant Foundry Networks, Inc.'s Motion to Compel Further Answers to Its Interrogatories Nos. 2 and 3 ("Opposition to Foundry's Motion to Compel").  (*See* Docket Entry 37).  As Enterasys set forth in the Opposition to Foundry's Motion to Compel, Foundry is trying to use its refusal to produce non-public documents as leverage to force Enterasys into providing Foundry with its pre-suit investigation, which is, of course, privileged and not subject to production.  Foundry has set forth no other basis for its refusal to produce its non-public documents.

Foundry's assertion that it cannot meaningfully understand the issues in the case, and therefore cannot produce its non-public documents, is simply not credible.  Foundry's actions belie its words and show that it in fact has a comprehensive understanding of the issues in this case.  First, Foundry's Answer asserts, *inter alia*, the following affirmative defenses:  laches, invalidity, claim construction estoppel and non-infringing use.  (*See* Henschke Decl. at Exh. 1)[3] Pursuant to Fed. R. Civ. P. 8 and 11, each of these affirmative defenses must be asserted in good faith, and each would require that Foundry first have undertaken a detailed infringement analysis.  Second, Foundry understood the issues well enough to produce approximately 40,000

---

[2] It is worth noting that initially Foundry objected to producing its non-public documents on grounds that they were "confidential."  Since that time, however, the parties have entered into a Stipulated Protective Order, and Foundry has confirmed that it is no longer basing its refusal to produce non-public documents on confidentiality grounds. (*See* Henschke Decl. at Exh. 6; ¶ 14).

[3]  In support of its laches defense, Foundry states that Enterasys' claims should be barred due to "… Enterasys' (and its predecessor's-in-interest) knowledge of Foundry allegedly infringing actions, Enterasys's (and its predecessor's-in-interest) inexcusable failure to diligently and timely pursue its infringement claims from the time it became aware it had claims against Foundry … ."  (*See* Henschke Decl. at Exh. 1, p. 8).

pages of documents that it claims are invalidating prior art. (*See* Henschke Decl. at ¶ 12). Third, Foundry has produced approximately 17,000 pages of responsive publicly-available technical documents (*e.g.*, product manuals) that are available on Foundry's website, yet simultaneously claims to be completely unable to determine the responsiveness of non-public documents. (*See* Henschke Decl. at Exh. 6, 8; ¶ 11). Finally, on May 26, 2006, Foundry served a subpoena on non-party Cisco Systems, Inc., through which Foundry seeks a number of specific documents with specific definitions of the key technology terms that are the subject of Enterasys' asserted patent claims in this matter. (*See* Henschke Decl. at Exh. 9).

**B.    Foundry's Refusal To Identify Its Customers Whom Enterasys May Be Required To Prove Are Direct Infringers Of The Patents-In-Suit (Request No. 102)**

For certain of its patent claims in this matter, Enterasys has alleged that Foundry is liable for indirect infringement (*i.e.*, inducement of infringement or contributory infringement). To prove its case under these theories of liability, Enterasys must show that direct infringement has been committed by Foundry's customers. Despite this, Foundry has refused to identify its customers or the Foundry products that they have purchased.

Enterasys' Document Request No. 102 seeks information relating to Foundry's customers, as set forth below:

> [a]ll documents and tangible things in your possession, custody, or control sufficient to identify each of Foundry's customers and which of the Foundry Products[4] that each such customer has purchased or licensed.

(*See* Henschke Decl. at Exh. 2, p.32).

---

[4] Enterasys' Document Requests define "Foundry Products" as "any products sold or licensed by Foundry at any time during the Damages Period including, but not limited to, products belonging to any of the following product families: FastIron; NetIron; IronView; ServerIron; TurboIron; BigIron; EdgeIron; and AccessIron." (*See* Henschke Decl. at Exh. 2, p. 6).

Foundry has refused to produce such documents, asserting in both its Initial[5] and Supplemental[6] Responses that it:

> objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information.  By its overbreadth, the Request includes documents which are not relevant to any claim or defense of any party to this litigation, or for which the burden or expense of the proposed discovery outweighs the likely benefit.  Foundry objects to this request to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.  Foundry objects to this request as premature as it seeks documents related to damages that have been portioned to Phase II[7] of discovery.

(*See* Henschke Decl. at Exh. 3, p. 101; Exh. 4, p. 166).  Enterasys raised its concerns with Foundry's refusal to provide this information in a May 1, 2006 letter to Foundry.  (*See* Henschke Decl. at Exh. 5).   On May 8, 2006, counsel for the parties conducted their first telephonic meet-and-confer during which Foundry reiterated its refusal to produce these documents.  (*See* Henschke Decl. at ¶ 13).   Then, on May 17, 2006, counsel for Foundry sent a letter to counsel for Enterasys wherein Foundry further refused to produce information relating to its customers.  (*See* Henschke Decl. at Exh. 6).  Finally, Foundry asserted this position yet again in an objection that appears in its Supplemental Responses served on May 24, 2006.  (*See* Henschke Decl. at Exh. 4, p. 166).

---

[5] On April 3, 2006, Foundry served its Responses and Objections to Plaintiff Enterasys Networks, Inc.'s First Set of Requests for Production of Documents (Nos. 1-20) (the "Initial Responses") (*See* Henschke Decl. at Exh. 3).

[6] On May 24, 2006, Foundry served  its Supplemental Responses and Objections to Plaintiff Enterasys Networks, Inc.'s First Set of Requests for Production of Documents (Nos. 1-20) (the "Supplemental Responses") (*See* Henschke Decl. at Exh. 4).

[7] As set forth in the Court's November 18, 2005 Scheduling Order (Docket Entry 31), discovery has been phased in this matter.  "Phase I" discovery includes "non-willful infringement, invalidity and unenforceability issues," and "Phase II" includes "all issues, including those issues addressed in Phase I.  (*See* the Joint Statement And Discovery Plan (Docket Entry 28) filed in this action on October 27, 2005).

**C.**     **Foundry's Refusal To Produce Unpublished Patent Applications Potentially Reflecting Its Knowledge And/Or Construals Of The Patents-In-Suit (Request No. 98)**

Enterasys' Requests seek documents relating to Foundry's unpublished patent applications insofar as they refer or cite to the Enterasys patents-in-suit. Enterasys narrowly-tailored this request to capture only those situations where Foundry has referred or cited to one of the Enterasys patents, which information is necessary and related to Enterasys' indirect infringement claims against Foundry. Indeed, as set forth more fully below, in order for Enterasys to sustain its indirect infringement claims against Foundry it must show that Foundry had knowledge of the particular patent-in-suit. Obviously, if Foundry cited to a patent-in-suit in connection with one of its own patent applications, then it demonstrably had knowledge of the Enterasys patent it cited. Moreover, in instances where Enterasys patents have been cited, Foundry may well have had occasion to interpret and construe them in an attempt to establish the novelty of its own inventions.

Based on this, Document Request No. 98 requests:

> [a]ll documents and tangible things in your possession, custody, or control that constitute any unpublished patent applications assigned to Foundry, and/or portions of their prosecution histories, that reference or cite to any of the Enterasys Patents.[8]

(*See* Henschke Decl. at Exh. 2, p. 32). In refusing to produce these discoverable and relevant documents, Foundry states in both its Initial and Supplemental Responses that it:

> objects to the phrase "unpublished patent applications" as vague and ambiguous. Foundry objects to this request as it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible information. By

---

[8] The Document Requests define "Enterasys Patents" as "the patents-in-suit which consist of the following six issued United States patents:  **(i)** No. 5,251,205 (the "'205 patent"); **(ii)** No. 5,390,173 (the "'173 patent"); **(iii)** No. 6,128,665 (the "'665 patent"); **(iv)** No. 6,147,995 (the "'995 patent"); **(v)** No. 6,539,022 (the "'022 patent"); **(vi)** No. 6,560,236 (the "'236 patent")."  (See Henschke Decl. at Exh. 2, p. 6).

> its overbreadth, the Request includes documents which are not
> relevant to any claim or defense of any party to this litigation, or
> for which the burden or expense of the proposed discovery
> outweighs the likely benefit.  Plaintiff has not identified the
> accused features of Foundry products and the basis for its
> infringement allegations.  Without an identification of the accused
> features of the products, Foundry cannot fully assess the relevance
> of this request, and on that basis, objects to the request as irrelevant
> and not likely to lead to admissible and/or relevant information.
> Foundry objects to this request to the extent that it seeks
> information protected by the attorney-client privilege and/or the
> work product doctrine.

(*See* Henschke Decl. at Exh. 3, pp. 97-98; Exh. 4, p. 161).  Enterasys raised its concerns with

Foundry's refusal to provide this discoverable information in its May 1, 2006 letter.  (*See*

Henschke Decl. at Exh. 5).   During the May 8, 2006 meet-and-confer, Foundry continued to

assert its refusal to produce these documents.  (*See* Henschke Decl. at ¶ 13).  Foundry further

reiterated its refusal to provide these documents in its May 17, 2006 letter.  (*See* Henschke Decl.

at Exh. 6).  Finally, Foundry then further reiterated this position by asserting the objection quoted

above into it Supplemental Responses, which it served on May 24, 2006.  (*See* Henschke Decl. at

Exh. 4, p. 161).

D.    **Foundry's Refusal To Produce Documents Sufficient To Establish The First And
      Last Sales Dates Of Its Various Models Of Accused Products (Request No. 103)**

Foundry has likewise refused to produce documents sufficient  to show the first and last

sales dates of its accused products.  Such information is necessary and important given the 6-year

statutory damages period that is applicable in patent cases.  Because of this 6-year period,

information establishing the dates of sale of the accused products is necessary in order to

determine which accused products were or were not sold during the damages period.  Notably,

this is not only a damages issues, but also a liability issue as it will dictate which products are in

play for purposes of proving infringement by way of claim charts and infringement analyses.

Foundry apparently bases its refusal to produce such documents on its speculation that Enterasys

10

is not entitled to damages for sales that occurred prior to June 21, 2005 because, Foundry

contends, Enterasys failed to mark its products in accordance with 35 U.S.C. § 287.  (*See*

Henschke Decl. at Exh. 6).  While Enterasys disputes this contention, it provides no basis for

withholding documents because even if Foundry's speculation were true and only products sold

after June 21, 2005 were relevant here, the requested information regarding sales dates of

accused products would still be necessary in order to establish which specific products were and

were not sold subsequent to June 21, 2005.

> In trying to ascertain this information, Document Request No. 103 seeks:

> > [a]ll documents and tangible things in your possession, custody, or
> > control sufficient to identify the first date of sale (and if applicable
> > the last date of sale) of each of the Foundry Products that have
> > been sold or licensed at any or all times during the Damages
> > Period.[9]

(*See* Henschke Decl. at Exh. 2, p. 101).  Again, Foundry refuses to produce responsive

documents, stating the following identical objection in both its Initial and Supplemental

Responses:

> > Foundry objects to the phrase "the first date of sale (and if
> > applicable the last date of sale)" as vague and ambiguous.  Foundry
> > objects to this request as it is overly broad, unduly burdensome,
> > harassing and not reasonably calculated to lead to the discovery of
> > admissible information.  By its overbreadth, the Request includes
> > documents which are not relevant to any claim or defense of any
> > party to this litigation, or for which the burden or expense of the
> > proposed discovery outweighs the likely benefit.  Plaintiff has not
> > identified the accused features of Foundry products and the basis
> > for its infringement allegations.  Without an identification of the
> > accused features of the products, Foundry cannot fully assess the
> > relevance of this request, and on that basis, objects to the request as
> > irrelevant and not likely to lead to admissible and/or relevant
> > information.  Foundry objects to this request to the extent that it

---

[9]  The Document Requests define "Damages Period" as the six-year plus "time period beginning on June 21, 1999 and ending on the date upon which this action is fully resolved by way of settlement or final unappealable judgment."  (*See* Henschke Decl. at Exh. 2, p.6).

seeks information protected by the attorney-client privilege and/or
the work product doctrine.

(*See* Henschke Decl. at Exh. 3, p. 101; Exh. 4, p. 166).  Enterasys addressed Foundry's refusal to

provide this discoverable information in its May 1, 2006 letter.  (*See* Henschke Decl. at Exh. 5).

During the parties' May 8, 2006 meet-and-confer, Foundry reiterated its refusal to produce these

documents.  (*See* Henschke Decl. at ¶ 13).  Foundry further reiterated its refusal to provide these

documents in its May 17, 2006 letter.  (*See* Henschke Decl. at Exh. 6).  Foundry further

reiterated this position by asserting the objection quoted above into it Supplemental Responses,

which it served on May 24, 2006.  (*See* Henschke Decl. at Exh. 4, p. 166).  Lastly, in a May 26,

2006 letter, Foundry's own counsel confirmed the importance of establishing sales dates in this

case by asserting the position that "[b]eyond the accused products, Foundry will not produce

documents relating to products sold only prior to June 21, 2005."  (*See* Henschke Decl. at Exh.

8).

**E.**  **Foundry's Blanket Refusal To Produce All Documents Responsive To Enterasys'
Requests Unless It Unilaterally And Subjectively Deems Them To Be "Relevant"**

In addition to its refusal to produce certain categories of documents altogether, when

Foundry does agree to produce documents, it only agrees to produce documents that it secretly

determines to be "relevant."  Foundry refuses to provide Enterasys with the criteria it uses to

make this determination of relevance, and likewise refuses to inform Enterasys as to what

otherwise responsive documents have been withheld from production on ostensible relevance

grounds.

In all of its document responses, Foundry initially states a general relevance objection:

"to the extent that they seek documents and things not relevant to and/or reasonably calculated to

lead to the discovery of admissible evidence."  (*See* Henschke Decl. at Exh. 3, ¶ 2, p. 2; Exh. 4, ¶

2, p. 2).  Then, even in instances where Foundry is agreeing to produce documents, it applies a

12

second specific relevance objection. For example, Document Request No. 13 seeks technical

documents relating to a specific VLAN tagging claim in one of the patents-in-suit. Foundry

responds to this request, like it does to all other technically-related requests, as follows:

> . . . Subject to and without waiver of the Preliminary Statement and
> General Objections set forth above which are incorporated herein
> by reference, Foundry responds as follows: Foundry will search
> for, and if found, produce non-privileged documents *relevant* to
> Phase I discovery from which information requested by this
> request may be obtained.

(*See* Henschke Decl. at Exh. 4, Supplemental Response No. 13, p. 26).

In other responses, Foundry takes its specific relevance objections a step further and

actually asserts a double-relevance objection:

> . . . Subject to and without waiver of the Preliminary Statement and
> General Objections set forth above which are incorporated herein
> by reference, Foundry responds as follows: Foundry will search
> for, and if found, produce *relevant*, non-privileged documents that
> refer or related to any claim or defense asserted by a party in this
> case that are *relevant* to Phase I discovery.

(*See generally* Henschke Decl. at Exh. 4, Supplemental Response No. 4, p. 13; Supplemental

Response No. 81, pp. 137-138) (emphasis added).

Nowhere in its Document Responses does Foundry explain its "relevant" (or double-

"relevant") objections or otherwise inform Enterasys as to which categories of documents are

being withheld based on what Foundry subjectively determines to be "relevant." Enterasys

sought clarification from Foundry on its definition or "relevant" in its May 1, 2006 letter. (*See*

Henschke Decl. at Exh. 5). Enterasys also raised this issued during the May 8, 2006 meet-and-

confer. (*See* Henschke Decl. at ¶ 13). Foundry has simply refused to provide any explanation to

Enterasys of what criteria it is using to make subjective relevance determinations, or to identify

what responsive documents are being withheld as purportedly irrelevant. (*See* Henschke Decl. at

¶ 13).

**III.**

**ARGUMENT**

**THE COURT SHOULD COMPEL FOUNDRY TO IMMEDIATELY
PRODUCE SEVERAL CATEGORIES OF RESPONSIVE DOCUMENTS
THAT FOUNDRY HAS IMPROPERLY WITHHELD WITHOUT ANY
GOOD FAITH LEGAL OR FACTUAL BASIS**

**A.      Foundry Has No Good Faith Basis For Withholding All Non-Public Documents**

Foundry has set forth no legitimate basis to withhold its non-public documents in response to Enterasys' discovery requests.  As Foundry explained during a recent meet-and-confer, the sole basis for Foundry's improper refusal to produce *any* non-public documents is its claim that Enterasys has not yet produced detailed claim charts or otherwise provided its detailed infringement analysis.  Of course, Enterasys cannot provide such detailed information without the type of non-public information that Foundry refuses to produce, such as Foundry's key technical documents (hardware and software specifications, schematics, training guides, etc.).  Although these issues have already been addressed more fully in the parties' submissions on Foundry's recently-filed motion to compel, Enterasys confront them again here because they constitute Foundry's only asserted justification for withholding non-public documents.

Foundry has created the proverbial catch-22 situation.  According to Foundry's bad faith position, it will only produce its non-public documents *after* Enterasys first produces detailed claim charts showing precisely how each of Foundry's products infringe the individual claims of the patents-in-suit.  However, any claims charts prepared to date by Enterasys would have been prepared solely with the aid of *publicly-available* documents, which Enterasys obtained and examined during its pre-suit investigation.  Like in any patent case, Enterasys' analysis of Foundry's infringing products is not yet complete, and will require reliance principally upon

14

certain non-public documents (such as hardware and software specifications, schematics, training guides, etc.) in Foundry's possession which are the subject of Enterasys' proper discovery requests.[10]

In refusing to produce its non-public documents, Foundry is attempting to hold the discovery process hostage as leverage to force Enterasys into producing its claim charts now. This scheme of insisting that Enterasys provide claim charts now -- without the aid of proper discovery -- has been engineered by Foundry to obtain information from Enterasys' pre-suit investigation, which is clearly protected from disclosure by the attorney-client privilege and work product doctrine. *See* FED. R. CIV. P. 26(b)(3); *Phillips Elecs. N. Am. Corp. v. Universal Elecs. Inc.*, 892 F. Supp. 108, 110 (D. Del. 1995); *State of Maine v. U.S. Dept. of Interior*, 298 F.3d 60, 66 (1st Cir. 2002*); In re Grand Jury Subpoena*, 220 F.R.D. 130, 141 (D. Mass. 2004). As a matter of law, no waiver of these protections is required of Enterasys unless Foundry brings a motion under Rule 11. Until such time, Enterasys is under no obligation to disclose the privileged legal analysis performed in its pre-suit investigation.

When faced with this reality, Foundry invokes the completely specious argument that it simply cannot understand the case well enough to respond to Enterasys' document requests, stating that it requires detailed claim charts in order to "frame the issues of the case." (*See generally* Henschke Decl. at Exh. 6). Such an argument is unfounded and asserted in bad faith. Despite its apparent inability to understand the issues or to comply with its discovery obligations, Foundry has been able to: (1) assert invalidity, claim construction estoppel and non-infringing use defenses in its Answer, (*see* Henschke Decl. at Exh. 1, pp. 7-9); (2) produce roughly 40,000

---

[10] It is worth noting that Foundry's co-defendant, Extreme Networks, Inc. has agreed to produce its non-public documents now that the parties have entered into the Stipulated Protective Order governing the handling of confidential documents.

pages of alleged invalidating prior art, (see Henschke Decl. at ¶ 12); (3) produce approximately 17,000 pages of publicly-available product manuals that are available on Foundry's website, (*see* Foundry's Motion to Compel Answers to Interrogatories Nos. 2 and 3, Docket Entry 36, at 3; Henschke Decl. at ¶ 11; Exh. 6); and (4) issue a third-party subpoena to Cisco Systems, Inc. wherein Foundry provides specific definitions of some of the key technology terms contained in the Enterasys patents-in-suit and which seeks several specific categories of documents. (*See* Henschke Decl. at Exh. 9).

If Foundry were asserting its lack of understanding in good faith, then it could not possibly assert these affirmative defenses since each would require that Foundry first have undertaken a detailed infringement analysis of its own reflecting a substantial appreciation of the relevant issues. Likewise, if Foundry legitimately did not understand the issues in the case, it would not have been able to produce 40,000 pages of alleged invalidating prior art, or 17,000 of publicly-available product manuals. Lastly, if Foundry did not understand the issues or technology at issue then it could not possibly have sought third party discovery from Cisco on such a defined and tailored basis. In short, when it comes to acting to its own advantage Foundry fully understands this case, but when it comes to providing infringement evidence to Enterasys it purportedly loses all comprehension of what this case is about.

It is abundantly clear that Foundry has no good faith basis for its refusal to produce its non-public documents. What is perfectly clear from Foundry's actions, however, is that Foundry is improperly withholding responsive documents in bad faith. Foundry must be ordered to produce its responsive non-public documents without further delay.

**B.     Foundry Has No Good Faith Basis For Withholding Documents Sufficient To Identify Its Customers Who Are Critical To Enterasys' Direct Infringement Claims (Request No. 102)**

Enterasys' Document Request No. 102 seeks information sufficient to identify Foundry's customers and the Foundry products they use.  Foundry has objected to providing this information, and contends it its only relevant to damages issues, which are governed by Phase II discovery under the Court's Scheduling Order.  Foundry is wrong, and this information is directly relevant, and crucial to infringement issues that are at issue in Phase I discovery.

For certain of the asserted claims at issue, Enterasys is principally alleging that Foundry is liable for inducement of infringement and/or contributory infringement under 35 U.S.C. §271(b) and (c) (*e.g.*,  asserted claims directed to a "network of information handling devices" or a "packet data communications network").  In these instances, the direct infringers are Foundry's customers, not Foundry.  It is well-settled that in order to successfully prove up such inducement and/or contributory infringement claims, Enterasys must first show that a direct infringement has occurred.  *See, e.g., RF Delaware, Inc. v. Pacific Keystone Techn, Inc.* 326 F.3d 1255, 1268 (Fed. Cir. 2003 ("liability for either active inducement of infringement or for contributory infringement is dependent upon the existence of direct infringement. . . .").  Here, the direct infringement is committed by Foundry's customers who buy and use Foundry's products in a network. Accordingly, Enterasys requires certain basic information from Foundry (*e.g.*,  its customer lists and the products each has purchased or licensed) in order to complete the infringement analysis to support its inducement and contributory infringement claims against Foundry.  It cannot be

disputed, therefore, that this information is highly relevant to the infringement analysis, and should be produced by Foundry without further delay.[11]

**C.    Foundry Has No Good Faith Basis For Withholding Its Unpublished Patent Applications Which Reference And/Or Construe The Patents-In-Suit (Request No. 98)**

Foundry also has improperly refused to produce any of its unpublished patent applications that reference or cite any of the Enterasys patents-in-suit.  As set forth above, Document Request No. 98 is narrowly-tailored so as to target only those unpublished patent applications that are relevant to Enterasys' infringement claims.  Foundry has failed to set forth any good faith basis for withholding them.

Any unpublished patent applications that Foundry has submitted to the United States Patent and Trademark Office ("USPTO") or foreign patent office are discoverable and relevant to Enterasys' inducement and contributory infringement claims against Foundry.  As a matter of law, in order to prove such indirect infringement claims, Enterasys must show that Foundry was aware of the existence of any patent that governs the infringing use.  *See, e.g., Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 n.4 (Fed. Cir. 1990) (a contributory infringer must be shown to have had contemporaneous "knowledge of the patent which proscribed . . . [the infringing] use.").  Obviously, if Foundry referred to and/or cited a particular patent in one of its own submissions to a patent office, Foundry necessarily possessed knowledge of the cited Enterasys patent.  The documents implicated by Document Request No. 98 would establish not only that Foundry was aware of a particular patent, but also a date by which Foundry became aware of such patent.  Moreover, to the extent that Enterasys patents have been cited, it is also

---

[11] It is worth noting that Foundry's co-defendant, Extreme Networks, Inc., acknowledges the correctness of Enterasys' position on this issue and has agreed to produce customer information in response to Enterasys' analogous document requests to Extreme.

quite possible that Foundry interpreted or construed such patents in remarks to the patent examiner in an effort to establish the novelty of its own inventions.  Notably, this Request is narrowly tailored to discover only Foundry's *unpublished* patent applications since  Enterasys has no other way of obtaining these patent applications other than from Foundry itself.  Once again, it cannot be disputed that the requested documents are relevant to Enterasys' claims and are in the possession, custody or control of Foundry.  Accordingly, they should be produced without further delay.

D.    **Foundry Has No Good Faith Basis For Withholding Documents Sufficient To Establish The First And Last Sales Dates Of Its Various Models Of Accused Products (Request No. 103)**

Foundry has also refused to produce documents evidencing the dates of sale of its accused products (*i.e.*, the first and last date of sale for infringing products).  (*See* Henschke Decl. at Exh. 4, p. 166-167).  Once again, Foundry has refused to produce this information on the specious grounds that it is purportedly unable to assess the relevance of the request.  (*See* Henschke Decl. at Exh. 4, p. 166-167).  But because patent law imposes a six-year statutory damages period, such information would clearly be relevant in any patent case to determine which accused products were sold during the damages period and are therefore properly subject to an infringement analysis.  Moreover, here such information becomes especially relevant in light of the extraordinary assertion by Foundry that it will only produce documents relating to products it sold after June 21, 2005 based on speculation that Enterasys is not entitled to pre-suit damages owing to an ostensible failure to mark its products in accordance with 35 U.S.C. § 287. (*See* Henschke Decl. at Exh. 6; Exh. 8).  If Foundry is correct, it would of course be critical to learn which of its accused products were and were not sold subsequent to June 21, 2005.

Information relating to sales dates is highly relevant to this case for another reason as well.  In its Answer, Foundry has asserted laches as an affirmative defense.  Under this defense,

Foundry is essentially stating that Enterasys should have known about Foundry's infringing activities well-before it filed the instant action. *See., e.g., A.C. Aukerman Company v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1028-29 (Fed. Cir. 1992) (*en banc*). If Foundry had any good-faith basis whatsoever for asserting this affirmative defense, then it must prove that it sold particular product models related to the patents-in-suit well-before Enterasys commenced this action. Enterasys' Document Request No. 103 is simply attempting to obtain documents that show when Foundry began to sell a particular product, and likewise when Foundry ceased selling a particular product. This information is critical to Foundry's laches defense and is therefore discoverable and relevant and must be produced.

Accordingly, Foundry should be ordered to produce the requested documents showing the first and last sales dates of its accused products.

**E.   Foundry Cannot Be Permitted To Withhold Responsive Documents In An Unverifiable Manner By Making Objections That Permit It To Unilaterally And Subjectively Decide What Is "Relevant"**

Foundry has apparently withheld responsive documents from production as "not relevant," but has refused to identify either how it has made such determinations or what documents have been withheld on relevance grounds. This is improper.

As set forth above, in addition to its general relevance objection, Foundry has stated that it will only produce documents "relevant to Phase I discovery." (*See, e.g.*, Henschke Decl., Exh. 4, Supplemental Response No 13, p. 25). In addition, Foundry has indicated it will only produce "*relevant*, non-privileged documents that refer or relate to any claim or defense asserted by a party in this case that are *relevant* to Phase I discovery." (*See, e.g.*, Henschke Decl., Exh. 4, Supplemental Response No 4, p. 13). Such a double relevance filter is virtually unintelligible.

In asserting these objections, Foundry has failed to explain how it reached such a determination or how certain responsive documents are not relevant to a claim or defense at

issue.  Foundry has not even informed Enterasys as to what categories or types of documents are being withheld on relevance grounds to allow Enterasys to challenge such a determination. Moreover, when asked about what criteria it is using to determine whether it considers an otherwise responsive document to be "relevant," Foundry has repeatedly declined to provide any explanation whatsoever.  Accordingly, Enterasys is unable to determine whether or not Foundry has withheld responsive documents on grounds of its subjective belief that they are irrelevant.

As set forth above in the discussion regarding customer lists, Foundry has been flat out wrong before in its demarcation of information as fitting into one phase of discovery or another (*i.e.*, Foundry claims that its customers lists are only relevant to damages, when in fact such information is highly relevant to infringement).  (*See* infra pp. 17-18).  For these reasons, Foundry's unilateral and subjective relevance standard is unacceptable, and must be rejected. *See, e.g., Ares-Serono, Inc., et al. v. Organon Int'l B.V., et al.* 151 F.R.D. 215 (D. Mass. 1993) (noting improper to allow defendant "the unilateral ability to decide the scope" of discovery). Given Foundry's unintelligible relevance position, the Court should require Foundry to respond to each of Enterasys' document requests in one of three ways:  either **(i)** agree to produce all responsive documents; **(ii)** object to the request in its entirety; or **(iii)** if the request is objected to only in part, identify what categories of responsive documents are being withheld on grounds of their ostensible irrelevance or on any other basis.

## IV.
## CONCLUSION

For the foregoing reasons, Enterasys respectfully requests that the Court enter an Order compelling Foundry to immediately produce the responsive categories of documents discussed above, and to withdraw or modify its improper relevance objections.

21

Dated:  June 1, 2006

Respectfully submitted,


ENTERASYS NETWORKS, INC.

By its attorneys,

  /s/ Marc N. Henschke
Christopher P. Sullivan, Esq. (BBO No.485120)
Marc N. Henschke, Esq. (BBO No. 636146)
Alan E. McKenna (BBO No. 644556)
Robins, Kaplan, Miller & Ciresi L.L.P.
800 Boylston Street, 25th Floor
Boston, MA 02199
Tel. (617) 267-2300

Of Counsel:
A. James Anderson, Esq. *(pro hac vice)*
Marla R. Butler, Esq. *(pro hac vice)*
Robins, Kaplan, Miller & Ciresi L.L.P.
2600 One Atlanta Plaza
Atlanta, GA 30326-1386
Tel. (404) 760-4300

Robert A. Auchter, Esq. *(pro hac vice)*
Robins, Kaplan, Miller & Ciresi L.L.P.
1801 K Street, N.W.
Washington, DC  20006
Tel. (202) 775-0725

35031558.4

22

## CERTIFICATE OF SERVICE

I, Marc N. Henschke, hereby certify that on June 1, 2006, I caused the attached *Plaintiff Enterasys Networks, Inc.'s Motion To Compel The Production Of Documents From Defendant Foundry Networks, Inc.* to be served electronically pursuant to the Court's CM/ECF electronic filing system upon Defendants' respective counsel of record as indicated by asterisks below:

Counsel for Defendant Foundry Networks, Inc.:

> William L. Anthony, Jr., Esq.*
> I. Neel Chatterjee, Esq.*
> Michael F. Heafey, Esq.
> Sanjeet K. Dutta, Esq.
> Orrick, Herrington & Sutcliffe LLP
> 1000 Marsh Road
> Menlo Park, CA  94025
>
> Steven M. Bauer, Esq.*
> Jeremy P. Oczek, Esq.*
> Proskauer Rose LLP
> One International Place
> Boston, MA 02110-2600

Counsel for Defendant Extreme Networks, Inc.:

> Terrence P. McMahon, Esq.*
> Vera M. Elson, Esq.*
> David H. Dolkas, Esq.
> McDermott, Will & Emery LLP
> 3150 Porter Drive
> Palo Alto, CA  94303-1212
>
> Peter L. Resnik, Esq.*
> Benjamin A. Goldberger, Esq.*
> McDermott, Will & Emery LLP
> 28 State Street
> Boston, MA  02109-1775
>
> Christopher D. Bright, Esq.
> McDermott, Will & Emery LLP
> 18191 Von Karman Avenue, Suite 400
> Irvine, CA  92612-7107

Dated:  June 1, 2006                  /s/ Marc N. Henschke          
                                      Marc N. Henschke