**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **ENTERASYS NETWORKS, INC.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**EXTREME NETWORKS, INC.,**<br><br>**Defendant.** | **Civil Action No. 05-12298-DPW** |

**EXTREME NETWORKS, INC.'S AMENDED JOINDER IN FOUNDRY NETWORK,**
**INC.'S MOTION TO COMPEL ANSWERS TO INTERROGATORY NOS. 2 AND 3**
**FROM ENTERASYS NETWORKS, INC.**

Defendant Extreme Networks, Inc. ("Extreme") hereby joins Foundry Networks, Inc.'s ("Foundry") Motion To Compel Answers to Interrogatory Nos. 2 and 3 from Enterasys Networks, Inc. ("Enterasys") in Civil Action No. 05-CV-11298 (DPW).

Foundry's Interrogatory No. 2 (Ex. A, Enterasys' Response to Foundry's Interrogatory No. 2) and Extreme's Interrogatory No. 1 (Ex. B, Enterasys' Response to Extreme's Interrogatory No. 1) are essentially the same. The issues related to Enterasys' refusal to answer Foundry's Interrogatory No. 2 and Extreme's Interrogatory No. 1 are also essentially the same. Therefore, to preserve judicial efficiency by resolving these essentially the same issues at one time, Extreme seeks to join Foundry's motion to compel (*i.e.* join issues related to Extreme's Interrogatory No.1 with Foundry's Interrogatory No. 2) as to why these interrogatories should be answered now. In so doing, Extreme relies on arguments made by Foundry in its papers supporting Foundry's motion to compel (Ex. C, Foundry's Motion To Compel Answers to Interrogatory No. 2 and 3 from Enterasys; Ex. D, Foundry's Motion for Leave a Reply Brief in Support of its Motion To Compel Answers to Interrogatory No. 2 and 3 from Enterasys) and

submits that opposition served by Enterasys (Ex. E, Enterasys' Opposition to Foundry's Motion to Compel) serves Extreme's Interrogatory No. 1 and that no further briefing is necessary.

Enterasys' responses to both Extreme and Foundry's interrogatories are essentially the same (See Table 1 Below). Enterasys' refuses to answer them until July 17, 2006. Upon Enterasys' consistent refusal to answer Extreme's Interrogatory No. 1, Extreme corresponded and met-and-conferred with Enterasys in accordance with Local Rule 7.1 to reach a compromise and Enterasys outright refused to answer the Interrogatory or any of its sub-sections (Ex. F, G, and H).

## TABLE 1

| Extreme's Interrogatory No. 1 | Foundry's Interrogatory No. 2 |
|---|---|
| Separately for each asserted claim of each of the patents in suit, identify:<br><br>(a) each Extreme Networks product that Enterasys alleges infringes each such claim;<br><br>(b) explain in detail Enterasys' contentions as to how each such product allegedly infringes each such claim;<br><br>(c) provide a claim chart identifying specifically where each element or limitation of each asserted claim is found within each such product;<br><br>(d) state all bases for Enterasys's contention that the element or limitation is found with the product;<br><br>(e) provide an explanation of whether such alleged infringement is literal or under the doctrine of equivalents;<br><br>(f) specify whether Enterasys contends that there is any alleged liability under each of U.S.C. § 271(a), § 271(b), § 271(c), § 271(f) and/or § 271(g);<br><br>(g) provide an explanation of how 35 U.S.C. § 112, ¶ 6 is satisfied if applicable, including the identity of the function and | Describe in detail and provide a claim chart showing how each FOUNDRY PRODUCT identified in Interrogatory No. 1 infringes each of the corresponding claims. ENTERASYS' response to this interrogatory should: A) identify a proposed construction for each element of each asserted claim that ENTERASYS identifies as being infringed; B) identify specifically where each element of each asserted claim is found within each FOUNDRY PRODUCT, including citation to any supporting evidence; C) identify for each asserted claim element that ENTERASYS contends is a means-plus-function element governed by 35 U.S.C. § 112(6), the structures, acts, or materials in each FOUNDRY PRODUCT that performs the claimed function; and D) state whether each element of each asserted claim is literally present or present under the doctrine of equivalents.<br><br>(Ex. A) |

| any corresponding structure in the specification;<br><br>(h) identify each person whose acts or omissions allegedly give rise to Extreme Networks' alleged liability, and<br><br>(i) identify each document and person upon which Enterasys may rely in support of its infringement contentions.<br><br>(Ex. B) | |
|---|---|
| **Enterasys' Response to Extreme's Interrogatory No. 1** | **Enterasys' Response to Foundry's Interrogatory No. 2** |
| "Enterasys objects to this Interrogatory on grounds that it calls for information that is protected from disclosure by the attorney-client privilege and/or by the work product doctrine; that it is overly broad, unduly burdensome, vague, and ambiguous; and that it seeks information neither relevant to a claim or defense of a party nor reasonably calculated to lead to the discovery of admissible evidence.  Enterasys further objects to this Interrogatory on grounds that it contravenes the Court's Scheduling Order entered in this case on November 18, 2005 by purporting to require that Enterasys determine and identify at this premature juncture which claims of the patents-in-suit that it is intending to assert.<br><br>Enterasys will further respond to this Interrogatory on or after July 17, 2006."<br>(Ex. B) | "Enterasys objects to this Interrogatory on grounds that it calls for information that is protected from disclosure by the attorney-client privilege and/or by the work product doctrine; that it is overly broad, unduly burdensome, vague, and ambiguous; and that it seeks information neither relevant to a claim or defense of a party nor reasonably calculated to lead to the discovery of admissible evidence.  Enterasys further objects to this Interrogatory on grounds that it contravenes the Court's Scheduling Order entered in this case on November 18, 2005 by purporting to require that Enterasys determine and identify at this premature juncture which claims of the patents-in-suit that it is intending to assert against which Foundry products.<br><br>Enterasys will further respond to this Interrogatory on or after July 17, 2006."<br>(Ex. A) |

For the foregoing reasons, Extreme respectfully requests that Extreme's motion to join Foundry's Motion To Compel Answers to Interrogatory No. 2 from Enterasys be granted.

Dated:  June 5, 2006                        EXTREME NETWORKS, INC.

                                            By its attorneys,


                                            _____/s/ Firasat Ali_____

                                            Firasat M. Ali (admitted *Pro Hac Vice*)

                                            Terrence P. McMahon
                                            Vera M. Elson
                                            Dave Dolkas
                                            McDermott Will & Emery LLP
                                            3150 Porter Drive
                                            Palo Alto, CA 94304-1212
                                            (650) 813-5000

                                            Christopher D. Bright
                                            McDermott Will & Emery LLP
                                            18191 Von Karman Ave.
                                            Suite 400
                                            Irvine, CA 92612-7107
                                            (949) 851-0633

                                            Peter L. Resnik (BBO# 417180)
                                            McDermott Will & Emery LLP
                                            28 State Street
                                            Boston, Massachusetts  02109-1775
                                            (617) 535-4000
                                            MCDERMOTT WILL & EMERY LLP


### Certificate Pursuant To Rule 7.1

The undersigned counsel hereby certifies that counsel for the parties have conferred in an attempt
to resolve or narrow the issues presented by this motion, and that counsel for plaintiff Enterasys
would not agree to the relief sought by this motion.  The undersigned counsel also certifies that
counsel for plaintiff Enterasys agreed and did not object to Extreme's joining into Foundry's
motion to compel and being heard at the hearing scheduled for June 16, 2006.


                                            _____/s/ Firasat Ali_____
                                            Firasat M. Ali (admitted *Pro Hac Vice*)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ENTERASYS NETWORKS, INC., ) | Civil Action No: 05-CV-11298 (DPW) |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.           ⟨ ) | |
| ) | |
| FOUNDRY NETWORKS, INC., ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF ENTERASYS NETWORKS, INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT FOUNDRY NETWORKS, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Enterasys Networks, Inc. ("Enterasys" or "Plaintiff") hereby responds and objects to the First Set Of Requests For Production Of Documents And Things served by Defendant Foundry Networks, Inc. ("Foundry" or "Defendant") on or about March 3, 2006.

## GENERAL RESPONSE

Enterasys' responses and objections to Foundry's document requests are made without waiving, or intending to waive, but on the contrary, expressly reserving: (a) the right to object, on the grounds of competency, privilege, relevancy or materiality, or any other proper grounds, to the use of the documents, for any purpose in whole or in part, in any subsequent step or proceeding in this action or any other action; (b) the right to object on any and all grounds, at any time, to other document production requests or other discovery procedures involving or relating

Enterasys will further respond to this Interrogatory on or after July 17, 2006.

## INTERROGATORY NO. 2:

Describe in detail and provide a claim chart showing how each FOUNDRY PRODUCT identified in Interrogatory No. 1 infringes each of the corresponding claims. ENTERASYS' response to this interrogatory should: A) identify a proposed construction for each element of each asserted claim that ENTERASYS identifies as being infringed; B) identify specifically where each element of each asserted claim is found within each FOUNDRY PRODUCT, including citation to any supporting evidence; C) identify for each asserted claim element that ENTERASYS contends is a means-plus-function element governed by 35 U.S.C. § 112(6), the structures, acts, or materials in each FOUNDRY PRODUCT that performs the claimed function; and D) state whether each element of each asserted claim is literally present or present under the doctrine of equivalents.

## RESPONSE TO INTERROGATORY NO. 2:

Enterasys objects to this Interrogatory on grounds that it calls for information that is protected from disclosure by the attorney-client privilege and/or by the work product doctrine; that it is overly broad, unduly burdensome, vague, and ambiguous; and that it seeks information neither relevant to a claim or defense of a party nor reasonably calculated to lead to the discovery of admissible evidence. Enterasys further objects to this Interrogatory on grounds that it contravenes the Court's Scheduling Order in this case dated November 18, 2005 by purporting to require that Enterasys determine and identify at this premature juncture which claims of the patents-in-suit that it is intending to assert against which Foundry products.

Enterasys will further respond to this Interrogatory on or after July 17, 2006.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| ENTERASYS NETWORKS, INC., ) | Civil Action No: 05-CV-11298 (DPW) |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| FOUNDRY NETWORKS, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**PLAINTIFF ENTERASYS NETWORKS, INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT EXTREME NETWORKS, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Enterasys Networks, Inc. ("Enterasys" or "Plaintiff") hereby responds and objects to the First Set Of Requests For Production Of Documents And Things served by Defendant Extreme Networks, Inc. ("Extreme" or "Defendant") on or about March 9, 2006.

**GENERAL RESPONSE**

Enterasys' responses and objections to Extreme's document requests are made without waiving, or intending to waive, but on the contrary, expressly reserving: (a) the right to object, on the grounds of competency, privilege, relevancy or materiality, or any other proper grounds, to the use of the documents, for any purpose in whole or in part, in any subsequent step or proceeding in this action or any other action; (b) the right to object on any and all grounds, at any time, to other document production requests or other discovery procedures involving or relating to the subject matter of these requests; and (c) the right at any time to revise, correct, add to, or clarify any of the responses provided herein.

Extreme on March 3, 2006.

9.     Enterasys objects to the "Instructions" contained in Extreme's interrogatories insofar as they purport to require the production of a privilege log with a level of detail which exceeds that mandated by the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Massachusetts.

## SPECIFIC RESPONSES AND OBJECTIONS

Enterasys hereby incorporates its General Response and General Objections set forth above into its Specific Responses and Objections set forth below.

## INTERROGATORY NO. 1:

Separately for each asserted claim of each of the patents in suit, identify:

(a)     each Extreme Networks product that Enterasys alleges infringes each such claim;

(b)     explain in detail Enterasys' contentions as to how each such product allegedly infringes each such claim;

(c)     provide a claim chart identifying specifically where each element or limitation of each asserted claim is found within each such product;

(d)     state all bases for Enterasys's contention that the element or limitation is found within the product;

(e)     provide an explanation of whether such alleged infringement is literal or under the doctrine of equivalents;

(f)     specify whether Enterasys contends that there is any alleged liability under each of 35 U.S.C. § 271(a), § 271(b), § 271(c), § 271(f) and/or § 271(g);

(g)     provide an explanation of how 35 U.S.C. § 112, 116 is satisfied if applicable,

4

including the identity of the function and any corresponding structure in the specification;

(h)    identify each person whose acts or omissions allegedly give rise to Extreme Networks' alleged liability; and

(i)    identify each document and person upon which Enterasys may rely in support of its infringement contentions.

## RESPONSE TO INTERROGATORY NO. 1:

Enterasys objects to this Interrogatory on grounds that it calls for information that is protected from disclosure by the attorney-client privilege and/or by the work product doctrine; that it is overly broad, unduly burdensome, vague, and ambiguous; and that it seeks information neither relevant to a claim or defense of a party nor reasonably calculated to lead to the discovery of admissible evidence.  Enterasys further objects to this Interrogatory on grounds that it contravenes the Court's Scheduling Order entered in this case on November 18, 2005 by purporting to require that Enterasys determine and identify at this premature juncture which claims of the patents-in-suit that it is intending to assert.

Enterasys will further respond to this Interrogatory on or after July 17, 2006.

## INTERROGATORY NO. 2:

Separately for each asserted claim of each of the patents in suit, identify the respective date of conception and date of reduction to practice of that claim, both actual and constructive, and describe any and all diligence between such conception and reduction to practice, including the identity of all documents and things that Enterasys may contend corroborates such dates and diligence, and the identity of each person who Enterasys contends can corroborate such dates and diligence.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

ENTERASYS NETWORKS, INC,

      Plaintiff,

  v.

FOUNDRY NETWORKS, INC. and
EXTREME NETWORKS, INC.,
      Defendants.

Civil Action No. 05-CV-11298 (DPW)

## FOUNDRY NETWORKS, INC.'S MOTION TO COMPEL ANSWERS TO INTERROGATORIES NOS. 2 AND 3 FROM ENTERASYS NETWORKS, INC.

### INTRODUCTION

Defendant Foundry Networks, Inc. ("Foundry") moves to compel plaintiff Enterasys Networks, Inc. ("Enterasys") to immediately answer Interrogatories Nos. 2 and 3, which seek the identification of Enterasys' infringement claims against Foundry. Enterasys simply refuses to state its infringement claims against Foundry, saying that although it has the information, it just doesn't want to share it now.

Interrogatory No. 2 asks for Enterasys to describe in detail and to provide a claim chart explaining how Enterasys reads its six patents-in-suit to cover the Foundry accused products. Interrogatory No. 3 asks for Enterasys to state the facts it had in its possession when it brought this suit, on which it based its analysis concerning the products it has accused in this suit.

Enterasys does not dispute that Foundry is entitled to an answer to Interrogatory No. 2; it simply refuses to answer the question until July 17, 2006, the court-imposed *deadline* for answering these questions, even though in setting this deadline, this Court clearly stated that Foundry could seek an earlier answer in response to interrogatories.

With respect to Interrogatory No. 3, seeking the *facts* on which it brought this suit, Enterasys refuses to provide a substantive answer on the basis of privilege and work product, saying that it will only provide a substantive answer in response to a Rule 11 motion.

Interrogatories Nos. 2 and 3 are directed to the facts Enterasys has *now* to support its allegations that Foundry's products infringe.  Enterasys doesn't challenge the propriety of the interrogatories or what they seek, or say it doesn't have the answers -- the only issue appears to be that it doesn't want to share the information now absent a court order.  Yet, without answers now to these interrogatories, there is no way for Foundry to frame the issues going forward in discovery, or to know whether it is appropriate to bring a Rule 11 motion charging Enterasys with a failure of pre-suit diligence.

Enterasys' refusal to answer Interrogatory No. 2 until the last minute, in mid-July, and its refusal to answer Interrogatory No. 3 absent a Rule 11 motion, raises serious questions as to whether Enterasys ever had a basis to assert its patents against Foundry in the first place.

Accordingly, Foundry respectfully requests that Enterasys be ordered to immediately answer Foundry's Interrogatory Nos. 2 and 3, with such answers to be provided by Enterasys within five days of an Order of this Court.

## I.     BRIEF BACKGROUND

### A.     Enterasys Simply Refuses to Provide the Answers, Although It Says It Conducted a Pre-Trial Investigation, and That It Knows What Products It Intends to Accuse, and Why.

This is a patent case that Enterasys filed against two independent defendants, Foundry and Extreme Networks, Inc., almost one year ago, on June 21, 2005.[1]  (Docket No. 1).  (Foundry

---

[1] Defendants Foundry and Extreme moved to sever the case and Judge Woodlock allowed the motion, and directed Enterasys to file a separate complaint against Extreme, with the new case to be consolidated with this action for trial management.  (*See* Electronic Order of 11/3/2005).

and Extreme are separate companies that compete against one another in the marketplace and have no relation, except that they are both competitors of Enterasys.)

Enterasys states that it "first formed the belief that Foundry products were infringing in March of 2004" when "outside counsel had exclusively performed a detailed pre-suit investigation in that time frame that included both claim construction and infringement analysis." (Ex. B, Enterasys' Response to Interrogatory No. 3).

However, nearly a year into this case, Enterasys has not provided any detailed information related to its infringement case in response to Foundry's discovery requests.[2]

## B.     Enterasys Has Been Deficient In Its Discovery Obligations.

This case is currently in "Phase I" of discovery, which has been limited to the liability issues of infringement, invalidity, and unenforceability.  (*See* Docket Nos. 28, 31).

On March 3, 2006, Foundry and Enterasys exchanged their first sets of document requests.  To date, Foundry has produced over 57,000 pages of documents to Enterasys.  However, Enterasys has not produced a *single* document to Foundry.

On March 14, 2006, Foundry served its first set of interrogatories on Enterasys.  (A copy is attached as Ex. A).  In response, on April 13, 2006, Enterasys provided substantive answers to only two of Foundry's eleven interrogatories.[3]  On April 26, 2006, after the parties had met and conferred at Foundry's request, Enterasys provided certain supplemental responses, but it still refuses to provide any detailed information in response to Interrogatories Nos. 2 and 3, describing the merits of its case.  (A copy is attached as Ex. B).  Enterasys has not served any interrogatories on Foundry in this case.

---

[2] Only after Foundry raised the issue, Enterasys provided Foundry with a list of two or three claims of each patent that Enterasys believes covers Foundry's products, with lists of accused products and features.  However, Enterasys refuses to tell Foundry in detail *how* the accused products infringe until July 17, 2006.

[3] This motion to compel only addresses certain of the interrogatories that Enterasys refused to answer.  Foundry reserves the right to move to compel on Enterasys' other insufficient interrogatory responses.

## II.   ARGUMENT

### A.   Enterasys Should Be Ordered To Answer Foundry's Interrogatory No. 2 Now Because Enterasys' "Premature" Objection Is Improper.

Interrogatory No. 2 asks Enterasys to provide its infringement contentions:

> Describe in detail and provide a claim chart showing how each FOUNDRY PRODUCT identified in Interrogatory No. 1 infringes each of the corresponding claims. ENTERASYS' response to this interrogatory should:  A) identify a proposed construction for each element of each asserted claim that ENTERASYS identifies as being infringed; B) identify specifically where each element of each asserted claim is found within each FOUNDRY PRODUCT, including citation to any supporting evidence; C) identify for each asserted claim element that ENTERASYS contends is a means-plus-function element governed by 35 U.S.C. § 112(6), the structures, acts, or materials in each FOUNDRY PRODUCT that performs the claimed function; and D) state whether each element of each asserted claim is literally present or present under the doctrine of equivalents.

Enterasys doesn't dispute that Foundry is entitled to an answer to Interrogatory No. 2.  It seems that Enterasys simply doesn't want to provide its answer *now*, despite the fact that this case has been pending for almost a year.  Enterasys objected to this question as follows:

> Enterasys further objects to this Interrogatory – particularly when read in conjunction with Interrogatory No. 1 above – as contrary to the Court's Scheduling Order entered in this case on November 18, 2005 because it purports to require that *Enterasys either actually or effectively provide detailed claim construction charts identifying asserted claims and accused products at this premature juncture in the case.  Consistent with that Scheduling Order, Enterasys is not required to, and accordingly will not, provide detailed claim construction charts of their equivalents until July 17, 2006.* (emphasis added).

Apparently, Enterasys has decided to argue that a Court-ordered *deadline* for Enterasys to serve infringement construction charts identifying asserted claims and products accused of literal or doctrine of equivalents infringement is the same as its *due date*.  There is nothing in the

Scheduling Order, however, that precludes Foundry from finding out about Enterasys'

infringement case *before* July 17, 2006, whether by use of interrogatories, depositions, or

otherwise.  (Docket No. 31, at 1).

At the Scheduling Conference on November 3, 2005, the Court made clear that

Defendants *could* seek this information before the July 17, 2006 deadline:

> DEFENDANT'S COUNSEL:        We also have a concern,
> Your Honor, with some of the deadlines the plaintiff is proposing.
> This starts with the July 17, 2006 date that Enterasys is proposing
> on page three of the joint schedule.  Those next three entries, we
> believe, can simply be dealt with through interrogatories.  Because
> what this does is permit them to go longer even if they know their
> preliminary contentions without telling us.
>
> THC COURT:      I don't understand what you mean by that.
>
> DEFENDANT'S COUNSEL:        Simply that we would like to
> know what the --
>
> THE COURT:      Why aren't the claim construction -- why aren't
> the claim constructions the functional equivalent of interrogatories,
> anyway?
>
> DEFENDANT'S COUNSEL:        Well, that comes much later.
> We need to know their theories of infringement much earlier than
> that.  *And, so, we'd like to simply serve interrogatories asking
> those questions and they can tell us what their contentions are,
> their theories of infringement.*
>
> THE COURT:      *What prevents you from that here?*
>
> DEFENDANT'S COUNSEL:        *Well, if we can do that as
> well, then that's fine, Your Honor.*  My only concern --
>
> THE COURT:      I'm not going to -- I won't get into the specifics,
> I don't think, of the way you conduct your discovery with the
> exception of the claim construction charts which I think are, on
> balance, a pretty good idea.  *If you want to propound
> interrogatories during that time period, go ahead.  I don't see that
> as a problem.*

(Ex. C, Nov. 3, 2005 Tr. at 18-19) (emphasis added).

Importantly, Enterasys has offered no reason why it *needs* to wait until July 17, 2006 to tell Foundry about its current infringement contentions, especially in light of its assertion that Enterasys "first formed the belief that Foundry products were infringing in *March of 2004*" when "outside counsel had exclusively performed a detailed pre-suit investigation in that time frame *that included both claim construction and infringement analysis.*"  (Ex. B, Enterasys' Response to Interrogatory No. 3) (emphasis added).

There is no justification (other than delay for the sake of delay) for plaintiff Enterasys to refuse to tell the defendants on what basis it brought this suit, or how it contends Foundry's products infringe the patents-in-suit.

Enterasys' position, that Foundry cannot "ferret out Enterasys' infringement contentions at once via interrogatories rather than having Enterasys afforded a Court ordered date certain by which it would need to serve claim construction charts," is wrong.  (Ex. D, Apr. 18, 2006 Letter from M. Henschke to J. Oczek).  The Court heard Enterasys' concern at the Scheduling Conference, and rejected it once.

Foundry has the right to a detailed answer to Interrogatory No. 2 so that it can frame the infringement issues going forward in Phase I of discovery.  Enterasys has had these answers for *over two years.*  Enterasys should stop hiding the ball.  Otherwise, all discovery should be stayed until Enterasys has properly and adequately identified its infringement contentions.  *See Network Caching Techs., L.L.C. v. Novell Inc.*, 67 U.S.P.Q.2d 1034, 1040 (N.D. Cal. 2002) (staying all discovery until the plaintiff had adequately identified their infringement contentions in that case).

**B.     Enterasys Should Also Be Ordered To Answer Interrogatory No. 3 Which Is Directed To What *Facts* Enterasys Has To Support Its Contention That Foundry's Products Allegedly Infringe.**

Interrogatory No. 3 asks:

For each FOUNDRY PRODUCT identified in ENTERASYS'
response to Interrogatory No. 1, state all facts concerning
ENTERASYS' forming of its belief that the FOUNDRY PRODUCT
infringes, including, but not limited to, the date that ENTERASYS
first learned of the FOUNDRY PRODUCT; the date ENTERASYS
first came to believe the FOUNDRY PRODUCT was allegedly
infringing; the PERSONS, DOCUMENTS and things involved in
informing ENTERASYS about the FOUNDRY PRODUCT and in
forming ENTERASYS's belief that the FOUNDRY PRODUCT is
infringing; and all efforts that ENTERASYS undertook to
substantiate its belief that the FOUNDRY PRODUCT is allegedly
infringing, including, but not limited to, all acquisition, testing and
reverse-engineering of FOUNDRY PRODUCTS and the individuals
involved in such efforts.

Despite the clarity of Interrogatory No. 3 and its request for the *facts* in Enterasys'

possession regarding its claims against Foundry, Enterasys objected to providing any substantive

answer on the basis of attorney-client privilege and work product:

On grounds of the attorney-client privilege and/or the work product
doctrine, Enterasys declines to provide any further information
concerning this pre-suit investigation except as necessary in response
to any motion filed by Foundry under Federal Rule of Civil
Procedure 11.

Enterasys' response evades the crucial inquiry:  what *factual* basis did Enterasys have for

its claims of infringement?  Enterasys says that it conducted *two* pre-suit investigations, one in

March of 2004 and the other in March of 2005.  It says that these pre-suit investigations were

based upon "Foundry's publicly available technical and product marketing documents."  (Ex. B,

Enterasys' Response to Interrogatory No. 3).  Since Enterasys claims that it obtained Foundry's

technical and product marketing documents prior to filing suit, it should be a simple matter for

Enterasys to state now how it believed Foundry's accused products infringed and the foundation

for that belief.

The underlying facts that result from Enterasys' pre-suit investigation are not privileged

or protected by work product.  Merely saying that a "pre-filing investigation" occurred in March

2004, does not contain any *factual detail* as to what investigation or testing was conducted on Foundry's accused products.

Enterasys' assertion of privilege and work product simply cannot apply to the *facts* in its possession that support its contention that Foundry's products infringe. Facts are not privileged or protected. *See Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) ("Because the work product doctrine is intended only to guard against the divulging of attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within the work product."); *Phillips Electronics North America Corp. v. Universal Electronics, Inc.*, 892 F.Supp. 108, 110 (D. Del. 1995) ("plaintiff may not rely on Rule 26(b)(3) or claims of work product as a basis for refusing to respond to discovery requests seeking the disclosure of non-privileged facts.").

By failing to answer Interrogatory No. 3 in any detail, Enterasys is trying to deprive Foundry of sufficient information to understand Enterasys' theories of infringement, including knowledge of what documents Enterasys had and consulted, what efforts it undertook to form its belief that the Foundry products infringe the patents-in-suit, and whether Enterasys actually obtained and evaluated any Foundry products for purposes of filing suit. Indeed, Enterasys refuses even to tell Foundry if it had a factual basis to bring this suit.

The Federal Circuit has recognized the importance of ensuring that a plaintiff have a factual and evidentiary basis for every single patent claim it asserts. "Advancing even a single invalid theory," the court noted, "forces the defendant to respond and to do work it should not have been required to do." *Antonious* v. *Spalding & Evenflo Cos.*, 275 F.3d 1066, 1075 (Fed. Cir. 2002) (quoting *Frantz v. U.S. Powerlifting Fed'n*, 836 F.2d 1063, 1067 (7th Cir. 1987) (Posner, J.)). "Each claim takes up the time of the legal system and the opposing side. A single

claim . . . may occasion the expenditure of hundreds or thousands of hours, as opposing counsel try to verify or refute the allegations and theories." *Id.*

The Federal Circuit has also stated that an accused infringer must be provided with the type of factual information which Foundry seeks: "In bringing a claim of infringement, the patent holder, if challenged, must be prepared to demonstrate to both the Court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement." *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2001). By improperly asserting the attorney-client and/or work product privilege to Interrogatory No. 3, Enterasys has failed to provide Foundry with the necessary facts to move forward in this litigation.

Accordingly, Enterasys should be ordered to immediately answer Interrogatory No. 3.

## III.    CONCLUSION

Foundry respectfully requests that Enterasys be ordered to immediately answer Foundry's Interrogatories Nos. 2 and 3, with such answers to be provided by Enterasys within five days of an Order of this Court.

Dated:  April 27, 2006

Respectfully Submitted,

DEFENDANT FOUNDRY NETWORKS, INC.

By Its Attorneys,

*/s/ Jeremy P. Oczek*

Steven M. Bauer (BBO #542531)
Jeremy P. Oczek (BBO #647509)
PROSKAUER ROSE LLP
One International Place
Boston, MA  02110-2600
Telephone:  (617) 526-9600
Facsimile:   (617) 526-9899
sbauer@proskauer.com
joczek@proskauer.com

William L. Anthony, Jr. (admitted pro hac vice)
I. Neel Chatterjee (admitted pro hac vice)
Michael F. Heafey (BBO # 556931)
Sanjeet K. Dutta (admitted pro hac vice)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 614-7400
Facsimile:   (650) 614-7401
wanthony@orrick.com
nchatterjee@orrick.com
mheafey@orrick.com
sdutta@orrick.com

### Certificate Pursuant To Rule 7.1

The undersigned counsel hereby certifies that counsel for the parties have conferred in an attempt to resolve or narrow the issues presented by this motion, and that counsel for plaintiff Enterasys would not agree to the relief sought by this motion.

*/s/ Jeremy P. Oczek*

Jeremy P. Oczek

**<u>Certificate of Service</u>**

The undersigned hereby certifies that this document was filed through the ECF system on April 27, 2006 and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Jeremy P. Oczek*
_____

Jeremy P. Oczek

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

ENTERASYS NETWORKS, INC,

        Plaintiff,

v.

FOUNDRY NETWORKS, INC. and
EXTREME NETWORKS, INC.,
        Defendants.

Civil Action No. 05-CV-11298 (DPW)

## FOUNDRY NETWORKS, INC.'S MOTION FOR LEAVE TO FILE TO A REPLY BRIEF IN SUPPORT OF ITS MOTION COMPEL ANSWERS TO INTERROGATORIES NOS. 2 AND 3 FROM ENTERASYS NETWORKS, INC.

Defendant Foundry Networks, Inc. ("Foundry"), in accordance with Local Rule 7.1,[1] respectfully moves for leave to file a short reply brief to its Motion to Compel Answers to Interrogatories Nos. 2 and 3 from Enterasys Networks, Inc. ("Enterasys") (Docket 36).

As grounds for its motion for leave, Foundry believes that a reply brief is necessary to set the record straight and to address new arguments made by Enterasys' opposition (Docket 37).

In particular, Foundry's reply brief will explain to the Court:

1)      In contrast to what Enterasys argues in its opposition, Foundry does not seek Enterasys' final infringement contentions, or its attorney work product -- rather, Foundry seeks Enterasys' *current* infringement theory against Foundry.

2)      Enterasys admits in its opposition that it can't put together an infringement case against Foundry without having the benefit of discovery: "[A] premature serving of claim charts

---

[1] Local Rule 7.1(b)(3) states: "All other papers not filed as indicated in subsections (b)(1) and (2), whether in the form of a reply brief or otherwise, may be submitted only with leave of court." This Court has allowed parties to file replies with leave of Court. *See, e.g., Radford Trust v. First Unum Life Ins. Co. of America*, 399 F.Supp.2d 3 (D. Mass. 2005) (granting request for leave to file a response to an opposition brief) (Young, C.J.); *Murphy v. Ford Motor Co.*, 170 F.R.D. 82 (D. Mass. 1997) (granting motion for leave to file a reply brief) (Gorton, J.).

would deprive Enterasys from the benefit of discovery from Foundry before it refines its core infringement contentions." (Opp. at 11). This is a compelling reason why Foundry needs to know Enterasys' infringement theories *now*, so that Enterasys doesn't have the benefit of using discovery to shore up its deficient pre-filing investigation.

3)      Enterasys contradicts itself by arguing, on the one hand, that it has sufficiently answered Interrogatory No. 2 (by merely incorporating its answer to Interrogatory No. 1), and on the other hand, saying that it will fully answer Interrogatory No. 2 by providing infringement claims charts to Foundry on July 17.

4)      Enterasys' argument that Foundry has not produced claim charts misses the point. Enterasys is the plaintiff here, and as the plaintiff, Enterasys is required to tell Foundry what its infringement positions at this point in the case. Moreover, until Enterasys propounds a specific interrogatory seeking Foundry's non-infringement position in this case, Foundry is not obligated to *sua sponte* provide claim charts to Enterasys regarding its non-infringement position.

5)      For Interrogatory No. 3, Enterasys says it has fully answered this interrogatory by producing 11,000 pages of documents to Foundry. Enterasys, however, cannot discharge its obligation to answer this interrogatory merely by "incorporating" 11,000 pages of documents into its interrogatory answer. If all 11,000 pages really support Enterasys' infringement theories, then it should be a simple matter for Enterasys to tell Foundry now why it thinks the Foundry accused products infringe on an element-by-element basis. Foundry is entitled to a meaningful answer to this interrogatory, including an identity of the subset of documents that support Enterasys' current infringement belief, what efforts it undertook to form its belief that the Foundry products infringe the patents-in-suit, and whether Enterasys actually obtained and evaluated any Foundry products for purposes of filing suit.

## CONCLUSION

For the foregoing reasons, Foundry respectfully requests that this Court grant leave to file the proposed reply brief attached hereto as Exhibit A.

Dated: May 23, 2006

Respectfully Submitted,
DEFENDANT FOUNDRY NETWORKS, INC.
By Its Attorneys,

_/s/ Jeremy P. Oczek_

Steven M. Bauer (BBO #542531)
Jeremy P. Oczek (BBO #647509)
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110-2600
Telephone: (617) 526-9600
Facsimile: (617) 526-9899
sbauer@proskauer.com
joczek@proskauer.com

William L. Anthony, Jr. (admitted pro hac vice)
I. Neel Chatterjee (admitted pro hac vice)
Michael F. Heafey (BBO # 556931)
Sanjeet K. Dutta (admitted pro hac vice)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 614-7400
Facsimile: (650) 614-7401
wanthony@orrick.com
nchatterjee@orrick.com
mheafey@orrick.com
sdutta@orrick.com

## Certification Pursuant To Rule 7.1

The undersigned counsel certifies that, before filing this present motion, the parties' counsel conferred via telephone regarding the subject of this motion. Counsel for Enterasys has advised Foundry that it would not assent to the filing of this motion.

_/s/ Jeremy P. Oczek_

Jeremy P. Oczek

## Certificate of Service

The undersigned hereby certifies that this document was filed through the ECF system on May 23, 2006 and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Jeremy P. Oczek*
_____
Jeremy P. Oczek

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

ENTERASYS NETWORKS, INC,

        Plaintiff,

v.

FOUNDRY NETWORKS, INC. and
EXTREME NETWORKS, INC.,
        Defendants.

Civil Action No. 05-CV-11298 (DPW)

## FOUNDRY NETWORKS, INC.'S [PROPOSED] REPLY
## BRIEF IN SUPPORT OF ITS MOTION COMPEL ANSWERS TO
## INTERROGATORIES NOS. 2 AND 3 FROM ENTERASYS NETWORKS, INC.

Defendant Foundry Networks, Inc. ("Foundry") submits this short reply brief in support of its motion to compel answers to Foundry's Interrogatories Nos. 2 and 3 (Docket 36).

Foundry has moved to compel Enterasys at this stage of the case to: 1) describe in detail and provide a claim chart explaining how Enterasys reads its patents-in-suit to cover the Foundry accused products (Interrogatory No. 2); and 2) tell Foundry what facts on which it brought this suit (Interrogatory No. 3). Enterasys, however, refuses to provide any meaningful answers to these interrogatories and has stalled discovery in this case. Indeed, it seems that Enterasys' motive here is to buy a few extra months to fish for an infringement theory -- an analysis it should have completed long before suing Foundry.

Despite what Enterasys claims in its opposition (Docket 37), Enterasys hasn't provided an element-by-element comparison of the claim language of the patents with accused products, and it hasn't provided any detail as to *how* any Foundry product infringes the claims, as required by Interrogatory No. 2. Foundry does not seek Enterasys' final infringement contentions, or its attorney work product -- but simply its *current* infringement theory against Foundry.

In its opposition, Enterasys contends that its refusal to provide any additional information to Interrogatory No. 2 is driven by its need to conduct discovery to piece together its infringement theories against Foundry. Enterasys states:

> "[A] premature serving of claim charts would deprive Enterasys from the benefit of discovery from Foundry before it refines its core infringement contentions." (Opp. at 11).

> " uch discovery would only provide Foundry with fodder to try to limit Enterasys to the infringement identified during March of 2004 and 2005 without affording it the benefit of the discovery process." (Opp. at 1 -19).

owever, Rule 11 "re uires that the inquiry be undertaken *before* the suit is filed, not after." *Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997) (emphasis in original). Enterasys should be compelled to tell Foundry *now* why it thinks that the Foundry accused products infringe, *not after* it has had the benefit of Foundry's production to correct its pre-filing investigation deficiencies.

Regarding Interrogatory No. 3, Enterasys argues in its opposition that it has now fully answered this interrogatory by producing over 11,000 pages of documents that Enterasys claims it reviewed before filing suit. Enterasys, however, cannot discharge its obligation to answer this interrogatory merely by "incorporating" 11,000 pages of documents into its interrogatory answer. Indeed, if all 11,000 pages *really* support Enterasys' infringement theories, then it should be a simple matter for Enterasys to tell Foundry *now* why it thinks the Foundry accused products infringe on an element-by-element basis. Otherwise, Enterasys should provide a meaningful answer to this interrogatory, including an identity of the subset of documents that support Enterasys' current infringement belief, what efforts it undertook to form its belief that the Foundry products infringe the patents-in-suit, and whether Enterasys actually obtained and evaluated any Foundry products for purposes of filing suit.

For the reasons discussed in this reply and in its motion to compel, Foundry respectfully

re uests that Enterasys be ordered to immediately answer Foundry's Interrogatory Nos. 2 and 3.

## **BRIEF ARGUMENT**

**I.     ENTER SYS   S NOT  RO IDED  SUFFICIENT Y CO     ETE
        NSWERS   TO FOUNDRY'S INTERRO     TORIES NOS.    ND .**

### **A.     Enterasys Has Not Provided a Meaningful Answer to Interrogatory No. 2.**

Enterasys contradicts itself by arguing, on the one hand, that it has sufficiently answered

Interrogatory No. 2, and on the other hand, saying that it will fully answer Interrogatory No. 2 by

providing infringement claims charts on July 17.

Interrogatory No. 2 asks Enterasys to:

> Describe in detail and provide a claim chart showing how each
> FOUNDRY PRODUCT identified in Interrogatory No. 1 infringes each of
> the corresponding claims.  ENTERA        ' response to this interrogatory
> should:  A) identify a proposed construction for each element of each
> asserted claim that ENTERASYS identifies as being infringed; B) identify
> specifically where each element of each asserted claim is found within
> each FOUNDRY PRODUCT, including citation to any supporting
> evidence; C) identify for each asserted claim element that ENTERASYS
> contends is a means-plus-function element governed by 35 U.S.C.
> § 112(6), the structures, acts, or materials in each FOUNDRY PRODUCT
> that performs the claimed function; and D) state whether each element of
> each asserted claim is literally present or present under the doctrine of
> equivalents.

In responding to Interrogatory No. 2, Enterasys merely incorporated by reference its

response to Interrogatory No. 1.  Enterasys fails to mention this in its opposition.  However,

Interrogatory No. 1 asked Enterasys a different question -- that is:

> Separately identify each FOUNDRY PRODUCT that ENTERASYS
> contends infringes any of the PATENTS-IN-SUIT, by name, product
> number, and/or description, and for each such product, include the
> specific claims that are allegedly infringed, and whether that alleged
> infringement is direct, contributory and/or by inducement.

In responding to Interrogatory No. 1, Foundry responded with a list of two or three claims of each patent-in-suit that Enterasys believes covers Foundry's products, an independent list of accused products, and an independent list of accused features.

owever, there is nothing in Enterasys' response to Interrogatory No. 1 that ade uately responds to Interrogatory No. 2 because it does not explain *why* Enterasys believes that the accused products infringe the patents-in-suit at this stage in the case. Enterasys hasn't provided an element-by-element comparison of the claims of the patents with any accused products, as required by Interrogatory No. 2.

1.  **F      I E      E       ' U Point in the Case, Before Enterasys Attempts to Correct the Deficiencies in its Pre-Filing Investigation.**

Enterasys argues that it is not required to provide a meaningful answer to Interrogatory No. 2 because its current response, it says, is sufficient to provide Foundry with enough of an understanding of Enterasys' infringement theory. Enterasys, however, misses the critical point -- while it is true that Foundry has produced prior art references relating to the patents-in-suit, that does not means that it should have to guess how *Enterasys* believes that the accused Foundry products infringe the patents-in-suit. Enterasys needs to disclose *its* current position now, by answering Foundry's interrogatory, as to how Enterasys construes its patents.

2.  **E       '       F       N       C      C Is of No Consequence Because Enterasys Has Not In Fact Propounded Any Interrogatories Asking For Such Information.**

Enterasys tries to deflect attention away from its discovery deficiencies by claiming that *Foundry* refuses to produce claim charts in this case. (Opp. at 10). First, Enterasys is the plaintiff here, and as the plaintiff, Enterasys is required to disclose its basis for filing the suit against Foundry. Second, Enterasys has not propounded any interrogatories in this case asking

for Foundry's non-infringement contentions.  Until Enterasys propounds an interrogatory seeking Foundry's non-infringement position in this case, Foundry is not obligated to *sua sponte* provide claim charts to Enterasys.  Third, Foundry only objected to providing claim charts in response to Enterasys' *document requests*, since any such charts generated after the filing of this lawsuit would be privileged and/or protected by work product.

**3. E ' O D N T F T T C -Imposed *Deadline* Of July 17, 2006 For Answering These Interrogatories Is Not The Same As A Due Date.**

Enterasys' opposition does not dispute that Foundry is entitled to a full and complete answer to Interrogatory No. 2.  Enterasys' *only* argument is that it doesn't think that it needs to provide a full and complete answer until  uly 17, 2006.  As explained in Foundry's motion, Enterasys' argument is wrong because there is nothing in the Court's   cheduling Order that precludes Foundry from finding out about Enterasys' infringement case *before* July 17, whether by use of interrogatories, depositions, or otherwise.

**B. Enterasys Has Not Fully Answered Interrogatory No. 3.**

**1. Enterasys Production Of Eleven Thousand Pages Does Not Satisfy Its Obligation To Answer Interrogatory No. 3.**

Enterasys argues in its opposition that it has provided an adequate response to Interrogatory No. 3 by producing over 11,000 pages of documents that Enterasys states it reviewed before filing suit.  (Opp. at 15).  Enterasys, however, has failed to tell Foundry *what facts* served as its basis to bring this suit and what documents in particular supported Enterasys' infringement belief.  Enterasys has also failed to tell Foundry whether it obtained or examined the accused Foundry products prior to filing its infringement allegations, and whether it sought an independent expert analysis of actual Foundry products to determine whether any grounds existed for alleging infringement.  The Federal Circuit has considered the failure to obtain an

accused product prior to filing a complaint for patent infringement as evidence probative of a

Rule 11 violation. *See, e.g.*, *Judin v. United States*, 110 F.3d 7 0, 7   (Fed. Cir. 1   7) ("No

adequate explanation was offered for why they failed to obtain, or attempted to obtain, a sample

of the accused device from the Postal Service or a vendor so that its actual design and

functioning could be compared with the claims of the patent.  Under these circumstances, there is

no doubt that [plaintiff] failed to meet the minimum standards imposed by Rule 11 . . .").

### 2. Enterasys Admits In Its Opposition That It Has Failed To Conduct An Adequate Pre-F    I        O F    '        .

The reason that Enterasys refuses to provide any additional information about its pre-

filing investigation is clear -- Enterasys admits in its opposition that it needs to conduct

discovery to shore up its deficient pre-filing investigation:

> "[A] premature serving of claim charts would deprive Enterasys from the benefit of discovery from Foundry before it refines its core infringement contentions." (Opp. at 11).

> " uch discovery would only provide Foundry with fodder to try to limit Enterasys to the infringement identified during March of 2004 and 2005 without affording it the benefit of the discovery process."  (Opp. at 1 -19).

Enterasys should be compelled at this time to disclose why it thinks that the accused

products infringe, *not after* it has the benefit to correct its pre-filing investigation deficiencies.

### 3. Enterasys Admits That Foundry Is Entitled To *Facts* Underlying Its Alleged Pre-Filing Investigations.

Enterasys does not dispute that Foundry is entitled to the facts concerning Enterasys' pre-

filing investigations.  Rather, Enterasys only tries to confuse the issue by arguing that Foundry

"actually seeks privileged information by clothing its discovery re uest in the garb of  facts.'"

(Opp. at 14).  Enterasys is wrong.  Interrogatory No. 3 seeks the non-privileged facts that

Enterasys had in its possession when filing this suit.  Enterasys should provide a full and

complete answer to this interrogatory, including an identity of the subset of documents that support Enterasys' current infringement belief, what efforts it undertook to form its belief that the Foundry products infringe the patents-in-suit, and whether Enterasys actually obtained and evaluated any Foundry products for purposes of filing suit.

## CONCLUSION

Foundry respectfully re uests that Enterasys be ordered to immediately answer Foundry's Interrogatories Nos. 2 and 3, and provide such answers within five days of an Order of the Court.

Dated: May 23, 2006

Respectfully Submitted,
DEFENDANT FOUNDRY NETWORKS, INC.
By Its Attorneys,

*/s/ Jeremy P. Oczek*

Steven M. Bauer (BBO #542531)
Jeremy P. Oczek (BBO #647509)
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110-2600
Telephone: (617) 526-9600
Facsimile: (617) 526-9899
sbauer@proskauer.com
joczek@proskauer.com

William L. Anthony, Jr. (admitted pro hac vice)
I. Neel Chatterjee (admitted pro hac vice)
Michael F. Heafey (BBO # 556931)
Sanjeet K. Dutta (admitted pro hac vice)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 614-7400
Facsimile: (650) 614-7401
wanthony@orrick.com
nchatterjee@orrick.com
mheafey@orrick.com
sdutta@orrick.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

|  |  |
|---|---|
| ENTERASYS NETWORKS, INC., | ) ) Civil Action No: 05-CV-11298 (DPW) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| FOUNDRY NETWORKS, INC. AND EXTREME NETWORKS, INC., | ) ) ) |
| Defendants. | ) ) |

**PLAINTIFF ENTERASYS NETWORKS, INC.'S MEMORANDUM IN OPPOSITION TO
DEFENDANT FOUNDRY NETWORKS, INC.'S MOTION TO COMPEL FURTHER
ANSWERS TO ITS INTERROGATORIES NOS. 2 AND 3**

## TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ................................................................................ 1

II.    PROCEDURAL BACKGROUND........................................................................... 4

    A.     The Parties' Competing Pretrial Schedules Proposed In Their Joint
        Statement To The Court................................................................................. 4

    B.     The Court's Adoption Of Enterasys' Proposed Pretrial Schedule
        Establishing A July 17, 2006 Due Date For Service Of Enterasys' Claim
        Construction Charts ....................................................................................... 4

    C.     Foundry's Refusal To Provide Discovery Unless Enterasys Agreed To
        Supplement Its Responses To Foundry's Interrogatory Nos. 2 And 3 ................. 5

    D.     Enterasys' Supplemental Response To Interrogatory No. 2 Identifying The
        Asserted Patent Claims, The Accused Products, The Accused Product
        Features, And The Nature Of The Infringement....................................................... 6

    E.     Enterasys' Supplemental Response To Interrogatory No. 3 And
        Accompanying Document Production Providing The Factual
        Underpinnings Of Its Pre-Suit Infringement Investigation..................................... 9

    F.     Foundry's Renewed Refusal To Provide Discovery Despite Having
        Received Supplemental Interrogatory Responses.................................................... 9

III.   ARGUMENT.......................................................................................................... 11

    THE COURT SHOULD DENY FOUNDRY'S ABUSIVE MOTION TO
    COMPEL IN ITS ENTIRETY BECAUSE ENTERASYS HAS ALREADY
    PROVIDED SUFFICIENTLY COMPLETE ANSWERS TO FOUNDRY'S
    INTERROGATORY NOS. 2 AND 3 ............................................................................ 11

    A.     Enterasys Has Made A More Than Satisfactory Good Faith Response To
        Interrogatory No. 2......................................................................................... 11

        1.     Foundry's Premature Demand That Enterasys *Immediately* Serve
            Claim Construction Charts Contravenes The Court's Scheduling
            Order Which Expressly Establishes A Service Due Date Of July
            17, 2006............................................................................................ 11

        2.     Foundry's Assertion That It Cannot Comprehend The Relevant
            Scope Of Discovery Absent Receiving A Claim Construction
            Chart Is Specious And Belied By Its Own Prior Representations............ 13

B.     Enterasys Has Made A More Than Satisfactory Good Faith Response To
       Interrogatory No. 3 ............................................................................................. 14

       1.     Enterasys Has Disclosed The Factual Circumstances Surrounding
              Its Pre-Suit Infringement Investigations And Has Made an 11,000-
              Page Document Production Containing The Materials It Relied
              Upon .............................................................................................. 14

       2.     Foundry's Demands For Still Further Information Are Improperly
              Directed At Obtaining Enterasys' Attorney Work Product And
              Privileged Attorney-Client Communications ............................................ 17

IV.     CONCLUSION ............................................................................................................... 19

# I.
## PRELIMINARY STATEMENT

Plaintiff Enterasys Networks, Inc. ("Enterasys") hereby submits its memorandum in opposition to the Motion to Compel Further Answers to Interrogatory Nos. 2 and 3 ("Mot.") that Defendant Foundry Networks, Inc. ("Foundry") filed with the Court on April 27, 2006. According to Foundry's Motion, Enterasys should be required to: **(i)** immediately produce claim construction charts[1] at a premature stage of the case in direct contravention of the Court's Scheduling Order; and **(ii)** disclose the legal analysis developed during its pre-filing infringement investigations which is protected by the attorney work product doctrine and the attorney-client privilege. But because Enterasys has already provided sufficiently complete answers to the interrogatories at issue, and because Foundry can articulate no legal basis or legitimate need for receiving this additional information, the present Motion must be summarily denied.

With respect to its Interrogatory No. 2, Foundry argues that Enterasys should be compelled to *immediately* produce claim construction charts. However, this issue has been explicitly addressed in the Court's Scheduling Order which provides that Enterasys shall have until July 17, 2006 "to serve claim construction charts identifying asserted claims and products accused of … infringement." In establishing this date certain at an interim point in the discovery period, the Court expressly considered and rejected Foundry's alternative proposal that claim charts could be pursued at earlier stages of the litigation by way of interrogatories. Disregarding the Court's ruling, Foundry went on to propound Interrogatory No. 2 in March of 2006, and

---

[1] For purposes of the present motion, both parties are using the term "claim construction charts" to refer to charts that provide detailed infringement analyses consisting of element-by-element comparisons of the asserted patent claims with the accused products.

began demanding that Enterasys provide claim charts some four months prior to their Court-established due date.[2]

In any event, Foundry's purported need for the immediate production of claim construction charts is simply not credible. Foundry contends that without having formal claim charts in hand, it cannot possibly understand what issues are relevant to the case for discovery purposes. To put that argument in perspective, consider that oftentimes in patent cases claim charts are not served until the time of summary judgment motions or *Markman* hearings that occur *after the close of discovery*. Moreover, when it has suited Foundry's purposes, Foundry has understood the case sufficiently well to assert affirmative defenses on its own behalf of non-infringing uses, claim construction estoppel, and patent invalidity, and Foundry has also produced voluminous quantities of alleged "prior art" that it claims invalidate the patents-in-suit. If asserted in good faith, each of these defenses would require that Foundry first have undertaken a detailed infringement analysis of its own that necessarily would reflect a substantial appreciation of the relevant issues.

Moreover, Foundry's supposed inability to understand this case is belied by its own prior representations to Enterasys. Initially, Foundry informed Enterasys that it could not understand the case -- or provide any meaningful discovery -- unless Enterasys were to identify the asserted patent claims, the accused products, and the accused product features. But after Enterasys supplemented its interrogatory responses so as to provide Foundry with all of this requested information, Foundry pulled a bait and switch and instead began to assert that the case was incomprehensible in the absence of formal claim charts. On this newly minted basis, Foundry has continued refusing to provide any meaningful discovery to Enterasys, demonstrating that the

---

[2] Tellingly, despite moving to compel Enterasys to immediately produce claim charts, Foundry is simultaneously refusing to produce its own claim charts responsive to Enterasys' discovery requests on the basis of a "prematurity" objection. (See, infra, p. 10.).

true purpose of its present Motion is to preemptively create an excuse for ongoing noncompliance with its own discovery obligations.[3]

With respect to its Interrogatory No. 3, Foundry ostensibly seeks to compel Enterasys to disclose the *factual circumstances* surrounding its pre-filing infringement investigations. Yet Enterasys has already done so by identifying when these investigations took place, who performed them, and what types of activities they entailed. Moreover, Enterasys has also made an extraordinary 11,000-page document production to Foundry containing the materials that Enterasys considered and relied upon as part of its pre-filing investigations. Thus, in reality the additional information that Foundry demands is the *legal analysis* undertaken by Enterasys' outside counsel which is clearly protected by the attorney work product doctrine and the attorney-client privilege. Remarkably, in responding to Enterasys' discovery requests directed at Foundry's own pre-filing investigations, Foundry has refused to produce any responsive materials on grounds of privilege, and has taken the position that such materials are in fact so privileged that they are too sensitive even to be listed on a privilege log as required by the Federal Rules. (See, infra, p. 10).

For all of these reasons that are discussed in greater detail below, Enterasys respectfully requests that the Court deny the present Motion in its entirety, and by doing so deprive Foundry of the improper excuses that it has heretofore been invoking as a pretext for refusing to comply with its own discovery obligations.

---

[3] As Foundry is well aware from recent meet-and-confer sessions, it faces an imminent motion to compel from Enterasys unless its bad faith refusals to provide discovery are promptly withdrawn.

3

## II.
## PROCEDURAL BACKGROUND

### A.    The Parties' Competing Pretrial Schedules Proposed In Their Joint Statement To The Court

Leading up to the November 3, 2005 Rule 16(b) Scheduling Conference, the parties filed

a Joint Statement and Discovery Plan ("Joint Statement") which put forth proposed pre-trial

schedules. (*See* Exh. 1 to Henschke Decl.).[4]  In the Joint Statement, all parties acknowledged

that a necessary focusing of issues would need to occur before trial, but offered competing

proposals as to the mechanism and timing of how to achieve this result. (*See id.* at pp. 2-3).

Enterasys proposed the establishment of "clear dates [during the discovery process] by

which it must identify accused products and produce claim construction charts identifying

asserted claims." (*See id.* at 2).  To this end, Enterasys proposed July 17, 2005 as the date it

would be required "to serve claim construction charts identifying asserted claims and products

accused of literal or doctrine of equivalents infringement." (*See id.* at 3).

Defendants, by contrast, claimed that it was "[n]ot necessary" to set a specific date for the

exchange because discovery of claim charts could "be addressed through interrogatories" at any

time during the discovery process. (*See id.* at 2-3).

### B.    The Court's Adoption Of Enterasys' Proposed Pretrial Schedule Establishing A July 17, 2006 Due Date For Service Of Enterasys' Claim Construction Charts

At the November 3, 2005 scheduling conference, the Court indicated that it would adopt

the pretrial schedule proposed by Enterasys, expressly stating that it "want[ed] to have the claim

construction chart process" whereby claim charts would be due on a set date. (*See* Henschke

Decl., at Exh. 2, p. 23).  This decision is reflected in the Court's Scheduling Order which

---

[4]  As used herein, the term "Henschke Decl." is a reference to the Declaration Of Marc N. Henschke In Opposition To Defendant Foundry Networks, Inc.'s Motion to Compel Further Answers to Its Interrogatories Nos. 2 and 3, filed concurrently herewith under separate cover.

4

expressly set July 17, 2006 as the date on which Enterasys must provide claim charts to defendants. (*See* Exh. 3 to Henschke Decl.).

Although the Court indicated that the parties could serve discovery immediately following the Scheduling Order, the Court ruled that claim charts were to be an exception to the regular discovery process and, as such, the claim charts would be due according to the Court-ordered schedule. (*See* Henschke Decl. at Exh. 2, pp. 19, 23). In this regard, the Court carved out the production of claim charts as an exception to the regular discovery process, commenting that it would not "get into the specifics…of the way in which you conduct your discovery *with the exception of the claim construction charts*" for which it considered a July 17, 2006 due date to be "a pretty good idea." (*Id.* at 19) (emphasis added).

Despite arguments by Defendants that a set date for the exchange of claim charts was not necessary, the Court sided with Enterasys' position that a set date was the appropriate mechanism and it ordered Enterasys to serve its claim charts upon the defendants on July 17, 2006. (*See* Exh. 3 to Henschke Decl.).

**C.    Foundry's Refusal To Provide Discovery Unless Enterasys Agreed To Supplement Its Responses To Foundry's Interrogatory Nos. 2 And 3**

After the Court issued its Scheduling Order, Enterasys served requests for the production of documents upon Foundry. In its responses to Enterasys' document requests (Foundry's "Document Responses"), Foundry offered a series of objections and issued blanket refusals to produce responsive documents for most requests. (*See* Exh. 4 to Henschke Decl.). In a May 1, 2006 letter, Enterasys discussed many of these deficiencies in Foundry's responses, a review of which will provide the Court with a good flavor of Foundry's abusive discovery tactics. (*See* Exh. 5 to Henschke Decl.).

Foundry consistently sought to justify its refusals to produce discovery by claiming that it could not meaningfully understand the issues in the case. Specifically, Foundry identified four

areas where it needed additional information from Enterasys. The first two areas are set forth in

Foundry's April 14, 2006 letter in which it claimed that it had "no way to frame the issues in this

case" unless Enterasys (1) "identif[ied] the claims being asserted against Foundry;" and (2)

"identif[ied] the Foundry products being accused of infringement." (*See* Henschke Decl. at Exh.

6, p. 2). Third, as identified in repeated objections in its Document Responses, Foundry further

asserted that it could not understand what issues were "relevant" in the case unless Enterasys

identified the "accused features of Foundry products" alleged to infringe the patents-in-suit. (*See*

Henschke Decl. at Exh. 4, pp. 15-100, 104-116). Fourth, as set out in its Interrogatory No. 3,

Foundry claimed that it needed to understand the factual circumstances surrounding Enterasys'

pre-filing investigations before it would agree to provide meaningful discovery. (*See* Henschke

Decl. at Exh. 6, p. 2).

The parties met to confer about Foundry's requests for additional information, and

Enterasys agreed to supplement its responses to Foundry's discovery in the four categories

identified by Foundry as obstacles to its being able to provide meaningful responses to

Enterasys' discovery requests.

**D.**   **Enterasys' Supplemental Response To Interrogatory No. 2 Identifying The Asserted Patent Claims, The Accused Products, The Accused Product Features, And The Nature Of The Infringement**

Consistent with the April 20, 2006 telephonic meet and confer, Enterasys supplemented

its responses ("Supplemental Responses") to Foundry's Interrogatory Nos. 2 and 3 on April 26,

2006.[5] (*See* Exh. 7 to Henschke Decl.). In its supplemental response to Interrogatory No. 2,

Enterasys addressed the first three issues raised by Foundry. (*See id.,* p. 5.).

First, Enterasys made preliminary identifications of the core patent claims it will assert,

stating:

---

[5] Within a day of Enterasys serving its Supplemental Responses, Foundry filed the present Motion.

6

> *Subject to and without waiving its objections, Enterasys states that it is, and will be, asserting at least the following patent claims in this case:*
>
> *Claims 1, 5, 20 and 21 of U.S. Patent No. 5,251,205 (the "'205 patent").*
>
> *Claims 1 and 10 of U.S. Patent No. 5,390,173 (the "'173 patent").*
>
> *Claims 1 and 4 of U.S. Patent No. 6,128,665 (the "'665 patent").*
>
> *Claims 1 and 25 of U.S. Patent No. 6,147,995 (the "'995 patent).*
>
> *Claims 1, 6, 14 and 20 of U.S. Patent No. 6,539,022 (the "'022 patent).*
>
> *Claims 1 and 15 of U.S. Patent No. 6,560,236 (the "'236 patent").*
>
> *Enterasys expressly reserves the right to add additional asserted claims to the above list at the time it provides claim construction charts on July 17, 2006, or at any time thereafter, as evidence and events may warrant.*

(*Id.*, p. 5).

Second, Enterasys identified the families of Foundry products it is accusing of

infringement:

> *Enterasys is, and will be, accusing of infringing one or more of the asserted claims listed above every Foundry product sold or licensed during the relevant damages period belonging to any of the following product families: (i) FastIron; (ii) NetIron; (iii) ServerIron; (iv) TurboIron; (v) BigIron; (vi) EdgeIron; (vii) AccessIron; and (viii) any software used in connection with any accused feature contained in any product from these families including, but not necessarily limited to, IronView software.*

(*Id.*).

Third, Enterasys' supplemental response describes the particular features of the accused

Foundry products that infringe:

> *Enterasys is, and will be, asserting that one or more of the claims listed above read on the following accused features contained in some or all of the accused products listed above:*

7

> The asserted claims of the '205 patent read on Multi-Protocol
> Label Switching ("MPLS") features as that term is used in
> Foundry's own technical and marketing literature. These claims
> also more generally read on features involving any routing
> algorithm that can be used to calculate packet routes for all
> received packets regardless of the multiple different routing
> protocol suites (e.g., the TCP/IP protocol suite; the OSI protocol
> suite; etc.) to which such packets may conform, and without the
> need to convert the destination address of any packet to an
> addressing convention associated with a routing protocol suite
> different from the one to which that packet conforms.
>
> The asserted claims of the '173 patent read on features that add a
> second internal header to a data packet that consists of a field or
> fields that contain local source and/or destination addresses that
> have been translated or derived from the typically longer unique
> network source and/or destination addresses (e.g., MAC
> addresses) contained in a first header. These second internal
> headers are sometimes described in Foundry's own technical and
> marketing literature as "internal Foundry headers," "Foundry
> internal headers," and/or as "optimized headers."
>
> The asserted claims of the '665, '995, and '236 patents read on
> VLAN features, including IEEE 802.1Q VLANs, port-based
> VLANs, protocol-based VLANs, MAC-based VLANs, subnet-based
> VLANs, and default VLANs as those terms are used in Foundry's
> own technical and marketing literature.
>
> The asserted claims of the '022 patent read on IGMP snooping
> features, including RFC 1112 IGMP features, RFC 2236 IGMP
> features, and RFC 3376 IGMP features as those terms are used in
> Foundry's own technical and marketing literature. (See id. at 6).

(Id., p. 6).

In addition, Enterasys explained its theories of infringement:

> Enterasys is alleging direct infringement by accused Foundry
> products under 35 U.S.C. §271(a) relative to the asserted claims
> listed above that are directed to "a network bridge," "a port based
> default VLAN," "a computer program product," or "a computer-
> readable storage medium comprising program instructions."
>
> Enterasys is principally alleging inducement of infringement and
> contributory infringement by accused Foundry products under 35
> U.S.C. §271(b) and (c) relative to the asserted claims listed above
> that are directed to a "network of information handling devices"
> or a "packet data communications network." In these instances,

> *the direct infringers are Foundry's customers. However,*
> *Enterasys may also allege direct infringement against Foundry*
> *relative to such claims to the extent that the evidence shows that*
> *Foundry has used accused products in networks present at its own*
> *facilities, has tested accused products in a network environment,*
> *or has demonstrated accused products in a network environment*
> *for customers or others.*

(*Id.* at 7).

**E.   Enterasys' Supplemental Response To Interrogatory No. 3 And Accompanying Document Production Providing The Factual Underpinnings Of Its Pre-Suit Infringement Investigation**

The fourth category of information Foundry claimed it needed before it could respond to Enterasys' discovery requests, as set out in its Interrogatory No. 3, consisted of additional information relating to the factual details of Enterasys' pre-filing investigations. (*See* Henschke Decl. at Exh. 8, pp. 4-5). In addressing these issues in its supplemental response to Interrogatory No. 3, Enterasys supplied the following factual information: (1) that Enterasys performed two pre-filing investigations—the first in March of 2004 and the second in March of 2005; (2) that these investigations were performed exclusively by outside counsel at the request and direction of Enterasys' Intellectual Property Counsel Paul Coryea; (3) that each of these investigations included analyses of both claim constructions and infringement by Foundry; (4) and, that the investigations were based principally upon Foundry's publicly available technical and product marketing documents. (*See* Henschke Decl. at Exh. 7, p. 10). In addition, Enterasys followed its supplemental response to Interrogatory No. 3 with an extraordinary document production of more than 11,000 pages containing those documents still within its possession, custody or control that it relied upon during these pre-filing investigations.

**F.   Foundry's Renewed Refusal To Provide Discovery Despite Having Received Supplemental Interrogatory Responses**

Despite Enterasys' satisfying Foundry's requests for information regarding (1) asserted claims; (2) accused products; (3) accused features; and (4) its pre-filing investigations, Foundry

9

in a May 4, 2006 letter, signaled a continued refusal to respond to Enterasys' discovery requests. (*See* Henschke Decl. at Exh. 9, p. 2). In that letter, Foundry raised a newly minted excuse for its refusal to provide meaningful discovery. (*See id.*). Foundry now claimed that without Enterasys' claim charts, it "cannot respond" and "cannot fully comply with [Enterasys'] discovery requests." (*See id.*).

Nevertheless, the defenses that Foundry asserted in its answer to Enterasys' complaint, which require good faith obligations under Fed. R. Civ. P. 8 and 11, suggest that Foundry *does* have an understanding of the issues in this case. (*See* Henschke Decl. at Exh. 10, pp. 7-8). Despite its inability to "frame the issues of the case" and understand the alleged infringement in this case, Foundry has managed to assert invalidity, claim construction estoppel and laches defenses in its answer. (*See id.*). In addition, Foundry has apparently understood the issues of the case well enough to produce more than 40,000 pages of documents it claims to be invalidating prior art. (*See* Mot. at 3).

Tellingly, Foundry has objected to requests made by Enterasys for the same information it now seeks to compel from Enterasys. In its own Responses, Foundry refuses to produce claim charts -- the very thing it seeks to compel from Enterasys -- because it claims that such production is *premature*. (*See* Henschke Decl. at Exh. 4, p. 87). Similarly, despite moving to compel additional information about Enterasys' pre-filing investigations, Foundry's Document Responses carry a general objection that states:

> *Foundry objects to any requirement in these Requests that Foundry identify or produce any privileged document generated after the filing of this lawsuit, or that reflects a pre-filing investigation. Such material is clearly privileged, and it is unduly burdensome to require the inclusion of such material in any privilege log.*

10

(*Id.* at 4).  Thus, not only does Foundry refuse to produce any pre-filing investigation materials, it considers such materials so privileged it refuses to eveninclude them on a privilege log.  (*See id.*).

## III.
## ARGUMENT

### THE COURT SHOULD DENY FOUNDRY'S ABUSIVE MOTION TO COMPEL IN ITS ENTIRETY BECAUSE ENTERASYS HAS ALREADY PROVIDED SUFFICIENTLY COMPLETE ANSWERS TO FOUNDRY'S INTERROGATORY NOS. 2 AND 3

**A.**  **Enterasys Has Made A More Than Satisfactory Good Faith Response To Interrogatory No. 2**

By providing information about the claims it is likely to assert at trial and the infringement theories at issue, Enterasys has more than satisfied its good faith obligations to respond to Foundry's Interrogatory No. 2.  Enterasys' supplemental response to Interrogatory No. 2 has given Foundry ample information to "frame the issues in this case," and therefore the Court should deny Foundry's Motion to compel additional claim construction information in advance of the Court-set July 17, 2006 due date.

**1.**  **Foundry's Premature Demand That Enterasys *Immediately* Serve Claim Construction Charts Contravenes The Court's Scheduling Order Which Expressly Establishes A Service Due Date Of July 17, 2006**

The Court's Scheduling Order setting a July 17th due date for Enterasys to serve claim charts on Defendants could not be more clear.  (*See* Exh. 3 to Henschke Decl.).  Foundry's request that Enterasys serve claim charts now -- more than two months before the Court's due date -- directly contravenes the Scheduling Order.  (*See id.*).  Moreover, a premature serving of claim charts would deprive Enterasys from the benefit of discovery from Foundry before it refines its core infringement contentions.  Accordingly, the Court should deny Foundry's present Motion.

Despite the Court's rejection of its argument that a due date should not be established for Enterasys' service of claim charts, Foundry maintains that it is entitled to procure them via its discovery requests. (*See* Mot. at 4-5). Enterasys agrees that the Court -- both during the November 3, 2005 scheduling conference and in the Scheduling Order that followed -- was clear about its position on the issue of claim charts; however, that clarity militates a conclusion that is directly opposite to Foundry's argument. (*See* Henschke Decl. at Exh. 2, pp. 18-19, 23; Exh. 3). At the November Scheduling Conference, the Court stated that it would not "get into the specifics...of the way in which you conduct your discovery *with the exception of the claim construction charts*" for which it considered a July 17, 2006 due date to be "a pretty good idea." (*See* Henschke Decl. at Exh. 2, p. 19) (emphasis added). This statement, when read in conjunction with the Scheduling Order, demonstrates that the Court sided with Enterasys regarding a July 17th due date for the service of Enterasys' claim charts.[6]

Foundry's assertion that discovery should be stayed until Enterasys produces claim charts is based wholly upon a misplaced reliance on a case whose outcome was determined by a unique local rule with no equivalent in the District of Massachusetts. *See Network Caching Techs., L.L.C. v. Novell, Inc.*, 67 U.S.P.Q.2d 1034, 1040 (N.D. Cal. 2002). There, the court temporarily stayed discovery because plaintiff did not provide adequate preliminary infringement contentions at the time *required by Patent Local Rule 3-1. See id.* This rule requires parties alleging infringement to provide claim charts on a specific date -- *i.e.*, within 10 days of the initial case management conference. *See id.* at 1038. Thus, Foundry's analogy to *Network Caching* could only be relevant to this case if Enterasys failed to serve claim charts on the July 17th due date set by the Court's Scheduling Order. *See id.* Because Foundry lacks any legal basis to require the

---

[6] As noted *supra* at p. 10, Foundry is asking for something that it is unwilling to provide to Enterasys -- *viz.*, Foundry has refused to provide any documents relating to the construction or interpretation of the Enterasys patents because such a request is purportedly *premature*. (*See* Henschke Decl. at Exh. 4, p. 87).

immediate production of Enterasys' claim charts and its position is directly opposite to the

Court's Scheduling Order, its Motion should be denied.

### 2. Foundry's Assertion That It Cannot Comprehend The Relevant Scope Of Discovery Absent Receiving A Claim Construction Chart Is Specious And Belied By Its Own Prior Representations

Foundry's pleadings and discovery actions demonstrate that Foundry's claims that it

needs Enterasys' claim charts to "frame the issues of the case" are specious and unfounded.

Despite its inability to "frame the issues of the case" and understand the alleged infringement in

this case, Foundry somehow managed to assert invalidity, claim construction estoppel and non-

infringing use defenses in its Answer. (*See* Henschke Decl. at Exh. 10, pp. 7-9). In addition,

Foundry has been able to produce roughly 47,000 pages of alleged prior art supposedly without

understanding the patent claims that Enterasys will assert at trial. (*See* Mot. at 3). If asserted in

good faith, each of these defenses would require that Foundry first have undertaken a detailed

infringement analysis of its own reflecting a substantial appreciation of the relevant issues.

Foundry's Motion fails to acknowledge that Enterasys has already provided the exact

information Foundry originally claimed it needed in order to respond to Enterasys' discovery

requests. The Motion does not acknowledge that, in its Supplemental Responses, Enterasys

identified: (1) between two and four claims it will be asserting for each of the six patents in suit;

(2) the specific Foundry products it accuses of infringing; (3) the features on Foundry products

that asserted claims read on;[7] and (4) its direct, contributory and inducement theories of

infringement. (*See* Henschke Decl. at Exh. 7, pp. 4-8). Nor does it acknowledge that Enterasys'

document production of Foundry materials relied upon during its pre-filing investigations also

provides ample evidence of the issues in the litigation. As a consequence, Enterasys continues to

---

[7] Enterasys' identification of accused features in its Supplemental Responses should definitively address Foundry's ubiquitous objection that it "cannot fully assess the relevance" of Enterasys' document requests. (*See generally*, Ex. G, Responses to Requests 10-101 and 106-120).

be baffled by Foundry's persistent refusals to provide adequate responses to its discovery requests.

**B.    Enterasys Has Made A More Than Satisfactory Good Faith Response To Interrogatory No. 3**

Similarly, the Court should deny Foundry's motion to compel as it pertains to Interrogatory No. 3 because Enterasys has provided a good faith response to Foundry's request. Moreover, by providing Foundry with the factual circumstances surrounding its pre-filing investigations of infringement, Enterasys has given Foundry more than enough information to assess whether Enterasys has satisfied its obligations under Fed. R. Civ. P. Rule 11 and Rule 26. Accordingly, Foundry's motion to compel further answers to its Interrogatory No. 3 should be denied.

Foundry's insistence that it needs more information about Enterasys' pre-filing investigations suggests that, its contentions notwithstanding, it actually seeks privileged information by clothing its discovery request in the garb of "facts." Yet, Enterasys has provided facts that constitute a good faith response to Interrogatory No. 3. (*See* Henschke Decl. at Exh. 7, p. 10). The only logical explanation for Foundry's insistence is that it seeks more than simply facts -- *i.e.*, it seeks the mental impressions and privileged communications of Enterasys and its outside counsel developed during the course of two pre-filing investigations. The Court should reject this attempted end-run around the attorney-client privilege and the attorney work product doctrine by denying Foundry's Motion as it pertains to Interrogatory No. 3.

**1.    Enterasys Has Disclosed The Factual Circumstances Surrounding Its Pre-Suit Infringement Investigations And Has Made an 11,000-Page Document Production Containing The Materials It Relied Upon**

Contrary to Foundry's claims, Enterasys has provided substantial information regarding its pre-filing investigations through its Supplemental Responses and accompanying document production. (*See* Henschke Decl. at Exh. 7, p. 10). The information provided and the documents

14

produced demonstrate the factual bases of Enterasys' pre-filing investigations. (*See id.*).

Moreover, Enterasys' response to Interrogatory No. 3 and accompanying document production

constitute a representation that it and its counsel have conducted multiple, reasonable inquiries,

and that the infringement allegations have evidentiary support or are likely to so have after a

reasonable opportunity for discovery. (*See id.*).

    As disclosed in its Supplemental Responses, Enterasys first learned that Foundry was

infringing the six patents in suit during a pre-filing investigation in March of 2004.[8] (*See id.*).

One year later, Enterasys conducted a second pre-filing investigation. (*See id.*). Further,

Enterasys' supplemental response to Interrogatory No. 3 disclosed to Foundry that each

investigation was performed *exclusively* by outside counsel at the request of its in-house

intellectual property counsel. (*See id.*). This response also states that each investigation

included claim construction and infringement analyses. (*See id.*). And, Enterasys' response to

Interrogatory No. 3 noted that both pre-filing investigations "principally focused upon Foundry's

publicly available technical and product marketing documents." (*See id.*). Finally, its response

to Interrogatory No. 3 pledged to produce Foundry documents relied upon during these

investigations -- a pledge it has since honored.[9] As a result, Foundry's claims that Enterasys'

response "does not contain any factual detail" are unfounded. (*See Mot. at 8*).

    Moreover, Enterasys' supplemental response to Interrogatory No. 3 amply satisfies

Foundry's claim that it needs this information to assess whether it should bring a Rule 11 Motion

---

[8] Enterasys' disclosure that it first learned of Foundry's infringement in March of 2004 establishes a clear point in time for purposes of asserting any laches defense.

[9] Enterasys subsequently made an 11,384 page document production which contained documents in its possession, custody or control relied upon by Enterasys or its counsel performing the pre-filing investigations.

against Enterasys.[10]  (See Mot. at 2).  Under Rule 11, a claimant's counsel carries an obligation

to certify:

> to the best of [his] … knowledge, information, and belief, formed
> after an inquiry reasonable under the circumstances … the
> allegations and other factual contentions [contained therein] have
> evidentiary support or, if specifically so identified, are likely to
> have evidentiary support after a reasonable opportunity for further
> investigation or discovery.

*See* Fed. R. Civ. P. 11(b)(3).  In the patent infringement context, the Federal Circuit has held that

an infringement analysis is the "key factor in determining whether a patentee [has] performed a

reasonable pre-filing inquiry."  *See Q-Pharma, Inc. v. Andrew Jergens*, 360 F.3d 1295, 1302

(Fed. Cir. 2004).  Moreover, "[a]n infringement analysis can simply consist of a good faith,

informed comparison of the claims of a patent against the accused subject matter."  *See View

Eng'g.*, 208 F.3d at 986 (Fed. Cir. 2000).

       By giving Foundry information concerning (1) when pre-filing investigations were

conducted; (2) who conducted them; (3) the fact that these investigations consisted of claim

constructions and infringement analysis against Foundry products; (4) the documents principally

relied upon to conduct the investigations, Enterasys has clearly provided enough information for

Foundry to gauge whether its Rule 11 obligations have been met.  Foundry's attempt to compel

Enterasys to provide additional "factual detail" to its pre-filing investigations is simply an

impermissible attempt to gain a strategic advantage by gaining access to the protected

impressions of counsel.  Accordingly, this Court should deny Foundry's Motion as it pertains to

Interrogatory No. 3.

---

[10] In its motion, Foundry, citing *View Engineering, Inc. v. Robotic Vision Systems*, takes case language out of
context to suggest that it has "challenged" Enterasys to "demonstrate…exactly why it believed before filing the
claim that it had a reasonable chance of proving infringement." (*See* Mot. at 9, *citing* 208 F.3d 986 (Fed. Cir.
2000)).  Unlike Foundry's present motion, *View Engineering* came to the court on a Rule 11 motion for sanctions,
not a discovery dispute. *See* 208 F.3d at 986.  Only in the context of a Rule 11 motion is a patentee required to
waive privilege with respect to its pre-suit investigation.

2.     **Foundry's Demands For Still Further Information Are Improperly Directed At Obtaining Enterasys' Attorney Work Product And Privileged Attorney-Client Communications**

Contrary to its contentions, Foundry does not simply seek "facts" regarding Enterasys' pre-filing investigations; rather it apparently seeks to gain an understanding of Enterasys' legal strategies and impressions that are protected from discovery. (*See* Mot. at 2, 8). Indeed, Foundry in its Motion states that it needs information about Enterasys' pre-filing investigations so it can "understand Enterasys' theories of infringement." (Mot. at 8). Thus, it is evident that Foundry is seeking a window into the attorney's work product of how Enterasys has construed the patent claims and how it applied these constructions to accused products sold by Foundry. (*See* Ex. E at 2).[11] Because Foundry's demands for further information about Enterasys' pre-filing investigations seek information protected by the attorney-client privilege and/or the attorney work-product doctrine, Foundry should not be permitted to compel further answers to its Interrogatory No. 3.

The additional information Foundry seeks is protected by the attorney work product doctrine because it was (1) "prepared in anticipation of litigation" and (2) conducted by attorneys at the direction of Enterasys' IP counsel. *See* FED. R. CIV. P. 26(b)(3). Nevertheless, Foundry insists that it is entitled to discovery relating to Enterasys' pre-filing investigations so it can understand Enterasys' theories of infringement. (*See* Mot. at 8).[12] Simply put, Foundry is not

---

[11]  Foundry's Motion fails to demonstrate that the circumstances surrounding its request militate a by-pass of the work-product doctrine. It has not shown that it "has a substantial need" for the pre-filing work product protected information; nor has it shown that it has been "unable without undue hardship to obtain the substantial equivalent ... by other means." *See* Fed. R. Civ. P. 26(b)(3). It follows, moreover, that Foundry has not even come close to meeting the heightened standard that would permit it to have access to "opinion" work product that shows the mental impressions, conclusions, opinion, or legal theories of the attorney concerning this litigation. *See Upjohn Co. v. U.S.*, 449 U.S. 383, 400 (1981); *see also In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003) (holding that "opinion" work product receives "near absolute protection from discovery").

[12]  Foundry's Interrogatory No. 3 does not seek Enterasys' theories of infringement as they stand today; rather it impermissibly seeks the infringement theories of Enterasys and its counsel as they existed during the pre-filing investigations. (*See* Henschke Decl. at Exh. 8, pp. 4-5).

17

entitled to how counsel interpreted the patents during the pre-filing investigations; nor is it entitled to how counsel applied those interpretations to the accused products. *See Phillips Elecs. N. Am. Corp. v. Universal Elecs. Inc.*, 892 F. Supp. 108, 110 (D. Del. 1995). Enterasys has supplied the factual underpinnings of these analyses above, but steadfastly maintains that it is not obligated to provide any insight into the mental impressions of the attorneys conducting the investigations. *See State of Maine v. U.S. Dept. of Interior*, 298 F.3d 60, 66 (1st Cir. 2002*); In re Grand Jury Subpoena*, 220 F.R.D. 130, 141 (D. Mass. 2004); *Phillips*, 892 F. Supp. at 110.

Moreover, to the extent Foundry's requests in Interrogatory No. 3 seek information that reflects confidential communications between Enterasys and its counsel, this Court should deny the present motion under the attorney-client privilege. *See U.S. v. United States Shoe Machinery Co.*, 89 F. Supp. 357, 358-59 (D. Mass. 1950). Accordingly, Enterasys should not be compelled to produce any documents or other information that reflect any confidential communication between Enterasys and its counsel made for "purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding." *See id.; see also* Edna Selan Epstine, *The Attorney-Client Privilege and the Work-Product Doctrine*, (4th Ed. 2001) at 46. Compelling Enterasys to provide such information would run counter to the policy goals—namely the encouragement of "full and frank communication between attorneys and their clients" to "promote broader public interests in the observance of law and administration of justice"—articulated by the Supreme Court in *Upjohn Co. v. United States*. *See* 499 U.S. 383, 390 (1981).

To permit Foundry to compel additional information about Enterasys' pre-filing investigations would be to delve into areas of discovery that are protected by the attorney-client privilege and the work-product doctrine. Such discovery would only provide Foundry with fodder to try to limit Enterasys to the infringement identified during March of 2004 and 2005

without affording it the benefit of the discovery process. For the foregoing reasons, the Court

should deny Foundry's motion as it pertains to Interrogatory No. 3.

**IV.**
**CONCLUSION**

For the foregoing reasons, Enterasys respectfully requests that the Court deny in its

entirety Foundry's present motion to compel further answers to its Interrogatory Nos. 2 and 3.

Dated: May 11, 2006                     Respectfully submitted,

                                        ENTERASYS NETWORKS, INC.

                                        By its attorneys,

                                         /s/ Marc N. Henschke
                                        Christopher P. Sullivan, Esq. (BBO No.485120)
                                        Marc N. Henschke, Esq. (BBO No. 636146)
                                        Alan E. McKenna (BBO No. 644556)
                                        Robins, Kaplan, Miller & Ciresi L.L.P.
                                        800 Boylston Street, 25th Floor
                                        Boston, MA 02199
                                        Tel. (617) 267-2300

Of Counsel:
A. James Anderson, Esq. *(pro hac vice)*
Marla R. Butler, Esq. *(pro hac vice)*
Robins, Kaplan, Miller & Ciresi L.L.P.
2600 One Atlanta Plaza
Atlanta, GA 30326-1386
Tel. (404) 760-4300

Robert A. Auchter, Esq. *(pro hac vice)*
Robins, Kaplan, Miller & Ciresi L.L.P.
1801 K Street, N.W.
Washington, DC 20006
Tel. (202) 775-0725

35031271.2

19

## CERTIFICATE OF SERVICE

I, Marc N. Henschke, hereby certify that on May 11, 2006, I caused the attached *Plaintiff Enterasys Networks, Inc.'s Memorandum In Opposition To Defendant Foundry Networks, Inc.'s Motion To Compel Further Answers To Its Interrogatories Nos. 2 And 3* to be served electronically pursuant to the Court's CM/ECF electronic filing system upon Defendants' respective counsel of record as indicated by asterisks below:

### Counsel for Defendant Foundry Networks, Inc.

William L. Anthony, Jr., Esq.*
I. Neel Chatterjee, Esq.*
Michael F. Heafey, Esq.
Sanjeet K. Dutta, Esq.
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025

Steven M. Bauer, Esq.*
Jeremy P. Oczek, Esq.*
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110-2600

### Counsel for Defendant Extreme Networks, Inc.

Terrence P. McMahon, Esq.*
Vera M. Elson, Esq.*
David H. Dolkas, Esq.
MCDERMOTT, WILL & EMERY LLP
3150 Porter Drive
Palo Alto, CA 94303-1212

Peter L. Resnik, Esq.*
Benjamin A. Goldberger, Esq.*
MCDERMOTT, WILL & EMERY LLP
28 State Street
Boston, MA 02109-1775

Christopher D. Bright, Esq.
MCDERMOTT, WILL & EMERY LLP
18191 Von Karman Avenue, Suite 400
Irvine, CA 92612-7107

Dated: May 11, 2006                    __/s/ Marc N. Henschke_____
                                       Marc N. Henschke

# McDermott
# Will&Emery

Boston  Brussels  Chicago  Düsseldorf  London  Los Angeles  Miami  Munich
New York  Orange County  Rome  San Diego  Silicon Valley  Washington, D.C.

Firasat Ali
Attorney at Law
Fali@mwe.com
650.813.5012

May 3, 2006

BY E-MAIL

Marc N. Henschke, Esq.
Robins, Kaplan, Miller & Ciresi L.L.P.
Prudential Tower
800 Boylston Street, 25th Floor
Boston, MA 02199
mnhenschke@rkmc.com

Re:     *Enterasys Networks v. Extreme Networks*, Civil Action No. 05-12235 (D. Mass.)

Dear Marc:

        This letter addresses the inadequacy of certain of Enterasys' responses to Extreme's
Interrogatories (First Set Nos. 1-13).

**Interrogatory No. 1.**  This interrogatory seeks to obtain the specific facts from Enterasys
concerning: which Extreme products infringe what claims (subsection (a)); how each product
infringes (subsection (b)); a claim chart and explanation as to each element or limitation
(subsections a-d)); and other information related to the nature of the alleged infringement
(subsections e-g).

All that Enterasys provides is a listing of the claims which it claims are infringed and a general
discussion concerning what the claims read on.  The answer is inadequate because it does not
inform Extreme as to the specific basis for the charges of infringement, which Extreme is entitled
to know *now*.  Under Rule 11, Enterasys was required to have conducted a reasonable
investigation and know these facts before suit was filed.  There is no legitimate reason why we
must be forced to wait until July to learn Enterasys' infringement position on the accused
products.  We demand that Enterasys agree to provide a full and complete answer to this
interrogatory.

**Interrogatory No. 2.**  Enterasys merely provided dates without any explanation as requested by
the interrogatory.  Please confirm Enterasys has no intention of relying on any pre-filing
conception or reduction to practice dates for the '665, '995 and '022 patents and has no
documents to corroborate any such dates.

As to the '205, '173 and '236 Patents, Enterasys apparently claims privilege as to any information
supporting the pre-filing dates asserted. Enterasys' assertion of privilege simply cannot apply to
the *facts* regarding its claimed earlier dates of conception and first reduction to practice.  Facts

Marc N. Henschke
May 3, 2006
Page 2

are not privileged. Further, Enterasys cannot use the attorney-client privilege as both a sword and shield. To the extent Enterasys relies on invention disclosures for pre-filing dates of conception and reduction to practice, Enterasys must produce those invention disclosures. Moreover, Enterasys has not provided the information required to be provided under Rule 26(b)(5) concerning the assertion of privilege. We demand that Enterasys agree to provide a full and complete answer and should immediately do: i) supplement its interrogatory response to include *all facts* currently known by Enterasys of the circumstances surrounding the alleged invention of each patent; and ii) produce the invention records for the patents-in-suit, including, but not limited to the '205, '173, and '236 patents, as well as any other documents regarding dates of conception and first reduction to practice for any of the patents-in-suit. Further, to the extent any information is shielded by an assertion of privilege, we demand that Enterasys provide the information required by Rule 26(B)(5), i.e., "the nature of the documents, communications, or things not produced or disclosed in a manner that ... will enable other parties to assess the applicability of the privilege or protection." As you know, Extreme's invalidity contentions are due on August 4, and we must have a full and complete response to this interrogatory, including a specific identification of any allegedly corroborating documents, to provide those contentions. Enterasys' delay in providing this information only delays Extreme's ability to provide complete invalidity contentions.

**Interrogatory No. 3.** Enterasys' response to Interrogatory No. 3 is deficient because it fails to identify any products or components sold by Enterasys or prior owners which use an invention claimed in the Enterasys' patents. Enterasys claims to have insufficient information to answer this interrogatory. However, this information appears to be within Enterasys' possession, custody or control, given its possession of a substantial volume of DEC and Cabletron documents, as well as Enterasys' own documents. At the very least, Enterasys could have provided information about its *current* products or components which use an invention claimed in the Enterasys' patents but it failed to do so. Enterasys' delay in providing this information only delays Extreme's ability to provide complete invalidity contentions, including any on-sale or public use bars. At a minimum, we want to know when DEC started selling the Gigaswitch with port-based VLAN capability and when Cabletron started selling the MMAC-Plus hub with MAC-based VLAN capability and an identification of documents that reflect this. We demand a date certain when Enterasys will provide this information.

**Interrogatory Nos. 4-5.** By this letter we confirm our understanding as to Enterasys' position, which is: (1) Enterasys will not provide the information requested by these interrogatories until after July 17, 2006; (2) immediately after July 17, 2006, Enterasys agrees to provide complete responses; and (3) Enterasys' position that discovery on the matters covered by these interrogatories is premature until after July 17, 2006. If our understanding just stated is incorrect in any regard, please advise.

**Interrogatory Nos. 6-7.** By this letter we confirm our understanding as to Enterasys' position, which is: (1) Enterasys will not provide the information requested by these interrogatories until after October 3, 2006; (2) immediately after October 3, 2006, Enterasys agrees to provide complete responses; and (3) Enterasys' position that discovery on the matters covered by these

Marc N. Henschke
May 3, 2006
Page 3

interrogatories is premature until after October 3, 2006.  If we our understanding just stated is incorrect in any regard, please advise.

**Interrogatory No. 9.**  Enterasys has not provided us with the following necessary and required information:

       1.  The address and location of Paul M. Coryea sufficient to serve a third-party subpoena on him should we wish to do so.

       2.  The specific Extreme documents that were reviewed by Mr. Coryea and which form the basis for Enterasys' answer that Extreme's products allegedly infringe the patents-in-suit.

       3.  The detailed facts concerning "when, where and how" the belief was formed in March 2004.

       4.  The name and address of the second, unidentified lawyer who conducted an investigation in March 2005.

       5.  The detailed facts concerning "when, where and how" the belief was formed in March 2005.

       6.  The specific Extreme documents that were reviewed by the second, unidentified lawyer and which form the basis for Enterasys' answer that Extreme's products allegedly infringe the patents-in-suit.

       7.  The information required by Rule 26(b)(5) concerning any assertion of privilege as stated in the response.

       We demand that Enterasys provide the listing information.

**Interrogatory No. 10.**  Enterasys claims to know of no prior art other than the references cited in the patent prosecution histories.  Please confirm whether Enterasys is aware of any other prior art identified by any third parties or reviewed by Enterasys' lawyers which is not cited in the patents in suit, such as prior art identified during license negotiations or validity searches.

**Amended Interrogatory No. 12.**  Enterasys claims that there appears to be significant overlap between the subject matter of the asserted claims and certain industry standards.  Extreme demands a complete response to the interrogatory, including where in each standard each asserted claim element is allegedly found, and the identities of any DEC, Cabletron or Enterasys employee involved with the MPLS or IGMP standards.

Please let me know a date certain by which Enterasys will supplement the above interrogatory responses.  I look forward to your prompt response.

Marc N. Henschke
May 3, 2006
Page 4

Sincerely,

*Firasat Ali*

Firasat M. Ali

cc:     Alan E. McKenna, Esq.  (By Email)
        Vera M. Elson, Esq.  (By Email)
        David H. Dolkas, Esq.  (By Email)
        Chris Bright, Esq.  (By Email)
        Neel I. Chatterjee, Esq. (By Email)
        Jeremy P. Oczek, Esq. (By Email)

MPK 108028-1.065994.0016

# ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

800 BOYLSTON STREET
25TH FLOOR
BOSTON, MA 02199-7610
TEL: 617-267-2300  FAX: 617-267-8288
www.rkmc.com

ATTORNEYS AT LAW

MARC N. HENSCHKE
617-859-2784
mnhenschke@rkmc.com

May 15, 2006

*VIA E-MAIL (PDF ATTACHMENT)*

Firasat M. Ali, Esq.
McDermott Will & Emery LLP
3150 Porter Drive
Palo Alto, CA  94303-1212

Re: *Enterasys Networks v. Foundry Networks and* **Extreme Networks**
*Civ. Act. No. 05-11298-DPW (D. Mass)*
**Our File No.: 070610.0001**

Dear Firasat:

We write in response to your letter to me dated May 3, 2006 concerning Enterasys' supplemental responses to Extreme's first set of interrogatories. We have attempted to parallel the organizational structure set forth in your letter.

**Interrogatory No. 1**

Enterasys will not produce detailed claim construction charts/infringement analyses until at least the July 17, 2006 due date expressly provided for in the Court's Scheduling Order.

Extreme's suggestion that it is unable to comprehend Enterasys' charges of infringement for discovery purposes is specious given the facts that Enterasys has already specifically identified asserted claims, accused products, and accused product features.

Interestingly, we note that in response to Enterasys' Document Request No. 86, Extreme is itself refusing to produce any of its own claim construction charts/infringement analyses on grounds of "prematurity." Surely Extreme must be in possession of such materials or it would lack any good faith basis for its assertion of affirmative defenses and/or counterclaims of patent invalidity, non-infringement, and non-infringing uses.

**Interrogatory No. 2**

All facts presently known to Enterasys concerning the dates of invention for the patents-in-suit have been provided. To the extent that additional information is learned during the course of discovery, Enterasys will supplement its interrogatory response in the manner required by F.R.C.P. 26(e).

Firasat M. Ali, Esq.
May 15, 2006
Page 2

To date, Enterasys has located no underlying documents relevant to establishing pre-application invention dates other than the invention records themselves over which it is presently asserting attorney-client privilege.  See, e.g., In Re Spaulding Sports Worldwide, Inc., 203 F.3d 800, 806 (Fed. Cir. 2000) (the entirety of invention records are protected by attorney-client privilege irrespective of whether they may contain factual information).

These invention records will of course be listed on a privilege log which will be provided to Extreme in due course.  We note that Enterasys has yet to receive any privilege log from Extreme, despite Extreme's ubiquitous assertion of privilege objections in response to Enterasys' document requests.

**Interrogatory No. 3**

Your suggestion that information concerning Enterasys' own past or current products could somehow be relevant to "invalidity contentions, including any on-sale or public use bars," is baffling.  As you are doubtless aware, the latest priority date for any of the patents-in-suit is December 30, 1996, and Enterasys did not even exist prior to February of 2000.

Enterasys is presently investigating the question of which Cabletron or DEC products may have been the first to embody or practice the inventions of the patents-in-suit.  However, given that this investigation potentially implicates the enormous undertaking of analyzing hundreds of products sold over the past fifteen years under six different patents, Enterasys does not yet know when final answers can be expected.  Moreover, for the reasons previously suggested, Enterasys anticipates that third party discovery may well be required in order to arrive at any final answers relative to DEC products.

**Interrogatory Nos. 4 and 5**

Your purported understanding is incorrect in all respects.

As to Interrogatory No. 4, Enterasys does not intend to provide any further response unless and until Extreme satisfactorily demonstrates the legal relevance of the information requested in view of the case law that Enterasys has cited.  Should Extreme prove able to do so, Enterasys will further respond only after such time as Extreme has specifically identified the prior art that it intends to rely upon in this case for purposes of it invalidity contentions.  Because issued patents benefit from a presumption of validity, Enterasys is under no obligation to demonstrate the novelty of its patented inventions relative to the entire potential universe of prior art.

As to Interrogatory No. 5, Enterasys has clearly stated that it will respond to subparts (1) and (2) by way of expert testimony at an appropriate stage of the case.  Enterasys will respond to subpart (3) as it learns of responsive information during discovery; however, note that a complete response cannot be provided absent resolution of the issues presented in my letter to Vera M. Elson, Esq. dated March 27, 2006.

Firasat M. Ali, Esq.
May 15, 2006
Page 3

**Interrogatory Nos. 6 and 7**

Your understanding is incorrect insofar as it suggests that Enterasys has agreed to further respond to Interrogatory Nos. 6 and 7 "immediately after October 3, 2006." To the contrary, Enterasys will further respond only to the extent that these or similar interrogatories are included in an appropriate set of Phase II fact discovery served on or after October 3, 2006. At this point, Enterasys does not consider Interrogatory Nos. 6 and 7 to have been properly served.

**Interrogatory No. 9**

Sufficient facts concerning the timing and nature of Enterasys' pre-filing investigations have already been provided. Moreover, Enterasys has also provided Extreme with an extraordinary document production of over 31,000 pages containing materials that Enterasys considered and relied upon as part of these investigations.

Your call for a privilege log is intriguing given the fact that, in its response to Enterasys' document requests, Extreme is itself refusing to produce any privilege log relating to its own pre-filing investigations. Does this remain Extreme's position? Is there some reason why it wouldn't apply reciprocally to Enterasys as well?

Upon information and belief, Paul M. Coryea is presently working at Rational Software, IBM Software Group, located at 20 Maguire Road in Lexington, Massachusetts.

**Interrogatory No. 10**

Enterasys' supplemental response to Interrogatory No. 10 speaks for itself. Enterasys is aware of no prior art contended to be invalidating by any third party except for certain references cited in the various official prosecution histories for the patents-in-suit.

**Interrogatory No. 12**

You appear to be insisting upon the immediate production of detailed claim construction charts/infringement analyses or their equivalent. Enterasys will not produce such materials until at least the July 17, 2006 due date expressly provided for in the Court's Scheduling Order.

All facts presently known to Enterasys concerning the participation of Enterasys, Cabletron, or DEC employees in relevant standards-related activities have been provided. To the extent that additional information is learned during the course of discovery, Enterasys will supplement its interrogatory response in the manner required by F.R.C.P. 26(e).

Please note that to the extent that Extreme has issues or concerns with any of the responses set forth above, Enterasys hereby offers to participate in a meet-and-confer at a mutually convenient date and time.

Firasat M. Ali, Esq.
May 15, 2006
Page 4

      We look forward to hearing from you.

               Sincerely,

               Marc N. Henschke

MNH:nah

cc:     Vera M. Elson, Esq. (*VIA FIRST CLASS MAIL & E-MAIL - PDF ATTACHMENT*)
        David H. Dolkas, Esq. (*VIA E-MAIL - PDF ATTACHMENT*)
        Christopher D. Bright, Esq. (*VIA E-MAIL - PDF ATTACHMENT*)
        T. Nation (*VIA E-MAIL - PDF ATTACHMENT*)

35031333

# McDermott
# Will&Emery

Boston  Brussels  Chicago  Düsseldorf  London  Los Angeles  Miami  Munich
New York  Orange County  Rome  San Diego  Silicon Valley  Washington, D.C.

Firasat Ali
Attorney at Law
Fali@mwe.com
650.813.5012

May 24, 2006

BY E-MAIL

Marc N. Henschke, Esq.
Robins, Kaplan, Miller & Ciresi L.L.P.
Prudential Tower
800 Boylston Street, 25th Floor
Boston, MA 02199
mnhenschke@rkmc.com

Re:    *Enterasys Networks v. Extreme Networks*, Civil Action No. 05-12235 (D. Mass.)

Dear Marc:

    This letter addresses the issues discussed during the joint meet-and-confer on May 16, 2006 regarding Enterasys' inadequate responses to Extreme's Interrogatories (First Set Nos. 1-13).

## Information Relevant to and Required for Preparation of Extreme's Invalidity Contentions Currently Due August 4

    Enterasys' refusal to produce the information requested by interrogatory nos. 1, 2, 3 and 9 substantially prejudices Extreme in preparing its invalidity contentions currently due on August 4.  With regard to interrogatory nos. 1 and 9, Extreme must know which claims are asserted, the specific features accused and whether Enterasys claims infringement literally and/or under the doctrine of equivalents ("DOE"), on an element-by-element basis.  Enterasys' infringement contentions may raise issues concerning the prior art, and therefore may impact on Extreme's preparation of invalidity contentions.  If Enterasys literally accuses features which were known in the prior art, the claims are invalid.  Further, the prior art limits the extent to which Enterasys can claim infringement under the DOE.  *Marquip, Inc. v. Fosber Am., Inc.*, 198 F.3d 1363, 1367 (Fed. Cir. 1999); *We Care, Inc. v. Ultra-Mark Int'l Corp.*, 930 F.2d 1567, 1570 (Fed. Cir. 1991).

    Enterasys' refusal to provide all of the information requested by interrogatory no. 2 is particularly unduly prejudicial to Extreme.  In order to identify what qualifies as prior art in the

Marc N. Henschke
May 24, 2006
Page 2

first instance (e.g., prior art under 35 U.S.C. Sections 102(a), 102(e), 102(f) and 102(g)), Extreme must know whether Enterasys is claiming pre-filing dates of conception and/or reduction to practice, and if so, Enterasys should provide right now actual dates of alleged earlier conception and reduction to practice documents and all documents which allegedly support (or corroborate) that contention so the basis for Enterasys' contention can be examined. Enterasys cannot unduly delay providing this information to Extreme and state that an investigation is ongoing and it will provide this information at a later time. Extreme should not have to prepare invalidity contentions only to have the references on which they are based subsequently eliminated as prior art by a prior, corroborated pre-filing date of conception and/or reduction to practice. Before bearing the burden and expense of preparing invalidity contentions for all of the prior art of which it is aware, Extreme is entitled to the requested discovery right now concerning the basis for any such claim by Enterasys. Enterasys cannot, for example, withhold the very (and only) documents that allegedly support such a claim.

Finally, as for interrogatory no. 3, to discover potential prior art, Extreme is entitled to know of all products offered for sale, publicly available, publicly disclosed, publicly used, or sold by each of DEC, Cabletron and Enterasys before the priority dates of each of the patents in suit, and to have all documents pertaining to such products.

If Enterasys continues in its refusal to produce this discovery, Extreme intends to file a motion to compel, and in the alternative, to set aside the schedule for Extreme's invalidity contentions until such time as Enterasys complies with its discovery obligations.

**Information Relevant to Extreme's Laches Defense**

Extreme's interrogatory no. 9 also seeks information that is relevant to Extreme's laches defense. For example, the interrogatory seeks an identification of the features which Enterasys found to allegedly infringe the patents in suit when conducting its pre-suit investigation. These features may have been in Extreme's products for several years before Enterasys filed suit, and therefore, at a minimum, Enterasys should have known of the basis for this suit years before it filed. Such information is relevant to Extreme's laches defense. *A.C. Auckerman Co. v. Chaides Construction Co.,* 960 F.2d 1029 (Fed. Cir. 1992).

Marc N. Henschke
May 24, 2006
Page 3

      To further understand Enterasys' position, we need clarification regarding your May 9 and May 24 letters addressing the Laches defense.  As far as we know, Enterasys is still pursuing a claim for pre-suit damages, and therefore Extreme's laches defense is still relevant because laches bars pre-suit damages. Id. at 1041.  Until such time as Enterasys no longer seeks pre-suit damages, Extreme can pursue its laches defense, and regardless, take the position that pre-suit documents and information are not relevant because, among other things, laches bars pre-suit damages.  If Enterasys is no longer seeking pre-suit damages, and is willing to so stipulate, please let us know immediately.

Sincerely,

*Firasat Ali*

Firasat M. Ali

cc:    Alan E. McKenna, Esq.  (By Email)
        Vera M. Elson, Esq.  (By Email)
        David H. Dolkas, Esq.  (By Email)
        Chris Bright, Esq.  (By Email)
        Neel I. Chatterjee, Esq. (By Email)
        Jeremy P. Oczek, Esq. (By Email)
        Sanjeet K. Dutta, Esq. (By Email)

MPK 108815-1.065994.0016