UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ENTERASYS NETWORKS, INC, <br><br> Plaintiff, <br><br> v. <br><br> FOUNDRY NETWORKS, INC. and EXTREME NETWORKS, INC., <br> Defendants. | Civil Action No. 05-CV-11298 (DPW) |

**FOUNDRY NETWORKS, INC.'S REPLY BRIEF
IN SUPPORT OF ITS MOTION TO COMPEL ANSWERS TO
INTERROGATORIES NOS. 2 AND 3 FROM ENTERASYS NETWORKS, INC.**

Defendant Foundry Networks, Inc. ("Foundry") submits this short reply brief in support of its motion to compel answers to Foundry's Interrogatories Nos. 2 and 3 (Docket 36).[1]

Foundry has moved to compel Enterasys at this stage of the case to: 1) describe in detail and provide a claim chart explaining how Enterasys reads its patents-in-suit to cover the Foundry accused products (Interrogatory No. 2); and 2) tell Foundry what facts on which it brought this suit (Interrogatory No. 3). Enterasys, however, refuses to provide any meaningful answers to these interrogatories and has stalled discovery in this case. Indeed, it seems that Enterasys' motive here is to buy a few extra months to fish for an infringement theory -- an analysis it should have completed long before suing Foundry.

Despite what Enterasys claims in its opposition (Docket 37), Enterasys hasn't provided an element-by-element comparison of the claim language of the patents with accused products, and it hasn't provided any detail as to *how* any Foundry product infringes the claims, as required

---

[1] The Court granted leave to file this reply brief by an electronic Order dated June 12, 2006.

by Interrogatory No. 2.  Foundry does not seek Enterasys' final infringement contentions, or its attorney work product -- but simply its *current* infringement theory against Foundry.

In its opposition, Enterasys contends that its refusal to provide any additional information to Interrogatory No. 2 is driven by its need to conduct discovery to piece together its infringement theories against Foundry.  Enterasys states:

> "[A] premature serving of claim charts would deprive Enterasys from the benefit of discovery from Foundry before it refines its core infringement contentions." (Opp. at 11).

> "Such discovery would only provide Foundry with fodder to try to limit Enterasys to the infringement identified during March of 2004 and 2005 without affording it the benefit of the discovery process."  (Opp. at 18-19).

However, Rule 11 "requires that the inquiry be undertaken *before* the suit is filed, not after." *Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997) (emphasis in original). Enterasys should be compelled to tell Foundry *now* why it thinks that the Foundry accused products infringe, *not after* it has had the benefit of Foundry's production to correct its pre-filing investigation deficiencies.

Regarding Interrogatory No. 3, Enterasys argues in its opposition that it has now fully answered this interrogatory by producing over 11,000 pages of documents that Enterasys claims it reviewed before filing suit.  Enterasys, however, cannot discharge its obligation to answer this interrogatory merely by "incorporating" 11,000 pages of documents into its interrogatory answer.  Indeed, if all 11,000 pages *really* support Enterasys' infringement theories, then it should be a simple matter for Enterasys to tell Foundry *now* why it thinks the Foundry accused products infringe on an element-by-element basis.  Otherwise, Enterasys should provide a meaningful answer to this interrogatory, including an identity of the subset of documents that support Enterasys' current infringement belief, what efforts it undertook to form its belief that

the Foundry products infringe the patents-in-suit, and whether Enterasys actually obtained and evaluated any Foundry products for purposes of filing suit.

For the reasons discussed in this reply and in its motion to compel, Foundry respectfully requests that Enterasys be ordered to immediately answer Foundry's Interrogatory Nos. 2 and 3.

## **BRIEF ARGUMENT**

**I.     ENTERASYS HAS NOT PROVIDED "SUFFICIENTLY COMPLETE ANSWERS" TO FOUNDRY'S INTERROGATORIES NOS. 2 AND 3.**

   **A.     Enterasys Has Not Provided a Meaningful Answer to Interrogatory No. 2.**

Enterasys contradicts itself by arguing, on the one hand, that it has sufficiently answered Interrogatory No. 2, and on the other hand, saying that it will fully answer Interrogatory No. 2 by providing infringement claims charts on July 17.

Interrogatory No. 2 asks Enterasys to:

> Describe in detail and provide a claim chart showing how each FOUNDRY PRODUCT identified in Interrogatory No. 1 infringes each of the corresponding claims. ENTERASYS' response to this interrogatory should: A) identify a proposed construction for each element of each asserted claim that ENTERASYS identifies as being infringed; B) identify specifically where each element of each asserted claim is found within each FOUNDRY PRODUCT, including citation to any supporting evidence; C) identify for each asserted claim element that ENTERASYS contends is a means-plus-function element governed by 35 U.S.C. § 112(6), the structures, acts, or materials in each FOUNDRY PRODUCT that performs the claimed function; and D) state whether each element of each asserted claim is literally present or present under the doctrine of equivalents.

In responding to Interrogatory No. 2, Enterasys merely incorporated by reference its response to Interrogatory No. 1. Enterasys fails to mention this in its opposition. However, Interrogatory No. 1 asked Enterasys a different question -- that is:

> Separately identify each FOUNDRY PRODUCT that ENTERASYS contends infringes any of the PATENTS-IN-SUIT, by name, product number, and/or description, and for each such product, include the

specific claims that are allegedly infringed, and whether that alleged infringement is direct, contributory and/or by inducement.

In responding to Interrogatory No. 1, Foundry responded with a list of two or three claims of each patent-in-suit that Enterasys believes covers Foundry's products, an independent list of accused product families, and an independent list of accused features.

However, there is nothing in Enterasys' response to Interrogatory No. 1 that adequately responds to Interrogatory No. 2 because it does not explain *why* Enterasys believes that the accused products infringe the patents-in-suit at this stage in the case. Enterasys hasn't provided an element-by-element comparison of the claims of the patents with any accused products, as required by Interrogatory No. 2.

> **1. Foundry Is Entitled to Enterasys' Understanding of the Patents at this Point in the Case, Before Enterasys Attempts to Correct the Deficiencies in its Pre-Filing Investigation.**

Enterasys argues that it is not required to provide a meaningful answer to Interrogatory No. 2 because its current response, it says, is sufficient to provide Foundry with enough of an understanding of Enterasys' infringement theory. Enterasys, however, misses the critical point -- while it is true that Foundry has produced prior art references relating to the patents-in-suit, that does not means that it should have to guess how *Enterasys* believes that the accused Foundry products infringe the patents-in-suit. Enterasys needs to disclose *its* current position now, by answering Foundry's interrogatory, as to how Enterasys construes its patents.

> **2. Enterasys' Argument that Foundry Has Not Produced Claim Charts Is of No Consequence Because Enterasys Has Not In Fact Propounded Any Interrogatories Asking For Such Information.**

Enterasys tries to deflect attention away from its discovery deficiencies by claiming that *Foundry* refuses to produce claim charts in this case. (Opp. at 10). First, Enterasys is the plaintiff here, and as the plaintiff, Enterasys is required to disclose its basis for filing the suit

against Foundry. Second, Enterasys has not propounded any interrogatories in this case asking for Foundry's non-infringement contentions. Until Enterasys propounds an interrogatory seeking Foundry's non-infringement position in this case, Foundry is not obligated to *sua sponte* provide non-infringement claim charts to Enterasys. Third, Foundry only objected to providing claim charts in response to Enterasys' *document requests*, since any such charts generated after the filing of this lawsuit would be privileged and/or protected by work product.

   **3.** **Enterasys's Opposition Does Not Address The Fact That The Court-Imposed *Deadline* Of July 17, 2006 For Answering These Interrogatories Is Not The Same As A Due Date.**

Enterasys' opposition does not dispute that Foundry is entitled to a full and complete answer to Interrogatory No. 2. Enterasys' *only* argument is that it doesn't think that it needs to provide a full and complete answer until July 17, 2006. As explained in Foundry's motion, Enterasys' argument is wrong because there is nothing in the Court's Scheduling Order that precludes Foundry from finding out about Enterasys' infringement case *before* July 17, whether by use of interrogatories, depositions, or otherwise.

  **B.** **Enterasys Has Not Fully Answered Interrogatory No. 3.**

   **1.** **Enterasys Production Of Eleven Thousand Pages Does Not Satisfy Its Obligation To Answer Interrogatory No. 3.**

Enterasys argues in its opposition that it has provided an adequate response to Interrogatory No. 3 by producing over 11,000 pages of documents that Enterasys states it reviewed before filing suit. (Opp. at 15). Enterasys, however, has failed to tell Foundry *what facts* served as its basis to bring this suit and what documents in particular supported Enterasys' infringement belief. Enterasys has also failed to tell Foundry whether it obtained or examined the accused Foundry products prior to filing its infringement allegations, and whether it sought an independent expert analysis of actual Foundry products to determine whether any grounds

existed for alleging infringement. The Federal Circuit has considered the failure to obtain an accused product prior to filing a complaint for patent infringement as evidence probative of a Rule 11 violation. *See, e.g.*, *Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997) ("No adequate explanation was offered for why they failed to obtain, or attempted to obtain, a sample of the accused device from the Postal Service or a vendor so that its actual design and functioning could be compared with the claims of the patent. Under these circumstances, there is no doubt that [plaintiff] failed to meet the minimum standards imposed by Rule 11 . . .").

### 2. Enterasys Admits In Its Opposition That It Has Failed To Conduct An Adequate Pre-Filing Investigation Of Foundry's Products.

The reason that Enterasys refuses to provide any additional information about its pre-filing investigation is clear -- Enterasys admits in its opposition that it needs to conduct discovery to shore up its deficient pre-filing investigation:

> "[A] premature serving of claim charts would deprive Enterasys from the benefit of discovery from Foundry before it refines its core infringement contentions." (Opp. at 11).

> "Such discovery would only provide Foundry with fodder to try to limit Enterasys to the infringement identified during March of 2004 and 2005 without affording it the benefit of the discovery process." (Opp. at 18-19).

Enterasys should be compelled at this time to disclose why it thinks that the accused products infringe, *not after* it has the benefit to correct its pre-filing investigation deficiencies.

### 3. Enterasys Admits That Foundry Is Entitled To *Facts* Underlying Its Alleged Pre-Filing Investigations.

Enterasys does not dispute that Foundry is entitled to the facts concerning Enterasys' pre-filing investigations. Rather, Enterasys only tries to confuse the issue by arguing that Foundry "actually seeks privileged information by clothing its discovery request in the garb of 'facts.'" (Opp. at 14). Enterasys is wrong. Interrogatory No. 3 seeks the non-privileged facts that

-6-

Enterasys had in its possession when filing this suit. Enterasys should provide a full and complete answer to this interrogatory, including an identity of the subset of documents that support Enterasys' current infringement belief, what efforts it undertook to form its belief that the Foundry products infringe the patents-in-suit, and whether Enterasys actually obtained and evaluated any Foundry products for purposes of filing suit.

## CONCLUSION

Foundry respectfully requests that Enterasys be ordered to immediately answer Foundry's Interrogatories Nos. 2 and 3, and provide such answers within five days of an Order of the Court.

Dated: June 12, 2006

Respectfully Submitted,
DEFENDANT FOUNDRY NETWORKS, INC.
By Its Attorneys,

     /s/ Jeremy P. Oczek
Steven M. Bauer (BBO #542531)
Jeremy P. Oczek (BBO #647509)
PROSKAUER ROSE LLP
One International Place
Boston, MA  02110-2600
Telephone:  (617) 526-9600
Facsimile:   (617) 526-9899
sbauer@proskauer.com
joczek@proskauer.com

William L. Anthony, Jr. (admitted pro hac vice)
I. Neel Chatterjee (admitted pro hac vice)
Michael F. Heafey (BBO # 556931)
Sanjeet K. Dutta (admitted pro hac vice)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 614-7400
Facsimile:   (650) 614-7401
wanthony@orrick.com
nchatterjee@orrick.com
mheafey@orrick.com
sdutta@orrick.com

## Certificate of Service

The undersigned hereby certifies that this document was filed through the ECF system on June 12, 2006 and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Jeremy P. Oczek*
Jeremy P. Oczek