# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

| | |
|---|---|
| ENTERASYS NETWORKS, INC., | Civil Action No: 05-CV-11298 (DPW) |
| Plaintiff, | The Hon. Robert B. Collings |
| v. | |
| FOUNDRY NETWORKS, INC. AND EXTREME NETWORKS, INC., | |
| Defendants. | |

**REPLY BRIEF OF PLAINTIFF ENTERASYS NETWORKS, INC. IN SUPPORT OF ITS MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM DEFENDANT FOUNDRY NETWORKS, INC.**

**TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ................................................................................................ 1

II. ARGUMENT............................................................................................................................. 2

    A. Foundry's Opposition Papers Confirm That It Is Improperly Withholding Production Of All Non-Public Documents As Leverage For Coercing The Disclosure Of Enterasys' Privileged Pre-Suit Legal Analysis............................... 2

    B. Foundry's Newly Minted Arguments That Enterasys' Document Requests Are Somehow Overbroad, And/Or That Foundry Has Already Sufficiently Complied With Such Requests, Are Frivolous........................................................ 3

    C. Foundry Is Clearly Wrong To Argue That Identification Of Its Customers Would Be Irrelevant To Phase I Infringement Liability Issues (Request No. 102) ................................................................................................................ 6

    D. Foundry Is Clearly Wrong To Argue That Its Unpublished Patent Applications Which Reference And/Or Construe The Patents-In-Suit Are Irrelevant To Phase I Infringement Liability Issues Or Are Otherwise Undiscoverable (Request No. 98) ........................................................................... 7

III. CONCLUSION.......................................................................................................................... 9

# I.
# PRELIMINARY STATEMENT

Enterasys hereby submits a short reply brief in support of its pending motion for an Order compelling Foundry to produce certain critically relevant categories of documents responsive to Enterasys' first set of document requests ("Enterasys Mot."). This reply brief responds to arguments raised in Foundry's opposition papers recently filed with the Court on June 15, 2006 (Foundry Opp.).

The abusive discovery tactics that Enterasys described in its opening papers have now been confirmed. Indeed, Enterasys previously informed the Court that Foundry was improperly withholding the production of all non-publicly available documents as leverage for coercing Enterasys into providing its privileged pre-suit legal analysis. Foundry's opposition papers barely seek to disguise this fact, openly demanding that Enterasys provide the patent claim charts detailing its "infringement allegations on an element-by-element basis" that Enterasys' attorneys prepared "prior to bringing suit." Moreover, Foundry proves so incapable of justifying its refusals to provide other categories of responsive documents that these refusals must likewise be viewed as part of the same abusive discovery tactics.

To put Foundry's misconduct in perspective, the Court may wish to consider that this case also names as a co-defendant Foundry's similarly situated direct competitor, Extreme. Extreme is the same size as Foundry, sells the same kinds of products as Foundry, and is accused by Enterasys of infringing the same patent claims. Yet unlike Foundry, Extreme is not falsely claiming an inability to understand this case nor improperly refusing to comply with its discovery obligations. To the contrary, Extreme has indicated to Enterasys that within the next month it hopes to produce most or all of its key non-publicly available technical documents, as well as to identify its customers and the products they have purchased.

## II.
## ARGUMENT

**A.    Foundry's Opposition Papers Confirm That It Is Improperly Withholding Production Of All Non-Public Documents As Leverage For Coercing The Disclosure Of Enterasys' Privileged Pre-Suit Legal Analysis**

In its opposition papers, Foundry makes no serious attempt to argue that it has legitimately withheld the production of all non-public documents on grounds that they are somehow non-responsive to Enterasys' document requests or irrelevant to the claims and defenses raised in this case.  Rather, as Foundry would have it, non-compliance with its own discovery obligations is warranted retaliation for Enterasys' ostensible "refus[al] to provide any information about its infringement theory."  (Foundry Opp., p. 1).

At first blush, it is difficult to fathom what Foundry could possibly mean by this vague assertion that Enterasys has purportedly disclosed nothing about its "infringement theory."  Indeed, in supplemental interrogatory responses served upon Foundry on April 26, 2006, Enterasys specifically identified in writing the asserted patent claims, the accused products, the accused product features,[1] and the statutory bases for its infringement allegations.  Thus, upon closer examination, it becomes apparent that what Foundry really wants from Enterasys is the premature production of detailed patent claim charts that would provide an "element-by-element" comparison of the asserted claims with the accused products.  (Foundry Opp., p. 7).  Moreover, owing to Foundry's failure to have produced any non-publicly available documents, these claim charts could necessarily reflect only the infringement analysis that Enterasys' outside counsel "established prior to bringing suit."  (Id.).

---

[1] Apparently placing little value on maintaining its credibility with this Court, Foundry misrepresents throughout its opposition papers that Enterasys has never "identif[ied] the specific features of the accused products it alleges infringe its patents."  (Foundry Opp., pp. 1, 4, 7).  But the falsity of this statement can be readily verified by reviewing pages 6-7 of Enterasys' supplemental interrogatory responses previously submitted to this Court as Exhibit 7 to the Declaration Of Marc N. Henschke In Opposition To Defendant Foundry Networks, Inc.'s Motion To Compel Further Answers To Interrogatory Nos. 2 And 3, filed on May 11, 2006.  See (Docket Entry No. 38).

Perhaps needless to say, the pre-suit claim charts and infringement analysis prepared by Enterasys' outside legal counsel is quintessentially attorney work product. As a matter of law, the *only* circumstances in which a patentee would be required to waive these attendant work product protections would be when rebutting Rule 11 accusations that it failed to conduct a reasonable pre-suit investigation. Here, lacking any good faith basis to bring a Rule 11 motion, Foundry is trying to make an end-run around Rule 11 by employing abusive discovery tactics to coerce the disclosure of protected work product to which it is not entitled. In so doing, Foundry has placed Enterasys in the proverbial catch-22 dilemma. Indeed, Foundry demands the immediate production of detailed claims charts showing precisely how its accused products infringe, yet simultaneously withholds production of the very non-public technical documents that Enterasys would need in order to meaningfully prepare such claims charts.

**B.**     **Foundry's Newly Minted Arguments That Enterasys' Document Requests Are Somehow Overbroad, And/Or That Foundry Has Already Sufficiently Complied With Such Requests, Are Frivolous**

In its opposition papers, Foundry now seeks to justify its refusals to produce responsive non-public documents by raising for the first time two new arguments that it never previously asserted during the parties' numerous meet-and-confers. On their best day, these newly minted arguments would be frivolous.

First, Foundry makes the hyperbolic and completely unsupported contention that Enterasys has served "grossly overbroad document requests, which on their face would potentially require the production of every single document at Foundry." (Foundry Opp., p. 1). Tellingly, however, Foundry provides the Court with no explanation or examples for how or why this bald assertion should be accepted as true. Enterasys strongly encourages this Court to examine its document requests which have previously been submitted as an exhibit in connection

3

with its moving papers.  See (Exh. 2 to the Henschke Decl.) (Docket Entry No. 46).  Such an examination will readily confirm that, in seeking Foundry's key technical documents, Enterasys' document requests could not possibly have been more narrowly tailored or precisely focused.  As an initial matter, these requests are preceded by a detailed set of exacting technical definitions.  (Id. at pp. 6-10).  Moreover, the actual requests themselves entail a pinpoint targeting of only those documents relevant to showing how Foundry's specifically accused product features perform the various functions recited in the patent claims.  (Id. at pp. 12-29, Request Nos. 10 to 85).

In an exercise of sophistry, Foundry points to a single Enterasys document request -- Request No. 65 -- as purportedly being overbroad.  (Foundry Opp., pp. 4-6).  Request No. 65 seeks documents showing whether and how Foundry's specifically accused MPLS product feature implements certain MPLS industry standards.  Trying to create the false impression of overbreadth, Foundry gratuitously asserts that there are many different versions of MPLS industry standards that collectively number several hundred pages in length.  (Id.).  What Foundry conveniently overlooks, however, is that Request No. 65 does not target these industry standards documents.  Rather it targets but a single category of documents -- *viz.*, those documents that show how Foundry's MPLS product feature operates.  As such, Request No. 65 is simply an alternative way of asking for the very same documents already called for by other requests that are precisely focused on ascertaining the functionality of Foundry's MPLS product feature.  Cf. (Henschke Decl. at Exh. 2, pp. 25-27, Request Nos. 66 to 75) (Docket Entry No. 46).

Second, despite having limited its document production to only those materials publicly available on its website, Foundry now seeks to give this Court the false impression that it

4

actually has produced the "key technical documents" that Enterasys will need to prove its infringement allegations. (Foundry Opp., pp. 3-4). But this directly contradicts what Foundry itself has always previously admitted during the parties' various meet-and-confer sessions. For example, Enterasys sent Foundry a letter dated May 17, 2006 indicating that none of the critical technical documents were contained in Foundry's production, including the requested "hardware specifications, software specifications, schematics, training guides, chipset specifications, and architectural specifications."[2] At subsequent meet-and-confers, Foundry openly acknowledged that it had not, and would not, produce such documents unless and until Enterasys first provided detailed patent claim charts.

In its opposition papers, however, Foundry would now have this Court believe that these documents have been produced. Indeed, Foundry has apparently scoured its production looking for any documents with words sounding like "hardware" or "software" in their titles, and tries to imply that these materials constitute the requested hardware or software specifications. (Foundry Opp., pp. 6-7). But as Foundry is well aware, they do not. Tellingly, whereas an actual hardware specification will typically contain *several hundred or thousands of pages* of detailed engineering information, Foundry falsely seeks to characterize certain documents as hardware specifications whose Bates number ranges indicate that they are *three pages long*. (Id.). Moreover, Foundry does not even attempt to argue that it has produced the requested "schematics, training guides, chipset specifications, and architectural specifications." (Id.). In short, it strains credulity past the breaking point for a defendant in a patent case to claim that it

---

[2] Incredibly, despite having participated in numerous meet-and-confers and having received correspondence such as the May 17th letter quoted in the text above, Foundry has the temerity to tell this Court that "Enterasys has never indicated what 'essential evidence' is missing from the thousands of pages that Foundry already produced." (Foundry Opp., p. 8). Of course, the fact that Foundry has admittedly withheld all responsive non-public documents should have already been indication enough.

5

has provided the key technical documents relevant to infringement when its production has been improperly limited to only those materials publicly available from its website.

C. **Foundry Is Clearly Wrong To Argue That Identification Of Its Customers Would Be Irrelevant To Phase I Infringement Liability Issues (Request No. 102)**

Enterasys has previously shown that because several of its patent claims against Foundry are for *indirect* infringement, Enterasys will be required to show for Phase I infringement liability purposes that customers who have purchased and used the accused Foundry products are *direct* infringers. (Enterasys Mot., pp. 7-8, 17-18) (*citing* Federal Circuit case law). In its opposition papers, Foundry neither disputes these governing legal principles, nor attempts to distinguish the binding Federal Circuit case law that Enterasys has cited. (Foundry Opp., pp. 10-11). Instead, Foundry offers only the unexplained and unsupported assertion that it "should not be required to provide any additional customer information until Phase II discovery that relates to damages." (Id.).[3] The only circumstances under which this would be true, however, would be if Foundry was willing to stipulate on the record that its customers would be direct infringers in the event that its accused products are found to be covered by the asserted patent claims. Naturally, Enterasys would welcome such a stipulation.

Foundry also seeks to again mislead this Court by falsely representing that "[n]owhere does Enterasys identify which claims are indirectly infringed" such that proof of direct infringement against its customers would be required. (Foundry Opp., p. 10). But as Foundry is well aware, Enterasys made such an identification in supplemental interrogatory responses served upon Foundry on April 26, 2006. See (Declaration Of Marc N. Henschke In Opposition To Defendant Foundry Networks, Inc.'s Motion To Compel Further Answers To Interrogatory

---

[3] Notably, Foundry's similarly situated co-Defendant, Extreme, acknowledges that the identification of its customers is relevant to Phase I infringement liability issues and has agreed to provide this information as soon as possible.

6

Nos. 2 And 3 at Exh. 7, p. 7). These interrogatory responses clearly state as follows: "Enterasys is principally alleging inducement of infringement and contributory infringement by accused Foundry products under 35 U.S.C. §§ 271(b) and (c) relative to the asserted claims listed above that are directed to a 'network of information handling devices' or a 'packet data communications network.' In these instances, the direct infringers are Foundry's customers." (Id.).

D.  **Foundry Is Clearly Wrong To Argue That Its Unpublished Patent Applications Which Reference And/Or Construe The Patents-In-Suit Are Irrelevant To Phase I Infringement Liability Issues Or Are Otherwise Undiscoverable (Request No. 98)**

Enterasys has already demonstrated that because its *indirect* infringement claims against Foundry require proof of Foundry's contemporaneous knowledge of the existence of the patents-in-suit, Foundry's unpublished patent applications would be highly relevant to Phase I infringement liability issues to the extent that they cite to the Enterasys patents, thereby establishing the fact and timing of Foundry's knowledge. (Enterasys Mot., pp. 9-10, 18-19) (*citing* Federal Circuit case law). Moreover, these unpublished applications could be of even greater relevance to infringement issues if they also reflect interpretations or construals of the Enterasys patents made by Foundry in remarks to the patent examiner when trying to prove the novelty of its own inventions. In its opposition papers, Foundry simply ignores these governing Federal Circuit legal principles and offers only the unsubstantiated contention that "Foundry's knowledge of the existence of the Enterasys patents [is] an issue solely relevant, if at all, to Phase II of this case" relating to damages. (Foundry Opp., p. 10).

Foundry also tries to argue that, even if relevant, it should never be required to produce unpublished patent applications to a business competitor like Enterasys because they are purportedly "highly confidential" and "secret." (Foundry Opp., p. 9). But what Foundry fails to

7

inform this Court is that the parties have put in place a detailed Protective Order Regarding The Treatment Of Confidential Information that would govern precisely this situation while affording Foundry very substantial protections.  See (Docket Entry No. 39).  Under paragraph 4 of the parties' Protective Order, Foundry has the right to designate its unpublished patent applications as "Highly Confidential" technical information, thereby restricting their disclosure to outside counsel's eyes only.  (Id.).  Moreover, under that same paragraph of the Protective Order, disclosure is even further restricted to only those outside counsel who are *not* involved in patent prosecution activities or in providing business advice to any industry competitor.  (Id.).  In short, the parties always contemplated that unpublished patent applications would need to be produced in this case, and they have already taken agreed-to measures to adequately preserve their confidentiality.

      Finally, Foundry suggests in passing that responding to Request No. 98 would be "unduly burdensome and harassing" as it would require "numerous outside patent counsel all over the world to review all unpublished patent applications."  (Foundry Opp., p. 9).  Tellingly, however, Foundry is careful to offer no affidavits or other evidence in support of this naked attorney argument.  Indeed, such evidence would doubtless confirm that Foundry has very few patent applications at all, much less the tiny subset of those applications called for by Enterasys' narrowly tailored request that seeks only those unpublished applications that reference the patents-in-suit.

## III.
## CONCLUSION

For the foregoing reasons, and for the reasons previously presented in its initial moving papers, Enterasys respectfully requests that the Court grant in its entirety Enterasys' present motion to compel Foundry to produce the various categories of documents detailed above.

Dated:  June 19, 2006

Respectfully submitted,

ENTERASYS NETWORKS, INC.

By its attorneys,

 /s/ Marc N. Henschke
Christopher P. Sullivan, Esq. (BBO No.485120)
Marc N. Henschke, Esq. (BBO No. 636146)
Alan E. McKenna (BBO No. 644556)
Robins, Kaplan, Miller & Ciresi L.L.P.
800 Boylston Street, 25th Floor
Boston, MA 02199
Tel. (617) 267-2300

Of Counsel:
A. James Anderson, Esq. *(pro hac vice)*
Marla R. Butler, Esq. *(pro hac vice)*
Robins, Kaplan, Miller & Ciresi L.L.P.
2600 One Atlanta Plaza
Atlanta, GA 30326-1386
Tel. (404) 760-4300

Robert A. Auchter, Esq. *(pro hac vice)*
Robins, Kaplan, Miller & Ciresi L.L.P.
1801 K Street, N.W.
Washington, DC  20006
Tel. (202) 775-0725

35032071

## CERTIFICATE OF SERVICE

I, Marc N. Henschke, hereby certify that on June 26th, 2006, I caused the attached *Reply Brief Of Plaintiff Enterasys Networks, Inc. In Support Of Its Motion To Compel The Production Of Documents From Defendant Foundry Networks, Inc.* to be served electronically pursuant to the Court's CM/ECF electronic filing system upon Defendants' respective counsel of record as indicated by asterisks below:

**Counsel for Defendant Foundry Networks, Inc.**
William L. Anthony, Jr., Esq.*
I. Neel Chatterjee, Esq.*
Michael F. Heavey, Esq.
Sanjeet K. Dutta, Esq.
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025

Steven M. Bauer, Esq.*
Jeremy P. Oczek, Esq.*
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110-2600

**Counsel for Defendant Extreme Networks, Inc.**
Terrence P. McMahon, Esq.*
Vera M. Elson, Esq.*
David H. Dolkas, Esq.
MCDERMOTT, WILL & EMERY LLP
3150 Porter Drive
Palo Alto, CA  94303-1212

Peter L. Resnik, Esq.*
Benjamin A. Goldberger, Esq.*
MCDERMOTT, WILL & EMERY LLP
28 State Street
Boston, MA  02109-1775

Christopher D. Bright, Esq.
MCDERMOTT, WILL & EMERY LLP
18191 Von Karman Avenue, Suite 400
Irvine, CA  92612-7107

Dated:  June 26, 2006                          /s/ Marc N. Henschke_____
                                               Marc N. Henschke