**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| **ENTERASYS NETWORKS, INC.,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**EXTREME NETWORKS, INC.,**<br><br>    **Defendant.** | **Civil Action No. 05-12298-DPW** |

**EXTREME NETWORKS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL ANSWERS TO INTERROGATORY NOS. 1 AND 2 FROM ENTERASYS NETWORKS, INC.**

## I.   INTRODUCTION

Defendant Extreme Networks, Inc. ("Extreme") moves to compel plaintiff Enterasys Networks, Inc. ("Enterasys")[1] to answer two interrogatories that are directly relevant to the current phase of discovery (Phase I). The requested information is necessary to Extreme's preparation of its invalidity and noninfringement contentions, currently due on January 16 and 30, 2007, respectively.

Enterasys brought this lawsuit alleging infringement of six patents, consisting collectively of over 120 claims. According to Enterasys, it conducted a "detailed pre-suit investigation….that included both claim construction and infringement analysis" in March, 2004.[2] Assuming that this is true, Enterasys has known the detailed basis for its allegations for more than two years. Nonetheless, Enterasys refused to answer interrogatories seeking the specific basis for its infringement claims. Initially, Enterasys insisted that it had no obligation to

---

[1] The term "Enterasys" in Extreme's interrogatories includes Enterasys' predecessors, Digital Equipment Corporation ("DEC") and Cabletron.
[2] *See* Exhibit A, Answer to Interrogatory No. 3. All exhibits are attached as exhibits to the Affidavit of Emily Smith-Lee.

provide this information prior to the deadline for service of detailed claim charts. Defendants then moved to compel, and the Court ordered Enterasys to provide a meaningful response:

> …the defendants are entitled to know at this time which of their products (or class of products) are alleged to infringe what claims of what patents held by plaintiff and a brief statement as to the reasons why the products are alleged to infringe.

Ex. B, Judge Collings Order Dated June 26, 2006.

In response to the Court's Order, Enterasys supplemented its response to Interrogatory No. 1 by (i) <u>increasing</u> the number of claims in the patents-in-suit which it alleges Extreme's products infringe; and (ii) providing an essentially meaningless chart that does nothing more than quote or paraphrase the claims of the patents.

Extreme asked for the Court's assistance in June because it had no meaningful basis for understanding or defending against Enterasys' infringement claims. Today, Extreme is no closer to such an understanding than it was in June. Thus, Extreme is forced to ask the Court again for assistance, and an order requiring Enterasys to identify (i) the product features that it alleges infringe the patents in suit; and (ii) the evidentiary basis for those allegations.

Enterasys' supplemental responses to Interrogatory No. 2 are similarly inadequate. Interrogatory No. 2 requests information as to the dates and facts concerning when the "inventions" were conceived and reduced to practice. These dates are critical because, if they pre-date the patent filing date, they will impact what qualifies as "prior art" that is potentially invalidating of the claims of the patents in suit. Enterasys, however, has provided ambiguous responses with respect to three patents, and asserted pre-filing dates for the other three, based on facts set forth in "privileged" invention records. The "privileged" invention records apparently contain the <u>only</u> facts supporting these assertions.

Extreme is entitled to know both the claimed dates and the facts supporting the claimed dates, and Enterasys cannot shield this information from discovery by its claim of privilege. In the first instance, it is Enterasys' burden to establish that a privilege even attaches, a burden it has not met. More fundamentally, Enterasys cannot use the allegedly privileged records as both a "sword" to move the relevant dates back and a "shield" to hide the information that purportedly proves those dates. Enterasys' reliance on these records operates as a waiver of any privilege, and Enterasys should be ordered to (i) fully answer Interrogatory No. 2; (ii) produce the referenced records; and (iii) permit discovery on any subjects disclosed in those records.

## II.  BACKGROUND

Enterasys filed suit against Extreme and Foundry Networks, Inc. ("Foundry") on June 21, 2005, alleging infringement of six U.S. patents. Under the Court's Amended Scheduling Order, discovery is phased. Phase I relates to the issues of infringement, invalidity and unenforceability, and Phase II to those issues as well as willful infringement and damages. The parties are supposed to begin Phase I disclosures on December 15, 2006.

The parties have attempted since April to resolve their disputes relating to Enterasys' interrogatory responses, including discussions prior to filing the June, 2006 motion to compel, correspondence addressing the deficiencies in Enterasys' court-ordered supplemental responses, and a meeting on August 3, 2006. Enterasys, however, has refused to change its position.[3]

### A.  Enterasys' Deficient Response to Interrogatory No. 1

On March 6, 2006, Extreme served a interrogatories on Enterasys.[4] On April 5, Enterasys served its first responses, asserting that the questions relating to the basis for its claim

---

[3] Indeed, Enterasys has threatened to seek monetary sanctions if Extreme seeks to enforce Enterasys' obligations under the June 26 Order. *See* Ex. I, August 1, 2006 letter from M. Henschke; Ex. J, August 3, 2006 letter from C. Bright.
[4] Ex. C, First Set of Interrogatories.

of infringement were "premature" because they sought this information in advance of the deadline for serving claim charts.[5]  On April 26, after both counsel for Foundry and Extreme pointed out deficiencies in its response, Enterasys served supplemental responses.  These responses still failed to identify what products it believed infringed or why.[6]

On June 2, 2006, after an extensive but unsuccessful series of meet and confer efforts, Extreme joined with Foundry in a motion to compel a complete response.  Magistrate Judge Collings heard argument on June 26, 2000, and subsequently ruled that, although Enterasys was not required to provide a claim chart before the deadline, defendants were entitled to know which products were alleged to infringe which claims of which patents, and to a "brief statement" as to the reasons for the infringement allegations.[7]  Accordingly, Enterasys was ordered to provide a supplemental response by July 17, 2006.

Enterasys' July 17 supplemental response consists of a fifty-page chart which purports to list the allegedly infringing products and the basis for infringement for each patent claim.[8]  In substance, however, the chart provides no new information.  Indeed, with very few exceptions, Enterasys has included the identical list of approximately thirty Extreme products as infringing virtually every claim of all six patents.[9]  With respect to the basis for infringement, Enterasys has provided no information about why any given product infringes, but instead has simply cut and pasted language that is either directly quoted or paraphrased from the claims themselves.

By way of example, the table below compares the language of one patent claim, Enterasys' original interrogatory response, and its supplemental description of the basis for

---

[5] Ex. A, Enterasys' Response to Extreme's Interrogatory Nos. 1 and 2.
[6] Ex. D, Enterasys' First Supplemental Response to Extreme's Interrogatory Nos. 1 and 2.
[7] Ex. B, Judge Collings Order.
[8] Ex. E and F, Enterasys' Second Supplemental Response to Extreme's Interrogatory Nos. 1 and 2.
[9] With respect to claims 5-20 of the '205 patent, Enterasys identifies a list of 5 Black Diamond products.  The remaining 105 claims refer to a virtually identical list of Extreme products.  *See* Ex. F

infringement.[10] The words in boldface type are those which are either directly quoted or paraphrased from the patent itself:

| '173 patent claim 1 | Enterasys' First Supplemental Response to Interrogatory No. 1 (before the Court's Order) | Enterasys' Second Supplemental Response to Interrogatory No. 1 (after the Court's Order) |
|---|---|---|
| **A packet data communications network** comprising: a first network segment having a plurality of stations, one of said stations sending a message packet onto said first network segment of a first format; said first format including a first header and a data field with network destination address in said communications network; a first network **transfer device** having an input connected to said first network segment to receive said message packet and having an output; **the first network transfer device applying a second header to said message packet**, **said second header including a switching address translated from said destination address,** said second header further **including local status information and a plurality of status fields** to indicate a message packet servicing; a switching device having a plurality of ports, a first of said ports being connected to said output of said first network transfer device; the **switching device** receiving said message packet with said second header and sending said message packet with said second header to a second port as selected by said **switching address, and in response to said local status information and the plurality of status fields**; a second network transfer device having an input connected to said second of said ports of said **switching device** and having an output connected to a second network segment, the second network transfer device receiving said message packet via said **switching device** to forward to said second network segment; **the second network transfer device removing said second header from said message packet.** | The asserted claims of the '173 patent read on features that add a second internal header to a data packet that consists of a field or fields that contain local source and/or destination addresses that have been translated or derived from the typically longer unique network source and/or destination addresses (e.g., MAC addresses) contained in a first header. | Each of the listed products/product lines contain switching and/or routing chipset features which, in combination with a **packet data communications network with multiple network segments,** embody each of the elements of the patent claim. In particular, these **switching and/or routing** chipset features that use Broadcom 5600 series chipsets **add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields.**<br><br>Upon information and belief, these switching and/or routing chipset features that use Inferno, Triumph, and/or Genesis chipsets **add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields.** |

---

[10] *See* Ex. G, Letter from Christopher Bright to Mark Henschke dated July 27, 2006, for additional comparison of the language of the patent claims to Enterasys' current "Basis for Infringement" assertions.

Further, nowhere in the "Basis for Infringement" column of Enterasys' response is there a description of the infringing feature of any accused product other than the generic description of the patented network itself. Indeed, Enterasys has, and allegedly reviewed during its "detailed pre-suit investigation" in March, 2004, approximately 30,000 pages of Extreme product documentation, yet has failed to tie any of its infringement contentions to that documentation.

Finally, and inexplicably, Enterasys' latest response expands the number of claims it purports to be asserting. Prior to the Court's Order, Enterasys had identified 16 patent claims at issue. In its latest supplement, Enterasys now asserts 120 claims, virtually all of the claims in the six patents. For many of them, moreover, Enterasys articulates the basis for its allegation as "information and belief."[11] Thus, not only does Enterasys continue to refuse to provide any focus to its earlier contentions, but in fact has added new contentions, making its claims more, rather than less, inscrutable.

### B.    Enterasys' Deficient Response to Interrogatory No.2

Interrogatory No. 2 sought information about the dates on which each of the claimed inventions were conceived and reduced to practice.[12] In its initial response, Enterasys refused to answer entirely, asserting that this, too, was "premature" given the deadline for serving claim charts. After Extreme and Foundry raised objections to this position, Enterasys supplemented this response. This supplementation, as well, was inadequate.

For three of the patents-in-suit, Enterasys claims dates of conception/reduction to practice that are "no later than" the date of the respective patent filings, leaving open the possibility that Enterasys might subsequently claim an earlier date. With respect to the other three, Enterasys claims a dates several months earlier than the filing dates. The only stated basis for claiming

---

[11] Ex. E ('205 patent, claims 11, 15, 17, and 19; '173 patent, claims 1-24; '995 patent, claims 9, 21, 24, 35; '236 patent, claim 7).
[12] Ex. E.

these earlier dates are the invention records, over which Enterasys is claiming privilege:

> Enterasys bases <u>these dates upon information contained in the invention record which it presently intends to withhold from production on grounds of attorney-client privilege</u>. At present, Enterasys has been able to locate no further information or documentation relevant to establishing these conception and reduction to practice dates <u>other than the invention record itself</u>. Such further information or documentation may be obtainable through third party discovery.

Ex. E, First Supplemental Answer to Interrogatory No. 2 (emphasis added).

On July 27, counsel for Extreme wrote to counsel for Enterasys, asserting that Enterasys' privilege objection was improper, and that Enterasys could not at the same time rely on the invention record to support an earlier conception/reduction date and shield those materials under a cloak of privilege. The parties met on August 3, 2006, in part to finally resolve the issues relating to Enterasys' interrogatory responses. Enterasys, however, would not change its position.

### III. ARGUMENT

#### A. Interrogatory No. 1 - Enterasys Should Be Ordered to State the Reasons – Not Simply Regurgitate Patent Claim Language – For Its Infringement Contentions and Provide the Evidentiary Basis for Its Contentions.

Defendants sought the Court's assistance in the first instance because Enterasys' interrogatory answers left defendants to guess as to the precise nature and scope of the allegations. Though the Court declined to order a detailed claim chart in advance of the deadline in the scheduling order, it agreed that Enterasys' responses required supplementation, and held:

> …the defendants are <u>entitled to know at this time</u> which of their products (or class of products) are alleged to infringe what claims of what patents held by plaintiff and a brief statement as to the reasons why the products are alleged to infringe.

Ex. B, Judge Collings Order (emphasis added).

Enterasys' supplemental answers pursuant to this Order are different from their earlier answers only in form, not substance. Though it has added significantly to the volume of its

response, in reality all it has done is to cut and paste a paraphrased version of the language of the claims into a column entitled "Basis for Infringement."[13]  In no way does Enterasys' regurgitation of the patent claims provide any more meaningful detail about the alleged infringement than its first supplementation, nor any evidentiary details, such as citation to documents.

By way of example, Enterasys asserts in its supplemental responses that more than 30 of Extreme's products infringe claim 1 of the '173 patent, because:

> Each of the listed products/product lines contain switching and/or routing chipset features which, in combination with a **packet data communications network with multiple network segments,** embody each of the elements of the patent claim.  In particular, these **switching and/or routing** chipset features that use Broadcom 5600 series chipsets **add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields.**
> Upon information and belief, these switching and/or routing chipset features that use Inferno, Triumph, and/or Genesis chipsets **add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields.**.

The words in boldface type are those which are either directly quoted or paraphrased from the patent claim itself.  Enterasys has made similar allegations for all 24 claims of the '173 patent.

Extreme's products are highly sophisticated, complex machines, with at least hundreds of features that can be configured in over a thousand ways.  The information Enterasys provided does not explain, for example, which among the numerous configurations of Extreme's products comprise "local status information" or "status fields."  Again, Extreme is left to guess which specific features in its product line are alleged to infringe those claims.

Extreme has asked- legitimately- why Enterasys believes its products infringe.  In

---

[13] Ex. F.

essence, Enterasys' answer is that they infringe because they do what the patent claims cover. This is a tautology that, in the end, provides no more information than the original infringement complaint itself.

The inadequacy of Enterasys' response is compounded by its insistence that the answer to Extreme's questions can be found in approximately 30,000 pages of Extreme's own documents that Enterasys produced in discovery. These represent virtually the entirety of the publicly available technical information about Extreme's products. According to Enterasys, these are the documents it reviewed in its March, 2004 investigation, yet Enterasys refuses to point to any specific document that supports its infringement claim.

Enterasys' stated basis for refusing to provide the detail sought by Extreme is that a chart is not required right now. This is a misreading of both Enterasys' discovery obligations and the Court's Order. Extreme is not seeking a chart, but rather answers to very elemental questions about what Enterasys is accusing and why. The Court, moreover, has already determined that summary descriptions of the patent claims and undifferentiated references to all of Extreme's products were deficient, even though a claim chart was not yet due.

Enterasys' disregard of the Court's Order is entirely unjustified, and Extreme should not be required to defend against such ill-defined and fluid claims. Enterasys, moreover, has no legitimate basis for refusing to answer, as it has had this information in its possession since its "detailed pre-suit investigation" in March, 2004.[14] Accordingly, Enterasys should be ordered to immediately supplement its answers to Interrogatory No. 1, and provide the specific reasons and evidentiary bases for its infringement contentions.

---

[14] Under Rule 11, a plaintiff is required to conduct an investigation and know which products they allege infringe and the basis for such allegation. Unless a reasonable investigation as required by Rule 11 was not performed by Enterasys, there is no reason why Enterasys should not be in possession of this information.

**B.     Interrogatory No. 2 - Enterasys Should Be Ordered to Either Disclose the Invention Disclosures that Allegedly Support Its Conception and Reduction to Practice Dates or Withdraw Those Dates.**

Interrogatory No. 2 seeks information about the dates of conception and reduction to practice of the inventions covered by the patents in suit.[15] The significance of this information is clear. In patent law, the term "conception" and "reduction to practice" dates may determine what qualifies as "prior art" that could potentially invalidate a later patent claim. The term "conception" refers to the date when the inventor first conceived of a clear definition of the invention. *Cooper v. Goldfarb*, 154 F.3d 1321, 1327 (Fed. Cir. 1998); *Coleman v. Dines*, 754 F.2d 353, 359 (Fed. Cir. 1985). The term "reduction to practice" refers to the physical embodiment of the invention (actual reduction) or by filing a patent application (constructive reduction). *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986).

These principles have direct bearing on this case. For example, U.S. Patent No. 5,444,702 ("the Burnett/Newman patent"), has a filing date of September 14, 1992, before the June 23, 1993 filing date of the '236 patent, and appears to be prior art to the '236 patent. However, Enterasys claims a March 1992 conception date. If Enterasys could corroborate this date,[16] it could potentially pre-date and eliminate as prior art the Burnett/Newman patent; if it cannot, Enterasys' patent could be invalid. *See Hybritech*, 802 F.2d at 1376. Extreme is entitled

---

[15] Specifically, Interrogatory No. 2 requests the following information from Enterasys:
> Separate and for each asserted claim of each of the patents in suit, identify the respective date of conception and date of reduction to practice of that claim, both actual and constructive, and describe any and all diligence between such conception and reduction to practice, including the identity of all documents and things that Enterasys may contend corroborates such dates and diligence, and the identify of each person who Enterasys contends can corroborate such dates and diligence.

Ex. C.

[16] Enterasys must corroborate dates of conception and reduction to practice which are before the filing dates of the patents in suit. *See Coleman*, 754 F.2d at 359 (stating that corroborating evidence is required to prove conception); *Cooper*, 154 F.3d at 1330 (stating that independent corroborating evidence is required to establish reduction to practice).

to discovery of both the dates and the allegedly corroborating evidence of those dates, so that it can determine what is and what is not pertinent and potentially invalidating prior art, e.g., under 35 U.S.C. §§ 102(a), (e) and (g).

Enterasys' responses to this interrogatory are entirely inadequate.  For three of the patents in suit, Enterasys' response leaves open the possibility that it could later try to claim earlier dates, especially if Extreme comes forward with prior art that predates the filing dates of the patents.  These dates should not be moving targets, or Extreme is left to guess at what is prior art, and could waste time preparing invalidity contentions based on references that could be subsequently eliminated as prior art.  If Enterasys can articulate no basis for earlier dates for these three patents, it should be held to the patent filing dates.[17]

For the remaining three patents in suit, Enterasys has asserted pre-filing conception dates, but is withholding the very invention disclosures on which it relies for these conception dates:

> Enterasys bases these dates upon information contained in the invention record which it presently intends to withhold from production on grounds of attorney-client privilege.

Ex. E and Ex. H.

In the first instance, Enterasys has not established a basis for application of the attorney-client privilege to the invention records.  The case on which it relies, *In Re Spaulding Sports Worldwide, Inc*, does not establish that invention records are necessarily privileged.  203 F.3d 800, 806 (Fed. Cir. 2000).  Rather, on the facts specific to the *Spaulding* case, including a company's policy requiring legal review of invention records, and evidence establishing that the primary purpose of those communications was to seek legal advice, <u>those</u> invention records were protected.  Indeed, the *Spaulding* court expressly recognized this principle:

---

[17] By letter dated May 3, 2006, Extreme also asked Enterasys to confirm that it "has no intention of relying on any pre-filing conception or reduction to practice dates for the '665, '995 and '022 patents and no documents to corroborate any such dates."  Enterasys never responded to this latter request.

> [w]hether the attorney-client privilege applies should be determined <u>on a case-by-case basis</u>.

*Id.* at 805 (emphasis added).

Enterasys, accordingly, must independently establish the basis for privilege over the documents it seeks to protect, which it has not done.

More fundamentally, even if there were a privilege covering some or all of the invention record, Enterasys cannot use the attorney-client privilege as both a sword and shield, claiming reliance on the invention records to establish an essential fact in its favor and yet refusing to produce those records. The court stated in *Hydranautics v. Filmtec Corp.* that, "[i]t is well established that the attorney-client privilege may not be used as both a sword and a shield." 2003 U.S. Dist. LEXIS 25097 (D. Cal. 2003); *see also Medtronic Inc. v. Guidant Corp.*, 378 F. Supp. 2d 503, 505 (D. Del. 2005) ("[the] defendants were using the attorney-client privilege as both a sword and shield and, as such, had waived the privilege as to all relevant documents."). Further, the Court of Appeals for the Federal Circuit has stated:

> …selective waiver of the privilege may lead to the inequitable result that the waiving party could waive its privilege for favorable advice while asserting its privilege on unfavorable advice. In such a case, the party uses the attorney-client privilege as both a sword and a shield. To prevent such abuses, we recognize that when a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to all such communications regarding the same subject matter.

*In re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (Fed. Cir. 2006)(citing *to XYZ Corp. v. United States*, 348 F.3d 16, 24 (1st Cir. 2003) and *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005)); *see also Greater Newburyport Clamshell Alliance v. Public Service Co.*, 838 F.2d 13 (1st Cir. 1988)("Particularly in a civil case, a privileged party cannot fairly be permitted to disclose as much as he pleases and then to withhold the remainder to the detriment of the defendant").

If Enterasys intends to claim pre-filing reduction/conception dates, both fairness and applicable law require that Extreme be allowed discovery of the evidence that purportedly supports those dates, irrespective of Enterasys' claim of privilege.

Accordingly, Enterasys should be ordered:

1. To provide fixed and final dates of conception and reduction to practice for all patents in suit;

2. to the extent it cannot provide dates earlier than the filing dates for the six patents in suit, the Court should order Enterasys to supplement its Responses by stating the filing dates as the fixed dates for conception and reduction to practice; and

3. to produce any documents and information which allegedly corroborates any earlier dates, including the cited invention disclosures.

## IV.   Conclusion

For the reasons stated above, Extreme respectfully requests that Enterasys be immediately ordered to fully respond to Extreme's Interrogatories 1 and 2.

Dated: September 22, 2006                                EXTREME NETWORKS, INC.

By its attorneys,


 /s/ Emily Smith-Lee
Emily Smith-Lee (BB0# 634223)

Terrence P. McMahon
Vera M. Elson
David H. Dolkas
Firasat M. Ali
McDermott Will & Emery LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
(650) 813-5000

Christopher D. Bright
McDermott Will & Emery LLP
18191 Von Karman Ave.
Suite 400
Irvine, CA 92612-7107
(949) 851-0633

Peter L. Resnik (BBO# 417180)
Emily Smith-Lee (BB0# 634223)
McDermott Will & Emery LLP
28 State Street
Boston, Massachusetts  02109-1775
(617) 535-4000
MCDERMOTT WILL & EMERY LLP


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic filing (NEF) and paper copies will be sent to those indicated as non registered participants on September 22, 2006.


/s/ Emily Smith-Lee
Emily Smith-Lee

BST99 1516931-1.065994.0016