# EXHIBIT G

# McDermott
# Will & Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington D C

Christopher D Bright
Attorney at Law
cbright@mwe com
949 757 7178

July 27, 2006

BY E-MAIL

Marc N. Henschke, Esq.
Robins, Kaplan, Miller & Ciresi L.L.P.
Prudential Tower
800 Boylston Street, 25th Floor
Boston, MA 02199
mnhenschke@rkmc.com

Re:    *Enterasys Networks v. Foundry Networks and Extreme Networks*, Civil Action No. 05-11298 (D. Mass.)

Dear Marc:

I am writing regarding Enterasys' July 17, 2006 second supplemental response to Interrogatory No. 1 and as a follow-up to my letter to you dated June 28, 2006 regarding the Court's June 26, 2006 Order (Dkt 60) granting in part Extreme's motion to compel (Dkt 50), to which, I note, you never responded.

As you know, Enterasys' second supplemental response essentially parrots back the language of the asserted patent claims in a column entitled by Enterasys as "Basis for Infringement." This fails to provide an explanation for Enterasys' infringement contentions, and we are confident that this is not what the Court intended when it ordered Enterasys to "provide a brief statement as to the *reasons why the plaintiff asserts that each product infringes a certain claim or claims*." Indeed, Enterasys' second supplemental response provides no more meaningful detail than was provided in Enterasys' first supplemental response the Court found deficient. Enterasys fails to specifically identify accused structures and functions and cites to absolutely no evidence for its contention. Instead, Enterasys hides behind the claim language.

To identify but one example: Enterasys' first supplemental response identified "port-based VLANs" as infringing the '236 patent. Again, Enterasys' second supplemental response identifies the "port based VLAN" feature as the allegedly infringing feature.

U S practice conducted through McDermott Will & Emery LLP

18191 Von Karman Avenue Suite 400 Irvine California 92612-7107  Telephone: 949.851.0633  Facsimile: 949.851 9348  www.mwe.com

Marc N. Henschke, Esq.
July 27, 2006
Page 2

Enterasys' second supplemental response then goes on to merely paraphrase the claim language as the following comparison shows:

| '236 patent claim 1 | Enterasys' "Basis for Infringement" |
|---|---|
| A method of operating a network bridge having a first plurality of ports through which network communications pass to and from the bridge, the method comprising:  assigning a group identifier to each port of the first plurality of ports, wherein all ports with a same assigned group identifier are in a same group; receiving a communication on a first port of the bridge; and if the first port is one of the first plurality of ports and the communication is a multicast packet having a multicast destination address, sending the communication out of the bridge on all other ports of the first plurality of ports having the same assigned group identifier as the first port. | Each of the listed products/product lines contain port based VLAN features which practice each of the elements of the patent claim.  In particular, these port based VLAN features assign VLAN identifiers to ports, where all ports with the same identifier belong in the same group.  When a multicast packet is received on a port associated with a VLAN identifier, the network bridge transmits the packet on all other ports which have the same VLAN identifier as the port on which the packet arrived. |

Extreme is still left to guess what Enterasys' real infringement contention is.  For example, Enterasys has failed to identify such structure as the "network bridge."

Enterasys has taken the same approach to the other patents in suit, as exemplified in Attachment A to this letter.

Given the level of detail about how Extreme's products function that is set forth in publicly available documents on Extreme's website, Enterasys' failure to specifically identify accused structures and functions and to cite evidence for its contention is inexplicable.

Unless Enterasys agrees to provide meaningful information within a week as to the reasons why it believes Extreme infringes the asserted patent claims (specific identification of accused structures and functions with citations to evidence), we will be going back to the Court again to enforce the Court's Order and to obtain the information to which Extreme is entitled to prepare its defenses.

Marc N. Henschke, Esq.
July 27, 2006
Page 3


Very truly yours,

McDermott Will & Emery LLP


Christopher D. Bright

cc:    Vera M. Elson, Esq.
       David H. Dolkas, Esq.
       Christopher P. Sullivan, Esq.
       Alan E. McKenna, Esq.
       Jeremy C. McDiarmid, Esq.

Marc N. Henschke, Esq.
July 27, 2006
Page 4

## Attachment A

| '995 patent claim 1 | Enterasys' "Basis for Infringement" |
|---|---|
| A computer-readable storage medium comprising program instructions for restricting flooding of a data packet, of one of a broadcast, multicast and unknown destination type, in a switched data communications network, the network including a plurality of end systems and switches connected by links, the switches having access ports connected to end systems and network ports connected to other switches, the program instructions causing the network to:<br><br>a. assign at least one identifier to a respective subset of end systems;<br><br>b. map the at least one assigned identifier to an access port attached to at least one end system in the respective subset of end systems; and<br><br>c. when the data packet is received from a source end system at a receiving access port of a first switch:<br><br>i) determine one or more identifiers associated with the source end system;<br><br>ii) encapsulate the data packet by adding a header with the one or more determined identifiers;<br><br>iii) forward the encapsulated data packet to all or a subset of other switches in the network; and<br><br>iv) determine if at least one access port other than the receiving access port on the first switch is associated with the one or more determined identifiers and forward the data packet out the at least one determined access port. | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim. In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. |

| '665 patent claim 1 | Enterasys' "Basis for Infringement" |
|---|---|
| A port based default VLAN formed on one or | Each of the listed products/product lines |

Marc N. Henschke, Esq.
July 27, 2006
Page 5

| '665 patent claim 1 | Enterasys' "Basis for Infringement" |
|---|---|
| more interconnected networking switches, each switch having one or more switch ports, all of the switch ports collectively being a plurality of switch ports, the default VLAN being defined by one or more of the plurality of switch ports, the one or more of the plurality of switch ports being default VLAN ports, at least one of the plurality of switch ports defining a second VLAN, the default VLAN comprising: means for receiving a data packet through one of the default VLAN ports;<br><br>means for ascertaining a destination port from the data packet, the destination port being one of the plurality of switch ports;<br><br>means for determining whether the destination port is one of the default VLAN ports;<br><br>first means, responsive to the determining means, for transmitting the data packet to the destination port if the determining means determines that the destination port is one of the default VLAN ports; and<br><br>second means, responsive to the determining means, for transmitting the data packet to each of the default VLAN ports if the determining means determines that the destination port is not one of the default VLAN ports,<br><br>the at least one switch port defining the second VLAN being free from transmission, from the default VLAN, of the data packet. | contain port based default VLAN features which embody each of the elements of the patent claim. In particular, these port based default VLAN features include switches that receive data packets, and forward and/or flood the packets to the appropriate destination port(s) within the default VLAN, while restricting transmission to non-default VLAN port(s). |

| '173 patent claim 1 | Enterasys' "Basis for Infringement" |
|---|---|
| A packet data communications network comprising:<br>a first network segment having a plurality of stations, one of said stations sending a message packet onto said first network segment of a first format; said first format including a first header and a data field with network destination address in said communications | Each of the listed products/product lines contain switching and/or routing chipset features which, in combination with a packet data communications network with multiple network segments, embody each of the elements of the patent claim. In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets add, |

Marc N. Henschke, Esq.
July 27, 2006
Page 6

| '173 patent claim 1 | Enterasys' "Basis for Infringement" |
|---|---|
| network;<br><br>a first network transfer device having an input connected to said first network segment to receive said message packet and having an output; the first network transfer device applying a second header to said message packet, said second header including a switching address translated from said destination address, said second header further including local status information and a plurality of status fields to indicate a message packet servicing; a switching device having a plurality of ports, a first of said ports being connected to said output of said first network transfer device; the switching device receiving said message packet with said second header and sending said message packet with said second header to a second port as selected by said switching address, and in response to said local status information and the plurality of status fields;<br><br>a second network transfer device having an input connected to said second of said ports of said switching device and having an output connected to a second network segment, the second network transfer device receiving said message packet via said switching device to forward to said second network segment; the second network transfer device removing said second header from said message packet. | and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields.<br><br>Upon information and belief, these switching and/or routing chipset features that use Inferno, Triumph, and/or Genesis chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields. |

| '022 patent claim 1 | Enterasys' "Basis for Infringement" |
|---|---|
| A network bridge for reducing multicast communications in a network, the network bridge including at least two I/O interfaces to each receive and transmit data packets and also including multicast forwarding data, the device comprising: means for determining, by examining data in a first portion of a first packet received at the network bridge, whether | Each of the listed products/product lines contain IGMP snooping features which embody each of the elements of the patent claim. In particular, these IGMP snooping features can examine packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the bridge's multicast |

Marc N. Henschke, Esq.
July 27, 2006
Page 7

| '022 patent claim 1 | Enterasys' "Basis for Infringement" |
|---|---|
| the first packet is a multicast control packet destined for a device other than the network bridge; means for identifying a multicast group from the first packet when the first packet is a multicast control packet destined for a device other than the network bridge; and means for updating the multicast forwarding data according to the identified multicast group and the data in the first portion of the first packet. | forwarding data based upon information in the packet. |

| '205 patent claim 1 | Enterasys' "Basis for Infringement" |
|---|---|
| A method of calculating routes for sending user data packets via information handling devices which forward data packets through a communications network, comprising including in at least a first and a second user data packet, destination address information conforming to two or more different addressing conventions of two or more different independent protocol suites, determining routes for said first and said second user data packets using a route calculation algorithm corresponding to a single routing protocol, chosen from an arbitrary protocol suite, regardless of the addressing convention to which the destination address information in said user data packet conforms, said route being determined using the destination address information in said user data packets without converting said destination address information from the addressing convention to which it forms to another addressing convention. | Each of the listed product/product lines contain multiple protocol routing software algorithm features which practice each of the elements of the patent claim when used in the context of a communications network. In particular, these multiple protocol routing software algorithm features calculate packet routes using an algorithm corresponding to a single routing protocol for all received packets regardless of the multiple different routing protocol suites (e.g., the TCP/IP protocol suite; the OSI protocol suite; etc.) to which such packets may conform, and without the need to convert the destination address of any packet to an addressing convention associated with a routing protocol suite different from the one to which that packet conforms. |

ORC 393093-1 065994 0016

# EXHIBIT H

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

800 BOYLSTON STREET
25TH FLOOR
BOSTON, MA 02199-7610
TEL: 617-267-2300  FAX: 617-267-8288
www.rkmc.com

ATTORNEYS AT LAW
MARC N. HENSCHKE
617-859-2784
mnhenschke@rkmc.com

May 15, 2006

*VIA E-MAIL (PDF ATTACHMENT)*

Firasat M. Ali, Esq.
McDermott Will & Emery LLP
3150 Porter Drive
Palo Alto, CA  94303-1212

Re: *Enterasys Networks v. Foundry Networks and Extreme Networks*
       *Civ. Act. No. 05-11298-DPW (D. Mass)*
       **Our File No.:  070610.0001**

Dear Firasat:

    We write in response to your letter to me dated May 3, 2006 concerning Enterasys' supplemental responses to Extreme's first set of interrogatories.  We have attempted to parallel the organizational structure set forth in your letter.

**Interrogatory No. 1**

    Enterasys will not produce detailed claim construction charts/infringement analyses until at least the July 17, 2006 due date expressly provided for in the Court's Scheduling Order.

    Extreme's suggestion that it is unable to comprehend Enterasys' charges of infringement for discovery purposes is specious given the facts that Enterasys has already specifically identified asserted claims, accused products, and accused product features.

    Interestingly, we note that in response to Enterasys' Document Request No. 86, Extreme is itself refusing to produce any of its own claim construction charts/infringement analyses on grounds of "prematurity."  Surely Extreme must be in possession of such materials or it would lack any good faith basis for its assertion of affirmative defenses and/or counterclaims of patent invalidity, non-infringement, and non-infringing uses.

**Interrogatory No. 2**

    All facts presently known to Enterasys concerning the dates of invention for the patents-in-suit have been provided.  To the extent that additional information is learned during the course of discovery, Enterasys will supplement its interrogatory response in the manner required by F.R.C.P. 26(e).

Firasat M. Ali, Esq.
May 15, 2006
Page 2

To date, Enterasys has located no underlying documents relevant to establishing pre-application invention dates other than the invention records themselves over which it is presently asserting attorney-client privilege. See, e.g., In Re Spaulding Sports Worldwide, Inc., 203 F.3d 800, 806 (Fed. Cir. 2000) (the entirety of invention records are protected by attorney-client privilege irrespective of whether they may contain factual information).

These invention records will of course be listed on a privilege log which will be provided to Extreme in due course. We note that Enterasys has yet to receive any privilege log from Extreme, despite Extreme's ubiquitous assertion of privilege objections in response to Enterasys' document requests.

**Interrogatory No. 3**

Your suggestion that information concerning Enterasys' own past or current products could somehow be relevant to "invalidity contentions, including any on-sale or public use bars," is baffling. As you are doubtless aware, the latest priority date for any of the patents-in-suit is December 30, 1996, and Enterasys did not even exist prior to February of 2000.

Enterasys is presently investigating the question of which Cabletron or DEC products may have been the first to embody or practice the inventions of the patents-in-suit. However, given that this investigation potentially implicates the enormous undertaking of analyzing hundreds of products sold over the past fifteen years under six different patents, Enterasys does not yet know when final answers can be expected. Moreover, for the reasons previously suggested, Enterasys anticipates that third party discovery may well be required in order to arrive at any final answers relative to DEC products.

**Interrogatory Nos. 4 and 5**

Your purported understanding is incorrect in all respects.

As to Interrogatory No. 4, Enterasys does not intend to provide any further response unless and until Extreme satisfactorily demonstrates the legal relevance of the information requested in view of the case law that Enterasys has cited. Should Extreme prove able to do so, Enterasys will further respond only after such time as Extreme has specifically identified the prior art that it intends to rely upon in this case for purposes of it invalidity contentions. Because issued patents benefit from a presumption of validity, Enterasys is under no obligation to demonstrate the novelty of its patented inventions relative to the entire potential universe of prior art.

As to Interrogatory No. 5, Enterasys has clearly stated that it will respond to subparts (1) and (2) by way of expert testimony at an appropriate stage of the case. Enterasys will respond to subpart (3) as it learns of responsive information during discovery; however, note that a complete response cannot be provided absent resolution of the issues presented in my letter to Vera M. Elson, Esq. dated March 27, 2006.

Firasat M. Ali, Esq.
May 15, 2006
Page 3

**Interrogatory Nos. 6 and 7**

     Your understanding is incorrect insofar as it suggests that Enterasys has agreed to further respond to Interrogatory Nos. 6 and 7 "immediately after October 3, 2006." To the contrary, Enterasys will further respond only to the extent that these or similar interrogatories are included in an appropriate set of Phase II fact discovery served on or after October 3, 2006. At this point, Enterasys does not consider Interrogatory Nos. 6 and 7 to have been properly served.

**Interrogatory No. 9**

     Sufficient facts concerning the timing and nature of Enterasys' pre-filing investigations have already been provided. Moreover, Enterasys has also provided Extreme with an extraordinary document production of over 31,000 pages containing materials that Enterasys considered and relied upon as part of these investigations.

     Your call for a privilege log is intriguing given the fact that, in its response to Enterasys' document requests, Extreme is itself refusing to produce any privilege log relating to its own pre-filing investigations. Does this remain Extreme's position? Is there some reason why it wouldn't apply reciprocally to Enterasys as well?

     Upon information and belief, Paul M. Coryea is presently working at Rational Software, IBM Software Group, located at 20 Maguire Road in Lexington, Massachusetts.

**Interrogatory No. 10**

     Enterasys' supplemental response to Interrogatory No. 10 speaks for itself. Enterasys is aware of no prior art contended to be invalidating by any third party except for certain references cited in the various official prosecution histories for the patents-in-suit.

**Interrogatory No. 12**

     You appear to be insisting upon the immediate production of detailed claim construction charts/infringement analyses or their equivalent. Enterasys will not produce such materials until at least the July 17, 2006 due date expressly provided for in the Court's Scheduling Order.

     All facts presently known to Enterasys concerning the participation of Enterasys, Cabletron, or DEC employees in relevant standards-related activities have been provided. To the extent that additional information is learned during the course of discovery, Enterasys will supplement its interrogatory response in the manner required by F.R.C.P. 26(e).

     Please note that to the extent that Extreme has issues or concerns with any of the responses set forth above, Enterasys hereby offers to participate in a meet-and-confer at a mutually convenient date and time.

Firasat M. Ali, Esq.
May 15, 2006
Page 4

We look forward to hearing from you.

Sincerely,

*Marc N. Henschke* (signature)

Marc N. Henschke

MNH:nah

cc:    Vera M. Elson, Esq. (*VIA FIRST CLASS MAIL & E-MAIL – PDF ATTACHMENT*)
       David H. Dolkas, Esq. (*VIA E-MAIL – PDF ATTACHMENT*)
       Christopher D. Bright, Esq. (*VIA E-MAIL – PDF ATTACHMENT*)
       T. Nation (*VIA E-MAIL – PDF ATTACHMENT*)

35031333

# EXHIBIT I

# ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

800 BOYLSTON STREET
25TH FLOOR
BOSTON, MA 02199-7610
TEL: 617-267-2300 FAX: 617-267-828
www.rkmc.com

ATTORNEYS AT LAW
MARC N. HENSCHKE
617-859-2784
mnhenschke@rkmc.com

August 1, 2006

*VIA E-MAIL (PDF ATTACHMENT)*

Christopher D. Bright, Esq.
McDermott Will & Emery LLP
18191 Von Karman Avenue
Suite 400
Irvine, CA  92612-7107

Re: *Enterasys Networks v. Foundry Networks and Extreme Networks*
    *Civ. Act. No. 05-11298-DPW (D. Mass)*
    **Our File No.:  070610.0001**

Dear Chris:

We write in response to your letter to me dated July 27, 2006.

No reasonable good faith basis exists for your suggestion that Enterasys' second supplemental interrogatory responses somehow fail to provide the information required by Magistrate Collings' Order of June 26, 2006.  That Order required only that Enterasys "identify what [Extreme] products are alleged to infringe which specific claims of which patents, and provide a brief statement as to the reasons why . . . [Enterasys] asserts that each product infringes a certain claim or claims."  Enterasys' second supplemental interrogatory responses indisputably contain all of this required information and more.  Accordingly, please be advised that should Extreme again move to compel on this issue as you have threatened, Enterasys will seek monetary sanctions against Extreme in connection with the filing of its opposition papers.

Your contention that Enterasys has "fail[ed] to specifically identify accused structures and functions" is demonstrably false.  Moreover, your further contention that Enterasys has "cite[d] to absolutely no evidence for its [infringement] contention[s]" is tantamount to a call for the very type of detailed claim construction charts containing element-by-element comparisons of the claim language with the accused Extreme products that Magistrate Collings expressly held to be premature.  As his Order clearly provides, Enterasys "shall not be required to provide a claim chart before the deadline set by Judge Woodlock for providing such a chart."  That deadline is December 15, 2006.

The remainder of your letter is an exercise in sophistry.  For example, your assertion that "Enterasys has failed to identify . . . structure" relative to a *method claim* of the '236 patent is incomprehensible.  As you are well aware, in every instance the accused structures are Extreme's switch and router products insofar as they contain the specifically accused features and functionalities.  These switches and routers either embody or practice the patented inventions, whether directly or indirectly.

BN1 35033055 1

Christopher D. Bright, Esq.
August 1, 2006
Page 2

Please feel free to contact us with any additional questions or concerns.

Sincerely,

Marc N. Henschke

MNH:gpf
cc:     Vera M. Elson, Esq. (*VIA FIRST CLASS MAIL & E-MAIL*)
        David H. Dolkas, Esq. (*VIA E-MAIL*)
        Firasat M. Ali, Esq. (*VIA E-MAIL*)
        George Huggins (*VIA E-MAIL*)
        T. Nation (*VIA E-MAIL*)

# EXHIBIT J

# McDermott
# Will & Emery

Boston  Brussels  Chicago  Düsseldorf  London  Los Angeles  Miami  Munich
New York  Orange County  Rome  San Diego  Silicon Valley  Washington  D C

Christopher D  Bright
Attorney at Law
cbright@mwe.com
949 757 7178

August 3, 2006

BY E-MAIL

Marc N. Henschke, Esq.
Robins, Kaplan, Miller & Ciresi L.L.P.
Prudential Tower
800 Boylston Street, 25th Floor
Boston, MA 02199
mnhenschke@rkmc.com

Re:    *Enterasys Networks v. Foundry Networks and Extreme Networks*, Civil Action No. 05-
       11298 (D. Mass.)

Dear Marc:

I am writing regarding your letter dated August 1, 2006 concerning Enterasys' second
supplemental response to Interrogatory No. 1.  As an initial matter, suffice it to say that your
threat to seek monetary sanctions if Extreme seeks to enforce the Court's June 26, 2006 Order
and compel a more complete interrogatory response is inappropriate.

During our upcoming meet and confer on Thursday, please be prepared to provide the following:
(1) an explanation of Enterasys' position whether it has essentially paraphrased the claim
language in stating the basis for its infringement contentions; (2) what the accused structures and
functions are beyond paraphrasing the claim language; and (3) Enterasys' position as to why the
Court's Order relieving Enterasys' of the obligation of providing a "claim chart" for now also, in
Enterasys' view, relieves Enterasys of providing the evidentiary basis for its infringement
contentions as requested by Interrogatory No. 1.

As you know, the Court's Order requires Enterasys to "provide a brief statement as to the
reasons why the plaintiff asserts that each product infringes a certain claim or claims."  It is
Extreme's position that this Order requires Enterasys move beyond paraphrasing claim language
and provide meaningful reasons and the evidentiary basis for its infringement contentions,
notwithstanding that it does not need to provide a "claim chart" now.  We do not believe that
Enterasys' current interrogatory response complies with the Court's Order.  Please also be
prepared to identify anything in the Court's Order that allegedly supports Enterasys' position
otherwise.

U S  practice conducted through McDermott Will & Emery LLP

18191 Von Karman Avenue Suite 400 Irvine California 92612-7107  Telephone: 949 851 0633  Facsimile: 949 851 9348  www mwe com

Marc N. Henschke, Esq.
August 3, 2006
Page 2

Very truly yours,

McDermott Will & Emery LLP

Christopher D. Bright

cc:    Vera M. Elson, Esq.
       David H. Dolkas, Esq.
       Christopher P. Sullivan, Esq.
       Alan E. McKenna, Esq.
       Jeremy C. McDiarmid, Esq.
ORC 393700-2 065994 0016