## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ENTERASYS NETWORKS, INC, <br><br> Plaintiff, <br><br> v. <br><br> FOUNDRY NETWORKS, INC. and EXTREME NETWORKS, INC., <br><br> Defendants. | Civil Action No. 05-CV-11298 (DPW) |

### FOUNDRY NETWORKS, INC.'S ASSENTED-TO MOTION TO JOIN IN EXTREME NETWORKS, INC.'S MOTION TO COMPEL INTERROGATORY ANSWERS FROM ENTERASYS NETWORKS, INC.

Defendant Foundry Networks, Inc. ("Foundry") respectfully moves to join in defendant Extreme Networks, Inc.'s ("Extreme") Motion to Compel Answers to Interrogatory Nos. 1 and 2 from plaintiff Enterasys Networks, Inc. ("Enterasys"). (Docket no. 64). Counsel for Enterasys has assented-to Foundry's joinder to Extreme's motion to compel interrogatory answers, but intends to oppose the relief sought by Extreme's underlying motion to compel.

In support of this motion, Foundry states as follows:

1.      Extreme's Interrogatory No. 1 (Ex. B) and Foundry's Interrogatory No. 2 (Ex. C) seek essentially the same information, and Enterasys' responses thereto are essentially the same. Thus, the issues related to Enterasys' deficient responses to Extreme's Interrogatory No. 1 and Foundry's Interrogatory No. 2 should be considered together.

2.      Extreme's Interrogatory No. 2 (Ex. B) and Foundry's Interrogatory No. 5 (Ex. C) seek essentially the same information, and Enterasys' responses thereto are essentially the same. Thus, the issues related to Enterasys' deficient responses to Extreme's Interrogatory No. 2 and Foundry's Interrogatory No. 5 should be considered together.

3.      Attached hereto as Ex. A are charts showing that a) Extreme's Interrogatory No. 1 and Foundry's Interrogatory No. 2 seek essentially the same information and that Enterasys' responses thereto are essentially the same, and b) Extreme's Interrogatory No. 2 and Foundry's Interrogatory No. 5 seek essentially the same information and that Enterasys' responses thereto are essentially the same.

4.      Therefore, to preserve judicial efficiency by resolving essentially the same issues at one time, Foundry seeks to join Extreme's motion to compel (Docket no. 64).  Foundry relies on and incorporates by reference herein the arguments made by Extreme in its memorandum in support of its motion to compel (Docket no. 65) and believes that no further opening briefing by Foundry is necessary at this time.

5.      Counsel for Enterasys has assented-to Foundry's joinder to Extreme's motion to compel interrogatory answers, but intends to oppose the relief sought by Extreme's underlying motion to compel.

WHEREFORE, Foundry respectfully requests that Foundry's motion to join Extreme's Motion to Compel Answers to Interrogatory Nos. 1 and 2 from Enterasys be granted.

## Certification Pursuant to Local Rule 7.1

Counsel for Foundry hereby certifies that counsel for the parties have conferred in an attempt to resolve or narrow the issue presented by this motion, and that counsel for Enterasys assented to Foundry's joining into Extreme's motion to compel, but did not agree to the relief sought by Extreme's underlying motion to compel.

Dated:  October 2, 2006

Respectfully Submitted,

DEFENDANT FOUNDRY NETWORKS, INC.

By Its Attorneys,

_/s/ Jeremy P. Oczek_

Steven M. Bauer (BBO #542531)
Jeremy P. Oczek (BBO #647509)
PROSKAUER ROSE LLP
One International Place
Boston, MA  02110-2600
Telephone:  (617) 526-9600
Facsimile:   (617) 526-9899
sbauer@proskauer.com
joczek@proskauer.com

William L. Anthony, Jr. (admitted pro hac vice)
I. Neel Chatterjee (admitted pro hac vice)
Michael F. Heafey (BBO # 556931)
Sanjeet K. Dutta (admitted pro hac vice)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 614-7400
Facsimile:   (650) 614-7401
wanthony@orrick.com
nchatterjee@orrick.com
mheafey@orrick.com
sdutta@orrick.com

**Certificate of Service**

The undersigned hereby certifies that this document was filed through the ECF system on October 2, 2006 and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

_/s/ Jeremy P. Oczek_

Jeremy P. Oczek

# EXHIBIT A

## EXHIBIT A

## Extreme's Interrogatory No. 1 and Foundry's Interrogatory No. 2

Enterasys' responses to both Extreme's Interrogatory No. 1 and Foundry's Interrogatory

No. 2 are essentially the same, as shown in Table 1 below.

## Table 1

| Extreme's Interrogatory No. 1 | Foundry's Interrogatory No. 2 |
|---|---|
| Separately for each asserted claim of each of the patents in suit, identify: | Describe in detail and provide a claim chart showing how each FOUNDRY PRODUCT identified in Interrogatory No. 1 infringes each of the corresponding claims. ENTERASYS' response to this interrogatory should: |
| (a) each Extreme Networks product that Enterasys alleges infringes each such claim; | A) identify a proposed construction for each element of each asserted claim that ENTERASYS identifies as being infringed; |
| (b) explain in detail Enterasys' contentions as to how each such product allegedly infringes each such claim; | B) identify specifically where each element of each asserted claim is found within each FOUNDRY PRODUCT, including citation to any supporting evidence; |
| (c) provide a claim chart identifying specifically where each element or limitation of each asserted claim is found within each such product; | C) identify for each asserted claim element that ENTERASYS contends is a means-plus-function element governed by 35 U.S.C. § 112(6), the structures, acts, or materials in each FOUNDRY PRODUCT that performs the claimed function; and |
| (d) state all bases for Enterasys's contention that the element or limitation is found within the product; | D) state whether each element of each asserted claim is literally present or present under the doctrine of equivalents. |
| (e) provide an explanation of whether such alleged infringement is literal or under the doctrine of equivalents; | (Ex. C at 6) |
| (f) specify whether Enterasys contends that there is any alleged liability under each of 35 U.S.C. § 271(a), § 271(b), § 271(c), § 271(f) and/or § 271(g); | |
| (g) provide an explanation of how 35 U.S.C. § 112, 116 is satisfied if applicable, including the identity of the function and any corresponding structure in the specification; | |
| (h) identify each person whose acts or omissions allegedly give rise to Extreme Networks' alleged liability; and | |
| (i) identify each document and person upon which Enterasys may rely in support of its infringement contentions. | |
| (Ex. B at 4-5) | |

| **Enterasys' Second Supplemental Response to Extreme's Interrogatory No. 1, in part, states:** | **Enterasys' Second Supplemental Response to Foundry's Interrogatory No. 2, in part, states:** |
|---|---|
| "As an initial matter, Enterasys objects to this Interrogatory as contrary to the Court's Amended Scheduling Order entered in this case on June 27,2006 because it purports to require that Enterasys either actually or effectively provide detailed claim construction charts containing element-by-element comparisons of the claim language of the patents-in-suit with the accused Extreme products at this premature juncture of the case. Consistent with the Amended Scheduling Order, Enterasys is not required to, and accordingly will not, provide detailed claim construction charts or their equivalents until December 15, 2006. | "As an initial matter, Enterasys objects to this Interrogatory as contrary to the Court's Amended Scheduling Order entered in this case on June 27, 2006 because it purports to require that Enterasys either actually or effectively provide detailed claim construction charts containing element-by-element comparisons of the claim language of the patents-in-suit with the accused Foundry products at this premature juncture of the case. Consistent with the Amended Scheduling Order, Enterasys is not required to, and accordingly will not, provide detailed claim construction charts or their equivalents until December 15, 2006. |
| Moreover, Enterasys further objects because, by its Order entered on June 26,2006, the Court has already expressly ruled that Extreme is not presently entitled to the information that this Interrogatory is requesting.  Indeed, the Court's Order denied in part Foundry's motion to compel (joined by Extreme) insofar as it sought the immediate production by Enterasys  of detailed claim construction charts containing element-by-element comparisons of the claim language with the accused Extreme products. As Magistrate Collings clearly stated in the Order, Enterasys "shall not be required to provide a claim chart before the deadline set by Judge Woodlock for providing such a chart."  That deadline is December 15, 2006. | Moreover, Enterasys further objects because, by its Order entered on June 26, 2006, the Court has already expressly ruled that Foundry is not presently entitled to the information that this Interrogatory is requesting.  Indeed, the Court's Order denied in part Foundry's motion to compel insofar as it sought the immediate production by Enterasys of detailed claim construction charts containing element-by-element comparisons of the claim language with the accused Foundry products. As Magistrate Collings clearly stated in the Order, Enterasys "shall not be required to provide a claim chart before the deadline set by Judge Woodlock for providing such a chart."  That deadline is December 15, 2006. |
| Magistrate Collings' Order expressly holds that to meet its present obligations in responding to this Interrogatory, Enterasys need only "identify what [Extreme] products are alleged to infringe which specific claims of which patents, and provide a brief statement as to the reasons why…[Enterasys] asserts that each product infringes a certain claim or claims." Enterasys now provides all of this required information in the chart attached hereto as Exhibit A, and Enterasys additionally identifies therein the accused Extreme product features on a claim-specific basis...." | Magistrate Collings' Order expressly holds that to meet its present obligations in responding to this Interrogatory, Enterasys need only "identify what [Foundry] products are alleged to infringe which specific claims of which patents, and provide a brief statement as to the reasons why…[Enterasys] asserts that each product infringes a certain claim or claims."  Enterasys now provides all of this required information in the chart attached hereto as Exhibit A, and Enterasys additionally identifies therein the accused Foundry product features on a claim-specific basis...." |
| (Ex. B at 5-6) | (Ex. C at 6-7) |

**Extreme's Interrogatory No. 2 And Foundry's Interrogatory No. 5**

Enterasys' responses to both Extreme's Interrogatory No. 2 and Foundry's Interrogatory

No. 5 are essentially the same, as shown in Table 2 below.

**Table 2**

| Extreme's Interrogatory No. 2 | Foundry's Interrogatory No. 5 |
|---|---|
| Separately for each asserted claim of each of the patents in suit, identify the respective date of conception and date of reduction to practice of that claim, both actual and constructive, and describe any and all diligence between such conception and reduction to practice, including the identity of all documents and things that Enterasys may contend corroborates such dates and diligence, and the identity of each person who Enterasys contends can corroborate such dates and diligence.<br><br>(Ex. B at 7) | For each asserted claim of the PATENTS-IN-SUIT identified in response to Interrogatory No. 1, describe the circumstances surrounding the alleged invention of the claim, including but not limited to, the identity of ALL PERSONS involved in the conception of the alleged invention; the precise date of conception of the alleged invention; where the conception took place; the date of the first written description of the alleged invention; the date of first disclosure of the alleged invention to a PERSON other than the named inventor(s); the date of first testing of the alleged invention; the date of first actual reduction to practice of the alleged invention; where the first actual reduction to practice took place; ALL corroborating witnesses; the steps constituting diligence from conception to actual or constructive reduction to practice; the identify of each first product which incorporated any invention claimed in the patent; the date of first use of the alleged invention by a PERSON other than by a named inventor; the date of first advertisement or promotion of the alleged invention; the date of first sale or offer for sale of the alleged invention; and ALL project names, numbers, codes, descriptions, or other identifiers, whether external or internal, used by ENTERASYS and/or any prior owners of the PATENTS IN- SUIT (including DEC or CABLETRON) relating to development of the subject matter of each of the PATENTS-IN-SUIT.<br><br>(Ex. C at 10-11) |
| **Enterasys' Second Supplemental Response to Extreme's Interrogatory No. 2, in part, states:**<br><br>".... Subject to and without waiving its objections, Enterasys provides the following information concerning the dates of invention for the patents-in-suit: | **Enterasys' Second Supplemental Response to Foundry's Interrogatory No. 5, in part, states:**<br><br>".... Subject to and without waiving its objections, Enterasys provides the following information concerning the dates of invention for the patents-in-suit: |

For U.S. Patent No. 5,251,205 (the "'205 patent"), the date of conception was not later than April of 1989 and the date of first reduction to practice was not later than July of 1989. Enterasys bases these dates upon information contained in the invention record which it presently intends to withhold from production on grounds of attorney-client privilege. At present, Enterasys has been able to locate no further information or documentation relevant to establishing these conception and reduction to practice dates other than the invention record itself. Such further information or documentation may be obtainable through third party discovery.

For U.S. Patent No. 5,390,173 (the "'173 patent"), the dates of conception and first reduction to practice were not later than July of 1991. Enterasys bases these dates upon information contained in the invention record which it presently intends to withhold from production on grounds of attorney-client privilege. At present, Enterasys has been able to locate no further information or documentation relevant to establishing these conception and reduction to practice dates other than the invention record itself. Such further information or documentation may be obtainable through third party discovery.

For U.S. Patent No. 6,128,665 (the "'665 patent"), the constructive conception and first reduction to practice dates were not later than December 30, 1996. At present, Enterasys has been able to locate no information or documentation relevant to establishing actual conception and reduction to practice dates. Such information or documentation may be obtainable through third party discovery.

For U.S. Patent No. 6,147,995 (the "'995 patent") the constructive conception and first reduction to practice dates were not later than November 15, 1995. At present, Enterasys has been able to locate no information or documentation relevant to establishing actual conception and reduction to practice dates. Such information or documentation may be obtainable through third party discovery.

For U.S. Patent No. 6,539,022 (the "'022 patent"), the constructive conception and first reduction to practice dates were not later than April 25, 1995. At present, Enterasys has been able to locate no information or documentation relevant to

---

For U.S. Patent No. 5,251,205 (the "'205 patent"), the date of conception was not later than April of 1989 and the date of first reduction to practice was not later than July of 1989. Enterasys bases these dates upon information contained in the invention record which it presently intends to withhold from production on grounds of attorney-client privilege. At present, Enterasys has been able to locate no further information or documentation relevant to establishing these conception and reduction to practice dates other than the invention record itself. Such further information or documentation may be obtainable through third party discovery.

For U.S. Patent No. 5,390,173 (the "'173 patent"), the dates of conception and first reduction to practice were not later than July of 1991. Enterasys bases these dates upon information contained in the invention record which it presently intends to withhold from production on grounds of attorney-client privilege. At present, Enterasys has been able to locate no further information or documentation relevant to establishing these conception and reduction to practice dates other than the invention record itself. Such further information or documentation may be obtainable through third party discovery.

For U.S. Patent No. 6,128,665 (the "'665 patent"), the constructive conception and first reduction to practice dates were not later than December 30, 1996. At present, Enterasys has been able to locate no information or documentation relevant to establishing actual conception and reduction to practice dates. Such information or documentation may be obtainable through third party discovery.

For U.S. Patent No. 6,147,995 (the "'995 patent") the constructive conception and first reduction to practice dates were not later than November 15, 1995. At present, Enterasys has been able to locate no information or documentation relevant to establishing actual conception and reduction to practice dates. Such information or documentation may be obtainable through third party discovery.

For U.S. Patent No. 6,539,022 (the "'022 patent"), the constructive conception and first reduction to practice dates were not later than April 25, 1995. At present, Enterasys has been able to locate no information or documentation relevant to

| | |
|---|---|
| establishing actual conception and reduction to practice dates. Such information or documentation may be obtainable through third party discovery.<br><br>For U.S. Patent No. 6,560,236 (the "'236 patent"), the date of conception was not later than March of 1992 and the date of first reduction to practice was not later than November of 1992. Enterasys bases these dates upon information contained in the invention record which it presently intends to withhold from production on grounds of attorney-client privilege. At present, Enterasys has been able to locate no further information or documentation relevant to establishing these conception and reduction to practice dates other than the invention record itself. Such further information or documentation may be obtainable through third party discovery.<br><br>Enterasys is presently unaware of any persons other than the named inventors for each of the respective patents-in-suit as having been involved in these inventive activities, or as being able to serve as corroborating witnesses. These issues remain under investigation by Enterasys, and Enterasys expects to discover additional information about these issues from discovery in this case, including from third party discovery...."<br><br>(Ex. B at 8-9) | establishing actual conception and reduction to practice dates. Such information or documentation may be obtainable through third party discovery.<br><br>For U.S. Patent No. 6,560,236 (the "'236 patent"), the date of conception was not later than March of 1992 and the date of first reduction to practice was not later than November of 1992. Enterasys bases these dates upon information contained in the invention record which it presently intends to withhold from production on grounds of attorney-client privilege. At present, Enterasys has been able to locate no further information or documentation relevant to establishing these conception and reduction to practice dates other than the invention record itself. Such further information or documentation may be obtainable through third party discovery.<br><br>Enterasys is presently unaware of any persons other than the named inventors for each of the respective patents-in-suit as having been involved in these inventive activities, or as being able to serve as corroborating witnesses. These issues remain under investigation by Enterasys, and Enterasys expects to discover additional information about these issues from discovery in this case, including from third party discovery...."<br><br>(Ex. C at 12-14) |

## EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| ENTERASYS NETWORKS, INC., ) | Civil Action No: 05-CV-11298 (DPW) |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| FOUNDRY NETWORKS, INC., ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF ENTERASYS NETWORKS, INC.'S SECOND SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANT EXTREME NETWORKS, INC.'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Enterasys Networks, Inc. ("Enterasys" or "Plaintiff") hereby supplements and corrects its previous responses and objections to the First Set Of Interrogatories served by Defendant Extreme Networks, Inc. ("Extreme" or "Defendant") on or about March 6, 2006.

## GENERAL RESPONSE

Enterasys, based upon its current knowledge, understanding, and belief concerning the information available to it as of the date on which these Responses are made, responds and objects as set forth below to Extreme's First Set of Interrogatories. These Responses, while based on diligent investigation by Enterasys and its counsel, reflect only the current state of Enterasys' knowledge, understanding, and belief respecting the matters about which inquiry was made. Enterasys has not completed its investigation of the facts relating to this case, its discovery in this action, nor its preparation for trial. As this action proceeds, Enterasys anticipates that further facts may be discovered, and without in any way obligating itself to do so,

9.     Enterasys objects to the "Instructions" contained in Extreme's interrogatories insofar as they purport to require the production of a privilege log with a level of detail which exceeds that mandated by the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Massachusetts.

## SPECIFIC RESPONSES AND OBJECTIONS

Enterasys hereby incorporates its General Response and General Objections set forth above into its Specific Responses and Objections set forth below.

## INTERROGATORY NO. 1:

Separately for each asserted claim of each of the patents in suit, identify:

(a)     each Extreme Networks product that Enterasys alleges infringes each such claim;

(b)     explain in detail Enterasys' contentions as to how each such product allegedly infringes each such claim;

(c)     provide a claim chart identifying specifically where each element or limitation of each asserted claim is found within each such product;

(d)     state all bases for Enterasys's contention that the element or limitation is found within the product;

(e)     provide an explanation of whether such alleged infringement is literal or under the doctrine of equivalents;

(f)     specify whether Enterasys contends that there is any alleged liability under each of 35 U.S.C. § 271(a), § 271(b), § 271(c), § 271(f) and/or § 271(g);

(g)     provide an explanation of how 35 U.S.C. § 112, 116 is satisfied if applicable, including the identity of the function and any corresponding structure in the specification;

(h)     identify each person whose acts or omissions allegedly give rise to Extreme

4

Networks' alleged liability; and

(i)    identify each document and person upon which Enterasys may rely in support of

its infringement contentions.

## RESPONSE TO INTERROGATORY NO. 1:

As an initial matter, Enterasys objects to this Interrogatory as contrary to the Court's

Amended Scheduling Order entered in this case on June 27, 2006 because it purports to require

that Enterasys either actually or effectively provide detailed claim construction charts containing

element-by-element comparisons of the claim language of the patents-in-suit with the accused

Extreme products at this premature juncture of the case.  Consistent with the Amended

Scheduling Order, Enterasys is not required to, and accordingly will not, provide detailed claim

construction charts or their equivalents until December 15, 2006.

Moreover, Enterasys further objects because, by its Order entered on June 26, 2006, the

Court has already expressly ruled that Extreme is not presently entitled to the information that

this Interrogatory is requesting.  Indeed, the Court's Order denied in part Foundry's motion to

compel (joined by Extreme) insofar as it sought the immediate production by Enterasys of

detailed claim construction charts containing element-by-element comparisons of the claim

language with the accused Extreme products.  As Magistrate Collings clearly stated in the Order,

Enterasys "shall not be required to provide a claim chart before the deadline set by Judge

Woodlock for providing such a chart."  That deadline is December 15, 2006.

Magistrate Collings' Order expressly holds that to meet its present obligations in

responding to this Interrogatory, Enterasys need only "identify what [Extreme] products are

alleged to infringe which specific claims of which patents, and provide a brief statement as to the

reasons why ... [Enterasys] asserts that each product infringes a certain claim or claims."

Enterasys now provides all of this required information in the chart attached hereto as Exhibit A, and Enterasys additionally identifies therein the accused Extreme product features on a claim-specific basis. Enterasys is also presently accusing of infringement any Extreme software that provides relevant functionality for the accused product features identified in Exhibit A including, but not limited to, the software disclosed by Extreme in its "Response To Interrogatory No. 7" served on June 19, 2006.

Enterasys is alleging direct infringement by accused Extreme products under 35 U.S.C. §271(a) relative to the asserted apparatus claims identified in Exhibit A that are directed to "a network bridge," "a port based default VLAN," "a computer program product," or "a computer-readable storage medium comprising program instructions."

Enterasys is principally alleging inducement of infringement and contributory infringement by accused Extreme products under 35 U.S.C. §271(b) and (c) relative to the asserted method claims identified in Exhibit A, and also relative to the asserted apparatus claims identified in Exhibit A that are directed to a "network of information handling devices" or a "packet data communications network." In these instances, the direct infringers are Extreme's customers. However, Enterasys may also allege direct infringement against Extreme relative to such claims to the extent that the evidence shows that Extreme has used accused products in networks present at its own facilities, has tested accused products in a network environment, or has demonstrated accused products in a network environment for customers or others.

The information provided in Exhibit A is necessarily preliminary in nature given that the parties are currently in the early stages of discovery in this case, and especially given that Extreme has heretofore failed in bad faith to produce any non-publicly available technical documents responsive to Enterasys' document requests that would show in greater and more precise detail

6

how its accused products and product features operate. Accordingly, Enterasys expressly reserves the right to add or drop asserted claims and/or accused products from the list provided in Exhibit A at the time it provides its claim construction charts on December 15, 2006, or at any time thereafter, as evidence and events may warrant. Given the current stage of discovery, Enterasys lacks information sufficient to respond to subparts (h) and (i) of this Interrogatory.

Enterasys will supplement or correct its response to this Interrogatory, if necessary, at an appropriate interval of this case in a manner consistent with the requirements of Federal Rule of Civil Procedure 26(e).

**INTERROGATORY NO. 2:**

Separately for each asserted claim of each of the patents in suit, identify the respective date of conception and date of reduction to practice of that claim, both actual and constructive, and describe any and all diligence between such conception and reduction to practice, including the identity of all documents and things that Enterasys may contend corroborates such dates and diligence, and the identity of each person who Enterasys contends can corroborate such dates and diligence.

**RESPONSE TO INTERROGATORY NO. 2:**

Enterasys objects to this Interrogatory on grounds that it calls for information that is protected from disclosure by the attorney-client privilege and/or by the work product doctrine; that it is overly broad, unduly burdensome, vague, and ambiguous; and that it seeks information neither relevant to a claim or defense of a party nor reasonably calculated to lead to the discovery of admissible evidence. Enterasys further objects to this Interrogatory on grounds that it has not yet made a final determination as to what will be its "asserted claim[s]" in this case.

7

Subject to and without waiving its objections, Enterasys provides the following information concerning the dates of invention for the patents-in-suit:

For U.S. Patent No. 5,251,205 (the "'205 patent"), the date of conception was not later than April of 1989 and the date of first reduction to practice was not later than July of 1989. Enterasys bases these dates upon information contained in the invention record which it presently intends to withhold from production on grounds of attorney-client privilege. At present, Enterasys has been able to locate no further information or documentation relevant to establishing these conception and reduction to practice dates other than the invention record itself. Such further information or documentation may be obtainable through third party discovery.

For U.S. Patent No. 5,390,173 (the "'173 patent"), the dates of conception and first reduction to practice were not later than July of 1991. Enterasys bases these dates upon information contained in the invention record which it presently intends to withhold from production on grounds of attorney-client privilege. At present, Enterasys has been able to locate no further information or documentation relevant to establishing these conception and reduction to practice dates other than the invention record itself. Such further information or documentation may be obtainable through third party discovery.

For U.S. Patent No. 6,128,665 (the "'665 patent"), the constructive conception and first reduction to practice dates were not later than December 30, 1996. At present, Enterasys has been able to locate no information or documentation relevant to establishing actual conception and reduction to practice dates. Such information or documentation may be obtainable through third party discovery.

For U.S. Patent No. 6,147,995 (the "'995 patent") the constructive conception and first

8

reduction to practice dates were not later than November 15, 1995. At present, Enterasys has been able to locate no information or documentation relevant to establishing actual conception and reduction to practice dates. Such information or documentation may be obtainable through third party discovery.

For U.S. Patent No. 6,539,022 (the "'022 patent"), the constructive conception and first reduction to practice dates were not later than April 25, 1995. At present, Enterasys has been able to locate no information or documentation relevant to establishing actual conception and reduction to practice dates. Such information or documentation may be obtainable through third party discovery.

For U.S. Patent No. 6,560,236 (the "'236 patent"), the date of conception was not later than March of 1992 and the date of first reduction to practice was not later than November of 1992. Enterasys bases these dates upon information contained in the invention record which it presently intends to withhold from production on grounds of attorney-client privilege. At present, Enterasys has been able to locate no further information or documentation relevant to establishing these conception and reduction to practice dates other than the invention record itself. Such further information or documentation may be obtainable through third party discovery.

Enterasys is presently unaware of any persons other than the named inventors for each of the respective patents-in-suit as having been involved in these inventive activities, or as being able to serve as corroborating witnesses. These issues remain under investigation by Enterasys, and Enterasys expects to discover additional information about these issues from discovery in this case, including from third party discovery.

Enterasys will supplement or correct its response to this Interrogatory, if necessary, at an

appropriate interval of this case in a manner consistent with the requirements of Federal Rule of
Civil Procedure 26(e).

## INTERROGATORY NO. 3:

Separately for each asserted claim of each of the patents in suit, identify the product or
thing that constituted the first embodiment of each claimed invention and identify when it was
first offered for sale, first sold, first publicly used, first publicly disclosed, or first disclosed to
anyone not an employee of the assignee of the patent containing the claim; identifying each
person with knowledge of the offer for sale, sale, public use, public disclosure or disclosure to
anyone not then an employee of the assignee of the patent containing the claim and the subject
matter of each person's knowledge; and identify all documents and persons with information
relating to such offer for sale, sale, public use, public disclosure or disclosure.

## RESPONSE TO INTERROGATORY NO. 3:

Enterasys objects to this Interrogatory on grounds that it calls for information that is
protected from disclosure by the attorney-client privilege and/or by the work product doctrine;
that it is overly broad, unduly burdensome, vague, and ambiguous; and that it seeks information
neither relevant to a claim or defense of a party nor reasonably calculated to lead to the discovery
of admissible evidence.

Enterasys further objects to this Interrogatory on grounds that it is contrary to the Court's
Amended Scheduling Order entered in this case on June 27, 2006 because, in order to answer
portions thereof, Enterasys would have to either actually or effectively prepare detailed claim
charts construing the asserted patent claims at this premature juncture of the case.  Consistent with
the Amended Scheduling Order, Enterasys need not prepare such detailed claim construction

10

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

_____

|  |  |  |
|---|---|---|
| ENTERASYS NETWORKS, INC., | ) | Civil Action No: 05-CV-11298 (DPW) |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| FOUNDRY NETWORKS, INC., | ) |  |
|  | ) |  |
| Defendant. | ) |  |

_____ )

**PLAINTIFF ENTERASYS NETWORKS, INC.'S SECOND SUPPLEMENTAL
RESPONSES AND OBJECTIONS TO DEFENDANT FOUNDRY NETWORKS, INC.'S
FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Enterasys

Networks, Inc. ("Enterasys" or "Plaintiff") hereby supplements and corrects its previous

responses and objections to the First Set Of Interrogatories served by Defendant Foundry

Networks, Inc. ("Foundry" or "Defendant") on or about March 14, 2006.

**GENERAL RESPONSE**

Enterasys, based upon its current knowledge, understanding, and belief concerning the

information available to it as of the date on which these Responses are made, responds and

objects as set forth below to Foundry's First Set of Interrogatories. These Responses, while

based on diligent investigation by Enterasys and its counsel, reflect only the current state of

Enterasys' knowledge, understanding, and belief respecting the matters about which inquiry was

made. Enterasys has not completed its investigation of the facts relating to this case, its

discovery in this action, nor its preparation for trial. As this action proceeds, Enterasys

anticipates that further facts may be discovered, and without in any way obligating itself to do so,

Enterasys reserves the right to modify or supplement its Responses with such pertinent information as it may subsequently discover. Furthermore, these Responses are given without prejudice to using or relying upon subsequently discovered information at trial, nor using or relying upon information omitted from these Responses as a result of mistake, error, oversight or inadvertence. Enterasys further reserves the right to produce additional facts and evidence at trial, and to object on appropriate grounds to the introduction of any evidence included in these Responses.

Specific objections to an interrogatory, part, or subpart thereof are made on an individual basis in Enterasys' Responses below. In addition to those specific objections, Enterasys objects generally as follows:

## GENERAL OBJECTIONS

1.      Enterasys objects to the "Instructions" and "Definitions" contained or incorporated into Foundry's interrogatories insofar as they seek to impose obligations beyond those set forth in the Federal Rules of Civil Procedure or the Local Rules Of The United States District Court For The District Of Massachusetts.

2.      Enterasys objects to each of the interrogatories propounded by Foundry, and to each part and subpart thereof, to the extent that they seek information protected by the attorney-client privilege or the work product doctrine. The specific objections stated below on the grounds of attorney-client privilege and/or the work product doctrine in no way limit the generality of this objection. Nothing contained in these Responses is intended to be or should be considered a waiver of any attorney-client privilege, work product protection, privacy right, trade secret or confidential information protection, or any other applicable privilege or doctrine. To the extent that any interrogatory, part, or subpart thereof may be construed as calling for

2

disclosure of information protected by such privileges or doctrines, a continuing objection to each and every such interrogatory, part, and subpart is hereby imposed.

3.      Enterasys objects to each of the interrogatories propounded by Foundry insofar as they seek information that is neither relevant to a claim or a defense of a party herein, nor reasonably calculated to lead to the discovery of admissible evidence.

4.      Enterasys objects to each of the interrogatories propounded by Foundry insofar as they seek information that, by reason of public filings or otherwise, is already in Foundry's possession or is readily accessible to Foundry.

5.      Enterasys objects to each of the interrogatories propounded by Foundry insofar as they are redundant, overlapping, and duplicative of other discovery Foundry is seeking in this case and are therefore burdensome, oppressive, and annoying.

6.      Enterasys objects to each of the interrogatories propounded by Foundry insofar as they are vague, ambiguous, or unintelligible.

7.      Enterasys objects to the "Definitions" incorporated into Foundry's interrogatories insofar as they purport to define the term "ENTERASYS PATENTS" to include patents that have no familial relationship with any of the patents-in-suit and merely "cite" to one or more of the patents-in-suit.

8.      Enterasys objects to the "Definitions" incorporated into Foundry's interrogatories insofar as they purport to define the term "INDUSTRY STANDARD" to include "any standard or RFC associated with data networking technology," thereby implicating standards or RFCs that are not directly relevant to one or more of the inventions disclosed in the patents-in-suit. Enterasys has previously identified the standards and RFCs that it believes to be of direct

relevance in the "Definitions" section provided in its own set of document requests served upon

Foundry on March 3, 2006.

9.     Enterasys objects to the "Instructions" contained in Foundry's interrogatories

insofar as they purport to require the production of a privilege log with a level of detail which

exceeds that mandated by the Federal Rules of Civil Procedure and the Local Rules of the United

States District Court for the District of Massachusetts.

## SPECIFIC RESPONSES AND OBJECTIONS

Enterasys hereby incorporates its General Response and General Objections set forth

above into its Specific Responses and Objections set forth below.

## INTERROGATORY NO. 1:

Separately identify each FOUNDRY PRODUCT that ENTERASYS contends infringes

any of the PATENTS-IN-SUIT, by name, product number, and/or description, and for each such

product, include the specific claims that are allegedly infringed, and whether that alleged

infringement is direct, contributory and/or by inducement.

## RESPONSE TO INTERROGATORY NO. 1:

Attached hereto as Exhibit A is a chart specifically identifying which Foundry products

and product features Enterasys is presently accusing of infringement under which asserted patents

and patent claims.  In addition, Enterasys is also presently accusing of infringement any Foundry

software that provides relevant functionality for the accused product features identified in Exhibit

A including, but not limited to, the software disclosed by Foundry in its "Supplemental Response

to Interrogatory No. 7" served on June 23, 2006.

Enterasys is alleging direct infringement by accused Foundry products under 35 U.S.C.

§271(a) relative to the asserted apparatus claims identified in Exhibit A that are directed to "a

4

network bridge," "a port based default VLAN," "a computer program product," or "a computer-readable storage medium comprising program instructions."

Enterasys is principally alleging inducement of infringement and contributory infringement by accused Foundry products under 35 U.S.C. §271(b) and (c) relative to the asserted method claims identified in Exhibit A, and also relative to the asserted apparatus claims identified in Exhibit A that are directed to a "network of information handling devices" or a "packet data communications network."  In these instances, the direct infringers are Foundry's customers.  However, Enterasys may also allege direct infringement against Foundry relative to such claims to the extent that the evidence shows that Foundry has used accused products in networks present at its own facilities, has tested accused products in a network environment, or has demonstrated accused products in a network environment for customers or others.

The information provided in Exhibit A is necessarily preliminary in nature given that the parties are currently in the early stages of discovery in this case, and especially given that Foundry has heretofore failed and refused in bad faith to produce any non-publicly available technical documents responsive to Enterasys' document requests that would show in greater and more precise detail how its accused products and product features operate.  Accordingly, Enterasys expressly reserves the right to add or drop asserted claims and/or accused products from the list provided in Exhibit A at the time it provides its claim construction charts on December 15, 2006, or at any time thereafter, as evidence and events may warrant.

Enterasys will supplement or correct its response to this Interrogatory, if necessary, at an appropriate interval of this case in a manner consistent with the requirements of Federal Rule of Civil Procedure 26(e).

## INTERROGATORY NO. 2:

Describe in detail and provide a claim chart showing how each FOUNDRY PRODUCT identified in Interrogatory No. 1 infringes each of the corresponding claims. ENTERASYS' response to this interrogatory should: A) identify a proposed construction for each element of each asserted claim that ENTERASYS identifies as being infringed; B) identify specifically where each element of each asserted claim is found within each FOUNDRY PRODUCT, including citation to any supporting evidence; C) identify for each asserted claim element that ENTERASYS contends is a means-plus-function element governed by 35 U.S.C. § 112(6), the structures, acts, or materials in each FOUNDRY PRODUCT that performs the claimed function; and D) state whether each element of each asserted claim is literally present or present under the doctrine of equivalents.

## RESPONSE TO INTERROGATORY NO. 2:

As an initial matter, Enterasys objects to this Interrogatory as contrary to the Court's Amended Scheduling Order entered in this case on June 27, 2006 because it purports to require that Enterasys either actually or effectively provide detailed claim construction charts containing element-by-element comparisons of the claim language of the patents-in-suit with the accused Foundry products at this premature juncture of the case. Consistent with the Amended Scheduling Order, Enterasys is not required to, and accordingly will not, provide detailed claim construction charts or their equivalents until December 15, 2006.

Moreover, Enterasys further objects because, by its Order entered on June 26, 2006, the Court has already expressly ruled that Foundry is not presently entitled to the information that this Interrogatory is requesting. Indeed, the Court's Order denied in part Foundry's motion to compel insofar as it sought the immediate production by Enterasys of detailed claim construction

6

charts containing element-by-element comparisons of the claim language with the accused

Foundry products.  As Magistrate Collings clearly stated in the Order, Enterasys "shall not be

required to provide a claim chart before the deadline set by Judge Woodlock for providing such a

chart."  That deadline is December 15, 2006.

Magistrate Collings' Order expressly holds that to meet its present obligations in

responding to this Interrogatory, Enterasys need only "identify what [Foundry] products are

alleged to infringe which specific claims of which patents, and provide a brief statement as to the

reasons why … [Enterasys] asserts that each product infringes a certain claim or claims."

Enterasys now provides all of this required information in the chart attached hereto as Exhibit A,

and Enterasys additionally identifies therein the accused Foundry product features on a claim-

specific basis.

The information provided in Exhibit A is necessarily preliminary in nature given that the

parties are currently in the early stages of discovery in this case, and especially given that Foundry

has heretofore failed and refused in bad faith to produce any non-publicly available technical

documents responsive to Enterasys' document requests that would show in greater and more

precise detail how its accused products and product features operate.  Accordingly, Enterasys

expressly reserves the right to add or drop asserted claims and/or accused products from the list

provided in Exhibit A at the time it provides its claim construction charts on December 15, 2006,

or at any time thereafter, as evidence and events may warrant.

Enterasys will supplement or correct its response to this Interrogatory, if necessary, at an

appropriate interval of this case in a manner consistent with the requirements of Federal Rule of

Civil Procedure 26(e).

**INTERROGATORY NO. 3:**

For each FOUNDRY PRODUCT identified in ENTERASYS' response to Interrogatory No. 1, state all facts concerning ENTERASYS' forming of its belief that the FOUNDRY PRODUCT infringes, including, but not limited to, the date that ENTERASYS first learned of the FOUNDRY PRODUCT; the date ENTERASYS first came to believe the FOUNDRY PRODUCT was allegedly infringing; the PERSONS, DOCUMENTS and things involved in informing ENTERASYS about the FOUNDRY PRODUCT and in forming ENTERASYS's belief that the FOUNDRY PRODUCT is infringing; and all efforts that ENTERASYS undertook to substantiate its belief that the FOUNDRY PRODUCT is allegedly infringing, including, but not limited to, all acquisition, testing and reverse-engineering of FOUNDRY PRODUCTS and the individuals involved in such efforts.

**RESPONSE TO INTERROGATORY NO. 3:**

Enterasys objects to this Interrogatory on grounds that it calls for information that is protected from disclosure by the attorney-client privilege and/or by the work product doctrine; that it is overly broad, unduly burdensome, vague, and ambiguous; and it seeks information neither relevant to a claim or defense of a party nor reasonably calculated to lead to the discovery of admissible evidence. Enterasys further objects to this Interrogatory on grounds that it calls for information relating to issues that are outside the scope of Phase I fact discovery as established by the Court's Amended Scheduling Order entered in this case on June 27, 2006.

Subject to and without waiving its objections, Enterasys states that it first formed the belief that Foundry products were infringing in March of 2004 based upon the advice of outside counsel. At the request of Enterasys' former Intellectual Property Counsel, Paul M. Coryea, Esq. ("Coryea"), outside counsel had exclusively performed a detailed pre-suit investigation in that

time frame that included both claim constructions and infringement analyses. This pre-suit investigation principally focused upon Foundry's publicly available technical and product marketing documents.

Later, in and around March of 2005, a second detailed pre-suit investigation was exclusively performed by outside counsel at the request of Coryea. This second pre-suit investigation again included both claim constructions and infringement analyses, and again was principally focused on Foundry's publicly available technical and product marketing documents.

To the extent that any of the Foundry documents considered or relied upon during either pre-suit investigation remain in Enterasys' possession, custody, or control, Enterasys has already produced them in this case in response to the Foundry document requests that call for their production on May 5, 2006.

By its Order entered on June 26, 2006 denying in part Foundry's motion to compel, the Court expressly ruled that Enterasys is not required to provide any further information in response to this Interrogatory. Accordingly, Enterasys will not provide any further information concerning its pre-suit investigations except as necessary in response to any motion filed by Foundry under Federal Rule of Civil Procedure 11.

**INTERROGATORY NO. 4:**

For each FOUNDRY PRODUCT identified in Interrogatory No. 1, identify the PERSON or PERSONS employed by or associated with ENTERASYS most knowledgeable regarding the structure, function, and operation of each such FOUNDRY PRODUCT.

**RESPONSE TO INTERROGATORY NO. 4:**

Enterasys objects to this Interrogatory on grounds that it calls for information that is protected from disclosure by the attorney-client privilege and/or by the work product doctrine;

that it is overly broad, unduly burdensome, vague, and ambiguous; and it seeks information

neither relevant to a claim or defense of a party nor reasonably calculated to lead to the discovery

of admissible evidence; and that it seeks knowledge concerning Foundry products that is already

uniquely within Foundry's own possession, custody, or control.

Subject to and without waiving its objections, Enterasys states that Mark Hurley

("Hurley") and Carl Piper ("Piper") of their Product Management group have a general familiarity

with certain Foundry products as the result of working on competitive product comparisons for

use by Enterasys' sales force.  Neither Hurley nor Piper have a detailed technical understanding of

Foundry products of the type that could be expected of an engineer.

Vala Afshar has tested certain Foundry products for purposes of assessing their

interoperability with Enterasys products within a network environment.

Enterasys will supplement or correct its response to this Interrogatory, if necessary, at an

appropriate interval of this case in a manner consistent with the requirements of Federal Rule of

Civil Procedure 26(e).

## INTERROGATORY NO. 5:

For each asserted claim of the PATENTS-IN-SUIT identified in response to Interrogatory

No. 1, describe the circumstances surrounding the alleged invention of the claim, including but

not limited to, the identity of ALL PERSONS involved in the conception of the alleged

invention; the precise date of conception of the alleged invention; where the conception took

place; the date of the first written description of the alleged invention; the date of first disclosure

of the alleged invention to a PERSON other than the named inventor(s); the date of first testing

of the alleged invention; the date of first actual reduction to practice of the alleged invention;

where the first actual reduction to practice took place; ALL corroborating witnesses; the steps

constituting diligence from conception to actual or constructive reduction to practice; the identify

of each first product which incorporated any invention claimed in the patent; the date of first use

of the alleged invention by a PERSON other than by a named inventor; the date of first

advertisement or promotion of the alleged invention; the date of first sale or offer for sale of the

alleged invention; and ALL project names, numbers, codes, descriptions, or other identifiers,

whether external or internal, used by ENTERASYS and/or any prior owners of the PATENTS-

IN-SUIT (including DEC or CABLETRON) relating to development of the subject matter of

each of the PATENTS-IN-SUIT.

## RESPONSE TO INTERROGATORY NO. 5:

Enterasys objects to this Interrogatory on grounds that it calls for information that is

protected from disclosure by the attorney-client privilege and/or by the work product doctrine;

that it is overly broad, unduly burdensome, vague, and ambiguous; and that it seeks information

neither relevant to a claim or defense of a party nor reasonably calculated to lead to the discovery

of admissible evidence.

Enterasys further objects to this Interrogatory on grounds that it is contrary to the Court's

Amended Scheduling Order entered in this case on June 27, 2006 because, in order to answer

portions thereof, Enterasys would have to either actually or effectively prepare detailed claim

construction charts construing the asserted patent claims at this premature juncture of the case.

Consistent with the Amended Scheduling Order, Enterasys need not prepare such detailed claim

construction charts or their equivalents until December 15, 2006.

Enterasys also objects to this Interrogatory pursuant to Federal Rule of Civil Procedure

33(a) and Local Rule 26.1(C) of the United States District Court for the District of Massachusetts

as presenting multiple separate discovery requests in that it contains discrete subparts relating to

issues such as: **(i)** first public sale and use, and/or **(ii)** Enterasys, Cabletron, and DEC products, that are not logical extensions of the basic underlying request for information pertaining to *inventive activities* relevant to the subject matter of the patents-in-suit.

Subject to and without waiving its objections, Enterasys provides the following information concerning the dates of invention for the patents-in-suit:

For U.S. Patent No. 5,251,205 (the "'205 patent"), the date of conception was not later than April of 1989 and the date of first reduction to practice was not later than July of 1989. Enterasys bases these dates upon information contained in the invention record which it presently intends to withhold from production on grounds of attorney-client privilege. At present, Enterasys has been able to locate no further information or documentation relevant to establishing these conception and reduction to practice dates other than the invention record itself. Such further information or documentation may be obtainable through third party discovery.

For U.S. Patent No. 5,390,173 (the "'173 patent"), the dates of conception and first reduction to practice were not later than July of 1991. Enterasys bases these dates upon information contained in the invention record which it presently intends to withhold from production on grounds of attorney-client privilege. At present, Enterasys has been able to locate no further information or documentation relevant to establishing these conception and reduction to practice dates other than the invention record itself. Such further information or documentation may be obtainable through third party discovery.

For U.S. Patent No. 6,128,665 (the "'665 patent"), the constructive conception and first reduction to practice dates were not later than December 30, 1996. At present, Enterasys has been able to locate no information or documentation relevant to establishing actual conception

and reduction to practice dates. Such information or documentation may be obtainable through third party discovery.

For U.S. Patent No. 6,147,995 (the "'995 patent") the constructive conception and first reduction to practice dates were not later than November 15, 1995. At present, Enterasys has been able to locate no information or documentation relevant to establishing actual conception and reduction to practice dates. Such information or documentation may be obtainable through third party discovery.

For U.S. Patent No. 6,539,022 (the "'022 patent"), the constructive conception and first reduction to practice dates were not later than April 25, 1995. At present, Enterasys has been able to locate no information or documentation relevant to establishing actual conception and reduction to practice dates. Such information or documentation may be obtainable through third party discovery.

For U.S. Patent No. 6,560,236 (the "'236 patent"), the date of conception was not later than March of 1992 and the date of first reduction to practice was not later than November of 1992. Enterasys bases these dates upon information contained in the invention record which it presently intends to withhold from production on grounds of attorney-client privilege. At present, Enterasys has been able to locate no further information or documentation relevant to establishing these conception and reduction to practice dates other than the invention record itself. Such further information or documentation may be obtainable through third party discovery.

Enterasys is presently unaware of any persons other than the named inventors for each of the respective patents-in-suit as having been involved in these inventive activities, or as being able to serve as corroborating witnesses. These issues remain under investigation by Enterasys,

13

and Enterasys expects to discover additional information about these issues from discovery in this case, including from third party discovery.

Enterasys will supplement or correct its response to this Interrogatory, if necessary, at an appropriate interval of this case in a manner consistent with the requirements of Federal Rule of Civil Procedure 26(e).

## INTERROGATORY NO. 6:

Identify ALL articles, systems, products, components and/or devices ever sold by ENTERASYS and/or any prior owners of the PATENTS-IN-SUIT (including DEC or CABLETRON) which use an invention claimed in any of the PATENTS-IN-SUIT, and for each such article, system, product, component or device, state which PATENTS-IN-SUIT covers that article, system, product, component or device, its date of commercial sale (beginning and end), and the PERSONS at ENTERASYS most knowledgeable about the design, development, testing, manufacture, marketing, sale, and licensing of each such article, system, product, component or device.

## RESPONSE TO INTERROGATORY NO. 6:

Enterasys objects to this Interrogatory on grounds that it calls for information that is protected from disclosure by the attorney-client privilege and/or by the work product doctrine; that it is overly broad, unduly burdensome, vague, and ambiguous; and that it seeks information neither relevant to a claim or defense of a party nor reasonably calculated to lead to the discovery of admissible evidence. Enterasys further objects to this Interrogatory for the reasons set forth in Marc N. Henschke, Esq.'s letter to I. Neel Chatterjee, Esq. dated March 27, 2006.

Enterasys further objects to this Interrogatory on grounds that it is contrary to the Court's Amended Scheduling Order entered in this case on June 27, 2006 because, in order to answer

14