**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| _____ )  | | |
| ENTERASYS NETWORKS, INC., | ) | Civil Action No: 05-CV-11298 (DPW) |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EXTREME NETWORKS, INC. AND | ) | |
| EXTREME NETWORKS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ ) | | |

**PLAINTIFF ENTERASYS NETWORKS, INC.'S OPPOSITION TO**
**EXTREME NETWORK INC.'S MOTION TO COMPEL FURTHER ANSWERS**
**TO INTERROGATORY NOS. 1 AND 2**

<u>**TABLE OF CONTENTS**</u>

<u>**Page**</u>

I.      PRELIMINARY STATEMENT ................................................................. 1

II.     PROCEDURAL BACKGROUND.......................................................... 4

        A.      The Court's Case Scheduling Order Establishing Future Dates Certain For
                The Disclosure Of Claim Construction Charts And Invalidity Contentions .......... 4

        B.      Defendants' Previous Motion To Compel The Premature Disclosure Of
                Enterasys' Claim Construction Charts .................................................. 5

        C.      Magistrate Collings' June 26, 2006 Order Denying Defendants' Motion
                To Compel The Premature Disclosure Of Enterasys' Claim Construction
                Charts ................................................................................. 7

        D.      Enterasys' Service Of Supplemental Interrogatory Responses Disclosing
                All Of The Information Required By Magistrate Collings' June 26th Order......... 8

        E.      Extreme's Ongoing Failure To Produce Its Key Technical Documents And
                Outright Refusal To Disclose Its Invalidity Contentions........................ 9

        F.      Enterasys' Current Pursuit Of Evidence Regarding Earlier Invention Dates
                Through Third Party Discovery .................................................. 10

III.    ARGUMENT................................................................... 12

        THE COURT SHOULD DENY EXTREME'S MOTION TO COMPEL
        FURTHER ANSWERS TO INTERROGATORY NOS. 1 AND 2 IN ITS
        ENTIRETY AND DEFENDANTS SHOULD BE MONETARILY
        SANCTIONED FOR REQUIRING ENTERASYS TO RE-LITIGATE ISSUES
        ALREADY DECIDED BY MAGISTRATE COLLINGS............................. 12

        A.      Enterasys Has Already Provided A More Than Satisfactory Response To
                Interrogatory No. 1................................................................ 12

                1.      Magistrate Collings Has Previously Ruled That Defendants Are
                        Not Presently Entitled To Claim Charts Or Their Equivalent
                        Disclosing The Detailed Evidentiary Bases For Enterasys'
                        Infringement Contentions At This Premature Stage Of Discovery .......... 12

                2.      Enterasys Has Fully Disclosed The Information Required By
                        Magistrate Collings' June 26, 2006 Order And Any Argument To
                        The Contrary Is Frivolous..................................................... 13

B.   Defendant Should Be Monetarily Sanctioned For Requiring Enterasys To Re-Litigate The Issue Already Decided By Magistrate Collings As To What Responsive Information Interrogatory No. 1 Presently Requires ............... 14

C.   Enterasys Should Not Presently Be Required To Waive The Attorney-Client Privilege Protecting Its Invention Records In Responding To Interrogatory No. 2 ........................................................................................ 15

  1.   The Attorney-Client Privilege Clearly Attaches To Enterasys' Invention Records ................................................................... 16

  2.   Enterasys' Need To Rely Upon The Invention Records Is Premature In View Of Extreme's Failure To Disclose Any Credible Invalidity Contentions .............................................. 17

  3.   Enterasys' Need To Rely Upon The Invention Records Is Premature Given That Non-Privileged Evidence Of Earlier Invention Dates May Be Uncovered Through Third Party Discovery .................................................................................. 18

  4.   To The Extent That Enterasys Ultimately Needs To Rely Upon The Invention Records, It Has Already Agreed To Waive Privilege, Produce The Records, And Allow Extreme A Full Opportunity For Discovery .................................................... 18

IV.   CONCLUSION ............................................................................................ 20

# I.
## <u>PRELIMINARY STATEMENT</u>

Plaintiff Enterasys Networks, Inc. ("Enterasys") hereby submits its memorandum in opposition to the Motion To Compel Further Answers To Interrogatory Nos. 1 And 2 that Defendant Extreme Networks, Inc. ("Extreme") filed with the Court on September 22, 2006.[1]  By its present motion, Extreme seeks to:  **(i)** re-litigate an issue already heard and decided by Magistrate Collings as to what scope of information regarding its patent infringement contentions Enterasys must currently disclose (Interrogatory No. 1); and **(ii)** force Enterasys to immediately waive attorney-client privilege and disclose protected invention records[2] at a premature stage of the case when Enterasys cannot yet know whether it ever will need to rely upon such records for any purpose (Interrogatory No. 2).  For the reasons that follow, Enterasys respectfully requests that the present motion be denied in its entirety, and that Defendants be monetarily sanctioned for putting Enterasys to the time and expense of re-briefing and re-arguing what is already the established law of the case.

With respect to its Interrogatory No. 1, Extreme is once again seeking the same relief that Magistrate Collings has previously held that Defendants are *not* presently entitled to.  Indeed, in April of 2006, Foundry moved to compel on an interrogatory calling for Enterasys to immediately produce "claim charts."  As defined by Foundry's interrogatory, these "claims charts" were required to contain the detailed evidentiary bases for Enterasys' infringement contentions, including specific citations to underlying documents showing where the patent claim elements are

---

[1]  On October 2, 2006, Extreme's co-defendant, Foundry Networks, Inc. ("Foundry"), filed a "me too" notice of joinder in the present motion.  <u>See</u> (Docket Entry No. 72).  Foundry asserts that it has served "essentially the same" types of interrogatories on Enterasys as those at issue here, and that it wholesale "relies on and incorporates by reference" the arguments advanced in Extreme's moving papers.  (<u>Id.</u>).

[2]  By way of explanation, "[i]nvention records are standard forms generally used by corporations as a means for inventors to disclose to the corporation's patent attorneys that an invention has been made and to initiate patent action.  They are usually short documents containing space for such information as names of inventors, description and scope of invention, closest prior art, first date of conception and disclosure to others, dates of publication, etc." <u>In re Spaulding Sports Worldwide, Inc.</u>, 203 F.3d 800, 802 n.2 (Fed. Cir. 2000).

present in the accused products.  Notably, Extreme joined in Foundry's motion, representing to the Court that its own Interrogatory No. 1 was "essentially the same" as the interrogatory that Foundry had moved on.

But by Order dated June 26, 2006, Magistrate Collings expressly denied Defendants' requested relief, holding that the "plaintiff shall *not* be required to provide a claim chart before the deadline set by Judge Woodlock for producing such a chart" (emphasis added).[3]  As Magistrate Collings recognized, the Court had established a *date certain* during the middle of the discovery period when claim charts would be due that was designed to afford Enterasys a meaningful prior opportunity to obtain infringement evidence.  Defendants were improperly seeking to defeat the very purpose of the Scheduling Order by demanding claim charts months in advance of their due date, and at a time when Defendants had failed to produce any of the key technical documents that Enterasys would need in order to precisely detail how their accused products are infringing.

Given that the present motion is now forcing Enterasys to re-litigate the same issue already decided in its favor by Magistrate Collings, the Court should impose monetary sanctions on Defendants to compensate Enterasys for its time and expense in opposing.  Hoping to foreclose this result, Extreme tries to falsely imply that its moving papers are requesting new and different relief by carefully avoiding use of the phrase "claim charts."  But the information that Extreme is demanding about Enterasys' infringement contentions -- *viz.*, the "evidentiary details, such as citation to documents" -- is exactly what any patent law practitioner would recognize as the standard content of "claim charts," and exactly how Defendants themselves defined "claim

---

[3]  Under the Court's Amended Scheduling Order, Enterasys' claim charts are currently due to be served on December 15, 2006.

charts" in both their subject interrogatories and previous motion to compel.[4]

As to its Interrogatory No. 2, Extreme argues that Enterasys should be compelled to immediately waive the attorney-client privilege protecting its invention records based on the false premise that Enterasys is presently relying on these records as corroborating evidence for establishing earlier dates of invention than the patent application filing dates. But for at least two reasons, no need has yet arisen for Enterasys to rely on such records at this premature stage of the case. First, earlier dates of invention would only become relevant to the case if Extreme were able to mount a credible invalidity defense premised upon specific pieces of 35 U.S.C. §§ 102(a), (e), or (g) prior art that could potentially be antedated -- *i.e.*, "sworn behind." But here no such credible defense has thus far been advanced given that Extreme outright refuses to even disclose its invalidity contentions. Second, Enterasys is currently pursuing third party discovery in the hope of obtaining non-privileged information that could independently corroborate earlier invention dates and thereby obviate the need to rely upon any privileged invention records. Simply put -- with more than six months left of discovery -- Enterasys cannot yet know whether it will in fact need to rely upon these records.[5]

In any event, Extreme has neglected to inform the Court that during an August 3, 2006 meet-and-confer session, counsel for Enterasys has already expressly promised that should reliance on the invention records prove necessary in the future, Enterasys will waive the attorney-client privilege at that time, produce these records in their entirety, and permit Extreme to conduct any desired discovery relating thereto.

---

[4] Extreme also argues in passing that Enterasys has failed to comply with a purported requirement in Magistrate Collings June 26th Order to "identify the product features that it alleges infringe the patents in suit." But any such argument is frivolous. Magistrate Collings' Order actually contains no such requirement and, in any event, Enterasys has served supplemental interrogatory responses which explicitly identify the accused product features.

[5] Extreme's further unsupported argument that invention dates must be artificially "fixed" at this point in the case, and that Enterasys should be precluded from relying upon any evidence of earlier invention dates that it hereafter might uncover during discovery, is so facially frivolous as to not merit a serious response.

## II.
## PROCEDURAL BACKGROUND

A.    **The Court's Case Scheduling Order Establishing Future Dates Certain For The Disclosure Of Claim Construction Charts And Invalidity Contentions**

On November 3, 2005, the Court held an initial Rule 16(b) scheduling conference for purposes of establishing a pre-trial schedule.  The parties had submitted a Joint Statement and Discovery Plan in advance of that conference which reflected their significant difference of opinion about how the disclosure of detailed infringement and invalidity contentions should be handled in this case.  See (Exh. 1 to Hensch. Decl.).[6]  On the one hand, Enterasys proposed that these contentions should exchanged in the form of charts on *dates certain* set sufficiently far into the future that the parties would first have had the opportunity to conduct meaningful discovery (Id. at pp. 2-3).  On the other hand, Defendants argued that the parties should be permitted to serve interrogatories demanding the immediate disclosure of such contentions even at a time when no discovery had yet been undertaken.  (Id.).

The Court adopted Enterasys' approach, holding that it "want[ed] to have the claim construction chart process" for dealing with infringement and invalidity contentions.  (Hensch. Decl. at Exh. 2, p. 23).  Indeed, the Court explained that it would not "get into the specifics … of the way in which [the parties] conduct … discovery with the exception of the claim construction charts," for which it would be a "pretty good idea" to establish future *dates certain* for their disclosure.  (Id. at p. 19)  On November 18, 2005, the Court entered a Scheduling Order setting the following due dates that fell at interim points well within the discovery period:  **(i)** July 17, 2006 for Enterasys to serve its claim construction charts; **(ii)** August 4, 2006 for Defendants to serve their invalidity contention charts; and **(iii)** August 18, 2006 for Defendants to serve their

---

[6] As used herein, the term "Hensch. Decl." is a reference to the Declaration Of Marc N. Henschke In Opposition To Extreme Networks, Inc.'s Motion to Compel Answers To Interrogatory Nos. 1 And 2, filed concurrently herewith under separate cover.

4

responsive claim construction charts.  (Exh. 3 to Hensch. Decl.).[7]

**B.**    **Defendants' Previous Motion To Compel The Premature Disclosure Of Enterasys' Claim Construction Charts**

Acting in complete disregard for the Court's Scheduling Order, on April 27, 2006, Foundry filed a motion to compel Enterasys to further respond to its Interrogatory No. 2 by *immediately* producing claim construction charts several months in advance of their due date.  See (Docket Entry No. 36).[8]  As defined by Foundry's Interrogatory No. 2, these "claim charts" were required to disclose the detailed evidentiary bases for Enterasys' infringement contentions, including "identify[ing] specifically where each element of each asserted claim is found within each FOUNDRY PRODUCT" through citation to documentary or other "supporting evidence." (Exh. 5 to Hensch. Decl. at p. 4).

Extreme filed a notice of joinder in Foundry's motion to compel, stating that its own Interrogatory No. 1 was "essentially the same" as Foundry's contested Interrogatory No. 2, and therefore that it was adopting all of the "arguments made by Foundry in its [motion] papers."  See (Docket Entry No. 50, p. 1).  Indeed, just like Foundry's Interrogatory No. 2, Extreme's Interrogatory No. 1 called for Enterasys to immediately produce "claim charts" required to "identify[] specifically where each element or limitation of each asserted claim is found within each … [Extreme] product" by providing detailed citations to "each document … upon which Enterasys may rely in support of its infringement contentions."  (Exh. 6 to Hensch. Decl. at pp. 8-9).

---

[7]  On June 27, 2006, the Court subsequently entered the currently governing Amended Scheduling Order that revised these due dates to the following:  **(i)** December 15, 2006 for Enterasys to serve its claim construction charts; **(ii)** January 16, 2007 for Defendants to serve their invalidity contention charts; and **(iii)** January 30, 2007 for Defendants to serve their responsive claim construction charts.  (Exh. 4 to Hensch. Decl.).

[8]  Prior to the filing of Foundry's motion to compel, Enterasys had already served interrogatory responses on both Defendants that provided substantial information about its infringement contentions.  Indeed, these responses specifically identified Enterasys' core asserted patent claims, Defendants' accused products and product features, and the various statutory bases supporting Enterasys' infringement theories.  See (Docket Entry No. 37, pp. 6-9).

Enterasys opposed Foundry's motion to compel on three principal and related grounds. See (Docket Entry No. 37). First, Enterasys argued that Defendants' demand for the immediate production of claim charts disclosing the detailed evidentiary bases for its infringement contentions was premature and contrary to the Court's Scheduling Order. (Id.). Indeed, that Scheduling Order had established future dates certain for the disclosure of claim charts that would occur at interim points in the discovery period after the parties had been given a meaningful opportunity to pursue discovery. Second, at the time of their motion to compel, neither Defendant had yet produced any of their key engineering or technical documents showing precisely how their accused products operated -- e.g., hardware and software specifications, schematics, chipset specifications, and architectural specifications. (Id.).[9] Accordingly, Defendants were purporting to require that Enterasys disclose the "detailed evidentiary bases" for its infringement contentions despite having produced no relevant infringement evidence to Enterasys during discovery. Third, given that Defendants had produced no useful documents, the claim charts that they were seeking could necessarily contain nothing more than the pre-suit infringement analysis undertaken by Enterasys' attorneys which clearly is protected from disclosure as privileged work product. (Id.).

Notably, Foundry's motion to compel also sought a further response to its Interrogatory No. 3 which called for all information relating to Enterasys' pre-suit infringement investigations. See (Docket Entry No. 36). In opposition, Enterasys argued that it had already sufficiently responded to Interrogatory No. 3 by identifying when these investigations took place, who performed them, and what types of activities they entailed. See (Docket Entry No. 37). Moreover, Enterasys also noted that it had made an extraordinary 11,000-page document

---

[9] In fact, Foundry was outright refusing to produce any of its key engineering or technical documents which ultimately necessitated Enterasys having to file a motion to compel. See (Docket Entry No. 45). For its part, Extreme was then promising that a production of its key engineering and technical documents would soon be forthcoming. However, even now -- some six months later -- Extreme still has yet to produce a very significant percentage of these promised materials. See, infra, p.9.

production to Foundry consisting of the materials that it had considered and relied upon as part of

its pre-filing investigations. (Id.).[10]  Accordingly, it was clear that the only additional information

that Enterasys could possibly disclose would be the details of its pre-suit legal analysis of

infringement which constituted protected attorney work product. (Id.).

**C.    Magistrate Collings' June 26, 2006 Order Denying Defendants' Motion To Compel
The Premature Disclosure Of Enterasys' Claim Construction Charts**

After considering the parties' briefing and hearing oral argument, Magistrate Collings

issued an Order on June 26, 2006 denying Foundry's motion to compel insofar as it was seeking

the premature disclosure of claim charts defined to include the detailed evidentiary bases for

Enterasys' infringement contentions. (Exh. 7 to Hensch. Decl.).  Rejecting the arguments

advanced by Defendants, his Order expressly held that "[t]he plaintiff shall *not* be required to

provide a claim chart before the deadline set by Judge Woodlock for producing such a chart." (Id.

at p. 2) (emphasis added).

Instead, Magistrate Collings ruled that Enterasys' response to Foundry's Interrogatory No.

1 would be deemed sufficiently complete were it merely to provide certain basic information

more appropriate to the early stages of discovery -- *viz.*, "the defendants are entitled to know at

this time which of their products (or class of products) are alleged to infringe what claims held by

plaintiff and a brief statement as to the reasons why the products are alleged to infringe."

(Hensch. Decl. at Exh. 7, p. 2).  In particular, his Order required that Enterasys disclose the

following:  **(1)** "a complete list of patents which it claims the defendants infringed and the specific

claims of each of the patents defendants are alleged to have infringed;" **(2)** an identification of

"the products which Enterasys asserts infringe the patents;" **(3)** an identification of "what products

---

[10]  Although Extreme declined to join in this portion of Foundry's motion to compel, it had previously served an
Interrogatory No. 9 calling for the same types of information placed at issue by Foundry's contested Interrogatory
No. 3.  See (Exh. 6 to Hensch. Decl. at p. 12).  Enterasys provided the same interrogatory responses to Extreme as it
had to Foundry, and also made an extraordinary 31,000-page document production to Extreme consisting of the
materials that it had considered and relied upon as part of its pre-filing investigations. (Hensch. Decl. at ¶ 2).

are alleged to infringe which specific claims of which patents;" and **(4)** "a brief statement as to the reasons why the plaintiff asserts that each product infringes a certain claim or claims."  (Id. at pp. 2-3).

Magistrate Collings' Order also denied in its entirety Foundry's request that Enterasys be compelled to provide further information in response to Interrogatory No. 3 that called for every detail of Enterasys' pre-suit infringement investigations, including its attorney work product infringement analysis.  (Hensch. Decl. at Exh. 7, p. 3).

**D.      Enterasys' Service Of Supplemental Interrogatory Responses Disclosing All Of The Information Required By Magistrate Collings' June 26th Order**

On July 17, 2006, Enterasys served supplemental interrogatory responses on both Extreme and Foundry attaching charts that provided all of the information (and more) required by Magistrate Collings' June 26th Order.  See (Exhs. 8 & 9 to Hensch. Decl.).  Indeed, these charts separately identify each of the six patents-in-suit that Enterasys is asserting.  (Id.).  Moreover, in a column entitled "CLAIM," these charts further identify which specific claims of which patents are being asserted.  (Id.).  An additional column entitled "INFRINGING PRODUCTS" identifies exactly which of Defendants' products are being accused of infringement on a claim-specific basis.  (Id.).  Finally, in a column entitled "BASIS FOR INFRINGEMENT," Enterasys provides a brief explanation as to why it is alleging that each of the accused products infringe each of the specified patent claims.  (Id.).

If anything, Enterasys' supplemental interrogatory responses go well beyond what was required by Magistrate Collings' Order because they also specifically identify on a claim-by-claim basis the *accused product features* contained within the accused products.  Defendants' accused products are network switches and routers that contain literally hundreds of different features and components.  But here, Enterasys has greatly narrowed the scope of this case by disclosing exactly which features are the focus of its infringement claims.  Indeed, by way of

limited example, for Claim 1 of each patent-in-suit Enterasys has specified the following infringing features: **(i)** '205 patent ("multiple protocol routing software algorithm features"); **(ii)** '173 patent ("Broadcom 5600 series chipset"); **(iii)** '665 patent ("port based default VLAN features"); **(iv)** '995 patent ("IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features"); **(v)** '022 patent ("IGMP snooping features"); and **(vi)** '236 patent ("port-based VLAN features"). <u>See</u> (Hensch. Decl. at Exh. 8, pp. 1, 8, 25, 27, 38, 45).

### E.    <u>Extreme's Ongoing Failure To Produce Its Key Technical Documents And Outright Refusal To Disclose Its Invalidity Contentions</u>

At the time of Foundry's previous motion to compel filed in April of 2006, Extreme had produced none of its key engineering or technical documents but was promising that they were imminently forthcoming. <u>See</u>, <u>e.g.</u>, (Exh. 10 to Hensch. Decl.). Subsequently, counsel for Extreme provided written representations that "Extreme expects to complete its production [of documents to Enterasys by] … not later than mid-July." (<u>Id.</u> at Exh. 11). As of the October 13, 2006 filing of this opposition brief, however, Extreme still has not produced a very significant percentage of its key engineering and technical documents. For example, Extreme has failed to provide many of the core engineering documents that would show precisely how its accused products operate such as its confidential hardware specifications. (<u>Id.</u> at ¶ 3). These are exactly the materials that Enterasys will require in order to detail the evidentiary bases for its infringement contentions. Enterasys has sent numerous follow-up letters to Extreme's counsel to no avail. <u>See</u>, <u>e.g.</u>, (<u>Id.</u> at Exhs. 12 and 13).

Extreme also has outright refused to disclose both the legal theories and the detailed evidentiary bases underlying its invalidity contentions. Indeed, on May 19, 2006, Enterasys served its Interrogatory No. 11 calling upon Extreme to identify which statutory invalidity provisions it was relying upon, and to specify through detailed citations to underlying documents the reasons why any asserted prior art references purportedly invalidate the claims of the patents-

in-suit.  In interrogatory responses served on June 19, 2006, Extreme failed to provide these requested types of information.  (Exh. 14 to Hensch. Decl.).  Subsequently, counsel for Extreme clarified that Extreme was refusing to provide such information by arguing that it was "premature at this stage [of the case] per the court's scheduling order."  (Id. at Exh. 15, p. 2).  According to Extreme, disclosure of its infringement contentions is "not due until [the] January 16, 2007 *date certain* established by the Court.  (Id.).

F.    **Enterasys' Current Pursuit Of Evidence Regarding Earlier Invention Dates Through Third Party Discovery**

Extreme's Interrogatory No. 2 calls upon Enterasys to disclose all facts pertaining to inventive activities for the patents-in-suit -- *i.e.*, activities such as the inventors' first conception or reduction to practice of their claimed inventions.  See (Smith-Lee Aff. at Exh. E, p. 7).[11]  On July 17, 2006, Enterasys served interrogatory responses disclosing all information presently known on this topic, and indicating that "further information or documentation may be obtainable through third party discovery."  (Id. at pp. 7-10).  Notably, four of the six patents-in-suit ('205, '173, '236, '665) originated more than a decade ago at Digital Equipment Corporation ("DEC"), a company which has long since been dissolved.  (Hensch. Decl. at ¶ 4).[12]  Relevant DEC records from that time frame are not believed to be in Enterasys' possession, but rather are likely in the possession of certain third parties.  (Id.).  For example, these records may be in the possession of DNPG, LLC ("DNPG"), a company that acquired DEC's former networking business division in 2000.  (Id.).  Alternatively, such records may be in the possession of Hewlett-Packard Company

---

[11]  As used herein, the term "Smith-Lee Aff." is a reference to the Affidavit Of Emily E. Smith-Lee In Support Of Extreme Networks, Inc.'s Motion To Compel Answers To Interrogatory Nos. 1 And 2 From Enterasys Networks, Inc., (Docket Entry No. 66), filed with the Court on September 22, 2006.

[12]  The two remaining patents-in-suit ('022 and '995) originated at Standard Microsystems Corp. and Cabletron Systems, Inc. respectively (Hensch. Decl. at ¶ 4).  While it is possible that records reflecting pertinent inventive activities for these two patents may be in Enterasys' possession, they have thus far not been located.  (Id.). Enterasys' search for such records is ongoing, and to the extent that they are found its interrogatory responses will promptly be supplemented in accordance with Rule 26(e).

("H-P"), which purchased most of DEC's remaining assets in 1998. Enterasys has recently served third party subpoenas on both DNPG and H-P in an effort to obtain evidence regarding pertinent inventive activities relating to the DEC-originated patents-in-suit. (Exhs. 16 & 17 to Hensch. Decl.).[13]

As a result of acquiring certain intellectual property assets from DEC, Enterasys *has* been able to locate so-called invention records for three of the four DEC-originated patents-in-suit ('205, '173, '236). (Hensch. Decl. at ¶ 5). These invention records consist of patent disclosure forms and related documents prepared by the named inventors that describe the scope of their claimed inventions. (Id.). As is clear from their face, they were submitted to DEC's corporate legal department for purposes of obtaining legal advice as to whether these claimed inventions were in fact patentable, and to facilitate any efforts that DEC might choose to undertake in terms of preparing and filing patent applications. (Id.). To the extent that these invention records identify potential conception and/or reduction to practice dates for the claimed inventions, Enterasys has already disclosed these dates to Extreme in its response to Extreme's Interrogatory No. 2. See (Smith-Lee Aff. at Exh. E, pp. 7-10).

During a telephonic meet-and-confer between Enterasys and Extreme conducted on August 3, 2006, counsel for Enterasys expressly confirmed that Enterasys is not presently relying upon the DEC invention records as corroborating evidence to establish any conception or reduction to practice dates for the '205, '173, or '236 patents. (Hensch. Decl. at ¶ 6). As counsel for Enterasys explained, for at least two reasons the need to rely on such records has not yet arisen at this early stage of the case. (Id.). First, earlier invention dates would become relevant only in circumstances where Extreme is able to assert a credible invalidity defense premised on 35 U.S.C.

---

[13] Potentially, the individual inventors named on the DEC-related patents may also be in possession of relevant information. It is expected that Defendants will depose these inventors during the course of discovery in this case.

§§ 102(a), (e), or (g) prior art that post-dates these earlier invention dates but pre-dates the patent application filing dates. (Id.). Here, however, Extreme has outright refused to even disclose its invalidity contentions much less to advance any credible defense. Second, Enterasys is presently pursuing third party discovery to obtain non-privileged information that could independently corroborate these earlier invention dates and obviate the need for any reliance on the DEC invention records. (Id.). Moreover, counsel for Enterasys expressly promised that if in the future it proved necessary to rely upon the invention records, Enterasys would waive any attorney-client privilege at that time, produce these records in their entirety, and permit Extreme to pursue any desired discovery relating thereto. (Id.).

### III.
### ARGUMENT

**THE COURT SHOULD DENY EXTREME'S MOTION TO COMPEL FURTHER ANSWERS TO INTERROGATORY NOS. 1 AND 2 IN ITS ENTIRETY AND DEFENDANTS SHOULD BE MONETARILY SANCTIONED FOR REQUIRING ENTERASYS TO RE-LITIGATE ISSUES ALREADY DECIDED BY MAGISTRATE COLLINGS**

**A.    Enterasys Has Already Provided A More Than Satisfactory Response To Interrogatory No. 1**

**1.    Magistrate Collings Has Previously Ruled That Defendants Are Not Presently Entitled To Claim Charts Or Their Equivalent Disclosing The Detailed Evidentiary Bases For Enterasys' Infringement Contentions At This Premature Stage Of Discovery**

By its present motion, Extreme argues that Enterasys is required to provide in response to Interrogatory No. 1 the full "evidentiary details" of its infringement contentions through "citation to documents" at this premature stage of discovery. See (Extreme Mem., p. 8).[14] But Extreme has already unsuccessfully moved to compel on this same interrogatory requesting this same relief. (See, supra, pp. 5-6). Indeed, in April of 2006, Extreme sought to compel the immediate

---

[14]  As used herein, the term "Extreme Mem." is a reference to Extreme Networks, Inc.'s Memorandum In Support Of Its Motion To Compel Answers To Interrogatory Nos. 1 And 2 From Enterasys Networks, Inc. (Docket Entry No. 65), filed with the Court on September 22, 2006.

production of "claim charts" pursuant to Interrogatory No. 1 which it defined as requiring detailed citations to "each document … upon which Enterasys may rely in support of its infringement contentions." (Id.). Magistrate Collings expressly denied this requested relief, holding that "[t]he plaintiff shall not be required to provide a claim chart before the deadline set by Judge Woodlock for producing such a chart" -- i.e., December 15, 2006. (See, supra, p. 7).

Magistrate Collings' Order makes clear that Enterasys' present obligation under Interrogatory No. 1 is merely to provide: **(1)** "a complete list of patents which it claims the defendants infringed and the specific claims of each of the patents defendants are alleged to have infringed;" **(2)** an identification of "the products which Enterasys asserts infringe the patents;" **(3)** an identification of "what products are alleged to infringe which specific claims of which patents;" and **(4)** "a brief statement as to the reasons why the plaintiff asserts that each product infringes a certain claim or claims." (See, supra, pp. 7-8). By contrast, the Order declined to impose any requirement that Enterasys delineate where each patent claim element can be found within each accused product through detailed citation to underlying documents. Indeed, as was true when Magistrate Collings issued his Order and is still true today, it would not even be possible for Enterasys to meaningfully disclose such detailed evidentiary support at a premature stage of discovery when Extreme has failed to produce its key engineering and technical documents such as its hardware specifications. (Id. at pp. 6-7).

### 2. Enterasys Has Fully Disclosed The Information Required By Magistrate Collings' June 26, 2006 Order And Any Argument To The Contrary Is Frivolous

In its moving papers, Extreme seeks to give the impression that Enterasys has somehow failed to provide the information required by Magistrate Collings' Order. (Extreme Mem., pp. 4-6). But as even a cursory examination of the charts attached to Enterasys' supplemental interrogatory responses will demonstrate, Enterasys has disclosed all of the information called for

by Magistrate Collings and more. (See, supra, pp. 8-9). Indeed, Column 1 ("CLAIM") of these charts lists the patent claims allegedly infringed by the Defendants. (Id.). Column 2 ("INFRINGING PRODUCTS") identifies the specific product or families of products Enterasys asserts infringe the particular patent claim. (Id.). Column 3 ("BASIS FOR INFRINGMENT") details the reasons why Enterasys asserts that each product infringes the particular patent claims listed in Column 1. (Id.).

Extreme's strained efforts to articulate how Enterasys has supposedly violated Magistrate Collings' Order demonstrate the frivolous nature of its arguments. For example, Extreme contends that Enterasys fails to identify the "product features that it alleges infringe the patents in suit," and that the "Basis for Infringement column of Enterasys' [charts merely provide only a] generic description of the patented network itself." (Extreme Mem., pp. 2, 6). As an initial matter, it should be noted that Magistrate Collings' Order does not require any identification or evidence of accused product features. Nevertheless, Enterasys has clearly and explicitly identified the accused product features with respect to every asserted patent claim. (See, supra, pp. 8-9). Indeed, even the example provided in Extreme's own moving papers readily prove this point. (Extreme Mem., p. 5). Of the hundreds of different components and features contained in Extreme's accused product, Enterasys specifies the "Broadcom 5600 series chipsets" as the infringing accused feature. (Id.).[15]

## B.    Defendant Should Be Monetarily Sanctioned For Requiring Enterasys To Re-Litigate The Issue Already Decided By Magistrate Collings As To What Responsive Information Interrogatory No. 1 Presently Requires

Given that the Defendants have forced Enterasys to unnecessarily re-litigate issues

---

[15]  At times in its moving papers, Extreme appears to suggest that Enterasys might somehow be required to further respond to Interrogatory No. 1 by providing additional details concerning the pre-suit infringement investigations undertaken by its attorneys. See, e.g., (Extreme Mem., p. 9). But as detailed above, Magistrate Collings has already expressly ruled that Defendants are entitled to *no* further information concerning Enterasys' pre-suit investigations beyond the extensive facts that Enterasys has already disclosed. (See, supra, p. 8).

14

previously addressed and decided by Magistrate Collings, the Court should impose monetary sanctions on the Defendants to compensate Enterasys for the time and expense required to oppose this Motion insofar as it relates to Extreme's Interrogatory No. 1 (and Foundry's Interrogatory No. 2). No matter how the Defendants attempt to frame their request for "evidentiary details" of Enterasys' infringement contentions, including "citation to documents," Defendants are seeking exactly the same information that they previously called "claim charts" when they unsuccessfully moved to compel the first time back in April.

**C.**    **Enterasys Should Not Presently Be Required To Waive The Attorney-Client Privilege Protecting Its Invention Records In Responding To Interrogatory No. 2**

Extreme wrongly contends that its invalidity contentions cannot be formulated until Enterasys: (1) commits immediately to conception and reduction to practice dates for all patents-in-suit; and (2) turns over privileged invention records currently within its possession. With respect to forcing Enterasys to immediately commit to conception and reduction to practice dates, such a rash request should be rejected because discovery is ongoing and non-privileged evidence may be found that can establish earlier invention dates. Enterasys should not be precluded from using evidence obtained through discovery that establish conception and reduction to practice dates, especially where, due to the history of the patents-in-suit, relevant documents are likely within the possession of third parties.

With respect to the invention records currently within Enterasys' possession, these records are protected by attorney-client privilege, and have yet to be relied upon by Enterasys to support any invention dates. Indeed, until Extreme puts forth credible invalidity contentions, any request to waive privilege is presumptively premature. Should Extreme eventually disclose a credible invalidity defense, only then could Enterasys analyze Extreme's positions to determine whether it is necessary to waive privilege and rely upon the invention records to substantiate earlier invention dates.

1.    **The Attorney-Client Privilege Clearly Attaches To Enterasys' Invention Records**

The Federal Circuit has expressly held that invention records like those at issue here constitute privileged communications.  In <u>Spaulding</u>, the plaintiff patentee had submitted the invention records to both the corporate patent committee and corporate legal department for the purpose of obtaining legal advice before filing a patent application.  203 F.3d at 805.  The defendant infringer sought to obtain the invention records by alleging that: (1) irrespective of the fact that the patentee gave the records to the legal department, no proof existed to establish that patent committee acted as a lawyer as opposed to making a business decision; and (2) even where the patentee gave the invention records to the corporate legal department, the sections of the invention records that list technical information or prior art must be disclosed because such information is not needed for legal advice.  <u>Id.</u>  The patentee countered that the invention records in question, although containing technical information, should be completely protected by attorney-client privilege because the patentee provided the records to an attorney for the purpose of securing legal advice.

The Federal Circuit agreed with the patentee, holding that invention records are protected whenever an attorney obtains the records "for the purpose of securing primarily legal opinion, or legal services, or assistance in a legal proceeding… ." <u>Id.</u> (internal citations omitted).  Such protection encompasses all technical information included within invention records, including statements referring to prior art.  <u>Id.</u> at 806 (stating that the court "does not consider that it is necessary to dissect the documents to separately evaluate each of its components.  It is enough that the overall tenor of the document indicates that it is a request for legal advice or services.").  Moreover, the court noted that an expressed call for legal assistance is not required so long as a court can find an implied request. <u>Id.</u>

Here, the Court should find that the invention records currently in Enterasys' possession are protected by attorney-client privilege. As the Henschke Declaration attests, the named inventors submitted invention records, which include patent disclosure forms and related documents, to DEC's corporate legal department for purposes of obtaining legal advice, and to facilitate any efforts that DEC might undertake in terms of preparing and filing patent applications. (See, supra, pp. 10-11). Accordingly, such records mirror those records the Spaulding Court held to be privileged communication, and therefore should be protected from disclosure.

### 2. Enterasys' Need To Rely Upon The Invention Records Is Premature In View Of Extreme's Failure To Disclose Any Credible Invalidity Contentions

At this stage of the litigation, it is unnecessary for Enterasys to rely upon the invention records. Extreme has yet to disclose its invalidity contentions, and refuses to reveal such information until January 2007. (See, supra, pp. 9-10). A patentee's need to rely upon earlier invention dates would only become relevant where an alleged infringer mounts credible invalidity contentions based on a particular statutory species of prior art that pre-dates the patent application filing dates but post-dates the conception and reduction to practice dates. (Id. at p. 15). But because Extreme has never even presented Enterasys with its invalidity contentions, Enterasys currently has no need or ability to assess whether it must rely upon the invention records to support an earlier invention date.[16]

---

[16] For the first time in its moving papers, Extreme identifies a lone reference -- U.S. Patent 5,444,702 -- as prior art to the '236 patent-in-suit that could potentially be "sworn behind" if Enterasys were able to successfully establish earlier invention dates. (Extreme Mem., p. 10). But Extreme has not, and does not, disclose what its invalidity theories or contentions are with respect to this prior art reference, leaving Enterasys with no way to assess whether it lends support to a credible invalidity defense. Ironically, while moving to compel Enterasys to produce the equivalent of claim charts before they are due under the Court's Scheduling Order, Extreme is simultaneously refusing to disclose its own invalidity contentions on grounds that they are not yet due pursuant to this same Order. (See, supra, pp. 9-10).

3. **Enterasys' Need To Rely Upon The Invention Records Is Premature Given That Non-Privileged Evidence Of Earlier Invention Dates May Be Uncovered Through Third Party Discovery**

Extreme argues that Enterasys is ostensibly relying on the invention records for the '205, '173, and '236 patents to establish earlier invention dates, and that Enterasys is therefore using these records as a "sword" and not just as a protective "shield." (Extreme Mem., p. 3). But Enterasys has never claimed that it is currently relying upon the records to establish invention dates earlier than the patent application filing date. To the contrary, Enterasys expressly informed Extreme during a meet-and-confer that informing Extreme of potential conception and reduction to practice dates does not equate to reliance on the records, and that any future reliance is dependant in part upon whether Enterasys can obtain through third party subpoenas relevant non-privileged documents pertaining to earlier invention dates. (See, supra, pp. 10-12). Should such records be obtained, it would preclude all need to rely upon privileged material. To date, Enterasys has served subpoenas to two companies believed to possess such records, and may well serve additional subpoenas to the named inventors.[17] (Id. at p. 11).

4. **To The Extent That Enterasys Ultimately Needs To Rely Upon The Invention Records, It Has Already Agreed To Waive Privilege, Produce The Records, And Allow Extreme A Full Opportunity For Discovery**

In its moving papers, Extreme fails to inform the Court of the August 3, 2006 meet-and-confer where Enterasys clarified its position on the invention records. (See, supra, pp. 11-12). During this meeting, Enterasys unequivocally told Extreme that, for the reasons explained in the prior sections of this memorandum, it is premature for Enterasys to waive privilege and rely upon the invention records. (Id.). Indeed, Enterasys noted that it is to early to even evaluate whether such a waiver is necessary. (Id.). Enterasys went on to express not only its willingness

---

[17] With respect to the '665, '995, '022 patents, discovery is currently ongoing within and outside of Enterasys to find possible invention records.

to waive privilege with respect to the invention records should the future need arise to rely upon the documents, but also its acquiescence to all reasonable discovery that Extreme believes is necessary based upon information found within the invention records. (Id.).

Thus, before bringing this motion, Extreme knew that Enterasys was not relying upon the conception and reduction to practice dates stated within the invention records to establish the priority date of any invention prior to the filing application date. Extreme also knew that Enterasys had sent out third party subpoenas in search of documents that would obviate the need for any disclosure of privileged information. Finally, Extreme was told specifically that Enterasys would make the invention records available to Extreme if Enterasys ever decided to rely upon the records to establish priority dates before the filing application date. There can be little doubt that Extreme's "need" for the invention records is premature at best, and possibly will prove to be completely unnecessary.

In the meantime, Extreme will not be put to any additional work in preparing its invalidity defense. As with every defendant in the history of patent infringement litigation, even were Enterasys to now disclose its invention records and declare its reliance on the earlier invention dates that they purport to contain, Extreme would doubtless challenge the legitimacy of these dates and continue to assert all of the same prior art references anyway. Enterasys would give serious consideration to immediately waiving the attorney-client privilege attaching to its invention records if Extreme were willing to stipulate that it will waive any right to rely on prior art references that post-date the earlier invention dates contained therein.

## IV.
## CONCLUSION

For the foregoing reasons, Enterasys respectfully requests that the Court deny Extreme's

motion to compel further answers to its Interrogatory Nos. 1 and 2 in its entirety, and to impose

monetary sanctions on Defendants sufficient to compensate Enterasys for its time and expense in

being required to re-litigate issues already decided by Magistrate Collings relative to Interrogatory

No. 1.


Dated:  October 13, 2006                   Respectfully submitted,


                                           ENTERASYS NETWORKS, INC.

                                           By its attorneys,

                                            _/s/ Marc N. Henschke_____
                                           Christopher P. Sullivan, Esq. (BBO No. 485120)
                                           Marc N. Henschke, Esq. (BBO No. 636146)
                                           Alan E. McKenna (BBO No. 644556)
                                           William J. Rocha (BBO No. 657924)
                                           Robins, Kaplan, Miller & Ciresi L.L.P.
                                           800 Boylston Street, 25th Floor
                                           Boston, MA 02199
                                           Tel. (617) 267-2300

Of Counsel:

A. James Anderson, Esq. *(pro hac vice)*
Marla R. Butler, Esq. *(pro hac vice)*
Robins, Kaplan, Miller & Ciresi L.L.P.
2600 One Atlanta Plaza
Atlanta, GA 30326-1386
Tel. (404) 760-4300

Robert A. Auchter, Esq. *(pro hac vice)*
Robins, Kaplan, Miller & Ciresi L.L.P.
1801 K Street, N.W.
Washington, DC  20006
Tel. (202) 775-0725

35034704.1

## <u>CERTIFICATE OF SERVICE</u>

       I, Marc N. Henschke, hereby certify that on October 13, 2006, I caused the attached Plaintiff Enterasys Networks, Inc.'s Opposition To Extreme Networks, Inc.'s Motion To Compel Answers To Interrogatory Nos. 1 And 2 to be served electronically pursuant to the Court's CM/ECF electronic filing system upon Defendants' respective counsel of record as indicated by asterisks below:

**Counsel for Defendant Extreme Networks, Inc.:**

       William L. Anthony, Jr., Esq.*
       I. Neel Chatterjee, Esq.*
       Michael F. Heafey, Esq.
       Sanjeet K. Dutta, Esq.
       Orrick, Herrington & Sutcliffe LLP
       1000 Marsh Road
       Menlo Park, CA  94025

       Steven M. Bauer, Esq.*
       Jeremy P. Oczek, Esq.*
       Proskauer Rose LLP
       One International Place
       Boston, MA 02110-2600

**Counsel for Defendant Extreme Networks, Inc.:**

       Terrence P. McMahon, Esq.*
       Vera M. Elson, Esq.*
       David H. Dolkas, Esq.
       McDermott, Will & Emery LLP
       3150 Porter Drive
       Palo Alto, CA  94303-1212

       Peter L. Resnik, Esq.*
       McDermott, Will & Emery LLP
       28 State Street
       Boston, MA  02109-1775

       Christopher D. Bright, Esq.
       McDermott, Will & Emery LLP
       18191 Von Karman Avenue, Suite 400
       Irvine, CA  92612-7107

Dated:  October 13, 2006            __/s/ Marc N. Henschke_____
                                 Marc N. Henschke