UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

_____
                                                )
ENTERASYS NETWORKS, INC.,          )          Civil Action No: 05-CV-11298 (DPW)
                                                )
                 Plaintiff,                     )
                                                )
v.                                              )
                                                )
FOUNDRY NETWORKS, INC. AND       )
EXTREME NETWORKS, INC.,              )
                                                )
                 Defendants.                  )
_____)

DECLARATION OF MARC N. HENSCHKE IN OPPOSITION TO DEFENDANT
EXTREME NETWORKS, INC.'S MOTION TO COMPEL ANSWERS TO
INTERROGATORY NOS. 1 AND 2

I, MARC N. HENSCHKE, declare as follows:

1.       I am an attorney with the law firm of Robins, Kaplan, Miller & Ciresi L.L.P.,
counsel of record for the named Plaintiff Enterasys Networks, Inc. ("Enterasys") in the above-
referenced action. I submit this Declaration in opposition to Defendant Extreme Networks,
Inc.'s ("Extreme's") Motion To Compel Answers To Interrogatories Nos. 1 And 2 From
Enterasys Networks, Inc. (Docket Entry No. 64). I have personal knowledge of the facts stated
herein and, if sworn as a witness, I could and would testify competently thereto.

2.       Extreme had previously served an Interrogatory No. 9 calling for the same types
of information placed at issue by Foundry's contested Interrogatory No. 3. Enterasys provided
the same interrogatory responses to Extreme as it had to Foundry, and also made a thirty-three
thousand (31,000) page document production to Extreme consisting of the materials that it had
considered and relied upon as part of its pre-filing investigations.

3.      Despite numerous assurances from Extreme regarding its intention to produce

relevant technical documents for Extreme products accused of infringing the patents-in-suit,

Extreme has not provided many of the core engineering documents (such as confidential

hardware specifications) that show how the accused products operate.

4.      The invention and methods disclosed in the '205, '173, '236, and '665 patents

were originally created at Digital Equipment Corporation ("DEC") in the late 1980s to mid-

1990s.  DEC ceased to exist as a corporation in or around 1998.  Relevant DEC records from that

time frame are not believed to be in Enterasys' possession, but rather are likely in the possession

of certain third parties.  These records may be in the possession of DNPG, LLC ("DNPG"), a

company that acquired DEC's former networking business division in 2000.  Alternatively, such

records may be in the possession of Hewlett-Packard Company ("H-P"), which purchased most

of DEC's remaining assets in 1998.  The two remaining patents-in-suit ('022 and '995)

originated at Standard Microsystems Corp. and Cabletron Systems, Inc., respectively.  Thus far,

these records have not been located.  However, the search for such records is ongoing.

5.      As a result of acquiring certain intellectual property assets from DEC, Enterasys

has been able to locate portions of the invention records for three of the four DEC-originated

patents-in-suit ('205, '173, '236).  These invention records consist of patent disclosure forms and

related documents prepared by the named inventors that describe the scope of their claimed

inventions.  The documents were submitted to DEC's corporate legal department for purposes of

obtaining legal advice as to whether these claimed inventions were in fact patentable, and to

facilitate any efforts that DEC might undertake in terms of preparing and filing patent

applications.

6.      During a telephonic meet-and-confer between Enterasys and Extreme conducted on August 3, 2006, I expressly confirmed that, for multiple reasons, Enterasys is not presently relying upon the DEC invention records as corroborating evidence to establish any conception or reduction to practice dates for the '205, '173, or '236 patents.  I informed Extreme's counsel that earlier invention dates would become important only in circumstances where Extreme is able to assert a credible invalidity defense premised on 35 U.S.C. §§ 102(a), (e), or (g) prior art that post-dates these earlier invention dates but pre-dates the patent application filing dates.  I also informed Extreme's counsel that Enterasys is presently pursuing third party discovery to obtain non-privileged information that could independently corroborate these earlier invention dates and obviate the need for any reliance on the DEC invention records.  Finally, I told Extreme's counsel that Enterasys expressly promised that if in the future it proved necessary to rely upon the invention records, Enterasys would waive any attorney-client privilege at that time, produce these records in their entirety, and permit Extreme to pursue any desired discovery relating thereto.

7.      Attached hereto as Exhibit 1 is a true and correct copy of Plaintiff Enterasys Networks, Inc.'s Joint Statement And Discovery Plan served October 27, 2005.

8.      Attached hereto as Exhibit 2 is a true and correct copy of the transcript of the November 3, 2005 Hearing on discovery issues.

9.      Attached hereto as Exhibit 3 is a true and correct copy of Judge Woodlock's November 18, 2005 Scheduling Order (Docket Entry No. 31).

10.      Attached hereto as Exhibit 4 is a true and correct copy of Judge Woodlock's June 27, 2006 Amended Scheduling Order (Docket Entry No. 60).

11.     Attached hereto as Exhibit 5 is a true and correct copy of Foundry Networks, Inc.'s First Set Of Interrogatories (Nos. 1-11) To Plaintiff Enterasys Networks, Inc. served March 14, 2006.

12.     Attached hereto as Exhibit 6 is a true and correct copy of Extreme Networks, Inc.'s First Set Of Interrogatories To Enterasys Networks, Inc. served March 6, 2006.

13.     Attached hereto as Exhibit 7 is a true and correct copy of Magistrate Judge Collings' June 26, 2006 Order On Foundry Networks, Inc.'s Motion To Compel Answers To Interrogatories Nos. 2 And 3 From Enterasys Networks, Inc. (#36) (Docket Entry No. 58).

14.     Attached hereto as Exhibit 8 is a true and correct copy of the attachments to Plaintiff Enterasys Networks, Inc.'s First Supplemental Responses And Objections To Defendant Extreme Networks, Inc.'s First Set Of Interrogatories served July 17, 2006.

15.     Attached hereto as Exhibit 9 is a true and correct copy of the attachments to Plaintiff Enterasys Networks, Inc.'s First Supplemental Responses And Objections To Defendant Foundry Networks, Inc.'s First Set Of Interrogatories served July 17, 2006.

16.     Attached hereto as Exhibit 10 is a true and correct copy of Firasat M. Ali letter to Marc N. Henschke dated May 31, 2006.

17.     Attached hereto as Exhibit 11 is a true and correct copy of David H. Dolkas letter to Marc N. Henschke dated June 12, 2006.

18.     Attached hereto as Exhibit 12 is a true and correct copy of Marc N. Henschke letter to David H. Dolkas dated July 17, 2006.

19.     Attached hereto as Exhibit 13 is a true and correct copy of Marc N. Henschke letter to Firasat M. Ali dated October 10, 2006.

20.     Attached hereto as Exhibit 14 is a true and correct copy of Defendant Extreme

Networks, Inc.'s Responses To Plaintiff Enterasys Networks, Inc.'s First Set Of Interrogatories

served June 19, 2006 (excluding the attachments served therewith).

21.     Attached hereto as Exhibit 15 is a true and correct copy of Firasat M. Ali letter to

Marc N. Henschke dated September 13, 2006.

22.     Attached hereto as Exhibit 16 is a true and correct copy of Subpoena To DNPG,

LLC served September 25, 2006.

23.     Attached hereto as Exhibit 17 is a true and correct copy of Subpoena To Hewlett-

Packard Company served September 25, 2006.


I declare under penalty of perjury that the foregoing is true and correct and that this

Declaration is executed on this 13th day of October, 2006 at Boston, Massachusetts.

/s/ Marc N. Henschke
MARC N. HENSCHKE

35034683.2

5

## <u>CERTIFICATE OF SERVICE</u>

I, Marc N. Henschke, hereby certify that on October 13, 2006, I caused a true and correct copy of the attached *Declaration of Marc N. Henschke In Opposition To Defendant Extreme Networks, Inc.'s Motion To Compel Answers To Interrogatories Nos. 1 And 2* to be served electronically pursuant to the Court's CM/ECF electronic filing system upon Defendants' respective counsel of record as indicated by asterisks below:

**<u>Counsel for Defendant Foundry Networks, Inc.</u>**

William L. Anthony, Jr., Esq.*
I. Neel Chatterjee, Esq.*
Michael F. Heafey, Esq.
Sanjeet K. Dutta, Esq.
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025

Steven M. Bauer, Esq.*
Jeremy P. Oczek, Esq.*
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110-2600

**<u>Counsel for Defendant Extreme Networks, Inc.</u>**

Terrence P. McMahon, Esq.*
Vera M. Elson, Esq.*
David H. Dolkas, Esq.
MCDERMOTT, WILL & EMERY LLP
3150 Porter Drive
Palo Alto, CA  94303-1212

Peter L. Resnik, Esq.*
Benjamin A. Goldberger, Esq.*
MCDERMOTT, WILL & EMERY LLP
28 State Street
Boston, MA  02109-1775

Christopher D. Bright, Esq.
MCDERMOTT, WILL & EMERY LLP
18191 Von Karman Avenue, Suite 400
Irvine, CA  92612-7107

Dated:  October 13, 2006            /s/ Marc N. Henschke
                                    Marc N. Henschke

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

_____

|  |  |  |
|---|---|---|
| ENTERASYS NETWORKS, INC., | ) | |
| | ) | |
| | ) | No. 05-CV-11298 (DPW) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FOUNDRY NETWORKS, INC. and | ) | |
| EXTREME NETWORKS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

_____)

## JOINT STATEMENT AND DISCOVERY PLAN

Pursuant to Local Rule 16.1(D), and Federal Rules of Civil Procedure 16(b) and (c) and 26(f), Plaintiff Enterasys Networks, Inc. ("Enterasys") and Defendants Foundry Networks, Inc. ("Foundry") and Extreme Networks, Inc. ("Extreme") (collectively "Defendants") hereby submit a joint statement containing, inter alia, their alternative proposed pretrial schedules.

## I. NATURE OF THE CASE

Enterasys has filed this action pursuant to the patent laws of the United States, 35 U.S.C. § 1 et seq., alleging that Foundry and Extreme have each infringed, and continue to infringe, one or more claims of six different issued U.S. patents covering technologies relevant to networking infrastructure products (the "Enterasys Patents"). Foundry and Extreme have each denied these infringement allegations, and have asserted various affirmative defenses and/or counterclaims for declaratory relief principally contending that the Enterasys Patents are non-infringed, invalid, or otherwise unenforceable by Enterasys.

## II. <u>PROPOSED PRETRIAL SCHEDULES</u>

Set forth below are alternative pretrial schedules proposed by Enterasys on the one hand, and by Defendants on the other hand. Except where indicated, the parties agree as to the basic types, sequencing and timing of pretrial events, including a phasing of discovery.[1]

The parties disagree as to an issue related to focusing the case to prepare it for trial. While the parties agree that the case ultimately to be tried will be focused on a limited number of claims, they disagree as to the best pre-trial method to achieve that result. Enterasys seeks to narrow the number of asserted claims by establishing clear dates by which it must identify accused products and produce claim construction charts identifying asserted claims, followed by the Defendants identification of items of prior art and production of their responsive claim construction charts. Defendants believe that Enterasys should be required to provide its infringement contentions in response to interrogatories and, before claim construction, commit to a specified number of claims per patent it intends to try to the jury. Enterasys contends that such a limitation on the number of claims it can assert per patent is unnecessary and has no basis in law or fact. Defendants' contend that their approach allows for certain infringement and invalidity discovery before claim construction to allow Enterasys to pick its strongest claims for trial, and that such an approach is increasingly followed by Court's throughout this country and allows for more expeditious and cost-effective resolution of disputes, as the issues in the case are narrowed and more clearly framed.

Defendants further recognize that the trajectory of the case may be significantly affected by the Court's claim construction or *Markman* order, and in recognition of this possibility, they

---

[1] For the Court's convenience, proposed events and dates about which the parties agree are shown in a single merged cell, whereas areas of disagreement are shown in alternative side-by-side cells.

2

also propose a further alternative schedule for the Court's consideration. Rather than being anchored to fixed dates, this further alternative schedule is triggered by the Court's *Markman* order and all subsequent dates are calculated from that date.

As discussed, *infra*, in Section VII, Defendants have joined in a motion to sever the claims that Enterasys has asserted herein against Foundry from those that it has asserted against Extreme. Should the Court ultimately grant Defendants' pending motion and divide this case into two separate civil actions, the parties respectfully reserve their rights to make appropriate modifications to their alternative pretrial schedules proposed below.

| Pre-Trial Event | Enterasys' Proposed Date | Defendants' Proposed Date |
| --- | --- | --- |
| Initial Rule 16(b) scheduling conference | November 3, 2005 | |
| Deadline to exchange Local Rule 26.2(a) automatic disclosures | November 17, 2005 | |
| Beginning of Phase I fact discovery limited to non-willful infringement, invalidity, and unenforceability issues | November 17, 2005 (or upon earlier completion of automatic disclosures) | |
| Deadline to file motions to join other parties or to amend the pleadings | July 17, 2006 | |
| Deadline for Enterasys to identify no more than four claims per patent to be construed and asserted at trial. Enterasys may not add or substitute claims except by agreement of all parties or by showing good cause. | Enterasys disagrees with such requirements and contends that they have no basis in fact or law | July 17, 2006 |
| Deadline for Enterasys to serve claim construction charts identifying asserted claims and products accused of literal or doctrine of equivalents infringement | July 17, 2006 | Not necessary. Can be addressed through interrogatories. |
| Deadline for Defendants to serve invalidity contentions identifying each asserted item of prior art and the basis on which it anticipates or renders obvious each asserted patent claim | August 4, 2006 | Not necessary. Can be addressed through interrogatories. |

| | | |
|---|---|---|
| Deadline for Defendants to serve responsive claim construction charts identifying which claim elements they admit are present in any accused products, and as to all other claim elements their bases for denying that said elements are present | August 18, 2006 | Not necessary. Can be addressed through interrogatories. |
| Simultaneous exchange of preliminary proposed constructions for the claim elements that each party contends should be construed by the Court | September 1, 2006 | |
| Deadline for Defendants to provide notice of intention to rely upon opinions of counsel to potentially avoid willful infringement findings | September 15, 2006 | |
| Deadline to file a joint claim construction statement providing shared constructions of claim elements on which the parties agree, and alternative proposed constructions of disputed claim elements | September 18, 2006 | |
| Beginning of Phase II fact discovery encompassing all issues, including those issues addressed during Phase I | October 3, 2006 | |
| Deadline for all parties to file their opening claim construction briefs | October 18, 2006 | |
| Deadline for all parties to file their claim construction reply briefs | November 20, 2006 | |
| *Markman* claim construction hearing | January 10, 2007 | |
| Cut-off date for Phase II fact discovery: all Phase II fact discovery shall be initiated so as to be completed on or before this date | February 28, 2007 | |
| Rule 16 status conference | March 1, 2007 | |
| Deadline to identify experts and to serve initial expert reports relating to issues for which a party bears the burden of proof | March 16, 2007 | |
| Deadline to identify rebuttal experts and to serve rebuttal expert reports | April 16, 2007 | |
| Cut-off date for expert discovery: all expert discovery shall be initiated so as to be completed on or before this date | May 31, 2007 | |
| Deadline to file dispositive motions | July 2, 2007 | |
| Deadline to file oppositions to dispositive motions | July 30, 2007 | |
| Rule 16(d) final pretrial conference | September 3, 2007 | |
| Trial begins | October 1, 2007 | To be set at final pretrial conference |

## DEFENDANTS' FURTHER ALTERNATIVE SCHEDULE BASED ON THE DATE OF THE COURT'S *MARKMAN* RULING[2]

| Claim Construction Order Issues | | |
|---|---|---|
| Beginning of Phase II fact discovery encompassing all issues, including those issues addressed during Phase I | | Upon issuance of claim construction order |
| Cut-off date for Phase II fact discovery: all Phase II fact discovery shall be initiated so as to be completed on or before this date | | 90 days after claim construction decision |
| Rule 16 status conference | | 10 days after claim construction decision or as Court determines |
| Deadline to identify experts and to serve initial expert reports relating to issues for which a party bears the burden of proof | | 30 days after discovery cutoff |
| Deadline to identify rebuttal experts and to serve rebuttal expert reports | | 60 days after discovery cutoff |
| Cut-off date for expert discovery: all expert discovery shall be initiated so as to be completed on or before this date | | 90 days after discovery cutoff |
| Deadline to file dispositive motions | | 120 days after discovery cutoff |
| Deadline to file oppositions to dispositive motions | | 150 days after discovery cutoff |
| Rule 16(d) final pretrial conference | | 180 days after discovery cutoff |

## III. NONAPPLICABILITY OF DISCOVERY EVENT LIMITATIONS

The parties are in agreement that not all of the discovery event limitations set forth in

Local Rule 26.1(C) and Federal Rules of Civil Procedure 30(a)(2)(A) and 33(a) should apply in

this case. However, as detailed below, the parties have certain disagreements about what

alternative limitations should be substituted in their place.

---

[2] Enterasys disagrees in its entirety with Defendants' further alternative proposal that sets deadlines based on the Court's issuance of its *Markman* ruling.

## **Document Requests**

With respect to document requests, the parties agree that each party should be permitted to serve two sets of document requests on each opposing party during Phase I discovery. In addition, the parties agree that each party should be permitted to serve two additional sets of document requests on each opposing party during Phase II discovery.

### **Depositions**

### **Enterasys' Position**

With respect to depositions, Enterasys proposes that it be permitted to take 25 non-expert depositions, and that the Defendants be collectively permitted to take a total of 36 non-expert depositions.[3] Enterasys proposes this limit of 36 deposition for the Defendants due to the significant common interests that they share with respect to certain deponents and issues, including: (i) inventorship; (ii) prosecution of the patents-in-suit; (iii) invalidity; (iv) unenforceability; and (v) Enterasys' lost profits damages.

### **Defendants' Position**

It will be necessary to take 16 inventor depositions plus multiple plaintiff and third-party depositions on 6 patents with over 100 claims currently in issue; defendants propose that each party be permitted 200 hours of non-expert depositions to encourage the parties to allocate time efficiently to those depositions that require more time and minimize the amount of time used on depositions that can be completed in a short session.

---

[3] Under Enterasys' deposition proposal, all depositions must be completed within the time period set forth in Fed. R. Civ. P. 30(d)(2) with the following exceptions: (i) each inventor may be deposed for up to two seven-hour days, so long as any two-day depositions are concluded on consecutive days; and (ii) each party shall be permitted a single deposition of each other party of up to twenty-one hours under Fed. R. Civ. P. 30(b)(6). These limitations on the time periods of depositions may be modified on a case-by-case basis by mutual agreement among the parties and the deponent, or by order of the Court for good cause shown.

## Interrogatories

With respect to interrogatories, the parties agree that each party be permitted to serve 25 interrogatories on each opposing party.  A single interrogatory requesting a position for all asserted claims or accused products shall be counted as one interrogatory and will not be considered compound.

## Requests for Admission

With respect to requests for admissions, the parties agree that each side be permitted to serve 50 requests for admissions upon each opposing party.  Requests for admission to authenticate documents, for a date of public use, public disclosure, or printed publication shall not be counted under this limit.

## IV. SUPPLEMENTATION OF EXPERT REPORTS FOLLOWING CLAIM CONSTRUCTION

If no claim construction order has been entered by the Court when the parties must exchange opening and rebuttal expert reports, the parties will use only their own proposed claim construction as the basis for their respective expert's opinions, and when the Court issues a claim construction order, the parties may supplement their respective expert reports only to the extent the Court's construction is different from their own proposed claim construction. The party bearing the burden of proof will have fifteen (15) business days to serve supplemental expert reports based on the Court's claim construction order. The responding party shall have fifteen (15) business days to serve supplemental rebuttal reports to respond to any supplemental expert report received. At trial, no impeachment is permitted based on supplementation permitted under this provision.

## V. NON-CONSENT TO TRIAL BY MAGISTRATE

The parties do not consent to trial by a magistrate judge.

## VI. <u>LOCAL RULE 16.1(D)(3) CERTIFICATES</u>

Counsel for the parties have conferred with their respective clients with a view toward establishing a budget for the costs of conducting this litigation, and for purposes of considering the resolution of this litigation through alternative dispute resolution programs. Certificates attesting to these client consultations are attached hereto as Exhibits A through C.

## VII. <u>OTHER MATTERS</u>

On August 24, 2005, pursuant to Federal Rule of Civil Procedure 21, Extreme filed a currently pending motion to sever Enterasys' patent infringement claims against Extreme from Enterasys' patent infringement claims against Foundry. On August 31, 2005, Foundry filed a notice of joinder in Extreme's motion. Enterasys filed opposition papers on September 7, 2005, and Extreme filed a further reply brief on September 19, 2005. Accordingly, the motion to sever has already been fully briefed by the parties, and they are prepared to argue that motion at the initial scheduling conference should it still remain pending at that time.

On an unrelated note, the parties anticipate jointly seeking the Court's approval in the near future for a protective order governing the use and treatment of confidential information in this case.

Dated:  October 27, 2005

Respectfully submitted,

ENTERASYS NETWORKS, INC.

By its attorneys,

/s/ Alan E. McKenna
Christopher P. Sullivan, Esq. (BBO No.485120)
Marc N. Henschke, Esq. (BBO No. 636146)
Alan E. McKenna (BBO No. 644556)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
800 Boylston Street, 25th Floor
Boston, MA 02199
Tel. (617) 267-2300

Of Counsel:

A. James Anderson, Esq.
Marla R. Butler, Esq.
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2600 One Atlanta Plaza
950 East Paces Ferry Road, N.E.
Atlanta, GA  30326-1386
Tel. (404) 760-4300

Robert A. Auchter, Esq.
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
1801 K Street, N.W.
Washington, DC  20006
Tel. (202) 775-0725

FOUNDRY NETWORKS, INC.

By its attorneys,

/s/ Steven M. Bauer
Steven M. Bauer, Esq.
Jeremy P. Oczek, Esq.
PROSKAUER ROSE LLP
One International Place, 22nd Floor
Boston, MA 02110-2600
Tel. (617) 526-9600

Of Counsel:

William Anthony, Esq.
I. Neel Chatterjee, Esq.
Michael F. Heafey, Esq.
Raymis H. Kim, Esq.
Sanjeet K. Dutta, Esq.
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Tel. (650) 614-7400

EXTREME NETWORKS, INC.

By its attorneys,

/s/ Peter L. Resnik
Peter L. Resnik, Esq. (BBO No. 417180)
Benjamin A. Goldberger, Esq. (BBO No. 654357)
MCDERMOTT WILL & EMERY LLP
28 State Street
Boston, MA  02109-1775
Tel. (617) 535-4000

Of Counsel:

Terrence P. McMahon, Esq.
Vera M. Elson, Esq.
Behrooz Shariati, Esq.
MCDERMOTT WILL & EMERY LLP
3150 Porter Drive
Palo Alto, CA  94304-1212
Tel. (650) 813-5000

## <u>CERTIFICATE OF SERVICE</u>

I, Alan E. McKenna, hereby certify that on October 27, 2005, I caused the attached ***Joint Statement And Discovery Plan*** to be served by first class mail upon Defendants' counsel of record (and electronically on CM/ECF system participants) at the following addresses:

Steven M. Bauer
Jeremy P. Oczek
PROSKAUER ROSE LLP
One International Place, 22nd Floor
Boston, MA 02110-2600

William Anthony
I. Neel Chatterjee
Michael F. Heafey
Raymis H. Kim
Sanjeet K. Dutta
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025

Peter L. Resnik
Benjamin A. Goldberger
MCDERMOTT WILL & EMERY LLP
28 State Street
Boston, MA  02109-1775

Terrence P. McMahon
Vera M. Elson
Behrooz Shariati
MCDERMOTT WILL & EMERY LLP
3150 Porter Drive
Palo Alto, CA  94304-1212

Dated:  October 27, 2005                    /s/ Alan E. McKenna_____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

|  |  |
|---|---|
| ENTERASYS NETWORKS, INC.,         ) | No. 05-CV-11298 (DPW) |
|         Plaintiff,    ) | |
| v.             ) | |
| FOUNDRY NETWORKS, INC. and    ) | |
| EXTREME NETWORKS, INC.,     ) | |
|         Defendants.   ) | |

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 16.1(D)(3)

Pursuant to Local Rule 16.1(D)(3), the undersigned party and its counsel of record have conferred regarding the following issues:

(i)    establishing a budget for the costs of conducting the full course and various alternative courses of this litigation; and

(ii)   possible resolution of this litigation though alternative dispute resolution programs such as those outlined in Local Rule 16.4.

Dated: October 27, 2005

ENTERASYS NETWORKS, INC.        ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

_____      _____
Gerald M. Haines II             Marc N. Henschke, Esq.
Executive VP of Strategic Affairs
  and Chief Legal Officer

11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| ENTERASYS NETWORKS, INC., ) | No. 05-CV-11298 (DPW) |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| FOUNDRY NETWORKS, INC. and ) | |
| EXTREME NETWORKS, INC., ) | |
| ) | |
| Defendants. ) | |

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 16.1(D)(3)

Pursuant to Local Rule 16.1(D)(3), the undersigned party and his counsel of record

have conferred regarding the following issues:

(i)    establishing a budget for the costs of conducting the full course and various
alternative courses of this litigation; and

(ii)   possible resolution of this litigation though alternative dispute resolution
programs such as those outlined in Local Rule 16.4.

Dated: October 27, 2005

FOUNDRY NETWORKS, INC.                    PROSKAUER ROSE LLP

James E. Parsons, Esq.                    Steven M. Bauer, Esq
Director, Intellectual Property

13

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

| | |
|---|---|
| ENTERASYS NETWORKS, INC., <br><br> Plaintiff, <br><br> v. <br><br> FOUNDRY NETWORKS, INC. and <br> EXTREME NETWORKS, INC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )     No. 05-CV-11298 (DPW) |

<u>**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 16.1(D)(3)**</u>

Pursuant to Local Rule 16.1(D)(3), the undersigned party and his counsel of record

have conferred regarding the following issues:

    (i)    establishing a budget for the costs of conducting the full course and various
alternative courses of this litigation; and

    (ii)    possible resolution of this litigation though alternative dispute resolution
programs such as those outlined in Local Rule 16.4.

Dated: October 27, 2005

EXTREME NETWORKS, INC.         MCDERMOTT WILL & EMERY LLP

_____         _____
Alicia J. Moore                 Peter L. Resnik, Esq.
General Counsel               BEHROOZ SHARIATI

15

# Exhibit 2

```
 1                  UNITED STATES DISTRICT COURT
 2                   DISTRICT OF MASSACHUSETTS
 3    * * * * * * * * * * * * * * * * *
                                      *
 4    ENTERASYS NETWORKS, INC.        *
                      Plaintiff       *
 5                                     *
          VERSUS                      *    CA-05-11298-DPW
 6                                     *
      FOUNDRY NETWORKS, INC.          *
 7    EXETREME NETWORKS, INC.         *
                      Defendants      *
 8                                     *
      * * * * * * * * * * * * * * * * *
 9
              BEFORE THE HONORABLE DOUGLAS P. WOODLOCK
10
                UNITED STATES DISTRICT COURT JUDGE
11
                            HEARING
12
                       NOVEMBER 3, 2005
13
      APPEARANCES:
14
          CHRISTOPHER P. SULLIVAN, ESQ. AND ALAN E.
15        McKENNA, ESQ., Robins, Kaplan, Miller &
          Ciresi, LLP, 800 Boylston Street, Suite 2500,
16        Boston, Massachusetts  02199, on behalf of
          the Plaintiff
17
          ROBERT A. AUCHTER, ESQ., Robins, Kaplan, Miller &
18        Ciresi, LLP, 1801 K Street, N.W., Suite 1200,
          Washington, D.C.  20006, on behalf of the
19        Plaintiff
20        STEVEN M. BAUER, ESQ. AND JEREMY P. OCZEK, ESQ.,
          Proskauer, Rose, LLP, One International Place,
21        22nd Floor, Boston, Massachusetts  02110, on
          behalf of Foundry Networks, Inc., Defendant
22
          PETER L. RESNIK, ESQ., McDermott, Will & Emery,
23        LLP, 28 State Street, Boston, Massachusetts
          02109, on behalf of Exetreme Networks, Inc.,
24        Defendant
25    (Appearances continued next page)
```

Page 2
```
 1    APPEARANCES (CONTINUED):

 2         VERA M. ELSON, ESQ., McDermott, Will & Emery,

           3150 Porter Drive, Palo Alto, California 94304,

 3         on behalf of Exetreme Networks, Inc., Defendant

 4

 5

 6

 7

 8

 9

10

11

12

13

14

                        Courtroom No.  1 - 3rd Floor

15                      1 Courthouse Way

                        Boston, Massachusetts 02210

16                      3:08 P.M. - 3:45 P.M.

17

18

19

           Pamela R. Owens - Official Court Reporter

20        John Joseph Moakley District Courthouse

              1 Courthouse Way - Suite 3200

21             Boston, Massachusetts  02210

22

23     Method of Reporting:  Computer-Aided Transcription

24

25
```

Page 3

1    CA-05-11298-DPW
2    NOVEMBER 3, 2005
3        THE CLERK: Could counsel please identify
4    themselves?
5        MR. SULLIVAN: Good afternoon, Your Honor.
6    Christopher P. Sullivan, Robins, Kaplan, Miller &
7    Ciresi for the Plaintiff, Enterasys.
8        MR. AUCHTER: Robert Auchter with Robins,
9    Kaplan, Miller & Ciresi for the Plaintiff, Enterasys.
10       MR. McKENNA: Alan McKenna, also with Robins,
11   Kaplan for Enterasys.
12       MR. BAUER: Your Honor, Steven Bauer. With
13   me is Jeremy Oczek at the back table from Proskauer for
14   Foundry Networks.
15       THE COURT: Okay.
16       MS. ELSON: Your Honor, Vera Elson of
17   McDermott, Will & Emery on behalf of defendant,
18   Exetreme Networks.
19       MR. RESNIK: Peter Resnik from McDermott,
20   Will & Emery on behalf of Exetreme Networks.
21       THE COURT: There is quite a sound of fury
22   over leading me to believe that this is a patent case
23   with the amount of effort that has been put into staking
24   out positions on discovery.
25       Let me put it a little bit differently. So I

Page 4

1    sever and then I consolidate the cases for purposes of
2    discovery. Is there a problem with that?
3        MR. SULLIVAN: Not from our point of view,
4    Your Honor.
5        MR. RESNIK: Not from our point of view, Your
6    Honor. But I think parts of the discovery may not be
7    consolidated.
8        THE COURT: What exactly?
9        MR. RESNIK: Well, certainly the inquiries
10   into infringement by the individual defendants which
11   aren't relevant to the other defendants' claims.
12       THE COURT: What does that mean in a practical
13   sort of way? Because you're going to have all kind of
14   protective orders; is that it?
15       MR. RESNIK: Well, we're going to be making --
16   particularly during the discovery phase -- a lot of
17   disclosure of very confidential information in the face
18   of a competitor who is a co-defendant in the case.
19   While some of that will be necessary when we get to
20   trial -- because it's a public trial -- those
21   disclosures probably are irrelevant to the case against
22   the co-defendant. And, so, we would urge the Court not
23   to require us to make those disclosures unnecessarily
24   during the pretrial phase. So, by consolidating
25   discovery that goes to issues such as validity of the

Page 5

1    patent, prior art, the inventor depositions, I think
2    much of the discovery will be consolidated. We would
3    ask the Court not to consolidate the depositions of the
4    defendants.
5        THE COURT: How do I sort through that?
6        MR. RESNIK: We would propose to work with the
7    other side and with all the parties and submit a
8    proposal for consolidation of those events that we think
9    ought to be consolidated.
10       MS. ELSON: I can address that, also, Your
11   Honor.
12       THE COURT: Sure.
13       MS. ELSON: We were also in court with Foundry
14   in another patent case. And there have been at least
15   three courts I know of who have followed the proposal
16   we're making, which is because the core issues in the
17   case -- infringement damages -- all involve highly
18   confidential information and source code and are really
19   independent of each other, but the core issue -- the
20   two defenses which the parties have in common are
21   specifically Markman, the claim construction, and
22   validity/enforceability. So those are the two issues
23   that even if you look at the cases that plaintiff cites
24   troubled the courts when they chose not to sever. So,
25   we worked out a proposal, which is along basically the

Page 6

1    same lines followed by Judge Farnan in the District
2    Court of Delaware in the Lucent versus Exetreme and
3    Foundry case, Judge Jordan, also in Delaware in
4    Phillips versus Contac --
5        THE COURT: What I have was Judge Farnan's
6    memorandum declining to sever. I guess what I'm
7    addressing is the more particularized set of orders
8    that would be necessary in this.
9        MS. ELSON: The only order that would be
10   necessary is what we're proposing, which is we would
11   join together in the Markman process, the claim
12   construction process. We would jointly cooperate on
13   taking the 16 inventors in the case which relate to
14   issues of validity generally and enforceability as well
15   as prior art. Beyond that, the concern is the potential
16   sharing of highly confidential information between
17   defendants.
18       THE COURT: Do you and the District of
19   Delaware have in place some orders more specific than
20   the general ruling on severance?
21       MS. ELSON: No. That was it, Your Honor. In
22   fact, I have another sample from Judge White in the
23   Northern District of California. And generally, we're
24   able to work it out with those sorts of guidelines.
25       MR. BAUER: Your Honor, so there would be no

3 (Pages 3 to 6)

ENTERASYS V FOUNDRY>

Page 7

1 issue in terms of any discovery produced by them to
2 either of us. There is no issue at all. It's really
3 just going to be something -- and by the way, we are
4 cooperative in this -- that it would be just an
5 agreement between us that Foundry wouldn't turn over
6 Foundry documents to Extreme. Extreme wouldn't turn
7 over Exetreme documents to Foundry. And it's really
8 just an agreement between us because everything is going
9 to go over to the other side.
10     THE COURT: Okay.
11     MR. SULLIVAN: I have no problem with that,
12 Your Honor. I just don't want to be in a position where
13 our people are subjected to two different sets of
14 depositions on any topics that the defendants may want
15 to take depositions of our employees or management or
16 experts.
17     THE COURT: Well, the devil is in the details.
18 But I suspect that the core questions, they will be
19 conducted together --
20     MR. BAUER: That's right, Your Honor. The
21 only time --
22     THE COURT: -- and in a non-duplicative
23 fashion.
24     MR. BAUER: The only place there might be
25 something left over would be the 30(b)(6) infringement

Page 8

1 contentions, one of their claims against us versus
2 claims against them.
3     MS. ELSON: But on the core issues, Your
4 Honor, of infringement and damages, that's a concern
5 both in pretrial and in trial, the exposure of that
6 information and I believe the weight of authority.
7 Chisholm, the treatise, as well as the cases, find that
8 even though the theory of liability may be the same, the
9 assertion of claims, the acts that are accused are
10 completely independent and, therefore, joinder is
11 inappropriate in such circumstances, particularly when
12 we are direct competitors with Foundry.
13     THE COURT: Well, I'm more concerned with the
14 practical questions of how this is going to proceed than
15 I am right now with the interesting joinder questions.
16     MS. ELSON: I have for Your Honor, if you
17 wish, a sample of the Judge White order in the '98 case
18 that I can hand up.
19     THE COURT: Well, I guess I want to tease this
20 out just a bit more. And let me understand from the
21 plaintiff if you've heard anything that makes you
22 uncomfortable about it because you are going to be
23 subject to separate depositions, at least as to certain
24 kinds of infringement and damage questions.
25     MR. SULLIVAN: Well, I think Your Honor is

Page 9

1 right. The devil is in the detail. If I understood
2 what Mr. Bauer said to be correct, that they would
3 supply us with all the discovery and that all they would
4 do is not exchange that discovery with each other. I
5 certainly don't have a problem with that.
6     THE COURT: Well, but presumably they are
7 going to be doing depositions of your people with
8 respect to what you claim is their infringement, their
9 separate infringements. Those are going to be separate
10 depositions.
11     MR. SULLIVAN: Yes. And we're fine with that,
12 Your Honor. If they want to do a deposition of our
13 people or our experts with regard to how Foundry is
14 infringing and Extreme is not going to be present by
15 agreement amongst the parties at that deposition, that's
16 fine. I would only ask that there is an issue about the
17 depositions, as I think Your Honor knows from seeing the
18 joint submission. There's a difference as to how many
19 depositions and how long they're going to take. And we
20 would just ask that this not be an abusive situation.
21 But if everyone is acting in good faith, I don't see any
22 particular problem with it.
23     THE COURT: Well, I guess I'm going to sever.
24     The Exetreme case will be drawn separately.
25 And I'd like you to have a separate complaint filed for

Page 10

1 that. I'll waive the filing fee for it. But I just
2 want two separate cases and then I will consolidate them
3 together under the number for this case, 11298.
4     MR. SULLIVAN: That's fine, Your Honor.
5     THE COURT: And we'll proceed on that
6 consolidation basis rather than as a single action.
7     Now, I guess I was looking at your schedule
8 and thinking I hope to live that long. Why so long?
9     MR. SULLIVAN: Well, I think, Your Honor,
10 realistically speaking, as a plaintiff who would like to
11 go to trial as quickly as possible -- however, we are
12 talking about six different patents with lots of
13 different claims. We are talking about two defendants.
14 We're talking a lot of different products. I think
15 that, realistically speaking, it would be difficult to
16 do it much quicker than what is set forth in the joint
17 schedule.
18     THE COURT: All right. So, then let's turn to
19 the Markman questions. I'm not sure I understand why
20 the dispute into all kinds of a schedule with respect to
21 Markman.
22     MR. SULLIVAN: Your Honor, we have no dispute
23 over the alternative schedule. We told the defendants
24 that. What we said is we have not seen any court that
25 was willing to take that burden on themselves. If Your

4 (Pages 7 to 10)

NOVEMBER 3, 2005>

Page 11

1 Honor wishes to take on that alternative schedule, we
2 think it makes a lot of sense, but it does put the onus
3 back on the Court because --
4 THE COURT: Well, it does and it doesn't. I
5 mean, yes, it puts it before me and then you have to sit
6 around and wait.
7 MR. SULLIVAN: Well, as a plaintiff, that's
8 not something that -- you know, the only real downside
9 to us is that if the Court is involved in other things
10 and doesn't get around to making a Markman decision and
11 then we have to wait and this schedule becomes
12 unrealistic.
13 THE COURT: Right.
14 MR. SULLIVAN: But in a lot of ways, the
15 defendant's alternative does make a lot of sense. It's
16 just a question of putting the burden on the Court and
17 then not penalizing the plaintiff in terms of getting a
18 trial date if the Court is too busy to get to resolve
19 the Markman issues.
20 THE COURT: Well, but let me understand what
21 the real alternative is. I spend my time in patent
22 cases trying to figure when to have a Markman hearing.
23 There is no good time to have a Markman hearing as far
24 as I can see. There are some less bad ones maybe. But
25 you seem happy with it in this order --

Page 12

1 MR. SULLIVAN: Yes.
2 THE COURT: -- or this sequence.
3 MR. SULLIVAN: I think the parties have agreed
4 to virtually all of the dates. There is really only --
5 in terms of scheduling, the only issue is whether or not
6 the plaintiffs should be limited to four claims from
7 each patent and have to declare that without the ability
8 to change. We don't think that there's any basis for
9 that. And then we think that we should submit our claim
10 construction charts on the 17th of July and that a few
11 weeks later the defendants should serve their invalidity
12 contentions and then --
13 THE COURT: No. I have that in front of me.
14 So, maybe I ought to back up a bit with this. I mean, I
15 share the view generally that there are never more than
16 four good claims. There rarely are more than five
17 documents worth looking at in a case although you don't
18 learn until trial what they are. But what makes you
19 think you're going to have more than four?
20 MR. SULLIVAN: I don't know, Your Honor. And
21 I think that this -- if we're talking about this six
22 months from now or nine months from now, I would think
23 that would be a lot more appropriate. The problem I
24 have is without having taken any discovery, just
25 standing here at the start of the case, to say that we

Page 13

1 are going to agree that we'll be limited to four claims
2 and that we can never change what those claims are
3 before we have taken any discovery and before we've seen
4 what the contentions are, before we have any indication
5 from the Court as to what the claim construction is
6 going to be --
7 THE COURT: Well, you don't get that until
8 afterwards, anyway.
9 MR. SULLIVAN: I understand. But I think it's
10 -- my answer is, Your Honor, I think it's way premature
11 to force us into that. As a plaintiff, we need to try a
12 coherent case. We know that. And there's no way --
13 THE COURT: Well, no. I'm less concerned with
14 generalities than the specifics of this case. You must
15 know enough about the case to know what your likely
16 claims are going to be --
17 MR. SULLIVAN: We do.
18 THE COURT: -- and highly proliferated beyond
19 four?
20 MR. SULLIVAN: Your Honor, it's the artificial
21 nature of saying four per patent.
22 THE COURT: But just give me -- I mean, should
23 I be staying up late at night worrying about 75 claims
24 for each of the patents?
25 MR. SULLIVAN: No. I don't think so, Your

Page 14

1 Honor.
2 THE COURT: How about six?
3 MR. SULLIVAN: How about seven.
4 THE COURT: All right. I really want to get
5 an idea of whether or not this is going to be --
6 MR. SULLIVAN: I would suspect, Your Honor, by
7 the time we get to trial, that we'll probably be putting
8 forth three or four.
9 THE COURT: Of more concern to me is by the
10 time you get to the Markman hearing, what do you think?
11 MR. SULLIVAN: I think it will probably be in
12 the area of probably no more than seven. But part of
13 the issue here is that the way the defendants have
14 phrased it is we can never raise these again. It may
15 be that after claim construction, the way the Court
16 construes the patent, you know, there could be very
17 valid claims and we're now barred from bringing those
18 claims because we had to make an election before the
19 Court gave us claim construction.
20 THE COURT: Well, I guess I flock with you at
21 least now on this. I mean, you may rue the day. And
22 the day apparently has --
23 MR. BAUER: Your Honor, may I make a comment
24 on that?
25 THE COURT: January 10th, 2007.

ENTERASYS V FOUNDRY>

Page 15

1    MR. BAUER: Your Honor, I think you put your
2  finger directly on the issue. And the reason this
3  calendar is so long is because they don't want to
4  identify. There's right now 125 claims, six patents,
5  and they don't want to identify or narrow the claims at
6  all until July 2006. We all believe that we've spoken,
7  that if there was some preliminary narrowing -- and we
8  don't say in here that they can never change it. We
9  simply say if you can change the number later, just have
10 a reason, good cause. But if there was preliminary
11 narrowing now --
12    THE COURT: No. It says "except by agreement
13 of all parties or by showing good cause." Who gets to
14 determine good cause?
15    MR. BAUER: I think you do, Your Honor.
16    THE COURT: Okay. So, what's the difference?
17    MR. BAUER: That's what I'm saying. We're not
18 saying that they are bound for all time if there is
19 any --
20    THE COURT: Well, then it becomes a little bit
21 like Scherazade. You know, each time they start to
22 unfold another one. Why not get -- you know, when you
23 use a sieve, you start with the top and it kind of works
24 its way through. What's it to you?
25    MR. BAUER: Well, it's only that if we're

Page 16

1  interested in trying to get this thing done sooner than
2  two or two-and-a-half years from now, right now, we have
3  no narrowing of the claims at all, which is why the
4  calendar is as long as it is. And where I hear from
5  counsel today that they do have some narrowing, they had
6  to do some sort of Rule 11 analysis, they must have
7  some narrowing of claims, some identification of
8  products that we could all focus on. And if we had
9  that, perhaps we could get to a Markman hearing sooner.
10 Perhaps we could have a quicker calender. But if we
11 leave the date to July for the scope of this case with
12 all the depositions and everything --
13    THE COURT: Well, but, you see, the incentive
14 structure here is to encourage the plaintiff to move
15 more promptly. So, the plaintiff says that this is what
16 they are prepared to do. They know that they'll have a
17 very unhappy Judge if they have to present or attempt to
18 present a multiplicity. But the earlier discussion, it
19 seems to me, might be useful, might be fruitful.
20    MS. ELSON: Your Honor, may Exetreme weigh in
21 on this one?
22    THE COURT: Sure.
23    MS. ELSON: In my experience, we just did a
24 trial in Denver where we, as the plaintiff, voluntarily
25 narrowed it to five claims per patent well before a

Page 17

1  Markman. At that point where you've done enough
2  discovery and you've seen the other side's documents,
3  you've taken their engineer's deposition, you know you're
4  pretty much down to four or five claims per patent which
5  are your best claims. Judge Alsop in the Northern
6  District limits plaintiffs to two claims per patent,
7  sometimes four. But he outright limits that.
8    THE COURT: Well --
9    MS. ELSON: And what that saves is the --
10   THE COURT: -- for a variety of reasons, this
11 is not San Francisco.
12   MS. ELSON: I understand, Your Honor. I'm
13 just saying that what that saves the defendants is having
14 to do all the discovery and the validity discovery on
15 covering 125 claims because that is so unwieldy and
16 expensive for our clients. And for trial, I would
17 suspect they won't even take four claims per patent to
18 trial. That is also unwieldy. We took ultimately one
19 claim per patent to trial. So, they have a range.
20 And we can make it five. But they have a range of
21 claims that they can choose from for trial.
22   THE COURT: Well, I guess what I'm going to do
23 is leave it for the claim construction chart basis. I
24 understand what you have to say. On the other hand, if
25 on July 17th, it seems absurd, you can make some kind of

Page 18

1  motion --
2    MS. ELSON: Thank you, Your Honor.
3    THE COURT: -- to come back here. It won't be
4  a happy day for all of us if that happens.
5    MR. SULLIVAN: Well, it wouldn't be so for me,
6  Your Honor.
7    THE COURT: I think you've identified who
8  would be least happy in court.
9    So, now --
10   MS. ELSON: We also have a concern, Your
11 Honor, with some of the deadlines the plaintiff is
12 proposing. This starts with the July 17, 2006 date that
13 Enterasys is proposing on page three of the joint
14 schedule. Those next three entries, we believe, can
15 simply be dealt with through interrogatories. Because
16 what this does is permit them to go longer even if they
17 know their preliminary contentions without telling us.
18   THE COURT: I don't understand what you mean
19 by that.
20   MS. ELSON: Simply that we would like to know
21 what the --
22   THE COURT: Why aren't the claim construction --
23 why aren't the claim constructions the functional
24 equivalent of interrogatories, anyway?
25   MS. ELSON: Well, that comes much later.

6 (Pages 15 to 18)

Page 19

1  We need to know their theories of infringement much
2  earlier than that. And, so, we'd like to simply serve
3  interrogatories asking those questions and they can tell
4  us what their contentions are, their theories of
5  infringement.
6       THE COURT: What prevents you from doing that
7  here?
8       MS. ELSON: Well, if we can do that as well,
9  then that's fine, Your Honor. My only concern --
10      THE COURT: I'm not going to -- I won't get
11  into the specifics, I don't think, of the way in which
12  you conduct your discovery with the exception of the
13  claim construction charts which I think are, on balance,
14  a pretty good idea. If you want to propound
15  interrogatories during that time period, go ahead. I
16  don't see that as a problem.
17      MS. ELSON: The one concern here is the
18  deadline for us to serve invalidity contentions. We
19  will certainly do our best to provide all our best
20  contentions at the time. But given the lateness with
21  which we will be seeing narrowing of the claims, there
22  may turn out to be some piece of prior art we find later
23  we'd simply like to be able to supplement at that time
24  and not necessarily have to be a drop-dead deadline. If
25  there's good cause, if we found the art later, we'd like

Page 20

1  to be able to add it.
2       THE COURT: That's, I think, implicit in this.
3       MS. ELSON: Thank you, Your Honor.
4       THE COURT: But there has to be good cause for
5  it.
6       MS. ELSON: Certainly.
7       THE COURT: So your schedule takes -- on what
8  you seem to be comfortable takes you down to a Markman
9  hearing on January 10th, 2007. I think we have the day
10  for you. But what is it, Michelle?
11      OFF THE RECORD
12      THE COURT: Just as a -- it's fruitless of me
13  to try to anticipate. But in this case -- because I
14  don't know anything about what you're fighting about --
15  what do you see the Markman hearing as being? How long?
16      MR. SULLIVAN: Your Honor, I would think
17  that's a function of how many claims.
18      THE COURT: Sure is.
19      MR. SULLIVAN: And I would think that --
20      THE COURT: Well, but with the two that you're
21  going to press at that time, how long would that take?
22      MR. SULLIVAN: Well, at that time, I'll know
23  which two.
24      THE COURT: Right.
25      MR. SULLIVAN: I think that I would anticipate

Page 21

1  that this would be handled -- leaving aside any issue
2  as to whether or not the Court desires a tutorial on the
3  technology --
4       THE COURT: Probably. I probably will.
5       MR. SULLIVAN: Would that be included in the
6  time for the Markman hearing?
7       THE COURT: Right.
8       MR. SULLIVAN: Then I would say if we allotted
9  two days or three days, we should probably be able to
10  get through it, assuming that after the tutorial, then
11  the Markman proceeding would proceed like a motion for
12  summary judgment where it's really just lawyer argument
13  and that there's no extrinsic evidence that's brought in
14  and we don't have a mini-trial with witnesses testifying
15  and being cross-examined. If we proceed --
16      THE COURT: I guess I'm just --
17      MR. SULLIVAN: -- contention by contention --
18      THE COURT: Yes. That's the way -- from what
19  little I know of this -- that I think I would want to
20  proceed. That's the best way that I learn about it.
21      MR. SULLIVAN: That's the way we would urge
22  Your Honor. And I think three days at the outside.
23      THE COURT: Okay. So, we will carve that time
24  period out. I mean, I can't believe I'm scheduling
25  2007. I am, so we'll start on Monday the 8th --

Page 22

1       MR. SULLIVAN: That's fine.
2       THE COURT: -- with that and I'll just carve
3  it out. I won't set a trial date to conflict with it at
4  that time. But I'll have the day open for it.
5       MR. SULLIVAN: Thank you, Your Honor.
6       THE COURT: Now, that then gets us, I think,
7  into the alternative deadline process.
8       MR. SULLIVAN: With one exception, I think,
9  Your Honor. Then the issue is whether or not we are
10  going to set a trial date. And I understand Your Honor
11  has severed and --
12      THE COURT: Right. I'm not going to set a
13  trial date until I've got a better idea what's going to
14  happen with this.
15      MR. SULLIVAN: I just -- and I'm apprehensive
16  again because we want to get this to trial as quickly as
17  possible for the Court and the defendants in fairness to
18  everyone. But we would like to get it to trial as
19  quickly as possible.
20      THE COURT: Setting a false trial date isn't
21  going to help you one wit.
22      MR. SULLIVAN: I understand that. But if we
23  leave it the way the defendants have suggested until the
24  final pretrial conference, I'm just concerned that if
25  there isn't a placeholder, that the Court's calendar --

7 (Pages 19 to 22)

Page 23

1    we'll have done all this work and then we're going to
2    have to wait six months for the appropriate trial slot
3    to open up where Your Honor could take this case.
4        THE COURT: I just don't know what to say
5    about that. I think what I'm going to do is say that I
6    can give you the schedule through the Markman hearnig.
7        MR. SULLIVAN: Okay.
8        THE COURT: And then at the Markman hearing,
9    we'll talk about what a reasonable time period is then.
10   I'll have a better idea of --
11       MR. SULLIVAN: That makes all the sense in the
12   world, Your Honor.
13       THE COURT: -- what I think I can do at that
14   point. So, we'll give you that schedule through the
15   Markman claim hearing -- and we'll adopt the one that
16   you've provided there having in mind that with respect
17   to the disputes -- I do want to have the claim
18   construction chart process. But that does not mean that
19   the parties can't use interrogatories at the same time.
20       MR. SULLIVAN: Understand.
21       THE COURT: And I'm not going to require, but
22   certainly think it's prudent to continue to prune at
23   that point, but I'm not going to require a specific
24   number. I think that deals with that.
25       Now, what's the real fight about deposition

Page 24

1    timing? What's going on?
2        MR. SULLIVAN: Your Honor --
3        THE COURT: No. You've gotten to go first too
4    much.
5        MR. BAUER: Your Honor, actually when you look
6    at it, we're in agreement as to the number of days.
7    It's a complicated case in that there's 16 inventors.
8    And most of them are from defunct companies, Digital
9    Equipment, Cabletron. So it's going to -- all right.
10   So we're in agreement on days. The only question is
11   they say 52 days. We're asking for 200 hours which is
12   56 days. I mean, it was a round number. We're asking
13   for 200 hours, that we just get to allocate that as we
14   want. So that if a deposition lasts three hours, we
15   have some time for some place else, if appropriate.
16   And the way I understand their view is if we take three
17   hours for a deposition, that's that. So we're in
18   agreement as to how many --
19       THE COURT: That's that. What do you --
20       MR. BAUER: Well, they say if we take three
21   hours for a deposition, that counts as two days of a
22   deposition. What they agree -- it's in the footnote.
23   They agree that for an inventor, for example --
24       THE COURT: Well, who reads footnotes?
25       MR. BAUER: It's on page six. What they say

Page 25

1    and what we agree is that for an inventory, two days of
2    deposition. So it's one deposition, but two days.
3    So, the way they're proposing it is if we take an
4    inventor and he has nothing to say and it's a one-hour
5    deposition, that's it. What we're suggesting is that if
6    we take a deposition and it's one hour, we have 13 hours
7    that we could use for somebody else somewhere else. And
8    a lot of courts now just find it easier, you count hours
9    at the end of the day instead of days.
10       THE COURT: I'm not sure I understand why the
11   plaintiff objects to that.
12       MR. SULLIVAN: Well, Your Honor, it's just a
13   question of tracking. Under the federal rules, each
14   party is entitled -- each side, I'm sorry. Each side is
15   entitled to 10 depositions and the depositions are
16   presumed to be 7-1/2 hours or 7 hours.
17       THE COURT: No, I understand that. That
18   having been said --
19       MR. SULLIVAN: And that having been said, we
20   understand that we do have 16 inventors. We don't
21   control the inventors. And what we don't want to do is
22   in a situation where we have an inventor in California
23   and have a three-hour deposition one day, and then a
24   week later, we have a two-hour deposition.
25       THE COURT: Well, but nobody wants that. I

Page 26

1    can't imagine that --
2        MR. BAUER: That's not what --
3        THE COURT: -- you're not going to be
4    scheduling more intelligently about that. But I don't
5    think travel time counts, does it?
6        MR. SULLIVAN: No, no, no. We're not
7    suggesting that travel time counts. All I'm saying is
8    that we think by controlling the number of depositions
9    rather than the hours of depositions, we're tracking
10   closer to the federal rules.
11       THE COURT: I think in this one, I'm prepared
12   to go with the idea of hours for your non-expert
13   depositions. I'm a little concerned about the -- but
14   maybe you're not -- about 200 for each of the parties
15   when there's --
16       MR. SULLIVAN: That was my next --
17       THE COURT: -- some consolidation.
18       MR. SULLIVAN: That's my next point, Your
19   Honor. It is not accurate to say we're only a few days
20   apart. They actually have 200 hours of depositions
21   apiece. We think that's excessive. What we had
22   suggested is that we would take 25 times 7 -- 7 hours of
23   deposition, 25 depositions, and that they would have 36
24   depositions, basically, which would be 36 times 7 in
25   terms of the hours, except that inventors could be 14

8 (Pages 23 to 26)

ENTERASYS V FOUNDRY>

Page 27

1    hours and that 30(b)(6) depositions could be 21 hours.
2        MR. BAUER: Your Honor, their total is 52
3    days. Our proposal is 56 days. And it's only because
4    we rounded it to 200 hours.
5        THE COURT: Well, I'm not sure I understand
6    that. But it's 200 hours for each party?
7        MR. BAUER: So that rounds out to about 28
8    days per each party, 56 days total. The proposal that
9    they have --
10       THE COURT: Wait a minute. The plaintiff gets
11   200 hours. You get 200 hours. I'm sorry. At some
12   point, I'll know the difference between Foundry and
13   Exetreme, but I don't know now. But Defendant A gets
14   200 hours and Defendant B gets 200 hours. So that's
15   twice as many as the plaintiff gets.
16       MR. BAUER: We are in agreement as to how many
17   hours they'd get. All the parties have agreed as to the
18   the number of hours the plaintiff gets. So, there is no
19   issue. It's only with respect to the defendants'
20   depositions.
21       THE COURT: Right.
22       MR. BAUER: The defendants' proposal is 56
23   days between the two of them. Their proposal --
24   plaintiff's proposal -- is 52 days between the two of
25   them. We're not -- and that four-day difference is only

Page 28

1    because we put 200 hours in as a round number. So we're
2    happy to make it 52 days and then multiply it by seven
3    hours. And then we're in exactly the same position.
4        THE COURT: All right. So 52 days it is.
5        MR. BAUER: Times seven hours.
6        THE COURT: You have to do the arithmetic. I
7    can't do it.
8        MR. BAUER: All right. But we're saying
9    hours, not --
10       THE COURT: Right. Render those hours.
11       MR. SULLIVAN: How is that to be divided?
12       THE COURT: They have to make a determination
13   among themselves. That's one place where they are going
14   to cooperate. They have got to decide how they allocate
15   their time between them.
16       MR. SULLIVAN: Just so I understand this, then
17   they will have 200 hours of deposition or 400 hours of
18   deposition?
19       THE COURT: They had 52 by 7 --
20       MR. BAUER: Which is 364, I think.
21       THE COURT: -- altogether which is, as I
22   understand it, more or less what you've indicated they
23   should have.
24       MR. SULLIVAN: Well, we said 36. Your Honor,
25   the way this gets confusing is when we talk about

Page 29

1    hours --
2        THE COURT: Let me tell you something: There
3    are other parties here. And as interesting as this is,
4    I think I'd like to move on to --
5        MR. SULLIVAN: That's fine.
6        THE COURT: -- some of the other parties on
7    this. Work out a schedule. My sense is that you don't
8    get the full 200 hours apiece. You get something less
9    than that that is more or less reasonable. And I assume
10   you will be reasonable in doing that. And you've got to
11   share it. You are the ones who have to allocate among
12   yourselves. But I'm not going to get into the specifics
13   of this yet. Again, it wouldn't be a pretty sight if I
14   did.
15       MR. BAUER: Your Honor, there would only a
16   problem, God forbid, if we're at 350 hours at the end of
17   this case.
18       THE COURT: Right. No. Don't tell me. I
19   won't ask.
20       MR. SULLIVAN: Your Honor, just so I'm clear,
21   we have 25 times 7 for the plaintiff in terms of the
22   hours of depositions that we have?
23       THE COURT: That's my understanding.
24       MR. SULLIVAN: Okay. And if that is less than
25   what they are going to have --

Page 30

1        THE COURT: No, it is. It is. But there's a
2    consolidation method, the one that you identified when
3    you filed only one lawsuit for two sets of cases.
4        MR. SULLIVAN: I understand that, Your Honor.
5    I'm just asking that if we have good cause, we can come
6    back to the Court?
7        THE COURT: Yes.
8        MR. SULLIVAN: Fine.
9        THE COURT: Yes, certainly. No one is turned
10   away.
11       MR. SULLIVAN: Thank you, Your Honor.
12       THE COURT: But sometimes when they get here,
13   they're not as happy as if they wouldn't have been here.
14       Okay. So you'll work out a schedule with
15   respect to that and submit it to the Court --
16       MR. SULLIVAN: Yes, Your Honor.
17       THE COURT: -- so that you hammer that out.
18       Now, what other things do we need to address?
19   Anything else?
20       MS. ELSON: If I could just ask for a
21   clarification on the consolidation, Your Honor?
22       THE COURT: Sure.
23       MS. ELSON: So, for infringement and damages,
24   for example, Foundry would not be attending their
25   depositions of our people?

9 (Pages 27 to 30)

Page 31

1    THE COURT: I assume that that's the case.
2    MS. ELSON: Thank you, Your Honor.
3    THE COURT: I'm not going -- there may be some
4  reasons why it's appropriate to do so. I don't think I
5  want to get into that.
6    MS. ELSON: Very good, Your Honor.
7    THE COURT: I'm prepared to consider a
8  reasonable protective order if you think you can't work
9  that out between you. But what essentially you have is
10  a case that -- two cases that are consolidated for
11  purposes of trial management here. And I'm looking
12  right now at the shared issues and less at the
13  individual issues. And it seems to me that the two
14  defendants here are sufficiently vigilant about their
15  own concerns that they're not going to show up at the
16  wrong depositions. And you will allocate that among
17  you.
18    But I'd like you to get back to us within
19  two weeks with just your agreement with respect to
20  depositions -- that is, the gross outline of depositions
21  expressed in hours and shared between the defendants
22  here. I'll leave it to the defendants to allocate their
23  time among themselves. All right?
24    MR. BAUER: Thank you, Your Honor.
25    MR. SULLIVAN: Thank you.

Page 32

1    THE COURT: So I guess I'm anticipating that
2  you're going to have one or the other of you do a
3  deposition of this inventor and that inventor rather
4  than both of you, but you're limited by the time.
5    Okay.
6    MR. SULIVAN: Thank you.
7    THE COURT: Okay. Thank you very much.
8      RECESSED AT 3:45 P.M.
9
10     C E R T I F I C A T E
11    I, PAMELA R. OWENS, Official Court Reporter,
12  U. S. District Court, do hereby certify that the
13  foregoing is a true and correct transcription of the
14  proceedings taken down by me in machine shorthand and
15  transcribed by same.
16
17
18
19
20
21
22
23
24
25

**A**

ability 12:7
able 6:24 19:23 20:1
  21:9
absurd 17:25
abusive 9:20
accurate 26:19
accused 8:9
acting 9:21
action 10:6
acts 8:9
add 20:1
address 5:10 30:18
addressing 6:7
adopt 23:15
afternoon 3:5
agree 13:1 24:22,23
  25:1
agreed 12:3 27:17
agreement 7:5,8 9:15
  15:12 24:6,10,18
  27:16 31:19
ahead 19:15
Alan 1:14 3:10
allocate 24:13 28:14
  29:11 31:16,22
allotted 21:8
Alsop 17:5
alternative 10:23 11:1
  11:15,21 22:7
Alto 3:2
altogether 28:21
amount 3:23
analysis 16:6
answer 13:10
anticipate 20:13,25
anticipating 32:1
anyway 13:8 18:24
apart 26:20
apiece 26:21 29:8
apparently 14:22
Appearances 1:13,25
  2:1
apprehensive 22:15
appropriate 12:23 23:2
  24:15 31:4
area 14:12
argument 21:12
arithmetic 28:6
art 5:1 6:15 19:22,25
artificial 13:20
aside 21:1
asking 19:3 24:11,12
  30:5
assertion 8:9
assume 29:9 31:1
assuming 21:10
attempt 16:17

attending 30:24
Auchter 1:17 3:8,8
authority 8:6

**B**

B 27:14
back 3:13 11:3 12:14
  18:3 30:6 31:18
bad 11:24
balance 19:13
barred 14:17
basically 5:25 26:24
basis 10:6 12:8 17:23
Bauer 1:20 3:12,12
  6:25 7:20,24 9:2
  14:23 15:1,15,17,25
  24:5,20,25 26:2 27:2
  27:7,16,22 28:5,8,20
  29:15 31:24
behalf 1:16,18,21,23
  2:3 3:17,20
believe 3:22 8:6 15:6
  18:14 21:24
best 17:5 19:19,19
  21:20
better 22:13 23:10
beyond 6:15 13:18
bit 3:25 8:20 12:14
  15:20
Boston 1:16,21,23 2:15
  2:21
bound 15:18
Boylston 1:15
bringing 14:17
brought 21:13
burden 10:25 11:16
busy 11:18

**C**

C 32:10,10
Cabletron 24:9
calendar 15:3 16:4
  22:25
calender 16:10
California 2:2 6:23
  25:22
carve 21:23 22:2
case 3:22 4:18,21 5:14
  5:17 6:3,13 8:17 9:24
  10:3 12:17,25 13:12
  13:14,15 16:11 20:13
  23:3 24:7 29:17 31:1
  31:10
cases 4:1 5:23 8:7 10:2
  11:22 30:3 31:10
cause 15:10,13,14
  19:25 20:4 30:5
CA-05-11298-DPW

1:5 3:1
certain 8:23
certainly 4:9 9:5 19:19
  20:6 23:22 30:9
certify 32:12
change 12:8 13:2 15:8
  15:9
chart 17:23 23:18
charts 12:10 19:13
Chisholm 8:7
choose 17:21
chose 5:24
Christopher 1:14 3:6
circumstances 8:11
Ciresi 1:15,18 3:7,9
cites 5:23
claim 5:21 6:11 9:8
  12:9 13:5 14:15,19
  17:19,23 18:22,23
  19:13 23:15,17
claims 4:11 8:1,2,9
  10:13 12:6,16 13:1,2
  13:16,23 14:17,18
  15:4,5 16:3,7,25 17:4
  17:5,6,15,17,21 19:21
  20:17
clarification 30:21
clear 29:20
CLERK 3:3
clients 17:16
closer 26:10
code 5:18
coherent 13:12
come 18:3 30:5
comes 18:25
comfortable 20:8
comment 14:23
common 5:20
companies 24:8
competitor 4:18
competitors 8:12
complaint 9:25
completely 8:10
complicated 24:7
Computer-Aided 2:23
concern 6:15 8:4 14:9
  18:10 19:9,17
concerned 8:13 13:13
  22:24 26:13
concerns 31:15
conduct 19:12
conducted 7:19
conference 22:24
confidential 4:17 5:18
  6:16
conflict 22:3
confusing 28:25
consider 31:7

consolidate 4:1 5:3
  10:2
consolidated 4:7 5:2,9
  31:10
consolidating 4:24
consolidation 5:8 10:6
  26:17 30:2,21
construction 5:21 6:12
  12:10 13:5 14:15,19
  17:23 18:22 19:13
  23:18
constructions 18:23
construes 14:16
Contac 6:4
contention 21:17,17
contentions 8:1 12:12
  13:4 18:17 19:4,18,20
continue 23:22
continued 1:25 2:1
control 25:21
controlling 26:8
cooperate 6:12 28:14
cooperative 7:4
core 5:16,19 7:18 8:3
correct 9:2 32:13
counsel 3:3 16:5
count 25:8
counts 24:21 26:5,7
court 1:1,10 2:19 3:15
  3:21 4:8,12,22 5:3,5
  5:12,13 6:2,5,18 7:10
  7:17,22 8:13,19 9:6
  9:23 10:5,18,24 11:3
  11:4,9,13,16,18,20
  12:2,13 13:5,7,13,18
  13:22 14:2,4,9,15,19
  14:20,25 15:12,16,20
  16:13,22 17:8,10,22
  18:3,7,8,18,22 19:6
  19:10 20:2,4,7,12,18
  20:20,24 21:2,4,7,16
  21:18,23 22:2,6,12,17
  22:20 23:4,8,13,21
  24:3,19,24 25:10,17
  25:25 26:3,11,17 27:5
  27:10,21 28:4,6,9,12
  28:19,21 29:2,6,18,23
  30:1,6,7,9,12,15,17
  30:22 31:1,3,7 32:1,7
  32:11,12
Courthouse 2:15,20,20
Courtroom 2:14
courts 5:15,24 25:8
Court's 27:25
covering 17:15
co-defendant 4:18,22
cross-examined 21:15

**D**

damage 8:24
damages 5:17 8:4
  30:23
date 11:18 16:11 18:12
  22:3,10,13,20
dates 12:4
day 14:21,22 18:4 20:9
  22:4 25:9,23
days 21:9,9,22 24:6,10
  24:11,12,21 25:1,2,9
  26:19 27:3,3,8,8,23
  27:24 28:2,4
deadline 19:18,24 22:7
deadlines 18:11
deals 23:24
dealt 18:15
decide 28:14
decision 11:10
declare 12:7
declining 6:6
defendant 1:21,24 2:3
  3:17 27:13,14
defendants 1:7 4:10,11
  5:4 6:17 7:14 10:13
  10:23 12:11 14:13
  17:13 22:17,23 27:19
  27:22 31:14,21,22
defendant's 11:15
defenses 5:20
defunct 24:8
Delaware 6:2,3,19
Denver 16:24
deposition 9:12,15 17:3
  23:25 24:14,17,21,22
  25:2,2,5,6,23,24
  26:23 28:17,18 32:3
depositions 5:1,3 7:14
  7:15 8:23 9:7,10,17
  9:19 16:12 25:15,15
  26:8,9,13,20,23,24
  27:1,20 29:22 30:25
  31:16,20,20
desires 21:2
detail 9:1
details 7:17
determination 28:12
determine 15:14
devil 7:17 9:1
difference 9:18 15:16
  27:12,25
different 7:13 10:12,13
  10:14
differently 3:25
difficult 10:15
Digital 24:8
direct 8:12
directly 15:2

Page 34

disclosure 4:17
disclosures 4:21,23
discovery 3:24 4:2,6,16
  4:25 5:2 7:1 9:3,4
  12:24 13:3 17:2,14,14
  19:12
discussion 16:18
dispute 10:20,22
disputes 23:17
District 1:1,2,10 2:20
  6:1,18,23 17:6 32:12
divided 28:11
documents 7:6,7 12:17
  17:2
doing 9:7 19:6 29:10
DOUGLAS 1:9
downside 11:8
drawn 9:24
Drive 2:2
drop-dead 19:24
D.C 1:18

**E**

E 1:14 32:10,10
earlier 16:18 19:2
easier 25:8
effort 3:23
either 7:2
election 14:18
Elson 2:2 3:16,16 5:10
  5:13 6:9,21 8:3,16
  16:20,23 17:9,12 18:2
  18:10,20,25 19:8 27
  20:3,6 30:20,23 31:2
  31:6
Emery 1:22 2:2 3:17,20
employees 7:15
encourage 16:14
enforceability 6:14
engineer's 17:3
Enterasys 1:4 3:7,9,11
  18:13
entitled 25:14,15
entries 18:14
Equipment 24:9
equivalent 18:24
ESQ 1:14,15,17,20,20
  1:22 2:2
essentially 31:9
events 5:8
evidence 21:13
exactly 4:8 28:3
example 24:23 30:24
exception 19:12 22:8
excessive 26:21
exchange 9:4
Extreme 1:7,23 2:3
  3:18,20 6:2 7:6,6,7

9:14,24 16:20 27:13
expensive 17:16
experience 16:23
experts 7:16 9:13
exposure 8:5
expressed 31:21
extrinsic 21:13

**F**

F 32:10
face 4:17
fact 6:22
fairness 22:17
faith 9:21
false 22:20
far 11:23
Farnan 6:1
Farnan's 6:5
fashion 7:23
federal 25:13 26:10
fee 10:1
fight 23:25
fighting 20:14
figure 11:22
filed 9:25 30:3
filing 10:1
final 22:24
find 8:7 19:22 25:8
fine 9:11,16 10:4 19:9
  22:1 29:5 30:8
finger 15:2
first 24:3
five 12:16 16:25 17:4
  17:20
flock 14:20
Floor 1:21 2:14
focus 16:8
followed 5:15 6:1
footnote 24:22
footnotes 24:24
forbid 29:16
force 13:11
foregoing 32:13
forth 10:16 14:8
found 19:25
Foundry 1:6,21 3:14
  5:13 6:3 7:5,6,7 8:12
  9:13 27:12 30:24
four 12:6,16,19 13:1,19
  13:21 14:8 17:4,7,17
four-day 27:25
Francisco 17:11
front 12:13
fruitful 16:19
fruitless 20:12
full 29:8
function 20:17
functional 18:23

fury 3:21

**G**

general 6:20
generalities 13:14
generally 6:14,23 12:15
getting 11:17
give 13:22 23:6,14
given 19:20
go 7:9 10:11 18:16
  19:15 24:3 26:12
God 29:16
goes 4:25
going 4:13,15 7:3,8
  8:14,22 9:7,9,14,19
  9:23 12:19 13:1,6,16
  14:5 17:22 19:10
  20:21 22:10,12,13,21
  23:1,5,21,23 24:1,9
  26:3 28:13 29:12,25
  31:3,15 32:2
good 3:5 9:21 11:23
  12:16 15:10,13,14
  19:14,25 20:4 30:5
  31:6
gotten 24:3
gross 31:20
guess 6:6 8:19 9:23
  10:7 14:20 17:22
  21:16 32:1
guidelines 6:24

**H**

hammer 30:17
hand 8:18 17:24
handled 21:1
happen 22:14
happens 18:4
happy 11:25 18:4,8
  28:2 30:13
hear 16:4
heard 8:21
hearing 1:11 11:22,23
  14:10 16:9 20:9,15
  21:6 23:8,15
hearnig 23:6
help 22:21
highly 5:17 6:16 13:18
Honor 3:5,12,16 4:4,6
  5:11 6:21,25 7:12,20
  8:4,16,25 9:12,17
  10:4,9,22 11:1 12:20
  13:10,20 14:1,6,23
  15:1,15 16:20 17:12
  18:2,6,11 19:9 20:3
  20:16 21:22 22:5,9,10
  23:3,12 24:2,5 25:12
  26:19 27:2 28:24

29:15,20 30:4,11,16
  30:21 31:2,6,24
HONORABLE 1:9
hope 10:8
hour 25:6
hours 24:11,13,14,17
  24:21 25:6,8,16,16
  26:9,12,20,22,25 27:1
  27:1,4,6,11,11,14,14
  27:17,18 28:1,3,5,9
  28:10,17,17 29:1,8,16
  29:22 31:21

**I**

idea 14:5 19:14 22:13
  23:10 26:12
identification 16:7
identified 18:7 30:2
identify 3:3 15:4,5
imagine 16:13
implicit 20:2
inappropriate 8:11
incentive 16:3
included 21:5
independent 5:19 8:10
indicated 28:22
indication 13:4
individual 4:10 31:13
information 4:17 5:18
  6:16 8:6
infringement 4:10 5:17
  7:25 8:4,24 9:8 19:1
  19:5 30:23
infringements 9:9
infringing 9:14
inquiries 4:9
intelligently 26:4
interested 16:1
interesting 8:15 29:3
International 1:20
interrogatories 18:15
  18:24 19:3,15 23:19
invalidity 12:11 19:18
inventor 5:1 24:23 25:4
  25:22 32:3,3
inventors 6:13 24:7
  25:20,21 26:25
inventory 25:1
involve 5:17
involved 11:9
irrelevant 4:21
issue 5:9 7:1,2 9:16
  12:5 14:13 15:2 21:1
  22:9 27:19
issues 4:25 5:16,22
  6:14 8:3 11:19 31:12
  31:13

**J**

January 14:25 20:9
Jeremy 1:20 3:13
John 2:20
join 6:11
joinder 8:10,15
joint 9:18 10:16 18:13
jointly 6:12
Jordan 6:3
Joseph 2:20
Judge 1:10 6:1,3,5,22
  8:17 16:17 17:5
judgment 21:12
July 12:10 15:6 16:11
  17:25 18:12

**K**

K 1:18
Kaplan 1:15,17 3:6,9
  3:11
kind 4:13 15:23 17:25
kinds 8:24 10:20
know 5:15 11:8 12:20
  13:12,15,15 14:16
  15:21,22 16:16 17:3
  18:17,20 19:1 20:14
  20:22 21:19 23:4
  27:12,13
knows 9:17

**L**

L 1:22
lasts 24:14
late 13:23
lateness 19:20
lawsuit 30:3
lawyer 21:12
leading 3:22
learn 12:18 21:20
leave 16:11 17:23 22:23
  31:22
leaving 21:1
left 7:25
let's 10:18
liability 8:8
limited 12:6 13:1 32:4
limits 17:6,7
lines 6:1
little 3:25 15:20 21:19
  26:13
live 10:8
LLP 1:15,18,20,23
long 9:19 10:8,8 15:3
  16:4 20:15,21
longer 18:16
look 5:23 24:5
looking 10:7 12:17
  31:11

lot 4:16 10:14 11:2,14
11:15 12:23 25:8
lots 10:12
Lucent 6:2

**M**

M 1:20 2:2
machine 32:14
making 4:15 5:16
11:10
management 7:15
31:11
Markman 5:21 6:11
10:19,21 11:10,19,22
11:23 14:10 16:9
17:1 20:8,15 21:6,11
23:6,8,15
Massachusetts 1:2,16
1:21,23 2:15,21
McDermott 1:22 2:2
3:17,19
McKENNA 1:15 3:10
3:10
mean 4:12 11:5 12:14
13:22 14:21 18:18
21:24 23:18 24:12
memorandum 6:6
method 2:23 30:2
Michelle 20:10
Miller 1:15,17 3:6,9
mind 23:16
mini-trial 21:14
minute 27:10
Moakley 2:20
Monday 21:25
months 12:22,22 23:2
motion 18:1 21:11
move 16:14 29:4
multiplicity 16:18
multiply 28:2

**N**

narrow 15:5
narrowed 16:25
narrowing 15:7,11
16:3,5,7 19:21
nature 13:21
necessarily 19:24
necessary 4:19 6:8,10
need 13:11 19:1 30:18
Networks 1:4,6,7,21,23
2:3 3:14,18,20
never 12:15 13:2 14:14
15:8
night 13:23
nine 12:22
non-duplicative 7:22
non-expert 26:12

Northern 6:23 17:5
NOVEMBER 1:12 3:2
number 10:3 15:9
23:24 24:6,12 26:8
27:18 28:1
N.W 1:18

**O**

objects 25:11
Oczek 1:20 3:13
Official 2:19 32:11
Okay 3:15 7:10 15:16
21:23 23:7 29:24
30:14 32:5,7
ones 11:24 29:11
one-hour 25:4
onus 11:2
open 22:4 23:3
order 6:9 8:17 11:25
31:8
orders 4:14 6:7,19
ought 5:9 12:14
outline 31:20
outright 17:7
outside 21:22
Owens 2:19 32:11

**P**

P 1:9,14,20 3:6
page 1:25 18:13 24:25
Palo 2:2
Pamela 2:19 32:11
part 14:12
particular 9:22
particularized 6:7
particularly 4:16 8:11
parties 5:7,20 9:15 12:3
15:13 23:19 26:14
27:17 29:3,6
parts 4:6
party 25:14 27:6,8
patent 3:22 5:1,14
11:21 12:7 13:21
14:16 16:25 17:4,6,17
17:19
patents 10:12 13:24
15:4
penalizing 11:17
people 7:13 9:7,13
30:25
period 19:15 21:24
23:9
permit 18:16
Peter 1:22 3:19
phase 4:16,24
Phillips 6:4
phrased 14:14
piece 19:22

place 1:20 6:19 7:24
24:15 28:13
placeholder 22:25
plaintiff 1:4,16,19 3:7,9
5:23 8:21 10:10 11:7
11:17 13:11 16:14,15
16:24 18:11 25:11
27:10,15,18 29:21
plaintiffs 12:6 17:6
plaintiff's 27:24
please 3:3
point 4:3,5 17:1 23:14
23:23 26:18 27:12
Porter 2:2
position 7:12 28:3
positions 3:24
possible 10:11 22:17,19
potential 6:15
practical 4:12 8:14
preliminary 15:7,10
18:17
premature 13:10
prepared 16:16 26:11
31:7
present 9:14 16:17,18
press 20:21
presumably 9:6
presumed 25:16
pretrial 4:24 8:5 22:24
pretty 17:4 19:14 29:13
prevents 19:6
prior 5:1 6:15 19:22
probably 4:21 14:7,11
14:12 21:4,4,9
problem 4:2 7:11 9:5
9:22 12:23 19:16
29:16
proceed 8:14 10:5
21:11,15,20
proceeding 21:11
proceedings 32:14
process 6:11,12 22:7
23:18
produced 7:1
products 10:14 16:8
proliferated 13:18
promptly 16:15
proposal 5:8,15,25 27:3
27:8,22,23,24
propose 5:6
proposing 6:10 18:12
18:13 25:3
propound 19:14
Proskauer 1:20 3:13
protective 4:14 31:8
provide 19:19
provided 23:16
prudent 23:22

prune 23:22
public 4:20
purposes 4:1 31:11
put 3:23,25 11:2 15:1
28:1
puts 11:5
putting 11:16 14:7
P.M 2:16,16 32:8

**Q**

question 11:16 24:10
25:13
questions 7:18 8:14,15
8:24 10:19 19:3
quicker 10:16 16:10
quickly 10:11 22:16,19
quite 3:21

**R**

R 2:19 32:10,11
raise 14:14
range 17:19,20
rarely 12:16
reads 24:24
real 11:8,21 23:25
realistically 10:10,15
really 5:18 7:2,7 12:4
14:4 21:12
reason 15:2,10
reasonable 23:9 29:9
29:10 31:8
reasons 17:10 31:4
RECESSED 32:8
RECORD 20:11
regard 9:13
relate 6:13
relevant 4:11
Render 28:10
Reporter 2:19 32:11
Reporting 2:23
require 4:23 23:21,23
Resnik 1:22 3:19,19 4:5
4:9,15 5:6
resolve 11:18
respect 9:8 10:20 23:16
27:19 30:15 31:19
right 7:20 8:15 9:1
10:18 11:13 14:4
15:4 16:2 20:24 21:7
22:12 24:9 27:21
28:4,8,10 29:18 31:12
31:23
Robert 1:17 3:8
Robins 1:15,17 3:6,8
3:10
Rose 1:20
round 24:12 28:1
rounded 27:4

rounds 27:7
rue 14:21
Rule 16:6
rules 25:13 26:10
ruling 6:20

**S**

S 32:12
sample 6:22 8:17
San 17:11
saves 17:9,13
saying 13:21 15:17,18
17:13 26:7 28:8
says 15:12 16:15
schedule 10:7,17,20,23
11:1,11 18:14 20:7
23:6,14 29:7 30:14
scheduling 12:5 21:24
26:4
Scherazade 15:21
scope 16:11
see 9:21 11:24 16:13
19:16 20:15
seeing 9:17 19:21
seen 10:24 13:3 17:2
sense 11:2,15 23:11
29:7
separate 8:23 9:9,9,25
10:2
separately 9:24
sequence 12:2
serve 12:11 19:2,18
set 6:7 10:16 22:3,10,12
sets 7:13 30:3
Setting 22:20
seven 14:3,12 28:2,5
sever 4:1 5:24 6:6 9:23
severance 6:20
severed 22:11
share 12:15 29:11
shared 31:12,21
sharing 6:16
shorthand 32:14
show 31:15
showing 15:13
side 5:7 7:9 25:14,14
side's 17:2
sieve 15:23
sight 29:13
simply 15:9 18:15,20
19:2,23
single 10:6
sit 11:5
situation 9:20 25:22
six 10:12 12:21 14:2
15:4 23:2 24:25
slot 23:2
somebody 25:7

Page 36

| | | | |
|---|---|---|---|
| sooner 16:1,9 | 23:3 24:16,20 25:3,6 | 11:18 12:18 14:7 | want 7:12,14 8:19 9:12 | 11298 10:3 |
| sorry 25:14 27:11 | 26:22 | 16:24 17:16,18,19,21 | 10:2 14:4 15:3,5 | 1200 1:18 |
| sort 4:13 5:5 16:6 | taken 12:24 13:3 17:3 | 22:3,10,13,16,18,20 | 19:14 21:19 22:16 | 125 15:4 17:15 |
| sorts 6:24 | 32:14 | 23:2 31:11 | 23:17 24:14 25:21 | 13 25:6 |
| sound 3:21 | takes 20:7,8 | troubled 5:24 | 31:5 | 14 26:25 |
| source 5:18 | talk 23:9 28:25 | true 32:13 | wants 25:25 | 16 6:13 24:7 25:20 |
| speaking 10:10,15 | talking 10:12,13,14 | try 13:11 20:13 | Washington 1:18 | 17 18:12 |
| specific 6:19 23:23 | 12:21 | trying 11:22 16:1 | way 2:15,20 4:13 7:3 | 17th 12:10 17:25 |
| specifically 5:21 | tease 8:19 | turn 7:5,6 10:18 19:22 | 13:10,12 14:13,15 | 1801 1:18 |
| specifics 13:14 19:11 | technology 21:3 | turned 30:9 | 15:24 19:11 21:18,20 | |
| 29:12 | tell 19:3 29:2,18 | tutorial 21:2,10 | 21:21 22:23 24:16 | **2** |
| spend 11:21 | telling 18:17 | twice 27:15 | 25:3 28:25 | 200 24:11,13 26:14,20 |
| spoken 15:6 | terms 7:1 11:17 12:5 | two 5:20,22 7:13 10:2 | ways 11:14 | 27:4,6,11,11,14,14 |
| staking 3:23 | 26:25 29:21 | 10:13 16:2 17:6 | week 25:24 | 28:1,17 29:8 |
| standing 12:25 | testifying 21:14 | 20:20,23 21:9 24:21 | weeks 12:11 31:19 | 20006 1:18 |
| start 12:25 15:21,23 | Thank 18:2 20:3 22:5 | 25:1,2 27:23,24 30:3 | weigh 16:20 | 2005 1:12 3:2 |
| 21:25 | 30:11 31:2,24,25 32:6 | 31:10,13,19 | weight 8:6 | 2006 15:6 18:12 |
| starts 18:12 | 32:7 | two-and-a-half 16:2 | we'll 10:5 13:1 14:7 | 2007 14:25 20:9 21:25 |
| State 1:23 | theories 19:1,4 | two-hour 25:24 | 21:25 23:1,9,14,15 | 21 27:1 |
| STATES 1:1,10 | theory 8:8 | | we're 4:15 5:16 6:10,23 | 22nd 1:21 |
| staying 13:23 | they'd 27:17 | **U** | 9:11 10:14 12:21 | 25 26:22,23 29:21 |
| Steven 1:20 3:12 | thing 16:1 | U 32:12 | 14:17 15:17,25 23:1 | 2500 1:15 |
| Street 1:15,18,23 | things 11:9 30:18 | ultimately 17:18 | 24:6,10,11,12,17 25:5 | 28 1:23 27:7 |
| structure 16:14 | think 4:6 5:1,8 8:25 | uncomfortable 8:22 | 26:6,9,19 27:25 28:1 | |
| subject 8:23 | 9:17 10:9,14 11:2 | understand 8:20 10:19 | 28:3,8 29:16 | **3** |
| subjected 7:13 | 12:3,8,9,19,21,22 | 11:20 13:9 17:12,24 | we've 13:3 15:6 | 3 1:12 3:2 |
| submission 9:18 | 13:9,10,25 14:10,11 | 18:18 22:10,22 23:20 | White 6:22 8:17 | 3rd 2:14 |
| submit 5:7 12:9 30:15 | 15:1,15 18:7 19:11,13 | 24:16 25:10,17,20 | willing 10:25 | 3:08 2:16 |
| sufficiently 31:14 | 20:2,9,16,19,25 21:19 | 27:5 28:16,22 30:4 | wish 8:17 | 3:45 2:16 32:8 |
| suggested 22:23 26:22 | 21:22 22:6,8 23:5,13 | understanding 29:23 | wishes 11:1 | 30(b)(6) 7:25 27:1 |
| suggesting 25:5 26:7 | 23:22,24 26:5,8,11,21 | understood 9:1 | wit 22:21 | 3150 2:2 |
| Suite 1:15,18 2:20 | 28:20 29:4 31:4,8 | unfold 15:22 | witnesses 21:14 | 3200 2:20 |
| SULIVAN 32:6 | thinking 10:8 | unhappy 16:17 | WOODLOCK 1:9 | 350 29:16 |
| Sullivan 1:14 3:5,6 4:3 | three 5:15 14:8 18:13 | UNITED 1:1,10 | work 5:6 6:24 23:1 | 36 26:23,24 28:24 |
| 7:11 8:25 9:11 10:4,9 | 18:14 21:9,22 24:14 | unnecessarily 4:23 | 29:7 30:14 31:8 | 364 28:20 |
| 10:22 11:7,14 12:1,3 | 24:16,20 | unrealistic 11:12 | worked 5:25 | |
| 12:20 13:9,17,20,25 | three-hour 25:23 | unwieldy 17:15,18 | works 15:23 | **4** |
| 14:3,6,11 18:5 20:16 | time 7:21 11:21,23 14:7 | urge 4:22 21:21 | world 23:12 | 400 28:17 |
| 20:19,22,25 21:5,8,17 | 14:10 15:18,21 19:15 | use 15:23 23:19 25:7 | worrying 13:23 | |
| 21:21 22:1,5,8,15,22 | 19:20,23 20:21,22 | useful 16:19 | worth 12:17 | **5** |
| 23:7,11,20 24:2 25:12 | 21:6,23 22:4 23:9,19 | | wouldn't 7:5,6 18:5 | 52 24:11 27:2,24 28:2,4 |
| 25:19 26:6,16,18 | 24:15 26:5,7 28:15 | **V** | 29:13 30:13 | 28:19 |
| 28:11,16,24 29:5,20 | 31:23 32:4 | valid 14:17 | wrong 31:16 | 56 24:12 27:3,8,22 |
| 29:24 30:4,8,11,16 | times 26:22,24 28:5 | validity 4:25 6:14 | | |
| 31:25 | 29:21 | 17:14 | **Y** | **7** |
| summary 21:12 | timing 24:1 | validity/enforceability | years 16:2 | 7 25:16 26:22,22,24 |
| supplement 19:23 | today 16:5 | 5:22 | | 28:19 29:21 |
| supply 9:3 | told 10:23 | variety 17:10 | **0** | 7-1/2 25:16 |
| sure 5:12 10:19 16:22 | top 15:23 | Vera 2:2 3:16 | 02109 1:23 | 75 13:23 |
| 20:18 25:10 27:5 | topics 7:14 | versus 1:5 6:2,4 8:1 | 02110 1:21 | |
| 30:22 | total 27:2,8 | view 4:3,5 12:15 24:16 | 02199 1:16 | **8** |
| suspect 7:18 14:6 17:17 | tracking 25:13 26:9 | vigilant 31:14 | 02210 2:15,21 | 8th 21:25 |
| | transcribed 32:15 | virtually 12:4 | | 800 1:15 |
| **T** | transcription 2:23 | voluntarily 16:24 | **1** | |
| T 32:10,10 | 32:13 | | 1 2:14,15,20 | **9** |
| table 3:13 | travel 26:5,7 | **W** | 10 25:15 | 94304 2:2 |
| take 7:15 9:19 10:25 | treatise 8:7 | wait 11:6,11 23:2 27:10 | 10th 14:25 20:9 | 98 8:17 |
| 11:1 17:17 20:21 | trial 4:20,20 8:5 10:11 | waive 10:1 | 11 16:6 | |

# Exhibit 3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ENTERASYS NETWORKS INC
    Plaintiff

                                     CIVIL ACTION NO. 05-1128-DPW

v.

FOUNDRY NETWORKS, INC ET AL,
    Defendant

## SCHEDULING ORDER

WOODLOCK, D.J.

       This Order is intended primarily to aid and assist counsel in scheduling and planning the preparation and presentation of cases, thereby insuring the effective, speedy and fair disposition of cases, either by settlement or trial.

       The above-entitled action having been heard on November 3, 2005, it is hereby ORDERED pursuant to Rule 16(b) of the Federal Rules of Civil Procedure and Local Rule 16.1(F), that:

| Pre-Trial Event | DEADLINE |
|---|---|
| Deadline for Enterasys to serve claim construction charts identifying asserted claims and products accused of literal or doctrine of equivalents infringement | July 17, 2006 |
| Deadline for Defendants to serve invalidity contentions identifying each asserted item of prior art and the basis on which it anticipates or renders obvious each asserted patent claim | August 4, 2006 |
| Deadline for Defendants to serve responsive claim construction charts identifying which claim elements they admit are present in any accused products, and as to all other claim elements their bases for denying that said elements are present | August 18, 2006 |
| Simultaneous exchange of preliminary proposed constructions for the claim elements that each party contends should be construed by the Court | September 1, 2006 |
| Deadline for Defendants to provide notice of intention to rely upon opinions of counsel to potentially avoid willful infringement findings | September 15, 2006 |

| Deadline to file a joint claim construction statement providing shared constructions of claim elements on which the parties agree, and alternative proposed constructions of disputed claim elements | September 18, 2006 |
|---|---|
| Beginning of Phase II fact discovery encompassing all issues, including those issues addressed during Phase I | October 3, 2006 |
| Deadline for all parties to file their opening claim construction briefs | October 18, 2006 |
| Deadline for all parties to file their claim construction reply briefs | November 20, 2006 |
| Markman claim construction hearing | 3 Days Beginning on January 10, 2007 at 9:00 am |

Further scheduling shall be address at completion of Markman Hearing.

All provisions and deadlines contained in this order having been established with the participation of the parties to this case, any requests for modification must be presented to the judge or magistrate judge, if referred for case management proceedings. Any requests for extension will be granted only for good cause shown supported by affidavits, other evidentiary materials, or reference to pertinent portions of the record. The request shall be made by motion and shall contain the reasons for the request, a summary of the discovery which remains to be taken, and a date certain when the requesting party will complete the additional discovery, join other parties, amend the pleadings or file motions. The Court may then enter a final scheduling order, if necessary.

Counsel are encouraged to seek an early resolution of this matter. Additional case management conferences may be scheduled by the court or upon the request of counsel, if the Court can be of assistance in resolving preliminary issues or in settlement.

By the Court,

/s/ Michelle Rynne
DATED:  November 18, 2005                  Deputy Clerk

**Exhibit 4**

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

ENTERASYS NETWORKS INC
    Plaintiff

CIVIL ACTION NO. 05-11298-DPW

v.

FOUNDRY NETWORKS, INC ET AL,
    Defendant

## AMENDED SCHEDULING ORDER

WOODLOCK, D.J.

    In accordance with the allowance of the Joint Stipulation Regarding Modified Scheduling Order Dates, it is hereby ORDERED that:

| Pre-Trial Event | DEADLINE |
|---|---|
| Deadline for Enterasys to serve claim construction charts identifying asserted claims and products accused of literal or doctrine of equivalents infringement | December 15, 2006 |
| Deadline for Defendants to serve invalidity contentions identifying each asserted item of prior art and the basis on which it anticipates or renders obvious each asserted patent claim | January 16, 2007 |
| Deadline for Defendants to serve responsive claim construction charts identifying which claim elements they admit are present in any accused products, and as to all other claim elements their bases for denying that said elements are present | January 30, 2007 |
| Simultaneous exchange of preliminary proposed constructions for the claim elements that each party contends should be construed by the Court | February 13, 2007 |
| Deadline for Defendants to provide notice of intention to rely upon opinions of counsel to potentially avoid willful infringement findings | February 17, 2007 |
| Deadline to file a joint claim construction statement providing shared constructions of claim elements on which the parties agree, and alternative proposed constructions of disputed claim elements | March 7, 2007 |
| Beginning of Phase II fact discovery encompassing all issues, including those issues addressed during Phase I | March 12, 2007 |

|  |  |
|---|---|
| Deadline for all parties to file their opening claim construction briefs | March 27, 2007 |
| Deadline for all parties to file their claim construction reply briefs | April 24, 2007 |
| Markman claim construction hearing | 3 Days Beginning on May 21, 2007 at 9:00 am |

Further scheduling shall be addressed at completion of Markman Hearing.

All provisions and deadlines contained in this order having been established with the participation of the parties to this case, any requests for modification must be presented to the judge or magistrate judge, if referred for case management proceedings. Any requests for extension will be granted only for good cause shown supported by affidavits, other evidentiary materials, or reference to pertinent portions of the record. The request shall be made by motion and shall contain the reasons for the request, a summary of the discovery which remains to be taken, and a date certain when the requesting party will complete the additional discovery, join other parties, amend the pleadings or file motions. The Court may then enter a final scheduling order, if necessary.

Counsel are encouraged to seek an early resolution of this matter. Additional case management conferences may be scheduled by the court or upon the request of counsel, if the Court can be of assistance in resolving preliminary issues or in settlement.

By the Court,

/s/ Michelle Rynne
DATED:   June 27, 2006                     Deputy Clerk

# Exhibit 5

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

---

ENTERASYS NETWORKS, INC,

       Plaintiff,

v.

FOUNDRY NETWORKS, INC. and
EXTREME NETWORKS, INC.,

       Defendants.

Civil Action No. 05-CV-11298 (DPW)

---

## FOUNDRY NETWORKS, INC.'S FIRST SET OF INTERROGATORIES (NOS. 1-11) TO PLAINTIFF ENTERASYS NETWORKS, INC.

Defendant Foundry Networks, Inc. hereby propounds the following interrogatories to Plaintiff Enterasys Networks, Inc. in accordance with the provisions of Rules 26 and 33 of the Federal Rules of Civil Procedure. Plaintiff shall answer the interrogatories in writing, separately and fully under oath, within thirty days of service of these interrogatories.

## DEFINITIONS

These interrogatories incorporate the definitions set forth in Foundry Networks, Inc.'s First Request for Production of Documents and Things to Plaintiff Enterasys Networks, Inc. and the Uniform Definitions in Discovery Requests of Local Rule 26.5 from the District of Massachusetts. In addition, the term "FOUNDRY PRODUCT" as used herein means any product designed, developed, manufactured, licensed, marketed, or sold by FOUNDRY.

## INSTRUCTIONS

A.     Each interrogatory is to be answered fully, unless good faith objected to, in which event, ENTERASYS shall state the reasons for ALL of its objections in detail. If an objection pertains to only a portion of an interrogatory, or to a word or phrase contained within an interrogatory, ENTERASYS shall state its objection to that portion only, and respond to the

remainder of the interrogatory, using its best efforts to do so. No part of an interrogatory may be left unanswered merely because an objection is interposed to another part of the interrogatory.

B.      If, in responding to any of these interrogatories, ENTERASYS encounters any ambiguity in construing either the interrogatory or a definition or instruction relevant to it, ENTERASYS shall set forth the matter deemed ambiguous and the construction used in responding to the interrogatory.

C.      If an interrogatory is silent as to the time period for which a response is sought, ENTERASYS shall identify or disclose ALL information or facts known, in whole or in part, at any time prior to and up through, the date of ENTERASYS' responses to these interrogatories.

D.      If ENTERASYS asserts a claim of attorney-client privilege, work product immunity, or any other privilege or immunity in objecting to any interrogatory or part of any interrogatory, ENTERASYS shall provide the following information for each claim:

(a)      the nature of the privilege being claimed (including work product or privilege);

(b)      the specific portion of the interrogatory to which the objection relates; and

(c)      if the privilege is being asserted concerning information contained in a particular DOCUMENT or communication, ENTERASYS shall identify:

(i)      the date or estimated date that the DOCUMENT was authored or generated or the communication was made;

(ii)     each author of the DOCUMENT or participant in the communication;

(iii)    each addressee or recipient of a copy of the document;

(iv)     the name and title of each PERSON who at any time has read or had possession of the document or of any copy thereof;

(v)      ALL grounds for any claim that the document is privileged or otherwise protected from discovery, in sufficient detail so as to allow for resolution of the propriety of such claim; and

(vi)     provide a summary of the subject matter of the DOCUMENT or communication sufficient to enable an evaluation of the claim of privilege.

E.    If any DOCUMENT or thing otherwise responsive to any interrogatory has been lost, discarded, or destroyed since its preparation or receipt, ENTERASYS shall identify, as completely as possible, the DOCUMENT or thing, and give full particulars or circumstances under which the document or thing was lost or destroyed, including, without limitation, each DOCUMENT'S date, the general nature of the DOCUMENT (*e.g.*, letter, memorandum, fax, electronic mail, etc.), the subject matter of the DOCUMENT, each author or originator, each PERSON indicated as an addressee or copy recipient, or known by ENTERASYS to have received a copy of the DOCUMENT or thing, and the DOCUMENT's former custodians.  In addition, as to each such DOCUMENT or thing, the following information shall be supplied:

(a)    date of disposal, loss or destruction;

(b)    manner of disposal, loss or destruction;

(c)    reason for disposal or destruction, or an explanation of the loss;

(d)    identity of the PERSON authorizing the disposal or destruction;

(e)    identity of the PERSON having knowledge of the disposal, loss or destruction;

(f)    identity of the PERSON who destroyed, lost or disposed of the DOCUMENT or thing; and

(g)    identity of any PERSON believed to have possession, custody or control of the DOCUMENT or thing.

F.    These interrogatories shall be deemed to be continuing and in the event that ENTERASYS becomes aware of additional knowledge or information responsive in whole or in part thereto after the date of answering specified herein above, ENTERASYS shall furnish such additional knowledge and information to FOUNDRY'S attorneys of record promptly after acquiring such additional knowledge or information.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Separately identify each FOUNDRY PRODUCT that ENTERASYS contends infringes any of the PATENTS-IN-SUIT, by name, product number, and/or description, and for each such product, include the specific claims that are allegedly infringed, and whether that alleged infringement is direct, contributory and/or by inducement.

**INTERROGATORY NO. 2:**

Describe in detail and provide a claim chart showing how each FOUNDRY PRODUCT identified in Interrogatory No. 1 infringes each of the corresponding claims. ENTERASYS' response to this interrogatory should: A) identify a proposed construction for each element of each asserted claim that ENTERASYS identifies as being infringed; B) identify specifically where each element of each asserted claim is found within each FOUNDRY PRODUCT, including citation to any supporting evidence; C) identify for each asserted claim element that ENTERASYS contends is a means-plus-function element governed by 35 U.S.C. § 112(6), the structures, acts, or materials in each FOUNDRY PRODUCT that performs the claimed function; and D) state whether each element of each asserted claim is literally present or present under the doctrine of equivalents.

**INTERROGATORY NO. 3:**

For each FOUNDRY PRODUCT identified in ENTERASYS' response to Interrogatory No. 1, state all facts concerning ENTERASYS' forming of its belief that the FOUNDRY PRODUCT infringes, including, but not limited to, the date that ENTERASYS first learned of the FOUNDRY PRODUCT; the date ENTERASYS first came to believe the FOUNDRY PRODUCT was allegedly infringing; the PERSONS, DOCUMENTS and things involved in informing ENTERASYS about the FOUNDRY PRODUCT and in forming ENTERASYS's belief that the FOUNDRY PRODUCT is infringing; and all efforts that ENTERASYS undertook to substantiate its belief that the FOUNDRY PRODUCT is allegedly infringing, including, but

not limited to, all acquisition, testing and reverse-engineering of FOUNDRY PRODUCTS and the individuals involved in such efforts.

**INTERROGATORY NO. 4:**

For each FOUNDRY PRODUCT identified in Interrogatory No. 1, identify the PERSON or PERSONS employed by or associated with ENTERASYS most knowledgeable regarding the structure, function, and operation of each such FOUNDRY PRODUCT.

**INTERROGATORY NO. 5:**

For each asserted claim of the PATENTS-IN-SUIT identified in response to Interrogatory No. 1, describe the circumstances surrounding the alleged invention of the claim, including but not limited to, the identity of ALL PERSONS involved in the conception of the alleged invention; the precise date of conception of the alleged invention; where the conception took place; the date of the first written description of the alleged invention; the date of first disclosure of the alleged invention to a PERSON other than the named inventor(s); the date of first testing of the alleged invention; the date of first actual reduction to practice of the alleged invention; where the first actual reduction to practice took place; ALL corroborating witnesses; the steps constituting diligence from conception to actual or constructive reduction to practice; the identify of each first product which incorporated any invention claimed in the patent; the date of first use of the alleged invention by a PERSON other than by a named inventor; the date of first advertisement or promotion of the alleged invention; the date of first sale or offer for sale of the alleged invention; and ALL project names, numbers, codes, descriptions, or other identifiers, whether external or internal, used by ENTERASYS and/or any prior owners of the PATENTS-IN-SUIT (including DEC or CABLETRON) relating to development of the subject matter of each of the PATENTS-IN-SUIT.

**INTERROGATORY NO. 6:**

Identify ALL articles, systems, products, components and/or devices ever sold by ENTERASYS and/or any prior owners of the PATENTS-IN-SUIT (including DEC or CABLETRON) which use an invention claimed in any of the PATENTS-IN-SUIT, and for each

such article, system, product, component or device, state which PATENTS-IN-SUIT covers that article, system, product, component or device, its date of commercial sale (beginning and end), and the PERSONS at ENTERASYS most knowledgeable about the design, development, testing, manufacture, marketing, sale, and licensing of each such article, system, product, component or device.

**INTERROGATORY NO. 7:**

Describe the marking of each article, system, product, component and/or device that has been marked with the number of any of the PATENTS-IN-SUIT in any manner pursuant to 35 U.S.C. § 287, including, but not limited to, any marking by ENTERASYS and/or any prior owners of the PATENTS-IN-SUIT (including DEC or CABLETRON), and any licensees (whether current or otherwise) of the PATENTS-IN-SUIT. For purposes of this interrogatory, the phrase "describe the marking" means provide: the name of the patented article, system, product, component or device; a product number, part number, or other identifying number; a description of the article, system, product, component or device; a list of all patent numbers that have been marked in any manner on the patented article, system, product, component or device; the date(s) that each patented article, system, product, component or device was first marked with each of the patent numbers; and, for each patent number marked on each patented article, system, product, component or device, information regarding whether the patented article, system, product, component or device was marked continuously with each patent number following the first marking with that patent number.

**INTERROGATORY NO. 8:**

Identify ALL prior art and ALL articles, references, products (whether on-sale or in public use) or other evidence that ENTERASYS is aware of or that ANY person or entity, including any PATENT AGENCY, has contended or asserted is prior art or otherwise relevant to the validity or invalidity of ANY claim of the PATENTS-IN-SUIT.

**INTERROGATORY NO. 9:**

Identify ALL PERSONS who participated in the prosecution of the PATENTS-IN-SUIT and related applications, including without limitation the PERSONS who provided technical input, drafted the application(s), prosecuted the application(s) before the PTO or other PATENT AGENCY, conducted prior art searches, reviewed prior art search results, drafted affidavits, drafted amendments, reviewed or commented on communications from the PTO or other PATENT AGENCY, prepared or filed papers in the PTO or other PATENT AGENCY and participated in interviews with the PTO or other PATENT AGENCY. With respect to each PERSON identified, state the nature and duration of his or her involvement.

**INTERROGATORY NO. 10:**

State ALL facts and identify ALL DOCUMENTS, communications, and things concerning the transfer of ownership or rights relating to any PATENTS-IN-SUIT, including ANY contracts, transfer agreements or assignments, between ENTERASYS and any third party, including DEC or CABLETRON.

**INTERROGATORY NO. 11:**

Identify ALL DOCUMENTS and witnesses on which ENTERASYS intends to rely at trial in this action.

Dated:  March 14, 2006

DEFENDANT FOUNDRY NETWORKS, INC.

By Their Attorneys,

Steven M. Bauer
Jeremy P. Oczek
PROSKAUER ROSE LLP
One International Place
Boston, MA  02110-2600
Telephone:  (617) 526-9600
Facsimile:  (617) 526-9899

William L. Anthony, Jr.
I. Neel Chatterjee
Michael F. Heafey
Sanjeet K. Dutta
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 614-7400
Facsimile:  (650) 614-7401

## CERTIFICATE OF SERVICE

I, Jeremy P. Oczek, hereby certify that on March 14, 2006, I caused the attached Foundry Networks, Inc.'s First Set of Interrogatories (Nos. 1-11) to Plaintiff Enterasys Networks, Inc. to be served by upon counsel of record for Enterasys Networks, Inc. by the following methods:

*Via Hand Delivery and E-Mail:*

Christopher P. Sullivan, Esq.
Marc N. Henschke, Esq.
Alan E. McKenna, Esq.
Robins, Kaplan, Miller & Ciresi LLP
800 Boylston Street, 25th Floor
Boston, MA  02199
E-mail:  cpsullivan@rkmc.com
E-mail:  mnhenschke@rkmc.com
E-mail:  aemckenna@rkmc.com

*Via E-mail Only:*

A. James Anderson, Esq.
Marla R. Butler, Esq.
Robins, Kaplan, Miller & Ciresi LLP
2600 One Atlanta Plaza
950 East Paces Ferry Road, N.E.
Atlanta, GA  30326-1386
E-mail:  ajanderson@rkmc.com
E-mail:  mrbutler@rkmc.com

*Via E-mail Only:*

Robert A. Auchter, Esq.
Robins, Kaplan, Miller & Ciresi LLP
Suite 1200
1801 K Street, N.W.
Washington, D.C. 20006
E-mail:  raauchter@rkmc.com

Jeremy P. Oczek

- 9 -

# Exhibit 6

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

---

ENTERASYS NETWORKS, INC.,

        Plaintiff,

    v.

EXTREME NETWORKS, INC.,

        Defendant.

Civil Action No. 05-12235-DPW

---

**EXTREME NETWORKS, INC.'S
FIRST SET OF INTERROGATORIES TO ENTERASYS NETWORKS, INC.**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, defendant Extreme Networks, Inc. ("Extreme Networks"), by its attorneys, hereby submits the following interrogatories to plaintiff Enterasys Networks, Inc. ("Enterasys") and requests that Enterasys answer them separately and fully under oath, in writing, and signed by an officer making such answer within thirty (30) days after service hereof. These interrogatories are continuing, and Enterasys must supplement its responses.

**DEFINITIONS**

As used herein and in all further discovery requests, unless specified otherwise, the terms listed below shall be defined as follows:

1.     "Enterasys," "you," and "your" means plaintiff Enterasys Networks, Inc., its parents, subsidiaries, divisions, affiliates, predecessors, assigns, successors, and acquired assets or business units, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, patent agents and/or all other persons acting, or purporting to act, on

their behalf, including, but not limited to, Cabletron Systems, Inc. and Digital Equipment

Corporation.

    2.    "Extreme Networks" means defendant Extreme Networks, Inc.

    3.    "Foundry Networks" means Foundry Networks, Inc.

    4.    "Person" shall mean individual, individuals, business entity or entities, including,

but not limited to, associations, corporations, partnerships, or business trusts, any federal, state,

or local government or governmental agency, and any foreign government or foreign

government agency or other organization recognizable at law and the "acts" of a Person, are

defined to include the acts of directors, officers, owners, members, employees, agents or

attorneys acting on the Person's behalf.

    5.    The terms "documents" or "document" means any original and every non-

identical copy or reproduction of any document, writing or record within the broad context of

Rule 34 of the Federal Rules of Civil Procedure, in the possession, custody or control of

Enterasys, including, for example, but not limited to: any written, printed, typed, or other graphic

matter of any kind or nature; any physical object or thing, animate or inanimate; all mechanical,

magnetic, digital, or electric sound or video recordings or transcripts thereof; any retrievable

data, communication (including, but not limited to, electronic mail) information, or statistics

contained on any memory device or other information storage and retrieval systems (whether

stored, encoded, taped, or coded electrostatically, electromagnetically, optically, digitally, or

otherwise); and also without limitation, agreements, books, catalogs, charts, compilations,

conversations, correspondence, descriptions, diagrams, diaries, directives, drawings, electronic

recordings, facsimile transmissions, files, films, graphs, inspection reports, interoffice

memorandums, instructions, letters, maps, measurements, memoranda, minutes, motion pictures,

notes, notebooks, notices, pamphlets, periodicals, photocopies, photographs, plans, plats,

proposals, publications and published or unpublished speeches or articles, recordings, records,

sampling results, laboratory reports, reports, reproductions, samples, schedules, sketches,

specifications, statements, studies, summaries, surveys, telecopies, telegrams, telephone call

slips, and transcripts of telephone conversations, test results, transcripts, videotapes, worksheets,

and working papers that are in the possession, custody or control of the Plaintiff, wherever

located. "Documents" and "document" shall also mean all copies of documents, by whatever

means made (including, but not limited to, carbon, handwritten, microfilmed, telecommunicated,

photostatic or xerographic copies), and include all non-identical copies (whether different from

the original because of any alterations, notes, comments or other material contained thereon or

attached thereto, or otherwise). "Documents" and "document" shall also include any and all data

compilations from which information can be obtained.

6.    The terms "communication" or "communications" shall mean any communication

regardless of the manner in which communications took place, including, but not limited to,

personal conversations, correspondence, electronic or computer mail, telephone calls, facsimile

communications, or telegrams.

7.    The term "refer," "relate," "concern," "referring," "relating," or "concerning"

shall be construed in the broadest sense to mean information (1) referring to, describing,

evidencing, constituting, or otherwise discussing in any way the subject matter identified in a

request; (2) which contains or comprises any communication (including representations,

requests, demands, studies, analyses, and the like) referred to in these requests; or (3)

information which discusses, mentions or refers, whether directly or indirectly, to the subject

matter of the request.

8.      The terms "and" and "or" shall be understood as either conjunctive or disjunctive whichever is more inclusive in content.

9.      The terms "any" and "all" shall be considered to include "each and every."

10.     The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of a noun or pronoun so used, and vice versa.

11.     The term "Complaint" means the Complaint filed by Enterasys in this action.

12.     The terms "the asserted patents" and "the patents in suit" shall mean U.S. Patent Nos. 5,251,205; 5,390,173; 6,128,665; 6,147,995; 6,539,022 and 6,560,236.

13.     The term "'205 patent" means U.S. Patent No. 5,251,205.

14.     The term "'173 patent" means U.S. Patent No. 5,390,173.

15.     The term "'665 patent" means U.S. Patent No. 6,128,665.

16.     The term "'995 patent" means U.S. Patent No. 6,147,995.

17.     The term "'002 patent" means U.S. Patent No. 6,539,022.

18.     The term "'236 patent" means U.S. Patent No. 6,560,236.

19.     The terms "inventor," "inventors," or "named inventors" shall mean the inventors named in each of the patents in suit.

20.     The term "prosecution" shall mean or refer to proceedings before any patent office, either the United States Patent and Trademark Office or a foreign patent office, in connection with the filing, issuance, reexamination, reissue or review of, or opposition to, a particular patent.

21.     The term "public use" shall mean or refer to any public or private use or demonstration, whether experimental or otherwise, of the alleged invention or which disclosed

4

the alleged invention to anyone other than an employee, agent or attorney of Enterasys, including without limitation existing or potential investors, licensees, customers or distributors.

22.     The term "sale" shall mean or refer to public or private efforts of any sort in connection with the commercialization of an alleged invention, whether experimental or otherwise, including without limitation any offers for sale or license, actual sales or licenses, or any advertising of or price quotations for the alleged invention.

23.     The terms "related patent," "related patents" or "related patent or application" shall mean all patents and patent applications, whether resulting in an issued patent or not, that the patents in suit claim priority to, all patents and patent applications, whether resulting in an issued patent or not, that claim priority to the same patents and patent applications that the patents in suit claims priority to and all patents and patent applications, whether resulting in an issued patents or not, that claim priority to the patents in suit, including divisionals, continuations, and continuations-in-part.

24.     The phrase "each of the patents in suit" means any and all of the patents in suit.

25.     The term "prior art" shall mean or refer to any U.S. or foreign patent or patent application, publication, reference, process, machine, manufacture, or composition of matter, item or information under 35 U.S.C. § 102 and or 35 U.S.C. § 103 that relates to the subject matter of one or more claims of the patents in suit, even though Enterasys may contend it does not anticipate or render obvious the inventions claimed in the patents in suit.

26.     The term "IEEE" means to the Institute of Electrical and Electronics Engineers.

27.     The term "ATM Forum" means the Asynchronous Transfer Mode Forum.

28.     The term "ITU-T" means the Telecommunication Standardization Sector of the International Telecommunications Union, including but not limited to any predecessors, such as the CCITT.

29.     The term "RFC" means the "Request for Comments" Editor, as described at http://www.rfc-editor.org/.

30.     The term "industry standards bodies" includes, but is not limited to, the IEEE, the ATM Forum, the ITU-T, the RFC, the T1 Committee of the American National Standards Institute, and the Frame Relay Forum.

31.     The term "network switching and protocol standards" refers to any standards set by standards bodies relating to the subject matter of the patents in suit.

32.     The term "communications network equipment and systems" includes, but is not limited to, packet switching systems, packet communications networks, bandwidth allocation and congestion control schemes for integrated voice and data networks, user to network interface protocol for packet communications networks, data network message broadcast arrangements, switches, routers, networking computers, nodes, hubs, files servers, bridges, gateways, and equipment, systems, protocols, and schemes used in Ethernet networking, Local Area Networks (LANs), Metropolitan Area Networks (MANs), and Wide Area Networks (WANs).

33.     "State the basis" and "identify" shall have the meaning ascribed to them in Local Rule 26.5(c).

## INSTRUCTIONS

The following instructions apply:

1.     The definitions incorporated and set forth herein shall have the broadest possible meaning under Rule 26.

2.      All interrogatories must be answered fully and in writing in accordance with Rule 33, and signed by Enterasys.  In the event that any interrogatory cannot be answered fully after the exercise of reasonable diligence, furnish as complete an answer as you can and explain in detail the reasons why you cannot give a full answer, and state what is needed to be done in order to be in a position to answer the interrogatory fully, and estimate when you will be in that position.

3.      If the procedure for answering interrogatories by identifying documents is used, for each interrogatory and subpart thereof specify by Bates number the specific document or group of documents responsive.

4.      If any documents referred to in Enterasys's response to these interrogatories were, but are no longer, in the possession, custody, or control of Enterasys, state what disposition was made of them and when.  If any documents referred to in response to these interrogatories have been lost or destroyed, describe in detail the circumstances of such loss or destruction and identify each lost or destroyed document (and all files that contained such documents).

5.      If any information is withheld under a claim of privilege, such information shall be separately identified on a privileged document list that shall conform to Rule 26, including stating the nature of the privilege claimed and providing sufficient information to permit a full determination of whether the claim is valid.  For allegedly privileged documents, include: identification of the sender and the recipients of the document; the date of the document; a description of the contents or nature of the document; the number of the discovery request or interrogatory to which the document is responsive; and an explanation of the basis for the asserted claim of privilege.

6.      If Enterasys objects to any subpart of a request for information or objects to providing certain information requested, state Enterasys's objection and answer the unobjectionable subpart(s) of the request for information and/or supply the unobjectionable information requested.

7.      If any of the following requests for information cannot be responded to in full after exercising reasonable diligence to secure the information, please so state, supply the information for those portions Enterasys is able to answer, and supply whatever information Enterasys has concerning the portion which cannot be answered in full.  If any answers are qualified in any particular respect, set forth the details of such qualification.

8.      To the extent that requests for information involve the identification of documents, all responsive documents, wherever located, in the possession, custody, or control of Enterasys, including any documents contained in any personal files of present or past employees of Enterasys, are included.  Copies of documents that are not identical duplicates of the original document because of markings, handwritten notations, or other differences should be considered separate documents.  English translations or partial translations of foreign language documents should also be considered separate documents.

9.      Discovery requests are continuous in nature, and supplemental responses are required.  Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, Enterasys is under a duty to seasonably amend a prior response to an interrogatory or request for production if Enterasys learns that the response is in some material respect incomplete or incorrect.

## INTERROGATORIES

## INTERROGATORY NO. 1:

Separately for each asserted claim of each of the patents in suit, identify:

(a) each Extreme Networks product that Enterasys alleges infringes each such claim;

(b) explain in detail Enterasys' contentions as to how each such product allegedly infringes each such claim;

(c) provide a claim chart identifying specifically where each element or limitation of each asserted claim is found within each such product;

(d) state all bases for Enterasys's contention that the element or limitation is found within the product;

(e) provide an explanation of whether such alleged infringement is literal or under the doctrine of equivalents;

(f) specify whether Enterasys contends that there is any alleged liability under each of 35 U.S.C. § 271(a), § 271(b), § 271(c), § 271(f) and/or § 271(g);

(g) provide an explanation of how 35 U.S.C. § 112, ¶ 6 is satisfied if applicable, including the identity of the function and any corresponding structure in the specification;

(h) identify each person whose acts or omissions allegedly give rise to Extreme Networks' alleged liability; and

(i) identify each document and person upon which Enterasys may rely in support of its infringement contentions.

**INTERROGATORY NO. 2:**

Separately for each asserted claim of each of the patents in suit, identify the respective date of conception and date of reduction to practice of that claim, both actual and constructive, and describe any and all diligence between such conception and reduction to practice, including the identity of all documents and things that Enterasys may contend corroborates such dates and

diligence, and the identity of each person who Enterasys contends can corroborate such dates and diligence.

**INTERROGATORY NO. 3:**

Separately for each asserted claim of each of the patents in suit, identify the product or thing that constituted the first embodiment of each claimed invention and identify when it was first offered for sale, first sold, first publicly used, first publicly disclosed, or first disclosed to anyone not an employee of the assignee of the patent containing the claim; identifying each person with knowledge of the offer for sale, sale, public use, public disclosure or disclosure to anyone not then an employee of the assignee of the patent containing the claim and the subject matter of each person's knowledge; and identify all documents and persons with information relating to such offer for sale, sale, public use, public disclosure or disclosure.

**INTERROGATORY NO. 4:**

Separately for each asserted claim of each of the patents in suit, describe the features or functions of the claim which Enterasys contends were novel and not disclosed or described in the prior art, and identify all documents that support this contention and all persons with knowledge relating to this contention.

**INTERROGATORY NO. 5:**

Identify and state the basis for Enterasys' contention concerning (1) the pertinent art for each of the patents in suit, (2) the level of ordinary skill in the art, and (3) any "objective evidence" or "secondary considerations" of non-obviousness of any of the claims of each Asserted Patent in accordance with, for example, *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966), including, without limitation, commercial success, long-felt need, copying by others, attempts by others to solve the problems addressed by the patents in suit, and acceptance in the

industry and/or by the public of the claimed inventions, including the identity of any documents that Enterasys may rely upon as evidence of secondary considerations, or persons that Enterasys may rely upon to provide evidence of secondary considerations.

**INTERROGATORY NO. 6:**

Separately, for each patent in suit, identify the date by which Enterasys contends Extreme first had actual or constructive notice of the patents in suit under 35 U.S.C. § 287; explain how Extreme allegedly first obtained notice of the patents in suit (whether constructive or actual); and identify all documents and persons upon which Enterasys may rely in support of such contentions.

**INTERROGATORY NO. 7:**

Separately, for each patent in suit, explain in detail the basis for Enterasys's contention that Extreme Networks has willfully infringed any claims of the patents in suit and Enterasys's contention that this is an exceptional case under 35 U.S.C. § 285, including the identity of all documents and persons upon which Enterasys may rely in support of such contentions.

**INTERROGATORY NO. 8:**

Separately for each patent in suit, state the basis for Enterasys's contention set forth in Paragraph 7 of the Complaint that "Enterasys is the sole owner by assignments of all rights, titles, and interests in" the patents in suit and has standing to sue for infringement of each patent and explain in detail the facts underlying the chain of title or transfer of any proprietary rights or interests in the patent, including, without limitation: (a) all assignments, licenses, security interests, or reservations or grants of any rights or interests; and (b) the identity of each individual or entity that has held, at any time, any rights or interests in the patent (whether or not in the chain of title between the named inventor(s) and Enterasys), and the time period during

which those rights or interests were held, including the identity of any documents or persons upon which Enterasys may rely to support such contentions.

**INTERROGATORY NO. 9:**

Separately for each patent in suit, explain in detail when, where and how Enterasys first formed a belief that Extreme infringed the patent, identify (by Bates numbers) all documents relating to the formation of this belief, and identify all persons with information regarding the formation of this belief.

**INTERROGATORY NO. 10:**

Separately for each patent in suit, identify all pieces of prior art known (or made known) to Enterasys or to the inventors named in the patents in suit and contended by any third party to be invalidating prior art, and describe in detail when each such piece of prior art became known to Enterasys or to the inventors named in the patents in suit, the circumstances surrounding the identification of each piece of prior art, the identity(ies) of each individual(s) or organization(s) who disclosed each piece of prior art to Enterasys, and identify all claim charts or other written materials that support a contention that each such piece of prior art invalidates any claim of any of the patents in suit.

**INTERROGATORY NO. 11:**

Identify, on a patent-by-patent basis, any foreign counterparts to the patents in suit or related patents and all prior art, identified, disclosed or cited by anyone, during the prosecution of the patents in suit, all related patent applications and any foreign counterparts to the patents in suit or related patents, including but not limited to all prior art identified by any foreign patent office.

**INTERROGATORY NO. 12:**

Separately for each asserted claim of each of the patents in suit, identify any industry standard Enterasys contends practices the claim, state the basis for any such contention, and identify all directors, officers or employees of Enterasys who have participated in the proposal, consideration or adoption of the standard and all documents reflecting that participation.

**INTERROGATORY NO. 13:**

Separately for each named inventor of each patent in suit, identify the last known address, telephone number, and employer.

Respectfully Submitted,

EXTREME NETWORKS, INC.

By its attorneys,

Peter L. Resnik (BBO# 417180)
Benjamin A. Goldberger (BBO# 654357)
McDermott Will & Emery LLP
28 State Street
Boston, Massachusetts  02109-1775
(617) 535-4000

Terrence P. McMahon
Vera M. Elson
Behrooz Shariati
McDermott Will & Emery LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
(650) 813-5000

Christopher D. Bright
McDermott Will & Emery LLP
18191 Von Karman Ave.
Suite 400
Irvine, CA 92612-7107
(949) 851-0633

Dated: March 6, 2006

## CERTIFICATE OF SERVICE

I, Benjamin A. Goldberger, hereby certify that on the 6th day of March, 2006, a true and correct copy of the foregoing document was served by hand on counsel of record for Enterasys.

Benjamin A. Goldberger

BST99 1468895-6.065994.0016

# Exhibit 7

# United States District Court
# District of Massachusetts

ENTERASYS NETWORKS, INC.,

     v.                        CIVIL ACTION NO. 2005-11298-DPW

FOUNDRY NETWORKS, INC.,
EXTREME NETWORKS, INC.,
     Defendants.

## ORDER ON
## FOUNDRY NETWORKS, INC.'S
## MOTION TO COMPEL ANSWERS
## TO INTERROGATORIES NOS. 2 AND 3
## FROM ENTERASYS NETWORKS, INC. (#36)

COLLINGS, U.S.M.J.

     After hearing, the Court takes the following action on Foundry Networks, Inc.'s Motion to Compel Answers to Interrogatories Nos. 2 and 3 from Enterasys Networks, Inc. (#36):

     With respect to Interrogatory #2, the objections contained in the first paragraph of the response are OVERRULED.  The objections set forth in the

second paragraph are SUSTAINED in part and otherwise OVERRULED.  The plaintiff shall not be required to provide a claim chart before the deadline set by Judge Woodlock for producing such a chart.  However, the defendants are entitled to know at this time which of their products (or class of products) are alleged to infringe what claims of what patents held by plaintiff and a brief statement as to the reasons why the products are alleged to infringe.

Since plaintiff avers that this information is, in fact, provided in its answer to Interrogatory #1, the answer to which is incorporated by reference into the answer to Interrogatory #2, the Court shall craft its Order with reference to Interrogatory #1.

First, the objections set forth in the first two paragraphs of the response to Interrogatory #1 are OVERRULED.

Second, the motion to compel is ALLOWED to the extent that the plaintiff is ORDERED to provide a complete list[1] of each of the patents which it claims the defendants infringed and the specific claims of each of the patents defendants are alleged to have infringed.  This list shall be complete as of the

---

[1]  The Court (and the defendants) would not know whether what is set forth in response to Interrogatory #1 is a complete list because it is prefaced by the words "[s]ubject to and without waiving its objections...".  There is no way to know whether responsive information is being withheld on the basis of the objections.  This is a similar problem to the one which plaintiff identified in how defendants responded to plaintiff's document request.

present time and shall be supplemented promptly if necessary during the discovery period.

Third, the motion to compel is ALLOWED to the extent that the plaintiff is ORDERED to identify the products which Enterasys asserts infringe the patents, identify what products are alleged to infringe which specific claims of which patents, and provide a brief statement as to the reasons why the plaintiff asserts that each product infringes a certain claim or claims. Individual products need not be separately identified if a product line can be identified and each product in the product line infringes the same claims of the same patents in the same manner. The answer which plaintiff provides shall be complete as of the present time and shall be supplemented promptly if necessary during the discovery period.

The motion to compel a further answer to Interrogatory # 3 is DENIED.

The plaintiff is ORDERED to provide the further answers *on or before the close of business on Monday, July 17, 2006.*

/s/ Robert B. Collings

ROBERT B. COLLINGS
United States Magistrate Judge

June 26, 2006.

3

# Exhibit 8

| U.S. Patent No. 5,251,205 (the "'205 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| 1 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed product/product lines contain multiple protocol routing software algorithm features which practice each of the elements of the patent claim when used in the context of a communications network. In particular, these multiple protocol routing software algorithm features calculate packet routes using an algorithm corresponding to a single routing protocol for all received packets regardless of the multiple different routing protocol suites (e.g., the TCP/IP protocol suite; the OSI protocol suite; etc.) to which such packets may conform, and without the need to convert the destination address of any packet to an addressing convention associated with a routing protocol suite different from the one to which that packet conforms. |
| 2 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed product/product lines contain multiple protocol routing software algorithm features which practice each of the elements of the patent claim when used in the context of a communications network. In particular, these multiple protocol routing software algorithm features calculate packet routes using an algorithm corresponding to a single routing protocol for all received packets regardless of the two different routing protocol suites (e.g., the TCP/IP protocol suite; the OSI protocol suite; etc.) to which such packets may conform, and without the need to convert the destination address of any packet to an addressing convention associated with a routing protocol suite different from the one to which that packet conforms. |
| 3 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed product/product lines contain multiple protocol routing software algorithm features which practice each of the elements of the patent claim when used in the context of a communications network. In particular, these multiple protocol routing software algorithm features calculate packet routes using an algorithm corresponding to a single routing protocol for all received packets regardless of the two or more different routing protocol suites (e.g., the TCP/IP protocol suite; the OSI protocol suite; etc.) to which such packets may conform, and without the need to convert the destination address of any packet to an addressing |

| U.S. Patent No. 5,251,205 (the "'205 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | | convention associated with a routing protocol suite different from the one to which that packet conforms. The information handling device receives link state packets which conform to the routing protocol being used and calculates the route based on information in these link state packets. |
| 4 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed product/product lines contain multiple protocol routing software algorithm features which practice each of the elements of the patent claim when used in the context of a communications network. In particular, these multiple protocol routing software algorithm features calculate packet routes using an algorithm which comprises the OSI IS-IS routing protocol for all received packets regardless of the two or more different routing protocol suites (e.g., the TCP/IP protocol suite; the OSI protocol suite; etc.) to which such packets may conform, and without the need to convert the destination address of any packet to an addressing convention associated with a routing protocol suite different from the one to which that packet conforms. |
| 5 | BlackDiamond 6800, 6804, 6808, 6816, 12804 | Each of the listed product/product lines contain Multiprotocol Label Switching (MPLS) features which practice each of the elements of the patent claim when used within the context of a communications network containing one or more single-protocol information handling devices and one or more multi-protocol information handling devices, and when these products are organized in areas such that all of the products within a single area are capable of recognizing and forwarding user data packets which conform to the same protocol suites. In particular, these MPLS features implement a routing protocol which predetermines whether a packet needs to be encapsulated, at which information handling device it should be encapsulated and later decapsulated, and which protocol to use for the encapsulation for the forwarding of data packets. |
| 6 | BlackDiamond 6800, 6804, 6808, 6816, 12804 | Each of the listed product/product lines contain Multiprotocol Label Switching (MPLS) features which practice each of the elements of the patent claim when used within the context of a communication network containing one or more single-protocol information |

- 2 -

| U.S. Patent No. 5,251,205 (the "'205 Patent") | | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| | | handling devices and one or more multi-protocol information handling devices. In particular, these MPLS features implement a routing protocol which predetermines whether a packet needs to be encapsulated, at which information handling device it should be encapsulated and later decapsulated, and which protocol to use for the encapsulation for the forwarding of data packets. These information handling devices are part of a network, where different devices in different areas of the network are capable of handling different protocol suites. |
| 7 | BlackDiamond 6800, 6804, 6808, 6816, 12804 | Each of the listed product/product lines contain Multiprotocol Label Switching (MPLS) features which practice each of the elements of the patent claim when used within the context of a communications network containing two or more single-protocol information handling devices conforming to different protocol suites, and one or more multi-protocol information handling devices. In particular, these MPLS features implement a routing protocol which predetermines whether a packet needs to be encapsulated, at which information handling device it should be encapsulated and later decapsulated, and which protocol to use for the encapsulation for the forwarding of data packets. |
| 8 | BlackDiamond 6800, 6804, 6808, 6816, 12804 | Each of the listed product/product lines contain Multiprotocol Label Switching (MPLS) features which practice each of the elements of the patent claim when used within the context of a communications network containing two or more single-protocol information handling devices conforming to different protocol suites, and one or more multi-protocol information handling devices. In particular, these MPLS features implement a routing protocol which predetermines whether a packet needs to be encapsulated, at which information handling device it should be encapsulated and later decapsulated, and which protocol to use for the encapsulation for the forwarding of data packets. These information handling devices are used in a network, where at least one of these devices is capable of handling all the protocol suites used by other devices in that area of the network. |

| \multicolumn{3}{c}{U.S. Patent No. 5,251,205 (the "'205 Patent")} |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| 9 | BlackDiamond 6800, 6804, 6808, 6816, 12804 | Each of the listed product/product lines contain Multiprotocol Label Switching (MPLS) features which practice each of the elements of the patent claim when used in the manner described above with respect to claims 5, 6, 7, or 8.  In addition, one of said protocol suites comprises the TCP/IP protocol suite and another comprises the OSI protocol suite. |
| 10 | BlackDiamond 6800, 6804, 6808, 6816, 12804 | Each of the listed product/product lines contain Multiprotocol Label Switching (MPLS) features which practice each of the elements of the patent claim when used in the manner described above with respect to claims 5, 6, 7, or 8.  In addition, one of said protocol suites comprises the TCP/IP protocol suite and another comprises the OSI protocol suite.  Moreover, the information handling devices receive link state packets which conform to the routing protocol being used and use the information contained in these link state packets to calculate packet routes. |
| 11 | BlackDiamond 6800, 6804, 6808, 6816, 12804 | Each of the listed product/product lines contain Multiprotocol Label Switching (MPLS) features which practice each of the elements of the patent claim when used in the manner described above with respect to claims 5, 6, 7, or 8.  In addition, one of said protocol suites comprises the TCP/IP protocol suite and another comprises the OSI protocol suite, and upon information and belief the protocol used to automatically predetermine at which device to encapsulate and decapsulate a given packet is the OSI IS-IS routing protocol. |
| 12 | BlackDiamond 6800, 6804, 6808, 6816, 12804 | Each of the listed product/product lines contain Multiprotocol Label Switching (MPLS) features which practice each of the elements of the patent claim when used in the manner described above with respect to claims 5, 6, 7, or 8.  In addition, exactly two protocol suites are used. |
| 13 | BlackDiamond 6800, 6804, 6808, 6816, 12804 | Each of the listed product/product lines contain Multiprotocol Label Switching (MPLS) features which practice each of the elements of the patent claim when used in the manner described above with respect to claims 5, 6, 7, or 8.  In addition, exactly two protocol suites are used, one of which comprises TCP/IP and the other comprises OSI. |

- 4 -

| U.S. Patent No. 5,251,205 (the "'205 Patent") | | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| 14 | BlackDiamond 6800, 6804, 6808, 6816, 12804 | Each of the listed product/product lines contain Multiprotocol Label Switching (MPLS) features which practice each of the elements of the patent claim when used in the manner described above with respect to claim 13.  In addition, the information handling devices receive link state packets which conform to the routing protocol being used and use information in these packets to calculate packet routes. |
| 15 | BlackDiamond 6800, 6804, 6808, 6816, 12804 | Each of the listed product/product lines contain Multiprotocol Label Switching (MPLS) features which practice each of the elements of the patent claim when used in the manner described above with respect to claims 5, 6, 7, or 8.  In addition, one of said protocol suites comprises the TCP/IP protocol suite and another comprises the OSI protocol suite, and upon information and belief the protocol used to automatically predetermine at which device to encapsulate and decapsulate a given packet is the OSI IS-IS routing protocol. |
| 16 | BlackDiamond 6800, 6804, 6808, 6816, 12804 | Each of the listed product/product lines contain Multiprotocol Label Switching (MPLS) features which practice each of the elements of the patent claim when used in the manner described above with respect to claim 12.  In addition, the information handling devices receive link state packets, and use information in these packets to calculate packet routes. |
| 17 | BlackDiamond 6800, 6804, 6808, 6816, 12804 | Each of the listed product/product lines contain Multiprotocol Label Switching (MPLS) features which practice each of the elements of the patent claim when used in the manner described above with respect to claims 5, 6, 7, or 8.  In addition, two protocol suites are used, and upon information and belief the protocol used to automatically predetermine at which device to encapsulate and decapsulate a given packet is the OSI IS-IS routing protocol. |
| 18 | BlackDiamond 6800, 6804, 6808, 6816, 12804 | Each of the listed product/product lines contain Multiprotocol Label Switching (MPLS) features which practice each of the elements of the patent claim when used in the manner described above with respect to claims 5, 6, 7, or 8.  In addition, the information handling devices receive link state packets which conform to the routing protocol being used and use the information contained in these |

- 5 -

| U.S. Patent No. 5,251,205 (the "'205 Patent") | |
|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |

| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
|---|---|---|
| | | packets to calculate packet routes. |
| 19 | BlackDiamond 6800, 6804, 6808, 6816, 12804 | Each of the listed product/product lines contain Multiprotocol Label Switching (MPLS) features which practice each of the elements of the patent claim when used in the manner described above with respect to claims 5, 6, 7, or 8. In addition, upon information and belief the protocol used to automatically predetermine at which device to encapsulate and decapsulate a given packet is the OSI IS-IS routing protocol. |
| 20 | BlackDiamond 6800, 6804, 6808, 6816, 12804 | Each of the listed product/product lines contain Multiprotocol Label Switching (MPLS) features which practice each of the elements of the patent claim when used within the context of a communications network containing one or more single-protocol information handling devices and one or more multi-protocol information handling devices. In particular, these MPLS features implement a routing protocol which predetermines whether a packet needs to be encapsulated, at which information handling device it should be encapsulated and later decapsulated, and which protocol to use for the encapsulation for the forwarding of data packets. The predetermination depends upon the route used for forwarding the packet. This routing protocol also determines multiple routes from a starting information handling device to an ending information handling device. |
| 21 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed product/product lines contain multiple protocol routing software algorithm features which, in combination with a network of information handling devices, embody each of the elements of the patent claim. In particular, these multiple protocol routing software algorithm features work with devices exchanging control packets. These control packets indicate the links connected to the information handling device, and the addresses of these links, where a portion of these addresses correspond to a first addressing scheme, and other addresses correspond to a second addressing scheme. |
| 22 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, | Each of the listed product/product lines contain multiple protocol routing software algorithm features which , in combination with a |

| U.S. Patent No. 5,251,205 (the "'205 Patent") | | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| | X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | network of information handling devices, embody each of the elements of the patent claim.  In particular, these multiple protocol routing software algorithm features work with devices exchanging control packets which indicate the links connected to the information handling device, and the addresses of these links, where a portion of these addresses correspond to a first addressing scheme, and other addresses correspond to a second addressing scheme.  The information handling device, when forwarding a data packet, can encapsulate the packet with a header addressed with a different addressing scheme than the original packet, and then transmit the encapsulated packet. |
| 23 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed product/product lines contain multiple protocol routing software algorithm features which, in combination with a network of information handling devices organized into areas, embody each of the elements of the patent claim.  In particular, these multiple protocol routing software algorithm features work with devices exchanging control packets which indicate the links connected to the information handling device, and the addresses of these links, where a portion of these addresses correspond to a first addressing scheme, and other addresses correspond to a second addressing scheme.  The information handling device, when forwarding a data packet, can encapsulate the packet with a header addressed with a different addressing scheme than the original packet, and then transmit the encapsulated packet.  Each information handling device in a given area can interpret addresses using a common addressing scheme. |
| 24 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed product/product lines contain multiple protocol routing software algorithm features which, in combination with a network of information handling devices, embody each of the elements of the patent claim in the manner described above with respect to claims 21, 22, or 23.  In addition, the information handling devices can transmit hello packets, which identify the device and the addressing schemes the device can interpret. |

| U.S. Patent No. 5,390,173 (the "'173 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| 1 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain switching and/or routing chipset features which, in combination with a packet data communications network with multiple network segments, embody each of the elements of the patent claim.  In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields.<br><br>Upon information and belief, these switching and/or routing chipset features that use Inferno, Triumph, and/or Genesis chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields. |
| 2 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain switching and/or routing chipset features which, in combination with a packet data communications network with multiple network segments, embody each of the elements of the patent claim.  In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields.  Upon information and belief, the second header also includes link numbers for the source and destination of the packet.<br><br>Upon information and belief, these switching and/or routing chipset features that use Inferno, Triumph, and/or Genesis chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of |

| U.S. Patent No. 5,390,173 (the "'173 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | | status fields.  The second header also includes link numbers for the source and destination of the packet. |
| 3 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450

BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804

Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain switching and/or routing chipset features which, in combination with a packet data communications network with multiple network segments, embody each of the elements of the patent claim.  In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields.  The switching address is much shorter in terms of bits than the destination address.

Upon information and belief, these switching and/or routing chipset features that use Inferno, Triumph, and/or Genesis chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields.  The switching address is much shorter in terms of bits than the destination address. |
| 4 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450

BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804

Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain switching and/or routing chipset features which, in combination with a packet data communications network with multiple network segments, embody each of the elements of the patent claim.  In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields.  The switching address is much shorter in terms of bits than the destination address. Moreover, the second header also includes a source switch address which is translated from the network source address.

Upon information and belief, these switching and/or routing chipset |

| U.S. Patent No. 5,390,173 (the "'173 Patent") | |
| --- | --- |
| **CLAIM** | **INFRINGING PRODUCTS** |

| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| --- | --- | --- |
| | | features that use Inferno, Triumph, and/or Genesis chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields. The switching address is much shorter in terms of bits than the destination address. Moreover, the second header also includes a source switch address which is translated from the network source address. |
| 5 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450 <br><br> BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804 <br><br> Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain switching and/or routing chipset features which, in combination with a packet data communications network with multiple network segments, embody each of the elements of the patent claim. In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields. The switching address is much shorter in terms bits than the destination address. Moreover, the second also includes a source switch address which is translated from the network source address. In addition, the switching device is a crossbar switch. <br><br> Upon information and belief, these switching and/or routing chipset features that use Inferno, Triumph, and/or Genesis chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields. The switching address is much shorter in terms bits than the destination address. Moreover, the second header also includes a source switch address which is translated from the network source address. In addition, the switching device is a crossbar switch. |
| 6 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, | Each of the listed products/product lines contain switching and/or |

| U.S. Patent No. 5,390,173 (the "'173 Patent") | |
|---|---|
| **CLAIM** **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |

| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
|---|---|---|
| | 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | routing chipset features which, in combination with a packet data communications network with multiple network segments, embody each of the elements of the patent claim.  In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields.  The switching address is much shorter in terms bits than the destination address.  Moreover, the second header also includes a source switch address which is translated from the network source address.  In addition, the switching device is a crossbar switch.  The packets are received upon information and belief from a portion of a network which uses serial FDDI links, and the switching device has parallel ports.<br><br>Upon information and belief, these switching and/or routing chipset features that use Inferno, Triumph, and/or Genesis chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields.  The switching address is much shorter in terms bits than the destination address.  Moreover, the second header also includes a source switch address which is translated from the network source address.  In addition, the switching device is a crossbar switch.  The packets are received from a portion of a network which uses serial FDDI links, and the switching device has parallel ports. |
| 7 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804 | Each of the listed products/product lines contain switching and/or routing chipset features which, in combination with a packet data communications network with multiple network segments, embody each of the elements of the patent claim.  In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address |

| U.S. Patent No. 5,390,173 (the "'173 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | Alpine 3800, 3802, 3804, 3808 | translated from the network destination address, local status information, and a plurality of status fields, one of which upon information and belief is a service class field. The switching device processes the packet in response to this service class field. The switching address is much shorter in terms of bits than the destination address. Moreover, the second header also includes a source switch address which is translated from the network source address. In addition, the switching device is a crossbar switch. Upon information and belief, the packets are received from a portion of a network which uses serial FDDI links, and the switching device has parallel ports. |
| | | Upon information and belief, these switching and/or routing chipset features that use Inferno, Triumph, and/or Genesis chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which is a service class field. The switching device processes the packet in response to this service class field. The switching address is much shorter in terms of bits than the destination address. Moreover, the second header also includes a source switch address which is translated from the network source address. In addition, the switching device is a crossbar switch. The packets are received from a portion of a network which uses serial FDDI links, and the switching device has parallel ports. |
| 8 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450

BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804

Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain switching and/or routing chipset features which, in combination with a packet data communications network with multiple network segments, embody each of the elements of the patent claim. In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which upon |

| U.S. Patent No. 5,390,173 (the "'173 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | | information and belief is a service class field and one of which upon information and belief is a protocol class field. The switching device processes the packet in response to this service class field and this protocol class field. The switching address is much shorter in terms of bits than the destination address. Moreover, the second header also includes a source switch address which is translated from the network source address. In addition, the switching device is a crossbar switch. The packets are received, upon information and belief, from a portion of a network which uses serial FDDI links, and the switching device has parallel ports. |
| | | Upon information and belief, these switching and/or routing chipset features that use Inferno, Triumph, and/or Genesis chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which is a service class field and one of which is a protocol class field. The switching device processes the packet in response to this service class field and this protocol class field. The switching address is much shorter in terms of bits than the destination address. Moreover, the second header also includes a source switch address which is translated from the network source address. In addition, the switching device is a crossbar switch. The packets are received from a portion of a network which uses serial FDDI links, and the switching device has parallel ports. |
| 9 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain switching and/or routing chipset features which, in combination with a packet data communications network with multiple network segments, embody each of the elements of the patent claim. In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, which include upon |

| U.S. Patent No. 5,390,173 (the "'173 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | | information and belief a service class field, a protocol class field, and a status field indicating local congestion. The switching device processes the packet in response to this service class field, this protocol class field and this status field indicating local congestion. The switching address is much shorter in terms of bits than the destination address. Moreover, the second header also includes a source switch address which is translated from the network source address. In addition, the switching device is a crossbar switch. The packets are received, upon information and belief, from a portion of a network which uses serial FDDI links, and the switching device has parallel ports. |
| | | Upon information and belief, these switching and/or routing chipset features that use Inferno, Triumph, and/or Genesis chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, which include a service class field, a protocol class field, and a status field indicating local congestion. The switching device processes the packet in response to this service class field, this protocol class field and this status field indicating local congestion. The switching address is much shorter in terms of bits than the destination address. Moreover, the second header also includes a source switch address which is translated from the network source address. In addition, the switching device is a crossbar switch. The packets are received from a portion of a network which uses serial FDDI links, and the switching device has parallel ports. |
| 10 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804 | Each of the listed products/product lines contain switching and/or routing chipset features which practice each of the elements of the patent claim when used within the context of a packet data communications network with multiple network segments. In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets add, and subsequently remove, a |

| | U.S. Patent No. 5,390,173 (the "'173 Patent") | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| | Alpine 3800, 3802, 3804, 3808 | second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields.<br><br>Upon information and belief, these switching and/or routing chipset features that use Inferno, Triumph, and/or Genesis chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields. |
| 11 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain switching and/or routing chipset features which practice each of the elements of the patent claim when used within the context of a packet data communications network with multiple network segments. In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields. Upon information and belief, the second header also includes link numbers for the source and destination of the packet.<br><br>Upon information and belief, these switching and/or routing chipset features that use Inferno, Triumph, and/or Genesis chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields. The second header also includes link numbers for the source and destination of the packet. |
| 12 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, | Each of the listed products/product lines contain switching and/or routing chipset features which practice each of the elements of the patent claim when used within the context of a packet data communications network with multiple network segments. In particular, these switching and/or routing chipset features that use |

- 15 -

| U.S. Patent No. 5,390,173 (the "'173 Patent") | |
|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** |
|   | 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 |
| 13 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 |

The **BASIS FOR INFRINGEMENT** column text:

For the first row:

Broadcom 5600 series chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields. The switching address is much shorter in terms of bits than the destination address.

Upon information and belief, these switching and/or routing chipset features that use Inferno, Triumph, and/or Genesis chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields. The switching address is much shorter in terms of bits than the destination address.

For claim 13:

Each of the listed products/product lines contain switching and/or routing chipset features which practice each of the elements of the patent claim when used within the context of a packet data communications network with multiple network segments. In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields. The switching address is much shorter in terms of bits than the destination address. Moreover, the second header also includes a source switch address which is translated from the network source address.

Upon information and belief, these switching and/or routing chipset features that use Inferno, Triumph, and/or Genesis chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields. The switching address is much shorter in terms of bits than the destination address. Moreover, the second header also includes a source switch address which is translated from the

MP3 20186169.1

| | U.S. Patent No. 5,390,173 (the "'173 Patent") | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | | network source address. |
| 14 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain switching and/or routing chipset features which practice each of the elements of the patent claim when used within the context of a packet data communications network with multiple network segments. In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields. The switching address is much shorter in terms bits than the destination address. Moreover, the second header also includes a source switch address which is translated from the network source address. In addition, the switching device is a crossbar switch.<br><br>Upon information and belief, these switching and/or routing chipset features that use Inferno, Triumph, and/or Genesis chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields. The switching address is much shorter in terms bits than the destination address. Moreover, the second header also includes a source switch address which is translated from the network source address. In addition, the switching device is a crossbar switch. |
| 15 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain switching and/or routing chipset features which practice each of the elements of the patent claim when used within the context of a packet data communications network with multiple network segments. In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status |

MP3 20186169.1

| U.S. Patent No. 5,390,173 (the "'173 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | | information, and a plurality of status fields. The switching address is much shorter in terms bits than the destination address. Moreover, the second header also includes a source switch address which is translated from the network source address. In addition, the switching device is a crossbar switch. Upon information and belief , the packets are received from a portion of a network which uses serial FDDI links, and the switching device has parallel ports.<br><br>Upon information and belief, these switching and/or routing chipset features that use Inferno, Triumph, and/or Genesis chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields. The switching address is much shorter in terms bits than the destination address. Moreover, the second header also includes a source switch address which is translated from the network source address. In addition, the switching device is a crossbar switch. The packets are received from a portion of a network which uses serial FDDI links, and the switching device has parallel ports. |
| 16 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain switching and/or routing chipset features which practice each of the elements of the patent claim when used within the context of a packet data communications network with multiple network segments. In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which upon information and belief is a service class field. The switching device processes the packet in response to this service class field. The switching address is much shorter in terms of bits than the destination address. Moreover, the second header also includes a source switch address which is translated from the network source |

| U.S. Patent No. 5,390,173 (the "'173 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | | address.  In addition, the switching device is a crossbar switch.  The packets are received, upon information and belief, from a portion of a network which uses serial FDDI links, and the switching device has parallel ports.<br><br>Upon information and belief, these switching and/or routing chipset features that use Inferno, Triumph, and/or Genesis chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which is a service class field.  The switching device processes the packet in response to this service class field.  The switching address is much shorter in terms of bits than the destination address.  Moreover, the second header also includes a source switch address which is translated from the network source address.  In addition, the switching device is a crossbar switch.  The packets are received from a portion of a network which uses serial FDDI links, and the switching device has parallel ports. |
| 17 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain switching and/or routing chipset features which practice each of the elements of the patent claim when used within the context of a packet data communications network with multiple network segments.  In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which upon information and belief is a service class field and one of which upon information and belief is a protocol class field.  The switching device processes the packet in response to this service class field and this protocol class field.  The switching address is much shorter in terms of bits than the destination address.  Moreover, the second header also includes a source switch address which is translated from the network source address.  In addition, the switching device |

| U.S. Patent No. 5,390,173 (the "'173 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
|  |  | is a crossbar switch.  The packets are received, upon information and belief, from a portion of a network which uses serial FDDI links, and the switching device has parallel ports.<br><br>Upon information and belief, these switching and/or routing chipset features that use Inferno, Triumph, and/or Genesis chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which is a service class field and one of which is a protocol class field.  The switching device processes the packet in response to this service class field and this protocol class field.  The switching address is much shorter in terms of bits than the destination address.  Moreover, the second header also includes a source switch address which is translated from the network source address.  In addition, the switching device is a crossbar switch.  The packets are received from a portion of a network which uses serial FDDI links, and the switching device has parallel ports. |
| 18 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain switching and/or routing chipset features which practice each of the elements of the patent claim when used within the context of a packet data communications network with multiple network segments.  In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, which include upon information and belief a service class field, a protocol class field, and a status field indicating local congestion.  The switching device processes the packet in response to this service class field, this protocol class field and this status field indicating local congestion.  The switching address is much shorter in terms of bits than the destination address.  Moreover, the second header also includes a source switch address which is translated from the network source |

| U.S. Patent No. 5,390,173 (the "'173 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | | address. In addition, the switching device is a crossbar switch. The packets are received, upon information and belief, from a portion of a network which uses serial FDDI links, and the switching device has parallel ports.. |
| | | Upon information and belief, these switching and/or routing chipset features that use Inferno, Triumph, and/or Genesis chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, which include a service class field, a protocol class field, and a status field indicating local congestion. The switching device processes the packet in response to this service class field, this protocol class field and this status field indicating local congestion. The switching address is much shorter in terms of bits than the destination address. Moreover, the second header also includes a source switch address which is translated from the network source address. In addition, the switching device is a crossbar switch. The packets are received from a portion of a network which uses serial FDDI links, and the switching device has parallel ports. |
| 19 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain switching and/or routing chipset features which, in combination with a packet data communications network with multiple network segments, embody each of the elements of the patent claim. In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which upon information and belief is a service class field.<br><br>Upon information and belief, these switching and/or routing chipset features that use Inferno, Triumph, and/or Genesis chipsets add, and subsequently remove, a second internal header to a data packet |

| | U.S. Patent No. 5,390,173 (the "'173 Patent") | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | | which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which is a service class field. |
| 20 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain switching and/or routing chipset features which, in combination with a packet data communications network with multiple network segments, embody each of the elements of the patent claim. In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which upon information and belief is a protocol class field.<br><br>Upon information and belief, these switching and/or routing chipset features that use Inferno, Triumph, and/or Genesis chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which is a protocol class field. |
| 21 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain switching and/or routing chipset features which, in combination with a packet data communications network with multiple network segments, embody each of the elements of the patent claim. In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which upon information and belief indicates local congestion.<br><br>Upon information and belief, these switching and/or routing chipset features that use Inferno, Triumph, and/or Genesis chipsets add, and subsequently remove, a second internal header to a data packet |

MP3 20186169.1

| **U.S. Patent No. 5,390,173 (the "'173 Patent")** | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | | which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which indicates local congestion. |
| 22 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450

BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804

Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain switching and/or routing chipset features which practice each of the elements of the patent claim when used in the context of a packet data communications network with multiple network segments.  In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which upon information and belief is a service class field.

Upon information and belief, these switching and/or routing chipset features that use Inferno, Triumph, and/or Genesis chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which is a service class field. |
| 23 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450

BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804

Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain switching and/or routing chipset features which practice each of the elements of the patent claim when used in the context of a packet data communications network with multiple network segments.  In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which upon information and belief is a protocol class field.

Upon information and belief, these switching and/or routing chipset features that use Inferno, Triumph, and/or Genesis chipsets add, and subsequently remove, a second internal header to a data packet |

| U.S. Patent No. 5,390,173 (the "'173 Patent") | |
| --- | --- |
| **CLAIM** | **INFRINGING PRODUCTS** |

| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| --- | --- | --- |
| | | which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which is a protocol class field. |
| 24 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain switching and/or routing chipset features which practice each of the elements of the patent claim when used in the context of a packet data communications network with multiple network segments. In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which upon information and belief indicates local congestion.<br><br>Upon information and belief, these switching and/or routing chipset features that use Inferno, Triumph, and/or Genesis chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which indicates local congestion. |

MP3 20186169.1

| U.S. Patent No. 6,128,665 (the "'665 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| 1 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain port based default VLAN features which embody each of the elements of the patent claim. In particular, these port based default VLAN features include switches that receive data packets, and forward and/or flood the packets to the appropriate destination port(s) within the default VLAN, while restricting transmission to non-default VLAN port(s). |
| 2 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain port based default VLAN features which embody each of the elements of the patent claim. In particular, these port based default VLAN features include switches that receive data packets, and forward and/or flood the packets to the appropriate destination port(s) within the default VLAN, while restricting transmission to non-default VLAN port(s). The switch uses the header in the data packet to ascertain the destination port. |
| 3 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain port based default VLAN features which embody each of the elements of the patent claim. In particular, these port based default VLAN features include switches that receive data packets, and forward and/or flood the packets to the appropriate destination port(s) within the default VLAN, while restricting transmission to non-default VLAN port(s). The switch can also tag the packet as defined, for example, in 802.1Q. |
| 4 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain port based default VLAN features which practice each of the elements of the patent claim. In particular, these port based default VLAN features include switches that receive data packets, and forward and/or flood the packets to the appropriate destination port(s) within the default VLAN, while restricting transmission to non-default VLAN port(s). |
| 5 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450 | Each of the listed products/product lines contain port based default VLAN features which practice each of the elements of the patent claim. In particular, these port based default VLAN features |

| U.S. Patent No. 6,128,665 (the "'665 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | include switches that receive data packets, and forward and/or flood the packets to the appropriate destination port(s) within the default VLAN, while restricting transmission to non-default VLAN port(s). The switch can also tag the packet as defined, for example, in 802.1Q. |
| 6 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain port based default VLAN features which embody each of the elements of the patent claim.  In particular, these port based default VLAN features include program code used with switches that receive data packets, and forward and/or flood the packets to the appropriate destination port(s) within the default VLAN, while restricting transmission to non-default VLAN port(s). |
| 7 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain port based default VLAN features which embody each of the elements of the patent claim.  In particular, these port based default VLAN features include program code used with switches that receive data packets, and forward and/or flood the packets to the appropriate destination port(s) within the default VLAN, while restricting transmission to non-default VLAN port(s).  The switch  can also use program code to tag a packet as defined, for example, in 802.1Q. |

| \multicolumn{3}{c}{U.S. Patent No. 6,147,995 (the "'995 Patent")} |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| 1 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim.  In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network.  When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. |
| 2 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim.  In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network.  When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers.  If necessary, another switch can remove the 802.1Q tag header before forwarding the packet. |
| 3 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim.  In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network.  When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers.  The switches maintain a mapping table which is used to appropriately forward the |

MP3 20186169.1

| U.S. Patent No. 6,147,995 (the "'995 Patent") | | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| | | packet. If necessary, another switch can remove the 802.1Q tag header before forwarding the packet. |
| 4 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450 BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804 Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim. In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. If the packet is not destined for any of the access ports in the switch, the packet is discarded. |
| 5 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450 BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804 Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim. In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. The switch maintains a table(s) which relate the assigned identifiers to the end systems or ports of the switch, and the ports of the switch to the assigned identifiers. |
| 6 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450 BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804 Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim. In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it |

| U.S. Patent No. 6,147,995 (the "'995 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | | determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. The switch maintains a table(s) which relate the assigned identifiers to the end systems or ports of the switch, and the ports of the switch to the assigned identifiers. A table is reviewed for the VLAN identifier associated with the source end system or the receiving port. |
| 7 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim. In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. The switch maintains a table(s) which relate the assigned identifiers to the end systems or ports of the switch, and the ports of the switch to the assigned identifiers. A table is reviewed for the VLAN identifier associated with the source end system or the receiving port. A table is reviewed for the port associated with the determined identifier. |
| 8 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim. In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. The switch maintains a table(s) which relate the assigned identifiers to the end systems or ports of the switch, and the ports of the switch to the |

| U.S. Patent No. 6,147,995 (the "'995 Patent") | | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| | | assigned identifiers.  A table is reviewed for the port associated with the determined VLAN identifier. |
| 9 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim.  In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network.  When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers.  Upon information and belief, the received data packet is of a protocol not supported by the switch. |
| 13 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim.  In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network.  When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers.  The switch maintains a mapping for every end system or access port in that switch. |
| 14 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim.  In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network.  When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the |

| U.S. Patent No. 6,147,995 (the "'995 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | | packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers.  The switch maintains a default VLAN identifier before specific end systems or access ports are assigned an identifier. |
| 18 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim.  In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network.  When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers.  The VLAN identifier can be assigned based on a policy work group definition. |
| 19 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which, in combination with a network with a plurality of end systems and switches, embody each of the elements of the patent claim.  In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network.  When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers.  Each switch maintains at least one mapping table to map VLAN identifiers to end systems and/or port(s). |
| 20 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804 | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim.  In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to |

| U.S. Patent No. 6,147,995 (the "'995 Patent") | | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| | Alpine 3800, 3802, 3804, 3808 | port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. Each switch maintains at least one mapping table to map VLAN identifiers to port(s) and end systems. |
| 21 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim. In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. Upon information and belief, a reserved identifier is assigned without limitation as to end system and access port. |
| 22 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim. In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. Each switch maintains a MIB interface for programming mapping tables. |
| 23 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804 | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim. In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN |

| U.S. Patent No. 6,147,995 (the "'995 Patent") | | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| | Alpine 3800, 3802, 3804, 3808 | features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. Each switch uses SNMP to maintain the mapping table. |
| 24 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim. In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. Upon information and belief, a status table is maintained at each switch to enable and disable a respective subset. |
| 25 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim. In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. |
| 26 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804 | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim. In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to |

| U.S. Patent No. 6,147,995 (the "'995 Patent") | | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| | Alpine 3800, 3802, 3804, 3808 | port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. If necessary, another switch can remove the 802.1Q tag header before forwarding the packet. |
| 27 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450  BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804  Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim. In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. The switches maintain a mapping table which is used to appropriately forward the packet. If necessary, another switch can remove the 802.1Q tag header before forwarding the packet. |
| 28 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450  BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804  Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim. In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. If the packet is not destined for any of the access ports in the switch, the packet is discarded. |
| 29 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450 | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the |

| U.S. Patent No. 6,147,995 (the "'995 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | patent claim.  In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network.  When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers.  The switch maintains a table(s) which relate the assigned identifiers to the end systems or ports of the switch, and the ports of the switch to the assigned identifiers. |
| 30 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim.  In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based LANs, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network.  When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers.  The switch maintains a table(s) which relate the assigned identifiers to the end systems or ports of the switch, and the ports of the switch to the assigned identifiers.  A table is reviewed for the VLAN identifier associated with the source end system or the receiving port. |
| 31 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim.  In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network.  When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers.  The switch |

| U.S. Patent No. 6,147,995 (the "'995 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | | maintains a table(s) which relate the assigned identifiers to the end systems or ports of the switch, and the ports of the switch to the assigned identifiers. A table is reviewed for the VLAN identifier associated with the source end system or the receiving port. A table is reviewed for the port associated with the determined identifier. |
| 32 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim. In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. The switch maintains a default VLAN identifier before specific end systems or access ports are assigned an identifier. |
| 33 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim. In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. Each switch maintains a MIB interface for programming mapping tables. |
| 34 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804 | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim. In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to |

| U.S. Patent No. 6,147,995 (the "'995 Patent") | |
|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** ___ **BASIS FOR INFRINGEMENT** |

| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
|---|---|---|
|  | Alpine 3800, 3802, 3804, 3808 | port(s) in the network.  When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers.  Each switch uses SNMP to maintain the mapping table. |
| 35 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450

BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804

Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim.  In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network.  When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers.  Upon information and belief, a status table is maintained to enable and disable a respective subset. |

- 37 -

| | U.S. Patent No. 6,539,022 (the "'022 Patent") | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| 1 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IGMP snooping features which embody each of the elements of the patent claim.  In particular, these IGMP snooping features can examine packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the bridge's multicast forwarding data based upon information in the packet. |
| 2 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IGMP snooping features which embody each of the elements of the patent claim.  In particular, these IGMP snooping features can examine packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the bridge's multicast forwarding data based upon information in the packet.  The bridge identifies the I/O interface on which the packet arrived, and cross-references that I/O interface to the multicast group in conjunction with updating forwarding data. |
| 3 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IGMP snooping features which embody each of the elements of the patent claim.  In particular, these IGMP snooping features can examine packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the bridge's multicast forwarding data based upon information in the packet.  The bridge can identify the source of the packet, and cross-references that source to the identified multicast group in conjunction with updating forwarding data. |
| 4 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804 | Each of the listed products/product lines contain IGMP snooping features which embody each of the elements of the patent claim.  In particular, these IGMP snooping features can examine packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the bridge's multicast forwarding data based upon information in the packet.  The bridge identifies the I/O interface on which the packet |

- 38 -

| U.S. Patent No. 6,539,022 (the "'022 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | Alpine 3800, 3802, 3804, 3808 | arrived and the source of the packet, and cross-references that I/O interface and source to the multicast group in conjunction with updating forwarding data. |
| 5 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IGMP snooping features which embody each of the elements of the patent claim. In particular, these IGMP snooping features can examine packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the bridge's multicast forwarding data based upon information in the packet. If the packet is not a multicast control packet, the bridge can determine if it is a message packet destined for a multicast group. The bridge determines the multicast group, and sends the packet out each I/O interface which is cross-referenced in the forwarding data to that multicast group, except for the I/O interface on which the packet arrived. |
| 6 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IGMP snooping features which practice each of the elements of the patent claim. In particular, these IGMP snooping features can determine the I/O interface on which packets received by a network device arrived, examine the packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the device's multicast forwarding data based upon information in the packet. |
| 7 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IGMP snooping features which practice each of the elements of the patent claim. In particular, these IGMP snooping features can determine the I/O interface on which packets received by a network device arrived, examine packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the device's multicast forwarding data based upon information in the packet. The device cross-references that I/O interface to the multicast group in conjunction with updating forwarding data. |
| 8 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, | Each of the listed products/product lines contain IGMP snooping |

| U.S. Patent No. 6,539,022 (the "'022 Patent") | |
|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | features which practice each of the elements of the patent claim.  In particular, these IGMP snooping features can determine the I/O interface on which packets received by a network device arrived, examine the packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the device's multicast forwarding data based upon information in the packet.  The network device can remove cross-references from the forwarding data between the identified I/O interface and the associated multicast group. |
| 9 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IGMP snooping features which practice each of the elements of the patent claim.  In particular, these IGMP snooping features can determine the I/O interface on which packets received by a network device arrived, examine the packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the device's multicast forwarding data based upon information in the packet.  The network device can remove cross-references from the forwarding data between the identified I/O interface and the identified multicast group.  In addition, the network device can delete from the forwarding data any cross-referenced I/O interface that is not connected to a device that is a member of the identified multicast group. |
| 10 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IGMP snooping features which practice each of the elements of the patent claim.  In particular, these IGMP snooping features can determine the I/O interface on which packets received by a network device arrived, examine packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the device's multicast forwarding data based upon information in the packet.  If the packet is not a multicast control packet, the device can determine if it is a message packet destined for a multicast group.  The device determines the multicast group, retrieves the multicast forwarding data for this multicast group, and sends the packet out each I/O interface which is cross-referenced in |

| U.S. Patent No. 6,539,022 (the "'022 Patent") | | |
| --- | --- | --- |
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| | | the forwarding data to that multicast group, except for the I/O interface on which the packet arrived. |
| 11 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450  BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804  Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IGMP snooping features which practice each of the elements of the patent claim.  In particular, these IGMP snooping features can determine the I/O interface on which packets received by a network device arrived, examine packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the device's multicast forwarding data based upon information in the packet.  If the packet is not a multicast control packet, the device can determine if it is a message packet destined for a multicast group.  The device determines the multicast group, retrieves the multicast forwarding data for this multicast group, and sends the packet out each I/O interface which is cross-referenced in the forwarding data to that multicast group.  When there is no data associated with the identified multicast group, the packet is transmitted out all I/O interfaces except for the I/O interface on which the packet arrived. |
| 12 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450  BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804  Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IGMP snooping features which practice each of the elements of the patent claim.  In particular, these IGMP snooping features can determine the I/O interface on which packets received by a network device arrived, examine the packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the device's multicast forwarding data based upon information in the packet.  The control packets are defined according to an IGMP standard such as IGMP v1, IGMP v2, or IGMP v3. |
| 13 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450  BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804 | Each of the listed products/product lines contain IGMP snooping features which practice each of the elements of the patent claim.  In particular, these IGMP snooping features can determine the I/O interface on which packets received by a network device arrived, examine the packets to determine if they are multicast control packets destined for another device, identify the multicast group of |

| | U.S. Patent No. 6,539,022 (the '"022 Patent") | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | Alpine 3800, 3802, 3804, 3808 | the packet, and update the device's multicast forwarding data based upon information in the packet. The control packets are defined according to an IGMP standard such as IGMP v1, IGMP v2, or IGMP v3, and are either a host membership query, a host membership report, a join host group packet, or a leave host group packet. |
| 14 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IGMP snooping features which practice each of the elements of the patent claim. In particular, these IGMP snooping features can examine packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the bridge's multicast forwarding data based upon information in the packet. |
| 15 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IGMP snooping features which practice each of the elements of the patent claim. In particular, these IGMP snooping features can examine packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the bridge's multicast forwarding data based upon information in the packet. The device identifies the I/O interface on which the packet arrived, and cross-references that I/O interface to the multicast group in conjunction with updating forwarding data. |
| 16 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IGMP snooping features which practice each of the elements of the patent claim. In particular, these IGMP snooping features can examine packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the bridge's multicast forwarding data based upon information in the packet. The device can identify the source of the packet, and cross-references that source to the identified multicast group in conjunction with updating forwarding data. |
| 17 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, | Each of the listed products/product lines contain IGMP snooping features which practice each of the elements of the patent claim. In |

| \multicolumn{3}{c}{**U.S. Patent No. 6,539,022 (the "'022 Patent")**} |
|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | particular, these IGMP snooping features can examine packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the bridge's multicast forwarding data based upon information in the packet.  The device identifies the I/O interface on which the packet arrived and the source of the packet, and cross-references that I/O interface and source to the multicast group in conjunction with updating forwarding data. |
| 18 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IGMP snooping features which practice each of the elements of the patent claim.  In particular, these IGMP snooping features can examine packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the bridge's multicast forwarding data based upon information in the packet.  If the packet is not a multicast control packet, the device can determine if it is a message packet destined for a multicast group.  The device determine the multicast group, and sends the packet out each I/O interface which is cross-referenced in the forwarding data to that multicast group, except for the I/O interface on which the packet arrived. |
| 19 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain IGMP snooping features which practice each of the elements of the patent claim.  In particular, these IGMP snooping features can examine packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the bridge's multicast forwarding data based upon information in the packet.  Certain network devices exchange multicast control packets with other devices on the network to maintain multicast routing information. |
| 20 | Summit 1, 2, 3, 4, 24, 24e2, 24e3, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 400-48t, 1i, 5i, 7i, 48i, 48si, Px1, X450<br><br>BlackDiamond 6800, 6804, 6808, 6816, 8800, 8806, 8810, | Each of the listed products/product lines contain IGMP snooping features which practice each of the elements of the patent claim.  In particular, these IGMP snooping features monitor multicast control packets, and for these multicast control packets determine the source and the I/O interface upon which the packet arrived, maintain an |

| U.S. Patent No. 6,539,022 (the "'022 Patent") | | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| | 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | association of the multicast group with the I/O interface, and facilitate transmission of that packet to all I/O interfaces associated with that multicast group. |

| U.S. Patent No. 6,560,236 (the '"236 Patent) | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| 1 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain port based VLAN features which practice each of the elements of the patent claim.  In particular, these port based VLAN features assign VLAN identifiers to ports, where all ports with the same identifier belong in the same group.  When a multicast packet is received on a port associated with a VLAN identifier, the network bridge transmits the packet on all other ports which have the same VLAN identifier as the port on which the packet arrived. |
| 2 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain port based VLAN features which practice each of the elements of the patent claim.  In particular, these port based VLAN features assign VLAN identifiers to ports, where all ports with the same identifier belong in the same group.  When a multicast packet is received on a port associated with a VLAN identifier, the network bridge transmits the packet on all other ports which have the same VLAN identifier as the port on which the packet arrived.  The network bridge also identifies the source of all packets received. |
| 3 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain port based VLAN features which practice each of the elements of the patent claim.  In particular, these VLAN features assign port based VLAN identifiers to ports, where all ports with the same identifier belong in the same group.  When a multicast packet is received on a port associated with a VLAN identifier, the network bridge transmits the packet on all other ports which have the same VLAN identifier as the port on which the packet arrived.  The network bridge also identifies the source and destination of all packets received.  The bridge determines the VLAN identifier assigned to the destination, and if the VLAN identifier of the destination is not the same as the VLAN identifier of the source, the packet is sent out a port not associated with the VLAN identifier of the source. |
| 4 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450 | Each of the listed products/product lines contain port based VLAN features which practice each of the elements of the patent claim.  In particular, these port based VLAN features assign VLAN identifiers |

| U.S. Patent No. 6,560,236 (the "'236 Patent) | |
|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |

| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
|---|---|---|
| | BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | to ports, where all ports with the same identifier belong in the same group. When a multicast packet is received on a port associated with a VLAN identifier, the network bridge transmits the packet on all other ports which have the same VLAN identifier as the port on which the packet arrived. When a multicast packet is received on a port not associated with a VLAN identifier, the network bridge transmits the packet on all ports having the same VLAN identifier as the one determined to be within the packet. |
| 5 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain port based VLAN features which practice each of the elements of the patent claim. In particular, these port based VLAN features assign VLAN identifiers to ports, where all ports with the same identifier belong in the same group. When a multicast packet is received on a port associated with a VLAN identifier, the network bridge transmits the packet on all other ports which have the same VLAN identifier as the port on which the packet arrived. When a multicast packet is received on a port not associated with a VLAN identifier, the network bridge transmits the packet on all ports having the same VLAN identifier as the one determined to be within the packet. The VLAN identifier is removed from the packet (*e.g.,* the packet is untagged as described in 802.1Q) before it is transmitted. |
| 6 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain port based VLAN features which practice each of the elements of the patent claim. In particular, these port based VLAN features assign VLAN identifiers to ports, where all ports with the same identifier belong in the same group. When a multicast packet is received on a port associated with a VLAN identifier, the network bridge transmits the packet on all other ports which have the same VLAN identifier as the port on which the packet arrived. Each VLAN identifier is assigned a protocol type. |
| 7 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, | Each of the listed products/product lines contain port based VLAN features which practice each of the elements of the patent claim. In particular, these port based VLAN features assign VLAN identifiers to ports, where all ports with the same identifier belong in the same |

- 46 -

| U.S. Patent No. 6,560,236 (the '"236 Patent) | | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| | 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | group.  When a multicast packet is received on a port associated with a VLAN identifier, the network bridge transmits the packet on all other ports which have the same VLAN identifier as the port on which the packet arrived.  Upon information and belief, each VLAN identifier is assigned a protocol type, but no two distinct VLAN identifiers which have the same protocol type are assigned to the same port. |
| 8 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain port based VLAN features which practice each of the elements of the patent claim.  In particular, these port based VLAN features assign VLAN identifiers to ports, where all ports with the same VLAN identifier belong in the same group.  When a multicast packet is received on a port associated with a VLAN identifier, the network bridge transmits the packet on all other ports which have the same VLAN identifier as the port on which the packet arrived.  Each port can have multiple VLAN identifiers assigned to it. |
| 9 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain port based VLAN features which practice each of the elements of the patent claim.  In particular, these port based VLAN features assign VLAN identifiers to ports, where all ports with the same identifier belong in the same group.  When a packet is received from a port belonging to the first group of ports, the network bridge transmits the packet on all other ports which have the same VLAN identifier as the port on which the packet arrived.  The network bridge also identifies the source and destination of the packet.  If, for the received packet, the source VLAN identifier is not the same as the destination VLAN identifier, the packet is sent out port(s) not included in the first group of ports, and indication is given of the VLAN identifier assigned to the port on which the packet arrived. |
| 11 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804 | Each of the listed products/product lines contain port based VLAN features which practice each of the elements of the patent claim.  In particular, these port based VLAN features assign VLAN identifiers to ports, where all ports with the same identifier belong in the same group.  A network bridge is connected to a router by a client port. |

| U.S. Patent No. 6,560,236 (the "'236 Patent) | | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| | Alpine 3800, 3802, 3804, 3808 | The router has a defined correspondence between ports connected to the network device and each VLAN identifier.  When a packet is received on the network bridge from a port belonging to a first group of ports, it is transmitted out on all other ports with the same VLAN identifier as the source port.  The network bridge also identifies the source, destination and destination VLAN identifier of the packet.  If the VLAN identifier of the source and destination are different, the packet is sent out the client port. |
| 12 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain port based VLAN features which practice each of the elements of the patent claim.  In particular, these port based VLAN features assign VLAN identifiers to ports, where all ports with the same identifier belong in the same group.  A network bridge is connected to a router by a client port.  The router has a defined correspondence between ports connected to the network bridge and each VLAN identifier.  When a packet is received on the network device from a port belonging to a first group of ports, it is transmitted out on all other ports with the same VLAN identifier as the source port.  The network bridge also identifies the source, destination and destination VLAN identifier of the packet.  If the VLAN identifier of the source and destination are different, the packet is sent out the client port.  A second packet is received from the router, and the VLAN identifier is determined. |
| 13 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain port based VLAN features which practice each of the elements of the patent claim.  In particular, these port based VLAN features assign VLAN identifiers to ports, where all ports with the same identifier belong in the same group.  A network bridge is connected to a router by a client port.  The router has a defined correspondence between ports connected to the network bridge and each VLAN identifier.  When a packet is received on the network device from a port belonging to a first group of ports, it is transmitted out on all other ports with the same VLAN identifier as the source port.  The network bridge also identifies the source, destination and destination VLAN identifier of the packet.  If the VLAN identifier of the source and destination are |

| U.S. Patent No. 6,560,236 (the '"236 Patent) | | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| | | different, the packet is sent out the client port.  The router sends a packet to the network bridge which has a VLAN identifier, and where the packet's source address is assigned to this VLAN identifier. |
| 14 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450

BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804

Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain port based VLAN features which practice each of the elements of the patent claim.  In particular, these port based VLAN features assign VLAN identifiers to ports, where all ports with the same identifier belong in the same group.  A network bridge is connected to a router by a client port.  The router has a defined correspondence between ports connected to the network bridge and each VLAN identifier.  When a packet is received on the network device from a port belonging to a first group of ports, it is transmitted out on all other ports with the same VLAN identifier as the source port.  The network bridge also identifies the source, destination and destination VLAN identifier of the packet.  If the VLAN identifier of the source and destination are different, the packet is sent out the client port.  The router maintains a record of packets sent from the bridge and the respective VLAN identifier. |
| 15 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450

BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804

Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain port based VLAN features which embody each of the elements of the patent claim.  In particular, these port based VLAN features assign VLAN identifiers to ports, where all ports with the same identifier belong in the same group.  When a multicast packet is received on a port associated with a VLAN identifier, the network bridge transmits the packet on all other ports which have the same VLAN identifier as the port on which the packet arrived  When a multicast packet is received on a port not associated with a VLAN identifier, the network bridge transmits the packet on all ports having the same VLAN identifier as the one determined to be within the packet.  The VLAN identifier is removed from the packet (*e.g.*, the packet is untagged as described in 802.1Q) before it is transmitted. |
| 16 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450 | Each of the listed products/product lines contain port based VLAN features which embody each of the elements of the patent claim.  In |

- 49 -

| U.S. Patent No. 6,560,236 (the '"236 Patent) | | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
|  | BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | particular, these port based VLAN features use program instructions to assign VLAN identifiers to ports, where all ports with the same identifier belong in the same group.  When a multicast packet is received on a port associated with a VLAN identifier, the network bridge transmits the packet on all other ports which have the same VLAN identifier as the port on which the packet arrived  When a multicast packet is received on a port not associated with a VLAN identifier, the network bridge transmits the packet on all ports having the same VLAN identifier as the one determined to be within the packet.  The VLAN identifier is removed from the packet (*e.g.,* the packet is untagged as described in 802.1Q) before it is transmitted.  The network device also identifies the source address of the packet. |
| 17 | Summit 24, 48, 200-24, 200-48, 300-24, 300-48, 400-24p, 400-24t, 1i, 5i, 7i, 48i, 48si, X450<br><br>BlackDiamond 6800, 6804, 6816, 8800, 8806, 8810, 10808, 10K, 12K, 12804<br><br>Alpine 3800, 3802, 3804, 3808 | Each of the listed products/product lines contain port based VLAN features which embody each of the elements of the patent claim.  In particular, these port based VLAN features use program instructions to assign VLAN identifiers to ports, where all ports with the same identifier belong in the same group.  When a multicast packet is received on a port associated with a VLAN identifier, the network bridge transmits the packet on all other ports which have the same VLAN identifier as the port on which the packet arrived  When a multicast packet is received on a port not associated with a VLAN identifier, the network bridge transmits the packet on all ports having the same VLAN identifier as the one determined to be within the packet.  The VLAN identifier is removed from the packet (*e.g.,* the packet is untagged as described in 802.1Q) before it is transmitted.  The network device also identifies the source address, destination address and VLAN identifier of the destination of the packet.  If the VLAN identifier of the source and VLAN identifier of the destination are not the same, the packet is sent out port(s) not associated with the source VLAN identifier. |

# Exhibit 9

| U.S. Patent No. 5,251,205 (the "'205 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| 1 | AccessIron (1201, 1202, 1204, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | Each of the listed product/product lines contain multiple protocol routing software algorithm features which practice each of the elements of the patent claim when used in the context of a communications network.  In particular, these multiple protocol routing software algorithm features calculate packet routes using an algorithm corresponding to a single routing protocol for all received packets regardless of the multiple different routing protocol suites (e.g., the TCP/IP protocol suite; the OSI protocol suite; etc.) to which such packets may conform, and without the need to convert the destination address of any packet to an addressing convention associated with a routing protocol suite different from the one to which that packet conforms. |
| 2 | AccessIron (1201, 1202, 1204, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III) | Each of the listed product/product lines contain multiple protocol routing software algorithm features which practice each of the elements of the patent claim when used in the context of a communications network.  In particular, these multiple protocol routing software algorithm features calculate packet routes using an algorithm corresponding to a single routing protocol for all received packets regardless of the two different routing protocol suites (e.g., the TCP/IP protocol suite; the OSI protocol suite; etc.) to which such packets may conform, and without the need to convert the destination address of any packet to an addressing convention associated with a routing protocol suite different from the one to which that packet conforms. |

| U.S. Patent No. 5,251,205 (the "'205 Patent") | | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| | NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | |
| 3 | AccessIron (1201, 1202, 1204, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | Each of the listed product/product lines contain multiple protocol routing software algorithm features which practice each of the elements of the patent claim when used in the context of a communications network.  In particular, these multiple protocol routing software algorithm features calculate packet routes using an algorithm corresponding to a single routing protocol for all received packets regardless of the two or more different routing protocol suites (e.g., the TCP/IP protocol suite; the OSI protocol suite; etc.) to which such packets may conform, and without the need to convert the destination address of any packet to an addressing convention associated with a routing protocol suite different from the one to which that packet conforms.  The information handling device receives link state packets which conform to the routing protocol being used and calculates the route based on information in these link state packets. |
| 4 | AccessIron (1201, 1202, 1204, 1208, 3201, 3202) | Each of the listed product/product lines contain multiple protocol routing software algorithm features which practice each of the |

MP3 20186395.1

| U.S. Patent No. 5,251,205 (the "'205 Patent") | |
|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |

| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
|---|---|---|
|  | BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | elements of the patent claim when used in the context of a communications network.  In particular, these multiple protocol routing software algorithm features calculate packet routes using an algorithm which comprises the OSI IS-IS routing protocol for all received packets regardless of the two or more different routing protocol suites (e.g., the TCP/IP protocol suite; the OSI protocol suite; etc.) to which such packets may conform, and without the need to convert the destination address of any packet to an addressing convention associated with a routing protocol suite different from the one to which that packet conforms. |
| 5 | NetIron (400, 800, 1500, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K) | Each of the listed product/product lines contain Multiprotocol Label Switching (MPLS) features which practice each of the elements of the patent claim when used within the context of a communications network containing one or more single-protocol information handling devices and one or more multi-protocol information handling devices, and when these products are organized in areas such that all of the products within a single area are capable of recognizing and forwarding user data packets which conform to the same protocol suites.  In particular, these MPLS features implement a routing protocol which predetermines whether a packet needs to be encapsulated, at which information handling device it should be encapsulated and later decapsulated, and which protocol to use for the encapsulation for the forwarding of data packets. |

- 3 -

| U.S. Patent No. 5,251,205 (the "'205 Patent") | | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| 6 | NetIron (400, 800, 1500, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K) | Each of the listed product/product lines contain Multiprotocol Label Switching (MPLS) features which practice each of the elements of the patent claim when used within the context of a communications network containing one or more single-protocol information handling devices and one or more multi-protocol information handling devices.  In particular, these MPLS features implement a routing protocol which predetermines whether a packet needs to be encapsulated, at which information handling device it should be encapsulated and later decapsulated, and which protocol to use for the encapsulation for the forwarding of data packets.  These information handling devices are part of a network, where different devices in different areas of the network are capable of handling different protocol suites. |
| 7 | NetIron (400, 800, 1500, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K) | Each of the listed product/product lines contain Multiprotocol Label Switching (MPLS) features which practice each of the elements of the patent claim when used within the context of a communications network containing two or more single-protocol information handling devices conforming to different protocol suites, and one or more multi-protocol information handling devices.  In particular, these MPLS features implement a routing protocol which predetermines whether a packet needs to be encapsulated, at which information handling device it should be encapsulated and later decapsulated, and which protocol to use for the encapsulation for the forwarding of data packets. |
| 8 | NetIron (400, 800, 1500, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K) | Each of the listed product/product lines contain Multiprotocol Label Switching (MPLS) features which practice each of the elements of the patent claim when used within the context of a communications network containing two or more single-protocol information handling devices conforming to different protocol suites, and one or more multi-protocol information handling devices.  In particular, these MPLS features implement a routing protocol which predetermines whether a packet needs to be encapsulated, at which information handling device it should be encapsulated and later decapsulated, and which protocol to use for |

| U.S. Patent No. 5,251,205 (the "'205 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | | the encapsulation for the forwarding of data packets. These information handling devices are used in a network, where at least one of these devices is capable of handling all the protocol suites used by other devices in that area of the network. |
| 9 | NetIron (400, 800, 1500, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K) | Each of the listed product/product lines contain Multiprotocol Label Switching (MPLS) features which practice each of the elements of the patent claim when used in the manner described above with respect to claims 5, 6, 7, or 8. In addition, one of said protocol suites comprises the TCP/IP protocol suite and another comprises the OSI protocol suite. |
| 10 | NetIron (400, 800, 1500, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K) | Each of the listed product/product lines contain Multiprotocol Label Switching (MPLS) features which practice each of the elements of the patent claim when used in the manner described above with respect to claims 5, 6, 7, or 8. In addition, one of said protocol suites comprises the TCP/IP protocol suite and another comprises the OSI protocol suite. Moreover, the information handling devices receive link state packets which conform to the routing protocol being used and use the information contained in these link state packets to calculate packet routes. |
| 11 | NetIron (400, 800, 1500, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K) | Each of the listed product/product lines contain Multiprotocol Label Switching (MPLS) features which practice each of the elements of the patent claim when used in the manner described above with respect to claims 5, 6, 7, or 8. In addition, one of said protocol suites comprises the TCP/IP protocol suite and another comprises the OSI protocol suite, and upon information and belief the protocol used to automatically predetermine at which device to encapsulate and decapsulate a given packet is the OSI IS-IS routing protocol. |
| 12 | NetIron (400, 800, 1500, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K) | Each of the listed product/product lines contain Multiprotocol Label Switching (MPLS) features which practice each of the elements of the patent claim when used in the manner described above with respect to claims 5, 6, 7, or 8. In addition, exactly two protocol suites are used. |
| 13 | NetIron (400, 800, 1500, IMR640, XMR 4K/8K/16K/32K, | Each of the listed product/product lines contain Multiprotocol |

- 5 -

| \multicolumn{3}{c}{**U.S. Patent No. 5,251,205 (the "'205 Patent")**} |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
|  | MLX 4K/8K/16K) | Label Switching (MPLS) features which practice each of the elements of the patent claim when used in the manner described above with respect to claims 5, 6, 7, or 8. In addition, exactly two protocol suites are used, one of which comprises TCP/IP and the other comprises OSI. |
| 14 | NetIron (400, 800, 1500, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K) | Each of the listed product/product lines contain Multiprotocol Label Switching (MPLS) features which practice each of the elements of the patent claim when used in the manner described above with respect to claim 13. In addition, the information handling devices receive link state packets which conform to the routing protocol being used and use information in these packets to calculate packet routes. |
| 15 | NetIron (400, 800, 1500, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K) | Each of the listed product/product lines contain Multiprotocol Label Switching (MPLS) features which practice each of the elements of the patent claim when used in the manner described above with respect to claims 5, 6, 7, or 8. In addition, one of said protocol suites comprises the TCP/IP protocol suite and another comprises the OSI protocol suite, and upon information and belief the protocol used to automatically predetermine at which device to encapsulate and decapsulate a given packet is the OSI IS-IS routing protocol. |
| 16 | NetIron (400, 800, 1500, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K) | Each of the listed product/product lines contain Multiprotocol Label Switching (MPLS) features which practice each of the elements of the patent claim when used in the manner described above with respect to claim 12. In addition, the information handling devices receive link state packets, and use information in these packets to calculate packet routes. |
| 17 | NetIron (400, 800, 1500, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K) | Each of the listed product/product lines contain Multiprotocol Label Switching (MPLS) features which practice each of the elements of the patent claim when used in the manner described above with respect to claims 5, 6, 7, or 8. In addition, two protocol suites are used, and upon information and belief the protocol used to automatically predetermine at which device to encapsulate and decapsulate a given packet is the OSI IS-IS routing protocol. |

| U.S. Patent No. 5,251,205 (the '"205 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| 18 | NetIron (400, 800, 1500, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K) | Each of the listed product/product lines contain Multiprotocol Label Switching (MPLS) features which practice each of the elements of the patent claim when used in the manner described above with respect to claims 5, 6, 7, or 8. In addition, the information handling devices receive link state packets which conform to the routing protocol being used and use the information contained in these packets to calculate packet routes. |
| 19 | NetIron (400, 800, 1500, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K) | Each of the listed product/product lines contain Multiprotocol Label Switching (MPLS) features which practice each of the elements of the patent claim when used in the manner described above with respect to claims 5, 6, 7, or 8. In addition, upon information and belief the protocol used to automatically predetermine at which device to encapsulate and decapsulate a given packet is the OSI IS-IS routing protocol. |
| 20 | NetIron (400, 800, 1500, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K) | Each of the listed product/product lines contain Multiprotocol Label Switching (MPLS) features which practice each of the elements of the patent claim when used within the context of a communications network containing one or more single-protocol information handling devices and one or more multi-protocol information handling devices. In particular, these MPLS features implement a routing protocol which predetermines whether a packet needs to be encapsulated, at which information handling device it should be encapsulated and later decapsulated, and which protocol to use for the encapsulation for the forwarding of data packets. The predetermination depends upon the route used for forwarding the packet. This routing protocol also determines multiple routes from a starting information handling device to an ending information handling device. |
| 21 | AccessIron (1201, 1202, 1204, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F) | Each of the listed product/product lines contain multiple protocol routing software algorithm features which, in combination with a network of information handling devices, embody each of the elements of the patent claim. In particular, these multiple protocol routing software algorithm features work with devices exchanging control packets. These control packets indicate the links connected |

| U.S. Patent No. 5,251,205 (the "'205 Patent") | | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| | FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | to the information handling device, and the addresses of these links, where a portion of these addresses correspond to a first addressing scheme, and other addresses correspond to a second addressing scheme. |
| 22 | AccessIron (1201, 1202, 1204, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300) | Each of the listed product/product lines contain multiple protocol routing software algorithm features which, in combination with a network of information handling devices, embody each of the elements of the patent claim. In particular, these multiple protocol routing software algorithm features work with devices exchanging control packets which indicate the links connected to the information handling device, and the addresses of these links, where a portion of these addresses correspond to a first addressing scheme, and other addresses correspond to a second addressing scheme. The information handling device, when forwarding a data packet, can encapsulate the packet with a header addressed with a different addressing scheme than the original packet, and then transmit the encapsulated packet. |

- 8 -

| U.S. Patent No. 5,251,205 (the "'205 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | |
| 23 | AccessIron (1201, 1202, 1204, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | Each of the listed product/product lines contain multiple protocol routing software algorithm features which, in combination with a network of information handling devices organized into areas, embody each of the elements of the patent claim.  In particular, these multiple protocol routing software algorithm features work with devices exchanging control packets which indicate the links connected to the information handling device, and the addresses of these links, where a portion of these addresses correspond to a first addressing scheme, and other addresses correspond to a second addressing scheme.  The information handling device, when forwarding a data packet, can encapsulate the packet with a header addressed with a different addressing scheme than the original packet, and then transmit the encapsulated packet.  Each information handling device in a given area can interpret addresses using a common addressing scheme. |
| 24 | AccessIron (1201, 1202, 1204, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, | Each of the listed product/product lines contain multiple protocol routing software algorithm features which, in combination with a network of information handling devices, embody each of the elements of the patent claim in the manner described above with respect to claims 21, 22, or 23.  In addition, the information handling device can transmit hello packets, which identify the devices and the addressing schemes the device can interpret. |

| U.S. Patent No. 5,251,205 (the "'205 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | |

| U.S. Patent No. 5,390,173 (the "'173 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| 1 | AccessIron (1201, 1202, 1204, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | Each of the listed products/product lines contain switching and/or routing chipset features which, in combination with a packet data communications network with multiple network segments, embody each of the elements of the patent claim.  In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets, Foundry Jetcore (ASICs and FPGAs) chipsets, or Marvel Prestera chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields.  These second internal headers are sometimes referred to in Foundry's technical and marketing literature as "internal Foundry headers," "Foundry internal headers," and/or as "optimized headers."<br><br>Upon information and belief, these switching and/or routing chipset features that use Foundry Ironcore chipsets, Marvel Galileo chipsets, or NEC VR5500 chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields. |
| 2 | AccessIron (1201, 1202, 1204, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, | Each of the listed products/product lines contain switching and/or routing chipset features which, in combination with a packet data communications network with multiple network segments, embody each of the elements of the patent claim.  In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets, Foundry Jetcore (ASICs and FPGAs) chipsets, or Marvel Prestera chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields.  These second internal headers are sometimes referred to in Foundry's technical and |

| U.S. Patent No. 5,390,173 (the "'173 Patent") | | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| | II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | marketing literature as "internal Foundry headers," "Foundry internal headers," and/or as "optimized headers." Upon information and belief, the second header also includes link numbers for the source and destination of the packet.<br><br>Upon information and belief, these switching and/or routing chipset features that use Foundry Ironcore chipsets, Marvel Galileo chipsets, or NEC VR5500 chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields. The second header also includes link numbers for the source and destination of the packet. |
| 3 | AccessIron (1201, 1202, 1204, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | Each of the listed products/product lines contain switching and/or routing chipset features which, in combination with a packet data communications network with multiple network segments, embody each of the elements of the patent claim. In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets, Foundry Jetcore (ASICs and FPGAs) chipsets, or Marvel Prestera chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields. These second internal headers are sometimes referred to in Foundry's technical and marketing literature as "internal Foundry headers," "Foundry internal headers," and/or as "optimized headers." The switching address is much shorter in terms of bits than the destination address.<br><br>Upon information and belief, these switching and/or routing chipset features that use Foundry Ironcore chipsets, Marvel Galileo chipsets, or NEC VR5500 chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields. The switching address is much shorter in terms of bits than the destination address. |

| | U.S. Patent No. 5,390,173 (the "'173 Patent") | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| 4 | AccessIron (1201, 1202, 1204, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | Each of the listed products/product lines contain switching and/or routing chipset features which, in combination with a packet data communications network with multiple network segments, embody each of the elements of the patent claim.  In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets, Foundry Jetcore (ASICs and FPGAs) chipsets, or Marvel Prestera chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields.  These second internal headers are sometimes referred to in Foundry's technical and marketing literature as "internal Foundry headers," "Foundry internal headers," and/or as "optimized headers."  The switching address is much shorter in terms of bits than the destination address.  Moreover, the second header also includes a source switch address which is translated from the network source address.<br><br>Upon information and belief, these switching and/or routing chipset features that use Foundry Ironcore chipsets, Marvel Galileo chipsets, or NEC VR5500 chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields.  The switching address is much shorter in terms of bits than the destination address.  Moreover, the second header also includes a source switch address which is translated from the network source address. |
| 5 | AccessIron (1201, 1202, 1204, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, | Each of the listed products/product lines contain switching and/or routing chipset features which, in combination with a packet data communications network with multiple network segments, embody each of the elements of the patent claim.  In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets, Foundry Jetcore (ASICs and FPGAs) chipsets, or Marvel Prestera chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address |

| U.S. Patent No. 5,390,173 (the "'173 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
|  | Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)  NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)  SecureIron (100, 300)  ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)  TurboIron | translated from the network destination address, local status information, and a plurality of status fields.  These second internal headers are sometimes referred to in Foundry's technical and marketing literature as "internal Foundry headers," "Foundry internal headers," and/or as "optimized headers."  The switching address is much shorter in terms bits than the destination address.  Moreover, the second header also includes a source switch address which is translated from the network source address.  In addition, the switching device is a crossbar switch.  Upon information and belief, these switching and/or routing chipset features that use Foundry Ironcore chipsets, Marvel Galileo chipsets, or NEC VR5500 chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields.  The switching address is much shorter in terms bits than the destination address.  Moreover, the second header also includes a source switch address which is translated from the network source address.  In addition, the switching device is a crossbar switch. |
| 6 | AccessIron (1201, 1202, 1204, 1208, 3201, 3202)  BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)  EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)  FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)  NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR | Each of the listed products/product lines contain switching and/or routing chipset features which, in combination with a packet data communications network with multiple network segments, embody each of the elements of the patent claim.  In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets, Foundry Jetcore (ASICs and FPGAs) chipsets, or Marvel Prestera chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields.  These second internal headers are sometimes referred to in Foundry's technical and marketing literature as "internal Foundry headers," "Foundry internal headers," and/or as "optimized headers."  The switching address is much shorter in terms bits than the destination address.  Moreover, |

- 14 -

| U.S. Patent No. 5,390,173 (the "'173 Patent") | |
|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |

| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
|---|---|---|
| | 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | the second header also includes a source switch address which is translated from the network source address.  In addition, the switching device is a crossbar switch.  Upon information and belief, the packets are received from a portion of a network which uses serial FDDI links, and the switching device has parallel ports.<br><br>Upon information and belief, these switching and/or routing chipset features that use Foundry Ironcore chipsets, Marvel Galileo chipsets, or NEC VR5500 chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields.  The switching address is much shorter in terms bits than the destination address.  Moreover, the second header also includes a source switch address which is translated from the network source address.  In addition, the switching device is a crossbar switch.  The packets are received from a portion of a network which uses serial FDDI links, and the switching device has parallel ports. |
| 7 | AccessIron (1201, 1202, 1204, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K) | Each of the listed products/product lines contain switching and/or routing chipset features which, in combination with a packet data communications network with multiple network segments, embody each of the elements of the patent claim.  In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets, Foundry Jetcore (ASICs and FPGAs) chipsets, or Marvel Prestera chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which upon information and belief is a service class field.  These second internal headers are sometimes referred to in Foundry's technical and marketing literature as "internal Foundry headers," "Foundry internal headers," and/or as "optimized headers."  The switching device processes the packet in response to this service class field.  The switching address is much shorter in terms of bits than the destination |

- 15 -

| U.S. Patent No. 5,390,173 (the "'173 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | SecureIron (100, 300)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | address. Moreover, the second header also includes a source switch address which is translated from the network source address. In addition, the switching device is a crossbar switch. The packets are received from a portion of a network which uses serial FDDI links, and the switching device has parallel ports. |
| | | Upon information and belief, these switching and/or routing chipset features that use Foundry Ironcore chipsets, Marvel Galileo chipsets, or NEC VR5500 chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which is a service class field. The switching device processes the packet in response to this service class field. The switching address is much shorter in terms of bits than the destination address. Moreover, the second header also includes a source switch address which is translated from the network source address. In addition, the switching device is a crossbar switch. The packets are received from a portion of a network which uses serial FDDI links, and the switching device has parallel ports. |
| 8 | AccessIron (1201, 1202, 1204, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR | Each of the listed products/product lines contain switching and/or routing chipset features which, in combination with a packet data communications network with multiple network segments, embody each of the elements of the patent claim. In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets, Foundry Jetcore (ASICs and FPGAs) chipsets, or Marvel Prestera chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which upon information and belief is a service class field and one of which upon information and belief is a protocol class field. These second internal headers are sometimes referred to in Foundry's technical and marketing literature as "internal Foundry headers," "Foundry internal |

| U.S. Patent No. 5,390,173 (the "'173 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
|  | 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | headers," and/or as "optimized headers." The switching device processes the packet in response to this service class field and this protocol class field. The switching address is much shorter in terms of bits than the destination address. Moreover, the second header also includes a source switch address which is translated from the network source address. In addition, the switching device is a crossbar switch. The packets are received, upon information and belief, from a portion of a network which uses serial FDDI links, and the switching device has parallel ports.<br><br>Upon information and belief, these switching and/or routing chipset features that use Foundry Ironcore chipsets, Marvel Galileo chipsets, or NEC VR5500 chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which is a service class field and one of which is a protocol class field. The switching device processes the packet in response to this service class field and this protocol class field. The switching address is much shorter in terms of bits than the destination address. Moreover, the second header also includes a source switch address which is translated from the network source address. In addition, the switching device is a crossbar switch. The packets are received from a portion of a network which uses serial FDDI links, and the switching device has parallel ports. |
| 9 | AccessIron (1201, 1202, 1204, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802- | Each of the listed products/product lines contain switching and/or routing chipset features which, in combination with a packet data communications network with multiple network segments, embody each of the elements of the patent claim. In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets, Foundry Jetcore (ASICs and FPGAs) chipsets, or Marvel Prestera chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status |

| U.S. Patent No. 5,390,173 (the "'173 Patent") | |
|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |

| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
|---|---|---|
| | POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | information, and a plurality of status fields, which include upon information and belief a service class field, a protocol class field, and a status field indicating local congestion.  These second internal headers are sometimes referred to in Foundry's technical and marketing literature as "internal Foundry headers," "Foundry internal headers," and/or as "optimized headers."  The switching device processes the packet in response to this service class field, this protocol class field and this status field indicating local congestion. The switching address is much shorter in terms of bits than the destination address.  Moreover, the second header also includes a source switch address which is translated from the network source address.  In addition, the switching device is a crossbar switch.  The packets are received, upon information and belief, from a portion of a network which uses serial FDDI links, and the switching device has parallel ports.<br><br>Upon information and belief, these switching and/or routing chipset features that use Foundry Ironcore chipsets, Marvel Galileo chipsets, or NEC VR5500 chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, which include a service class field, a protocol class field, and a status field indicating local congestion.  The switching device processes the packet in response to this service class field, this protocol class field and this status field indicating local congestion.  The switching address is much shorter in terms of bits than the destination address.  Moreover, the second header also includes a source switch address which is translated from the network source address.  In addition, the switching device is a crossbar switch.  The packets are received from a portion of a network which uses serial FDDI links, and the switching device has parallel ports. |
| 10 | AccessIron (1201, 1202, 1204, 1208, 3201, 3202) | Each of the listed products/product lines contain switching and/or routing chipset features which practice each of the elements of the |

| \multicolumn{3}{c}{**U.S. Patent No. 5,390,173 (the "'173 Patent")**} |
|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
|  | BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | patent claim when used within the context of a packet data communications network with multiple network segments.  In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets, Foundry Jetcore (ASICs and FPGAs) chipsets, or Marvel Prestera chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields.  These second internal headers are sometimes referred to in Foundry's technical and marketing literature as "internal Foundry headers," "Foundry internal headers," and/or as "optimized headers."<br><br>Upon information and belief, these switching and/or routing chipset features that use Foundry Ironcore chipsets, Marvel Galileo chipsets, or NEC VR5500 chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields. |
| 11 | AccessIron (1201, 1202, 1204, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR | Each of the listed products/product lines contain switching and/or routing chipset features which practice each of the elements of the patent claim when used within the context of a packet data communications network with multiple network segments.  In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets, Foundry Jetcore (ASICs and FPGAs) chipsets, or Marvel Prestera chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields.  These second internal headers are sometimes referred to in Foundry's technical and marketing literature as "internal Foundry headers," "Foundry internal headers," and/or as "optimized headers."  The second header also includes upon information and belief link numbers for the source and |

| U.S. Patent No. 5,390,173 (the "'173 Patent") | |
|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |

| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
|---|---|---|
|  | 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | destination of the packet.<br><br>Upon information and belief, these switching and/or routing chipset features that use Foundry Ironcore chipsets, Marvel Galileo chipsets, or NEC VR5500 chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields.  The second header also includes link numbers for the source and destination of the packet. |
| 12 | AccessIron (1201, 1202, 1204, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | Each of the listed products/product lines contain switching and/or routing chipset features which practice each of the elements of the patent claim when used within the context of a packet data communications network with multiple network segments.  In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets, Foundry Jetcore (ASICs and FPGAs) chipsets, or Marvel Prestera chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields.  These second internal headers are sometimes referred to in Foundry's technical and marketing literature as "internal Foundry headers," "Foundry internal headers," and/or as "optimized headers."  The switching address is much shorter in terms of bits than the destination address.<br><br>Upon information and belief, these switching and/or routing chipset features that use Foundry Ironcore chipsets, Marvel Galileo chipsets, or NEC VR5500 chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields.  The switching address is much shorter in terms of bits than the destination address. |
| 13 | AccessIron (1201, 1202, 1204, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX) | Each of the listed products/product lines contain switching and/or routing chipset features which practice each of the elements of the patent claim when used within the context of a packet data |

- 20 -

| U.S. Patent No. 5,390,173 (the "'173 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | communications network with multiple network segments. In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets, Foundry Jetcore (ASICs and FPGAs) chipsets, or Marvel Prestera chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields. These second internal headers are sometimes referred to in Foundry's technical and marketing literature as "internal Foundry headers," "Foundry internal headers," and/or as "optimized headers." The switching address is much shorter in terms of bits than the destination address. Moreover, the second header also includes a source switch address which is translated from the network source address.<br><br>Upon information and belief, these switching and/or routing chipset features that use Foundry Ironcore chipsets, Marvel Galileo chipsets, or NEC VR5500 chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields. The switching address is much shorter in terms of bits than the destination address. Moreover, the second header also includes a source switch address which is translated from the network source address. |
| 14 | AccessIron (1201, 1202, 1204, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, | Each of the listed products/product lines contain switching and/or routing chipset features which practice each of the elements of the patent claim when used within the context of a packet data communications network with multiple network segments. In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets, Foundry Jetcore (ASICs and FPGAs) chipsets, or Marvel Prestera chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields. These second internal headers are sometimes referred to in Foundry's technical and |

MP3 20186395.1

| U.S. Patent No. 5,390,173 (the "'173 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | marketing literature as "internal Foundry headers," "Foundry internal headers," and/or as "optimized headers." The switching address is much shorter in terms bits than the destination address. Moreover, the second header also includes a source switch address which is translated from the network source address. In addition, the switching device is a crossbar switch. |
| | | Upon information and belief, these switching and/or routing chipset features that use Foundry Ironcore chipsets, Marvel Galileo chipsets, or NEC VR5500 chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields. The switching address is much shorter in terms bits than the destination address. Moreover, the second header also includes a source switch address which is translated from the network source address. In addition, the switching device is a crossbar switch. |
| 15 | AccessIron (1201, 1202, 1204, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300) | Each of the listed products/product lines contain switching and/or routing chipset features which practice each of the elements of the patent claim when used within the context of a packet data communications network with multiple network segments. In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets, Foundry Jetcore (ASICs and FPGAs) chipsets, or Marvel Prestera chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields. These second internal headers are sometimes referred to in Foundry's technical and marketing literature as "internal Foundry headers," "Foundry internal headers," and/or as "optimized headers." The switching address is much shorter in terms bits than the destination address. Moreover, the second header also includes a source switch address which is translated from the network source address. In addition, the switching device is a crossbar switch. The packets are received, upon |

- 22 -

| U.S. Patent No. 5,390,173 (the "'173 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | information and belief, from a portion of a network which uses serial FDDI links, and the switching device has parallel ports.<br><br>Upon information and belief, these switching and/or routing chipset features that use Foundry Ironcore chipsets, Marvel Galileo chipsets, or NEC VR5500 chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields. The switching address is much shorter in terms bits than the destination address. Moreover, the second header also includes a source switch address which is translated from the network source address. In addition, the switching device is a crossbar switch. The packets are received from a portion of a network which uses serial FDDI links, and the switching device has parallel ports. |
| 16 | AccessIron (1201, 1202, 1204, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, | Each of the listed products/product lines contain switching and/or routing chipset features which practice each of the elements of the patent claim when used within the context of a packet data communications network with multiple network segments. In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets, Foundry Jetcore (ASICs and FPGAs) chipsets, or Marvel Prestera chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which upon information and belief is a service class field. These second internal headers are sometimes referred to in Foundry's technical and marketing literature as "internal Foundry headers," "Foundry internal headers," and/or as "optimized headers." The switching device processes the packet in response to this service class field. The switching address is much shorter in terms of bits than the destination address. Moreover, the second header also includes a source switch address which is translated from the network source address. In addition, the switching device is a crossbar switch. The packets are |

| U.S. Patent No. 5,390,173 (the "'173 Patent") | | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| | XL)

TurboIron | received, upon information and belief, from a portion of a network which uses serial FDDI links, and the switching device has parallel ports.

Upon information and belief, these switching and/or routing chipset features that use Foundry Ironcore chipsets, Marvel Galileo chipsets, or NEC VR5500 chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which upon information and belief is a service class field. The switching device processes the packet in response to this service class field. The switching address is much shorter in terms of bits than the destination address. Moreover, the second header also includes a source switch address which is translated from the network source address. In addition, the switching device is a crossbar switch. The packets are received upon information and belief from a portion of a network which uses serial FDDI links, and the switching device has parallel ports. |
| 17 | AccessIron (1201, 1202, 1204, 1208, 3201, 3202)

BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)

EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)

FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)

NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K) | Each of the listed products/product lines contain switching and/or routing chipset features which practice each of the elements of the patent claim when used within the context of a packet data communications network with multiple network segments. In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets, Foundry Jetcore (ASICs and FPGAs) chipsets, or Marvel Prestera chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which upon information and belief is a service class field and one of which upon information and belief is a protocol class field. These second internal headers are sometimes referred to in Foundry's technical and marketing literature as "internal Foundry headers," "Foundry internal headers," and/or as "optimized headers." The switching device |

| U.S. Patent No. 5,390,173 (the "'173 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | SecureIron (100, 300)

ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)

TurboIron | processes the packet in response to this service class field and this protocol class field. The switching address is much shorter in terms of bits than the destination address. Moreover, the second header also includes a source switch address which is translated from the network source address. In addition, the switching device is a crossbar switch. The packets are received, upon information and belief, from a portion of a network which uses serial FDDI links, and the switching device has parallel ports. |
| | | Upon information and belief, these switching and/or routing chipset features that use Foundry Ironcore chipsets, Marvel Galileo chipsets, or NEC VR5500 chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which is a service class field and one of which is a protocol class field. The switching device processes the packet in response to this service class field and this protocol class field. The switching address is much shorter in terms of bits than the destination address. Moreover, the second header also includes a source switch address which is translated from the network source address. In addition, the switching device is a crossbar switch. The packets are received from a portion of a network which uses serial FDDI links, and the switching device has parallel ports. |
| 18 | AccessIron (1201, 1202, 1204, 1208, 3201, 3202)

BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)

EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)

FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS | Each of the listed products/product lines contain switching and/or routing chipset features which practice each of the elements of the patent claim when used within the context of a packet data communications network with multiple network segments. In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets, Foundry Jetcore (ASICs and FPGAs) chipsets, or Marvel Prestera chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, which include upon |

- 25 -

| U.S. Patent No. 5,390,173 (the "'173 Patent") | |
|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** |

| | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
|---|---|---|
| | 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | information and belief a service class field, a protocol class field, and a status field indicating local congestion. These second internal headers are sometimes referred to in Foundry's technical and marketing literature as "internal Foundry headers," "Foundry internal headers," and/or as "optimized headers." The switching device processes the packet in response to this service class field, this protocol class field and this status field indicating local congestion. The switching address is much shorter in terms of bits than the destination address. Moreover, the second header also includes a source switch address which is translated from the network source address. In addition, the switching device is a crossbar switch. The packets are received, upon information and belief, from a portion of a network which uses serial FDDI links, and the switching device has parallel ports.<br><br>Upon information and belief, these switching and/or routing chipset features that use Foundry Ironcore chipsets, Marvel Galileo chipsets, or NEC VR5500 chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, which include a service class field, a protocol class field, and a status field indicating local congestion. The switching device processes the packet in response to this service class field, this protocol class field and this status field indicating local congestion. The switching address is much shorter in terms of bits than the destination address. Moreover, the second header also includes a source switch address which is translated from the network source address. In addition, the switching device is a crossbar switch. The packets are received from a portion of a network which uses serial FDDI links, and the switching device has parallel ports. |
| 19 | AccessIron (1201, 1202, 1204, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX) | Each of the listed products/product lines contain switching and/or routing chipset features which, in combination with a packet data communications network with multiple network segments, embody |

- 26 -

| U.S. Patent No. 5,390,173 (the "'173 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | each of the elements of the patent claim. In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets, Foundry Jetcore (ASICs and FPGAs) chipsets, or Marvel Prestera chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which upon information and belief is a service class field. These second internal headers are sometimes referred to in Foundry's technical and marketing literature as "internal Foundry headers," "Foundry internal headers," and/or as "optimized headers."<br><br>Upon information and belief, these switching and/or routing chipset features that use Foundry Ironcore chipsets, Marvel Galileo chipsets, or NEC VR5500 chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which is a service class field. |
| 20 | AccessIron (1201, 1202, 1204, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K) | Each of the listed products/product lines contain switching and/or routing chipset features which, in combination with a packet data communications network with multiple network segments, embody each of the elements of the patent claim. In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets, Foundry Jetcore (ASICs and FPGAs) chipsets, or Marvel Prestera chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which upon information and belief is a protocol class field. These second internal headers are sometimes referred to in Foundry's technical and marketing literature as "internal Foundry headers," "Foundry internal headers," and/or as "optimized headers."<br><br>Upon information and belief, these switching and/or routing chipset |

- 27 -

| U.S. Patent No. 5,390,173 (the "'173 Patent") | | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| | SecureIron (100, 300)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | features that use Foundry Ironcore chipsets, Marvel Galileo chipsets, or NEC VR5500 chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which is a protocol class field. |
| 21 | AccessIron (1201, 1202, 1204, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | Each of the listed products/product lines contain switching and/or routing chipset features which, in combination with a packet data communications network with multiple network segments, embody each of the elements of the patent claim.  In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets, Foundry Jetcore (ASICs and FPGAs) chipsets, or Marvel Prestera chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which upon information and belief indicates local congestion.  These second internal headers are sometimes referred to in Foundry's technical and marketing literature as "internal Foundry headers," "Foundry internal headers," and/or as "optimized headers."<br><br>Upon information and belief, these switching and/or routing chipset features that use Foundry Ironcore chipsets, Marvel Galileo chipsets, or NEC VR5500 chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which indicates local congestion. |
| 22 | AccessIron (1201, 1202, 1204, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, | Each of the listed products/product lines contain switching and/or routing chipset features which practice each of the elements of the patent claim when used in the context of a packet data communications network with multiple network segments.  In particular, these switching and/or routing chipset features that use |

| U.S. Patent No. 5,390,173 (the "'173 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | Broadcom 5600 series chipsets, Foundry Jetcore (ASICs and FPGAs) chipsets, or Marvel Prestera chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which upon information and belief is a service class field. These second internal headers are sometimes referred to in Foundry's technical and marketing literature as "internal Foundry headers," "Foundry internal headers," and/or as "optimized headers."<br><br>Upon information and belief, these switching and/or routing chipset features that use Foundry Ironcore chipsets, Marvel Galileo chipsets, or NEC VR5500 chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which is a service class field. |
| 23 | AccessIron (1201, 1202, 1204, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300) | Each of the listed products/product lines contain switching and/or routing chipset features which practice each of the elements of the patent claim when used in the context of a packet data communications network with multiple network segments. In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets, Foundry Jetcore (ASICs and FPGAs) chipsets, or Marvel Prestera chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which upon information and belief is a protocol class field. These second internal headers are sometimes referred to in Foundry's technical and marketing literature as "internal Foundry headers," "Foundry internal headers," and/or as "optimized headers."<br><br>Upon information and belief, these switching and/or routing chipset features that use Foundry Ironcore chipsets, Marvel Galileo chipsets, or NEC VR5500 chipsets add, and subsequently remove, a second |

| U.S. Patent No. 5,390,173 (the "'173 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which is a protocol class field. |
| 24 | AccessIron (1201, 1202, 1204, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | Each of the listed products/product lines contain switching and/or routing chipset features which practice each of the elements of the patent claim when used in the context of a packet data communications network with multiple network segments.  In particular, these switching and/or routing chipset features that use Broadcom 5600 series chipsets, Foundry Jetcore (ASICs and FPGAs) chipsets, or Marvel Prestera chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which upon information and belief indicates local congestion.  These second internal headers are sometimes referred to in Foundry's technical and marketing literature as "internal Foundry headers," "Foundry internal headers," and/or as "optimized headers."<br><br>Upon information and belief, these switching and/or routing chipset features that use Foundry Ironcore chipsets, Marvel Galileo chipsets, or NEC VR5500 chipsets add, and subsequently remove, a second internal header to a data packet which includes a switching address translated from the network destination address, local status information, and a plurality of status fields, one of which indicates local congestion. |

| U.S. Patent No. 6,128,665 (the "'665 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| 1 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | Each of the listed products/product lines contain port based default VLAN features which embody each of the elements of the patent claim. In particular, these port based default VLAN features include switches that receive data packets, and forward and/or flood the packets to the appropriate destination port(s) within the default VLAN, while restricting transmission to non-default VLAN port(s). |
| 2 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K) | Each of the listed products/product lines contain port based default VLAN features which embody each of the elements of the patent claim. In particular, these port based default VLAN features include switches that receive data packets, and forward and/or flood the packets to the appropriate destination port(s) within the default VLAN, while restricting transmission to non-default VLAN port(s). The switch uses the header in the data packet to ascertain the destination port. |

| U.S. Patent No. 6,128,665 (the "'665 Patent") | |
|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |

| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
|---|---|---|
| | SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | |
| 3 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | Each of the listed products/product lines contain port based default VLAN features which embody each of the elements of the patent claim.  In particular, these port based default VLAN features include switches that receive data packets, and forward and/or flood the packets to the appropriate destination port(s) within the default VLAN, while restricting transmission to non-default VLAN port(s).  The switch can also tag the packet as defined, for example, in 802.1Q. |
| 4 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR | Each of the listed products/product lines contain port based default VLAN features which practice each of the elements of the patent claim.  In particular, these port based default VLAN features include switches that receive data packets, and forward and/or flood the packets to the appropriate destination port(s) within the default VLAN, while restricting transmission to non-default VLAN port(s). |

| U.S. Patent No. 6,128,665 (the "'665 Patent") | |
|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |

| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
|---|---|---|
| | 4K/8K/16K/32K, MLX 4K/8K/16K) SecureIron (100, 300) ServerIron (350, 450, 850, C Series, E Series, XL) | |
| 5 | AccessIron (1201, 1202, 1208, 3201, 3202) BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16) EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F) FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448) NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K) SecureIron (100, 300) ServerIron (350, 450, 850, C Series, E Series, XL) | Each of the listed products/product lines contain port based default VLAN features which practice each of the elements of the patent claim.  In particular, these port based default VLAN features include switches that receive data packets, and forward and/or flood the packets to the appropriate destination port(s) within the default VLAN, while restricting transmission to non-default VLAN port(s). The switch can also tag the packet as defined, for example, in 802.1Q. |
| 6 | AccessIron (1201, 1202, 1208, 3201, 3202) BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16) EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F) FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448) | Each of the listed products/product lines contain port based default VLAN features which embody each of the elements of the patent claim.  In particular, these port based default VLAN features include program code used with switches that receive data packets, and forward and/or flood the packets to the appropriate destination port(s) within the default VLAN, while restricting transmission to non-default VLAN port(s). |

MP3 20186395.1

| U.S. Patent No. 6,128,665 (the "'665 Patent") | | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| | NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | |
| 7 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | Each of the listed products/product lines contain port based default VLAN features which embody each of the elements of the patent claim.  In particular, these port based default VLAN features include program code used with switches that receive data packets, and forward and/or flood the packets to the appropriate destination port(s) within the default VLAN, while restricting transmission to non-default VLAN port(s).  The switch can also use program code to tag a packet as defined, for example, in 802.1Q. |

MP3 20186395.1

| U.S. Patent No. 6,147,995 (the "'995 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| 1 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim. In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. |
| 2 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K) | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim. In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. If necessary, another switch can remove the 802.1Q tag header before forwarding the packet. |

- 35 -

| U.S. Patent No. 6,147,995 (the "'995 Patent") | |
|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |

| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
|---|---|---|
| | SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | |
| 3 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim. In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. The switches maintain a mapping table which is used to appropriately forward the packet. If necessary, another switch can remove the 802.1Q tag header before forwarding the packet. |
| 4 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim. In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. If the packet is not destined for any of the access ports in the switch, the packet is discarded. |

| U.S. Patent No. 6,147,995 (the "'995 Patent") | |
|---|---|
| **CLAIM** **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | |
| 5 AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim. In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. The switch maintains a table(s) which relate the assigned identifiers to the end systems or ports of the switch, and the ports of the switch to the assigned identifiers. |
| 6 AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448) | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim. In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. The switch maintains a table(s) which relate the assigned identifiers to the end systems or ports of the switch, and |

- 37 -

| U.S. Patent No. 6,147,995 (the "'995 Patent") | | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| | NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | the ports of the switch to the assigned identifiers.  A table is reviewed for the VLAN identifier associated with the source end system or the receiving port. |
| 7 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim.  In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network.  When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers.  The switch maintains a table(s) which relate the assigned identifiers to the end systems or ports of the switch, and the ports of the switch to the assigned identifiers.  A table is reviewed for the VLAN identifier associated with the source end system or the receiving port.  A table is reviewed for the port associated with the determined identifier. |
| 8 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim.  In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network.  When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the |

| U.S. Patent No. 6,147,995 (the "'995 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | determined identifiers. The switch maintains a table(s) which relate the assigned identifiers to the end systems or ports of the switch, and the ports of the switch to the assigned identifiers. A table is reviewed for the port associated with the determined VLAN identifier. |
| 9 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim. In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. Upon information and belief, the received data packet is of a protocol not supported by the switch. |
| 13 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F) | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim. In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers |

- 39 -

| | U.S. Patent No. 6,147,995 (the "'995 Patent") | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)

NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)

SecureIron (100, 300)

ServerIron (350, 450, 850, C Series, E Series, XL) | associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. The switch maintains a mapping for every end system or access port in that switch. |
| 14 | AccessIron (1201, 1202, 1208, 3201, 3202)

BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)

EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)

FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)

NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)

SecureIron (100, 300)

ServerIron (350, 450, 850, C Series, E Series, XL) | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim. In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. The switch maintains a default VLAN identifier before specific end systems or access ports are assigned an identifier. |
| 18 | AccessIron (1201, 1202, 1208, 3201, 3202)

BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)

EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim. In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign |

| \| U.S. Patent No. 6,147,995 (the "'995 Patent") || ||
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
|  | 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. Upon information and belief, the VLAN identifier can be assigned based on a policy work group definition. |
| 19 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which, in combination with a network with a plurality of end systems and switches, embody each of the elements of the patent claim. In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. Each switch maintains at least one mapping table to map VLAN identifiers to end systems and/or port(s). |
| 20 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16) | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent |

| U.S. Patent No. 6,147,995 (the "'995 Patent") | | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| | EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | claim.  In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers.  Each switch maintains at least one mapping table to map VLAN identifiers to port(s) and end systems. |
| 21 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim.  In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers.  Upon information and belief, a reserved identifier is assigned without limitation as to end system and access port. |
| 22 | AccessIron (1201, 1202, 1208, 3201, 3202) | Each of the listed products/product lines contain IEEE 802.1Q, port- |

MP3 20186395.1

| U.S. Patent No. 6,147,995 (the "'995 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim. In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. Each switch maintains a MIB interface for programming mapping tables. |
| 23 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300) | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim. In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. Each switch uses SNMP to maintain the mapping table. |

| U.S. Patent No. 6,147,995 (the "'995 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | ServerIron (350, 450, 850, C Series, E Series, XL) | |
| 24 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim.  In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers.  Upon information and belief, a status table is maintained at each switch to enable and disable a respective subset. |
| 25 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K) | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim.  In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. |

| U.S. Patent No. 6,147,995 (the "'995 Patent") | |
|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
|  | SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) |  |
| 26 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim.  In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network.  When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers.  If necessary, another switch can remove the 802.1Q tag header before forwarding the packet. |
| 27 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim.  In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network.  When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers.  The switches maintain a mapping table which is used to appropriately forward the packet.  If necessary, another switch can remove the 802.1Q tag header before forwarding the packet. |

| U.S. Patent No. 6,147,995 (the "'995 Patent") | |
|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |

| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
|---|---|---|
| | 4K/8K/16K/32K, MLX 4K/8K/16K)  SecureIron (100, 300)  ServerIron (350, 450, 850, C Series, E Series, XL) | |
| 28 | AccessIron (1201, 1202, 1208, 3201, 3202)  BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)  EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)  FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)  NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)  SecureIron (100, 300)  ServerIron (350, 450, 850, C Series, E Series, XL) | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim.  In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers.  If the packet is not destined for any of the access ports in the switch, the packet is discarded. |
| 29 | AccessIron (1201, 1202, 1208, 3201, 3202)  BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)  EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)  FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448) | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim.  In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers.  The switch maintains a table(s) which relate the assigned identifiers to the end systems or ports of the switch, and |

| | U.S. Patent No. 6,147,995 (the "'995 Patent") | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | the ports of the switch to the assigned identifiers. |
| 30 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim.  In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network.  When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers.  The switch maintains a table(s) which relate the assigned identifiers to the end systems or ports of the switch, and the ports of the switch to the assigned identifiers.  A table is reviewed for the VLAN identifier associated with the source end system or the receiving port. |
| 31 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim.  In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network.  When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the |

| U.S. Patent No. 6,147,995 (the "'995 Patent") | | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
|  | X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | determined identifiers.  The switch maintains a table(s) which relate the assigned identifiers to the end systems or ports of the switch, and the ports of the switch to the assigned identifiers.  A table is reviewed for the VLAN identifier associated with the source end system or the receiving port.  A table is reviewed for the port associated with the determined identifier. |
| 32 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim.  In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers.  The switch maintains a default VLAN identifier before specific end systems or access ports are assigned an identifier. |
| 33 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F) | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim.  In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers |

| | U.S. Patent No. 6,147,995 (the "'995 Patent") | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| | FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448) <br><br> NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K) <br><br> SecureIron (100, 300) <br><br> ServerIron (350, 450, 850, C Series, E Series, XL) | associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. Each switch maintains a MIB interface for programming mapping tables. |
| 34 | AccessIron (1201, 1202, 1208, 3201, 3202) <br><br> BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16) <br><br> EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F) <br><br> FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448) <br><br> NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K) <br><br> SecureIron (100, 300) <br><br> ServerIron (350, 450, 850, C Series, E Series, XL) | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim. In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. Each switch uses SNMP to maintain the mapping table. |
| 35 | AccessIron (1201, 1202, 1208, 3201, 3202) <br><br> BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16) <br><br> EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, | Each of the listed products/product lines contain IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features which embody each of the elements of the patent claim. In particular, these IEEE 802.1Q, port-based, protocol-based, MAC-based, subnet-based, and/or default VLAN features assign |

| U.S. Patent No. 6,147,995 (the "'995 Patent") | | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| | 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | VLAN identifiers and map those identifiers to port(s) in the network. When the switch receives data packets, it determines the identifiers associated therewith, encapsulates the packets by adding a tag header as outlined in 802.1Q, and forwards the packets based upon the determined identifiers. Upon information and belief, a status table is maintained to enable and disable a respective subset. |

MP3 20186395.1

| U.S Patent No. 6,539,022 (the "'022 Patent") | | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| 1 | AccessIron (some models only)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | Each of the listed products/product lines contain IGMP snooping features which embody each of the elements of the patent claim.  In particular, these IGMP snooping features can examine packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the bridge's multicast forwarding data based upon information in the packet. |
| 2 | AccessIron (some models only)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III) | Each of the listed products/product lines contain IGMP snooping features which embody each of the elements of the patent claim.  In particular, these IGMP snooping features can examine packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the bridge's multicast forwarding data based upon information in the packet.  The bridge identifies the I/O interface on which the packet arrived, and cross-references that I/O interface to the multicast group in conjunction with updating forwarding data. |

| U.S Patent No. 6,539,022 (the "'022 Patent") | | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
|  | NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron |  |
| 3 | AccessIron (some models only)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | Each of the listed products/product lines contain IGMP snooping features which embody each of the elements of the patent claim. In particular, these IGMP snooping features can examine packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the bridge's multicast forwarding data based upon information in the packet. The bridge can identify the source of the packet, and cross-references that source to the identified multicast group in conjunction with updating forwarding data. |
| 4 | AccessIron (some models only)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F) | Each of the listed products/product lines contain IGMP snooping features which embody each of the elements of the patent claim. In particular, these IGMP snooping features can examine packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the bridge's multicast forwarding data based upon information in the packet. The bridge identifies the I/O interface on which the packet |

- 52 -

| \multicolumn{3}{c}{U.S Patent No. 6,539,022 (the "'022 Patent")} |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| | FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | arrived and the source of the packet, and cross-references that I/O interface and source to the multicast group in conjunction with updating forwarding data. |
| 5 | AccessIron (some models only)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | Each of the listed products/product lines contain IGMP snooping features which embody each of the elements of the patent claim. In particular, these IGMP snooping features can examine packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the bridge's multicast forwarding data based upon information in the packet. If the packet is not a multicast control packet, the bridge can determine if it is a message packet destined for a multicast group. The bridge determines the multicast group, and sends the packet out each I/O interface which is cross-referenced in the forwarding data to that multicast group, except for the I/O interface on which the packet arrived. |
| 6 | AccessIron (some models only) | Each of the listed products/product lines contain IGMP snooping |

| U.S Patent No. 6,539,022 (the "'022 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | features which practice each of the elements of the patent claim.  In particular, these IGMP snooping features can determine the I/O interface on which packets received by a network device arrived, examine the packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the device's multicast forwarding data based upon information in the packet. |
| 7 | AccessIron (some models only)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K) | Each of the listed products/product lines contain IGMP snooping features which practice each of the elements of the patent claim.  In particular, these IGMP snooping features can determine the I/O interface on which packets received by a network device arrived, examine packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the device's multicast forwarding data based upon information in the packet.  The device cross-references that I/O interface to the multicast group in conjunction with updating forwarding data. |

- 54 -

| | U.S Patent No. 6,539,022 (the '"022 Patent") | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | |
| 8 | AccessIron (some models only)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | Each of the listed products/product lines contain IGMP snooping features which practice each of the elements of the patent claim. In particular, these IGMP snooping features can determine the I/O interface on which packets received by a network device arrived, examine the packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the device's multicast forwarding data based upon information in the packet. The network device can remove cross-references from the forwarding data between the identified I/O interface and the associated multicast group. |
| 9 | AccessIron (some models only)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802- | Each of the listed products/product lines contain IGMP snooping features which practice each of the elements of the patent claim. In particular, these IGMP snooping features can determine the I/O interface on which packets received by a network device arrived, examine the packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the device's multicast forwarding data based upon information in the packet. The network device can remove cross-references from the forwarding data between the identified I/O |

| U.S Patent No. 6,539,022 (the "'022 Patent") | |
|---|---|
| **CLAIM** **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | interface and the identified multicast group. In addition, the network device can delete from the forwarding data any cross-referenced I/O interface that is not connected to a device that is a member of the identified multicast group. |
| 10   AccessIron (some models only)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | Each of the listed products/product lines contain IGMP snooping features which practice each of the elements of the patent claim. In particular, these IGMP snooping features can determine the I/O interface on which packets received by a network device arrived, examine packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the device's multicast forwarding data based upon information in the packet. If the packet is not a multicast control packet, the device can determine if it is a message packet destined for a multicast group. The device determines the multicast group, retrieves the multicast forwarding data for this multicast group, and sends the packet out each I/O interface which is cross-referenced in the forwarding data to that multicast group, except for the I/O interface on which the packet arrived. |
| 11   AccessIron (some models only)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX) | Each of the listed products/product lines contain IGMP snooping features which practice each of the elements of the patent claim. In particular, these IGMP snooping features can determine the I/O |

- 56 -

| U.S Patent No. 6,539,022 (the '"022 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | interface on which packets received by a network device arrived, examine packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the device's multicast forwarding data based upon information in the packet. If the packet is not a multicast control packet, the device can determine if it is a message packet destined for a multicast group. The device determines the multicast group, retrieves the multicast forwarding data for this multicast group, and sends the packet out each I/O interface which is cross-referenced in the forwarding data to that multicast group. When there is no data associated with the identified multicast group, the packet is transmitted out all I/O interfaces except for the I/O interface on which the packet arrived. |
| 12 | AccessIron (some models only)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, | Each of the listed products/product lines contain IGMP snooping features which practice each of the elements of the patent claim. In particular, these IGMP snooping features can determine the I/O interface on which packets received by a network device arrived, examine the packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the device's multicast forwarding data based upon information in the packet. The control packets are defined according to an IGMP standard such as IGMP v1, IGMP v2, or IGMP v3. |

| U.S Patent No. 6,539,022 (the "'022 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | XL)<br><br>TurboIron | |
| 13 | AccessIron (some models only)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | Each of the listed products/product lines contain IGMP snooping features which practice each of the elements of the patent claim. In particular, these IGMP snooping features can determine the I/O interface on which packets received by a network device arrived, examine the packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the device's multicast forwarding data based upon information in the packet. The control packets are defined according to an IGMP standard such as IGMP v1, IGMP v2, or IGMP v3, and are either a host membership query, a host membership report, a join host group packet, or a leave host group packet. |
| 14 | AccessIron (some models only)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, | Each of the listed products/product lines contain IGMP snooping features which practice each of the elements of the patent claim. In particular, these IGMP snooping features can examine packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the bridge's multicast forwarding data based upon information in the packet. |

| U.S Patent No. 6,539,022 (the "'022 Patent") | | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| | II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | |
| 15 | AccessIron (some models only)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | Each of the listed products/product lines contain IGMP snooping features which practice each of the elements of the patent claim.  In particular, these IGMP snooping features can examine packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the bridge's multicast forwarding data based upon information in the packet.  The device identifies the I/O interface on which the packet arrived, and cross-references that I/O interface to the multicast group in conjunction with updating forwarding data. |
| 16 | AccessIron (some models only)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, | Each of the listed products/product lines contain IGMP snooping features which practice each of the elements of the patent claim.  In particular, these IGMP snooping features can examine packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the |

- 59 -

| U.S Patent No. 6,539,022 (the "'022 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | bridge's multicast forwarding data based upon information in the packet. The device can identify the source of the packet, and cross-references that source to the identified multicast group in conjunction with updating forwarding data. |
| 17 | AccessIron (some models only)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL) | Each of the listed products/product lines contain IGMP snooping features which practice each of the elements of the patent claim. In particular, these IGMP snooping features can examine packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the bridge's multicast forwarding data based upon information in the packet. The device identifies the I/O interface on which the packet arrived and the source of the packet, and cross-references that I/O interface and source to the multicast group in conjunction with updating forwarding data. |

| U.S Patent No. 6,539,022 (the "'022 Patent") | | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| | TurboIron | |
| 18 | AccessIron (some models only)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | Each of the listed products/product lines contain IGMP snooping features which practice each of the elements of the patent claim. In particular, these IGMP snooping features can examine packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the bridge's multicast forwarding data based upon information in the packet. If the packet is not a multicast control packet, the device can determine if it is a message packet destined for a multicast group. The device determine the multicast group, and sends the packet out each I/O interface which is cross-referenced in the forwarding data to that multicast group, except for the I/O interface on which the packet arrived. |
| 19 | AccessIron (some models only)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III) | Each of the listed products/product lines contain IGMP snooping features which practice each of the elements of the patent claim. In particular, these IGMP snooping features can examine packets to determine if they are multicast control packets destined for another device, identify the multicast group of the packet, and update the bridge's multicast forwarding data based upon information in the packet. Certain network devices exchange multicast control packets with other devices on the network to maintain multicast routing information. |

| U.S Patent No. 6,539,022 (the "'022 Patent") | | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
|  | NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron |  |
| 20 | AccessIron (some models only)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16, SuperX)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 3208RGC, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448, II, III)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>ServerIron (100, 400, 800, 350, 450, 850, C Series, E Series, XL)<br><br>TurboIron | Each of the listed products/product lines contain IGMP snooping features which practice each of the elements of the patent claim. In particular, these IGMP snooping features monitor multicast control packets, and for these multicast control packets determine the source and the I/O interface upon which the packet arrived, maintain an association of the multicast group with the I/O interface, and facilitate transmission of that packet to all I/O interfaces associated with that multicast group. |

MP3 20186395.1

| U.S. Patent No. 6,560,236 (the "'236 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| 1 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | Each of the listed products/product lines contain port based VLAN features which practice each of the elements of the patent claim. In particular, these port based VLAN features assign VLAN identifiers to ports, where all ports with the same identifier belong in the same group. When a multicast packet is received on a port associated with a VLAN identifier, the network bridge transmits the packet on all other ports which have the same VLAN identifier as the port on which the packet arrived. |
| 2 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K) | Each of the listed products/product lines contain port based VLAN features which practice each of the elements of the patent claim. In particular, these port based VLAN features assign VLAN identifiers to ports, where all ports with the same identifier belong in the same group. When a multicast packet is received on a port associated with a VLAN identifier, the network bridge transmits the packet on all other ports which have the same VLAN identifier as the port on which the packet arrived. The network bridge also identifies the source of all packets received. |

MP3 20186395.1

| U.S. Patent No. 6,560,236 (the "'236 Patent") | |
|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |

| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
|---|---|---|
| | SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | |
| 3 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | Each of the listed products/product lines contain port based VLAN features which practice each of the elements of the patent claim.  In particular, these VLAN features assign port based VLAN identifiers to ports, where all ports with the same identifier belong in the same group.  When a multicast packet is received on a port associated with a VLAN identifier, the network bridge transmits the packet on all other ports which have the same VLAN identifier as the port on which the packet arrived.  The network bridge also identifies the source and destination of all packets received.  The bridge determines the VLAN identifier assigned to the destination, and if the VLAN identifier of the destination is not the same as the VLAN identifier of the source, the packet is sent out a port not associated with the VLAN identifier of the source. |
| 4 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR | Each of the listed products/product lines contain port based VLAN features which practice each of the elements of the patent claim.  In particular, these port based VLAN features assign VLAN identifiers to ports, where all ports with the same identifier belong in the same group.  When a multicast packet is received on a port associated with a VLAN identifier, the network bridge transmits the packet on all other ports which have the same VLAN identifier as the port on which the packet arrived  When a multicast packet is received on a port not associated with a VLAN identifier, the network bridge transmits the packet on all ports having the same VLAN identifier as the one determined to be within the packet. |

| U.S. Patent No. 6,560,236 (the "'236 Patent") | | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
|  | 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) |  |
| 5 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | Each of the listed products/product lines contain port based VLAN features which practice each of the elements of the patent claim.  In particular, these port based VLAN features assign VLAN identifiers to ports, where all ports with the same identifier belong in the same group.  When a multicast packet is received on a port associated with a VLAN identifier, the network bridge transmits the packet on all other ports which have the same VLAN identifier as the port on which the packet arrived  When a multicast packet is received on a port not associated with a VLAN identifier, the network bridge transmits the packet on all ports having the same VLAN identifier as the one determined to be within the packet.  The VLAN identifier is removed from the packet (*e.g.,* the packet is untagged as described in 802.1Q) before it is transmitted. |
| 6 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448) | Each of the listed products/product lines contain port based VLAN features which practice each of the elements of the patent claim.  In particular, these port based VLAN features assign VLAN identifiers to ports, where all ports with the same identifier belong in the same group.  When a multicast packet is received on a port associated with a VLAN identifier, the network bridge transmits the packet on all other ports which have the same VLAN identifier as the port on which the packet arrived.  Each VLAN identifier is assigned a protocol type. |

| \multicolumn{3}{c}{**U.S. Patent No. 6,560,236 (the "'236 Patent")**} |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | |
| 7 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | Each of the listed products/product lines contain port based VLAN features which practice each of the elements of the patent claim. In particular, these port based VLAN features assign VLAN identifiers to ports, where all ports with the same identifier belong in the same group. When a multicast packet is received on a port associated with a VLAN identifier, the network bridge transmits the packet on all other ports which have the same VLAN identifier as the port on which the packet arrived. Upon information and belief, each VLAN identifier is assigned a protocol type, but no two distinct VLAN identifiers which have the same protocol type are assigned to the same port. |
| 8 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, | Each of the listed products/product lines contain port based VLAN features which practice each of the elements of the patent claim. In particular, these port based VLAN features assign VLAN identifiers to ports, where all ports with the same identifier belong in the same group. When a multicast packet is received on a port associated with a VLAN identifier, the network bridge transmits the packet on all other ports which have the same VLAN identifier as the port on which the packet arrived. Each port can have multiple VLAN identifiers assigned to it. |

| U.S. Patent No. 6,560,236 (the "'236 Patent") | |
|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |

| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
|---|---|---|
| | X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | |
| 9 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | Each of the listed products/product lines contain port based VLAN features which practice each of the elements of the patent claim. In particular, these port based VLAN features assign VLAN identifiers to ports, where all ports with the same identifier belong in the same group. When a packet is received from a port belonging to the first group of ports, the network bridge transmits the packet on all other ports which have the same VLAN identifier as the port on which the packet arrived. The network bridge also identifies the source and destination of the packet. If, for the received packet, the source VLAN identifier is not the same as the destination VLAN identifier, the packet is send out port(s) not included in the first group of ports, and indication is given of the VLAN identifier assigned to the port on which the packet arrived. |
| 11 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F) | Each of the listed products/product lines contain port based VLAN features which practice each of the elements of the patent claim. In particular, these port based VLAN features assign VLAN identifiers to ports, where all ports with the same identifier belong in the same group. A network bridge is connected to a router by a client port. The router has a defined correspondence between ports connected to the network device and each VLAN identifier. When a packet is |

| U.S. Patent No. 6,560,236 (the "'236 Patent") | | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| | FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | received on the network bridge from a port belonging to a first group of ports, it is transmitted out on all other ports with the same VLAN identifier as the source port.  The network bridge also identifies the source, destination and destination VLAN identifier of the packet.  If the VLAN identifier of the source and destination are different, the packet is sent out the client port. |
| 12 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | Each of the listed products/product lines contain port based VLAN features which practice each of the elements of the patent claim.  In particular, these port based VLAN features assign VLAN identifiers to ports, where all ports with the same identifier belong in the same group.  A network bridge is connected to a router by a client port.  The router has a defined correspondence between ports connected to the network bridge and each VLAN identifier.  When a packet is received on the network device from a port belonging to a first group of ports, it is transmitted out on all other ports with the same VLAN identifier as the source port.  The network bridge also identifies the source, destination and destination VLAN identifier of the packet.  If the VLAN identifier of the source and destination are different, the packet is sent out the client port.  A second packet is received from the router, and the VLAN identifier is determined. |
| 13 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, | Each of the listed products/product lines contain port based VLAN features which practice each of the elements of the patent claim.  In particular, these port based VLAN features assign VLAN identifiers to ports, where all ports with the same identifier belong in the same group.  A network bridge is connected to a router by a client port. |

| U.S. Patent No. 6,560,236 (the "'236 Patent") | |
|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |

| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
|---|---|---|
| | 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | The router has a defined correspondence between ports connected to the network bridge and each VLAN identifier. When a packet is received on the network device from a port belonging to a first group of ports, it is transmitted out on all other ports with the same VLAN identifier as the source port. The network bridge also identifies the source, destination and destination VLAN identifier of the packet. If the VLAN identifier of the source and destination are different, the packet is sent out the client port. The router sends a packet to the network bridge which has a VLAN identifier, and where the packet's source address is assigned to this VLAN identifier. |
| 14 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | Each of the listed products/product lines contain port based VLAN features which practice each of the elements of the patent claim. In particular, these port based VLAN features assign VLAN identifiers to ports, where all ports with the same identifier belong in the same group. A network bridge is connected to a router by a client port. The router has a defined correspondence between ports connected to the network bridge and each VLAN identifier. When a packet is received on the network device from a port belonging to a first group of ports, it is transmitted out on all other ports with the same VLAN identifier as the source port. The network bridge also identifies the source, destination and destination VLAN identifier of the packet. If the VLAN identifier of the source and destination are different, the packet is sent out the client port. The router maintains a record of packets sent from the bridge and the respective VLAN identifier. |
| 15 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16) | Each of the listed products/product lines contain port based VLAN features which embody each of the elements of the patent claim. In particular, these port based VLAN features assign VLAN identifiers |

| U.S. Patent No. 6,560,236 (the "'236 Patent") | | |
|---|---|---|
| CLAIM | INFRINGING PRODUCTS | BASIS FOR INFRINGEMENT |
| | EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | to ports, where all ports with the same identifier belong in the same group. When a multicast packet is received on a port associated with a VLAN identifier, the network bridge transmits the packet on all other ports which have the same VLAN identifier as the port on which the packet arrived. When a multicast packet is received on a port not associated with a VLAN identifier, the network bridge transmits the packet on all ports having the same VLAN identifier as the one determined to be within the packet. The VLAN identifier is removed from the packet (*e.g.,* the packet is untagged as described in 802.1Q) before it is transmitted. |
| 16 | AccessIron (1201, 1202, 1208, 3201, 3202)<br><br>BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | Each of the listed products/product lines contain port based VLAN features which embody each of the elements of the patent claim. In particular, these port based VLAN features use program instructions to assign VLAN identifiers to ports, where all ports with the same identifier belong in the same group. When a multicast packet is received on a port associated with a VLAN identifier, the network bridge transmits the packet on all other ports which have the same VLAN identifier as the port on which the packet arrived. When a multicast packet is received on a port not associated with a VLAN identifier, the network bridge transmits the packet on all ports having the same VLAN identifier as the one determined to be within the packet. The VLAN identifier is removed from the packet (*e.g.,* the packet is untagged as described in 802.1Q) before it is transmitted. The network device also identifies the source address of the packet. |
| 17 | AccessIron (1201, 1202, 1208, 3201, 3202) | Each of the listed products/product lines contain port based VLAN |

| U.S. Patent No. 6,560,236 (the "'236 Patent") | | |
|---|---|---|
| **CLAIM** | **INFRINGING PRODUCTS** | **BASIS FOR INFRINGEMENT** |
| | BigIron (4K, 8K, 16K, MG8, RX-4, RX-8, RX-16)<br><br>EdgeIron (2402CF, 4802, 4802CF, 24G, 48G, 24GS, 48GS, 8x10G, 10GC2F)<br><br>FastIron (400, 800, 1500, 4802, Edge 12GCF, Edge 2402/4802/9602/9604, Edge 2402-POE, Edge 4802-POE, X424, X448, X424POE, X424HF, SuperX, GS 624P/628P/624P-POE/628P-POE, Workgroup X424/X448)<br><br>NetIron (400, 800, 1500, 4802, 40G, IMR640, XMR 4K/8K/16K/32K, MLX 4K/8K/16K)<br><br>SecureIron (100, 300)<br><br>ServerIron (350, 450, 850, C Series, E Series, XL) | features which embody each of the elements of the patent claim. In particular, these port based VLAN features use program instructions to assign VLAN identifiers to ports, where all ports with the same identifier belong in the same group. When a multicast packet is received on a port associated with a VLAN identifier, the network bridge transmits the packet on all other ports which have the same VLAN identifier as the port on which the packet arrived. When a multicast packet is received on a port not associated with a VLAN identifier, the network bridge transmits the packet on all ports having the same VLAN identifier as the one determined to be within the packet. The VLAN identifier is removed from the packet (*e.g.,* the packet is untagged as described in 802.1Q) before it is transmitted. The network device also identifies the source address, destination address and VLAN identifier of the destination of the packet. If the VLAN identifier of the source and VLAN identifier of the destination are not the same, the packet is sent out port(s) not associated with the source VLAN identifier. |

# Exhibit 10

# McDermott
# Will & Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Firasat Ali
Attorney at Law
Fali@mwe.com
650.813.5012

May 31, 2006

BY E-MAIL

Marc N. Henschke, Esq.
Robins, Kaplan, Miller & Ciresi L.L.P.
Prudential Tower
800 Boylston Street, 25th Floor
Boston, MA 02199
mnhenschke@rkmc.com

Re:     *Enterasys Networks v. Extreme Networks*, Civil Action No. 05-12235 (D. Mass.)

Dear Marc:

This letter responds to your letter to me dated May 26th were you asked: "whether Extreme intends to withhold responsive non-public documents on the basis of their 'confidentiality' objections." By this letter, we confirm that Extreme will produce responsive, non-privileged documents under the terms and conditions of the Stipulated Protective Order that are public, confidential and/or highly confidential.

Because the Stipulated Protective Order is now in place, Extreme will not withhold responsive documents based upon an earlier objection regarding producing confidential documents in the absence of a protective order. Nor will Extreme condition its production on Enterasys' inadequate discovery responses, which are currently the subject of on-going meet and confer discussions.

Sincerely,

*Firasat Ali*

Firasat M. Ali

cc:     Alan E. McKenna, Esq. (By Email)
        Vera M. Elson, Esq. (By Email)
        David H. Dolkas, Esq. (By Email)
        Christopher D. Bright, Esq. (By Email)
        Neel I. Chatterjee, Esq. (By Email)
        Jeremy P. Oczek, Esq. (By Email)
        Sanjeet K. Dutta, Esq. (By Email)

MPK 109597-1.065994.0016

# Exhibit 11

# McDermott
# Will & Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

David H. Dolkas
Attorney at Law
ddolkas@mwe.com
650.813.5115

June 12, 2006

## VIA ELECTRONIC AND FIRST CLASS MAIL

Marc N. Henschke, Esq.
Robins, Kaplan, Miller & Ciresi L.L.P.
Prudential Tower
800 Boylston Street, 25th Floor
Boston, MA 02199
mnhenschke@rkmc.com

Re:    *Enterasys Networks v. Extreme Networks*, Civil Action No. 05-12235 (D. Mass.)

Dear Marc:

The purpose of the letter is to propose an extension to the deadlines set by the Court as set forth below.

Before sending you this letter, I asked Foundry's counsel to review it and let me know whether they agree to the revised dates. They are currently checking with their client and should get back to me shortly. Assuming we can all agree, I will draft a proposed Stipulation, which will set forth the proposed dates and generally describe that the parties collectively agree that more time is needed to get the necessary work done so all parties are properly prepared for the briefing and Markman hearing.

It should be abundantly clear that Phase I discovery is not on a schedule to be completed on a date that would allow the parties to meaningfully and sufficiently prepare the briefing required by the Court's previous Order. The following are some of the several reasons why it makes sense to move out the dates:

  • *The Parties' Document Production Status.* None of the parties have completed their document production. To date, Enterasys has produced only about 29,000 pages of Enterasys documents to Extreme. Nor has Enterasys given any indication as to when it expects to complete its production. Extreme expects to complete its production this month or not later than mid-July. However, we will begin supplementing our production shortly with additional documents.

Enterasys only recently advised us that it has essentially no DEC documents and, consequently, we will need to issue a subpoena on the entity that purportedly has those documents. We've previously explained to you the importance and relevance of previously identified DEC documents.

Marc N. Henschke
June 12, 2006
Page 2

Enterasys acknowledges that it possesses documents related to at least Cabletron's MMAC Hub product and has not yet produced anything related to that product. We previously explained to you the relevance of those and similar documents.

There are continuing meet and confers on virtually all aspects of the parties' respective document responses and productions.

• *Pending and Future Motions to Compel Discovery Responses.* There is a pending motion to compel against Enterasys due to its refusal to inform both Foundry and Extreme of the specific basis for its claims of infringement. There will likely be additional motions to compel interrogatory responses from Enterasys. We have asked Enterasys to answer interrogatories numbers 1, 2, 3 and 9 and explained why meaningful responses from Enterasys (which have not yet been provided) are necessary for us to understand Enterasys' contentions, prepare our non-infringement and invalidity positions, and the briefs in support thereof.

• *No Phase I Depositions Have Been Taken.* No depositions have been taken of any Phase I witnesses; however, we do intend to take several of the inventors' depositions once we receive Enterasys' complete document production. We also intend to take several third party depositions once the production of documents is completed.

We propose that Enterasys agree to the following revised schedule (subject to the Court's approval):

| Existing Date(s) | Revised Date(s) |
|---|---|
| **July 17, 2006** - Enterasys to serve claim construction charts identifying asserted claims and products accused of literal or doctrine of equivalents infringement. | **Friday, December 15, 2006** |
| **August 4, 2006** - Defendants to serve invalidity contentions identifying each asserted item of prior art and the basis on which it anticipates or renders obvious each asserted patent claim. | **Tuesday, January 16, 2007** |
| **August 18, 2006** - Defendants to serve responsive claim construction charts identifying which claim elements they admit are present in any accused products, and as to all other claim elements their basis for denying that said elements are present. | **Tuesday, January 30, 2007** |

Marc N. Henschke
June 12, 2006
Page 3

| | |
|---|---|
| **September 1, 2006** - Simultaneous exchange of preliminary proposed constructions for the claim elements that each party contends should be construed by the Court. | **Tuesday, February 13, 2006** |
| **September 15, 2006** - Defendants to provide notice of intention to rely upon opinions of counsel to potentially avoid willful infringement findings. | **Tuesday, February 17, 2006** |
| **September 18, 2006** - Parties to file joint claim construction statement providing shared constructions of claim elements on which the parties agree, and alternative proposed constructions of disputed claim elements. | **Friday, March 7, 2006** |
| **October 3, 2006** - Beginning of Phase II fact discovery encompassing all issues including those issues addressed during Phase I. | **Monday, March 12, 2006** |
| **October 18, 2006** - Deadline for all parties to file their opening claim construction briefs. | **Tuesday, March 27, 2006** |
| **November 20, 2006** - Deadline for all parties to file their claim construction reply briefs. | **Tuesday, April 24, 2006** |
| **January 10-12, 2007** - Markman claim construction. | **May 14-16, 2007** |

Please advise at your earliest opportunity. If Enterasys refuses to revise the schedule, we will need to get a motion on file quickly with Judge Woodlock. I hope we can come to an agreement without having to involve the Court. Please feel free to call me to discuss this proposal.

Very truly yours,

David H. Dolkas

Marc N. Henschke
June 12, 2006
Page 4


cc:    Vera M. Elson, Esq.  (By Email)
       Christopher D. Bright, Esq.  (By Email)
       Firasat Ali, Esq.  (By Email)
       Tamara Nation (By Email)
       Neel I. Chatterjee, Esq. (By Email)
       Jeremy P. Oczek, Esq. (By Email)

MPK 110230-2.065994.0016

# Exhibit 12

# ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

800 BOYLSTON STREET
25TH FLOOR
BOSTON, MA 02199-7610
TEL: 617-267-2300 FAX: 617-267-8288
www.rkmc.com

ATTORNEYS AT LAW

MARC N. HENSCHKE
617-859-2784
mnhenschke@rkmc.com

July 17, 2006

***VIA E-MAIL (PDF ATTACHMENT)***

David H. Dolkas, Esq.
McDermott Will & Emery LLP
3150 Porter Drive
Palo Alto, CA  94303-1212

Re: ***Enterasys Networks v. Foundry Networks and Extreme Networks***
   ***Civ. Act. No. 05-11298-DPW (D. Mass)***
   **Our File No.:  070610.0001**

Dear David:

In your letter to me dated June 12, 2006, you stated that "Extreme expects to complete its production [of documents to Enterasys by] … not later than mid-July."  Moreover, your colleague, Firasat Ali, had earlier confirmed in his letter to me dated May 31, 2006 that this document production would include all of Extreme's key non-publicly available technical documents which presumably will show in precise detail how its accused products and product features operate.  As Mr. Ali explained, "Extreme will not withhold [these] responsive documents based upon an earlier objection regarding producing confidential documents in the absence of a protective order," nor "will Extreme condition its production on Enterasys' [purportedly] inadequate discovery responses."

We note that mid-July has now come and gone without Enterasys receiving anything resembling Extreme's "complete" document production.  In fact, as of today, Enterasys still has yet to receive even a single one of Extreme's key non-publicly available technical documents. Needless to say, Extreme's failure to provide these materials is preventing Enterasys from being able to move forward with depositions, and is more generally prejudicing Enterasys' efforts to prove its infringement allegations.

When can Enterasys expect to receive Extreme's promised (and now overdue) document production?

Sincerely,

Marc N. Henschke

MNH:nah
cc:    Vera M. Elson, Esq. (*VIA FIRST CLASS MAIL & E-MAIL*)
       Firasat M. Ali, Esq. (*VIA E-MAIL*)
       Christopher D. Bright, Esq. (*VIA E-MAIL*)
       T. Nation (*VIA E-MAIL*)
35032671

# Exhibit 13

# ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

800 BOYLSTON STREET
25TH FLOOR
BOSTON, MA 02199
TEL: 617-267-2300 FAX: 617-267-8288
www.rkmc.com

ATTORNEYS AT LAW

MARC N. HENSCHKE
617-859-2784
mnhenschke@rkmc.com

October 10, 2006

***VIA E-MAIL (PDF ATTACHMENT)***

Firasat M. Ali, Esq.
McDermott Will & Emery LLP
3150 Porter Drive
Palo Alto, CA 94303-1212

Re: ***Enterasys Networks v. Foundry Networks and Extreme Networks***
***Civ. Act. No. 05-11298-DPW (D. Mass)***
**Our File No.: 070610.0001**

Dear Firasat:

On June 12, 2006, your colleague, David Dolkas, informed us in writing that "Extreme expects to complete its production [of documents to Enterasys by] ... not later than mid-July." Our review of Extreme's document productions to date suggests, however, that these productions are still not even close to complete some three months later than your projected deadline.

In particular, conspicuously absent from Extreme's productions to date are many of the key engineering and technical documents -- most notably confidential hardware specifications -- that would show precisely how its accused products operate. As you are aware, Enterasys needs these documents in order to be able to fully detail the evidentiary bases for its infringement contentions.

Our previous letters and phone calls to you addressing this issue have been met with no response. Accordingly, we ask that you please contact us as soon as possible to discuss the question of when Extreme will complete its discovery productions.

Sincerely,

Marc N. Henschke

MNH:nah
cc:   Vera M. Elson, Esq. (*VIA FIRST CLASS MAIL & E-MAIL*)
      David H. Dolkas, Esq. (*VIA E-MAIL*)
      Christopher D. Bright, Esq. (*VIA E-MAIL*)
      George Huggins, Jr. (*VIA E-MAIL*)
      T. Nation (*VIA E-MAIL*)

35034716

**Exhibit 14**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ENTERASYS NETWORKS, INC., | ) | Civil Action No: 05-CV-11298 (DPW) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FOUNDRY NETWORKS, INC., and | ) | |
| EXTREME NETWORKS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**DEFENDANT EXTREME NETWORKS, INC.'S**
**RESPONSES TO PLAINTIFF ENTERASYS NETWORKS, INC.'S**
**FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure ("FRCP"),

Defendant Extreme Network, Inc. ("Extreme") objects, in part, and answers, in part, Plaintiff

Enterasys Systems, Inc. ("Enterasys") First Set of Interrogatories (Nos. 1-11).

**GENERAL RESPONSE**

1.      Extreme's responses to Enterasys's First Set of Interrogatories are made to the

best of Extreme's present knowledge, information and belief.  Extreme's responses are subject to

amendment and supplementation should future investigation indicate that amendment or

supplementation is necessary.  Extreme undertakes no obligation, however, to supplement or

amend these responses other than as required by the Federal Rules of Civil Procedure or the

Local Rules of the United States District Court for the District of Massachusetts.

2.      Extreme's responses to Enterasys's First Set of Interrogatories are made

according to information currently in Extreme's possession, custody and control.

3.      To the extent that Extreme responds to Enterasys's First Set of Interrogatories by providing information that is private, confidential, highly confidential, proprietary, trade secret or otherwise protected from disclosure, Extreme will respond pursuant to the terms of the Stipulated Protective Order in this case.

4.      Extreme reserves all objections or other questions as to the competency, relevance, materiality, privilege, or admissibility of any information, document or thing produced in response to Enterasys's Interrogatories as evidence in any proceeding, hearing, or trial in this or any other action for any purpose whatsoever.

5.      Extreme reserves the right to object on any ground at any time to additional interrogatories that Enterasys may propound involving or relating to the same subject matter as Enterasys's First Set of Interrogatories.

## GENERAL OBJECTIONS

Extreme makes the following objections to each and every instruction, definition, and Interrogatory made in Enterasys's First Set of Interrogatories:

1.      Extreme incorporates by reference the General Objections set forth in Extreme's responses to plaintiff Enterasys' First Set of Requests for Production of Documents and things, served on April 3, 2006.

2.      Extreme objects to each interrogatory, definition or instruction to the extent that it seeks to impose upon Extreme any obligation or responsibility other than those obligations and responsibilities mandated by the Federal Rules of Civil Procedure of the Local Rules or the United States District Court for the District of Massachusetts.  Extreme further objects to Enterasys' "Definitions and Instructions" section as being overbroad, vague, and ambiguous and

as seeking information not relevant to the claims and defenses in this case or reasonably calculated to lead to the discovery of relevant and admissible evidence.

3.      Extreme objects to each interrogatory, definition, or instruction to the extent that it purports to seek or require Extreme to provide information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other lawfully recognized privilege or immunity, including statements made under the protection of a joint defense agreement. Such information will not be produced in response to Enterasys's First Set of Interrogatories, and any inadvertent production thereof shall not be deemed a waiver of any privilege or work product rights with respect to such documents or things.

4.      Extreme objects to each interrogatory, definition, or instruction to the extent that it purports to seek or require Extreme to provide information that constitutes confidential information of third parties, and which Extreme is contractually obligated to maintain as confidential information. Extreme will produce such information only subject to the approval of those third parties.

5.      Extreme objects to each interrogatory, definition or instruction to the extent that it purports to seek or require Extreme to produce information that is publicly available and equally accessible to Enterasys as to Extreme on the ground that such interrogatories, definitions and instructions are unduly burdensome.

6.      Extreme objects to each of the Interrogatories to the extent they are redundant, overlapping and duplicative of other discovery Enterasys is seeking in this case and therefore burdensome and harassing.

7.      Extreme objects to Enterasys's First Set of Interrogatories in its entirety to the extent that Enterasys seeks some form of "admission" on the basis of Extreme's agreement or

- 4 -

disagreement to provide information in response to those interrogatories. Extreme makes no such admissions with respect to any production of information, or with respect to any refusal to do so.

8.      Extreme objects to the term "Accused Extreme Products" as overbroad, rendering each and every Interrogatory, definition or instruction in which the term is used unduly burdensome, and as seeking information not relevant to the issues in this case or reasonably calculated to lead to the discovery of relevant and admissible evidence. Enterasys has not asserted that the listed standards infringe the asserted claims in this case. Extreme's responses to Interrogatories that include the term "Accused Extreme Products" shall <u>not</u> be construed as an "admission" by Extreme in any way. Specifically, Extreme's responses to such Interrogatories shall <u>not</u> be construed as an admission that the products identified are covered by any of the patents-in-suit, or have features or functionality as characterized by Enterasys.

9.      Extreme objects to the term "Accused Features" as overbroad, rendering each and every Interrogatory, definition or instruction in which the term is used unduly broad, burdensome, and as seeking information not relevant to the issues in this case or reasonably calculated to lead to relevant and admissible evidence. Enterasys has not asserted that the listed standards infringe the asserted claims in this case. Extreme's responses to Interrogatories that include the term "Accused Features" shall <u>not</u> be construed as an "admission" by Extreme in any way. Specifically, Extreme's responses to such Interrogatories shall <u>not</u> be construed as an admission that the products identified are covered by any of the patents-in-suit, or have features or functionality as characterized by Enterasys.

10.      Extreme objects to the terms "VLAN," "Default VLAN," "VLAN-ID," VLAN Tagging," "VLAN Standards," "IGMP Standards," and "MPLS Standards" as overbroad,

rendering each and every each interrogatory, definition, or instruction in which the term is used as unduly broad, burdensome and as seeking information not relevant to the issues in this case or reasonably calculated to lead to relevant and admissible evidence.

11.    Extreme objects to these Interrogatories to the extent they seek information that is only for Phase II discovery.

12.    The applicable foregoing general objections are incorporated into each of the specific objections and responses that follow. The stating of a specific objection or response shall not be construed as a waiver of Extreme's general objections.

**INTERROGATORY NO. 1:**

Describe in detail when, how, and through whom Extreme first became aware of the existence of each of the Enterasys Patents.

**RESPONSE TO INTERROGATORY NO. 1:**

Without waiver of its General Objections, based upon its current knowledge, information, and belief concerning the information available to it as of the date on which these responses are made, Extreme responds: Extreme first became aware of the existence of the Enterasys Patents (defined as U.S. Patent Nos: 5,251,205; 5,390,173; 6,128,665; 6,147,995; 6,539,022, 6,560,236) when it was served the complaint in this matter by Enterasys.

**INTERROGATORY NO. 2:**

Separately identify by name, model and/or version number, and first and last sales date each and every type of Accused Extreme Product that Extreme has sold or licensed at any time during the Damages Period.

**RESPONSE TO INTERROGATORY NO. 2:**

Extreme incorporates by reference its objections to the term "Damages Period" as that term is defined by Enterasys in paragraph 22 of the Definitions. Without waiver of the foregoing objection and all other General Objections, Extreme provides as Attachment 1 a compilation showing the name, model and/or version number of Alpine, Black Diamond and Summit products sold or licensed since June 21, 2005.

**INTERROGATORY NO. 3:**

Separately for each and every type of Accused Extreme Product identified in your response to Interrogatory No. 2 above, state whether Extreme contends that it contains VLAN features that comply with any of the VLAN Standards, and if so identify which of these VLAN Standards said features purportedly comply with.

**RESPONSE TO INTERROGATORY NO. 3:**

Extreme objects to this interrogatory on the grounds of relevancy. In response to Extreme's interrogatory no. 12, Enterasys responded by stating: "...Enterasys states that it is not presently asserting that the practice of any industry standard would necessarily in and of itself infringe any of the asserted claims of the patents-in-suit," and therefore, whether or not the Accused Products practice portions of the VLAN Standards is irrelevant.

Further objection is made by Extreme on the basis that Enterasys has, to date, refused to specify what specific aspects or features of the Accused Products infringe the claims asserted for the patent in suit. In response to Interrogatory No. 1 served by Extreme, Enterasys has only provided (a) an identification of the claims (by claim number only) asserted on a patent-by-patent basis; (b) the products which are accused by product name, e.g., Alpine; (c) a general description of the features of the Accused Products which would read on the asserted claims,

without explaining or identifying the features of the Accused Products and/or how such features would read on the asserted claims; and (d) Enterasys' theory of liability. Until such time as Enterasys identifies the specific features of the Accused Products which infringe the asserted claims (in detail and as requested by Extreme in its Interrogatory No. 1 to Extreme), Extreme objects to this interrogatory as unduly burdensome and overbroad because it would require Extreme to compare all of the feature sets of the Accused Products in order to elicit a response concerning the "the VLAN features [in the Accused Products] that comply with any of the VLAN Standards" and to specify the specific VLAN Standards.

Further objection is made on the basis that any assessment of whether any of the Accused Products comply with VLAN Standards can be equally ascertained by Enterasys based on FRCP Rule 11 pre-filing analysis of the Accused Products and the documents produced and to be produced by Extreme.

Further objection is made that source code and Verilog must be examined to confirm the extent to which any VLAN Standards features are supported by the Accused Products.

Without waiver of the foregoing objections and all other General Objections, Extreme responds pursuant to FRCP 33(d) that the following documents produced by Extreme set forth the extent to which any VLAN features are supported by the Accused Products: ExtremeWare Command Reference Guide 7.4 (May 2005) (EXT00028252-EXT00030785); ExtremeWare Command Reference Guide 7.5 (October 2005) (EXT00030786-EXT00033331); ExtremeWare Command Reference Guide 7.6 (January 2006) (EXT00057431-EXT00060008); ExtremeWare XOS Command Reference Guide 11.2 (June 2005) (EXT00040533-EXT00042138); ExtremeWare XOS Command Reference Guide 11.3 (October 2005) (EXT00042139-

EXT00043850); or ExtremeWare XOS Command Reference Guide 11.4 (March 2006) (Bates numbers to be provided).

**INTERROGATORY NO. 4**:

Separately for each and every type of Accused Extreme Product identified in your response to Interrogatory No. 2 above, state whether Extreme contends that it contains IGMP features that comply with any of the IGMP Standards, and if so identify which of these IGMP Standards said features purportedly comply with.

**RESPONSE TO INTERROGATORY NO. 4**:

Extreme objects to this interrogatory on the grounds of relevancy. In response to Extreme's interrogatory no. 12, Enterasys responded by stating: "...Enterasys states that it is not presently asserting that the practice of any industry standard would necessarily in and of itself infringe any of the asserted claims of the patents-in-suit," and therefore, whether or not the Accused Products practice portions of the IGMP Standards is irrelevant.

Further objection is made by Extreme on the basis that Enterasys has, to date, refused to specify what specific aspects or features of the Accused Products infringe the claims asserted for the patent in suit. In response to Interrogatory No. 1 served by Extreme, Enterasys has only provided (a) an identification of the claims (by claim number only) asserted on a patent-by-patent basis; (b) the products which are accused by product name, e.g., Alpine; (c) a general description of the features of the Accused Products which would read on the asserted claims, without explaining or identifying the features of the Accused Products and/or how such features would read on the asserted claims; and (d) Enterasys' theory of liability. Until such time as Enterasys identifies the specific features of the Accused Products which infringe the asserted claims (in detail and as requested by Extreme in its Interrogatory No. 1 to Extreme), Extreme

objects to this interrogatory as unduly burdensome and overbroad because it would require

Extreme to compare all of the feature sets of the Accused Products in order to elicit a response

concerning the "the IGMP features [in the Accused Products] that comply with any of the IGMP

Standards" and to specify the specific IGMP Standards.

 Further objection is made on the basis that any assessment of whether any of the Accused

Products comply with IGMP standards can be equally ascertained by Enterasys based on FRCP

Rule 11 pre-filing analysis of the Accused Products and the documents produced and to be

produced by Extreme.

 Further objection is made that source code and Verilog must be examined to confirm the

extent to which any IGMP Standards features are supported by the Accused Products.

 Without waiver of the foregoing objections and all other General Objections, Extreme

responds pursuant to FRCP 33(d) that the following documents produced by Extreme set forth

the extent to which any IGMP features are supported by the Accused Products:  ExtremeWare

Command Reference Guide 7.4 (May 2005) (EXT00028252-EXT00030785); ExtremeWare

Command Reference Guide 7.5 (October 2005) (EXT00030786-EXT00033331); ExtremeWare

Command Reference Guide 7.6 (January 2006) (EXT00057431-EXT00060008); ExtremeWare

XOS Command Reference Guide 11.2 (June 2005) (EXT00040533-EXT00042138);

ExtremeWare XOS Command Reference Guide 11.3 (October 2005) (EXT00042139-

EXT00043850); or ExtremeWare XOS Command Reference Guide 11.4 (March 2006) (Bates

numbers to be provided).

**INTERROGATORY NO. 5:**

 Separately for each and every type of Accused Extreme Product identified in your

response to Interrogatory No. 2 above, state whether Extreme contends that it contains MPLS

features that comply with any of the MPLS Standards, and if so identify which of these MPLS

Standards said features purportedly comply with.

## RESPONSE TO INTERROGATORY NO. 5:

Extreme objects to this interrogatory on the grounds of relevancy.  In response to

Extreme's interrogatory no. 12, Enterasys responded by stating: "...Enterasys states that it is not

presently asserting that the practice of any industry standard would necessarily in and of itself

infringe any of the asserted claims of the patents-in-suit," and therefore, whether or not the

Accused Products practice portions of the MPLS Standards is irrelevant.

Further objection is made by Extreme on the basis that Enterasys has, to date, refused to

specify what specific aspects or features of the Accused Products infringe the claims asserted for

the patent in suit.  In response to Interrogatory No. 1 served by Extreme, Enterasys has only

provided   (a) an identification of the claims (by claim number) asserted on a patent-by-patent

basis; (b) the products which are accused by product name, e.g., Alpine; (c) a general description

of the features of the Accused Products which would read on the asserted claims, without

explaining or identifying the features of the Accused Products and/or how such features would

read on the asserted claims; and (d) Enterasys' theory of liability.  Until such time as Enterasys

identifies the specific features of the Accused Products which infringe the asserted claims (in

detail and as requested by Extreme in its Interrogatory No. 1 to Extreme), Extreme objects to this

interrogatory as unduly burdensome and overbroad because it would require Extreme to compare

all of the feature sets of the Accused Products in order to elicit a response concerning the "the

MPLS features [in the Accused Products] that comply with any of the MPLS Standards" and to

specify the specific MPLS Standards.

Further objection is made on the basis that any assessment of whether any of the Accused Products comply with MPLS standards can be equally ascertained by Enterasys based on FRCP Rule 11 pre-filing analysis of the Accused Products and the documents produced and to be produced by Extreme.

Further objection is made that source code and Verilog must be examined to confirm the extent to which any MPLS Standards features are supported by the Accused Products.

Without waiver of the foregoing objections and all other General Objections, Extreme responds pursuant to FRCP 33(d) that the following document produced by Extreme set forth the extent to which any MPLS features are supported by the MPLS Module for the BlackDiamond 6800 product:  MPLS Module Installation and User Guide Rev. 2 (February 2002) (EXT00045687-EXT00045862).  The other Accused Products do not support MPLS Standards features.

**INTERROGATORY NO. 6:**

Separately for each and every type of Accused Extreme Product identified in your response to Interrogatory No.2 above, identify by name, manufacturer, and model number the chips and/or chipsets contained in such products that perform switching and/or routing functions such as packet classification, filtering, encapsulation, and/or forwarding.

**RESPONSE TO INTERROGATORY NO. 6:**

Extreme objects to this interrogatory as overbroad and ambiguous in that the following terms are not defined and not limited: "chips and or/chip sets," "switching and/or routing functions," "packet classification," "filtering," "encapsulation," and "forwarding."  Without waiver of the foregoing objections and all other General Objections, Extreme responds:

Attachment 1 sets forth a listing of the Alpine, BlackDiamond and Summit products and the

corresponding ASIC chipsets (as configured since June 2005).

**INTERROGATORY NO. 7:**

Separately for each and every type of Accused Extreme Product identified in your

response to Interrogatory No.2 above, identify by name and version number the operating system

software that runs in such products.

**RESPONSE TO INTERROGATORY NO. 7:**

Without waiver of the objections set forth in response to interrogatory number 6 and all

other General Objections, see Attachment 1.

**INTERROGATORY NO. 8:**

With respect to the prosecution of any patent application (domestic or foreign) in which

Extreme has at any time held an interest, identify and describe each and every instance in which

the Enterasys Patents, or any patents bearing a familial relationship to the Enterasys Patents,

have been cited by the applicant or the examiner, and/or have been remarked on by the applicant.

**RESPONSE TO INTERROGATORY NO. 8:**

In addition to its General Objections, Extreme objects to this interrogatory on grounds

that it calls for information that is protected form disclosure by the attorney-client privilege

and/or by the work product doctrine; and that it is overly broad, unduly burdensome, irrelevant,

vague, and ambiguous.

Extreme further objects to this interrogatory as irrelevant to the extent it seeks discovery

concerning Extreme's notice of any patent that is not in suit.

Extreme further objects on the grounds previously set forth by Enterasys as to discovery concerning notice of the patents-in-suit by Extreme. (See Enterasys' Response to Extreme's Interrogatory No. 6.)

**INTERROGATORY NO. 9:**

Describe in detail all efforts made by you, or by anyone acting on your behalf, to design around any of the Enterasys Patents including, but not limited to, an identification of when such efforts have taken place, the persons involved in such efforts and the nature of such efforts.

**RESPONSE TO INTERROGATORY NO. 9:**

In addition to its General Objections, Extreme objects to this interrogatory on grounds that it calls for information that is protected form disclosure by the attorney-client privilege and/or by the work product doctrine; that it is overly broad, unduly burdensome, irrelevant, vague, and ambiguous. Extreme further objects to the relevancy at this time to the subject matter of this interrogatory and asserts that the subject matter pertains to Phase II discovery.

**INTERROGATORY NO. 10:**

State whether you have conducted, caused to be conducted, or received any information regarding any search, study, evaluation, investigation, opinion, advice, or assessment of the infringement, validity or enforceability of any of the Enterasys Patents. If the answer is affirmative, with respect to each, identify: the date it was requested, the person who requested it, the date on which it was received, the person who provided it, all persons who received it, all persons who performed the study, the form in which it was received (e.g., oral or written; draft or final), any documents that set forth its result, any prior art located or discussed in it, and whether you intend to rely upon it as a defense to Enterasys' claim of willful infringement.

**RESPONSE TO INTERROGATORY NO. 10:**

Without waiver of the objections set forth below and all other General Objections, Extreme responds as follows: Attachment 2 sets forth a full description of all information obtained by Extreme as a result of its investigation conducted to date, which relates and/or may possibly relate to the invalidity or unenforceability of the Enterasys Patents. All of the information referenced in Attachment 2 has been or will be produced to Enterasys in response to Enterasys' request for production of documents which request such information.

Extreme objects to this interrogatory in its entirety on the basis of attorney-client privilege and attorney work product.

Further objection is made to the interrogatory to the extent that it asks Extreme to identify "whether you intend to rely upon it as a defense to Enterasys' claim of willful infringement." Because Enterasys refuses to answer any discovery requests pertaining to what it has characterized as "Phase II" discovery, which includes its allegation of willful infringement, Extreme will not at this time respond by indicating whether it intends to rely on any of the information described in Attachment 2 (see below) as a defense to Enterasys' claim of willful infringement.

Further Extreme asserts that its investigation has been hampered and substantially limited by Enterasys' refusal to provide adequate responses to Extreme's interrogatories, such as interrogatory nos. 1, 2, 3, 9 and 12. Consequently, Extreme has not been apprised by Enterasys as to the specific basis for its claims of infringement (as requested by Extreme in Interrogatory No. 1), the date of conception and reduction to practice of the inventions described in the Enterasys Patents (as requested by Extreme in Interrogatory No. 2), the first embodiment and first offer for sale (and other information as requested by Extreme in Interrogatory No. 3), when

- 15 -

and how Enterasys formed the belief that the Accused Products infringe the Enterasys Patents (as requested by Extreme in Interrogatory No. 9), and how industry standards allegedly practice the claims of the patents in suit (as requested by Extreme in Amended Interrogatory No. 12).

**INTERROGATORY NO. 11:**

Identify each and every prior art reference upon which Extreme bases in whole or in part its affirmative defense of patent invalidity, and as for each prior art reference so identified:

(a)    state which claim(s) of the Enterasys Patents the prior art reference allegedly anticipates;

(b)    state which combinations of prior art references allegedly render obvious which claim(s) of the Enterasys Patents;

(c)    for each claim that a prior art reference allegedly anticipates, describe in detail on an element-by-element base how the prior art reference anticipates the claim, including citations to specific column and line numbers of the prior art reference if applicable; and

(d)    For each claim that a combination of prior art references allegedly renders obvious, describe in detail on an element-by-element basis how the combination renders the claim obvious, including citations to specific column and line; numbers of the prior art references if applicable, and a detailed description of where there is a teaching, suggestion, and/or motivation to combine the prior art references.

**RESPONSE TO INTERROGATORY NO. 11:**

Without waiver of the objections set forth below and all other General Objections, Extreme responds as follows:  Attachment 2 sets forth a full description of all information

obtained by Extreme as a result of its investigation conducted to date, which relates and/or may possibly relate to the invalidity or unenforceability of the Enterasys Patents. All of the information referenced in Attachment 2 has been or will be produced to Enterasys in response to Enterasys' request for production of documents which request such information.

Extreme objects to this interrogatory in its entirety on the basis of attorney-client privilege and attorney work product.

Further Extreme asserts that its investigation has been hampered and substantially limited by Enterasys' refusal to provide adequate responses to Extreme's interrogatories, such as interrogatory nos. 1, 2, 3, 9 and 12. Consequently, Extreme has not been apprised by Enterasys as to the specific basis for its claims of infringement (as requested by Extreme in Interrogatory No. 1), the date of conception and reduction to practice of the inventions described in the Enterasys Patents (as requested by Extreme in Interrogatory No. 2), the first embodiment and first offer for sale (and other information as requested by Extreme in Interrogatory No. 3), when and how Enterasys formed the belief that the Accused Products infringe the Enterasys Patents (as requested by Extreme in Interrogatory No. 9), and how industry standards allegedly practice the claims of the patents in suit (as requested by Extreme in Amended Interrogatory No. 12).


Dated: June 19, 2006                          EXTREME NETWORKS, INC.


Terrence P. McMahon, Esq.                     _____
Vera M. Elson, Esq.                           Christopher D. Bright, Esq.
David H. Dolkas, Esq.                         MCDERMOTT, WILL & EMERY LLP
MCDERMOTT, WILL & EMERY LLP                   18191 Von Kaman Avenue
3150 Porter Drive                             Suite 400
Palo Alto, CA 94303-1212                      Irvine, CA 92612-7107
Tel. (650) 813-5000                           Tel. (949) 851-0633

Peter L. Resnik, Esq. (BBO 417180)
MCDERMOTT, WILL & EMERY LLP
28 State Street
Boston, MA 02109-1775
Tel. (617) 535-4000
ORC 390886-1.065994.0016

### Certificate of Service

I hereby certify that the foregoing document and its attachments were served by email to Enterasys' counsel in accordance with the parties' service agreement in this case.

Dated: June 19, 2006

EXTREME NETWORKS, INC.

Christopher D. Bright, Esq.
MCDERMOTT, WILL & EMERY LLP
18191 Von Kaman Avenue
Suite 400
Irvine, CA 92612-7107
Tel. (949) 851-0633

# Exhibit 15

# McDermott
# Will&Emery

Boston  Brussels  Chicago  Düsseldorf  London  Los Angeles  Miami  Munich
New York  Orange County  Rome  San Diego  Silicon Valley  Washington, D.C.

Firasat Ali
Attorney at Law
Fali@mwe.com
650.813.5012

September 13, 2006

BY E-MAIL

Marc N. Henschke, Esq.
Robins, Kaplan, Miller & Ciresi L.L.P.
Prudential Tower
800 Boylston Street, 25th Floor
Boston, MA 02199
mnhenschke@rkmc.com

Re:    *Enterasys Networks v. Extreme Networks*, Civil Action No. 05-12235 (D. Mass.)

Dear Marc:

This letter addresses the issues discussed during the second joint meet-and-confer on August 3, 2006 and also addressed in your letters to Chris Bright dated July 26, 2006 and September 1, 2006 regarding Extreme's Responses to Enterasys' First Set of Interrogatories. Following the meet-and-confer and in furtherance of moving discovery forward, Extreme has considered the issues you raised and responds as follows:

1.    Extreme agrees to address and/or modify certain of its General Objections as they apply to Extreme's Responses to Enterasys' First Set of Interrogatories, as follows:

a) We addressed the following language from its General Objection #14 in its Response to Enterasys' First Set of Document Requests and incorporated in Extreme's Response to Enterasys First Set of Interrogatories through General Objection #1: "Extreme further objects to the definition of 'Extreme' to the extent that it includes Extreme's parent companies, affiliates or subsidiaries.  No Extreme parent company, affiliate or subsidiary is a party to this lawsuit, and requests directed to a parent company, affiliate or subsidiary would not be relevant to the claim or defenses of a party in this case." Extreme confirms that it has not withheld any information on the basis of this objection. As communicated during the meet-and-confer on August 3, 2006, Extreme has no such parent companies, affiliates or subsidiaries.

b) Extreme modifies its General Objection #4.  By doing so, Extreme confirms that it will provide third party information that is responsive to this litigation under the terms and conditions of the stipulated protective order.

c) With respect to General Objection #8 and providing responsive information regarding the Accused Products, Extreme has already done so in its Responses to Enterasys' First Set of Interrogatories, various letters and meet-and-confers.  Extreme believes that the information provided to Enterasys is responsive and complete with respect to the Accused Products as identified in Enterasys' Second Supplemental Response to Extreme's First Set of Interrogatories dated July 17, 2006.  Extreme will not withdraw this objection and will consider supplementing

Marc N. Henschke
September 13, 2006
Page 2

its Response to Enterasys' First Set of Interrogatories in the event that Enterasys' provides a complete response to Extreme's Interrogatory No. 1, including a statement of the reasons and identification of any evidentiary support for Enterasys' infringement contentions.

      d) Concerning information relating to Extreme products sold prior to June 21, 2005, Extreme maintains its objections as stated in its Response to Enterasys' First Set of Interrogatories and previously stated in my letters to you dated June 26, 2006 and August 20, 2006 with respect to documents relating to the same pre June 21, 2005 Accused Product models sought in Enterasys' First Set of Requests for Production of Documents. Moreover, it is Extreme's position that Enterasys had an obligation to mark its products under 35 U.S.C. § 287(a) and failed to meet that obligation. Clearly neither the Plaintiffs nor their predecessors had marked any of their products that concern the '173 and the '205 patents as communicated by you during the meet-and-confer on August 3, 2006. Further, Enterasys has not provided any proof of marking with respect to products that concern the remaining patents-in-suit. We have repeatedly asked Enterasys to share any authority with us that support its mistaken position that it was not under a duty to mark its products. To date Enterasys has not provided any authority to support its position and justify Extreme's production of information that relates to Extreme's products that were discontinued prior to the date of filing of the lawsuit.

      e) Concerning information prior to June 21, 2005 that relates to the Accused Products currently sold, Extreme maintains its position as stated in its Response to Enterasys' First Set of Interrogatories and previously stated in my letters to you dated June 26, 2006 and August 20, 2006 with respect to documents relating to the same information sought in Enterasys' First Set of Requests for Production of Documents. As communicated during the meet-and-confer, Extreme states that it has already provided responsive information that relates to the current versions of the Accused Product models sold since the filing of this lawsuit. Extreme believes that information related to the historical versions are either outdated or superseded by the current versions and therefore not relevant to the products at issue.

2.     With respect to Interrogatory Nos. 1 and 8, Extreme is willing to consider any authority you can provide that the citation of a patent-in-suit in an Extreme patent constitutes notice to Extreme of the patent-in-suit. Even if Extreme were willing to supplement its response to identify the Extreme patents cited by you in your July 26, 2006 letter, would Enterasys agree that this would not constitute a concession of notice under 35 U.S.C. § 287? As you know, mere notice of the existence of a patent does not constitute notice under Section 287.

3.     With respect to Interrogatory No. 2, Extreme will supplement its Response and identify first sales dates for only those Accused Products that have been sold after the filing of the complaint. By doing so, Extreme does not waive its general objection that only Accused Products sold after the filing of the complaint are at issue.

4.     With respect to Interrogatory Nos. 3, 4, and 5, Extreme has already provided information responsive to these Interrogatories that sets forth the extent to which VLAN, MPLS and IGMP features may be supported by the Accused Products, e.g. Extreme's Command Reference Guide. By doing so, Extreme makes no concession whether the Accused Products support or comply with these standards. Further, Extreme's Response is justified in the absence of an explanation from Enterasys as to why these standards are relevant to its infringement claims.

Marc N. Henschke
September 13, 2006
Page 3

5.    With respect to Interrogatory No. 6, you had inquired whether Inferno, Triumph and Genesis are internally developed Extreme proprietary ASIC chipsets.  Extreme responds that Inferno, Triumph and Genesis are internally developed by Extreme.

6.    With respect to Interrogatory No. 10, Extreme is under no obligation to identify either the existence or the content of any opinions or studies after the complaint was filed at this stage of the litigation per the court's scheduling order.  Further, any such opinion or study would be protected under the attorney-client privilege and under the court's protective order, Extreme is under no obligation to identify post-complaint privileged communications on a privilege log.

7.    The information sought by Interrogatory No. 11 is premature at this stage per the court's scheduling order.  Subsections (c) and (d) both require an element-by-element analysis of the prior art which is clearly not due until January 16, 2007.  Further, subsections (a) and (b) also require, although implicitly, an element-by-element analysis and are therefore also not due until January 16, 2007.  Extreme will provide this information to Enterasys as per the timing set in the court's scheduling order.

      According to the foregoing responses, Extreme has answered all the issues raised in the meet-and-confer on August 3, 2006 and also addressed in your letters to Chris Bright dated July 26, 2006 and September 1, 2006 regarding Extreme's Responses to Enterasys' First Set of Interrogatories.


Sincerely,

Firasat Ali

Firasat M. Ali


cc:    Alan E. McKenna, Esq.  (By Email)
       Vera M. Elson, Esq.  (By Email)
       David H. Dolkas, Esq.  (By Email)
       Christopher D. Bright, Esq.  (By Email)
       Neel I. Chatterjee, Esq.  (By Email)
       Jeremy P. Oczek, Esq.  (By Email)
       Sanjeet K. Dutta, Esq.  (By Email)

# Exhibit 16

AO 88 (Rev. 11/94) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

DISTRICT OF  MASSACHUSETTS

ENTERASYS NETWORKS, INC.,

        Plaintiff,

v.

FOUNDRY NETWORKS, INC.

        Defendant.

**SUBPOENA IN A CIVIL CASE**

Case Number: [1] 05-CV-11298 (DPW)

TO:    **DNPG, LLC**
       **Keeper of Records**
       **20 Wentworth Avenue**
       **Londonderry, NH  03053**

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): **See Attached "Schedule A."**

| PLACE | DATE AND TIME |
|---|---|
| **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.** **800 Boylston St., 25th Fl., Boston, MA 02199** | **October 20, 2006** |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Marc N. Henschke* , **Counsel for Plaintiff** | **September 25, 2006** |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

**Marc N. Henschke, Esq., Robins, Kaplan, Miller & Ciresi L.L.P.,**
**800 Boylston Street, 25th Floor, Boston, MA 02199, (617) 267-2300**

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 11/91) (Subpoena in a Civil Case)

## PROOF OF SERVICE

|  | DATE |  | PLACE |
|---|---|---|---|

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

_____

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

**(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.**

(1)     A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2)     (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)     (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)     fails to allow reasonable time for compliance;

(ii)     requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause  (c) (3) (B)( iii) of this rule, such a person may in order to

attend trial be commanded to travel from any such place within the state in which the trial is held, or the demanding party to contest the claim.

(iii)     requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)     subjects a person to undue burden.

(B) if a subpoena

(i)     requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)     requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's's study made not at the request of any party, or

(iii)     requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d) DUTIES IN RESPONDING TO SUBPOENA.**

(1)     A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)     When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

## REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND TANGIBLE THINGS DIRECTED TO DNPG, LLC PURSUANT TO SUBPOENA

## I. INSTRUCTIONS

1.     DNPG, LLC ("Digital Networks") is required to respond to this request for production of documents and tangible things by drawing upon all materials in its possession, ownership, custody, or control, actual or constructive, including materials that Digital Networks has a right or ability to secure from any other source.  These sources include, but are not limited to, Digital Networks' employees, agents, managing agents, attorneys, accountants, investment bankers, consultants, advisers, officers, directors, or representatives of any type whatsoever.  These sources further include, but are not limited to, Digital Networks' predecessors, successors, parents, subsidiaries, affiliates, divisions, and their respective employees, agents, managing agents, attorneys, accountants, investment bankers, consultants, advisers, officers, directors, or representatives of any type whatsoever.

2.     If any document or tangible thing herein requested was, but no longer is, in Digital Networks' possession or subject to its control, whether actual or constructive, state what disposition was made of the document or tangible thing, why such disposition was made, to whom the document or tangible thing was transferred or delivered if applicable, where the document or tangible thing presently is located, and the date or dates (or approximate date or dates) on which such disposition was made.

3.     In the event that Digital Networks files a proper and timely objection to any portion of any individual request for the production of documents and tangible things presented herein, Digital Networks is required to respond to all other portions of that request that do not fall within the ambit of its objection.

4.    If any portion of any document or tangible thing is responsive to any production request herein, then the entire document or tangible thing must be produced.  If any requested document or tangible thing cannot be produced in full, then Digital Networks must produce that document or tangible thing to the greatest extent possible.  Whenever a document or tangible thing is not produced in full, or is produced in redacted form, Digital Networks must indicate that fact on the document or tangible thing produced.

5.    If any document or tangible thing responsive to a production request herein is withheld in whole or in part, for any reason whatsoever, including, but not limited to, any claim of privilege, work product, confidentiality, or trade secret, then Digital Networks must promptly provide a privilege log which states with respect to each such document, tangible thing, or withheld portion thereof: (a) the privilege or ground under which it is being withheld; (b) the type of document or tangible thing (*e.g.*, memo, letter, e-mail); (c) a description of the subject matter thereof; (d) the identity of its author or creator; (e) the identity of all persons to whom it is addressed and all persons to whom copies thereof ever have been furnished; (f) the date thereof; and (g) the present custodian and location thereof.

6.    If there do not exist documents or tangible things responsive to a specific production request herein, then Digital Networks must indicate that fact in its written response hereto.

7.    The documents or tangible things produced in response hereto shall be segregated and clearly marked or labeled so as to correspond to the specific production requests to which such documents or tangible things are responsive and are being produced.  Alternatively, such documents or tangible things shall be produced as they are kept in the usual course of business,

including the production of the files and file labels from which such documents or tangible things are taken.

8.    All documents or tangible things produced pursuant hereto are to be delivered on or before October 20, 2006 to Marc N. Henschke, Esq. at the offices of Robins, Kaplan, Miller & Ciresi L.L.P., 800 Boylston Street, 25th Floor, Boston, Massachusetts 02199.

9.    This is a continuing request for the production of documents and tangible things. Thus, if after making its initial production(s), Digital Networks becomes aware of any additional responsive documents or tangible things in its possession, ownership, custody or control (actual or constructive), including materials which it has a right to secure from any other source, Digital Networks is required without further request to produce, or to make available for inspection and copying, such additional documents or tangible things.

## II. **DEFINITIONS**

1.    The terms "documents" and "tangible things" as used herein shall mean each non-identical copy of any of the types of materials referenced in Local Rule 26.5(c)(2) and Fed. R. Civ. P. 34(a), and shall specifically include emails, voice mails, instant messages, and computer data, and any electronic, magnetic, or digital media on which information can be stored, including but not limited to tapes, hard drives, discs, and any other form of computer memory.

2.    The term "non-identical copy" as used herein shall mean any document or tangible thing that, but-for markings, additions, deletions, signatures, modifications of any kind (including, but not limited to, notations on the backs or margins of pages thereof, blind carbon copy notations, attachments, alterations, amendments, or mark-ups) would otherwise be identical to other documents or tangible things responsive to any production request herein.  Each non-

identical copy constitutes a distinct document or tangible thing and must be produced in response hereto.

3.    The term "meeting(s)" as used herein shall mean any assembly, convocation, encounter, or contemporaneous presence of two or more persons for any purpose, whether or not planned, arranged, or scheduled in advance, whether or not occurring face-to-face or by other means including, without limitation, by telephone, videoconference or instant messaging, and whether or not the meeting was informal or formal or occurred in connection with some other activity.

4.    The term "agreement" as used herein shall mean any contract, transaction, or other arrangement of any kind, whether conditional, executed, executory, express, or implied, and whether oral or written, in which rights are granted or obligations assumed.  The term "agreement" shall apply to completed, actual, contemplated, or attempted agreements or renewals of agreements.

5.    The term "negotiate" or any variant thereof as used herein shall mean, without limitation, any deliberations, discussions, conferences, bargaining or trading between parties or their agents, representatives, counsel, or any other persons as herein defined.

6.    The term "any" shall mean "any and all."  The term "all" as used herein also shall mean "any and all."

7.    The terms "and" and "or" as used herein shall be construed conjunctively or disjunctively to bring within the scope of these production requests any and all information which might otherwise be construed as outside their scope.

8.    The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun so used, and vice versa; the use of the masculine

form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and vice versa; and the use of any tense of any verb includes also within its meaning all other tenses of the verb so used.

9.    The term "communication" as used herein shall mean the transmittal of information in the form of facts, ideas, inquiries or otherwise.

10.    The term "person" as used herein shall mean any natural person or any business, legal, or governmental entity or association.

11.    The term "concerning" as used herein shall mean referring to, describing, evidencing, or constituting.

12.    All entities referred to herein shall be deemed to include their parent companies, subsidiaries, affiliates, directors, officers, employees, agents, successors, assigns, and representatives thereof, including attorneys, consultants, accountants, and investment bankers.

13.    The terms "Digital Networks," "you," "your," or "yours" as used herein shall each mean, unless otherwise specified in a particular request, DNPG, LLC.

14.    The term "Enterasys" as used herein shall mean Enterasys Networks, Inc.

15.    The term "Foundry" as used herein shall mean Foundry Networks, Inc.

16.    The term "Extreme" as used herein shall mean Extreme Networks, Inc.

17.    The term "Cabletron" as used herein shall mean Cabletron Systems, Inc.

18.    The term "DEC" as used herein shall mean Digital Equipment Corporation.

19.    The term "Patent Infringement Litigation" as used herein shall mean those civil actions for patent infringement that Enterasys has filed against Foundry and Extreme in the United States District Court for the District of Massachusetts captioned as <u>Enterasys Networks,</u>

Inc. v. Foundry Networks, Inc., (Civ. Act. No. 05-CV-11298-DPW) and Enterasys Networks, Inc. v. Extreme Networks, Inc., (Civ. Act. No. 05-12235-DPW), respectively.

 20. The term "Asserted DEC Patents" as used herein shall mean, collectively, the following list of issued U.S. patents (originally assigned to DEC) that Enterasys is either presently asserting in the Patent Infringement Litigation, or that constitute related parents or siblings to said patents:

| Patent No. | Patent Title | Application Ser. No. | Named Inventors | DEC Patent Disclosure No. |
|---|---|---|---|---|
| 5,251,205 | *"Multiple Protocol Routing"* | 07/577,437 | Ross W. Callon<br>Radia J. Perlman<br>Eric C. Rosen<br>John Harper | PD90-0094 |
| 5,557,745 | *"Method For Supporting Foreign Protocols Across Backbone Network By Combining And Transmitting List Of Destinations That Support Second Protocol In First And Second Areas To The Third Area"* | 08/407,802 | Radia J. Perlman<br>Ian M. Shand<br>Christopher W. Gunner | unknown |
| 5,430,727 | *"Multiple Protocol Routing"* | 08/245,856 | Ross W. Callon | n/a |
| 5,390,173 | *"Packet Format In Hub For Packet Data Communications System"* | 07/965,651 | Barry A. Spinney<br>Robert J. Simcoe<br>Robert E. Thomas<br>George Varghese | PD93-0012 |
| 6,560,236 | *"Virtual LANs"* | 09/411,773 | George Varghese<br>John Bassett<br>Robert E. Thomas<br>Peter Higginson<br>Graham Cobb<br>Barry A. Spinney<br>Robert J. Simcoe | n/a |
| 5,963,556 | *"Device For Partitioning Ports Of A Bridge Into Groups Of Different Virtual Local Area Networks"* | 08/731,905 | George Varghese<br>John Bassett<br>Robert E. Thomas<br>Peter Higginson<br>Graham Cobb<br>Barry A. Spinney<br>Robert J. Simcoe | PD93-0184 |
| 5,128,665 | *"System For Broadcasting Messages To Each Of Default VLAN Ports In Subset Of Ports Defined As VLAN Ports"* | 08/774,541 | Carol E. Iturralde | PD25639? |

21.    The term "DEC Inventors" as used herein shall mean, collectively, the following list of inventors (formerly employed by DEC) who are named on one or more of the Asserted DEC Patents: John Bassett; Ross W. Callon; Graham Cobb; Christopher W. Gunner; John Harper; Peter Higginson; Carol E. Iturralde; Radia J. Perlman; Eric C. Rosen; Ian M. Shand; Robert J. Simcoe; Barry A. Spinney; Robert E. Thomas; and George Varghese.

22.    The term "DEC Patent Review Committee" as used herein shall mean any committee(s) at DEC -- *e.g.*, the Distributed Systems Intellectual Property Committee -- that made decisions about whether to file and/or prosecute patent applications, including in conjunction with reviewing patent and/or invention disclosures submitted by DEC employees.

23.    The term "VLAN" as used herein shall mean a virtual local area network wherein groups of hosts and/or end stations are defined by their logical relationship rather than by their physical connectivity such that they can communicate as though they were on the same wire even though they may reside on physically different segments.

24.    The term "Default VLAN" as used herein shall mean a VLAN which has been initially defined during manufacture and prior to configuration.

25.    The term "First Header" as used herein shall mean a protocol-specific field or fields that precede the encapsulated data of a packet and contain unique network source and/or destination addresses (*e.g.*, MAC addresses).

26.    The term "Second Internal Header" as used herein shall mean a field or fields used in conjunction with the encapsulated data of a packet that contain local source and/or destination addresses of typically shorter length that have been translated or derived from the unique addresses contained in the First Header.

27.    The term "Routing Algorithm" as used herein shall mean the process by which a router or switch computes effective routes through the network along which to forward a packet.

28.    The term "Routing Protocol" as used herein shall mean a protocol reflecting at least a standards-based network address allocation scheme, along with any associated scheme for formatting packets that is used in conjunction therewith.

29.    The term "Routing Protocol Suite" as used herein shall mean a comprehensive set of protocols, including a Routing Protocol, that are designed to work together to coherently provide complete communication capabilities in a network (*e.g.*, the TCP/IP protocol suite; the OSI protocol suite).

### III.  REQUESTED DOCUMENTS AND TANGIBLE THINGS

The following specific requests for the production of documents and tangible things are subject to the "INSTRUCTIONS" and "DEFINITIONS" set forth above.

**REQUEST FOR PRODUCTION NO. 1:**

All documents and tangible things in your possession, custody, or control that constitute any files of the DEC Patent Review Committee that refer or relate to the Asserted DEC Patents or to the subject matter thereof.

**REQUEST FOR PRODUCTION NO. 2:**

All documents and tangible things in your possession, custody, or control that constitute or reflect any submissions made to the DEC Patent Review Committee that refer or relate to the Asserted DEC Patents or to their subject matter including, but not limited to, patent disclosures or invention disclosures.

**REQUEST FOR PRODUCTION NO. 3:**

All documents and tangible things in your possession, custody, or control that

constitute or relate to any of the following patent disclosure files maintained by DEC: PD90-

0094; PD93-0012; PD93-0184; and/or PD25639.

**REQUEST FOR PRODUCTION NO. 4:**

All documents and tangible things in your possession, custody, or control that

constitute, reflect, concern, or refer or relate to the conception or reduction to practice of any

of the inventions disclosed in the Asserted DEC Patents including, but not limited to, concepts

papers, white papers, patent disclosures, invention disclosures, and/or prototypes.

**REQUEST FOR PRODUCTION NO. 5:**

All documents and tangible things in your possession, custody, or control that

constitute or reflect any engineering notebooks or engineering notes of any of the DEC

Inventors insofar as they refer or relate to the Asserted DEC Patents or to the subject matter

thereof.

**REQUEST FOR PRODUCTION NO. 6:**

All documents and tangible things in your possession, custody, or control that

constitute or reflect any personnel files for any of the DEC Inventors.

**REQUEST FOR PRODUCTION NO. 7:**

All documents and tangible things in your possession, custody, or control that

constitute, reflect, concern, or refer or relate to documents created on or before June 23, 1993

pertaining to port-based VLANs, and/or to multicasting within port-based VLANs, that were

authored in whole or in part by any of the following former DEC employees: George

Varghese; John Bassett; Robert E. Thomas; Peter Higginson; Graham Cobb; Barry A. Spinney;

and/or Robert J. Simcoe.

**REQUEST FOR PRODUCTION NO. 8:**

All documents and tangible things in your possession, custody, or control that constitute, reflect, concern, or refer or relate to documents created on or before October 22, 1992 pertaining to packet formats involving the use of a Second Internal Header that were authored in whole or in part by any of the former DEC employees: Barry A. Spinney; Robert J. Simcoe; Robert E. Thomas; and/or George Varghese.

**REQUEST FOR PRODUCTION NO. 9:**

All documents and tangible things in your possession, custody, or control that constitute, reflect, concern, or refer or relate to documents created on or before December 30, 1996 pertaining to default VLANs that were authored in whole or in part by former DEC employee Carol E. Iturralde.

**REQUEST FOR PRODUCTION NO. 10:**

All documents and tangible things in your possession, custody, or control that constitute, reflect, concern, or refer or relate to documents created on or before October 22, 1992 pertaining to dual or multiple protocol routing, and/or to packet encapsulation used in conjunction with dual or multiple protocol routing, that were authored in whole or in part by any of the following former DEC employees: Ross W. Callon; Radia J. Perlman; Eric C. Rosen; John Harper; Ian M. Shand; and/or Christopher W. Gunner.

**REQUEST FOR PRODUCTION NO. 11:**

All documents and tangible things in your possession, custody, or control that concern, or refer or relate to, the Asserted DEC Patents including, but not limited to, any patent files maintained by DEC.

**REQUEST FOR PRODUCTION NO. 12:**

All documents and tangible things in your possession, custody, or control that constitute or reflect any efforts undertaken by DEC to license or enforce any of the Asserted DEC Patents.

35034210

AO 88 (Rev. 11/91) (Subpoena in a Civil Case)

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|

**SERVED** _9/25/06 @ 2:05 PM_    _20 Wenworth Ave., Londonderry N.H._
SERVED ON (PRINT NAME)                                    MANNER OF SERVICE

_DNPG   To Merilee ATwell H.R. ReP._
SERVED BY (PRINT NAME)                                    TITLE

_Robert P. Savoie_

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _9/25/06_
                    DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER
_Salem, N.H. 03079_

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

### (c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)    A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2)    (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)    (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance;

(ii)    requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B)( iii) of this rule, such a person may in order to

attend trial be commanded to travel from any such place within the state in which the trial is held, or the demanding party to contest the claim.

(iii)    requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)    subjects a person to undue burden.

(B)  if a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)    requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's's study made not at the request of any party, or

(iii)    requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

### (d)  DUTIES IN RESPONDING TO SUBPOENA.

(1)    A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)    When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

**Exhibit 17**

AO 88 (Rev. 11/94) Subpoena in a Civil Case

# Issued by the
# UNITED STATES DISTRICT COURT
### SOUTHERN    DISTRICT OF    TEXAS

ENTERASYS NETWORKS, INC.,

        Plaintiff,

v.

FOUNDRY NETWORKS, INC.

        Defendant.

## SUBPOENA IN A CIVIL CASE

Case Number: [1] 05-CV-11298 (DPW)
(D. Mass.)

TO:    **Hewlett-Packard Company**
        **d/b/a Hewlett-Packard USA**
        **Keeper of Records**
        **20555 SH 249**
        **Houston, TX 77070**

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): **See Attached "Schedule A."**

| PLACE | DATE AND TIME |
|---|---|
| **American Civil Process Service, Inc.** | **October 20, 2006** |
| **12707 Woodforest Boulevard** | |
| **Houston, TX 77015** | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _Marc N. H_____ , **Counsel for Plaintiff** | **September 25, 2006** |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

**Marc N. Henschke, Esq., Robins, Kaplan, Miller & Ciresi L.L.P.,**
**800 Boylston Street, 25th Floor, Boston, MA 02199, (617) 267-2300**

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 11/91) (Subpoena in a Civil Case)

## PROOF OF SERVICE

|  | DATE | PLACE |
|--|------|-------|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------------------------|-------------------|

| SERVED BY (PRINT NAME) | TITLE |
|------------------------|-------|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                        DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

### (c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)    A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2)    (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)    (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance;

(ii)    requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B)( iii) of this rule, such a person may in order to

attend trial be commanded to travel from any such place within the state in which the trial is held, or the demanding party to contest the claim.

(iii)    requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)    subjects a person to undue burden.

(B) if a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)    requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's's study made not at the request of any party, or

(iii)    requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

### (d) DUTIES IN RESPONDING TO SUBPOENA.

(1)    A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)    When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

## REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND TANGIBLE THINGS DIRECTED TO HEWLETT-PACKARD COMPANY PURSUANT TO SUBPOENA

## I. INSTRUCTIONS

1.     Hewlett-Packard Company, d/b/a Hewlett-Packard USA ("HP"), is required to respond to this request for production of documents and tangible things by drawing upon all materials in its possession, ownership, custody, or control, actual or constructive, including materials that HP has a right or ability to secure from any other source.  These sources include, but are not limited to, HP's employees, agents, managing agents, attorneys, accountants, investment bankers, consultants, advisers, officers, directors, or representatives of any type whatsoever.  These sources further include, but are not limited to, HP's predecessors, successors, parents, subsidiaries, affiliates, divisions, and their respective employees, agents, managing agents, attorneys, accountants, investment bankers, consultants, advisers, officers, directors, or representatives of any type whatsoever.

2.     If any document or tangible thing herein requested was, but no longer is, in HP's possession or subject to its control, whether actual or constructive, state what disposition was made of the document or tangible thing, why such disposition was made, to whom the document or tangible thing was transferred or delivered if applicable, where the document or tangible thing presently is located, and the date or dates (or approximate date or dates) on which such disposition was made.

3.     In the event that HP files a proper and timely objection to any portion of any individual request for the production of documents and tangible things presented herein, HP is required to respond to all other portions of that request that do not fall within the ambit of its objection.

4.    If any portion of any document or tangible thing is responsive to any production request herein, then the entire document or tangible thing must be produced.  If any requested document or tangible thing cannot be produced in full, then HP must produce that document or tangible thing to the greatest extent possible.  Whenever a document or tangible thing is not produced in full, or is produced in redacted form, HP must indicate that fact on the document or tangible thing produced.

5.    If any document or tangible thing responsive to a production request herein is withheld in whole or in part, for any reason whatsoever, including, but not limited to, any claim of privilege, work product, confidentiality, or trade secret, then HP must promptly provide a privilege log which states with respect to each such document, tangible thing, or withheld portion thereof: (a) the privilege or ground under which it is being withheld; (b) the type of document or tangible thing (*e.g.*, memo, letter, e-mail); (c) a description of the subject matter thereof; (d) the identity of its author or creator; (e) the identity of all persons to whom it is addressed and all persons to whom copies thereof ever have been furnished; (f) the date thereof; and (g) the present custodian and location thereof.

6.    If there do not exist documents or tangible things responsive to a specific production request herein, then HP must indicate that fact in its written response hereto.

7.    The documents or tangible things produced in response hereto shall be segregated and clearly marked or labeled so as to correspond to the specific production requests to which such documents or tangible things are responsive and are being produced.  Alternatively, such documents or tangible things shall be produced as they are kept in the usual course of business, including the production of the files and file labels from which such documents or  tangible things are taken.

8.    All documents or tangible things produced pursuant hereto are to be delivered on or before October 20, 2006 to Marc N. Henschke, Esq. at the offices of Robins, Kaplan, Miller & Ciresi L.L.P., 800 Boylston Street, 25th Floor, Boston, Massachusetts 02199.

9.    This is a continuing request for the production of documents and tangible things. Thus, if after making its initial production(s), HP becomes aware of any additional responsive documents or tangible things in its possession, ownership, custody or control (actual or constructive), including materials which it has a right to secure from any other source, HP is required without further request to produce, or to make available for inspection and copying, such additional documents or tangible things.

## II. **DEFINITIONS**

1.    The terms "documents" and "tangible things" as used herein shall mean each non-identical copy of any of the types of materials referenced in Local Rule 26.5(c)(2) and Fed. R. Civ. P. 34(a), and shall specifically include emails, voice mails, instant messages, and computer data, and any electronic, magnetic, or digital media on which information can be stored, including but not limited to tapes, hard drives, discs, and any other form of computer memory.

2.    The term "non-identical copy" as used herein shall mean any document or tangible thing that, but-for markings, additions, deletions, signatures, modifications of any kind (including, but not limited to, notations on the backs or margins of pages thereof, blind carbon copy notations, attachments, alterations, amendments, or mark-ups) would otherwise be identical to other documents or tangible things responsive to any production request herein. Each non-identical copy constitutes a distinct document or tangible thing and must be produced in response hereto.

3.      The term "meeting(s)" as used herein shall mean any assembly, convocation, encounter, or contemporaneous presence of two or more persons for any purpose, whether or not planned, arranged, or scheduled in advance, whether or not occurring face-to-face or by other means including, without limitation, by telephone, videoconference or instant messaging, and whether or not the meeting was informal or formal or occurred in connection with some other activity.

4.      The term "agreement" as used herein shall mean any contract, transaction, or other arrangement of any kind, whether conditional, executed, executory, express, or implied, and whether oral or written, in which rights are granted or obligations assumed.  The term "agreement" shall apply to completed, actual, contemplated, or attempted agreements or renewals of agreements.

5.      The term "negotiate" or any variant thereof as used herein shall mean, without limitation, any deliberations, discussions, conferences, bargaining or trading between parties or their agents, representatives, counsel, or any other persons as herein defined.

6.      The term "any" shall mean "any and all."  The term "all" as used herein also shall mean "any and all."

7.      The terms "and" and "or" as used herein shall be construed conjunctively or disjunctively to bring within the scope of these production requests any and all information which might otherwise be construed as outside their scope.

8.      The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun so used, and vice versa; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used,

and vice versa; and the use of any tense of any verb includes also within its meaning all other tenses of the verb so used.

9.      The term "communication" as used herein shall mean the transmittal of information in the form of facts, ideas, inquiries or otherwise.

10.     The term "person" as used herein shall mean any natural person or any business, legal, or governmental entity or association.

11.     The term "concerning" as used herein shall mean referring to, describing, evidencing, or constituting.

12.     All entities referred to herein shall be deemed to include their parent companies, subsidiaries, affiliates, directors, officers, employees, agents, successors, assigns, and representatives thereof, including attorneys, consultants, accountants, and investment bankers.

13.     The terms "HP," "you," "your," or "yours" as used herein shall each mean, unless otherwise specified in a particular request, DNPG, LLC.

14.     The term "Enterasys" as used herein shall mean Enterasys Networks, Inc.

15.     The term "Foundry" as used herein shall mean Foundry Networks, Inc.

16.     The term "Extreme" as used herein shall mean Extreme Networks, Inc.

17.     The term "Cabletron" as used herein shall mean Cabletron Systems, Inc.

18.     The term "DEC" as used herein shall mean Digital Equipment Corporation.

19.     The term "Patent Infringement Litigation" as used herein shall mean those civil actions for patent infringement that Enterasys has filed against Foundry and Extreme in the United States District Court for the District of Massachusetts captioned as <u>Enterasys Networks, Inc. v. Foundry Networks, Inc.</u>, (Civ. Act. No. 05-CV-11298-DPW) and <u>Enterasys Networks, Inc. v. Extreme Networks, Inc.</u>, (Civ. Act. No. 05-12235-DPW), respectively.

20.    The term "Asserted DEC Patents" as used herein shall mean, collectively, the following list of issued U.S. patents (originally assigned to DEC) that Enterasys is either presently asserting in the Patent Infringement Litigation, or that constitute related parents or siblings to said patents:

| Patent No. | Patent Title | Application Ser. No. | Named Inventors | DEC Patent Disclosure No. |
|---|---|---|---|---|
| 5,251,205 | "Multiple Protocol Routing" | 07/577,437 | Ross W. Callon<br>Radia J. Perlman<br>Eric C. Rosen<br>John Harper | PD90-0094 |
| 5,557,745 | "Method For Supporting Foreign Protocols Across Backbone Network By Combining And Transmitting List Of Destinations That Support Second Protocol In First And Second Areas To The Third Area" | 08/407,802 | Radia J. Perlman<br>Ian M. Shand<br>Christopher W. Gunner | Unknown |
| 5,430,727 | "Multiple Protocol Routing" | 08/245,856 | Ross W. Callon | n/a |
| 5,390,173 | "Packet Format In Hub For Packet Data Communications System" | 07/965,651 | Barry A. Spinney<br>Robert J. Simcoe<br>Robert E. Thomas<br>George Varghese | PD93-0012 |
| 6,560,236 | "Virtual LANs" | 09/411,773 | George Varghese<br>John Bassett<br>Robert E. Thomas<br>Peter Higginson<br>Graham Cobb<br>Barry A. Spinney<br>Robert J. Simcoe | n/a |
| 5,963,556 | "Device For Partitioning Ports Of A Bridge Into Groups Of Different Virtual Local Area Networks" | 08/731,905 | George Varghese<br>John Bassett<br>Robert E. Thomas<br>Peter Higginson<br>Graham Cobb<br>Barry A. Spinney<br>Robert J. Simcoe | PD93-0184 |
| 5,128,665 | "System For Broadcasting Messages To Each Of Default VLAN Ports In Subset Of Ports Defined As VLAN Ports" | 08/774,541 | Carol E. Iturralde | PD25639? |

21.    The term "DEC Inventors" as used herein shall mean, collectively, the following list of inventors (formerly employed by DEC) who are named on one or more of the Asserted

6

DEC Patents:  John Bassett; Ross W. Callon; Graham Cobb; Christopher W. Gunner; John

Harper; Peter Higginson; Carol E. Iturralde; Radia J. Perlman; Eric C. Rosen; Ian M. Shand;

Robert J. Simcoe; Barry A. Spinney; Robert E. Thomas; and George Varghese.

22.    The term "DEC Patent Review Committee" as used herein shall mean any

committee(s) at DEC -- *e.g.*, the Distributed Systems Intellectual Property Committee -- that

made decisions about whether to file and/or prosecute patent applications, including in

conjunction with reviewing patent and/or invention disclosures submitted by DEC employees.

23.    The term "VLAN" as used herein shall mean a virtual local area network wherein

groups of hosts and/or end stations are defined by their logical relationship rather than by their

physical connectivity such that they can communicate as though they were on the same wire

even though they may reside on physically different segments.

24.    The term "Default VLAN" as used herein shall mean a VLAN which has been

initially defined during manufacture and prior to configuration.

25.    The term "First Header" as used herein shall mean a protocol-specific field or

fields that precede the encapsulated data of a packet and contain unique network source and/or

destination addresses (*e.g.*, MAC addresses).

26.    The term "Second Internal Header" as used herein shall mean a field or fields

used in conjunction with the encapsulated data of a packet that contain local source and/or

destination addresses of typically shorter length that have been translated or derived from the

unique addresses contained in the First Header.

27.    The term "Routing Algorithm" as used herein shall mean the process by which a

router or switch computes effective routes through the network along which to forward a packet.

28.    The term "Routing Protocol" as used herein shall mean a protocol reflecting at least a standards-based network address allocation scheme, along with any associated scheme for formatting packets that is used in conjunction therewith.

29.    The term "Routing Protocol Suite" as used herein shall mean a comprehensive set of protocols, including a Routing Protocol, that are designed to work together to coherently provide complete communication capabilities in a network (*e.g.*, the TCP/IP protocol suite; the OSI protocol suite).

## III.  REQUESTED DOCUMENTS AND TANGIBLE THINGS

The following specific requests for the production of documents and tangible things are subject to the "INSTRUCTIONS" and "DEFINITIONS" set forth above.

### REQUEST FOR PRODUCTION NO. 1:

All documents and tangible things in your possession, custody, or control that constitute any files of the DEC Patent Review Committee that refer or relate to the Asserted DEC Patents or to the subject matter thereof.

### REQUEST FOR PRODUCTION NO. 2:

All documents and tangible things in your possession, custody, or control that constitute or reflect any submissions made to the DEC Patent Review Committee that refer or relate to the Asserted DEC Patents or to their subject matter including, but not limited to, patent disclosures or invention disclosures.

### REQUEST FOR PRODUCTION NO. 3:

All documents and tangible things in your possession, custody, or control that constitute or relate to any of the following patent disclosure files maintained by DEC:  PD90-0094; PD93-0012; PD93-0184; and/or PD25639.

**REQUEST FOR PRODUCTION NO. 4:**

All documents and tangible things in your possession, custody, or control that constitute, reflect, concern, or refer or relate to the conception or reduction to practice of any of the inventions disclosed in the Asserted DEC Patents including, but not limited to, concepts papers, white papers, patent disclosures, invention disclosures, and/or prototypes.

**REQUEST FOR PRODUCTION NO. 5:**

All documents and tangible things in your possession, custody, or control that constitute or reflect any engineering notebooks or engineering notes of any of the DEC Inventors insofar as they refer or relate to the Asserted DEC Patents or to the subject matter thereof.

**REQUEST FOR PRODUCTION NO. 6:**

All documents and tangible things in your possession, custody, or control that constitute or reflect any personnel files for any of the DEC Inventors.

**REQUEST FOR PRODUCTION NO. 7:**

All documents and tangible things in your possession, custody, or control that constitute, reflect, concern, or refer or relate to documents created on or before June 23, 1993 pertaining to port-based VLANs, and/or to multicasting within port-based VLANs, that were authored in whole or in part by any of the following former DEC employees:  George Varghese; John Bassett; Robert E. Thomas; Peter Higginson; Graham Cobb; Barry A. Spinney; and/or Robert J. Simcoe.

**REQUEST FOR PRODUCTION NO. 8:**

All documents and tangible things in your possession, custody, or control that constitute, reflect, concern, or refer or relate to documents created on or before October 22, 1992 pertaining to packet formats involving the use of a Second Internal Header that were

authored in whole or in part by any of the former DEC employees:  Barry A. Spinney; Robert

J. Simcoe; Robert E. Thomas; and/or George Varghese.

**REQUEST FOR PRODUCTION NO. 9:**

All documents and tangible things in your possession, custody, or control that

constitute, reflect, concern, or refer or relate to documents created on or before December 30,

1996 pertaining to default VLANs that were authored in whole or in part by former DEC

employee Carol E. Iturralde.

**REQUEST FOR PRODUCTION NO. 10:**

All documents and tangible things in your possession, custody, or control that

constitute, reflect, concern, or refer or relate to documents created on or before October 22,

1992 pertaining to dual or multiple protocol routing, and/or to packet encapsulation used in

conjunction with dual or multiple protocol routing, that were authored in whole or in part by

any of the following former DEC employees:  Ross W. Callon; Radia J. Perlman; Eric C.

Rosen; John Harper; Ian M. Shand; and/or Christopher W. Gunner.

**REQUEST FOR PRODUCTION NO. 11:**

All documents and tangible things in your possession, custody, or control that concern,

or refer or relate to, the Asserted DEC Patents including, but not limited to, any patent files

maintained by DEC.

**REQUEST FOR PRODUCTION NO. 12:**

All documents and tangible things in your possession, custody, or control that

constitute or reflect any efforts undertaken by DEC to license or enforce any of the Asserted

DEC Patents.

35034236

Enterasys Networks, Inc., et. al., Plaintiff(s)
vs.
Foundry Networks, Inc., et. al., Defendant(s)



Service of Process by

**APS International, Ltd.**
**1-800-328-7171**

APS International Plaza
7800 Glenroy Road
Minneapolis, MN 55439-3122

APS File #: 079305-0002

## AFFIDAVIT OF SERVICE -- Corporate

Service of Process on:
--Hewlett-Packard Co. d/b/a Hewlett Packard USA
Court Case No. 05-CV-11298 (DPW)

ROBINS, KAPLAN, ET AL
Mr. William G. Collis
800 Boylston St, 25th Fl
Boston, MA 02199-7610

---

State of: Texas ) ss.

County of: Dallas )

| | |
|---|---|
| Name of Server: | Kirk French , undersigned, being duly sworn, deposes and says that at the time of service, s/he was of legal age and was not a party to this action; |
| Date/Time of Service: | that on the 6th day of Oct. , 20 06 , at 1:25 o'clock P M |
| Place of Service: | at c/o CT Corp., 350 N St Paul St , in Dallas, TX 75201 |
| Documents Served: | the undersigned served the documents described as: **Subpoena with Attached Schedule A** |
| Service of Process on: | A true and correct copy of the aforesaid document(s) was served on: Hewlett-Packard Co. d/b/a Hewlett Packard USA |
| Person Served, and Method of Service: | By delivering them into the hands of an officer or managing agent whose name and title is: Shirley Dillon, authorized agent |
| Description of Person Receiving Documents: | The person receiving documents is described as follows: Sex F ; Skin Color W ; Hair Color brown ; Facial Hair ___ Approx. Age 50-55 ; Approx. Height 5'6" ; Approx. Weight 130 lbs ☐ To the best of my knowledge and belief, said person was not engaged in the US Military at the time of service. |
| Signature of Server: | Undersigned declares under penalty of perjury that the foregoing is true and correct. |

Signature of Server
Kirk French
Supreme Court No. SCH000000484
APS International, Ltd.

Subscribed and sworn to before me this
9th day of Oct. , 20 06

Notary Public          (Commission Expires)

MELISSA WOOLEY
MY COMMISSION EXPIRES
December 4, 2008

AO 88 (Rev. 11/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### SOUTHERN  DISTRICT OF  TEXAS

ENTERASYS NETWORKS, INC.,

        Plaintiff,

v.

FOUNDRY NETWORKS, INC.

        Defendant.

### SUBPOENA IN A CIVIL CASE

Case Number: [1]  05-CV-11298 (DPW)
(D. Mass.)

TO:
        **Keeper of Records**
        **20555 SH 249**
        **Houston, TX  77070**

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): **See Attached "Schedule A."**

| PLACE | DATE AND TIME |
|---|---|
| **American Civil Process Service, Inc.** **12707 Woodforest Boulevard** **Houston, TX  77015** | **October 20, 2006** |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Mu N. H---* , **Counsel for Plaintiff** | **September 25, 2006** |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

**Marc N. Henschke, Esq., Robins, Kaplan, Miller & Ciresi L.L.P.,**
**800 Boylston Street, 25th Floor, Boston, MA 02199, (617) 267-2300**

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 11/91) (Subpoena in a Civil Case)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | 10-6-06 @ 1:25 pm | 350 N. St. Paul St., Dallas, Texas 75201 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Hewlett-Packard Company d/b/a Hewlett-Packard USA by delivering to CT Corporation System, It's Reg. Agent by delivering to Shirley Dillon, agent authorized to accept | Personal Service |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Kirk French | Process Server |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on 10-6-06
DATE

Subscribed and sworn to before me this ___ day of ___, 20 ___

Notary Public
MELISSA WOOLEY
MY COMMISSION EXPIRES
December 4, 2008

SIGNATURE OF SERVER
Kirk French
Supreme Court No. SCH000000484

ADDRESS OF SERVER
**LAWYERS CIVIL PROCESS**
**400 S. HOUSTON ST.**
**DALLAS, TEXAS 75202**

Rule 45, Federal Rules of Civil Procedure, Parts C & D

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B)( iii) of this rule, such a person may in order to

attend trial be commanded to travel from any such place within the state in which the trial is held, or the demanding party to contest the claim.

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) if a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.