UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ENTERASYS NETWORKS, INC.,

Plaintiff,

v.

EXTREME NETWORKS, INC.,

Defendant.

Civil Action No. 05-11298-DPW

EXTREME NETWORKS, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS
MOTION TO COMPEL ANSWERS TO INTERROGATORY NOS. 1 AND 2 FROM
ENTERASYS NETWORKS, INC.

I.    INTRODUCTION

In its opposition, Enterasys again chooses to provide excuses rather than fundamental

discovery on the core issues of Enterasys' infringement contentions and the dates of invention

for its patents in suit. Enterasys' arguments misconstrue both its basic discovery obligations and

the prior order of this Court compelling interrogatory responses.

At bottom, if there is a "law of the case" with respect to Enterasys' interrogatory answers,

it is that Enterasys is require to provide more meaningful information than it previously provided

with respect to its infringement contentions. In June, 2006, Magistrate Collings reviewed

Enterasys' answers, found them lacking, and ordered a supplemental response. The

supplemental responses Enterasys since provided offer more text, but no more substance, than

the originals. As a result, well more than a year after Enterasys filed its complaint, Extreme still

has no more information about its infringement allegations than could be gleaned from reading

the claims of the patents themselves. Extreme is not, as Enterasys suggests, trying to re-litigate

an issue already decided. It is simply attempting, once more, to hold Enterasys to its obligation

to provide discovery regarding the nature and scope of its infringement allegations.[1]

Enterasys' opposition with respect to Interrogatory No. 2 is equally flawed. Enterasys claims that it should not be required to disclose its invention records, the sole basis it has cited for its claimed dates of conception and reduction to practice, because it may find other, non-privileged corroborating evidence that may be in the hands of third parties. It has been seven months since Enterasys was served with these interrogatories, yet Enterasys made no effort to discover this purported third party information until after Extreme had filed the instant motion. Under these circumstances, Enterasys cannot justify its failure to provide definitive answers, or its refusal to produce the only known basis for the answers it has provided, on the possibility that someone else might have superior information.

Enterasys further claims that these dates are not relevant until defendants have established a "credible invalidity defense." This assertion is without basis in law or logic. The facts on which Extreme is seeking discovery are themselves necessary to properly frame and develop a "credible invalidity defense," because they affect what qualifies as "prior art" in the first instance, and whether it is potentially invalidating. This is akin to suggesting that a plaintiff need not provide discovery about the date of his injuries until a defendant actually establishes a statute of limitations defense. Enterasys is not entitled to wait until defendants have completed their prior art analysis to provide answers to threshold questions relevant to that analysis.

## II.    ARGUMENT

### A.    Enterasys' Responses to Interrogatory No. 1 Remain Insufficient

#### 1.    Enterasys has not complied with the June 26, 2006 Order

Enterasys continues to maintain that the information Extreme seeks is the equivalent of

---

[1] For the same reasons that Enterasys' opposition fails to justify its discovery conduct, its request for costs for defending this motion is baseless and should be denied

"claim charts," which are not yet due under the scheduling order. The issue of claim charts, however, is not before the Court. Rather, at issue is the fact that Enterasys has still not provided any more meaningful information about its infringement contentions than it did in its original responses, which the Court has already found deficient.[2]

At the hearing on the initial motion to compel, Magistrate Collings clearly recognized that the defendants were entitled, if not to claim charts, at least to further information about the nature of Enterasys' infringement allegations:

> …maybe you're talking about detailed claim construction, maybe you're talking about pre-Markman hearing documents on the one hand. What I hear them saying is we want to know how you allege your products are infringed by or how your patents are infringed by their products. Why aren't they entitled to know that fairly soon? You know it because you needed to know it unless you were violating Rule 11 before you filed suit.

Transcript of June 26, 2006 Hearing (Ex. A), p. 12.

> I think frankly there's a difference between putting them on notice on what patents you claim are infringed and which products do infringe and the manner in which they infringe and the claims that they infringe, which, all of which you had to know prior to you file suit. <u>I think they're entitled to that.</u>

<u>Id.</u>, at 16-17 (emphasis added).

Magistrate Collings then concluded that the actual claim charts were not due until the date set forth in the scheduling order, but stated:

> However, I do think that the plaintiffs are entitled, excuse me, the defendants are entitled to know that products that are infringed and how each of the products which are alleged to have been infringed infringe the particular patents-in-suit, and I'm just going to have to review this carefully to see if that information is provided. <u>If its provided then the motion will be denied. If it's not provided the</u>

---

[2] Indeed, though Enterasys insists that the prior motion to compel this information was denied, the record is clear that the Court reviewed Enterasys' earlier interrogatory answers, found them deficient, and ordered Enterasys to supplement.

motion will be allowed to the extent that information would have
to be turned over."

Id., at 24-25(emphasis added).

After hearing, Magistrate Collings ordered supplemental responses. Self-evidently,

therefore, he found that Enterasys' existing responses did not provide the information to which

defendants were presently entitled.

The issue before the court is far simpler than Enterasys' opposition suggests: has

Enterasys provided any more meaningful information in its Court-ordered supplemental

responses than it did before the last hearing? As fully set forth in Extreme's motion, the answer

is no. All Enterasys has done, along with repeating the information Magistrate Collings found

deficient, is to recite the language of its patent claims in conjunction with a laundry list of

Extreme's products. These responses are no more illuminating as to the nature and scope of its

infringement allegations than the initial responses, and indeed no more illuminating than a

review of the patent claims themselves.

> 2. Enterasys' claim of privilege does not excuse its failure to provide
> complete responses

In its opposition, Enterasys refers again to its pre-suit investigation, and asserts that the

Court has already found that it is not required to turn over details of that investigation. See

Enterasys Opp. at 14, n. 15. This, too, is a red herring. Extreme is not asking for a description of

the pre-suit investigation, it is asking for facts that are known to Enterasys and Enterasys'

contentions. Whether Enterasys learned these facts during a privileged investigation does not

affect its obligation to provide complete interrogatory responses. When counsel for Enterasys

previously argued to the Court that providing more detailed information would infringe on the

privilege attached to its investigation, Magistrate Collings' response was unequivocal:

No, you've got to, I'm sorry, sir, you have it all wrong. I agree

> with you that the, you know, that if you prepared any documents
> pre-suit analysis, things of that sort, the particular documents
> would be protected under the work product but that doesn't protect
> the contentions you're making in the litigation. Just because you
> reached those contentions by doing legal research doesn't mean
> that the contentions themselves are protected.

Ex. A, at 13.

It is the contentions that Extreme is seeking in its motion, information it should have been given months ago.[3]

### 3.    Enterasys' complaints about Extreme's document production are unwarranted and immaterial

Without fully explaining the relevance of this assertion to its own discovery obligations, Enterasys complains about its alleged lack of access to Extreme's "key technical documents." This complaint is unfounded, as Extreme has produced volumes of technical documents, and has specifically identified examples in Extreme's production of the types of documents Enterasys claims not to have received. In all events, it is not relevant to this motion. Enterasys had access to approximately 31,000 pages of publicly available documents detailing the key features of Extreme's products when it conducted its pre-suit investigation in March, 2004 and concluded that the products infringed, and has since received over 139,000 pages of additional documents. If any document that Extreme might later produce changes Enterasys' contentions, Enterasys can and must supplement its responses. It is not, however, entitled to delay providing information that it already knows, and its attempt to deflect attention from its own discovery shortcomings should be disregarded.

---

[3] Though Magistrate Collings did deny Foundry's earlier motion to compel an interrogatory response that went directly to the details of the pre-suit investigation, that is not what Extreme is asking for in the pending motion.

**B.**    **Enterasys Has Failed to Justify its Incomplete Answers to Interrogatory No. 2**

Extreme asked Enterasys to identify the dates of conception and reduction to practice for each of the claimed inventions at issue, and to identify the basis for asserting those dates. With respect to three of the patents, Enterasys simply states that the date is "no later than" the patent filing date, leaving open the possibility that it might later claim a different date. For the remaining three, it asserts dates that are earlier than the filing date, but refuses to disclose the <u>only</u> information on which it relies to make that assertion on grounds of privilege. Enterasys' opposition fails to justify this incomplete and equivocal response.

1.    <u>The requested information is relevant and timely</u>

Under the current scheduling order, defendants must submit invalidity contentions, identifying each asserted item of prior art, in less than three months. Enterasys, however, has yet to provide a firm answer requested corroborating evidence with respect to the dates of conception and reduction to practice, which are necessary in order for Extreme to complete its analysis of what even qualifies as "prior art" in the first instance.

Enterasys has cited no authority for its claim that defendants must establish their prior art defense before this information becomes relevant. In effect, Enterasys is asking that it be allowed to wait and see what prior art the defendants come up with before committing to a position on the dates of conception and reduction to practice.[4] Defendants should not be required to build their invalidity defenses on such a moving target.

---

[4] Enterasys' suggestion that Extreme has "refused" to respond to an interrogatory seeking information about its invalidity and prior art defenses is equally puzzling. Extreme answered Enterasys' interrogatory, asserting that its efforts to investigate prior art were hampered by Enterasys' refusal to define its infringement allegations. Notwithstanding this objection, Extreme provided a full answer with respect to its investigation to date, including extensive documents relating to specific prior art materials, and a 35 page chart identifying those documents by bates number and related patent. Enterasys' argument on this point is nothing more than misdirection.

2.    Enterasys is currently relying on the invention records, and therefore should disclose them

Enterasys does not dispute that if it intends to rely on the invention records, it has an obligation to waive privilege and disclose them. Instead, Enterasys claims that it is not "currently" relying on those records, because it may find other, non-privileged corroborating evidence from third parties.

First, Enterasys is relying on those documents, because it cites them as the only known documentary basis for the dates it has asserted in its interrogatory responses. As noted above, these are the dates on which defendants must rely in performing their prior art analysis, and the dates that will- if established- affect the invalidity contentions due in January. Defendants are entitled to discovery that would allow them to test the validity of those dates, whether or not Enterasys might later discover additional information.

Second, Enterasys has done nothing in the seven months since these interrogatories were served to discover the documents that purportedly are in the hands of third parties, until after Extreme filed this motion. In fact, based on Enterasys' representation that one of these third parties- DNPG, LLC- was in the possession of documents relating to these products in the relevant time period, Extreme served a subpoena on DNPG. Counsel for DNPG informed Extreme that, other than an old computer system containing engineering specifications, DNPG in fact never received historical documents from Enterasys' predecessor. Accordingly, Extreme has diligently pursued these documents only to find it was a wild goose chase. In any event, Enterasys has no right to delay providing a definitive interrogatory answer, and no right to withhold the only known documentation that backs up its answer, on the mere possibility that a third party- who has already denied having relevant documents- might be able to provide corroborating evidence.

**III.    Conclusion**

The information Extreme is seeking- further explanation of Enterasys' infringement contentions and full discovery of claimed dates of conception and reduction to practice- is basic information necessary to the development of its defense. This information should have been provided months ago, and Enterasys has no justification for continuing to withhold it. For the reasons stated above, and in the Memorandum in Support of Extreme's Motion to Compel, Extreme respectfully requests that Enterasys be immediately ordered to fully respond to Extreme's Interrogatories 1 and 2.

Dated:  October 20, 2006

EXTREME NETWORKS, INC.

By its attorneys,


 /s/ Emily Smith-Lee
Emily Smith-Lee (BB0# 634223)

Terrence P. McMahon
Vera M. Elson
David H. Dolkas
Firasat M. Ali
McDermott Will & Emery LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
(650) 813-5000

Christopher D. Bright
McDermott Will & Emery LLP
18191 Von Karman Ave.
Suite 400
Irvine, CA 92612-7107
(949) 851-0633

Peter L. Resnik (BBO# 417180)
Emily Smith-Lee (BB0# 634223)
McDermott Will & Emery LLP
28 State Street
Boston, Massachusetts  02109-1775
(617) 535-4000
MCDERMOTT WILL & EMERY LLP


### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic filing (NEF) and paper copies will be sent to those indicated as non registered participants on October 20, 2006.


/s/ Emily Smith-Lee
Emily Smith-Lee

## EXHIBIT A

1    and that was the issue of how claim construction charts and

2    infringement analysis production should be handled in the case.

3    What Foundry and the defendants argued to Judge Woodlock is

4    that we should be able to pursue claim construction and

5    infringement analysis by way of interrogatories.  We should be

6    able to do that any time we want to.  On day one of the case we

7    should be able to serve an interrogatory which calls for their

8    detailed legal analysis of all of their infringement

9    allegations.  Enterasys said no, that doesn't make sense.  What

10   you're talking about is a pure and simple contention

11   interrogatory.  The idea that you could serve that on day one

12   of the case and demand a detailed legal analysis of the

13   evidence at a time when there's been no evidence and no

14   discovery produced is a premature contention interrogatory.  So

15   what Enterasys proposed to Judge--

16             THE COURT:  I don't understand what, you know, I, you

17   know, maybe you're talking about detailed claim construction,

18   maybe you're talking about pre-Markman hearing documents on the

19   one hand.  What I hear them saying is we want to know how you

20   allege your products are infringed by or how your patents are

21   infringed by their products.  Why aren't they entitled to know

22   that and know that fairly soon?  You know it because you needed

23   to know it in unless you were violating Rule 11 before you

24   filed suit.

25             MR. HENSCHKE:  The point of the matter is because no

13

1   evidence at all has been produced in this case the only

2   infringement analysis that we could possibly provide them is

3   our pre-suit legal analysis which is privileged attorney work

4   product of the highest order.  They're attempting to force us

5   to give--

6           THE COURT:  No, you've got to, I'm sorry, sir, you

7   have it all wrong.  I agree with you that the, you know, that

8   if you prepared any documents pre-suit analysis, things of that

9   sort, the particular documents would be protected under the

10  work product but that doesn't protect the contentions you're

11  making in the litigation.  Just because you reached those

12  contentions by doing legal research doesn't mean that the

13  contentions themselves are protected.

14          MR. HENSCHKE:  Your Honor, Judge Woodlock rejected

15  plaintiff's proposal.  What he said is I am not going to allow

16  you to pursue this through interrogatories on day one of the

17  case.  Instead what I'm going to do is--

18          THE COURT:  Well, what was he talking about when they

19  raised the issue and he said they could file interrogatories?

20  What was he talking about?

21          MR. HENSCHKE:  He said that discovery could be

22  pursued with the exception of the claim charts issue.  That's

23  expressly what he said.  I'd be happy to point it to you in the

24  transcript.  Judge Woodlock rejected their interrogatories

25  proposal, which was set out in the joint plan that they

16

1   these pieces of information.  We came back in supplemental

2   interrogatories and gave them all of those pieces of

3   information and then they changed their story and said, ha,

4   just kidding, actually we're still not going to produce any

5   documents to you.  You need to give detailed claim construction

6   charts and infringement analyses right now, months before the

7   court's deadline and at a time when no discovery at all has

8   been produced in the case.  The implications of that, Your

9   Honor, is right now as I stand here today, seven months after

10  Judge Woodlock's scheduling order, I do not have a single piece

11  of information from discovery that I didn't already have on a

12  pre-suit basis because they've only produced stuff that can be

13  publicly printed off their website.  How am I supposed to

14  answer a contention interrogatory calling for my legal analysis

15  of the evidence?  The only way I could possibly do that--

16          THE COURT:  No, I don't think anyone's calling for

17  your legal - well, you say that it's answered in interrogatory

18  1.  I think frankly there's a difference between putting them

19  on notice on what patents you claim are infringed and which

20  products do infringe and the manner in which they infringe and

21  the claims that they infringe, which, all of which you had to

22  know prior to you file suit.  I think they're entitled to that.

23  Now, to the - and I also think they're entitled to that as to

24  your knowledge now.  If you learn during discovery additional

25  information, then you obviously would have the right to

1   supplement and I, you know, I would not deem you have to be

2   foreclosed from doing that because at the time you gave that

3   information you hadn't had discovery.  But I think they're

4   entitled to some notice up front.  Now you're saying that

5   notice is given, I take it, in answer to your interrogatory 1,

6   those things that I just mentioned?

7          MR. HENSCHKE:  I'm saying that and I'm also saying

8   because they have produced no discovery at all of a

9   non-confidential nature, not one of their engineering documents

10  showing how their products work, et cetera, I could not

11  possibly at this point provide them with an infringement

12  analysis that is different in any respect than the pre-lawsuit

13  legal analysis that Enterasys' outside counsel performed.  I

14  have not received one piece of information beyond that.  So

15  what you're--

16         THE COURT:  Well, if you're taking--

17  (PAUSE IN RECORDING)

18         MR. BAUER:  The next paragraph, later in March 2005,

19  a second detail pre-suit investigation was exclusively

20  performed by outside counsel.  The second suit again included

21  both claim construction and infringement analyses and focused

22  on publicly available information.  Well, they did these

23  analyses and they concluded that something we did infringed.

24  They then tell us in the interrogatory that every product we

25  sell in eight categories infringes.  What we're asking for,

1  MR. HENSCHKE:  They're asking for, explain to us

2  expressly how and why you believe that this aspect of our

3  product meets your legal analysis of meeting the claim

4  limitation.  What is that?  And we don't have any information

5  about their products cause they withheld all of the documents.

6  THE COURT:  All right, well we're getting to the

7  documents in a moment.  No, Mr. Bauer, sit down.  I think this

8  has brought into focus where we are on this and here's my view

9  of it.  I can't look into Judge Woodlock's mind and I haven't

10  made it, I haven't talked to him about this so I have no idea

11  other than what's been presented to me, what he was thinking.

12  But it seems to me that he was by setting that deadline for

13  claim construction there was an intention in his mind that the

14  type of detailed claim construction things that he was

15  anticipating would have to be produced on July 17 or at least

16  by July 17.  There was a reason for having that put in the

17  discovery period where it was put.  So I am not going to compel

18  that prior to that deadline.  However, I do think that the

19  plaintiffs are entitled, excuse me, the defendants are entitled

20  to know the products that are infringed and how each of the

21  products which are alleged to have been infringed infringe the

22  particular patents-in-suit, and I'm just going to have to

23  review this carefully to see if that information is provided.

24  If it's provided then the motion will be denied.  If it's not

25  provided the motion will be allowed to the extent that that

25

1  information would have to be turned over.  But I am not going

2  to order a detailed - that which Judge Woodlock particularly

3  put in the middle of the discovery period up front because I

4  don't think that was his intention.  But when he talked about

5  asking interrogatories to get some information about what the

6  nature of the claims were I think they're entitled to do that,

7  and I'm going to come down obviously somewhere in line with

8  that analysis I just gave you.

9        Now with that in mind, does it, is the issue of the -

10  well, let me hear, why I understand plaintiff's motion to

11  compel, what is the basis for declining to produce documents,

12  Mr. Bauer?

13        MR. BAUER:  Your Honor, it's been a negotiation as to

14  what is it that we need to produce and what we've been saying

15  is after we have a focus, a framework from this claim

16  construction we're happy to produce.  We're not refusing to

17  turn things over.  We're simply saying that we thought, this is

18  that chicken and the egg, that we thought that they needed to

19  identify the product specifically.  Your Honor, if I can, I can

20  show you exactly what the issue is.

21        THE COURT:  Well, you know, I don't - procedurally,

22  I'm not sure your doing this the right way.  It seems to me

23  that you should have filed a motion for a protective order

24  against answering this discovery on these grounds and just not

25  refused to answer.