**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| ENTERASYS NETWORKS, INC., | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No: 05-CV-11298 (DPW) |
| v. | ) ) | |
| FOUNDRY NETWORKS, INC., and EXTREME NETWORKS, INC. | ) ) ) | **ORAL ARGUMENT REQUESTED** |
| Defendants. | ) ) ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT EXTREME'S EXPEDITED MOTION TO REDUCE TO A MANAGEABLE NUMBER THE PATENT CLAIMS AT ISSUE IN THIS CASE**

**I.   INTRODUCTION**

Defendant Extreme Networks, Inc. ("Extreme") moves the Court to order that plaintiff Enterasys, Inc. ("Enterasys") immediately reduce to a reasonable number the patent claims to be construed, and eventually tried, in this action. Extreme believes a reasonable number is no more than 2 to 3 claims per patent. Enterasys currently asserts every single claim of all six patents, totaling 129 patent claims. Extreme seeks judicial intervention because it is impractical and burdensome to force Extreme to defend against so many claims.

In response to Extreme's request that it reduce the number of claims, Enterasys proposed to identify a total of 30 claims now, but to add back claims later – an approach that would render the supposed reduction illusory. Enterasys should decide its final claims for trial now. Enterasys filed this suit in June 2005, presumably based on an analysis under Rule 11 of its patent claims and Extreme's products. In the two years since, Extreme has provided Enterasys with thousands of pages of key technical documents about its products, and has identified key items of prior art that it believes invalidate the patents. Enterasys has more than sufficient information to choose its claims now. Indeed, as long ago as November 2005, the Court recognized the need for

Enterasys to select a manageable number of claims, and even warned Enterasys that it "won't be a happy day" if Extreme has to bring a motion to reduce the number of claims for claim charts.

This "unhappy day" has arrived, regretfully, and Extreme is filing this motion on an expedited basis in light of fast approaching deadlines for Extreme to serve its patent invalidity and noninfringement contentions with respect to the 129 asserted claims – on April 16 and April 30, respectively, and for claim construction briefing in June.

On March 27, 2007, Extreme held a final meet and confer with Enterasys in an effort to narrow the areas of disagreement to the greatest extent possible with respect to the number of asserted claims. During the conference, Extreme again asked Enterasys to limit the number of asserted claims to a maximum of 2 – 3 claims per patent and to identify those claims within the next few days. Enterasys argued that it should not have to make a final decision regarding the number of asserted claims until it receives Extreme's invalidity and noninfringement contentions in April. As a compromise to Enterasys, Extreme offered to allow Enterasys to substitute a limited number of claims by late April 2007, after receiving Extreme's invalidity and noninfringement contentions, so long as Extreme had the right to supplement its invalidity and noninfringement contentions with respect to those new claims.

Enterasys rejected Extreme's proposal, instead stating that it would only limit the number of asserted claims to a total of *30 claims* with the right to *add up to three dependent claims per patent* (a total of 18 potentially new claims) after reviewing the defendants' invalidity and noninfringement contentions. However, Enterasys would not commit to a date when it would finally identify the claims at issue, saying that would need to conduct further depositions.

After the meet and confer, Enterasys sent a letter essentially demanding that Extreme provide invalidity and noninfringement contentions on all 129 asserted claims in April 2007 – clearly an effort to force Extreme to take Enterasys' unreasonable proposal.[1]

---

[1] It is simply not workable for Extreme to provide invalidity and noninfringement contentions on all 129 asserted claims. Since Enterasys has refused to reduce the claims to a manageable number, Extreme plans to provide its contentions on as many claims as possible, and to reserve rights to supplement its contentions.

Enterasys' unreasonable proposal is no real reduction at all. In addition to being a moving target with respect to which claims are truly at issue, Enterasys' proposal imposes an undue burden and expense on Extreme and the Court (i) by requiring invalidity and noninfringement contentions on over 30 claims across six different patents in April 2007, (ii) by requiring proposed claim constructions for so many claims by May 17, and (iii) by requiring claim construction briefs on these claims in June. Enterasys' proposal is hardly a good faith effort to reduce the number of asserted claims to a reasonable number, and at this late stage in the litigation, with invalidity, noninfringement and claim construction deadlines approaching, it is time for Enterasys, the plaintiff in this case, to identify with finality the claims it actually intends to take to trial.

## II.     FACTUAL BACKGROUND

On June 21, 2005, Plaintiff Enterasys Networks, Inc. ("Enterasys") sued defendants Extreme Networks, Inc. ("Extreme") and Foundry Networks, Inc. ("Foundry") for patent infringement. Walker Decl., ¶ 2. Enterasys seeks a judgment of infringement, willful infringement, plus damages and injunctive relief. *Id*. Enterasys asserts every claim of six patents against Extreme and Foundry, and totaling 129 different patent claims. *Id*. Here is a chart of asserted claims:

| Patent No. | Number of Asserted Claims |
|---|---|
| 6,560,236 | 18 |
| 6,147,995 | 35 |
| 6,128,665 | 8 |
| 6,539,022 | 20 |
| 5,390,173 | 24 |
| 5,251,205 | <u>24</u> |
| **Total Claims** | **129** |

*Id.*

The technology at issue, dating back to the early 1990s, generally relates to complex computer networking technology. Walker Decl., ¶ 3. For example, the `236 patent entitled "Virtual LANS," purportedly claims a method and device for interconnecting computer networks. *Id*., Exh. A (`236 patent). Another patent at issue, the `995 patent, is entitled, "Method For Establishing Restricted Broadcast Groups In A Switched Network," and allegedly claims a method and apparatus for establishing restricted broadcast groups in a switched network. *Id*. There is no question that the patents are highly technical.

Plaintiff Enterasys, a private company based in Andover, Massachusetts, is a provider of network solutions for enterprise-class companies. Walker Decl., ¶ 6. Defendant Extreme of Santa Clara, California, is a publicly listed company that offers Ethernet switching and routing equipment. *Id*.

On December 19, 2006, the Court granted the parties' Joint Motion To Modify The Scheduling Order and adopted new deadlines. Walker Decl., ¶ 7. Those Court-imposed deadlines are fast approaching in this case, as outlined below, and there is simply no excuse for Enterasys to continue to delay identifying the claims on which it seeks trial. These deadlines include:

- *April 16, 2007* - Defendants are to serve invalidity contentions identifying each asserted item of prior art and the basis on which it anticipates or renders obvious each asserted patent claim.

- *April 30, 2007* - Defendants are to serve their responsive claim construction charts identifying which claim elements they admit are present in any accused products, and as to all other claim elements their basis for denying that said elements are present.

- *May 14, 2007 -* The parties are to simultaneously exchange preliminary proposed claim constructions.

- *June 7, 2007* – The parties are to file a joint claim construction statement.

- *June 27, 2007 -* Opening claim construction briefs are due.

- *July 24, 2007* – Reply claim construction briefs are due.

- *October 15, 16, and 17, 2007* – Markman hearing. A trial date is not yet scheduled.

*Id.*

In addition to the tight schedule, Enterasys has accused a vast number of Extreme products of infringing the six patents in suit. Walker Decl., ¶ 8. In its interrogatory responses, Enterasys has accused "*every* product sold or licensed during the relevant damages period" in three Extreme product lines. *Id*. This constitutes more than *100 accused products* across Extreme's Summit, Black Diamond and Alpine product families in addition to software – far too many accused products to reasonably manage and litigate in one case.[2] *Id.*

Extreme met and conferred with Enterasys several times regarding the number of asserted claims, most recently on March 27, 2007 without success. Walker Decl., ¶ 11, Exh. B (3/29/07 letter from S. Walker to M. Henschke), Exh. C (3/27/07 letter from M. Henschke to S. Walker).

### III. ARGUMENT

#### A. THE COURT ALREADY WARNED ENTERASYS MORE THAN A YEAR AGO THAT IT MUST LIMIT THE NUMBER OF ASSERTED CLAIMS

Enterasys has long been on notice that it must limit the number of asserted claims. Over seventeen months ago, at the November 3, 2005 scheduling hearing, the Court admonished Enterasys that it must limit the number of asserted claims and that Enterasys, as plaintiff, should know what claims it intends to try:

> THE COURT: No. I have that in front of me. So, maybe I ought to back up a bit with this. **I mean, I share the view generally that there are never more than four good claims**. There rarely are more than five documents worth looking at in a case although you don't learn until trial what they are. But what makes you think you're going to have more than four?
>
> MR. SULLIVAN: I don't know, your Honor. **And I think that this - - if we're talking about this six months from now or nine months from now, I would think that would be a lot more appropriate.** The problem I have is without having taken discovery, just standing here at the start of the case, to say that we are going to agree that we'll be limited to four claims and that we can never change what those claims are before we have taken any discovery and before we've seen what the contentions are, before we have any indication from the Court as to what the claim construction is going to be - -
>
> THE COURT: Well, you don't get that until afterwards, anyway.

---

[2] Extreme hopes to reach an agreement with Enterasys regarding representative products in each of the accused product lines, and this issue is not a subject of the instant motion.

\* \* \*

>   THE COURT:  Well, no.  I'm less concerned with generalities than the specifics of this case.  **You must know enough about the case to know what your likely claims are going to be** –
>
>   MR. SULLIVAN:  We do.
>
>   THE COURT:  -- and highly proliferated beyond four?
>   MR. SULLIVAN:  Your Honor, it's the artificial nature of saying four per patent.
>
>   THE COURT:  But just give me -- **I mean, should I be staying up late at night worrying about 75 claims for each of the patents**?
>
>   MR. SULLIVAN:  No.  I don't think so, Your Honor.
>
>   THE COURT:  **How about six**?
>
>   MR. SULLIVAN:  How about seven.
>
>   THE COURT:  All right.  I really want to get an idea of whether or not this is going to be –
>
>   MR. SULLIVAN:  I would suspect, Your Honor, by the time we get to trial, that we'll probably be putting forth **three or four**.
>
>   THE COURT:  Of more concern to me is by the time you get to the Markman hearing, what do you think?
>
>   MR. SULLIVAN:  I think it will probably be in the area of probably no more than **seven**.

Walker Decl., ¶ 12, Exh. D (11/3/05 Hearing Transcript, pages 13-15, emphasis added).  The Court observed that, if the issue of the number of asserted claims was left unresolved, the parties could file a motion with the Court, but warned Enterasys of the consequences:

>   THE COURT:  Well, I guess what I'm going to do is leave it for the claim construction chart basis.  I understand what you have to say.  On the other hand, if on July 17th, it seems absurd, you can make some kind of motion –
>
>   MS. ELSON:  Thank you, Your Honor.
>
>   THE COURT:  -- to come back here.  It won't be a happy day for all of us if that happens.
>
>   MR. SULLIVAN:  Well, it wouldn't be so for me, Your Honor.
>
>   THE COURT:  I think you've identified who would be **least happy in court**.

*Id*. at 18-19, emphasis added.

A year and a half later, the "unhappy" day has arrived. Enterasys still refuses to reasonably (and with finality) limit the number of asserted claims. The Court should order Enterasys to do so immediately.

### B. THE COURT CAN AND SHOULD LIMIT THE NUMBER OF PATENT CLAIMS TO BE ASSERTED AT TRIAL

Courts faced with a proliferation of patent claims routinely order that the plaintiff limit the number of claims to be tried. In *Auto Wax Co. Inc. v. Mark V Products, Inc.*, 2001 WL 300554 (N.D. Tex. 2001), the plaintiff asserted 86 claims against a single defendant. Prior to the court's construing the claims, the defendant in *Auto Wax* moved to limit the number of claims, on the grounds that "it would be impractical and burdensome to try all 86 claims." The special master agreed, holding that 19 would be "a reasonable number for trial." *Id.* at *1. Extreme's proposal here to limit Enterasys to no more than 2-3 claims per patent would yield a similar number of claims for trial.

Likewise, in *Fenster Family Patent Holdings, Inc. v. Siemens*, 2005 WL 2304190 (D. Del. 2005) (J. Farnan), the plaintiff asserted 90 patent claims. The Court agreed with the defendant "that Fenster's number of asserted claims is unreasonable." *Id.* at *2. The *Fenster* court noted that it "would prefer the parties to address such issues among themselves, but when that does not happen, the Court must intervene," and, prior to *Markma*n, ordered that the plaintiff be limited to 10 claims against 5 products. *Id.* at *3. In this case, Enterasys has asserted 129 claims, and refuses even to say when it will identify the claims it fully plans to try.

In the Northern District of California, which has adopted rules specifically applying to patent cases, the court uses various mechanisms to narrow the number of claim terms in dispute. For example, The Honorable Judge William Alsup routinely limits claim construction to fewer than ten claim terms as part of his case management order. Walker Decl., ¶ 13, Exh. E (*Silconix Inc. v. Alpha and Omega Semiconductor Inc.*, No. C-03-04803 (N.D. Cal. 2004) (limiting the parties to **six phrases** to be construed at *Markman*), Exh. F (*Affymetrix, Inc. v. Multilyte Ltd.*, No. C-03-03779 (N.D. Cal. Dec. 12, 2003) (limiting the parties to **eight phrases**), Exh. G *Keytrak,*

*Inc. v. Key Register, L.L.C.*, No. C-03-00870 (N.D. Ca. June 2, 2003) (limiting the parties to **six phrases**). Extreme's request, in light of the authority above, is eminently reasonable.

### C. THE COURT AND DEFENDANTS WILL BE UNDULY BURDENED IF FORCED TO LITIGATE INVALIDITY, CLAIM CONSTRUCTION AND NONINFRINGEMENT ISSUES FOR 129 ASSERTED CLAIMS

There is no question that both the Court and the parties will be unduly burdened if faced with the daunting task of litigating a complex six-patent case involving 129 asserted claims and *every* product in three Extreme product lines. In response to this motion, Enterasys no doubt will argue that it intends eventually to reduce the asserted claims, just not yet. But the time for Enterasys to act is long past due.

This case is complex. The six patents relate to the field of computer networking. Enterasys has informed the parties that it plans to use no less than six technical expert witnesses or consultants to prove its case – including professors from Harvard University and Carnegie Mellon University in the fields of Computer Science and Electrical Engineering. Walker Decl., ¶ 5. Both Extreme and Foundry likely will have at least two technical experts each – bringing the total number of technical experts or consultants for all the parties to *over ten*. *Id*. There are also 16 inventors spanning across the various patents, and a damages case to be presented at trial. *Id*. A compelling need exists to limit the number of asserted claims to make the case manageable.

In just two weeks, on April 16, 2007, Extreme will be faced with the unduly burdensome task of serving its patent invalidity contentions for each of the 129 asserted claims. The schedule order provides that Extreme is to identify "each asserted item of prior art and the basis on which it anticipates or renders obvious *each asserted patent claim*." Providing invalidity contentions in the form of claim charts for each of the asserted 129 patent claims for each item of prior art is simply not workable – it is far too unwieldy and expensive for the Extreme.

Shortly thereafter, on April 30, 2007, Extreme faces the further task of providing its noninfringement contentions. The scheduling order requires Extreme "to serve responsive claim construction charts identifying which *claim elements* they admit are present in any accused products, and as to all other *claim elements* their basis for denying that said elements are

present." It is an unreasonably burdensome task to perform a meaningful noninfringement analysis of 129 asserted claims against the over 100 accused Extreme products.

The Court soon will receive hundreds of pages of claim construction briefs for the 129 asserted claims Enterasys has brought. A determination of patent infringement requires the Court to perform a two-step analysis: first, the meaning of the claim language is construed, then the facts are applied to determine if the accused device falls within the scope of the claims as interpreted. *Markman v. Westview Instruments, Inc*., 52 F.3d 967, 976 (Fed. Cir. 1995). The parties are to simultaneously exchange preliminary proposed claim constructions on May 14, 2007, and file a joint claim construction statement on June 7, 2007. Opening and reply claim construction briefs are due June 27, 2007, and July 24, 2007, respectively. The Court is to hold a Markman hearing on the issue of claim construction on October 15, 16 and 17, 2007.

Because of the number of asserted claims, the claim construction briefing will be lengthy and complex. These are highly technical patents, as even a brief review quickly demonstrates. The preamble alone of Claim 15 of the '236 patent, for example, reads:

> 15. A computer program product for use with a network device having a computer and a first plurality of ports on which network communications pass to and from the network device, wherein the network device includes a client port not within the first plurality of ports, and the computer program product comprises computer program instructions that when executed by the computer direct the computer to perform a method of directing the network communications, the method comprising:

Walker Decl., ¶ 3, Exh. A, Col. 20, lines 32-40. Claim 15 alone will require construction of many claim terms.

Moreover, at least two of the patents, the `665 and `022, include several means-plus-function claim elements. Walker Decl., ¶ 4. 35 U.S.C. § 112, ¶ 6 requires that means-plus-function claims be analyzed using the two-step process of (i) determining the function that the claimed means performs, *Rodime PLC v. Seagate Tech., Inc*., 174 F.3d 1294, 1302 (Fed. Cir. 1999), and (ii) determining what structure, material, or acts disclosed in the specification, and

equivalents thereof, perform the function identified, *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus.*, 145 F.3d 1303, 1308 (Fed. Cir. 1998).

The number of claims Enterasys asserts clearly would render the claim construction process unduly burdensome for the Court as well as the parties. Enterasys well knows that it will never present 129 claims to a jury – an impractical and burdensome task. Indeed, in most patent cases a plaintiff will only try one or two claims per patent. *Fenster Family Patent Holdings*, 2005 WL 2304190, at *3 ("The Court finds that Fenster should be limited, at this juncture, to ten (10) claims and five (5) products asserted.") At this time where for months Enterasys has had Extreme's technical documents, it is appropriate for necessary and appropriate that narrow the number of claims to a reasonable subset. In the interest of judicial economy, the Court should not have to construe, and the parties should not have to analyze and brief, over 100 claims that will never be tried.

### D.  ENTERASYS' RATIONALE FOR REFUSING TO NARROW THE CLAIMS SHOULD BE REJECTED

Enterasys' sole basis for refusing to limit the number of asserted claims to a manageable number is that discovery is not complete. Walker Decl., ¶ 9. Enterasys insists that Extreme must serve its invalidity contentions and noninfringement contentions on all 129 claims so that Enterasys may assess the strengths and weaknesses of its case and select the best claims to try. *Id*. But the time for Enterasys to assess the strengths and weaknesses of its case is long overdue – indeed, it obligations under Rule 11 should have assured this analysis has been done.

During the meet and confer conferences, Enterasys rejected Extreme's request to limit the number of asserted claims to 2-3 claims per patent with the right to substitute until late April 2007 after receiving Extreme's invalidity and noninfringement contentions, a limited number of claims. *Id*. Enterasys instead proposed to limit the number of asserted claims to a total of 30 claims with the right to add up to three dependent claims per patent (a total of 18 potentially new claims) after reviewing the defendants' invalidity and noninfringement contentions. *Id*. Enterasys would not commit to a date when it would identify with finality the claims it truly

intends to try. *Id*. Thus, Enterasys' proposal, which represents a moving target with respect to which claims are at issue, is simply a disguised "wait and see" approach. Under Enterasys' proposal, Extreme would perform time-consuming and expensive invalidity and noninfringement analysis, only to later have Enterasys replace those claims with other claims. The following table lists the number of independent claims per patent:

| Patent No. | Number of Independent Claims |
|---|---|
| 6,560,236 | 5 |
| 6,147,995 | 2 |
| 6,128,665 | 4 |
| 6,539,022 | 4 |
| 5,390,173 | 8 |
| 5,251,205 | 5 |
| **Total** | **28** |

*Id*.

Enterasys' argument that discovery is not yet complete provides no excuse for delay. The Fenster court rejected a similar contention from the patentee, who argued that "full discovery" should precede any narrowing. *See supra* at *3. Enterasys has had months of discovery and has received hundreds of thousands of pages of core technical documents, including technical and user manuals and other documentation on the structure, function and operation of the accused products. Walker Decl., ¶ 10. Enterasys is aware, moreover, of Extreme's prior art, which was identified in initial, and later supplemental, responses to Enterasys' Interrogatory No. 11. *Id*. Enterasys, as plaintiff, clearly has had the time and resources to assess the strengths and weaknesses of the 129 asserted claims and make a decision as to which claims it truly intends to pursue at trial. Indeed, as noted above, Enterasys has engaged six technical expert witnesses and has access to the 16 different inventors in this case. *Id*. at 5. Ongoing discovery is no excuse for Enterasys' refusal to reduce its claims now.

IV.   **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(2) AND RULE 37.1**

Extreme hereby certifies that it has conferred and has attempted in good faith to resolve or narrow the issue, but that after at least two meet and confers and exchange of correspondence, Enterasys has refused to limit the number of asserted claims to a reasonable number, as discussed above.

V.   **CONCLUSION**

The Court soon will receive hundreds of pages of claim construction briefs exploring the claims Enterasys has brought. The purpose of this motion is to apply—at the best time to do so—common sense and realism to the case and make it manageable for the Court, the parties, and ultimately, the jury. Extreme suggests that it cannot be realistic to maintain, as Enterasys does, that the Court should construe the terms of 129 claims, and therefore the intervention of the Court is warranted. Extreme further suggests that common sense dictates that the number of claims, and therefore terms, be reduced to a reasonable number now, to focus discovery, streamline construction, and allow the case to move forward to a more speedy conclusion.

For all of the foregoing reasons, defendant Extreme respectfully moves that the Court enter the following Order that plaintiff Enterasys select three or fewer claims per patent by a date set by the Court.

Dated: March 30, 2007                                   EXTREME NETWORKS, INC.


　/s/ Emily Smith-Lee　　　
Emily Smith-Lee, Esq. BBO No. 634223
MCDERMOTT, WILL & EMERY LLP
28 State Street
Boston, Massachusetts  02109-1775
Tel. (617) 535-4000