IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| ENTERASYS NETWORKS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 05-11298 (DPW) |
| v. | ) |
| | ) |
| FOUNDRY NETWORKS, INC.; and | ) |
| EXTREME NETWORKS, INC., | ) |
| | ) |
| Defendants. | ) |

**RESPONSE AND OPPOSITION OF ENTERASYS NETWORKS, INC. TO DEFENDANT EXTREME NETWORKS, INC.'S EXPEDITED MOTION TO REDUCE TO A MANAGEABLE NUMBER THE CLAIMS AT ISSUE IN THIS CASE**

Plaintiff Enterasys Networks, Inc. ("Enterasys"), hereby responds to and opposes Defendant Extreme Networks, Inc.'s ("Extreme's") Expedited Motion to Reduce to a Manageable Number the Claims at Issue in this Case. Enterasys has already proposed such a reduction. Extreme unreasonably rejected that proposal. Nonetheless, even in the absence of agreement by Extreme, Enterasys has now gone ahead and reduced the number of asserted claims from 126 to 30 while reserving the right to assert three additional dependent claims per patent by April 30, 2007, when Extreme finally will have properly responded to discovery requests that are long overdue. Extreme's demand that Enterasys irrevocably surrender all but 2-3 claims per patent – when Extreme has been outright refusing for the past ten months to disclose its invalidity positions in response to Enterasys' discovery requests and has waited more than a year to produce critical technical documents – is unreasonable under the circumstances and should be rejected by this Court.

## **FACTUAL AND PROCEDURAL BACKGROUND**

On March 6, 2007, counsel for Enterasys and counsel for Extreme met and conferred on the issue of when and to what extent Enterasys would limit the number of patent claims it would ultimately assert at the trial of this matter. (Butler Decl., ¶ 2).[1] Prior to this meet and confer, Enterasys had indicated to Extreme during unrelated discussions that Enterasys planned to reduce the number of asserted claims upon receipt and review of Extreme's invalidity contentions. (*Id.*). Nonetheless, in this March 6, 2007, telephone conference, Enterasys offered to – within a week – drop all but 30 of the 126 asserted claims of the patents-in-suit with the right to reinstate no more than three dependent claims per patent after Extreme finally serves its invalidity contentions. (*Id.*). This offer was reiterated in a letter from Enterasys' counsel the following day. *See* Letter from Marc N. Henschke (counsel for Enterasys) to Steven L. Walker (counsel for Extreme), dated March 7, 2007, and attached hereto as Exhibit 1 to the Butler Decl.

More than two weeks passed without any response from Extreme's counsel. (Butler Decl., ¶ 3). Finally, in a letter on March 22, 2007, counsel for Extreme inquired of counsel for Enterasys "whether and when Plaintiff will notify Extreme of its more narrowly selected claims." *See* Letter from Firasat M. Ali (counsel for Extreme) to Marc N. Henschke, dated March 22, 2007, and attached as Exhibit 2 to the Butler Decl. Although Extreme's letter indicated that it "disagree[d] with" the aspect of Enterasys' proposal that permitted it to add up to three claims per patent after Extreme served its invalidity contentions, the letter did not indicate whether the proposal was ultimately acceptable or unacceptable to Extreme. Enterasys responded by asking Extreme to clarify its position and offering to discuss the matter further via telephone conference. *See* Letter from Alan E. McKenna (counsel for Enterasys) to Firasat M. Ali, dated

---

[1] As used herein, the term "Butler Decl." is a reference to the Declaration Of Marla R. Butler In Response And Opposition To Defendant Extreme Networks, Inc.'s Expedited Motion To Reduce To A Manageable Number The Claims At Issue In This Case, filed concurrently herewith under separate cover.

March 23, 2007, and attached as Exhibit 3 to the Butler Decl. That further discussion took place on March 27, 2007. (Butler Decl., ¶ 4). Extreme then presented an ultimatum: unless Enterasys irrevocably and immediately limited its asserted claims to 2-3 claims per patent (without knowing Extreme's invalidity positions), Extreme would file a motion asking this Court to force Enterasys to do so. (*Id.*).

On March 30, 2007, Extreme filed the instant motion, complaining that it needed this Court to decide its motion "on an expedited basis in light of fast approaching deadlines for Extreme to serve its patent invalidity and noninfringement contentions with respect to the 129 asserted claims . . ." *See* Defendant Extreme's Expedited Motion to Reduce to a Manageable Number the Patent Claims at Issue in this Case, ¶ 4. Extreme's assertion that "Enterasys' proposal imposes an undue burden and expense on Extreme and the Court," and its assertion related to the purported urgency of its motion, are disingenuous and should be rejected by this Court.

Enterasys' proposal imposes no undue burden on this Court or the parties, as evidenced by a review of the 30 claims identified by Enterasys. *See* Letter from Marc N. Henschke to Steven L. Walker, dated April 4, 2007, and attached as Exhibit 4 to the Butler Decl. In this letter, Enterasys identifies the following claims which it will assert in this litigation (and reserves the right to add up to three claims per patent by April 30, 2007):

    U.S. Patent No. 6,539,022: 1, 3, 5, 6, 12, 20 (claims set forth in Butler Decl., Exhibit 5)

    U.S. Patent No. 5,390,173: 1, 3, 5 (claims set forth in Butler Decl., Exhibit 6)

    U.S. Patent No. 5,251,205: 1, 3, 5, 7, 18, 21 (claims set forth in Butler Decl., Exhibit 7)

    U.S. Patent No. 6,560,236: 1, 2, 6, 8 (claims set forth in Butler Decl., Exhibit 8)

    U.S. Patent No. 6,128,665: 1, 4, 5, 6, 7 (claims set forth in Butler Decl., Exhibit 9)

>U.S. Patent No. 6,147,995:  1, 14, 19, 25, 32, 33 (claims set forth in Butler Decl., Exhibit 10).

Of these 30 asserted claims, more than half (16) are dependent claims, which means they share all of the elements of the asserted independent claims from which they stem, and simply add one or more elements.  *See* 35 U.S.C. § 112, ¶4.  Moreover, many of the claims are "parallel" claims and, therefore, share nearly identical language.  For example, claim 1 of the '022 patent claims a network bridge having certain features.  Claim 6 of the '022 patent claims a method of using a network device with the identical features as the network bridge of claim 1.  By way of further example, claim 1 of the '665 patent claims a port-based default VLAN with certain features.  Claim 4 of the '665 patent claims a method of operating a port-based based VLAN having the identical features of the VLAN of claim 1.  Finally, those asserted claims that are not "parallel," while different in scope, are significantly overlapping with respect to terms that will already need to be construed by this Court.  The net result of these factors is that litigation and trial on these claims will not result in a significant burden for the Court, for the jury, or for the parties.  Extreme's assertions to the contrary are untrue.[2]

In addition, the purported urgency of Extreme's motion is belied by the timing of its communications related to this issue.  Enterasys served its infringement contentions on 126 claims on November 30, 2006.  When these contentions were served, Extreme's invalidity

---

[2] Extreme's purported concern about burdening this Court, the jury and the parties is belied by its unwillingness to identify representative products for purposes of simplifying the infringement case that will be presented to the jury.  In a letter dated August 2, 2006 (Exhibit 11 to Butler Decl.), counsel for Enterasys proposed that this case would be significantly streamlined if the Defendants were willing to stipulate to categorization of its products so that infringement evidence could be directed to representative products corresponding to each category.  Two and a half months later, Extreme rejected that proposal.  *See* Letter from Extreme's counsel, dated October 12, 2006 (Exhibit 12 to Butler Decl.).  In February 2007, four months after rejecting the proposal and after additional urging by Enterasys, Extreme indicated in a telephone conference that it might now consider Enterasys' proposal.  (Butler Decl., ¶ 5).  However, despite the fact that Extreme has the best knowledge of how its products work, Extreme indicated that it would not identify what those representative products should be; rather, Extreme insisted that Enterasys must attempt to identify the representative products.  (*Id.*).  These uncooperative positions taken by Extreme hardly demonstrates a concern for efficiency.

contentions were due January 16, 2007, per the Scheduling Order then in effect. On December 11, 2006, after receipt of Enterasys' infringement contentions, Extreme sought – and was granted – a three month extension to serve its invalidity contentions. Those contentions are now due April 16, 2007. Extreme did not, at the time it sought this extension, request that Enterasys narrow the number of asserted claims. Instead, Extreme enjoyed the benefit of this extension, only to raise this issue a few weeks before its invalidity contentions are due, allowing more than two weeks pass before responding to a reasonable proposal by Enterasys, and then summarily rejecting that proposal in favor of filing the instant motion with the Court. There is no urgency to Extreme's motion. Rather, the motion represents a tactical maneuver designed to (1) strategically disadvantage Enterasys by forcing it to drop additional claims on an uninformed basis; (2) back door its way into another delay before serving its long-awaited invalidity contentions; and/or (3) subject Enterasys to the ire of this Court based on mischaracterizations and exaggerations of the current situation.

## ARGUMENT

**I.    Extreme's demand that Enterasys arbitrarily and permanently relinquish its patent rights should be rejected.**

The right conferred by the patent grant is, of course, a property right. In the language of the patent statute and of the grant itself, it is "the right to exclude others from making, using, offering for sale, or selling" the patented invention. *See* 35 U.S.C. § 154. Each individual claim of a patent is to be treated as a separate invention for purposes of validity and infringement. Therefore, each individual claim is, itself, a distinct property right. When an infringer does not respect such rights, litigation is typically the patentee's only recourse. Arbitrarily limiting the number of claims that a patent holder may assert, as Extreme suggests, could effectively eliminate Enterasys' statutory property right without any process, let alone due process. *See* U.S.

5

Const. Amend. V. *See also Societe Internationale Pour Participations Industrielles at Commerciales, S.A. v. Rogers*, 357 U.S. 197, 209 (1958) (noting that "there are constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause"). As discussed fully below, Enterasys must be permitted the opportunity to relinquish its property rights as they relate to Extreme only on a voluntary and informed basis. Enterasys' proposal allows it to do so.

II.     **Enterasys' proposal is reasonable in light of the circumstances and should be adopted by this Court.**

Enterasys' proposal, summarily rejected by Extreme, is the most reasonable proposal under these circumstances. The Court has before it two competing views regarding the extent to which Enterasys should be forced to irrevocably surrender its patent claims before knowing what invalidity contentions will be levied against them. Extreme demands that Enterasys irrevocably surrender all but 2-3 claims per patent, even though Extreme has failed to provide substantive responses – due long ago – to discovery requests that bear directly on Enterasys' strategic decision as to which claims it will ultimately assert. Enterasys, on the other hand, has offered to limit its asserted claims to 30, which is an average of 5 claims per patent – a number that Extreme has already represented to this Court is acceptable. *See* Section II.A, *infra*. Enterasys has reserved the right to assert additional claims (no more than 3 per patent) after Extreme has complied with its long overdue discovery obligations.

The gist of Enterasys' argument is simple: Enterasys should be permitted to select those claims – on an *informed* basis – that are its strongest claims in light of the evidence in this case. Enterasys owns the 6 patents-in-suit – all of which are presumed to be valid and properly issued by the United States Patent and Trademark Office. *See* 35 U.S.C. § 282. To prove infringement

6

by Extreme at trial (which carries a different burden than that presented by Enterasys' Rule 11 analysis), Enterasys will have to rely on highly technical documents that detail the inner workings of Extreme's products. Despite discovery requests propounded over a year ago, Extreme has failed to produce many of these critical documents. *See* Section II.B.1, *infra*. In addition, Extreme is challenging the validity of the claims of the patents-in-suit. Enterasys should be permitted to present to a jury those claims which are most likely to be sustained in the face of Extreme's attacks on their validity. Because Extreme has steadfastly refused to properly respond to an interrogatory propounded *ten months ago* directed to this very issue, Enterasys has no basis of knowing at this time what those attacks will be. *See* Section II.B.2, *infra*.

    A.    **Extreme already indicated – in the November 3, 2005, Scheduling Conference – that a limitation of five claims per patent is acceptable.**

In its brief, Extreme has reminded this Court – and now looks to take advantage – of the Court's statement at the November 3, 2005, hearing that "[i]t won't be a happy day for all of us" if Enterasys does not reasonably limit its claims. Enterasys offered to reasonably limit its claims, and Extreme rejected that offer. However, Extreme ignores those portions of the transcript in which it previously represented that five claims per patent – which is the per-patent average of the 30 total claims Enterasys is asserting at this point – is acceptable to Extreme. During that hearing, the following exchange took place:

> MS. ELSON [counsel for Extreme]: In my experience, we just did a trial in Denver where *we, as the plaintiff, voluntarily narrowed it to five claims per patent* well before a Markman. At that point where you've done enough discovery and you've seen the other side's documents, you've taken their engineer's deposition, you know you're pretty much down to *four or five claims per patent* which are your best claims. Judge Alsop in the Northern District limits plaintiffs to two claims per patent, sometimes four. But he outright limits that.
>
> THE COURT: Well –
>
> MS. ELSON: And what that saves is the –

>THE COURT:  -- for a variety of reasons, this is not San Francisco.
>
>MS. ELSON:  I understand, Your Honor. I'm just saying that what that saves the defendants is having to do all the discovery and the validity discovery on covering 125 claims because that is so unwieldy and expensive for our clients. And for trial, I would suspect they won't even take four claims per patent to trial. That is also unwieldy. We took ultimately one claim per patent to trial. *So, they have a range. And we can make it five.* But they have a range of claims that they can choose from for trial.

November 3, 2005, Hearing Transcript, p. 16, line 23 – p. 17, line 21 (emphasis added). So Extreme has already represented that five claims per patent (which is 30 claims total) is acceptable. Extreme has provided no explanation as to why this number is no longer acceptable.

### B. Enterasys should be permitted to make a final determination of the claims it will assert on an *informed* basis.

Enterasys should be permitted to factor into its final determination of asserted claims both the relevant technical information and Extreme's invalidity positions that Extreme has failed to fully and timely provide. Therefore, Enterasys should be allowed to add up to three dependent claims per patent after Extreme provides this long overdue information.

#### 1. Extreme has failed to produce critical technical documents.

On May 19, 2006, Enterasys served its First Set of Interrogatories to Defendant Extreme Networks, Inc. ("Enterasys' First Interrogatories to Extreme"), attached hereto as Exhibit 13 to the Butler Decl. In Interrogatory No. 6 of Enterasys' First Interrogatories to Extreme, Enterasys asked Extreme to identify the chipsets contained in the accused products. This chipset information is essential because much of the infringing functionality in the accused Extreme products is carried out by the chipsets in these accused products. Extreme later responded by providing the names of the chipsets contained in many of the accused Extreme products. This

response revealed that approximately half of the accused products contain the Inferno or Triumph chipset.[3]

Two and a half months earlier, on March 3, 2006, Enterasys had served its First Set of Requests for the Production of Documents and Tangible Things to Defendant Extreme Networks, Inc. ("Enterasys' First Document Request to Extreme"), attached as Exhibit 14 to the Butler Decl. Enterasys' First Document Request to Extreme included more than 50 requests for technical documentation related to the accused Extreme products. However, even though chipset documentation is directly responsive to these requests, Extreme had not provided essential technical documentation related to the Inferno and Triumph chipsets. As recently as February 12, 2007, Enterasys has continued to request this documentation. *See* Letter from Marc N. Henschke to Firasat M. Ali, dated February 12, 2007, and attached as Exhibit 15 to the Butler Decl.

Without these technical documents regarding the Inferno and Triumph chipsets, Enterasys has been unable to learn the specific details of how approximately half of the accused Extreme products process packets for basic features such as VLANs (the '236, '665 and '995 patents), IGMP snooping (the '022 patent) and routing protocols (the '173 and '205 patents). These documents give hardware details for structure, show data flow, and illustrate details of how features described generally in Extreme's datasheets are actually carried out.

Initially, Extreme pointed Enterasys to a few documents which purportedly relate to the Inferno and Triumph chipsets. *See* Letter from Firasat Ali to Marc N. Henschke, dated March 1, 2007, and attached as Exhibit 16 to the Butler Decl. However, a review of these documents revealed that they are high level marketing and/or software specifications documents, some not

---

[3] Because information related to Extreme's chipsets was provided to Enterasys with a "Highly Confidential – Attorneys' Eyes Only" designation, Enterasys will not detail the product-chipset correlation in Extreme's products in this brief.

9

more than two pages long. The level of detail found in Extreme's production of documents related to *other* chipsets is strong evidence that detailed documents related to the Inferno and Triumph chipsets must in fact exist.

Within the past few weeks, Extreme recently served additional technical documents that Extreme has represented include the long-awaited documentation related to the Inferno and Triumph chipsets. Enterasys is reviewing these documents and – if Extreme's representations are accurate – Enterasys will be able to factor the content of these documents into a determination of additional claims to be asserted by April 30, 2007. However, until review of these recently produced documents is complete, Enterasys has no way to determine with any degree of certainty those claims that will be supported by the strongest documentary evidence at trial. Extreme should have provided this information a year ago. This failure should not result in a strategic advantage for Extreme and unfair prejudice to Enterasys.

    **2.**    **Extreme has failed to timely and properly respond to discovery requests directed to its invalidity positions.**

Enterasys' First Interrogatories to Extreme included the following interrogatory:

INTERROGATORY NO. 11:
    Identify each and every prior art reference upon which Extreme bases in whole or in part its affirmative defense of patent invalidity, and as for each prior art reference so identified:

(a)     state which claim(s) of the Enterasys Patents the prior art reference allegedly anticipates;

(b)     state which combinations of prior art references allegedly render obvious which claim(s) of the Enterasys Patents;

(c)     for each claim that a prior art reference allegedly anticipates, describe in detail on an element-by-element base [sic: basis] how the prior art reference anticipates the claim, including citations to specific column and line numbers of the prior art reference if applicable; and

  (d)  for each claim that a combination of prior art reference allegedly renders obvious, describe in detail on an element-by-element basis how the combination renders the claim obvious, including citations to specific column and line numbers of the prior art references if applicable, and a detailed description of where there is a teaching, suggestion, and/or motivation to combine the prior art references.

In response to this interrogatory, Extreme has provided a 60-page list citing over 500 unexplained prior art references that Extreme describes as "a full description of all information obtained by Extreme as a result of its investigation conducted to date which relates and/or may possibly relate to the validity and/or unenforceability of the Enterasys Patents." Defendant Extreme Networks, Inc.'s Responses to Plaintiff Enterasys Networks, Inc.'s First Set of Interrogatories, pp. 16-17, attached hereto as Exhibit 17 to the Butler Decl. In other words, Extreme has not revealed which – *if any* – of the more than 500 cited references it will contend anticipate or render obvious any claim of any of the patents-in-suit.

  Extreme's invalidity contentions, which Enterasys expects to be an element-by-element chart describing in detail how each element of each asserted claim is anticipated or rendered obvious by specific prior art references, are not due until April 16, 2007. However, Extreme's refusal to even indicate which references, if any, anticipate which claims of which patent(s), and which references (or combination thereof), if any, render which claims of which patent(s) obvious, is inexcusable. Extreme's response simply lists without explanation 500+ prior art references and informs Enterasys that these references somehow relate – "and/or *may possibly relate*" – to validity and/or enforceability issues in this case. Enterasys is thus the recipient of a classic "prior art dump" that reveals none of Extreme's positions with respect to its invalidity defense.

  As a result of Extreme's failure to properly respond to this interrogatory, Enterasys has been left in the dark with respect to which claims of the patents-in-suit will be most susceptible

to a validity attack at trial.  It is apparent at this point that no substantive information responsive to Interrogatory No. 11 will be provided until April 16, 2007, when Extreme serves its invalidity contentions.  Enterasys should be permitted to make a strategic decision as to which claims it will ultimately assert at trial based on this long overdue information.  Again, Extreme's failure to timely and properly respond to discovery requests should not result in a strategic advantage for Extreme and unfair prejudice to Enterasys.

    **C.**    **Acceptance by this Court of Enterasys' proposal will not create a burden for the Court or the parties with respect to claim construction and will promote the interests of judicial economy.**

The 30 claims identified by Enterasys do not present an overwhelming number of claims to be construed by this Court.  Moreover, if Enterasys adds a few additional dependent claims by April 30, 2007, the added claims will not significantly impact that claim construction process.

As set forth in Section I, *supra*, more than half of the 30 identified claims are dependent claims.  In particular, 14 of the claims are independent claims and 16 are dependent claims.  The 16 dependent claims do not present a significant number of claim terms to be construed because they share many of the same claim terms as the independent claims from which they stem.  Moreover, as also noted above, and as can be gleaned from a review of the 30 asserted claims, some asserted claims are "parallel" to other asserted claims.  Each of these parallel claims shares most, if not all, of the same claim terms as its counterpart.  Therefore, the same claim terms will need to be construed, for example, for claims 1 and 6 of the '022 patent; for claims 1 and 4 of the '665 patent; for claims 5 and 7 of the '665 patent; for claims 1 and 25 of the '995 patent; and for claims 14 and 32 of the '995 patent.

In addition, because Enterasys has reserved the right to assert up to 3 *dependent* claims from each patent, the addition of such claims will not present a significant number of terms to be

12

construed. Dependent claims, by definition, share the elements of the independent claims from which they depend. Therefore, if any additional claim terms needing construction arise from added dependent claims, those claim terms will be few in number.

Finally, arbitrarily limiting a plaintiff to very few claims simply encourages the filing of more lawsuits. In this case, Enterasys has asserted six separate patents against Extreme because it has strong evidence that Extreme is infringing each of these six patents. Enterasys chose to assert all six patents in a single case because there is a complete overlap in the products infringing each of these six patents and, as a result, a significant overlap in discovery. Therefore, the interests of judicial economy warranted such an approach. Arbitrarily forcing plaintiffs to limit the number of claims that can be asserted in a single lawsuit will motivate plaintiffs to file a separate lawsuit for each infringed patent, even though there may be significant overlap in discovery for each of those lawsuits. Such an approach would be inefficient and would unnecessarily clog courts' dockets. In this case, Enterasys' proposal is consistent with principles of judicial economy.

### D. The case law cited by Extreme does not support its demand that Enterasys be limited to 2-3 claims per patent.

Extreme has cited two district court cases to support its request that this Court limit Enterasys to 2-3 claims per patent: *Fenster Family Patent Holdings, Inc. v. Siemens Medical Solutions USA, Inc.*, 2005 WL 2304190 (D. Del.), and *Auto Wax Co., Inc. v. Mark V Products, Inc.*, 2001 WL 300554 (N.D. Tex.). The *Fenster* case is distinguishable on its facts. The *Auto Wax* case supports the reasonableness of Enterasys' proposal and weighs against this Court granting Extreme's motion.

In *Fenster*, the plaintiff identified 90 patent claims five weeks before the close of discovery. The case is distinguishable on that fact alone. No discovery cut off has been set in

this case. Discovery in this matter will continue through the *Markman* hearing (scheduled to take place in September 2007). Therefore, Extreme has many months to conduct appropriate discovery related to the narrowed claims identified by Enterasys.

In the *Auto Wax* case, the plaintiff was allowed to assert *19* claims from the *single* patent-in-suit. The defendant's request that the plaintiff be limited to 5 claims from that single patent was rejected by the court. In support of its order allowing the 19 claims, the court noted that there was "considerable overlap in the specific limitations contained in the 19 claims and … considerable overlap in the types of proof that will be necessary to establish infringement under the 19 claims." *Auto Wax*, 2001 WL 300554 at *1. Such is the case here. As explained above, there is considerable overlap in the limitations of the asserted claims. Where the Northern District of Texas permitted the plaintiff to assert 19 claims from one patent, Enterasys' proposal of 30 claims from 6 patents (an average of 5 claims from each patent) – with the option of asserting additional dependent claims upon compliance by Extreme with its outstanding discovery obligations – is very reasonable. The *Auto Wax* case supports denial of Extreme's motion.

## CONCLUSION

For all of the reasons set forth above, Enterasys respectfully requests that Extreme's motion be DENIED in its entirety.

        Respectfully submitted,

        ENTERASYS NETWORKS, INC.

        By its attorneys,

        Christopher P. Sullivan, Esq. (BBO No.485120)
        Marc N. Henschke, Esq. (BBO No. 636146)
        Alan E. McKenna (BBO No. 644556)
        ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
        800 Boylston Street, 25th Floor
        Boston, MA 02199
        Tel. (617) 267-2300

        /s/ Marla R. Butler
        A. James Anderson, Esq. (*pro hac vice*)
        Marla R. Butler, Esq. (*pro hac vice*)
        ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
        2600 One Atlanta Plaza
        Atlanta, GA 30326-1386
        Tel. (404) 760-4300

Of Counsel:

Robert A. Auchter, Esq. (*pro hac vice*)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
1875 Eye Street, N.W., Suite 300
Washington, DC 20006
Tel. (202) 775-0725

Dated: April 9, 2007

AT1:30054481

## **CERTIFICATE OF SERVICE**

I, Marc N. Henschke, hereby certify that on April 9, 2007, I caused a true and correct copy of the attached *Response And Opposition Of Enterasys Networks, Inc. To Defendant Extreme Networks, Inc.'s Expedited Motion To Reduce To A Manageable Number The Claims At Issue In This Case* to be served electronically pursuant to the Court's CM/ECF electronic filing system upon Defendants' respective counsel of record set forth below:

**Counsel for Defendant Foundry Networks, Inc.**

William L. Anthony, Jr., Esq.
I. Neel Chatterjee, Esq.
Sanjeet K. Dutta, Esq.
Raymis H. Kim, Esq.
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025

Steven M. Bauer, Esq.
Jeremy P. Oczek, Esq.
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110-2600

**Counsel for Defendant Extreme Networks, Inc.**

Terrence P. McMahon, Esq.
Vera M. Elson, Esq.
MCDERMOTT, WILL & EMERY LLP
3150 Porter Drive
Palo Alto, CA  94303-1212

Peter L. Resnik, Esq.
Emily E. Smith-Lee, Esq.
MCDERMOTT, WILL & EMERY LLP
28 State Street
Boston, MA  02109-1775

Christopher D. Bright, Esq.
MCDERMOTT, WILL & EMERY LLP
18191 Von Karman Avenue, Suite 400
Irvine, CA  92612-7107

Dated:  April 9, 2007               /s/ Marc N. Henschke
                                    MARC N. HENSCHKE