**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

ENTERASYS NETWORKS, INC,

        Plaintiff,

    v.

FOUNDRY NETWORKS, INC. and
EXTREME NETWORKS, INC.,
        Defendants.

CIVIL ACTION NO. 05-CV-11298 (DPW)

**ASSENTED-TO MOTION FOR LEAVE TO FILE A REPLY BRIEF IN SUPPORT
OF FOUNDRY'S MOTION FOR EXTENSION OF DEADLINE RELATING TO
WAIVER OF ATTORNEY-CLIENT PRIVILEGE BECAUSE OF PENDING FEDERAL
CIRCUIT EN BANC CASE CONCERNING SCOPE OF WAIVER**

Defendant Foundry Networks, Inc. ("Foundry") respectfully files this assented-to motion

for leave to file a reply brief in support of its Motion for Extension of Deadline Relating to

Waiver of Attorney-Client Privilege Because of Pending Federal Circuit En Banc Case

Concerning Scope of Waiver (Docket 92). A copy of the Reply Foundry intends to file is

attached as Exhibit 1.

Counsel for Plaintiff Enterasys Networks, Inc. ("Enterasys") has assented to Foundry's

filing of this reply brief.

As grounds for this motion, a reply brief is necessary to address new issues raised in

Enterasys' Opposition, and to clarify the record for the Court.

WHEREFORE, Foundry respectfully requests that the Court grant this assented-to

motion to file a reply brief in support of its Motion for Extension of Deadline Relating to Waiver

of Attorney-Client Privilege Because of Pending Federal Circuit En Banc Case Concerning

Scope of Waiver.

Dated: May 9, 2007                                  Respectfully submitted,


                                                    /s/ Steven M. Bauer
                                                    Steven M. Bauer (BBO# 542531)
                                                    Jeremy P. Oczek (BBO# 647509)
                                                    John W. Pint (BBO# 660548)
                                                    PROSKAUER ROSE LLP
                                                    One International Place
                                                    Boston, MA 02110-2600
                                                    Telephone:  (617) 526-9600
                                                    Facsimile:  (617) 526-9899


                                                    William Anthony, Jr.*
                                                    I. Neel Chatterjee*
                                                    Fabio E. Marino*
                                                    Matthew H. Poppe*
                                                    Michael F. Heafey (BBO# 556931)
                                                    Sanjeet K. Dutta*
                                                    ORRICK, HERRINGTON & SUTCLIFFE LLP
                                                    1000 Marsh Road
                                                    Menlo Park, CA  94025
                                                    Telephone:  (650) 614-7400
                                                    Facsimile:  (650) 614-7401


                                                    * Admitted *Pro Hac Vice*

                                                    ATTORNEYS FOR DEFENDANT
                                                    FOUNDRY NETWORKS, INC.


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this document was filed through the ECF system on May 9, 2007 and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                                    /s/ Steven M. Bauer
                                                    Steven M. Bauer

EXHIBIT 1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ENTERASYS NETWORKS, INC, | |
| Plaintiff, | |
| v. | Civil Action No. 05-CV-11298 (DPW) |
| FOUNDRY NETWORKS, INC. and EXTREME NETWORKS, INC., Defendants. | |

## FOUNDRY NETWORKS, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR EXTENSION OF DEADLINE RELATING TO WAIVER OF ATTORNEY-CLIENT PRIVILEGE BECAUSE OF PENDING FEDERAL CIRCUIT EN BANC CASE CONCERNING SCOPE OF WAIVER

Defendant Foundry Networks, Inc. ("Foundry"), in accordance with Local Rule 7.1,[1] respectfully submits this reply brief in support of its Motion for Extension of Deadline Relating to Waiver of Attorney-Client Privilege Because of Pending Federal Circuit En Banc Case Concerning Scope of Waiver (Docket 92).

Foundry submits this reply brief to address new arguments made by plaintiff Enterasys Networks, Inc. ("Enterasys") in its opposition (Docket 95). Enterasys has assented to the filing of this reply.

---

[1]     Local Rule 7.1(b)(3) states: "All other papers not filed as indicated in subsections (b)(1) and (2), whether in the form of a reply brief or otherwise, may be submitted only with leave of court." This Court has allowed parties to file replies with leave of Court. *See, e.g.*, *Radford Trust v. First Unum Life Ins. Co. of America*, 399 F.Supp.2d 3 (D. Mass. 2005) (granting request for leave to file a response to an opposition brief) (Young, C.J.); *Murphy v. Ford Motor Co.*, 170 F.R.D. 82 (D. Mass. 1997) (granting motion for leave to file a reply brief) (Gorton, J.).

## I.    INTRODUCTION

Enterasys provides no good reason to deny Foundry's motion.  Extending the deadline for Foundry to decide whether to waive the privilege with respect to opinions of counsel it may have obtained will serve the beneficial purpose of preserving the privilege without harming Enterasys or the Court in any way.  Enterasys' opposition distorts the issues and mischaracterizes the likely impact of granting Foundry's motion in several significant ways:

1)    Foundry's motion is not predicated on an uncertain, hoped-for future change in the law.  Rather, the Federal Circuit has agreed to clarify with certainty the scope of the waiver of attorney-client privilege in the *Seagate* case.

2)    The scope of the privilege waiver is not analogous to the proper test for obviousness (or other substantive patent law issues).  Once privilege has been waived, the waiver cannot be revoked.  If the *Seagate* court adopts a broad waiver rule, Foundry will be stuck with the consequences if it has been forced to decide whether to produce opinions of counsel before the *Seagate* decision is announced.  By contrast, if a court conducts proceedings using an incorrect obviousness or other legal standard, those proceedings can be repeated later using the correct standard if there is an intervening change or clarification of law.  Thus, the two situations are fundamentally different.

3)    Since no trial date has been set, extending the deadline will not jeopardize Enterasys' ability to prepare for trial in this case.  Enterasys has not shown how opinions of Foundry's counsel could possibly affect other aspects of ongoing discovery or claim construction proceedings.  The technical documents and prior art underlying any opinion Foundry may rely upon have already been produced to Enterasys, so Enterasys has the full ability to evaluate and test Foundry's non-infringement and invalidity positions.

4)      Granting Foundry's motion will not delay trial or other proceedings.  If the *Seagate* case takes too long to resolve, the Court can modify its order at any time to require that Foundry decide whether to rely on opinions of counsel.  The mere possibility that the *Seagate* proceedings will not be quickly resolved does not justify arbitrarily requiring that Foundry waive privilege at this early date.

5)      Enterasys talks out of both sides of its mouth on the issue of whether the law on the scope of the privilege waiver is settled.  In one paragraph Enterasys suggests that the waiver would cover trial counsel communications, while in another paragraph Enterasys suggests the opposite.  If Enterasys truly believes that "Foundry exaggerates the decision-making dilemma it presently faces," then why won't Enterasys eliminate that dilemma altogether by stipulating to a narrow waiver of privilege if Foundry produces opinions of counsel?

For these reasons, Foundry's motion is well-founded and neither the parties nor the Court will be prejudiced or inconvenienced if Foundry's motion is granted.

## 1.      Granting Foundry's Motion Will Not Cause Any Undue Delay

In contrast to what Enterasys argues in its opposition, Foundry does not seek an indefinite extension of time based on a hoped-for, potential change in the law.  Rather, the *Seagate* court has already announced it will definitively set forth the scope of the waiver of privilege resulting from reliance on opinions of counsel, and a decision in that case can be expected to issue in a reasonable amount of time.

Enterasys forebodingly warns that "Foundry's proposed timeline . . . would leave the trial of this case in jeopardy."  Opp. at 8.  Enterasys conveniently omits that no trial date has been set for this case, and therefore, the "jeopardy" is vastly overstated.  As noted below, if the case proceeds to a point where trial is approaching and the *Seagate* case has not been finally resolved,

the Court can always revisit the question of when Foundry should have to decide about relying

on opinions of counsel. At the moment, however, there is no basis for concern that granting

Foundry's motion will delay or interfere with the trial date.

Furthermore, Enterasys exaggerates the amount of time it will take for the *Seagate* case

to be decided. First, Enterasys incorrectly states that a hearing date has not been set in *Seagate*.

In fact, the Federal Circuit has set a hearing date of June 7, 2007 — less than a month from now.

*See* Exhibit A. Based on the Federal Circuit's standard practice, an *en banc* decision should

issue just a few months after that, well before this case will approach the close of discovery,[2]

summary judgment proceedings, or trial. Enterasys argues that the Supreme Court may grant

certiorari, which allegedly could delay a final resolution of *Seagate* for years. However,

Enterasys ignores the possibility that the Supreme Court will decline to grant certiorari in

*Seagate*, just as it declined to grant certiorari in *In re EchoStar Communications Corp*. *See* 127

S. Ct. 846 (2006). In the unlikely event that certiorari is granted, this Court can revisit the issue

of whether Foundry may continue to defer its decision about whether to rely on opinions of

counsel. However, there is no reason to impose on Foundry the extreme burden of waiving the

attorney-client privilege based on a mere possibility that the Supreme Court will take the unusual

step of agreeing to review the *Seagate* decision.

---

[2]    Enterasys claims that granting Foundry's motion will preclude Enterasys from pursuing
willfulness discovery "until well after the end of Phase II discovery . . . ." Opp. at 7. However,
the Court has not established an end date for Phase II discovery (or Phase I discovery, for that
matter). Moreover, granting Foundry's motion would not stop Enterasys from pursuing other
discovery related to the issue of willful infringement. It would only delay the date on which
Enterasys would gain access to any opinions of counsel Foundry may have obtained (and which
Foundry may ultimately decide not to disclose at all).

2.    **Unlike Substantive Patent Law Issues, Attorney-Client Privilege Cannot Be Revisited Or Un-waived Retroactively**

Enterasys' opposition improperly argues that uncertainty surrounding the proper test for obviousness (or other substantive issues in patent cases) is equivalent to the uncertainty surrounding the scope of waiver of attorney-client privilege.[3]  However, the two situations are drastically different.  Conducting proceedings using the incorrect obviousness standard would not cause the parties to suffer irreparable harm.  At worst, doing so might entail some amount of waste if proceedings had to be repeated using the correct standard.  Indeed, the quote from the *Amesbury* case in Enterasys' opposition notes that the accused infringer's position in that case could only improve upon a change in the obviousness test if the Supreme Court lowered the bar for proving a patent obvious, which is exactly what happened in the *KSR* case.  *See* Opp. at 5; *KSR Int'l Co. v. Teleflex Inc.*, __ U.S. __, 2007 WL 1237837 (Apr. 30, 2007).

Here, however, Foundry's position might substantially deteriorate if the Federal Circuit decides that relying on opinions of counsel as part of a defense to willful infringement results in a broad waiver of privilege, including communications with trial counsel or communications relating to defenses not addressed by the opinions of counsel.  Moreover, unlike obviousness, once privilege has been waived over certain communications or opinions, the privilege cannot be

---

[3]    Although the Supreme Court decided *KSR International Co. v. Teleflex, Inc.* on April 30, 2007, which substantially changed the test for proving a patent is obvious, Enterasys' opposition relegates the case to a footnote and mischaracterizes the decision as a partial modification of the obviousness doctrine.  Indeed, as a result of the *KSR* case, courts are being asked to revisit the issue of obviousness to reassess whether a patent is obvious under the new test.  *See* Exhibit B (noting that the Court of Appeals for the Federal Circuit will address on appeal a validity finding of the district court, with possibility of a remand).  Courts that did not defer the question until the *KSR* decision was handed down are being asked to address the issue now.  Here, Foundry is seeking to save the parties and the Court time later by deferring the disclosure of opinions until the law is clear, so that the issue need not be revisited or the Court's docket cluttered with motions regarding the scope of discovery to which Enterasys is entitled under the appropriately-defined waiver.

un-waived.  Enterasys will not be able to un-see the privileged materials Foundry is required to produce.  Because of this uncertainty, Foundry is in a seemingly intractable predicament.  For at least this reason, Foundry should not be required to waive privilege until it knows more precisely what the scope of the waiver will be.

**3.  No Trial Date Has Been Set and There Is No Relationship Between Opinion Letters and Other Discovery, So Enterasys' Trial Preparation Would Not Jeopardized by an Order Granting Foundry's Motion**

Enterasys argues in its opposition that "a decision to grant Foundry's motion…would make it impossible for Enterasys to conduct or complete discovery within whatever time period the Court is likely to require here."  Opp. at 8.  However, Enterasys fails to explain why this would be true.  It relies solely on observations in several district court cases that infringement and willfulness issues are often intertwined — observations that apply to trial, not discovery, and with which other courts disagree.  Enterasys ignores all the discovery that has already occurred up until now, and it offers no facts to support its conclusory claim that extending the schedule would hinder its ability to "conduct or complete discovery."  Accordingly, Enterasys' argument should be rejected.

To the extent that Foundry has received any opinions, the documents and prior art underlying those opinions have already been produced to Enterasys.  In addition, Foundry has provided Enterasys with its non-infringement and invalidity contentions, and has completed or substantially completed its document production related to liability issues.  Thus, Enterasys is not inhibited from continuing discovery and preparation for trial based on facts underlying any opinions of counsel.  Enterasys fails to explain how a delay in receiving any Foundry opinions of counsel would actually interfere with its ability to pursue other discovery.

In arguing that a delay in the production of opinion letters will adversely affect its other discovery efforts, Enterasys relies solely on cursory statements that willfulness is intertwined

with issues of liability and damages.  As an initial matter, some courts disagree that those issues

are interrelated.  *See, e.g., AVIA Group Int'l, Inc. v. Nike, Inc.*, No. 91-326-JU, 1991 WL 340569,

*4 (D. Or. Sept. 17, 1991) ("willfulness is not relevant to the issue of liability"); *Read Corp. v.

Portec, Inc.*, 970 F.2d 816, 828 (Fed. Cir. 1992) ("Willfulness is a determination as to a state of

mind.").  In addition, the cases on which Enterasys relies all relate primarily to whether liability

and willfulness issues should be <u>tried</u> together, not to how discovery should be conducted.  *See,

e.g., Nitinol Med. Techs., Inc. v. AGA Med. Corp.*, 135 F. Supp. 2d 212, 216 (D. Mass. 2000)

(noting that "some courts" like to try liability and willfulness issues together).  They express a

concern that conducting separate trials on infringement and willfulness would require duplication

of witness testimony and other evidence.  *See, e.g, Keyes Fibre Co. v. Packaging Corp. of Am.*,

763 F. Supp. 374, 375 (N.D. Ill. 1991).  To the extent those cases address discovery, they only

address whether to stay willfulness discovery completely pending the completion of a trial on

liability issues.  *See id.*  Foundry is not asking for such a stay.  It only wants to delay having to

waive the privilege with respect to any opinions of counsel it may have obtained until after the

*Seagate* case is decided.  It would be premature for the Court to address trial bifurcation issues at

this time.[4]  In addition, none of the cases cited by Enterasys states that a plaintiff will be

---

[4]     Foundry may well seek a separate trial on willfulness issues at the appropriate time.  As Foundry discussed in its opening brief, several courts have adopted that approach.  *See* Opening Brf. at 7.  Those courts believe that any concern about duplication of evidence is far outweighed by the harm of requiring a defendant to waive the privilege with respect to its opinions of counsel regarding patents that may be found invalid or not infringed.  *See, e.g., AVIA Group Int'l, Inc. v. Nike, Inc.*, 1991 WL 340569, *3-*4 (D. Or. Sept. 17, 1991); *Plasmanet, Inc. v. Apax Partners, Inc.*, No. 02 Civ. 9290 BSJ THK, 2003 WL 21800981, *3 (S.D.N.Y. Aug. 5, 2003).  Indeed, the Federal Circuit itself has recommended bifurcation as a way to avoid imposing on a defendant the need to choose between preserving the attorney-client privilege and defending itself against a charge of willful infringement:

> Proper resolution of the dilemma of an accused infringer who must choose
> between the lawful assertion of the attorney-client privilege and avoidance of a
> willfulness finding if infringement is found, is of great importance not only to the

hindered in pursuing discovery on infringement issues if it is denied early access to the defendant's opinion letters. That proposition is simply untrue.

Enterasys does not dispute that ordering disclosure of Foundry's opinions of counsel now would lead to unnecessary disputes over the scope of the privilege waiver. Thus, requiring early disclosure would actually distract the parties away from focusing on liability issues and would create an additional burden on this Court. In addition, the Court's *Markman* order may influence Foundry's decision on whether to waive privilege over opinions of counsel because the Court's construction of the asserted claims may affect the reasonableness of the opinion and Foundry's reliance thereon.

For these reasons, granting Foundry's motion will not have an adverse impact on other discovery or trial preparation activities and will actually help the parties move the rest of the case forward and spare the Court from unnecessary and burdensome discovery disputes.

4.      **Foundry Has Not Overstated the Uncertainty in the Law or the Resulting Dilemma It Faces Regarding Whether to Disclose Opinions of Counsel and Waive Privilege**

Enterasys' final argument is that Foundry "exaggerates the uncertain state of the law relating to [the] scope of waiver of the privilege." Opp. at 6. Several facts show this is not true.

---

parties but to the fundamental values sought to be preserved by the attorney-client privilege. An accused infringer, therefore, should not, without the trial court's careful consideration, be forced to choose between waiving the privilege in order to protect itself from a willfulness finding, in which case it may risk prejudicing itself on the question of liability, and maintaining the privilege, in which case it may risk being found to be a willful infringer if liability is found. Trial courts thus should give serious consideration to a separate trial on willfulness whenever the particular attorney-client communications, once inspected by the court *in camera*, reveal that the defendant is indeed confronted with this dilemma. While our court has recognized that refusal of a separate trial will not require reversal in every case involving attorney client communications bearing on willfulness, we have suggested the advisability of separate trials in appropriate cases."

*Quantum Corp. v. Tandon Corp.*, 940 F.2d 642, 643-44 (Fed. Cir. 1991). However, there is no need to decide that issue at this time as the present motion raises a separate and distinct issue.

First, Enterasys acknowledges that at least one district court has held that disclosing opinions of counsel leads to a broad waiver of privilege that applies even to communications between the defendant and its trial counsel.  Opp. at 6; *Convolve, Inc. v. Compaq Computer Corp.*, 224 F.R.D. 98, 105 (S.D.N.Y. 2004).  Enterasys argues that there is no "serious cause for concern that the Federal Circuit is going to adopt this lone holding," Opp. at 6.  To the contrary, there also is no guarantee that the Federal Circuit will *not* adopt the *Convolve* court's position.  In fact, Enterasys *completely ignores* the procedural history of the *Seagate* case, which resulted from an appeal of the *Convolve* court's ruling by one of the defendants in that case on the scope of the waiver.  *See* Exhibit C at 1, n.1.  The fact that the lower court ruled in that manner creates a substantial risk that the Federal Circuit will follow suit in deciding the *Seagate/Convolve* appeal.

Second, the Federal Circuit would not have granted *en banc* review in *Seagate* if it did not believe that the scope of the privilege waiver was an important and unsettled issue requiring the attention of the full court.  *En banc* review is generally only permitted "to secure or maintain uniformity of the court's decisions" or where "the proceeding involves a question of exceptional importance."  Fed. R. App. P. 35; *see also* Fed. Cir. Rule 35.

Third, Enterasys' own brief refers to language in *In re Echostar Communications Corp.* in which the Federal Circuit stated that the waiver resulting from reliance on opinions of counsel applies to "any attorney-client communications relating to the same subject matter," 448 F.3d 1294, 1299 (Fed. Cir.), *cert. denied* 127 S. Ct. 846 (2006), which Enterasys has clearly cited for the purpose of suggesting that "any attorney-client communications" includes communications with trial counsel.  Thus, despite Enterasys' efforts to lull Foundry and the Court into believing that Foundry has no cause for concern, Enterasys clearly intends to argue for a broad waiver of

privilege should Foundry announce that it intends to rely on opinions of counsel as part of its defense against the charge of willful infringement.

Finally, at least one other court has recognized the burden to defendants of waiving privilege under when the scope of that waiver is unsettled. Chief Judge Walker of the United States District Court for the Northern of District of California recently issued an order almost identical to the order Foundry seeks here on strikingly similar facts. *See 3Com Corp. v. D-Link Sys., Inc.*, No. 03- 2177, slip op. (N.D. Cal. Apr. 27, 2007) (order granting extension of deadline for disclosing reliance on opinions of counsel to avoid a charge of willful infringement based on pending *Seagate* decision). A copy of the order is attached as Exhibit D. In *3Com*, the court held that:

> So long as the scope of privilege waiver and the scope of the statutory duty of care remain unknown, defendants should not be required to produce otherwise privileged information. This is particularly true where the Federal Circuit is expected to clarify the law on these issues in a matter of months.

*Id.* at 3.

It is, of course, within Enterasys' power to eliminate the uncertainty altogether. If it truly believes that the outcome of *Seagate* is preordained, then Enterasys should be willing to enter into a stipulation providing that, regardless of the outcome in *Seagate*, Foundry's production of and reliance upon opinions of counsel in this case will not constitute a waiver of privilege with respect to Foundry's communications with its trial counsel, and will not effect a waiver as to topics not expressly addressed in any disclosed opinions of counsel. If Enterasys refuses to enter into such a stipulation, that will prove the disingenuousness of its argument.

## <u>CONCLUSION</u>

For the foregoing reasons, Foundry respectfully requests that this Court grant Foundry's motion (Docket 92).

Dated: May __, 2007                        Respectfully submitted,

_____

Steven M. Bauer (BBO# 542531)
Jeremy P. Oczek (BBO# 647509)
John W. Pint (BBO# 660548)
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110-2600
Telephone:  (617) 526-9600
Facsimile:  (617) 526-9899

William Anthony, Jr.*
I. Neel Chatterjee*
Fabio E. Marino*
Matthew H. Poppe*
Michael F. Heafey (BBO# 556931)
Sanjeet K. Dutta*
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 614-7400
Facsimile:  (650) 614-7401

* Admitted *Pro Hac Vice*

ATTORNEYS FOR DEFENDANT
FOUNDRY NETWORKS, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this document was filed through the ECF system on May __, 2007 and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

_____

Steven M. Bauer

EXHIBIT A

Check Your Billing History    Change Client Code

# Case Details
## U.S. Court of Appeals for the Federal Circuit
### IN RE SEAGATE TECHNOLOGY
### 2006-M830
### Case documents are not available for download

### Click Here for **Listing of Briefs**
Click Here To **Search Again**

| Date | History |
|------|---------|
| 5/9/2007 | Due  GRAY 1 BRIEF. |
| 3/23/2007 | Appellant Principal Brief Filing Date |
| 4/25/2007 | Appellee or Cross Appellant Principal Brief Filing Date |
| / / | Appellant Reply Brief Filing Date |
| / / | Cross Appellant Reply Brief Filing Date |
| / / | Appendicies Filing Date |
| 6/7/2007 | Oral Argument Date / Calendared |
| / / | Disposition: ; by |
| / / | Mandated on |
| >> | *Please Note: The briefs above are only the most current.* << |

**- - - - -Notice to Users of PACER- - - - -**

---     **Entry Numbers** may be different due to upgrades made recently to the case management system.

---     >> **Please Note: Motions & Actions Filed are listed first. Entries are listed last.**<<

3/22/2007     **MOTION:** Entry 43 :by Other - Motion of American Intellectual Property Law Association for Leave to File Amicus Curiae Brief. **SERVICE :** by on 12:00:00 AM

3/22/2007     **ACTION:** Entry 61 :Granted.

3/21/2007     **MOTION:** Entry 50 :by Other - Motion for leave to fiile brief of the American Bar Association as amicus curiae. (Amicus curiae brief submitted w/motion) **SERVICE :** by Mail on 3/21/2007

3/23/2007     **ACTION:** Entry 77 :Granted.

3/21/2007     **MOTION:** Entry 49 :by Other - Motion for leave to file amici curiae brief. **SERVICE :** by Mail on 3/20/2007

3/23/2007     **ACTION:** Entry 84 :Granted.

3/21/2007     **MOTION:** Entry 48 :by Other - Motion for leave to file amici brief of Adobe Systems Incorporated, et al. **SERVICE :** by Mail on 3/21/2007

3/23/2007     **ACTION:** Entry 76 :Granted.

3/21/2007     **MOTION:** Entry 47 :by Other - Motion of Securities Industry and Financial Markets Association and The Financial Services Roundtable for leave to file brief as amici curiae. (Amici brief submitted w/motion) **SERVICE :** by Mail on 3/20/2007

    **ACTION:** Entry 81 :Granted.

3/23/2007

3/21/2007        **MOTION:** Entry 46 :by Other - Motion for leave to file a brief as amicus curiae. (Amicus curiae brief submitted w/motion) **SERVICE** : by Mail on 3/20/2007

3/23/2007        **ACTION:** Entry 75 :Granted.

3/21/2007        **MOTION:** Entry 45 :by Other - Motion for leave to file brief of behalf of Pharmaceutical Research and Manufactures of America as amicus curiae. (Amicus curiae brief submitted w/motion) **SERVICE** : by Mail on 3/21/2007

3/23/2007        **ACTION:** Entry 78 :Granted.

3/21/2007        **MOTION:** Entry 42 :by Other - Motion for leave to file amicus brief in support of petition for writ of mandamus. (briefs rec'd w/motion) **SERVICE** : by Mail on 3/21/2007

3/22/2007        **ACTION:** Entry 60 :Granted.

3/21/2007        **MOTION:** Entry 41 :by Other - Motion of Echostar Communications Corporation and BEA Systems, Inc. for Leave to File The Enclosed Brief of Amici Curiae. **SERVICE** : by Mail on 3/21/2007

3/22/2007        **ACTION:** Entry 59 :Granted.

3/21/2007        **MOTION:** Entry 38 :by Other - Motion by Biotechnology Industry Organization for Leave to File Amicus Curiae Brief in Support Petitioner [briefs received with motion] **SERVICE** : by Not on 3/21/2007

3/22/2007        **ACTION:** Entry 56 :Granted.

3/20/2007        **MOTION:** Entry 53 :by Other - Motion for leave to file brief amicus curiae of the Philadelphia Intellectual Property Law Association. (Amicus curiae brief submitted w/motion) **SERVICE** : by Mail on 3/19/2007

3/23/2007        **ACTION:** Entry 80 :Granted.

3/20/2007        **MOTION:** Entry 51 :by Other - Motion for leave to file amicus curiae brief. (brief rec'd w/motion) **SERVICE** : by Mail on 3/19/2007

3/23/2007        **ACTION:** Entry 83 :Granted.

3/20/2007        **MOTION:** Entry 44 :by Other - Motion for leave to file brief amicus curiae. (briefs rec'd w/motion) **SERVICE** : by Mail on 3/19/2007

3/22/2007        **ACTION:** Entry 62 :Granted.

3/20/2007        **MOTION:** Entry 40 :by Other - Motion for leave to file amicus curiae brief in support of neither party. (brief rec'd w/motion) **SERVICE** : by Mail on 3/19/2007

3/22/2007        **ACTION:** Entry 58 :Granted.

3/19/2007        **MOTION:** Entry 52 :by Other - Motion for leave to file amicus brief in support of neither party. (briefs rec'd w/motion) **SERVICE** : by Mail on 3/19/2007

3/23/2007        **ACTION:** Entry 82 :Granted.

| | |
|---|---|
| 3/19/2007 | **MOTION:** Entry 39 :by Other - Motion for leave to file amicus curiae brief. **SERVICE :** by Mail on 3/19/2007 |
| 3/22/2007 | **ACTION:** Entry 57 :Granted. |
| 3/19/2007 | **MOTION:** Entry 37 :by Other - Motion for leave to file amicus curiae brief in support of neither party and in support of reversal. **SERVICE :** by Mail on 3/19/2007 |
| 3/22/2007 | **ACTION:** Entry 55 :Granted. |
| 3/19/2007 | **MOTION:** Entry 36 :by Other - Motion for leave to file EnBanc brief amicus curiae in support of neither party. (brief rec'd/w motion) **SERVICE :** by Mail on 3/19/2007 |
| 3/22/2007 | **ACTION:** Entry 54 :Granted. |
| 3/16/2007 | **MOTION:** Entry 32 :by Other - Motion for leave to file Amicus Curiae brief in support of neither party. **SERVICE :** by Mail on 3/16/2007 |
| 3/21/2007 | **ACTION:** Entry 35 :Granted. |
| 3/16/2007 | **MOTION:** Entry 31 :by Other - Motion for leave to file brief Amici Curiae in support of petitioner. (brief rec'd w/motion) **SERVICE :** by Mail on 3/16/2007 |
| 3/21/2007 | **ACTION:** Entry 33 :Granted. |
| 3/16/2007 | **MOTION:** Entry 30 :by Other - Motion for leave to file Amicus Curiae brief in support of Petitioner in support of reversal. (Briefs rec'd w/motion) **SERVICE :** by Mail on 3/14/2007 |
| 3/21/2007 | **ACTION:** Entry 34 :Granted. |
| 2/1/2007 | **MOTION:** Entry 24 :by Petitioner - Motion for extension of time to file principal briefs (requesting a 14 day extension of time for all brief due dates listed in the order of 1/26/07). **SERVICE :** by Mail on 2/1/2007 |
| 2/5/2007 | **ACTION:** Entry 25 :Motion granted. The blue brief is due 3/12/07. |
| 10/23/2006 | **MOTION:** Entry 12 :by Petitioner - Motion for leave to file reply brief re. writ of mandamus. **SERVICE :** by Mail on 10/23/2006 **REPLY 1:** 11/3/2006 , Entry # 15 |
| 1/26/2007 | **ACTION:** Entry 20 :Denied as moot. |
| 10/17/2006 | **MOTION:** Entry 9 :by Respondent - Motion to vacate a stay order obtained by Seagate Technology. **SERVICE :** by Fax on 10/16/2006 **REPLY 1:** 10/23/2006 , Entry # 11 **REPLY 2:** 11/3/2006 , Entry # 14 |
| 1/26/2007 | **ACTION:** Entry 19 :Denied. |
| 10/13/2006 | **MOTION:** Entry 8 :by Other - Motion for leave to file brief as amicus curiae. (brief rec'd w/motion) **SERVICE :** by Mail on 10/13/2006 **REPLY 1:** 10/30/2006 , Entry # 13 |
| 1/26/2007 | **ACTION:** Entry 18 :Denied as moot. |
| 9/29/2006 | **MOTION:** Entry 3 :by Petitioner - Petitioner Seagate Technology LLC's Motion for Stay of Discovery Orders compelling disclosure of privileged communications of trial counsel pending |

resolution of Seagate's Petition for Writ of Mandamus. **SERVICE :** by Mail on 9/29/2006

9/29/2006      **ACTION:** Entry 22 :Granted.

9/29/2006      **MOTION:** Entry 2 :by Petitioner - Seagate Technology LLC's Petition for Writ of Mandamus to Vacate Discovery Orders compelling disclosure of privileged Communications of Trial Counsel.
**SERVICE :** by Mail on 9/29/2006
**REPLY 1:** 10/17/2006 , Entry # 10
**REPLY 2:** 11/7/2006 , Entry # 16

**>> Entries for Case Number: 2006-M830 <<**

**Entry 133 :**    4/25/2007 :  Certificate of Interest for amicus Intellectual Property Owners, Inc. d/b/a Intellectual Property Owners Association.
**SERVICE :** by Hand on 4/25/2007

**Entry 132 :**    4/24/2007 :  Certificate of interest for amici curiae Avery Dennison Corp. and BrainLab AG.
**SERVICE :** by Mail on 4/23/2007

**Entry 131 :**    4/24/2007 :  Certificate of interest for amicus curiae Association of the Bar of the City of New York.

**Entry 130 :**    4/23/2007 :  Certificate of interest for amicus curiae Washington State Patent Law Assoc.
**SERVICE :** by Mail on 4/20/2007

**Entry 129 :**    4/23/2007 :  Certificate of interest for amicus curiae Bar Association of the District of Columbia-Patent, Trademark & Copyright Section.

**Entry 128 :**    4/23/2007 :  Letter from counsel for amicus Securities Industry and Financial Markets Association and the Financial Services Roundtable advising who will accompany him at oral argument. (Clerk noted)
**SERVICE :** by Mail on 4/17/2007

**Entry 127 :**    4/23/2007 :  Notice of Rejection: The Certificate of Interest for the amicus curiae MediaTek, Inc. received on 04/23/2007 is rejected; form is incomplete (question 3 was left blank).
**SERVICE :** by Court on 4/23/2007

**Entry 126 :**    4/20/2007 :  Notice of Rejection: The Certificate of Interest for the amicus curiae Biotechnology Industry Organization, received on 04/20/2007 is rejected; not an original signature.
**SERVICE :** by Court on 4/20/2007

**Entry 125 :**    4/20/2007 :  Notice of Rejection: The Certificate of Interest from the amicus curiae Intellectual Property Owner, Inc. received of 04/19/2007 is rejected; not an original signature.
**SERVICE :** by Court on 4/20/2007

**Entry 124 :**    4/19/2007 :  Certificate of Interest from the amicus curiae, Pharmaceutical Research and Manufacturers of America ("PhRMA").

**Entry 123 :**    4/18/2007 :  Certificate of Interest for the amicus curiae Conejo Valley Bar Association.
**SERVICE :** by Mail on 4/18/2007

**Entry 122 :**
4/18/2007 :  Notice of Rejection: The Certificate of Interest for the amicus curiae Association of

the Bar of the City of New York, received on 04/18/2007 is rejected; not an original signature (traced over signatures are not accepted as an original signature).
**SERVICE :** by Court on 4/18/2007

**Entry 121 :**    4/18/2007 : Notice of Rejection: The Certificate of Interest for the amics curiae Fed. Internationale Des Conseils En Propriete Ind. received on 04/18/2007 is rejected; not an original signature (traced over signatures are not accepted as an original signature)
**SERVICE :** by Court on 4/18/2007

**Entry 120 :**    4/18/2007 : Certificate of Interest from the amici curiae, EchoStar Communications Corporation and BEA Systems, Inc.
**SERVICE :** by Mail on 4/17/2007

**Entry 119 :**    4/17/2007 : Certificate of Interest for the amici curiae, Electronic Frontier Foundation, Public Knowledge, and Public Patent Foundation.
**SERVICE :** by Mail on 4/17/2007

**Entry 118 :**    4/11/2007 : Notice to counsel Michael K. Kirschner: The record of this case indicates that a certificate of interest has not been filed for amicus Washington St Patent Law Assoc. A completed certificate of interest must be submitted purs. to FCR 47.4 w/i 10 da
**SERVICE :** by Court on 4/11/2007

**Entry 117 :**    4/11/2007 : Notice to counsel Peter A. Sullivan: The record of this case indicates that a certificate of interest has not been filed for amicus City of NY Bar Assoc. A completed certificate of interest must be submitted purs. to FCR 47.4 w/i 10 days.
**SERVICE :** by Court on 4/11/2007

**Entry 116 :**    4/11/2007 : Notice to counsel Thomas S. Biemer: The record of this case indicates that a certificate of interest has not been filed for amicus Securities Industry, et al. A completed certificate of interest must be submitted purs. to FCR 47.4 w/i 10 days.
**SERVICE :** by Court on 4/11/2007

**Entry 115 :**    4/11/2007 : Notice to counsel Roderick R. McKelvie: The record of this case indicates that a certificate of interest has not been filed for amicus Pharm Research & Manuf. A completed certificate of interest must be submitted purs. to FCR 47.4 w/i 10 days.
**SERVICE :** by Court on 4/11/2007

**Entry 114 :**    4/11/2007 : Notice to counsel Michael Barclay: The record of this case indicates that a certificate of interest has not been filed for amicus Mediatek, Inc. A completed certificate of interest must be submitted purs. to FCR 47.4 w/i 10 days.
**SERVICE :** by Court on 4/11/2007

**Entry 113 :**    4/11/2007 : Notice to counsel Gary M. Hoffman: The record of this case indicates that a certificate of interest has not been filed for amicus Intell Property Owners Assoc. A completed certificate of interest must be submitted purs. to FCR 47.4 w/i 10 days.
**SERVICE :** by Court on 4/11/2007

**Entry 112 :**    4/11/2007 : Notice to counsel Mark A. Thurmon: The record of this case indicates that a certificate of interest has not been filed for amicus Houston IPLA. A completed certificate of interest must be submitted purs. to FCR 47.4 w/i 10 days.
**SERVICE :** by Court on 4/11/2007

**Entry 111 :**    4/11/2007 : Notice to counsel Maxim H. Waldbaum: The record of this case indicates that a certificate of interest has not been filed for amicus Federation Internationale etc. A completed certificate of interest must be submitted purs. to FCR 47.4 w/i 10 days.
.    **SERVICE :** by Court on 4/11/2007

**Entry 110 :**    4/11/2007 : Notice to counsel Joshua D. Sarnoff: The record of this case indicates that a certificate of interest has not been filed for amicus Public Patent Foundation, et al. A completed certificate of interest must be submitted purs. to FCR 47.4 w/i 10 days.
.    **SERVICE :** by Court on 4/11/2007

**Entry 109 :**    4/11/2007 : Notice to counsel Meenakshi Sarvaiya: The record of this case indicates that a certificate of interest has not been filed for amicus Conejo Valley Bar Assoc. A completed certificate of interest must be submitted purs. to FCR 47.4 w/i 10 days.
.    **SERVICE :** by Court on 4/11/2007

**Entry 108 :**    4/11/2007 : Notice to counsel Hansjorg Sauer: The record of this case indicates that a certificate of interest has not been filed for amicus Biotechnology Industry Org. A completed certificate of interest must be submitted purs. to FCR 47.4 w/i 10 days.
.    **SERVICE :** by Court on 4/11/2007

**Entry 107 :**    4/11/2007 : Notice to counsel Blair E. Taylor: The record of this case indicates that a certificate of interest has not been filed for amicus DC Bar Assoc. A completed certificate of interest must be submitted purs. to FCR 47.4 w/i 10 days.
.    **SERVICE :** by Court on 4/11/2007

**Entry 106 :**    4/11/2007 : Notice to counsel Alison M. Tucher: The record of this case indicates that a certificate of interest has not been filed for amicus Echostar Communications, et al. A completed certificate of interest must be submitted purs. to FCR 47.4 w/i 10 days.
.    **SERVICE :** by Court on 4/11/2007

**Entry 105 :**    4/11/2007 : Notice to counsel Kyle B. Fleming: The record of this case indicates that a certificate of interest has not been filed for amicus BrainLab AG, et al. A completed certificate of interest must be submitted purs. to FCR 47.4 w/i 10 days.
.    **SERVICE :** by Court on 4/11/2007

**Entry 104 :**    4/11/2007 : Order: The court hereby schedules oral argument to be held on June 7, 2007, at 2:00 p.m. in Courtroom 201. Each side shall be allotted 30 minutes. Counsel shall return the enclosed response to oral argument form by May 15, 2007.
.    **SERVICE :** by Court on 4/11/2007

**Entry 102 :**    4/3/2007 : Notice of Rejection: The Entry of appearance of Rachael Lea Leventhal (on behalf of amicus curiae Intellectual Property Owneres Association) , received on 03/21/2007 is rejected; counsel is not a member of the bar of this court.
.    **SERVICE :** by Court on 4/3/2007

**Entry 101 :**    4/3/2007 : Notice of Rejection: The Entry of Appearance of Karen J. Mathis (on behalf of amicus curiae American Bar Association), received on 03/21/2007 is rejected; counsel is not a memeber of the bar of this court.
.    **SERVICE :** by Court on 4/3/2007

**Entry 100 :**    4/3/2007 : Notice of Rejection: The Entry of Appearance of Deanna L. Kwong (on behalf of amicus curiae Pharmaceutical Research and Manufacturers of America), received on 03/21/2007 is rejected; counsel is not a member of the bar of this court.

SERVICE : by Court on 4/3/2007

**Entry 97 :**   3/27/2007 :  Certificate of Interest received from Amicus Curiae (Philadelphia Intellectual Property Law Assoc)
SERVICE : by Mail 3/26/2007

**Entry 98 :**   3/23/2007 :  Certificate of Interest from the amici curiae Adobe Systems Incorporated, Apple Inc., Dell Inc., Intel Corporation, Micron Technology, SAP AG, Time Warner Inc., and Yahoo! Inc.
SERVICE : by Mail on 3/21/2007

**Entry 79 :**   3/23/2007 :  Certificate of Interest from the amicus curiae TiVo Inc.
SERVICE : by Mail on 3/20/2007

**Entry 99 :**   3/22/2007 :  Certificate of Interest from the Amicus Curiae San Diego Intellectual Property Law Association.

**Entry 64 :**   3/22/2007 :  Certificate of Interest received by Amicus Curiae American Intellectual Property Law Assocation.
SERVICE : by Mail on 3/19/2007

**Entry 63 :**   3/22/2007 :  Certificate of Interest recieved by Amicus Curiae Federal Circuit Bar Association.
SERVICE : by Mail on 3/15/2007

**Entry 65 :**   3/16/2007 :  Certificate of Interest received by Petitioner (Seagate).
SERVICE : by Mail on 3/16/2007

**Entry 28 :**   3/13/2007 :  Notice to counsel Brian E. Ferguson: The record of this case indicates that a certificate of interest has not been filed for petitioner Seagate Technology. You must submit a completed certificate of interest pursuant to FCR 47.4 within 10 days.
SERVICE : by Court on 3/13/2007

**Entry 26 :**   2/27/2007 :  Notice of rejection: Entries of appearance for American Intellectual Property Law Association, as amicus curiae, received 2/22/07, cannot be filed. A motion for leave to file or consent of the parties is required, pursuant to Rule 29.
SERVICE : by Court on 2/27/2007

**Entry 21 :**   1/26/2007 :  ORDERED: The court, sua sponte, has decided that the petition is appropraite for en banc consideration. Briefing schedule set out in this order. The parties are invited to address 3 questions. Amici should follow Rule 29. By: Ct.- En Banc.
SERVICE : by Court on 1/26/2007

**Entry 7 :**   10/12/2006 :  Petitioner Seagate's errata to its September 29, 2006 Motion for stay. (sent to ssa)
SERVICE : by Mail on 10/12/2006

**Entry 6 :**   10/4/2006 :  Certificate of Interest from the respondent Convolve, Inc.
SERVICE : by Mail on 10/3/2006

**Entry 5 :**   10/4/2006 :  Certificate of Interest from the respondent Massachusetts Institute of Technology.
SERVICE : by Mail on 10/3/2006

**Entry** 4 :      9/29/2006 :  ORDERED: Convolve and Massachusetts Institute of Tech to respond no later than 10/16/06. Orders temporarily stayed, pending court's receipt of response and until ordered otherwise. By: Motions Panel. Judge: Bryson

**SERVICE :** by Mail on 9/29/2006

EXHIBIT B

Case 1:05-cv-11298-DPW     Document 96-4     Filed 05/09/2007     Page 2 of 4

Check Your Billing History     Change Client Code

# Case Details
## U.S. Court of Appeals for the Federal Circuit
### VERIZON SERVICES V VONAGE HOLDINGS
### 2007-1240
#### Case documents are not available for download

### Click Here for **Listing of Briefs**
### Click Here To **Search Again**

| Date | History |
|------|---------|
| **Date** | **History** |
| 5/9/2007 | Due    BLUE BRIEF |
| / / | Appellant Principal Brief Filing Date |
| / / | Appellee or Cross Appellant Principal Brief Filing Date |
| / / | Appellant Reply Brief Filing Date |
| / / | Cross Appellant Reply Brief Filing Date |
| / / | Appendicies Filing Date |
| 6/25/2007 | Oral Argument Date / Calendared |
| / / | Disposition: ; by |
| / / | Mandated on |
| >> | *Please Note: The briefs above are only the most current.* << |

- - - - -Notice to Users of PACER- - - - -

| | |
|---|---|
| --- | **Entry Numbers** may be different due to upgrades made recently to the case management system. |
| --- | >> **Please Note: Motions & Actions Filed are listed first. Entries are listed last.**<< |
| 5/1/2007 | **MOTION:** Entry 26 :by Appellant - Motion to vacate district court's finding of validity, to vacate the district court's order and to remand for a new trial. **SERVICE :** by Mail on 4/30/2007 |
| . | **REPLY 1:** 5/2/2007 , Entry # 28 |
| 5/2/2007 | **ACTION:** Entry 29 :The motion is denied. The counsel may include the arguments in their briefs on the merits. |
| 4/13/2007 | **MOTION:** Entry 11 :by Appellants - Emergency Motion to Stay the District Court's Injunction (with Separate Exhibits A-N [Confidential and Non-Confidential Versions]) as designated "Submitted pursuant to the Court Order of 4/10/07". **SERVICE :** by Hand on 4/13/2007 |
| . | **REPLY 1:** 4/17/2007 , Entry # 12 |
| 4/24/2007 | **ACTION:** Entry 22 :See order, entry #19. |
| 4/6/2007 | **MOTION:** Entry 2 :by Appellants - Defendants' Emergency Motion to Stay the District Court's Injunction (w/Separate Exhibits Volume). **SERVICE :** by Mail on 4/6/2007 |
| . | **REPLY 1:** 4/9/2007 , Entry # 6 |
| . | **REPLY 2:** 4/13/2007 , Entry # 10 |
| 4/24/2007 | **ACTION:** Entry 19 :Granted. Vonage's opening brief is due May 9,2007. Verizon opening brief is due May 23, 2007; Reply brief due 5/30/2007. All briefs hand-served. Oral argument is scheduled for June 25, 2007 at 10:00 a.m. |

.                          **>> Entries for Case Number: 2007-1240 <<**

**Entry** 30 :             5/2/2007 :  Docketing statement for appellees, Verizon Services Corp., et al.
.                          **SERVICE :** by Mail on 5/2/2007

**Entry** 27 :             5/2/2007 :  Response to oral argument order from Richard G. Taranto for Appellee Verizon
                           Communications, Inc.
.                          **SERVICE :** by Mail on 5/1/2007

**Entry** 24 :             4/26/2007 :  Appellees' corrected confidential & nonconfidential versions of its response &
                           appendices submitted pursuant to the order of 4/23/07. (sent to Panel)
.                          **SERVICE :** by Hand on 4/26/2007

**Entry** 23 :             4/26/2007 :  Appellants' second corrected confidential & nonconfidential versions of the
                           motion to stay & appendices submitted pursuant to the order of 4/23/07. (circulated to the
                           Panel)
.                          **SERVICE :** by Hand on 4/26/2007

**Entry** 18 :             4/24/2007 :  Notice to appellees: The docketing statement for appellees, Verizon
                           Communications, Inc., et. al., is overdue. The docketing statement shall be filed no later
                           than May 8, 2007.
.                          **SERVICE :** by Court on 4/24/2007

**Entry** 17 :             4/23/2007 :  Ordered:Vonage directed to file 2nd corrected confid. & nonconfid. versions of
                           its motion for stay & append. no later than noon 4/26/07. Verizon directed to file corrected
                           confid. & nonconfid. response & appendix no later than noon 4/26/07(see order
.                          **SERVICE :** by Court on 4/23/2007

**Entry** 16 :             4/23/2007 :  Letter of Verizon's counsel noting two clerical errors in Verizon's Opposition
                           filed 4/13/07 and one calculation error in the accompanying Declaration of Steven Shavell.
                           (Sent to Panel)
.                          **SERVICE :** by Fax on 4/23/2007

**Entry** 15 :             4/20/2007 :  Official Caption revised and copies sent to parties.
.                          **SERVICE :** by Mail on 4/20/2007

**Entry** 14 :             4/20/2007 :  NOTE TO FILE: Lead Appeal 2007-1240 is consolidated with Appeal
                           2007-1274 (filed by Vonage Holdings Corp., et al., docketed on 4/20/07).
.                          **SERVICE :** by Mail on 4/20/2007

**Entry** 21 :             4/18/2007 :  Response to the oral argument order by Roger E. Warin for Vonage regarding
                           argument on the motion to stay on 4/25/07.
.                          **SERVICE :** by Mail on 4/11/2007

**Entry** 20 :             4/17/2007 :  Response by Verizon counsel Richard G. Taranto to the oral argument order
                           for argument on the motion to stay scheduled for 4/24/07.
.                          **SERVICE :** by Mail on 4/11/2007

**Entry** 13 :             4/17/2007 :  Docketing Statement from Appellant Vonage Holdings Corp. and Vonage
                           America, Inc.
.                          **SERVICE :** by Mail on 4/17/2007

**Entry 25 :**     4/16/2007 :  Transcript Purchase Order Form from appellants, Vonage America, Inc. and Vonage Holdings Corp. indicating that a transcript is already on file.

**Entry 9 :**     4/10/2007 :  Certificate of Interest for Verizon Services Corp., et al.
.     **SERVICE :** by Hand on 4/10/2007

**Entry 8 :**     4/10/2007 :  [continuation of entry #7]... An original and 5 copies of each pleading shall be filed. Oral argument on Emerg Motion to Stay is scheduled at 10 a.m. on Tuesday, April 24, 2007.
.     **SERVICE :** by Fax on 4/10/2007

**Entry 7 :**     4/10/2007 :  Ordered: [see printed order for all details] Verizon to serve its response to Vonage by hand delivery. Vonage directed to file new versions of its motion no later than 4/13/07. Vonage's reply due 5pm on 4/17/07 (to be hand served). [continued...]
.     **SERVICE :** by Court on 4/10/2007

**Entry 5 :**     4/6/2007 :  Official Caption revised and Copies sent to parties.
.     **SERVICE :** by Mail on 4/6/2007

**Entry 4 :**     4/6/2007 :  NOTE TO FILE: Lead Appeal 2007-1240 is consolidated with Appeal 2007-1251 (filed by Vonage Holdings, Inc., et al., docketed on 4/6/07).
.     **SERVICE :** by Mail on 4/6/2007

**Entry 3 :**     4/6/2007 :  Ordered: Verizon et al are directed to respond to the motion for stay pending appeal of injunction issued by USDC/EDVA no later than 4/13/07. Injunction is temporarily stayed pending receipt of response and court's consideration of the papers.
.     **SERVICE :** by Fax on 4/6/2007

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 04/25/2007 07:47:32 | | |
| **PACER Login:** | pr1358 | **Client Code:** | 65672/076/8050 |
| **Description:** | dkt detail | **Search Criteria:** | 2007-1240 |
| **Billable Pages:** | 1 | **Cost:** | 0.07 |

EXHIBIT C

Misc. No.  2006 - 830

## IN THE
# UNITED STATES COURT OF APPEALS
### For The Federal Circuit

IN RE SEAGATE TECHNOLOGY, LLC,

*Petitioner*

**On Petition for a Writ of Mandamus to the United States
District Court for the Southern District of New York
(Hon. George B. Daniels)**

**SEAGATE TECHNOLOGY LLC'S
PETITION FOR WRIT OF MANDAMUS TO VACATE
DISCOVERY ORDERS COMPELLING DISCLOSURE
OF PRIVILEGED COMMUNICATIONS OF TRIAL COUNSEL**

TERRENCE P. MCMAHON
STEPHEN J. AKERLEY
LUCY K. KOH
MARY B. BOYLE
MCDERMOTT WILL & EMERY LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
(650) 813-5000

RAPHAEL V. LUPO
PAUL DEVINSKY
BRIAN E. FERGUSON
MCDERMOTT WILL & EMERY LLP
600 13th Street, N.W., 12th Floor
Washington, D.C. 20005-3096
(202) 756-8000

*Attorneys for Petitioner Seagate Technology, LLC*

**FILED**
**U.S. COURT OF APPEALS FOR
THE FEDERAL CIRCUIT**

SEP 2 9 2006

**JAN HORBALY
CLERK**

## CERTIFICATE OF INTEREST

Pursuant to Circuit Rules 21(a)(2) and 47.4(a)(1), counsel for the petitioner certifies the following:

1.      The full name of every party represented by me is:

Seagate Technology LLC.

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

None

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:

Seagate Technology (US) Holdings, Inc., a Delaware corporation;

Seagate Technology HDD Holdings, Cayman Islands; and

Seagate Technology, Cayman Islands, (STX on NYSE).

4.      The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or agency or are expected to appear in this court are:

McDERMOTT WILL & EMERY LLP
Terrence P. McMahon
Stephen J. Akerley
Lucy H. Koh
Mary B. Boyle
Edwin Wheeler
Nicholas Chen
Brian Baker
Sabrina Chang
Mark P. Wine
Michael G. Oleinik
Ray Lupo
Paul Devinsky
Brian Ferguson

Michael S. Sommer
Ann E. Schofield
Andrew Dallman  (no longer with firm)
Elaine M. Heal(no longer with firm)
Jennifer Ishimoto (no longer with firm)
Cora Schmid (no longer with firm)
Mitchell M. Blakely (no longer with firm)
Keaton Parekh (no longer with firm)
Lorrel A. Birnschein (no longer with firm)

ORRICK, HERRINGTON & SUTCLIFFE LLP
G. Hopkins Guy, III
Peter Bucci (no longer with firm)
David R. Jewell (deceased)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

I.      RELIEF REQUESTED.......................................................................... 1

II.     ISSUE PRESENTED............................................................................. 6

III.    FACTS NECESSARY TO UNDERSTAND THE ISSUE
        PRESENTED ........................................................................................ 7

        A.      Opinion Counsel ...................................................................... 8

        B.      Trial Counsel ......................................................................... 10

        C.      Discovery Sought From Trial Counsel and Subsequent
                Proceedings............................................................................ 11

IV.     REASONS WHY THE WRIT SHOULD ISSUE ............................... 14

        A.      Extension of Privilege Waiver to Separate and Independent Trial
                Counsel Would Unduly Burden the Attorney-Client Relationship
                and Violate Due Process and Other Constitutional Protections......... 15

        B.      Seagate Did Not Automatically Waive Privilege for All Trial
                Counsel and Trial Strategy Communications Pertaining to Patent
                Infringement, Validity, and Enforceability by Asserting an Advice
                of Counsel Defense to Willful Infringement...................................... 18

        C.      If EchoStar Meant To Extend Waiver of Privilege to Separate and
                Independent Trial Counsel, EchoStar Is in Irreconcilable Conflict
                with This Court's En Banc Decision in Knorr-Bremse..................... 19

        D.      Based on EchoStar and Other Precedent of This Court, There
                Should Be No Waiver for Privileged Communications of Separate
                and Independent Trial Counsel Where, as Here, There Are No
                Sword-and-Shield Concerns............................................................. 20

        E.      In Ampex, the Only Post-EchoStar Case To Analyze Privilege
                Waiver Law Under Facts Involving Separate and Independent Trial
                Counsel, the District Court Declined To Extend Waiver to Trial
                Counsel ........................................................................................... 23

        F.      This Court Has Rejected an "Automatic Waiver" of Privilege for
                Plaintiffs in an Analogous Context ................................................. 27

V.      CONCLUSION.................................................................................... 29

# TABLE OF AUTHORITIES

Page

## Cases

*Affinion Net Patents, Inc. v. Maritz, Inc.*, No. Civ. A. 04-360-JJF,
2006 WL 2096712 (D. Del. July 28, 2006) ......................................................... 23

*Akeva L.L.C. v. Mizuno Corp.*, 243 F. Supp. 2d 418 (M.D.N.C. 2003) .................. 26

*Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33 (1980) ........................................ 14

*Ampex Corp. v. Eastman Kodak Co.*, No. Civ. A. 04-1373-KAJ,
2006 U.S. Dist. LEXIS 48702 (D. Del. July 17, 2006) ................................. *passim*

*Baker v. Carr*, 369 U.S. 186, 204 (1962) ............................................................... 17

*Beck Sys., Inc. v. ManageSoft Corp.*, No. 05 C 2036, 2006 WL 2037356
(N.D. Ill. July 14, 2006) ...................................................................................... 23

*Convolve, Inc. v. Compaq Computer Corp.*, 224 F.R.D. 98 (S.D.N.Y. 2004) ...... 1, 7

*Dimick v. Schiedt*, 293 U.S. 474 (1935) ................................................................. 17

*Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340 (Fed. Cir. 2005) ....................... 22

*Genentech, Inc. v. Insmed Inc.*, No. C-04-5429 CW (EMC), 2006 U.S.
Dist LEXIS 55992 (N.D. Cal. Aug. 10, 2006) ..................................................... 23

*Hickman v. Taylor*, 329 U.S. 495 (1947) ............................................................... 17

*Hunt v. Blackburn*, 128 U.S. 464 (1888) ............................................................... 16

*In re EchoStar Commc'ns Corp.*, 448 F.3d 1294 (Fed. Cir. 2006),
*reh'g and reh'g en banc denied*, 2006 U.S. App. LEXIS 17511
(Fed. Cir. July 5, 2006) ................................................................................. *passim*

*In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370 (Fed. Cir. 2001) ......................... 14

*In re Regents of the Univ. of Cal.*, 101 F.3d 1386 (Fed. Cir. 1996) ....................... 14

*Indiana Mills & Mfg., Inc. v. Dorel Indus., Inc.*, No. 1:04-cv-01102-
LJM-WTL, 2006 U.S. Dist. LEXIS 34023 (S.D. Ind. May 26, 2006),
*opinion withdrawn*, 2006 U.S. Dist. LEXIS 47852 (S.D. Ind.
July 14, 2006) ..................................................................................................... 23

*Informatica Corp. v. Bus. Objects Data Integration*, No. C 02-3378
JSW (JL), 2006 WL 2038461 (N.D. Cal. July 14, 2006), *aff'd*, 2006
WL 2329460 (N.D. Cal. Aug. 9, 2006) ................................................................. 24

*Intex Recreation Corp. v. Team Worldwide Corp.*, No. Civ. A. 04-1785
PLF/DAR, 2006 WL 2023552 (D.D.C. July 14, 2006) ........................................ 24

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383
F.3d 1337, 1343 (Fed. Cir. 2004) .................................................................. *passim*

*Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989) ....................................... 14

*MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344 (Fed. Cir. 2005) ......... 1

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) ......................... 17

*Upjohn Co. v. United States*, 449 U.S. 383 (1980). ...................................... 6

*Zenith Radio Corp. v. United States*, 764 F.2d 1577 (Fed. Cir. 1985) .............. 28, 29

**Statutes**

28 U.S.C. § 1292(b) ............................................................................... 13

28 U.S.C. § 1651 ............................................................................... 1, 29

**Rules**

Fed. R. Civ. P. 30(b)(6) ......................................................................... 15

Fed. R. Civ. P. 72(a) ............................................................................. 13

# I. RELIEF REQUESTED

Petitioner Seagate Technology LLC ("Seagate") respectfully requests the

issuance of a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651,

ordering the district court to vacate its Orders[1] which compel production of trial

counsel's privileged advice on the broad subject matter of opinion counsel's formal

opinions, "i.e., the infringement, validity, and enforcement of the [patents-in-suit],[2]

even though there are no sword and shield concerns.  These Orders flatly

contradict the controlling legal principles set forth in this Court's *Knorr-Bremse*

and *EchoStar* decisions.

In *Knorr-Bremse*, the *en banc* Court strongly affirmed a patent defendant's

right to rely on opinions of counsel as a defense to willfulness.  Moreover, the *en*

---

[1]  The Orders submitted for this Court's review are Tab A, Docket No. 268, Magistrate Judge Francis' Order of May 28, 2004 (published as *Convolve, Inc. v. Compaq Computer Corp.*, 224 F.R.D. 98 (S.D.N.Y. 2004)); Tab B, Docket No. 299, Magistrate Judge Francis' Order of September 8, 2004; Tab C, Docket No. 505, District Judge Daniels' Order of July 11, 2006 denying Seagate's objections to Magistrate Judge Francis' Order of May 28, 2004; and Tab D, Docket No. 506, District Judge Daniel's Order of July 11, 2006 denying Seagate's objections to Magistrate Judge Francis' Order of September 8, 2004.  This Court has indicated that it reviews collectively as the "district court's rulings" the orders of a magistrate judge together with the district judge's orders sustaining the magistrate judge's orders.  *See MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1354 n.2 (Fed. Cir. 2005).

[2]  Tab A at 17 (ordering production of "communications between Seagate (or its in-house counsel) and any of its attorneys, ***including trial counsel***, with respect to the ***subject matter of Mr. Sekimura's opinions, i.e., the infringement, validity, and enforcement of the '635, '267, and '473 patents.***"); *see also id.* at 16 ("Seagate's 'subject matter waiver' . . . extends to the entire subject matter of Mr. Sekimura's opinions – infringement, validity, and enforcement of the patents at issue.").

*banc Knorr-Bremse* Court overruled long-standing precedent to remove

"inappropriate burdens on the attorney-client relationship"[3] to allow more

flexibility in a patent defendant's ability to rely on opinions of counsel. The

Orders Seagate seeks to vacate contradict *Knorr-Bremse* by forcing a patent

defendant to choose between an opinion of counsel defense to willfulness and

preserving the confidentiality of its communications with trial counsel regarding

the merits of its case. The Orders force this untenable choice even though the

record is undisputed that Seagate has maintained separate and independent trial and

opinion counsel at all times. The Orders give the plaintiffs a license to invade the

most sacred of attorney-client communications—those directed to *trial* strategy

and preparation. As such, taken literally, the Orders destroy Seagate's ability, not

only to adequately defend itself, but even to fairly evaluate the case by consulting

with its trial lawyers. The net effect of the Orders is to essentially deprive a patent

defendant of the ability to rely on opinions of counsel. Such a result flatly

contradicts the statement in *Knorr-Bremse* that there are no special rules for patent

litigants that unduly burden the privilege and distort the attorney-client

relationship.[4]

---

[3] *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1343 (Fed. Cir. 2004) (en banc).

[4] *See Knorr-Bremse*, 383 F.3d at 1344.

The Orders also conflict with the controlling legal principles set forth in *EchoStar*[5] and other precedent. In *EchoStar*, this Court set forth the following standard for determining the scope of any waiver: "[A] district court should balance the policies to prevent sword-and-shield litigation tactics with the policy to protect work product."[6] This standard indicates that the overriding reason for a privilege waiver rule is to prevent sword-and-shield litigation tactics. In this case, there are no opinion shopping issues. There are no sword-and-shield concerns with respect to trial counsel. The record is undisputed that Seagate has maintained separate and independent litigation and opinion counsel at all times. As such, Seagate reasonably believed that waiver of the privilege associated with an advice of counsel defense would not extend to trial counsel. Under these facts, the policy balance weighs heavily on the side of protecting privilege for trial counsel, and there should be *no* discovery of privileged trial counsel communications. The district court abused its discretion in extending waiver to trial counsel's communications under the circumstances of this case.

The district court erroneously equated an assertion of an advice of counsel defense to willful infringement with the automatic waiver of privilege for the communications of trial counsel encompassing the broad subject matters of

[5] *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294 (Fed. Cir. 2006), *reh'g and reh'g en banc denied*, 2006 U.S. App. LEXIS 17511 (Fed. Cir. July 5, 2006).
[6] *Id.* at 1302.

infringement, validity, and enforceability. According to the district court's Orders, trial counsel's advice on the subjects of infringement, validity, and enforceability "must be disclosed *even if it is communicated in the context of trial preparation.*"[7] Thus, the Orders also conflict with this Court's strong policy in favor of protecting privilege. In *Echostar*, this Court stated: "We recognize the privilege in order to promote full and frank communication between a client and his attorney so that the client can make well-informed legal decisions and conform his activities to the law."[8] Similarly, in *Knorr-Bremse*, this Court *en banc* stated: "There should be no risk of liability in disclosures to and from counsel in patent matters; such risk can intrude upon full communication and ultimately the public interest in encouraging open and confident relationships between client and attorney."[9]

Moreover, trial counsel cannot do its job if it cannot communicate candidly and confidentially with its client concerning the merits of the patent case. The Supreme Court long ago recognized the "necessity" of attorney-client privilege in making our justice system work.[10] In the instant case, plaintiffs are demanding discovery of files of trial counsel and deposition testimony from the most senior

---

[7] Tab A, Magistrate Judge Francis' May 28, 2004 Order at 16-17 (emphasis added).
[8] *EchoStar*, 448 F.3d at 1300-01.

[9] *Knorr-Bremse*, 383 F.3d at 1344.

[10] *See Hunt v. Blackburn*, 128 U.S. 464, 470 (1888).

attorneys on Seagate's trial team. As one district court recently put it, if plaintiffs are correct that "everything [is] fair game for discovery," including everything that trial counsel says to its client about infringement, validity, and enforceability, it "demolish[es] the practical significance of the attorney-client privilege" for patent defendants.[11] The discovery sought in this case will expose the thought processes and legal strategy of defendant's trial counsel to the adversary. The exposure of defense counsel communications on substantive patent issues—communications containing the heart of trial strategy—puts an end to the patent litigation process as we know it.

Because *EchoStar* did not address the scope of the waiver as it applies to trial counsel, courts and litigants have been struggling with uncertainty regarding the law of privilege waiver as applied to trial counsel. Indeed, the *Echostar* decision set off a feeding frenzy among patentee plaintiffs, all seeking to eviscerate the hallowed protections afforded for hundreds of years under the privilege and work product protections. In the several months following *Echostar*, district courts have applied the decision to find waivers of varying scope. Several of the lower court decisions find that the waiver extends to trial counsel, but only when there is some indication either of opinion shopping or when opinion counsel

---

[11] *Ampex Corp. v. Eastman Kodak Co.*, No. Civ. A. 04-1373-KAJ, 2006 U.S. Dist. LEXIS 48702, at *6 & n.3, *10 (D. Del. July 17, 2006).

and trial counsel are the same or have somehow overlapped inappropriately. None, other than the Orders at issue here, have distorted *Echostar* to compel production of trial counsel communications even when those communications relate to trial strategy.

"An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all."[12] Seagate asks this Court to clarify the law regarding the extension of privilege waiver to trial counsel and to find the district court's Orders are based on a clear error of law.

A writ is needed for Seagate to receive effective review of the Orders. Unless this Court grants the writ, Seagate will be deprived of any remedy for the district court's erroneous Orders. Once Seagate's litigation strategy has been exposed to the other side, that bell can never be unrung. Seagate respectfully asks this Court to issue a writ of mandamus instructing the district court to protect the privileged communications of trial counsel in this case.

## II. ISSUE PRESENTED

Whether an accused infringer that asserts an advice-of-counsel defense to a charge of willful infringement automatically waives attorney-client privilege and work-product protection for trial counsel communications relating to the

---

[12] *Upjohn Co. v. United States*, 449 U.S. 383, 393 (1980).

substantive issues of infringement, validity, and enforceability, where trial counsel

and opinion counsel have been kept entirely separate and independent of one

another throughout the litigation.

## III. FACTS NECESSARY TO UNDERSTAND THE ISSUE PRESENTED

Petitioner Seagate is a defendant in *Convolve, Inc. v. Compaq Computer*

*Corp.*, No. 1:00-cv-05141-GBD-JCF, a civil case pending in the United States

District Court for the Southern District of New York. Convolve, Inc. and the

Massachusetts Institute of Technology (collectively, "Convolve") filed a complaint

on July 13, 2000 alleging, among other claims, that Seagate and Compaq

Computer Corporation infringed two patents, U.S. Patent Nos. 4,916,635 (the

"'635 Patent") and 5,638,267 (the "'267 Patent"[13]). (Tab A, Magistrate Judge

Francis' May 28, 2004 Order at 1-2.). An amended complaint was filed January 25,

2002, adding a new patent, U.S. Patent No. 6,314,473 (the "'473 patent"), which

issued to Convolve, Inc. in November 2001. (*Id.* at 2.) The amended complaint

also alleged willful infringement and sought treble damages. (*Id.*)

---

[13] The '267 patent is no longer being asserted. *See* Tab G, Judge Daniels' Order of July 19, 2006, dkt. no. 509, ¶ 7 ("Plaintiffs' request that their previously stated position that infringement of the '267 Patent 'is no longer being asserted ...' be documented is granted.").

## A.    Opinion Counsel

In May 2000, Seagate retained Mr. Gerald T. Sekimura, then a partner with

the law firm of Limbach & Limbach, to provide an opinion of counsel with regard

to the '635 and '267 patents. (Tab E, October 6, 2003, Declaration of Betty Ann

Durham in Support of Seagate Technology LLC's Opposition to Convolve, Inc.'s

Motion to Compel Discovery from Seagate ¶ 2; *see also* Tab A at 2-3.) Mr.

Sekimura provided three written opinions.

Mr. Sekimura provided Seagate with his first opinion, a preliminary written

opinion of noninfringement and invalidity of the '635 and '267 patents, on July 24,

2000, only eleven days after the filing of the complaint. (Tab E ¶ 4; Tab A at 3.)

In addition to opining on the '635 and '267 patents, the only patents asserted by

plaintiffs at that time, Mr. Sekimura also examined the claims of Convolve's

pending International Patent Application WO 99/45535 (the "PCT application").

(Tab E ¶¶ 2, 4; Tab A at 3.) The U.S. patent application corresponding to the PCT

application issued as the '473 patent in November 2001. (Tab E ¶ 2.) Mr.

Sekimura's July 24, 2000 written preliminary opinion concluded that the claims in

the PCT application were either not infringed by Seagate and/or were invalid, but

also noted that further analysis was needed because only 186 of the over 340

claims had been reviewed. (*Id.* ¶ 4, Tab A at 3.)

Mr. Sekimura provided Seagate with a written final opinion of noninfringement, invalidity, and unenforceability of the '635 and '267 patents on December 29, 2000.[14] (Tab E ¶ 5; Tab A at 3.) That report also recommended that further review of the PCT application be postponed and that further review be undertaken if and when a U.S. patent were to issue. (Tab A at 3-4.) The report noted again that only 186 claims had been reviewed. (*Id.* at 4.)

Mr. Sekimura was retained again in March 2002 to provide an opinion regarding the '473 patent that issued in November 2001.[15] (Tab E ¶ 9.) Mr. Sekimura tendered a formal, written opinion of noninfringement and invalidity regarding the fifteen issued claims of the '473 patent to Seagate on February 21, 2003. (*Id.* ¶ 10; Tab A at 4.)

In early 2003, pursuant to Special Master Razzano's scheduling order in the case, Seagate informed plaintiffs of its intention to rely on Mr. Sekimura's opinions of July 24, 2000, December 29, 2000, and February 21, 2003 for an

---

[14] The discussion of unenforceability in the December 29, 2000 opinion was addressed to '267 patent, a patent which is no longer being asserted in this case. (Tab A at 3.)

[15] After the '473 patent issued in November 2001, Seagate attempted to retain Mr. Sekimura to provide an opinion. (Tab E ¶¶ 6, 7.) However, Mr. Sekimura, now with the law firm of Gray Cary, initially declined because of a potential conflict with his new firm. (*Id.* ¶ 7) The amended complaint was filed in January 2002, adding a cause of action for infringement of the '473 patent, and adding allegations of willful infringement. (*Id.* ¶ 8; Tab A at 2.) In February 2002, Seagate again sought Mr. Sekimura's advice regarding the '473 patent, and, after he cleared the conflict, in March 2002, Mr. Sekimura was retained. (Tab E ¶ 9.)

advice-of-counsel defense to the claim of willful infringement. (Tab A at 5.) Seagate disclosed the three opinions to the plaintiffs, and made Mr. Sekimura available for a deposition. (*Id.*) All correspondence and work product were produced from Mr. Sekimura's files, as were communications with Mr. Sekimura in Seagate's files. (*Id.*)

## B.    Trial Counsel

Seagate initially retained Orrick, Herrington & Sutcliffe LLP ("Orrick") as trial counsel to represent Seagate in the Convolve litigation. (*Id.* at 2.) In January 2002, Seagate retained new trial counsel, McDermott Will & Emery LLP ("McDermott"), shortly after Terrence McMahon, Seagate's lead trial counsel, changed firms from Orrick to McDermott. (*Id.*)

Seagate's trial counsel and opinion counsel operated separately and independently from one another. (*Id.* at 20.) Seagate has only sought and has only received opinions outside of Seagate regarding the '635, '267, and '437 patents-in-suit from Mr. Sekimura.[16] (Tab E ¶ 11.) It is undisputed that neither Orrick nor McDermott had any influence over the content of Mr. Sekimura's opinions. (Tab A at 20.) No opinions were sought or obtained from trial counsel. (Tab E ¶¶ 11-

---

[16] In October 1999 Seagate's engineers conducted an internal analysis of Convolve's '635 and '267 patents. Seagate has produced the internal analysis documents, and Convolve has deposed the engineers.

12.) Further, Seagate never sought nor received advice from trial counsel

regarding the merits of the opinions of Mr. Sekimura. (*Id.* ¶ 13.)

### C. Discovery Sought From Trial Counsel and Subsequent Proceedings

Plaintiffs propounded discovery aimed at piercing Seagate's attorney-client

privilege with its trial counsel and filed a motion to compel such discovery on

October 1, 2003. (Tab A at 7.) Plaintiffs sought to obtain

> internal communications on the same subjects as the formal
> [Sekimura] opinions, communications between Seagate and any
> attorneys on the same subjects as the formal opinions, documents
> reflecting outside counsel's opinion as to the same subjects of the
> formal opinions, documents reviewed or considered, or forming the
> basis for outside counsel's opinion as to the subject matter of the
> formal opinions, and documents reflecting when oral communications
> concerning the subjects of the opinions occurred between Compaq
> and outside counsel.

(*Id.* at 7 (quoting Convolve's memorandum in support of its motion to compel)).

Oral argument on the motion was heard on January 20, 2004, before Magistrate

Judge Francis. (*Id.* at 12 n.4.)

On May 28, 2004, Magistrate Judge Francis issued an Order imposing a

subject matter waiver for all attorney-client communications between Seagate and

outside counsel concerning the general subject matter of Mr. Sekimura's opinions.

(Tab A.) The May 28, 2004 order stated that Seagate had waived attorney-client

privilege for all trial counsel's communications such that

> Seagate shall produce all documents, answers to interrogatories, and
> deposition testimony concerning communications between Seagate (or
> its in-house counsel) and any of its attorneys, including trial counsel,
> with respect to the subject matter of Mr. Sekimura's opinions, *i.e.*, the
> infringement, validity, and enforcement of the '635, '267, and '473
> patents.

(*Id.* at 17.)  The Order provided for in camera submission of documents that relate

to trial strategy or planning advice regarding validity, infringement, and

enforceability, recognizing that trial counsel would address trial strategy "in ways

that [did] not implicate the advice-of-counsel defense." (*Id.*)  However, the Order

provided that trial counsel's advice on the subjects of infringement, validity, and

enforceability "**must be disclosed even if it is communicated in the context of**

**trial preparation.**" (*Id.* at 16-17.) (emphasis added.)  With respect to the temporal

scope of the waiver, the Order held that the privilege waiver "continues to such

time as Seagate's alleged infringement ends." (*Id.* at 17).  In other words, the

Order appears to give plaintiffs a license to discover virtually anything and

everything communicated by Seagate's trial counsel to Seagate on the central

patent issues until such time as Seagate's alleged infringement ends.

Magistrate Judge Francis issued a second order, on September 8, 2004,

which provided that communications and documents of non-trial counsel,

including in-house counsel,[17] must be disclosed pursuant to the May 28, 2004

---

[17] Seagate's arguments regarding trial counsel communications apply equally to
such communications with in-house counsel as well as to any trial strategy
(continued...)

Order.[18] (Tab B ¶ 2.)  Seagate timely objected under Fed. R. Civ. P. 72(a) to both the May 28, 2004 and September 4, 2004 Orders, and the district court denied both sets of objections on July 11, 2006.  (Tabs C & D.)

On July 24, 2006 Seagate wrote a letter to Magistrate Judge Francis requesting that he stay his May 28, 2004 and September 8, 2004 orders pending mandamus review by this Court.  (Tab F.)  Magistrate Judge Francis denied Seagate's letter application by memo endorsement on July 26, 2006, stating, in pertinent part, that "[p]articularly in light of the Federal Circuit's decision in *EchoStar*, Seagate's chances of prevailing on a mandamus petition are slim."  (*Id.*)  Seagate then applied to Judge Daniels for an emergency stay of the Orders on August 1, 2006, and the court denied Seagate's motion on September 14, 2006.  (Tab H.)  On August 14, 2006, Seagate asked the district court to certify its Orders for interlocutory appeal under 28 U.S.C. § 1292(b).  On September 27, 2006, the district court denied Seagate's motion.  (Tab I.)

---

communications of in-house counsel.  Patent defendants should not face the untenable Hobson's choice with either their trial counsel or in-house counsel.
[18] Magistrate Judge Francis interpreted Seagate's objections to the May 28, 2004 Order as applying only to the requirement to produce trial counsel documents and communications and thus issued the September 8, 2004 order.

On September 26, 2006, plaintiffs requested that the Magistrate Judge compel Seagate to comply with the Orders within five business days. (Tab J.) thus, Seagate's need for immediate relief is clear.

## IV. REASONS WHY THE WRIT SHOULD ISSUE

The remedy of mandamus is limited to extraordinary situations involving a clear abuse of discretion or usurpation of judicial power. *See EchoStar*, 448 F.3d at 1297. The petitioner must show that there is no alternative relief available and that the right to relief is "clear and indisputable." *Id.* (citing *Mallard v. U.S. Dist. Court*, 490 U.S. 296, 309 (1989) and *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980)). A writ of mandamus is an appropriate remedy to prevent the wrongful exposure of privileged communications and information protected by the work-product privilege. *See id.* at 1297-98; *accord In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1388 (Fed. Cir. 1996); *In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370, 1374 (Fed. Cir. 2001).

This Court reviews a district court's determination as to the scope of a privilege waiver under an abuse of discretion standard. *See EchoStar*, 448 F.3d at 1300. In reviewing this petition, this Court will apply its own law because the issue involves the scope of waiver of attorney-client privilege and work-product immunity when a patent defendant asserts the advice-of-counsel defense in response to a charge of willful patent infringement. *See id.* at 1298.

- 14 -

Petitioner meets the legal standards for the writ it seeks. The discovery orders are clearly and indisputably in error. The district court abused its discretion in finding that Seagate waived privilege and work product protection for trial counsel's confidential communications. A writ is needed to correct the district court's erroneous Orders. Unless this Court grants the writ, Seagate will have no way to remedy the errors of the district court's Orders, and privileged information will be wrongfully exposed.

### A. Extension of Privilege Waiver to Separate and Independent Trial Counsel Would Unduly Burden the Attorney-Client Relationship and Violate Due Process and Other Constitutional Protections

The notion that *Echostar* allows the party opponent and their lawyers to see the trial strategy of their adversary creates the potential for grave abuses and harm. The attempts at and potential for grave abuses are nowhere presented more clearly than in this case. Within days of Magistrate Judge Francis' July 26, 2006 denial of Seagate's request for a stay order, Convolve's lawyers sent demands for depositions of nearly every one of Seagate's trial attorneys including Terrence P. McMahon, Stephen J. Akerley, Lucy H. Koh, Hopkins Guy and Fed. R. Civ. P. 30(b)(6) depositions of both McDermott, Will & Emery and Orrick, Herrington & Sutcliffe. These demands were accompanied by requests for production of all trial lawyer communications relating to the fundamental patent issues presented in this case, namely, noninfringement, invalidity, and unenforceability of the patents at

- 15 -

issue. This is stark evidence of how the Orders prohibit the effective assistance of trial counsel, resulting in the denial of right to counsel and Due Process for Seagate and other defendants in patent cases.

The issue here is whether the right to confidential legal advice ends when an accused infringer raises the time-honored defense of reliance on opinion of counsel to willfulness. The answer must be that it does not. There are few aspects of the common law as sacred as the confidentiality that surrounds the attorney-client relationship. And with good reason. As the Supreme Court long ago recognized, the attorney-client privilege "is founded upon the *necessity*, in the interest and administration of justice" under our system, of the right to confide in one's lawyer and obtain legal advice "free from the consequences or the apprehension of disclosure." *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888) (emphasis added).

The practical effect of the Orders is that every time the words "patent", "infringement", "invalidity" or "unenforceability" are uttered by a defendant's trial counsel during the period of alleged infringement, ***plaintiffs' counsel*** should be invited to listen in on the conversation. The absurdity of the Orders is highlighted by the fact that in some cases such disclosures could continue up until and through trial.

The Court's Orders force Seagate to choose between reliance on advice of opinion counsel as a defense to willfulness and assistance of its trial counsel. This

is an unacceptable choice, particularly in a case where plaintiffs allege hundreds of millions of dollars in damages are at stake. Moreover, due process concerns are heightened if this Hobson's choice is forced upon defendants. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417-18 (2003). Indeed, due process of law is essentially identified with healthy adversarialism. Article III empowers a federal court to hear only "actual controversies" with "concrete adverseness which sharpens the presentation of issues." *See Baker v. Carr*, 369 U.S. 186, 204 (1962). Moreover, the Seventh-Amendment right to jury trial has, at its very heart, the notion of a *fair* trial, which is defeated by the inability of counsel to consult with and advise its client confidentially. Any restriction on jury trial rights is subject to the utmost scrutiny. *See Dimick v. Schiedt*, 293 U.S. 474, 486 (1935) ("any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care"). These Orders erroneously eliminate the immunity against the disclosure of trial strategy to the adversary described in *Hickman v. Taylor*, 329 U.S. 495 (1947).

If this Court does not instruct the district court to vacate its discovery orders, Seagate will be forced to disclose its trial counsel's communications regarding the core issues in the case through the period of alleged infringement to the opposing counsel and party. The Orders will *preclude any* communications between Seagate and its trial counsel on the central patent issues in the case through the period of

alleged infringement.  This is an untenable position for Seagate or any patent defendant, and it turns the defense of willfulness on its head.

**B.    Seagate Did Not Automatically Waive Privilege for All Trial Counsel and Trial Strategy Communications Pertaining to Patent Infringement, Validity, and Enforceability by Asserting an Advice of Counsel Defense to Willful Infringement**

Seagate has consistently asserted attorney-client privilege and work product protection for its communications with trial counsel.  The district court nonetheless found that Seagate waived protection for communications of trial counsel encompassing the broad subject matters of infringement, validity, and enforceability, simply as a result of Seagate's decision to rely on advice of counsel in response to plaintiffs' willfulness charge.  Seagate finds itself in this untenable situation even though it "followed the rules" and intentionally kept opinion counsel and trial counsel completely separate and independent.  It is undisputed that Seagate's trial counsel played no role in selecting opinion counsel, did not contribute to the opinion, and did not influence the drafting of the opinions in any way.  Moreover, it is undisputed that Seagate did *not* engage in opinion shopping.  There is no indication that Mr. Sekimura's opinions are anything but *bona fide*, and no indication that Seagate's reliance on the opinions is anything but reasonable and *bona fide*.  The undisputed facts show there are no sword-and-shield concerns in this case.

C.    **If *EchoStar* Meant To Extend Waiver of Privilege to Separate and Independent Trial Counsel, *EchoStar* Is in Irreconcilable Conflict with This Court's *En Banc* Decision in *Knorr-Bremse***

If the steps Seagate took are not sufficient to preserve attorney-client privilege with trial counsel, then the law obliterates attorney-client privilege for patent defendants who elect to rely on opinion letters. Such a result cannot be squared with the cornerstone principle of *Knorr-Bremse* that there are to be no special rules in patent law that unduly burden the privilege and distort the attorney-client relationship. *See Knorr-Bremse*, 383 F.3d at 1343.

Interpreting *EchoStar* as extending privilege waiver to separate and independent trial counsel places *Echostar* in direct conflict with the *en banc* opinion in *Knorr-Bremse*. Indeed, it negates the entire rationale of *Knorr-Bremse*. In *Knorr-Bremse*, the *en banc* Court plainly was attempting to allow more flexibility in the reliance or non-reliance on opinions of counsel. To that end, *Knorr-Bremse* stated that it was overruling long-standing precedent to remove "inappropriate burdens on the attorney-client relationship." *Id.* at 1343. This Court could not have intended that the next step in the evolution of the law would be to allow the use of opinions only in exchange for all trial counsel communications. Such an interpretation makes no sense. *Knorr-Bremse* and *EchoStar* together would result in an impossible Catch-22 for patent defendants. That is not a rational view of the law.

Seagate believed, based upon decades of precedent, that, if it maintained separate trial and opinion counsel, waiver of the privilege associated with an advice of counsel defense would not extend to trial counsel. That is an entirely reasonable belief, in view of the stated purpose of privilege waiver—to prevent sword-and-shield tactics. *EchoStar* reaffirmed the law in this respect.

**D.    Based on *EchoStar* and Other Precedent of This Court, There Should Be No Waiver for Privileged Communications of Separate and Independent Trial Counsel Where, as Here, There Are No Sword-and-Shield Concerns**

Correctly read, *EchoStar* and *Knorr-Bremse* do not conflict on either law or policy. It bears emphasizing that *EchoStar* did not address the communications of trial counsel because such communications were not before the Court. The facts before the *EchoStar* Court concerned only opinion counsel. In *EchoStar*, this Court stated the general rule that when a party invokes reliance on advice of counsel as a defense to willful infringement, it waives the attorney-client privilege with regard to any attorney-client communications relating to the same subject matter. *See EchoStar*, 448 F.3d at 1299. As the *EchoStar* Court explained, privilege waiver is driven by its purpose:

> [S]elective waiver of the privilege may lead to the inequitable result that the waiving party could waive its privilege for favorable advice while asserting its privilege on unfavorable advice. In such a case, the party uses the attorney-client privilege as both a sword and a shield. ***To prevent such abuses***, we recognize that when a party defends its actions by disclosing an attorney-client communication, it waives the

- 20 -

attorney-client privilege as to all such communications regarding the same subject matter.

*Id.* at 1301 (emphasis added) (citations omitted).

That is the *only* reason that we have the privilege waiver rule. As this Court has explained, "[t]he overarching goal of waiver ... is to prevent a party from using the advice he received as both a sword, by waiving privilege to favorable advice, and a shield, by asserting privilege to unfavorable advice." *Id.* at 1303 (citations omitted). Yes, fairness requires the waiver rule. But equally for fairness reasons, the privilege waiver must be no broader than necessary to effectuate the goal of the waiver. Otherwise, the danger will be exactly the one with which Seagate is faced: an attempt by an opportunistic adversary to exercise "unfettered discretion to rummage through all of [trial counsels'] files and pillage all of their litigation strategies." *Id.* at 1303. If that is what the law in fact allows, the cure is worse than the disease.

Seagate preserved its attorney-client privilege with trial counsel. The way in which Seagate kept separate litigation and opinion counsel eliminated the specter of any sword-and-shield abuses. It would serve no beneficial purpose to extend waiver to Seagate's trial counsel, and it will compromise Seagate's litigation position. Sword-and-shield concerns are absent, so there is no basis in law or logic for finding a waiver here. This is in harmony with the statement made by this Court in *Fort James* that a court looks to a number of factors to determine a scope

- 21 -

of privilege waiver that is neither too broad nor too narrow: "There is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349-50 (Fed. Cir. 2005). It would be inconsistent to find that *EchoStar*, in contrast, set forth a *per se* rule.

In *EchoStar*, this Court stated: "[A] district court should balance the policies to prevent sword-and-shield litigation tactics with the policy to protect work product." 448 F.3d at 1302. This Court then applied a balancing analysis to the discoverability of opinion counsel's work product. What this Court did *not* say was that henceforth, there was to be a bright line rule of waiver for all communications to the client both by opinion counsel and separate trial counsel on the central patent issues. Indeed, such an automatic waiver rule would contradict *EchoStar*'s directive to the district court to balance the policies to determine whether waiver should be imposed. In applying that balance, sword-and-shield concerns are one side of the scale. If there are no sword-and-shield concerns as is the case here, there is certainly nothing to balance, and there can be no finding of waiver. Said another way, if there is nothing to balance against the policy to protect the privilege, the privilege must prevail.

It is undisputed that there are no opinion-shopping issues in this case. Trial counsel has done what trial counsel is supposed to do—advise on and run the litigation. Seagate has kept trial counsel and opinion counsel in their separate spheres and independent of one another. Without any specter of sword-and-shield tactics, there is nothing to counterbalance the policy to protect privileged communications and work product. Under these conditions, there should be no waiver of privilege for trial counsel communications. Therefore, on the undisputed record, the district court erred in finding waiver of privilege.

### E.    In *Ampex*, the Only Post-*EchoStar* Case To Analyze Privilege Waiver Law Under Facts Involving Separate and Independent Trial Counsel, the District Court Declined To Extend Waiver to Trial Counsel

Since *EchoStar*, there have been a number of district court decisions involving extension of privilege waiver to trial counsel. However, the vast majority of the cases involve opinion and trial counsel from the same firm.[19] Only

---

[19] Where trial counsel and opinion counsel overlap, the issue presented is not solely waiver of *trial counsel*'s communications, as here, but of *opinion counsel*'s communications as well. As *Ampex* observed, such overlap is "an unfortunate blending of roles that is, thankfully, rare and beyond the discussion provided here." *Ampex*, 2006 U.S. Dist. LEXIS 48702, at *11 n.4. The other post-*EchoStar* cases are *Affinion Net Patents, Inc. v. Maritz, Inc.*, No. Civ. A. 04-360-JJF, 2006 WL 2096712 (D. Del. July 28, 2006); *Beck Sys., Inc. v. ManageSoft Corp.*, No. 05 C 2036, 2006 WL 2037356 (N.D. Ill. July 14, 2006); *Genentech, Inc. v. Insmed Inc.*, No. C-04-5429 CW (EMC), 2006 U.S. Dist LEXIS 55992 (N.D. Cal. Aug. 10, 2006), *objections overruled*, dkt. no. 576 (N.D. Cal. Sept. 5, 2006); *Indiana Mills & Mfg., Inc. v. Dorel Indus., Inc.*, No. 1:04-cv-01102-LJM-WTL, 2006 U.S. Dist. LEXIS 34023 (S.D. Ind. May 26, 2006), *opinion withdrawn*, 2006 U.S. Dist. LEXIS 47852 (S.D. Ind. July 14, 2006); *Informatica Corp. v. Bus. Objects Data*
(continued...)

one case, *Ampex*, specifically analyzes how *EchoStar* applies to trial counsel when opinion and trial counsel have been kept separate and independent. In that case, the district court declined to extend waiver to trial counsel. *Ampex Corp. v. Eastman Kodak Co.*, No. Civ. A. 04-1373-KAJ, 2006 U.S. Dist. LEXIS 48702, at *9 (D. Del. July 17, 2006) (Tab K). *Ampex* based its ruling on its understanding that *EchoStar* **did not** authorize the district court to go so far. *Id.* at *10-11.

In *Ampex*, the plaintiff sought all communications between Kodak and its trial counsel "bearing on the subject of infringement" on the grounds that "*Echostar* ... makes everything fair game for discovery."[20] *Id.* at *2, *6. The *Ampex* court rejected any reading of *EchoStar* that "[a]ny time trial counsel is talking to their client about infringement, [plaintiff] is entitled to know about it." *Id.* at *6.

---

*Integration*, No. C 02-3378 JSW (JL), 2006 WL 2038461 (N.D. Cal. July 14, 2006), *aff'd*, 2006 WL 2329460 (N.D. Cal. Aug. 9, 2006); *Intex Recreation Corp. v. Team Worldwide Corp.*, No. Civ. A. 04-1785 PLF/DAR, 2006 WL 2023552 (D.D.C. July 14, 2006).

[20] Interestingly, the *Ampex* court noted that initially the plaintiff contended that *EchoStar* entitled it to every communication from counsel. *Ampex*, 2006 U.S. Dist. LEXIS 48702, at *6 n.3. The court observed that plaintiff "backed off" that position and asserted instead that *EchoStar*'s "core holding" was that "discovery should not be permitted as a sword and shield" and "that principle [was] sufficient to require disclosure of trial counsel's communication [to its adversary in the *Ampex*] case." *Id.*

The *Ampex* court found no indication in *EchoStar* that showed "a desire by the Court of Appeals to have every communication a client has with its trial counsel on the very subject of an infringement trial open to review by opposing counsel." 2006 U.S. Dist. LEXIS 48702, at *9. Plaintiff's reading of *EchoStar*, the court stated, "[was] far too broad and [the plaintiff's motion was] an extravagant demand at odds with the generally understood contours of the attorney-client privilege." *Id.* at *7.

Instead, the *Ampex* court explained that the "broad language" in *EchoStar* must be taken in context. The court took note that *EchoStar* did not address the issue of communications with trial counsel. 2006 U.S. Dist. LEXIS 48702, at *11. Rather, in *EchoStar*, the concern was whether EchoStar was attempting to suppress an unfavorable opinion from opinion counsel on the basis of privilege while relying on another, more favorable opinion, the classic sword-and-shield fact pattern of selective disclosure. "It is hardly surprising that the [Federal Circuit], given those facts, would call that maneuver a foul." 2006 U.S. Dist. LEXIS 48702, at *9. In agreement with Seagate's reading of *EchoStar*, the *Ampex* court identified as the controlling principle that the attorney-client privilege cannot be used as a sword and a shield: "[S]elective waiver of the privilege may lead to the inequitable result that the waiving party could waive its privilege for favorable

advice while asserting its privilege on unfavorable advice." *Id.* at \*8 (citing *EchoStar*, 448 F.3d at 1301).[21]

The *Ampex* court further observed that "if all attorney-client discussions touching on the same subject were to be viewed as 'advice' or 'opinions' on a par with the legal opinions that were at issue in *Echostar*, the [*EchoStar*] court's comments would have to be understood as demolishing the practical significance of the attorney-client privilege." *Id.* at \*10. Such a result would be flatly inconsistent with other portions of *EchoStar* and with the Federal Circuit's jurisprudence regarding attorney-client privilege, particularly *Knorr-Bremse*, 383 F.3d at 1344. *See id.*

The *Ampex* court is the only court since *EchoStar* to analyze privilege waiver under facts which are similar to Seagate's. Judge Jordan reached the correct result. The same outcome should apply here, and there should be no discovery of trial counsel's communications.

---

[21] The *Ampex* court specifically addressed and rejected plaintiff's contention that *EchoStar*'s citation of the *Akeva* case established that waiver should extend to separate and independent trial counsel. *See Ampex*, 2006 U.S. Dist. LEXIS 48702, at \*11 (referencing *Akeva L.L.C. v. Mizuno Corp.*, 243 F. Supp. 2d 418 (M.D.N.C. 2003)). "What [the plaintiff] Ampex ignores is that *Akeva* dealt with circumstances in which the defendant expressly relied on its trial counsel's noninfringement opinion to continue operating, while awaiting a separate opinion from another source." *Id.* (referencing *Akeva*, 243 F. Supp. 2d at 419-20). "That is not akin to the facts in [the *Ampex*] case" nor to the facts in this case. *Id.*

**F.    This Court Has Rejected an "Automatic Waiver" of Privilege for Plaintiffs in an Analogous Context**

In the *Zenith* case, this Court rejected an automatic waiver rule for plaintiffs in an analogous context. *Zenith Radio Corp. v. United States*, 764 F.2d 1577 (Fed. Cir. 1985) (reversing orders to produce documents and other discovery). The issue in *Zenith* was whether plaintiffs may bring a claim and then "hide behind the shield of a privilege and withhold testimony that may materially aid the defense while invoking the aid of the court in prosecuting a claim." *Id.* at 1579 (citation omitted).

In *Zenith*, this Court rejected outright an approach taken by some other courts, namely, an "automatic waiver" rule. For similar reasons as in *Zenith*, no automatic waiver rule should apply here. This Court explained that attorney-client, work product, and executive communications privileges "involve subtle and sensitive questions and ordinarily should not be breached without a more penetrating analysis than the automatic waiver rule involves." *Id.* at 1580. "A party does not automatically waive these privileges, which protect the formulation of legal opinions or litigation strategy, simply by bringing suit." *Id.* Here, too, this Court should clarify that a patent defendant cannot and does not automatically waive its privileges as to all trial counsel communications simply because it raises a defense to willfulness.

The Court in *Zenith* discussed two other approaches: a balancing test, which balances the need for discovery against the need for protecting discovery, and the

- 27 -

more demanding *Hearns* test, which considers whether, among other facts, the opposing party is seeking discovery "vital to his defense." *See id.* at 1579. *Zenith*'s balancing test is similar to the balancing approach in *EchoStar*. In *Zenith*, however, this Court found it unnecessary to choose between the two remaining tests because Zenith failed to make the "strong showing of need" to breach the privilege under either test. *See id.* at 1580. This Court stated, "These matters [sought to be discovered] are tangential to and remote from the central legal issue in the case [the government's rights under certain settlement agreements]. ... [T]heir probative value is too weak to justify breaching the important privileges the government asserted ...." *Id.* at 1580-81.

*EchoStar* did not adopt an automatic waiver rule for all client communications of all counsel, including trial counsel, on infringement, validity, and enforceability. If, on the other hand, *EchoStar* marks the end of privilege (which it cannot) for trial counsel after an advice of counsel defense to willfulness, then there is no such defense going forward. No patent defendant will ever again assert reliance on an opinion letter, if it means that privilege is lost for communications with trial counsel on substantive patent issues. As observed *supra*, that is entirely inconsistent with the decision of the *en banc* Court in *Knorr-Bremse* to overrule long-standing, harsh precedent so that the law of privilege for patent cases would be brought into line with the law of privilege for other areas of law.

## V. CONCLUSION

Seagate has exhausted its remedies in the district court and has no choice but to seek review from this Court. Seagate respectfully requests that this Court clarify the law and eliminate the dilemma that currently exists for Seagate and other patent defendants. For all the above reasons, the Court should issue a writ of mandamus under 28 U.S.C. § 1651 ordering the district court to vacate its Orders of July 11, 2006, May 28, 2004, and September 8, 2004 to produce Seagate's trial counsel communications protected by attorney-client privilege and work-product protection.

Dated: September 28, 2006

Respectfully Submitted,

Raphael V. Lupo
Paul Devinsky
Brian E. Ferguson
McDermott Will & Emery LLP
600 13th Street, N.W., 12th Floor
Washington, D.C. 20005-3096
(202) 756-8000

Terrence P. McMahon
Stephen J. Akerley
Lucy H. Koh
Mary B. Boyle
McDermott Will & Emery LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
(650) 813-5000

Counsel for Petitioner Seagate Technology LLC

EXHIBIT D

United States District Court
For the Northern District of California

1

2

3

4

5

6

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8

3COM CORP,                                    No C 03-2177 VRW

9

        Plaintiff,

10

        v

11

D-LINK SYSTEMS, INC,

12

        Defendant,

13

        and

14

REALTEK SEMICONDUCTOR CORP,

15

        Intervenor.

16
_____

17

3COM CORP,

                                              No C 05-0098 VRW

18

        Plaintiff,

                                              ORDER

19

        v

20

D-LINK SYSTEMS, INC,

21

        Defendant.

22
_____/

23

24

        The parties in the above related cases request the

25

court's assistance in resolving a discovery dispute detailed in

26

their respective letters of April 17, 2007.  Doc ##394-395 (03-2177

27

case); Doc #241 (05-0098 case).  3Com Corp alleges willful

28

infringement in both cases.  Patent Local Rule 3-8 requires certain

**United States District Court**
For the Northern District of California

disclosures where an alleged infringer intends to rely on an "opinion of counsel" defense.  Specifically, Patent Local Rule 3-8 requires disclosure of (1) the opinion, (2) any documents for which the party agrees attorney-client or work product protection has been waived and (3) a privilege log identifying any other document that the party is withholding on the grounds of attorney-client or work product protection.  The rule exempts from the logging obligation any identification of those documents "authored by counsel acting solely as trial counsel."

3Com seeks these disclosures now, pursuant to the deadline set forth in Rule 3-8.  D-Link Systems, Inc and Realtek Semiconductor Corp (collectively "defendants") propose bifurcation of the issue of willfulness so that the parties may benefit from the pending Federal Circuit opinion in In re Seagate Technology, LLC.  Alternatively, defendants seek postponement of their Rule 3-8 disclosures until as late as reasonably possible in light of the current trial date.

In In re Seagate Technology, LLC, the Federal Circuit has invited briefing on whether a party's assertion of the advice of counsel defense should extend waiver of the attorney-client privilege to communications with that party's trial counsel.  See Doc #234 (05-00098), Ex A.  The circuit cited to its previous ruling In re EchoStar, 448 F3d 1294 (Fed Cir 2006), which goes beyond Patent Local Rule 3-8 by requiring that communications with trial counsel concerning an asserted opinion must not only be logged but must also be produced.  Seagate will also consider the Federal Circuit's prior decision in Underwater Devices, Inc v Morrison-Knudsen Co, 717 F2d 1380 (Fed Cir 1983), which addresses

2

the statutory duty of care once an infringer is put on notice of another's patent rights.

3Com argues that defendants should make their Rule 3-8 disclosures now because, if the Federal Circuit overrules EchoStar, defendants will not have disclosed any information that they would not already have had to disclose. Doc #394 at 2. Defendants argue that awaiting the Seagate decision will permit them to make an informed decision on whether to rely on an advice of counsel defense in the first place. Doc #395 at 2. The court agrees. So long as the scope of privilege waiver and the scope of the statutory duty of care remain unknown, defendants should not be required to produce otherwise privileged information. This is particularly true where the Federal Circuit is expected to clarify the law on these issues in a matter of months. (The Federal Circuit has scheduled oral argument in Seagate for June 7, 2007.) Moreover, 3Com does not claim any prejudice from the delay, and defendants' proposal will not require modification of the trial date.

Accordingly, defendants may postpone their Patent Local Rule 3-8 disclosures until the earlier of November 1, 2007 or 30 days after the Federal Circuit's ruling in Seagate.

SO ORDERED.

VAUGHN R WALKER

United States District Chief Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
For the Northern District of California