**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

ENTERASYS NETWORKS, INC,

       Plaintiff,

   v.

FOUNDRY NETWORKS, INC. and
EXTREME NETWORKS, INC.,

       Defendants.

Civil Action No. 05-CV-11298 (DPW)

**FOUNDRY NETWORKS, INC.'S OPPOSITION TO
ENTERASYS' MOTION FOR AN ORDER EXCLUDING FOUNDRY
FROM OBTAINING OR USING "AFFIRMATIVE ASSISTANCE" OF
INVENTOR VIRGILE IN ITS DEFENSE AGAINST THE '022 PATENT IN SUIT**

Defendant Foundry Networks, Inc. ("Foundry") hereby opposes Plaintiff Enterasys Networks, Inc.'s ("Enterasys") Motion for an Order Precluding Defendant Foundry Networks, Inc. from Obtaining or Using the Affirmative Assistance of Kenneth Virgile in Its Defense Against the '022 Patent in Suit and Memorandum in support thereof (Docket Nos. 98 & 99).

Foundry opposes Enterasys' motion because the law and rules are clear that Foundry is entitled to privately interview and obtain factual information from third-party witnesses, including Kenneth Virgile, a named inventor of one of the six patents-in-suit.

Enterasys, however, argues that Foundry is not entitled to interview and obtain factual information from Mr. Virgile because such facts _might_ assist Foundry in its defenses, and, therefore, amount to "affirmative assistance" that would 1) "violate" a patent assignment agreement between Mr. Virgile and his previous employer, Standard Microsystems Corporation, 2) "violate" a non-disclosure agreement between Mr. Virgile and another previous employer, Cabletron, Inc., or 3) cause a transgression of the assignor-estoppel doctrine.

Enterasys has now written a threatening letter to Mr. Virgile which has caused him to stop meeting voluntarily with Foundry's counsel.   Foundry believes that this may be a violation of the ethical rule prohibiting an attorney from interfering with a party's right to seek information from third parties.  Moreover, the letter was written despite the fact that Foundry has repeatedly offered assurances to Enterasys that it was not seeking to obtain confidential or privileged information.  Enterasys has refused, however, to even work with Foundry to define the scope of what Enterasys deems permissible contact between Foundry and Mr. Virgile, instead choosing to file this motion.

Foundry respectfully asks this Court to deny Enterasys' motion, and to allow Foundry to interview privately third-party witnesses on non-privileged and non-confidential facts relating to their prior work, which, as with the case with Mr. Virgile, can be persons who never even worked for Enterasys.

### Background Facts

To assist the Court, Foundry sets forth the following set of background facts, which Foundry believes should not be in dispute:[1]

1.      Of the six patents-in-suit, there are sixteen named inventors.  Only one of these sixteen inventors (Phil Andlauer) currently works for Enterasys.

2.      Kenneth Virgile is a named inventor on one of the six patents-in-suit, Patent No. 6,539,022 ("the '022 patent").  Mr. Virgile has never worked for Enterasys.

3.      Mr. Virgile's original patent application was filed on April 25, 1995 by non-party Standard Microsystems Corporation ("Standard Microsystems"), Mr. Virgile's employer at the time.  This application issued as Patent No. 5,608,726, which is not at issue here.

---

[1] *See, e.g.,* U.S. Patent 6,539,022 (Docket No. 1 at Exh. 5, listing "Related U.S. Application Data"); Declaration of Marc N. Henschke (Docket No. 81) at ¶¶ 5-10, 32, 72-73.

4.      Mr. Virgile's work on the original patent application, in the 1990s, was for Standard Microsystems.  As part of his work for Standard Microsystems, by whom he was employed, Mr. Virgile signed an assignment agreement in connection with his patent application.

5.      In late 1995, Cabletron, Inc. announced that it was acquiring Mr. Virgile's employer, Standard Microsystems. Mr. Virgile left Cabletron soon thereafter, in May 1996. (Years later, Cabletron split into four different companies, one of which is now Enterasys.)

6.      During his very brief tenure at Cabletron, Mr. Virgile signed a non-disclosure agreement ("NDA") with Cabletron relating to his work at Cabletron.  This NDA was signed well after Mr. Virgile's original patent application was filed by Standard Microsystems.

7.      After Mr. Virgile left Cabletron, it filed two continuation applications claiming priority to Mr. Virgile's original patent application.  The first was filed on December 13, 1996. This application issued as Patent No. 5,898,686, which is not at issue here.  The second was filed on April 27, 1999.  This application issued as the '022 patent, which is asserted here.

8.      In this case, Foundry's counsel has entered into an agreement with Mr. Virgile to meet with him on the factual matters relating to his patent, and to compensate him for his time.

9.      Foundry has advised Mr. Virgile not to reveal any privileged or confidential information and has instructed him that he should not violate any contractual obligations he may have related to the '022 patent in his discussions with Foundry's counsel.

10.     To the best of Foundry's knowledge, Mr. Virgile has not revealed any privileged or confidential information to Foundry's counsel nor violated any contractual obligations.

11.     As a result of the letter from Enterasys's counsel threatening Mr. Virgile with litigation, Mr. Virgile has expressed his intent not to continue meeting with Foundry, until this matter is resolved to avoid legal risk to him.

<u>**ARGUMENT**</u>

**I.    ENTERASYS' MOTION SHOULD BE DENIED BECAUSE FOUNDRY IS ENTITLED TO PRIVATELY INTERVIEW AND OBTAIN FACTUAL INFORMATION FROM THIRD-PARTY WITNESSES.**

**A.    Foundry Is Entitled to Know and Use Non-Privileged, Non-Confidential Facts from Mr. Virgile.**

Mr. Virgile is the only named inventor on the '022 patent, and as such, he is an important fact witness concerning the alleged inventions of the '022 patent and the inventive activity that occurred while he was at Standard Microsystems. Enterasys apparently would prefer if no one talked to Mr. Virgile at all to find out relevant information surrounding his invention. In all of its dealings with Mr. Virgile, Foundry has not sought privileged or confidential information.

To the extent that Mr. Virgile knows _facts_ underlying the validity or enforceability of the '022 patent, Foundry is entitled to know and use those facts to support its case. Fed. R. Civ. P. 26(b)(1). The use of non-privileged, non-confidential information does not violate Mr. Virgile's patent assignment, non-disclosure agreement, or the assignor estoppel doctrine and does not require him to disclose any privileged information. The Federal Rules do not require Foundry to only seek and obtain factual information by deposition, and Foundry is entitled to discuss factual information with Mr. Virgile privately without Enterasys present (as Enterasys acknowledges).

**B.    Foundry Has Only Sought and Obtained Non-Protected Information, But Enterasys Considers Even This To Be "Affirmative Assistance."**

Foundry is entitled to have private discussions with Mr. Virgile, as a _fact witness_. The law is clear that defendant's attorneys are even permitted to conduct _ex parte_ interviews of former employees, "so long as measures are taken to steer clear of privileged or confidential information." _See Muriel Siebert & Co, Inc. v. Intuit, Inc._, Slip op. 03956, 2007 WL 1319261, at *3 (N.Y. May 8, 2007). Prior to engaging in any conversations with Mr. Virgile, Foundry

-4-

advised him not to disclose any privileged or confidential information that might belong to Enterasys or one of its predecessors.

In a situation analogous to the case at hand, in *Muriel Siebert*, counsel for the defendant advised the former Executive Vice President and Chief Operating Officer of the plaintiff, prior to an *ex parte* interview, not to disclose any privileged or confidential information, including conversations with counsel, or provide any information on trial strategy. 2007 WL 1319261, at *2. Counsel for the defendant also advised the former employee not to answer any question that might provide such information. *Id.*

The court in *Muriel Siebert* held that defendant's counsel had not violated any ethical rules by such contact. *Id.* at *3. The court in *Muriel Siebert* interpreted New York Disciplinary Rule 7-104(A)(1), which corresponds to Rule 4.2 of the Massachusetts Rules of Professional Conduct. *See* Rules of Prof'l Conduct R. 4.2, comments (2002); *see also id.* at cmt. 4:

> In the case of an organization, this Rule prohibits communications by a lawyer for another person or entity concerning the matter in representation only with those agents or employees who exercise *managerial responsibility in the matter*, who are alleged to have committed the *wrongful acts at issue* in the litigation, or who have *authority on behalf of the organization* to make decisions about the course of the litigation.

Counsel for Foundry undertook similar steps in its communications with Mr. Virgile as the attorneys in *Muriel Siebert*, advising him not to disclose any confidential or privileged information at the outset. Foundry is not seeking to obtain and, to its knowledge, has not obtained any privileged or confidential Enterasys information (or, for that matter, any privileged or confidential Standard Microsystems or Cabletron information).

Foundry and its litigation counsel have complied with the Federal Rules of Civil Procedure and the Massachusetts ethical rules in having discussions with Mr. Virgile about factual information. Mr. Virgile is no different than other third parties with relevant information

from whom Foundry is entitled to discover information. Foundry has not breached any ethical duties by virtue of its communications with Mr. Virgile.

### C.    Enterasys' Threats to Mr. Virgile Run Afoul of the Massachusetts Ethical Rules And Have Compromised Foundry's Relationship With Mr. Virgile.

Enterasys' actions leading up to this motion have inhibited Foundry's ability to effectively litigate its case. In an April 11, 2007 letter, Enterasys threatened to sue Mr. Virgile if he continued to cooperate with Foundry by providing relevant information. As a result of the letter, Mr. Virgile has recently advised Foundry that he is no longer willing to provide information until he can be assured that he will not be sued by Enterasys. To Foundry's knowledge, Enterasys has not sent threatening letters to any of the other fifteen named inventors on the six patents-in-suit.

Rule 3.4 of the Massachusetts Rules of Professional Conduct states: "A lawyer shall not…request a person other than a client to *refrain from voluntarily giving relevant information to another party* unless: (1) the person is a relative or an employee or other agent of a client; and (2) the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information." Mass. Rules of Prof'l Conduct R. 3.4(f) (1998).

Here, it is undisputed that Mr. Virgile is not a relative, employee, or other agent of Enterasys. Enterasys is asserting six patents, with sixteen named inventors, against Foundry. The parties have deposition limits, requiring extensive independent investigation of facts through interviews and other non-formal discovery. Throughout this case, Enterasys has stated that most, if not all, of the relevant factual information is beyond its care, custody, and control. *See* Declaration of Marc N. Henschke (Docket No. 81) (sealed). Of the sixteen named inventors, only one (Phil Andlauer) is an employee of Enterasys. As such, Foundry has been required to pursue discovery from the former employees -- now third parties.

Foundry should not have to check with Enterasys before making a phone call to a former inventor and fact witness, especially where Foundry's attorneys are aware of their ethical obligations surrounding patent assignments and have instructed third party witnesses to avoid disclosing privileged or confidential information.

In a case with facts analogous to those at bar, another session of this Court has noted its concern that contact between counsel and a witness' employer which resulted in the refusal of that witness to cooperate with a party in the case could give rise to sanctions -- including disqualification of counsel as a result of the chilled relationship between the witness and the party. *M.I.T. v. Imclone Sys., Inc.*, 04-10884 RGS (D. Mass. Jul. 24, 2006) (Docket No. 142).

Here, Enterasys' counsel has sent a threatening letter to a *fact witness*, which has resulted in the fact witness refusing to cooperate in informal discovery. Such actions amount to suppression of evidence. Mass. Rules of Prof'l Conduct R. 3.4(a) (noting that "A lawyer shall not…unlawfully obstruct another party's access to evidence or unlawfully…conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act").[2]

Indeed, Enterasys' letter to Mr. Virgile threatens to frustrate Foundry's efforts to collect and marshal evidence, one of the key points addressed by Rule 3.4:

> The procedure of the adversary system contemplates that the evidence in a case is to be marshaled competitively by the contending parties. Fair competition in the adversary system is secured by prohibitions against destruction or concealment of evidence, improperly influencing witnesses, obstructive tactics in discovery procedure and the like.

*Id.* at R. 3.4 cmt. 1.

---

[2]     Enterasys also speculates and suggests that Mr. Virgile refuses to accept or return phone calls of Enterasys' counsel because Foundry has instructed Mr. Virgile not to. However, Foundry has never instructed Mr. Virgile not to accept or return calls from Enterasys' counsel, and Foundry has offered to ask Mr. Virgile to affirmatively respond to such calls. Exh. C [5/24/07 Ltr. from Mr. Bauer to Mr. Henschke].

Enterasys has effectively eliminated Foundry's ability to discover untarnished information from Mr. Virgile unless Enterasys is allowed to observe. However, the presence of Enterasys or its counsel on private conversations with Mr. Virgile would compromise Mr. Virgile's ability to provide a frank assessment of the '022 patent and relevant prior art. Based on Enterasys' interference, Foundry is precluded from effectively litigating its affirmative defenses and any counterclaims for the '022 patent.

As a compromise to avoid the instant motion, Foundry represented to counsel for Enterasys before Enterasys filed its motion that (1) Foundry has not sought and will not seek to elicit attorney-client privileged or confidential information from Mr. Virgile; (2) Foundry has not sought and will not seek to elicit attorney-client privileged information from the attorneys who wrote and who filed the grandparent patent of the '022 patent; (3) Mr. Virgile was instructed not to provide attorney-client privileged information; (4) Foundry has not, in fact, to the best of its knowledge, received any attorney-client privileged information from Mr. Virgile.[3] *See* Exh. A [3/2/07 Ltr. from Mr. Dutta to Mr. Henschke]; Exh. B [1/23/07 Ltr. from Mr. Bauer to Mr. Henschke]; Exh. C [5/24/07 Ltr. from Mr. Bauer to Mr. Henschke]. The representations by Foundry's counsel should be sufficient to eliminate the concerns of Enterasys' counsel, and Foundry has asked Enterasys to withdraw its motion based on these representations. Exh. C [5/24/07 Ltr. from Mr. Bauer to Mr. Henschke]. Thus far, Enterasys has declined.

### D.    Mr. Virgile Is Entitled To Compensation For His Time.

Enterasys' Motion says "Foundry and its counsel entered into a contractual consulting agreement with Mr. Virgile to actively oppose Enterasys' efforts to enforce the '022 patent."

---

[3]    Enterasys' motion expresses surprise that Proskauer Rose rather than Orrick, Herrington & Sutcliffe LLP ("Orrick") responded to Enterasys' April 11, 2007 letters to Mr. Virgile and Orrick. However, because Enterasys' counsel's actions implicated violations of the ethical rules for lawyers in this district, the letter was appropriately sent from Foundry's Boston-based attorneys, at Proskauer Rose. Enterasys' suggestion that Proskauer Rose responded to somehow hide information that Foundry or Orrick had already "obtained" is baseless.

Motion at 1. Enterasys' speculation is false. In any event, Enterasys cites no authority for the novel proposition that a third party with factual knowledge cannot be paid for his or her time.

Foundry ought to be able to interview Mr. Virgile without restriction to understand the differences between his invention, the prior art, and what is actually claimed in the '022 patent to inform its understanding of the patent and the underlying inventive activity. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter").

Enterasys apparently acknowledges that Foundry is allowed to meet privately with Mr. Virgile, but then argues that in any such meeting, Mr. Virgile cannot provide "affirmative assistance" to Foundry in connection with the '022 patent. Exh. C [5/24/07 Ltr. from Mr. Bauer to Mr. Henschke]. What the '022 patent says, and what is in the prior art, are _facts_, and whether the patent -- as prosecuted by others after Mr. Virgile left Cabletron[4] -- describes his invention is a question of fact. *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 412 F.3d 1331, 1337 (Fed. Cir. 2005) (discouraging "an across-the-board rule barring testimony of the kind contained in" inventor declarations proffered by the defendant to support summary judgment of invalidity under 35 U.S.C. § 102(f)).

---

[4]      On April 25, 1995, U.S. Application No. 08/428,403 ("'403 grandparent application") was filed and titled "Multimedia Bandwidth Accelerator." In May 1996, Mr. Virgile left Cabletron, which had acquired Standard Microsystems. Seven months *after* Mr. Virgile left Cabletron, U.S. Application No. 08/766,784 ("the '784 parent application") was filed, on December 13, 1996, as a continuation of the grandparent application. The '403 application issued as U.S. Patent No. 5,608,726 on March 4, 1997 ("the grandparent patent"). Almost three years *after* Mr. Virgile left Cabletron, on April 26, 1999, U.S. Application No. 09/299,970 ("the '970 grandchild application") was filed as a continuation of the '784 parent application. The very next day, April 27, 1999, the '784 parent application was issued as U.S. Patent No. 5,898,686 ("the parent patent"). The '970 grandchild application was issued as the '022 patent-in-suit on March 25, 2003, titled "Network Device With Multicast Forwarding Data."

Mr. Virgile is an independent networking consultant and provides services to his clients on an hourly-rate basis. Thus, the time Mr. Virgile spends speaking with Foundry is, hour-for-hour, time that he is not able to spend earning money in his trade. As such, Foundry is entitled to reimburse Mr. Virgile for the time spent, so that Mr. Virgile does not incur monetary disadvantage as a result of providing factual information. Enterasys has acknowledged that Foundry is entitled to reimburse Mr. Virgile for his time. Exh. C at 2 [5/24/07 Ltr. from Mr. Bauer to Mr. Henschke].

Other than providing relevant facts (which may underlie Foundry's legal positions), Mr. Virgile has not assisted Foundry in developing its inequitable conduct case. Thus, Foundry has not entered into an improper relationship with Mr. Virgile or asked Mr. Virgile to do anything that would prevent Enterasys from "enforcing" its rights. Foundry respectfully suggests that this conduct by Enterasys is sanctionable, and should be sanctioned, or at least prohibited.

### E.    Neither Foundry Nor Mr. Virgile Have Violated the Assignor Estoppel Doctrine.

Enterasys has charged Foundry and Mr. Virgile with attempting to violate the assignor estoppel doctrine. Assignor estoppel has no bearing on any aspect of this case. Mr. Virgile is not designing or creating any technology for Foundry. He is merely being compensated for his time in sharing his factual knowledge and expertise.

Under the doctrine of assignor estoppel, an inventor who assigns a patent to a third party is estopped from later attacking the validity of the patent. *Checkpoint Sys.*, 412 F.3d at 1336. A party that is in privity with the assignor may also be estopped from challenging the validity of the patent where "there is a close relationship" between the inventor and the accused infringer, "such as where 'the ultimate infringer availed itself of the inventor's knowledge and assistance to conduct infringement.'" *Id.* at 1336-37 (citing *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d

821, 839 (Fed. Cir. 1991)). The assignor estoppel doctrine does not apply here because the contacts between Foundry's litigation counsel and Mr. Virgile do not place Foundry in any privity with Mr. Virgile.

Enterasys argues that Foundry and Mr. Virgile are in privity by pointing to *Pandrol v. AirBoss Ry.*, No. 99-0182-CV-W-SOW, 2003 U.S. Dist. LEXIS 26993, *10-11 (W.D. Mo. Oct. 15, 2003), *aff'd* 424 F.3d 1161 (Fed. Cir. 2005). However, the *Pandrol* Court did not address whether the defendant in that case was in privity with an assignor. It held only than an inventor who had assigned the patent-in-suit was prohibited "from testifying against the validity of its own patent." 424 F.3d at 1166. That rule is not applicable here because Foundry has not proffered Mr. Virgile's testimony on the issue of the invalidity of the '022 patent. *Pandrol* did not hold that the defendant was prohibited from talking to or otherwise interacting with the inventor, which is the relief Enterasys seeks here.

Further, Mr. Virgile has not assisted Foundry in any way with the design or development of accused Foundry products or with the operation of Foundry's business. *Checkpoint Sys.*, 412 F.3d at 1336-37. Rather, Foundry has sought only to obtain factual information from Mr. Virgile surrounding his original patent application filed by Standard Microsystems. Enterasys cannot seriously argue that by pursuing its investigation of the facts directly with an inventor, Foundry is somehow barred from alleging invalidity based on information discovered from that inventor.

## **CONCLUSION**

Enterasys' motion is based on pure speculation and is an attempt to restrict Foundry's ability to defend itself against claims of infringement. Foundry may contact third party inventors who are outside of Enterasys' control, and the Court should deny Enterasys' motion to prevent Foundry from obtaining factual information.

Dated: May 30, 2007

Respectfully submitted,

/s/ Steven M. Bauer

_____

Steven M. Bauer (BBO# 542531)
Jeremy P. Oczek (BBO# 647509)
John W. Pint (BBO# 660548)
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110-2600
Telephone:  (617) 526-9600
Facsimile:  (617) 526-9899

William Anthony, Jr.*
I. Neel Chatterjee*
Fabio E. Marino*
Matthew H. Poppe*
Michael F. Heafey (BBO# 556931)
Sanjeet K. Dutta*
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 614-7400
Facsimile:  (650) 614-7401

* Admitted *Pro Hac Vice*

ATTORNEYS FOR DEFENDANT
FOUNDRY NETWORKS, INC.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that this document was filed through the ECF system on May 30, 2007 and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Steven M. Bauer

_____

Steven M. Bauer

EXHIBIT A



# ORRICK

March 2, 2007

Sanjeet K. Dutta
(650) 614-7647
sdutta@orrick.com

**Via U.S. Mail and Facsimile**

Marc N. Henschke, Esq.
Robins, Kaplan, Miller & Ciresi LLP
800 Boylston Street, 25th Floor
Boston, MA  02199

Re:    **Enterasys Networks, Inc. v. Foundry Networks, Inc.** *et al.*
         **Civil Action No. 05-11298-DPW**

Dear Marc:

I am in receipt of your letters of January 9, 2007, February 6, 2007, and March 1, 2007 regarding Orrick's representation of Mr. Virgile for the purposes of the subpoena Enterasys served on Mr. Virgile on November 9, 2006.  In your letter you express concern as to breaches of the attorney-client privilege, and the potential violation of the assignor estoppel doctrine.

I disagree with your contention that it is improper for Orrick to represent Mr. Virgile in this matter. Regardless, I can confirm that Orrick has not, and will not, seek to elicit attorney-client privileged information from Mr. Virgile, even though Enterasys has failed to demonstrate that it has standing to assert any such privilege.

Furthermore, your assertions regarding assignor estoppel are not applicable in this instance.  Mr. Virgile has never participated in any product development for Foundry, and he is not involved in any of Foundry's business or technical affairs.  Foundry therefore is not, and has never been, in privity with Mr. Virgile.

If you have any questions, please do not hesitate to contact me.

Best regards,

*Sanjeet Dutta*

Sanjeet Dutta

OHS West:260185988.1

EXHIBIT B

One International Place
Boston, MA 02110-2600
Telephone 617.526.9600
Fax 617.526.9899

NEW YORK
LOS ANGELES
WASHINGTON
BOCA RATON
NEWARK
NEW ORLEANS
PARIS

# PROSKAUER ROSE LLP

**Steven M. Bauer**
Member of the Firm

Direct Dial 617.526.9700
sbauer@proskauer.com

January 23, 2007

<u>*Via E-Mail*</u>

Marc N. Henschke, Esq.
Robins, Kaplan, Miller & Ciresi LLP
25th Floor, Prudential Tower
800 Boylston Street
Boston, MA 02199

> Re:    Enterasys Networks, Inc. v. Foundry Networks, Inc. *et al.*
>        Civil Action No. 05-11928-DPW

Dear Marc:

Following up on our call on Friday, this letter is to confirm the following:

1.  No one working on the Foundry/Enterasys litigation has had any discussions with Ken Rubenstein or Evan Kahn regarding their substantive involvement (if any) relating to any patent application related to any matter in this case.

2.  In the course of the Foundry/Enterasys litigation, neither Mr. Rubenstein nor Mr. Kahn have done any work for Foundry and neither has reached out to, assisted or otherwise communicated with any investors of any Enterasys-owned patents, nor have they been asked to do so.

3.  Our firm does not now have any prosecution related files relating to the Enterasys-owned patents in this litigation.  My understanding is that those files were transferred out several years ago.

4.  We have put in place an ethical wall to assure that no one working on the Enterasys litigation will discuss the litigation or other related matters with either Mr. Rubenstein or Mr. Kahn.

PROSKAUER ROSE LLP

Marc Henschke
January 23, 2007
Page 2

I trust that this gives you the assurances you need that the Foundry legal team at Proskauer has not made improper use of any confidential or privileged information (if my partners even have any such information) regarding the patent application now owned by your client.

Very truly yours,

Steven M. Bauer

EXHIBIT C

# PROSKAUER ROSE LLP

One International Place
Boston, MA  02110-2600
Telephone 617.526.9600
Fax 617.526.9899

NEW YORK
LOS ANGELES
WASHINGTON
BOCA RATON
NEWARK
NEW ORLEANS
PARIS

**Steven M. Bauer**
Member of the Firm

Direct Dial 617.526.9700
sbauer@proskauer.com

May 24, 2007

<u>**Via Email**</u>

Marc Henschke, Esq.
Robins, Kaplan, Miller & Ciresi LLP
 25th Floor, Prudential Tower
800 Boylston Street
Boston, MA  02199

Re:    <u>Enterasys Networks v. Foundry Networks et al., Case No. 05-11298</u>

Dear Marc:

I write in response to your motion for an order prohibiting us from working with Ken Virgile, and asking for copies of our notes related to our past meetings with him.  I was somewhat surprised to see your motion when I did because when we spoke last week, I promised to get you a letter putting to rest most of your wild speculation about Mr. Virgile.  I thought you had agreed to wait to see that letter  to avoid the need, as you now have, to tell the court you have made a large number of factually inaccurate statements.

First, let me put in writing what I told you on the phone during our meet and confer, so that you cannot continue to misquote me or profess not to understand our position.

1.  On our call, you expressed your concern that we were asking Mr. Virgile for attorney-client privileged or confidential information, or that even if we didn't ask him for it, we *might* inadvertently learn some. I told you on the phone that I believed, and that I would confirm in writing, that Mr. Virgile was instructed not to disclose any attorney-client or confidential materials to Foundry or its counsel.

Consider this letter that confirmation.  I also confirm that to the best of our knowledge, Mr. Virgile has not in fact disclosed any attorney-client privileged or confidential information to us.  Of course, we will need to trust Mr. Virgile in this regard, but we have no reason to believe that he cannot make that decision appropriately or honestly.

2.  On our call, you also expressed your concern that because Mr. Virgile would not take your phone calls and Foundry was interfering with your ability to interview him.  You may also

PROSKAUER ROSE LLP

Marc Henschke, Esq.
May 24, 2007
Page 2

have suggested that you thought our agreement with Mr. Virgile prevented him from talking with you. I told you on the phone, and offered to confirm in writing, that Mr. Virgile was not asked by Foundry or its counsel not to talk with you about matters related to his patent application. Please consider this letter that confirmation.

In addition, I do want to confirm here that I also told you that we would be willing to affirmatively request Mr. Virgile to take your calls. That offer remains open if you agree that we both should be free to discuss the facts with him privately.

3. On our call, I told you that there was no need for you to rush a motion to court, because Mr. Virgile has informed Foundry that he felt compelled to stop talking with us because he felt intimidated by your threats to sue him if he continued to meet privately with Foundry or its counsel.

I offered in our meeting to agree not to seek further discussions with Mr. Virgile until the issues in this motion were resolved. Apparently, you didn't want to wait to learn the facts before taking the opportunity to attack Foundry's counsel in a new set of pleadings.

4. On our call, you expressed concern that Mr. Virgile was "affirmatively working" towards the invalidity of his patent. Of course, you confirmed to me that your fears were entirely speculative. You also told me that you agreed that under the law, Foundry had a legal right to interview Mr. Virgile privately (i.e. outside your presence) about relevant facts, and to pay him for his time.

Our disagreement seems to be over what you refer to as "affirmative" work. I asked you repeatedly for but you refused to give me, any examples of what you thought might be prohibited conduct.

I confirm now that I offered on the phone that to resolve this matter, we would agree not to ask Mr. Virgile to advise us as an independent expert would on issues of infringement or validity. I suggested we agree that we could ask him the types of questions that would be appropriate in a deposition. I told you that I was open on how we described such limitations, as long as they were in writing so we knew the parameters of our agreement.

We remain willing to discuss reasonable limits on the scope of our questioning of Mr. Virgile. Of course, any limits must allow us to ask him about 1) his knowledge of the prior art during the patent application process; 2) his knowledge of on-sale and development activities relative to his work relating to this patent; and 3) his understanding of anything technical discussed in our described within his public patent prosecution files.

You rejected my offer on the phone out-of-hand.

PROSKAUER ROSE LLP

Marc Henschke, Esq.
May 24, 2007
Page 3

I want to be clear -- we are willing to work with you on this.  But, we cannot reach any agreement so long as you refuse to concede any of the following:

1)  that we have the legal right to privately interview any former inventor who is not represented by your firm, such as Mr. Virgile,  regarding relevant facts;

2)  that former employees have the legal right to be paid for their time;

3)  that our notes of such interviews are privileged work product; and that

4)  whether or not the written patent assignment may obligate an inventor to "assist" you (which is certainly itself open to dispute), it certainly does not prevent him from discussing the facts with us.

We intend to vigorously oppose your motion.  In doing so, we will correct your obvious factual misstatements, advise the court of our offers of compromise, and --after the motion is decided --seek dismissal of the Virgile patent from this case if Mr. Virgile no longer agrees to discuss the case with us.

I urge you to reconsider your position, and to review again whether any of our proposals are workable given the facts as they actually exist, and not as viewed by perhaps "paranoid" eyes.

Please let me know by the close of business on Tuesday whether you believe there is anything more we can do to resolve this matter.

Very truly yours,

Steven M. Bauer