UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

_____

| | |
|---|---|
| | ) |
| ENTERASYS NETWORKS, INC., | ) Civil Action No: 05-CV-11298 (DPW) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| FOUNDRY NETWORKS, INC. AND | ) |
| EXTREME NETWORKS, INC., | ) |
| | ) |
| Defendants. | ) |

_____)

**ENTERASYS NETWORKS, INC.'S MOTION FOR LEAVE TO
FILE A REPLY BRIEF IN SUPPORT OF MOTION FOR AN ORDER
PRECLUDING DEFENDANT FOUNDRY NETWORKS, INC.
FROM OBTAINING OR USING THE AFFIRMATIVE ASSISTANCE
OF KENNETH VIRGILE IN ITS DEFENSE AGAINST THE '022 PATENT IN SUIT**

Plaintiff Enterasys Networks, Inc. ("Enterasys") hereby moves pursuant to Local Rule 7.1

for leave to file a short Reply Brief and accompanying Declaration of Christopher P. Sullivan --

attached hereto as Exhibits A and B respectively -- in support of its pending motion to seek a

Court Order precluding defendant Foundry Networks, Inc. ("Foundry") from obtaining or using

the affirmative assistance of Kenneth Virgile ("Mr. Virgile") in its defense against the '022 patent

(hereinafter "Enterasys Motion"), previously filed on May 16, 2007. (Docket Nos. 98 - 100).

As grounds for this request for leave, Enterasys states the following:

1.      On May, 30, 2007, Foundry filed an Opposition (Docket Entry No. 107) to the

Enterasys Motion. In its Opposition, Foundry re-characterized its relationship with Mr. Virgile in

a way that directly contravenes earlier documented statements attributed to Foundry and/or its

counsel. Moreover, Foundry made several misstatements of the law.

2.      Enterasys seeks to file the attached Reply Brief so as to have a full and fair opportunity to respond to Foundry's new and contradictory position, and to correct Foundry's various legal and factual misstatements. Enterasys believes that its attached Reply Brief will thereby assist the Court in better understanding and being able to resolve the issues presented by the Enterasys Motion.

4.      On June 7, 2007, counsel for Foundry indicated that it did not object to Enterasys' request for leave to file a Reply Brief.

For the foregoing reasons, Enterasys respectfully requests that its present motion for leave to file a Reply Brief be granted.

Dated:  June 7, 2007                    Respectfully submitted,

                                        ENTERASYS NETWORKS, INC.

                                        By its attorneys,

                                        /s/ Christopher P. Sullivan_____
                                        Christopher P. Sullivan, Esq. (BBO No.485120)
                                        Marc N. Henschke, Esq. (BBO No. 636146)
                                        Alan E. McKenna (BBO No. 644556)
                                        William J. Rocha, Esq. (BBO No. 657924)
                                        Robins, Kaplan, Miller & Ciresi L.L.P.
                                        800 Boylston Street, 25th Floor
                                        Boston, MA 02199
                                        Tel. (617) 267-2300

Of Counsel:

A. James Anderson, Esq. *(pro hac vice)*
Marla R. Butler, Esq. *(pro hac vice)*
Anna R. Carr, Esq. *(pro hac vice)*
Robins, Kaplan, Miller & Ciresi L.L.P.
2600 One Atlanta Plaza
Atlanta, GA 30326-1386
Tel. (404) 760-4300

Robert A. Auchter, Esq. *(pro hac vice)*
Robins, Kaplan, Miller & Ciresi L.L.P.
1801 K Street, N.W.
Washington, DC  20006
Tel. (202) 775-0725

035039607

## CERTIFICATE OF SERVICE

I, Christopher P. Sullivan, hereby certify that on June 7th, 2007, I caused the attached *Motion for Leave to File Reply Brief In Support Of Motion For An Order Precluding Defendant Foundry Networks, Inc. From Obtaining Or Using The Affirmative Assistance Of Kenneth Virgile In Its Defense Against The '022 Pate* to be served electronically pursuant to the Court's CM/ECF electronic filing system upon Defendants' respective counsel of record as indicated by asterisks below:

**Counsel for Defendant Foundry Networks, Inc.**
William L. Anthony, Jr., Esq.*
I. Neel Chatterjee, Esq.*
Michael F. Heavey, Esq.
Sanjeet K. Dutta, Esq.
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025

Steven M. Bauer, Esq.*
Jeremy P. Oczek, Esq.*
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110-2600

**Counsel for Defendant Extreme Networks, Inc.**

Terrence P. McMahon, Esq.*
Vera M. Elson, Esq.*
David H. Dolkas, Esq.
MCDERMOTT, WILL & EMERY LLP
3150 Porter Drive
Palo Alto, CA  94303-1212

Emily E. Smith-Lee, Esq.*
Peter L. Resnik, Esq.*
MCDERMOTT, WILL & EMERY LLP
28 State Street
Boston, MA  02109-1775

Christopher D. Bright, Esq.*
MCDERMOTT, WILL & EMERY LLP
18191 Von Karman Avenue, Suite 400
Irvine, CA  92612-7107

Dated:  June 7, 2007                    /s/ Christopher P. Sullivan
                                        Christopher P. Sullivan, Esq. (BBO No. 485120)

# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

_____
                                                            )
ENTERASYS NETWORKS, INC.,          )          Civil Action No: 05-CV-11298 (DPW)
                                                            )
                    Plaintiff,                        )
                                                            )
v.                                                          )
                                                            )
FOUNDRY NETWORKS, INC. AND     )
EXTREME NETWORKS, INC.,             )
                                                            )
                    Defendants.                    )
_____)


**REPLY BRIEF IN SUPPORT OF MOTION FOR AN ORDER
PRECLUDING DEFENDANT FOUNDRY NETWORKS, INC.
FROM OBTAINING OR USING THE AFFIRMATIVE ASSISTANCE
OF KENNETH VIRGILE IN ITS DEFENSE AGAINST THE '022 PATENT IN SUIT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     PRELIMINARY STATEMENT ..................................................................................... 1

II.    ARGUMENT .................................................................................................................. 4

      A.     Foundry's Opposition Papers Contradict Both Foundry's And Mr.
            Virgile's Prior Statements That A Paid Consulting Agreement Exists
            Between Foundry And Mr. Virgile, The Intent Of Which Is To Prevent
            The Enforcement Of The '022 Patent ...................................................................... 4

      B.     Assignor Estoppel Is Applicable Because Permitting Foundry And/Or Its
            Counsel To Hire Mr. Virgile For Purposes Of Contesting The '022 Patent
            Would Lead To An Unfair And Unjust Result In Light Of Mr. Virgile's
            Patent Assignment And Contractual Obligations To Enterasys ............................ 8

III.   CONCLUSION ............................................................................................................. 10

# I.
## PRELIMINARY STATEMENT

Plaintiff Enterasys Networks, Inc. hereby submits this reply brief in support of its pending motion (hereinafter "Enterasys Motion") to seek a Court Order precluding defendant Foundry Networks, Inc. ("Foundry") from obtaining or using the affirmative assistance of Kenneth Virgile ("Mr. Virgile") in its defense against U.S. Patent No. 6,539,022 (the "'022 patent"). Mr. Virgile is the sole inventor of the '022 patent. The reply brief responds to arguments raised, and misstatements made, in Foundry's opposition papers recently filed with the Court on May 30, 2007 ("Foundry Opposition").

Foundry's opposition papers seek to cast Foundry's interactions with Mr. Virgile as a series of private interviews with a paid fact witness, and alleges that Enterasys is attempting to prevent all discussions between Foundry and Mr. Virgile. *See* (Foundry Opp. pp. 1, 4). The Foundry Opposition also claims that Enterasys sent "threatening" letters to Mr. Virgile that Foundry contends violate the Massachusetts Rules of Professional Conduct. *Id.* at 2. However, the exhibits submitted with the Enterasys Motion repudiate Foundry's new and unsupported version of the events.[1]

Foundry's claim to this Court that Mr. Virgile is simply a "fact witness" is new. Before Enterasys filed its motion on May 16, 2007, Foundry referred to Mr. Virgile as its consultant. In fact, all evidence indicates that Mr. Virgile's role is that of a consultant to Foundry and/or its

---

[1] In its opposition papers (Docket No. 107), Foundry failed to submit with an affidavit that verifies <u>any</u> factual statements describing Foundry's relationship with Mr. Virgile. Thus, neither Foundry nor its counsel have confirmed that Mr. Virgile did not perform consulting work for Foundry's defense against the '022 patent. In fact, Foundry's position that Mr. Virgile is merely a paid fact witness is directly contradicted by Foundry's own documents and prior statements that Enterasys submitted to the Court through the Declaration of Marc N. Henschke (Docket No. 100). Moreover, as detailed in the attached Declaration of Christopher P. Sullivan ("Sullivan Decl."), the May 24, 2007 letter from Foundry's counsel (Docket No. 107-4) misstates many facts regarding the May 15, 2007 meet-and-confer between the parties.

counsel. The distinction between a fact witness and a consultant is significant and, despite

Foundry's hopes to the contrary, should not be ignored by this Court in deciding the instant

motion. For example, as a "fact-witness," Mr. Virgile's writings, communications with Foundry

or mental impressions are not protected from discovery, nor are Foundry's statements to Mr.

Virgile protected. However, courts recognize that a "consultant" is associated with a particular

side within a litigation, and under Rule 26(b)(3), could arguably shield from disclosure a

consultant's various writings, opinions and communications with that party or its counsel.

Indeed, Mr. Virgile has indicated in his last letter to Enterasys that he will not disclose the nature

of his communications with Foundry, and Foundry stated during a May 15, 2007 meet-and-

confer teleconference that it will not reveal any information it has received from Mr. Virgile.

Moreover, because it is believed that Mr. Virgile's consulting role includes assisting with

Foundry's noninfringement defense, Foundry has presumably given him confidential information

in the form of access to internal Foundry documents. That access arguably precludes Mr. Virgile

from assisting Enterasys with the enforcement of the '022 patent as he is required to do under a

patent assignment agreement. *See Koch Refining Co. v. Jennifer L. Boudreaux MV*, 85 F.3d 1178

(5th Cir. 1995) ("[N]o one would seriously contend that a court should permit a consultant to

serve as one party's expert where it is undisputed that the consultant was previously retained as

an expert by the adverse party in the same litigation and had received confidential information

from the adverse party pursuant to the earlier retention.") (quotes and citations omitted).

Mr. Virgile signed a patent assignment agreement ("Assignment Agreement") with

Enterasys' predecessors that created continuing obligations to assist Enterasys with enforcing the

'022 patent. Mr. Virgile has refused to work with Enterasys, and instead entered into a consulting

agreement with Foundry and/or its counsel to actively oppose the enforcement of the '022 patent.

As evidence of these facts, Enterasys provided the Court with letters and statements from Foundry and/or its counsel that specifically acknowledged Mr. Virgile's consulting agreement to assist with Foundry's defense against the '022 patent.[2] Enterasys also cited relevant federal case law detailing: (1) why Mr. Virgile is contractually required to perform all continual obligations under the Assignment Agreement regardless of his employment status with Enterasys; and (2) why Mr. Virgile's consulting agreement with Foundry and his refusal to assist Enterasys contravene those continuing obligations. Accordingly, Foundry cannot avoid the consequences of its own past statements and conduct by simply re-characterizing its relationship with Mr. Virgile.

Furthermore, with respect to the alleged "threatening" letters, the Enterasys Motion informed the Court of Enterasys' correspondence with Mr. Virgile, and included all letters documenting those communications.[3] *See* (Exh. 12, 14, 15, Hensch. Decl.) (Docket No. 100). The letters request that Mr. Virgile cease consulting with Foundry in its efforts to prevent Enterasys from enforcing the '022 patent. *Id*. Furthermore, contrary to Foundry's unsupported allegations, Enterasys specifically declared that Mr. Virgile could provide underlying factual information to Foundry. *See* (Exh. 15, Hensch. Decl.). Thus, Foundry knew that Enterasys seeks only to stop the consulting arrangement between Foundry and Mr. Virgile, and does not want to

---

[2] Moreover, if Foundry used Mr. Virgile only to obtain factual information, Foundry would not have ignored numerous letters from Enterasys requesting that Foundry reveal the scope of its relationship with Mr. Virgile. *See* (Exh. 5-7, Hensch. Decl.).

[3] Subsequent to the filing of the Enterasys Motion, Mr. Virgile sent another letter to Enterasys' counsel. *See* (Exh. 1, Sullivan Decl.).  In addition, Enterasys submits a letter sent by its counsel to Mr. Virgile, dated November 1, 2006, requesting the Mr. Virgile produce any documents in his possession relating to inventive activities. *See* (Exh. 2, Sullivan Decl.). The letter is provided to ensure that the Court has all written correspondence between Enterasys and Mr. Virgile.

3

prevent the delineation of relevant facts.[4]

Lastly, Foundry claims that assignor estoppel is inapplicable because Mr. Virgile does not design or create Foundry products. However, the doctrine of assignor estoppel is far broader than Foundry claims, and encompasses situations where an inventor received compensation to attest to a patent's validity, but then received payment from an alleged infringer to assist with invalidity arguments.

## II.
## ARGUMENT

**A.    Foundry's Opposition Papers Contradict Both Foundry's And Mr. Virgile's Prior Statements That A Paid Consulting Agreement Exists Between Foundry And Mr. Virgile, The Intent Of Which Is To Prevent The Enforcement Of The '022 Patent**

Enterasys, through Foundry's own documents and statements, established that Foundry and/or its counsel hired Mr. Virgile as a paid consultant in part to prevent Enterasys from enforcing the '022 patent. The relevant case law showed that Mr. Virgile's agreement to assist Foundry with its defense against Enterasys' infringement claims breached Mr. Virgile's contractual obligations to Enterasys under the Assignment Agreement. Foundry, nevertheless, now seeks to avoid the fallout of Mr. Virgile's contractual breach of the Assignment Agreement, and Foundry's inducement of that breach, by re-characterizing the relationship between Foundry and Mr. Virgile as merely a series of paid private interviews between a party and a fact witness. However, Foundry cannot evade its past written and oral statements with a few strokes on a

---

[4]  As the sole inventor of the '022 patent, Mr. Virgile has confidential information, including attorney-client privileged information belonging to Enterasys. Foundry's counsel, Proskauer Rose L.L.P., claims that, to its knowledge, Mr. Virgile has not disclosed either confidential or privileged information. Whether Mr. Virgile has previously disclosed such information, which Enterasys has not confirmed, does not preclude future inadvertent disclosures. Moreover, neither Mr. Virgile nor Proskauer Rose L.L.P. nor Orrick, co-counsel for Foundry, has provided the Court with an affidavit certifying that no confidential or privileged information has been disclosed. Regardless, the consulting arrangement between Mr. Virgile and Foundry breaches Mr. Virgile's obligations under the Assignment Agreement even if no confidential or privileged information has been disclosed where Mr. Virgile assists Foundry with its defenses against the '022 patent.

keyboard.

As noted in the Enterasys Motion, counsel for Foundry admitted in their April 18, 2007 letter that it has a consulting relationship with Mr. Virgile. In that letter, Foundry's counsel specifically told Enterasys that "Mr. Virgile's assignment agreement does not prohibit him from consulting with Foundry." *See* (Exh. 10, Hensch. Decl.). The letter also acknowledged that Mr. Virgile "has agreed to assist Foundry with its defense." *Id*. Indeed, Foundry went on to accuse Enterasys of committing a tort by its alleged attempts to "interfere with Foundry's contractual consulting relationship with Mr. Virgile … ."[5] *Id.*

Foundry's counsel also expanded upon the scope of the consulting agreement during the May 15, 2007 meet-and-confer, and subsequently in its opposition papers.[6] Counsel for Foundry admitted during the meet-and-confer that Mr. Virgile is paid to assist Foundry in its defense against the '022 patent. *See* (Hensch. Decl., ¶ 33). Foundry's counsel also proclaimed that it had every right to get assistance from Mr. Virgile, including any analysis and opinions regarding the prior art of record. *Id*. In addition, the Opposition Motion stated Foundry's belief that Mr. Virgile can provide a "**frank assessment** of the '022 patent and the relevant prior art," or share with Foundry "his factual knowledge **and expertise**." *See* (Foundry Opp., pp.8, 10) (emphasis added).

Moreover, since Enterasys filed its motion, Mr. Virgile has himself acknowledged he aids Foundry with its defense against the '022 patent. In a letter dated May, 16, 2007, Mr. Virgile sought to explain why his assisting Foundry with its defense is acceptable. *See* (Exh. 1, Sullivan Decl.). Regardless of Mr. Virgile's rationale for working with Foundry, helping contest the '022

---

[5] Enterasys requests that the Court require Foundry to produce all contractual agreements between Mr. Virgile and Foundry and/or its counsel. Although not necessarily conclusive, the agreements may expose the scope of the relationship between Foundry and Mr. Virgile. For example, the consulting agreement may contain a confidentiality and/or exclusivity clause, which would quash Foundry's claims that Mr. Virgile is just a fact-witness.

[6] Many of the statements contained in the letter dated May 24, 2007 from Foundry's counsel are flatly contradicted by the Sullivan Decl., submitted herewith.

patent's validity constitutes a breach of Mr. Virgile's contractual obligations to Enterasys. The letter also noted Mr. Virgile's belief that Foundry is his client, and that any discussions between him and Foundry are confidential in nature: "the existence and nature of my relationships with my clients are confidential matters that I am not at liberty to discuss." *Id.* The fact that Mr. Virgile seeks to keep the scope of his relationship with Foundry confidential is further evidence that a consulting relationship exists.

In its opposition papers, Foundry makes no mention of these admissions. Furthermore, Foundry does not refute that Mr. Virgile is still obligated to Enterasys under the Assignment Agreement, nor does Foundry contest that the case law cited in the Enterasys Motion requires that Mr. Virgile comply with his contractual obligations. Instead, Foundry inappropriately seeks to reframe its relationship with Mr. Virgile as paid interviews with a fact witness,[7] and cites one

---

[7] Foundry suggests that Enterasys would cite a "novel proposition" if it claimed that "a third party with factual knowledge cannot be paid for his or her time." *See* (Opp. Mot., p.9). One need look no further than Rule 3.4(g) of the Massachusetts Rules of Professional Conduct. That rule limits payments to: (1) "expenses reasonably incurred by a witness in attending and testifying"; and (2) for "reasonable compensation to a witness for loss of time in attending or testifying." *Id.* Comment [5] notes that Rule 3.4(g) "carries over the provision of former DR 7-109(C)", and that "[a] lawyer may pay a witness reasonable compensation for time lost and for expenses reasonably incurred in attending the proceeding." Even under the Massachusetts Ethics Opinion 91-3, which interprets DR 7-109(C) as slightly more expansive than the textual language, stated that:

> "Witnesses should always testify truthfully and should be free from any financial inducements that might tempt them to do otherwise. Paying witnesses for their time, beyond reimbursement for expenses and financial loss, may well constitute such a financial inducement.
>
> The argument advanced in the previous paragraph seems strongest when the witness is one whose testimony might otherwise be viewed as impartial, such as a fact witness with no relation to the party seeking his or her testimony. Permitting compensation to such witnesses on a time basis for preparation and attendance at trial, would permit a practice of paying all witnesses in all cases. That seems contrary to the purpose of DR 7-109(C). The permissive language of the subsection would have been written quite differently if that were its aim."

Massachusetts Ethics Op. 91-3. *See* (Exh. 3, Sullivan Decl.). The opinion went on to hold that an Employer can pay a former employee for time spent preparing for trial irrespective of the witness' financial loss. At bar, no party has served Mr. Virgile with a deposition notice, nor has Mr. Virgile had to appear before this Court for any proceedings. Furthermore, Foundry did not employ Mr. Virgile at the time of the inventive activities, nor is Foundry a successor to a company that employed Mr. Virgile. Thus, payments to Mr. Virgile for his time spent performing interviews are questionable at best.

non-binding case from the New York State Court of Appeals supporting Foundry's claim that it can privately interview a former employee. As noted in multiple letters to Foundry's counsel and Mr. Virgile, and contrary to Foundry's unsubstantiated assertions, Enterasys has never refuted Foundry's ability to talk with Mr. Virgile to obtain relevant factual information.[8] *See*, *e.g.*, (Exh. 11, 15, Hensch. Decl.). However, as the Enterasys Motion alleges, Mr. Virgile's assistance goes well beyond providing historical facts. The submitted Exhibits document Mr. Virgile's consulting agreement with Foundry as well as Foundry's use of Mr. Virgile to help with its defense against the '022 patent. Such conduct, as well as Mr. Virgile's stated unwillingness to assist Enterasys (*see* Hensch. Decl., ¶ 5),[9] constitutes a breach of the Assignment Agreement.

In light of Mr. Virgile's conduct to date,[10] Enterasys cannot be made whole from Mr. Virgile's breach by merely precluding Foundry from further using Mr. Virgile as a consultant with respect to the '022 patent. At bar, Foundry has already directly benefited from actively inducing an individual to breach his contractual obligations to Enterasys, and Enterasys requests that Foundry be precluded from using of Mr. Virgile's work product with respect to the '022 patent, or work product generated by Mr. Virgile's assistance.

---

[8] Moreover, reliance on *Muriel Siebert & Co., Inc. v. Intuit, Inc.*, Slip. Op. 03956, 2007 WL 1319261 (N.Y. May 8, 2007) is misplaced because the witness in *Muriel* did not have a paid contractual relationship with the party, and there was only one interview with the witness.

[9] Foundry stated in its May 24, 2007 letter that it is "willing to affirmatively request that Mr. Virgile take [Enterasys'] calls." *See* (Exh. C, Foundry Opp.). Such statements by Foundry are further evidence that Mr. Virgile has refused to assist Enterasys in breach of his contractual obligations, and that Foundry knew of such a breach.

[10] *See* Enterasys Mot., pp. 9-10, for a detailed explanation of Mr. Virgile's alleged breaching conduct.

**B.** **Assignor Estoppel Is Applicable Because Permitting Foundry And/Or Its Counsel To Hire Mr. Virgile For Purposes Of Contesting The '022 Patent Would Lead To An Unfair And Unjust Result In Light Of Mr. Virgile's Patent Assignment And Contractual Obligations To Enterasys**

Foundry claims that "[a]ssignor estoppel has no bearing on any aspect of this case" because Mr. Virgile is not "designing or creating any technology," and therefore is not in privity with Foundry. However, Federal Circuit case law does not limit the application of the assignor estoppel doctrine to situations where an inventor helps an alleged infringer design infringing products:

> Courts frequently mention four justifications for the doctrine of assignor estoppel: (1) to prevent unfairness and injustice; (2) to prevent one [from] benefiting from his own wrong; (3) [to adopt the] analogy [of] … estoppel by deed in real estate; and (4) [to adopt the] analogy to a landlord-tenant relationship.

*Pandrol USA, LP v. Airboss Railway Products, Inc.*, 424 F.3d 1161, 1166 (Fed. Cir. 2005) (internal quotes and citations omitted). The *Pandrol* court applied the "unfairness and injustice" justification to exclude an infringing corporation's use of an inventor's testimony in summary judgment pleadings because the inventor received compensation upon the assignment, therefore barring his later claims that the assignment was worthless. *Id*. at 1167. Here, *Pandrol's* "unfairness and injustice" analysis should apply because Mr. Virgile received compensation to attest to the patent's validity in 1995, and then received payment from Foundry help contest its validity. *See, e.g., Diamond Scientific Co. v. Ambico, Inc.*, 848 F.2d 1220, 1224 (Fed. Cir. 1988) ("[t]o allow the assignor to make [a] representation at the time of the assignment (to his advantage) and later to repudiate it (again to his advantage) could work an injustice against the assignee.").

Foundry's claim that *Pandrol* does not apply because it has not proffered Mr. Virgile's testimony on the issue of validity, and because *Pandrol* allegedly never addressed privity, is

wrong. First, Enterasys has requested that future testimony by Mr. Virgile supporting invalidity of the '022 patent be barred under assignor estoppel theory. *See* (Enterasys Mot., pp.3, 20). Indeed, in the case cited by Foundry, *Checkpoint Sys., Inc. v. All-Tag Security S.A.*, 412 F.3d 1331, 1337 (Fed. Cir. 2005), the Federal Circuit remanded the case back to the district court to determine whether assignor estoppel should apply to a defendant who specifically hired the inventor as a consultant and who contested the patent's validity.[11] Second, Enterasys contends Foundry has already used Mr. Virgile's assistance in crafting its invalidity contentions, as well as its *ex parte* re-examination request to the U.S. Patent and Trademark Office to re-examine of the '022 patent - conduct that makes the assignor estoppel doctrine applicable. *Pandrol, et al., v. Airboss Railway, et al.*, No.99-CV-W-SOW, 2003 U.S. Dist. LEXIS 26993, * 10-11 (W.D. Mo. Oct. 15, 2003), *aff'd* 424 F.3d at 1167. Lastly, in deciding *Pandrol*, neither the District Court nor the Federal Circuit could have applied the assignor estoppel doctrine without first finding privity between the inventor and the alleged infringer, regardless of whether the courts' opinions discussed the issue in detail. Accordingly, Enterasys seeks an order prohibiting Foundry from utilizing the testimony of Mr. Virgile to attempt to invalidate the '022 patent.

---

[11]  Although the court in *Checkpoint* refused to create an "across the board rule" barring an inventor's testimony, the facts of the case specifically show that the context of the above statement referred to the ability of *other* defendants in the case using the inventor's testimony, as assignor estoppel would not apply to them. 412 F.3d at 1137.

**III.**
**CONCLUSION**

For the foregoing reasons, Enterasys respectfully requests that the Court grant the

Enterasys Motion, and adopt the Proposed Order previously submitted to the Court by Enterasys.


Dated:  June 7, 2007                    Respectfully submitted,

                                        ENTERASYS NETWORKS, INC.

                                        By its attorneys,

                                        /s/ Christopher P. Sullivan
                                        Christopher P. Sullivan, Esq. (BBO No. 485120)
                                        Marc N. Henschke, Esq. (BBO No. 636146)
                                        Alan E. McKenna, Esq. (BBO No. 644556)
                                        William J. Rocha, Esq. (BBO No. 657924)
                                        ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
                                        800 Boylston Street, 25th Floor
                                        Boston, MA 02199
                                        Tel. (617) 267-2300

Of Counsel:

A. James Anderson, Esq. *(pro hac vice)*
Marla R. Butler, Esq. *(pro hac vice)*
Anna R. Carr, Esq. *(pro hac vice)*
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2600 One Atlanta Plaza
Atlanta, GA 30326-1386
Tel. (404) 760-4300

Robert A. Auchter, Esq. *(pro hac vice)*
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
1875 Eye Street, N.W., Suite 300
Washington, DC  20006
Tel. (202) 775-0725

## CERTIFICATE OF SERVICE

I, William J. Rocha, hereby certify that on June 7, 2007, I caused the attached *Reply Brief In Support Of Motion For An Order Precluding Defendant Foundry Networks, Inc. From Obtaining Or Using The Affirmative Assistance Of Kenneth Virgile In Its Defense Against The '022 Patent* to be served electronically pursuant to the Court's CM/ECF electronic filing system upon Defendants' respective counsel of record as indicated by asterisks below:

### Counsel for Defendant Extreme Networks, Inc.:

William L. Anthony, Jr., Esq.*
I. Neel Chatterjee, Esq.*
Michael F. Heafey, Esq.
Sanjeet K. Dutta, Esq.
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025

Steven M. Bauer, Esq.*
Jeremy P. Oczek, Esq.*
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110-2600

### Counsel for Defendant Extreme Networks, Inc.:

Terrence P. McMahon, Esq.*
Vera M. Elson, Esq.*
MCDERMOTT, WILL & EMERY LLP
3150 Porter Drive
Palo Alto, CA  94303-1212

Peter L. Resnik, Esq.*
MCDERMOTT, WILL & EMERY LLP
28 State Street
Boston, MA  02109-1775

Christopher D. Bright, Esq.
MCDERMOTT, WILL & EMERY LLP
18191 Von Karman Avenue, Suite 400
Irvine, CA  92612-7107

Dated:  June 7, 2007                    /s/ William J. Rocha
                                        William J. Rocha

BN1 35039571.2

# Exhibit B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

_____
                                                    )
ENTERASYS NETWORKS, INC.,              )          Civil Action No: 05-CV-11298 (DPW)
                                                    )
             Plaintiff,                       )
                                                    )
v.                                                  )
                                                    )
FOUNDRY NETWORKS, INC. AND           )
EXTREME NETWORKS, INC.,                 )
                                                    )
             Defendants.                    )
_____)

DECLARATION OF CHRISTOPHER P. SULLIVAN IN SUPPORT OF ENTERASYS NETWORKS, INC.'S MOTION FOR AN ORDER PRECLUDING DEFENDANT FOUNDRY NETWORKS, INC. FROM OBTAINING OR USING THE AFFIRMATIVE ASSISTANCE OF KENNETH VIRGILE IN ITS DEFENSE AGAINST THE '022 PATENT IN SUIT

     **I, CHRISTOPHER P. SULLIVAN**, declare as follows:

     1.      I am a partner in the law firm of Robins, Kaplan, Miller & Ciresi L.L.P., counsel

of record for the named Plaintiff Enterasys Networks, Inc. ("Enterasys") in the above-referenced

action. I submit this Declaration in support of Enterasys' Motion For An Order Precluding

Defendant Foundry Networks, Inc. From Obtaining Or Using The Affirmative Assistance Of

Kenneth Virgile In Its Defense Against The '022 Patent In Suit, filed concurrently herewith

under separate cover. I have personal knowledge of the facts stated herein and, if sworn as a

witness, I could and would testify competently thereto.

     2.      On May 15, 2007, Marc N. Henschke and I participated in a meet-and-confer

teleconference with Foundry's counsel Steven M. Bauer, Esq.  The meet-and-confer concerned

Foundry's use of Kenneth Virgile, the sole inventor of U.S. Patent No. 6,539,022 (the "'022

patent"), as a consultant to assist in Foundry's defense against Enterasys' claims that Foundry's products infringe the '022 patent.

3.      On May 24, 2007, I received a copy of the letter of the same date from Mr. Bauer to Enterasys regarding Mr. Bauer's version of what was said during the May 15th meet-and-confer. That letter contained several representations as to Enterasys' statements or conduct that are totally inaccurate.

4.      During the meet-and-confer on May 15, 2007, there was no discussion regarding any factual misrepresentations by either side.  At the time, Mr. Bauer maintained his previously stated position that Mr. Virgile was hired as a consultant to assist Foundry with its defense to the infringement action Enterasys had brought.

5.      During the meet-and-confer, Mr. Henschke reiterated Enterasys' previously stated position that Foundry has the right to interview Mr. Virgile about historical facts. We did not agree, however, that it was proper to pay Mr. Virgile for his time spent working with Foundry. Rather, we told Mr. Bauer that Enterasys objected to Foundry using Mr. Virgile as a consultant on the '022 patent whether he was paid or not.

6.      In response to Mr. Bauer's question as to what Enterasys meant by the term "affirmative assistance", we did provide Foundry with examples of "affirmative assistance." Specifically, Mr. Henschke said that acting as a consultant, offering opinions, analyzing prior art relative to the '022 patent were all examples of "affirmative assistance."

7.      Mr. Bauer continued to protest that he did not understand what the term "affirmative assistance" meant.

8.      Mr. Bauer said that he thought that asking for Mr. Virgile's "analysis of prior art of record was appropriate."  We disagreed and said that soliciting any analysis or opinions from Mr. Virgile as a consultant was improper and objectionable.

9.      Mr. Bauer said that he thought that it was proper to ask Mr. Virgile in private any question that he could ask at a deposition, including questions calling for opinions and analysis.

10.      Mr. Bauer said the information exchanged between Mr. Virgile and Foundry's counsel was covered by the attorney work product privilege.  We disagreed.  Mr. Bauer said that Foundry would not give up any further information about its relationship with Mr. Virgile without a court order.

11.      Mr. Henschke then asked if the meet and confer had been concluded; to which Mr. Bauer responded, "Go ahead and file your motion."

12.      Mr. Bauer's offer to change how Foundry used Mr. Virgile was directed only to future actions.  Mr. Henschke and I expressed that we were concerned about how Foundry has already used Mr. Virgile.  Mr. Bauer again repeated his belief that seeking Mr. Virgile's opinions and analysis about the prior art of record was permissible, but he refused to reveal the full scope of Mr. Virgile's work.

13.      Neither Mr. Henschke nor I ever agreed to wait for a receipt of Mr. Bauer's letter before filing the motion.

14.      Attached hereto as Exhibit 1 is a true and correct copy of a letter to Marc N. Henschke from Kenneth Virgile dated May 16, 2007.

15.      Attached hereto as Exhibit 2 is a true and correct copy of a letter from Marc N. Henschke to Kenneth Virgile dated November, 1, 2006.

16.    Attached hereto as Exhibit 3 is a true and correct copy of a letter to Massachusetts Ethics Opinion No. 91-3.

I declare under penalty of perjury that the foregoing is true and correct and that this Declaration is executed on this 7th day of June, 2007 at Boston, Massachusetts.


/s/ Christopher P. Sullivan
CHRISTOPHER P. SULLIVAN

35039614

4

## <u>CERTIFICATE OF SERVICE</u>

       I, Christopher P. Sullivan, hereby certify that on June 7th, 2007, I caused a true and correct copy of the attached *Declaration Of Christopher P. Sullivan In Support of Its Motion For An Order Precluding Defendant Foundry Networks, Inc. From Obtaining Or Using The Affirmative Assistance Of Kenneth Virgile In Its Defense Against The '022 Patent In Suit* to be served electronically pursuant to the Court's CM/ECF electronic filing system upon Defendants' respective counsel of record as indicated by asterisks below:

**<u>Counsel for Defendant Extreme Networks, Inc.</u>:**

William L. Anthony, Jr., Esq.*
I. Neel Chatterjee, Esq.*
Sanjeet K. Dutta, Esq.*
Matthew H. Poppe, Esq.*
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA  94025

Steven M. Bauer, Esq.*
Jeremy P. Oczek, Esq.*
John W. Pint, Esq.*
Proskauer Rose LLP
One International Place
Boston, MA 02110-2600

**<u>Counsel for Defendant Extreme Networks, Inc.</u>:**

Terrence P. McMahon, Esq.*
Vera M. Elson, Esq.*
McDermott, Will & Emery LLP
3150 Porter Drive
Palo Alto, CA  94303-1212

Emily E. Smith-Lee, Esq.*
Peter L. Resnik, Esq.*
McDermott, Will & Emery LLP
28 State Street
Boston, MA  02109-1775

Christopher D. Bright, Esq.
McDermott, Will & Emery LLP
18191 Von Karman Avenue, Suite 400
Irvine, CA  92612-7107

Dated:  June 7th, 2007        /s/ Christopher P. Sullivan
                                Christopher P. Sullivan

# Exhibit 1

May 16, 2007

91 Hill Street
Lexington, MA  02421

Mr. Marc N. Henschke
Robins, Kaplan, Miller & Ciresi, L.L.P.
800 Boylston Street, 25th floor
Boston, MA  02199

Re: Enterasys Networks v. Foundry Networks and Extreme Networks

Dear Mr. Henschke:

I am writing in follow up to your letter dated May 2, 2007, which attempts to clarify your request for me to cease and desist my relationship with Orrick, Herrington & Sutcliffe LLP and/or Foundry Networks.

You state that "by definition the inventions disclosed in the '022 patent are one and the same as those disclosed in the underlying 08/428,403 application". My recollection is that an application was filed on my behalf, for which I signed an Assignment of Patent Application document. My recollection is that the application was modified afterwards. My understanding of the definition of a continuation patent application includes the requirement that the subject matter in the continuation patent application does not change from the subject matter of the final version of the original application, i.e., after the original application has gone through all revisions and has gone through the final patent office action. Your assertion of "by definition" does not show that the '022 patent has the same invention as defined by the Assignment of Patent Application for the initial application.

Regardless of the above, I see that the Assignment of Patent Application states that I must "when requested, … aid Assignee … in enforcing patents …". I do not see where it states or implies that my obligations are what you describe, i.e., "concomitantly prohibited from acting so as to frustrate Enterasys in carrying out these efforts". Please indicate from where you have obtained such, since that clause is not present in the copy of the Assignment of Patent Application that you sent to me.

Regardless of the above, you state that your interpretation of "enforcing" is "compelling observance of or obedience to" a particular set of rights. Even if I were to accept your definition, I do not understand how that supports your demands. You state, "Thus, Enterasys is instructing that you *not*, for example, provide affirmative assistance with respect to Foundry's non-infringement …". If Foundry does not infringe, then my help would not affect Enterasys's rights. If Foundry does infringe, then my help would be to no avail and would not affect the enforcement of Enterasys's rights. In other words, there are no circumstances under which my helping Foundry would affect the enforcement of the rights of Enterasys.

Furthermore, as I stated in my previous letter, it is well known by all involved parties that I have assisted Enterasys whenever requested. Thus, regardless of the preceding paragraphs, I have been able to completely satisfy all potential contractual

obligations since the Assignment of Patent Application clearly states "when requested, … aid Assignee …".

I find your letters and requests intimidating. Your demands place an unwarranted and excessive burden on me. I ask for you to retract your demands.

Finally, the existence and nature of my relationships with my clients are confidential matters that I am not at liberty to discuss.

Sincerely,

*Kenneth Virgile*

Kenneth Virgile

cc:     Sanjeet K. Dutta, Esq.
        Orrick, Herrington & Sutcliffe LLP
        1000 Marsh Road
        Menlo Park, CA  94025-1015

# Exhibit 2

# ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

800 BOYLSTON STREET
25TH FLOOR
BOSTON, MA 02199
TEL: 617-267-2300 FAX: 617-267-8288
www.rkmc.com

ATTORNEYS AT LAW

ALAN E. MCKENNA
617-859-2719

November 1, 2006

Mr. Kenneth E. Virgile
91 Hill Street
Lexington, MA 02421

      Re:    *Enterasys Networks v. Foundry Networks and Extreme Networks*

Dear Mr. Virgile:

      I write in follow-up to our telephone call yesterday afternoon. As you know, this office represents Enterasys Networks (formerly known as Cabletron Systems, Inc.) in the above-referenced patent infringement litigation, currently pending in the U.S. District Court in Boston.

      One of the patents at issue in the lawsuit is U.S. Patent No. 6,539,022 (the '022 Patent"), which is a continuation of U.S. Patent No. 5,608,726 (the '726 Patent), on both of which you are the named inventor. For your convenience, I have enclosed copies of both the '726 and '022 Patents.

      The initial application that resulted in the '726 Patent was filed on April 25, 1995, and we are searching for documents and other evidence any inventive activities that you may have undertaken prior to that date relative to the technology covered by the '726 Patent. Specifically, we are in search of any engineering notebooks or other documents you may have reflecting any conception or reduction to practice of this technology, which would pre-date the application filing date. If you have any such documents, we would greatly appreciate if you would contact me.

      I also wanted to let you know that, as a formal matter as part of the ongoing litigation, we likely need to send you an official subpoena requesting these same types of documents. You can expect to receive that in the coming days.

Mr. Kenneth E. Virgile
November 1, 2006
Page 2

If you should have any questions or concerns, please do not hesitate to contact me or
Marc Henschke of our office.  My direct dial is 617-859-2719 and Marc's is 617-859-2784.

Thank you for your cooperation with this matter.

Very truly yours,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

Alan E. McKenna

cc:    Marc N. Henschke, Esq.

# Exhibit 3

**MASSACHUSETTS BAR ASSOCIAT**
*Serving the legal profession and public since 1911*

# Ethics Opinions

## Opinion No. 91-3

**Summary:** Although DR 7-109(C) prohibits a lawyer from paying compensation to ordinary witnesses for attending at, and preparing for, trial beyond the witness' expenses and any financial loss, a lawyer may pay a former employee of a client required to spend a fair amount of his time in trial preparation for that time and attendance irrespective of the witness' financial loss.

**Facts:** Pursuant to Mass. R. Civ. P. 30(b)(6) a corporation designated a former managerial employee to testify on matters as to which no current employee had firsthand knowledge. The employee was apparently required to spend a fair amount of time reviewing documents and refreshing his recollection of the relevant events in order to be able to testify competently. At the time of his deposition, the witness, who was between jobs, held himself out as a consultant and had performed some consulting. After the deposition, the witness submitted an invoice for compensation on an hourly basis for time spent preparing and testifying and for out-of-pocket expenses. While the corporation's law firm had earlier agreed to pay the expenses, nothing had been said about hourly compensation. The witness, who has now found employment and is located beyond the subpoena power of the court, has stated that he will not appear for trial unless he is compensated for time already spent and for time preparing for and attending trial. The inquiring law firm asks (1) may it pay the witness for the time spent on the deposition when he was unemployed but holding himself out as a consultant, (2) may it pay him for time spent in preparing for and attending trial now that he has secured employment, and (3) if we conclude that the witness may be compensated, what is the appropriate basis for determining reasonable compensation?

**Discussion:** Disciplinary Rule 7-109(C) states:

A lawyer shall not pay, offer to pay, or acquiesce in the payment of compensation to a witness contingent upon the content of his testimony or the outcome of the case. But a lawyer may advance, guarantee, or acquiesce in the payment of:

(l) Expenses reasonably incurred by a witness in attending or testifying.

(2) Reasonable compensation to a witness for his loss of time in attending or testifying.

(3) A reasonable fee for the professional services of an expert witness.

The imprecise wording of DR 7-109(C) and the divergent opinions of ethics committees, discussed below, reflect several policy considerations. It is clear that the courts are entitled to every person's testimony, whether the witness is compensated or not, and that giving or accepting payment in order to testify a certain way is unethical and may be criminal. On the other hand, it is acceptable to compensate for their preparation and testimony a wide variety of experts. Moreover, government witnesses, such as policemen, frequently draw overtime for court appearances and are often paid for time spent testifying. In business litigation, corporate employees spend substantial time preparing and testifying for which they are compensated as part of their employment. All such witnesses would be expected, just as would any witness, not to perjure themselves, and the facts of their compensation would provide fair grounds for efforts to impeach their testimony.

The text of DR 7-109(C) does not answer the inquiry whether a former employee may be paid for time spent in testifying or preparing to testify in such circumstances as presented here. Indeed, the wording of the Disciplinary Rule is rather peculiar. The only explicit prohibition is on payment of a contingent fee to a witness. A literal interpretation of the rule would suggest that so long as this prohibition was not violated any other payment may be made. Such an interpretation, however, would make the remainder of DR 7-109(C) surplusage, and we believe that we ought to attempt to give it some meaning. The remainder of the subsection provides that three types of payment may be made. The problem is that none of these three types of payment are prohibited by the first sentence of the subsection. The permission granted thus carries with it an implication of additional prohibitions not mentioned in the first sentence. In view of the explicit prohibition in the first section, we are doubtful the permissive language that follows should be read negatively to prohibit everything that does not fit within the

permissive language. Indeed, the failure of the permissive language to mention payment of statutory witness fees surely does not imply that such payment is prohibited. On the other hand, the permissive language does suggest that some additional prohibitions were intended. Having been asked to try to make some sense of this very badly drafted language, we are inclined to seek a common sense solution in what seem to be the purposes of the prohibitions and the permissions contained in the rule.

The crucial permissive language for purposes of answering this inquiry is that which permits compensation for "loss of time in attending or testifying." Such language could be read as permitting payment beyond reimbursement for lost wages or the like. The language could be read to permit payment for time spent preparing testimony and attending depositions or a trial, whether or not that caused the witness to lose income from other sources.

On the other hand, the Ethical Considerations of the Model Code of Professional Conduct interpret the provision as requiring any payments to witnesses other than expert witnesses to be limited to reimbursement for financial loss. EC 7-28, commenting on DR 7-109, states:

A lawyer should not pay or agree to pay a non-expert witness an amount in excess of reimbursement for expenses and financial loss incident to his being a witness; however, a lawyer may pay or agree to pay an expert witness a reasonable fee for his services as an expert ... .

This interpretation, while relevant, is not conclusive. When the Supreme Judicial Court adopted the Model Code of Professional Conduct as the basis for our Disciplinary Rules, it did not adopt the Ethical Considerations that accompanied them. The court did, however, state that the Ethical Considerations "form a body of principles upon which the Canons of Ethics and Disciplinary Rules are to be interpreted." SJC Rule 3:07, Introduction. A problem with the Ethical Considerations is that they state that they "are aspirational in character and represent objectives toward which every member of the profession should strive." Ethical Considerations, Preliminary Statement. Noting therefore that EC 7-28 uses the term "should," it is difficult to know whether it was meant to be interpretive or aspirational in this instance.

Ethics committees from other jurisdictions that have considered the matter of the appropriate interpretation of DR 7-109(C) have divided. Several committees have concluded that a lawyer may compensate a witness for the reasonable value of the time spent preparing and testifying. See Committee on Professional Ethics, New York State Bar Ass'n, Opinion 547 (1982); Committee on Professional Ethics, Illinois State Bar Ass'n, Opinion 87-5; Standing Committee on Legal Ethics, Virginia State Bar, Opinion 587 (l984); and Committee on Professional Ethics, State Bar of Wisconsin, Opinion E-89-17. The New York committee commented:

Loss of time must therefore be translated into dollars. Clearly, a witness who earns a salary for his livelihood may be paid an amount equivalent to his lost wages. Problems may arise when the witness is self-employed or is compensated on a commission basis, or when weekends and night-hours are devoted to preparation, and in that event, closer consideration should be given to the matter of assessing the amount to be paid. But even recreation time is susceptible to valuation. Attorneys are frequently called upon to elicit proof of unliquidated damages, and should not feel at a loss in coping with the vagaries of the situation.

Other opinions, however, have followed EC 7-28 in concluding that a lawyer may pay to a non-expert witness only compensation to replace lost wages or other monetary loss. See Committee on Ethics, Maryland State Bar Association, Inc., Opinion 83-38 and Alabama State Bar Ethics Opinion 81-549.

We believe that there is substantial merit in the position advanced by EC 7-28. The purpose of DR 7-109(C) is not merely to preclude compensation to a witness contingent upon the content of his or her testimony or the outcome of the case. Another purpose is that stated in the first sentence of EC 7-28: "Witnesses should always testify truthfully and should be free from any financial inducements that might tempt them to do otherwise." Paying witnesses for their time, beyond reimbursement for expenses and financial loss, may well constitute such a financial inducement.

The argument advanced in the previous paragraph seems strongest when the witness is one whose testimony might otherwise be viewed as impartial, such as a fact witness with no relation to the party seeking his or her testimony. Permitting compensation to such witnesses on a time basis for preparation and attendance at trial, would permit a practice of paying all witnesses in all cases. That seems contrary to the purpose of DR 7-109(C). The permissive language of the subsection would have been written quite differently if that were its aim.

The inquiry that has prompted this opinion concerns quite a different type of witness. The witness is a former employee whose knowledge is critical to presentation of the party's case since no current employee has firsthand knowledge. The employee is not subject to the reach of subpoena, but that does not seem crucial to us. The fact is that more than just the appearance of the former employee is needed. The former employee had to spend a fair amount of time reviewing documents and generally refreshing his recollection of the events involved in the case for his testimony to have any value. This situation will not often present itself with the ordinary fact witness but it will often be the case with a former employee of a party. Indeed, it may often be the case with a busy employee of a party who will have to work overtime nights and weekends to prepare for testimony in a case. Since the employee and the former employee have such close ties to the employer-party already, paying them for their time (but only for their time) does not seem to present a substantial additional threat to the integrity of their testimony. Given the enormous ambiguity in the rule, we find it difficult to believe that the Supreme Judicial Court would

conclude that it was a violation of DR 7-109(C) for a law firm to pay for the time of an employee or former employee taken in testifying and preparing to testify about a matter relating to his or her employment, at least in the circumstances of this case.

There are two methods of interpreting DR 7-109(C) to reach the result of permitting such a payment while at the same time not opening the door to payments to all witnesses, including stranger witnesses, in all cases. The first would be to interpret the "loss of time" language in DR 7-109(C) to permit payments for other than financial loss to witnesses with some professional tie to the party--e.g., employees or former employees--but not to others. One might be able to accomplish that by analogizing their situation to that of expert witnesses, but we acknowledge that such an interpretation does put strain on the language of DR 7-109(C). Another possibility is simply to acknowledge that here is yet another situation where the drafters of the code did not write a detailed set of regulations that covered all possible factual permutations and conclude that DR 7-109(C) was not drafted with the situation of witnesses like employees and former employees in the circumstances of this case in mind. It should therefore not be interpreted to include them. This is in fact our view of the most appropriate resolution of this difficult problem, given the very imprecise manner in which the subsection is drafted. We should make clear that we are addressing only the fact situation presented in this inquiry and are leaving other circumstances that raise similar policy considerations for the future.

The final question, what basis should be employed to determine reasonable compensation, is beyond our capacity to decide. We can only warn that any payment in excess of what the witness ordinarily had charged, and previously received, for his time might evidence an impermissible payment to induce testimony in favor of the paying party.

*Permission to publish granted by the Board of Delegates on June 7, 1991. As stated in the Rules of the Committee on Professional Ethics, this advice is that of a committee without official governmental status.*
©2007 Massachusetts Bar Association