UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| ENTERASYS NETWORKS, INC., | ) | Civil Action No: 05-CV-11298 (DPW) |
| Plaintiff, | ) | |
| v. | ) | **[Leave To File Granted By Court Order Dated June 8, 2007]** |
| FOUNDRY NETWORKS, INC. AND EXTREME NETWORKS, INC., | ) | |
| Defendants. | ) | |

**REPLY BRIEF IN SUPPORT OF MOTION FOR AN ORDER
PRECLUDING DEFENDANT FOUNDRY NETWORKS, INC.
FROM OBTAINING OR USING THE AFFIRMATIVE ASSISTANCE
OF KENNETH VIRGILE IN ITS DEFENSE AGAINST THE '022 PATENT IN SUIT**

**TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ................................................................................... 1

II.    ARGUMENT .................................................................................................................. 4

    A.    Foundry's Opposition Papers Contradict Both Foundry's And Mr. Virgile's Prior Statements That A Paid Consulting Agreement Exists Between Foundry And Mr. Virgile, The Intent Of Which Is To Prevent The Enforcement Of The '022 Patent ...................................................................... 4

    B.    Assignor Estoppel Is Applicable Because Permitting Foundry And/Or Its Counsel To Hire Mr. Virgile For Purposes Of Contesting The '022 Patent Would Lead To An Unfair And Unjust Result In Light Of Mr. Virgile's Patent Assignment And Contractual Obligations To Enterasys ............................ 8

III.    CONCLUSION............................................................................................................ 10

# I.
# PRELIMINARY STATEMENT

Plaintiff Enterasys Networks, Inc. hereby submits this reply brief in support of its pending motion (hereinafter "Enterasys Motion") to seek a Court Order precluding defendant Foundry Networks, Inc. ("Foundry") from obtaining or using the affirmative assistance of Kenneth Virgile ("Mr. Virgile") in its defense against U.S. Patent No. 6,539,022 (the "'022 patent"). Mr. Virgile is the sole inventor of the '022 patent. The reply brief responds to arguments raised, and misstatements made, in Foundry's opposition papers recently filed with the Court on May 30, 2007 ("Foundry Opposition").

Foundry's opposition papers seek to cast Foundry's interactions with Mr. Virgile as a series of private interviews with a paid fact witness, and alleges that Enterasys is attempting to prevent all discussions between Foundry and Mr. Virgile. *See* (Foundry Opp. pp. 1, 4). The Foundry Opposition also claims that Enterasys sent "threatening" letters to Mr. Virgile that Foundry contends violate the Massachusetts Rules of Professional Conduct. *Id.* at 2. However, the exhibits submitted with the Enterasys Motion repudiate Foundry's new and unsupported version of the events.[1]

Foundry's claim to this Court that Mr. Virgile is simply a "fact witness" is new. Before Enterasys filed its motion on May 16, 2007, Foundry referred to Mr. Virgile as its consultant. In fact, all evidence indicates that Mr. Virgile's role is that of a consultant to Foundry and/or its

---

[1] In its opposition papers (Docket No. 107), Foundry failed to submit with an affidavit that verifies <u>any</u> factual statements describing Foundry's relationship with Mr. Virgile. Thus, neither Foundry nor its counsel have confirmed that Mr. Virgile did not perform consulting work for Foundry's defense against the '022 patent. In fact, Foundry's position that Mr. Virgile is merely a paid fact witness is directly contradicted by Foundry's own documents and prior statements that Enterasys submitted to the Court through the Declaration of Marc N. Henschke (Docket No. 100). Moreover, as detailed in the attached Declaration of Christopher P. Sullivan ("Sullivan Decl."), the May 24, 2007 letter from Foundry's counsel (Docket No. 107-4) misstates many facts regarding the May 15, 2007 meet-and-confer between the parties.

counsel. The distinction between a fact witness and a consultant is significant and, despite Foundry's hopes to the contrary, should not be ignored by this Court in deciding the instant motion. For example, as a "fact-witness," Mr. Virgile's writings, communications with Foundry or mental impressions are not protected from discovery, nor are Foundry's statements to Mr. Virgile protected. However, courts recognize that a "consultant" is associated with a particular side within a litigation, and under Rule 26(b)(3), could arguably shield from disclosure a consultant's various writings, opinions and communications with that party or its counsel. Indeed, Mr. Virgile has indicated in his last letter to Enterasys that he will not disclose the nature of his communications with Foundry, and Foundry stated during a May 15, 2007 meet-and-confer teleconference that it will not reveal any information it has received from Mr. Virgile. Moreover, because it is believed that Mr. Virgile's consulting role includes assisting with Foundry's noninfringement defense, Foundry has presumably given him confidential information in the form of access to internal Foundry documents. That access arguably precludes Mr. Virgile from assisting Enterasys with the enforcement of the '022 patent as he is required to do under a patent assignment agreement. *See Koch Refining Co. v. Jennifer L. Boudreaux MV*, 85 F.3d 1178 (5th Cir. 1995) ("[N]o one would seriously contend that a court should permit a consultant to serve as one party's expert where it is undisputed that the consultant was previously retained as an expert by the adverse party in the same litigation and had received confidential information from the adverse party pursuant to the earlier retention.") (quotes and citations omitted).

    Mr. Virgile signed a patent assignment agreement ("Assignment Agreement") with Enterasys' predecessors that created continuing obligations to assist Enterasys with enforcing the '022 patent. Mr. Virgile has refused to work with Enterasys, and instead entered into a consulting agreement with Foundry and/or its counsel to actively oppose the enforcement of the '022 patent.

As evidence of these facts, Enterasys provided the Court with letters and statements from Foundry and/or its counsel that specifically acknowledged Mr. Virgile's consulting agreement to assist with Foundry's defense against the '022 patent.[2] Enterasys also cited relevant federal case law detailing: (1) why Mr. Virgile is contractually required to perform all continual obligations under the Assignment Agreement regardless of his employment status with Enterasys; and (2) why Mr. Virgile's consulting agreement with Foundry and his refusal to assist Enterasys contravene those continuing obligations. Accordingly, Foundry cannot avoid the consequences of its own past statements and conduct by simply re-characterizing its relationship with Mr. Virgile.

Furthermore, with respect to the alleged "threatening" letters, the Enterasys Motion informed the Court of Enterasys' correspondence with Mr. Virgile, and included all letters documenting those communications.[3] *See* (Exh. 12, 14, 15, Hensch. Decl.) (Docket No. 100). The letters request that Mr. Virgile cease consulting with Foundry in its efforts to prevent Enterasys from enforcing the '022 patent. *Id*. Furthermore, contrary to Foundry's unsupported allegations, Enterasys specifically declared that Mr. Virgile could provide underlying factual information to Foundry. *See* (Exh. 15, Hensch. Decl.). Thus, Foundry knew that Enterasys seeks only to stop the consulting arrangement between Foundry and Mr. Virgile, and does not want to

---

[2] Moreover, if Foundry used Mr. Virgile only to obtain factual information, Foundry would not have ignored numerous letters from Enterasys requesting that Foundry reveal the scope of its relationship with Mr. Virgile. *See* (Exh. 5-7, Hensch. Decl.).

[3] Subsequent to the filing of the Enterasys Motion, Mr. Virgile sent another letter to Enterasys' counsel. *See* (Exh. 1, Sullivan Decl.). In addition, Enterasys submits a letter sent by its counsel to Mr. Virgile, dated November 1, 2006, requesting the Mr. Virgile produce any documents in his possession relating to inventive activities. *See* (Exh. 2, Sullivan Decl.). The letter is provided to ensure that the Court has all written correspondence between Enterasys and Mr. Virgile.

3

prevent the delineation of relevant facts.[4]

Lastly, Foundry claims that assignor estoppel is inapplicable because Mr. Virgile does not design or create Foundry products. However, the doctrine of assignor estoppel is far broader than Foundry claims, and encompasses situations where an inventor received compensation to attest to a patent's validity, but then received payment from an alleged infringer to assist with invalidity arguments.

## II.
## ARGUMENT

A. **Foundry's Opposition Papers Contradict Both Foundry's And Mr. Virgile's Prior Statements That A Paid Consulting Agreement Exists Between Foundry And Mr. Virgile, The Intent Of Which Is To Prevent The Enforcement Of The '022 Patent**

Enterasys, through Foundry's own documents and statements, established that Foundry and/or its counsel hired Mr. Virgile as a paid consultant in part to prevent Enterasys from enforcing the '022 patent. The relevant case law showed that Mr. Virgile's agreement to assist Foundry with its defense against Enterasys' infringement claims breached Mr. Virgile's contractual obligations to Enterasys under the Assignment Agreement. Foundry, nevertheless, now seeks to avoid the fallout of Mr. Virgile's contractual breach of the Assignment Agreement, and Foundry's inducement of that breach, by re-characterizing the relationship between Foundry and Mr. Virgile as merely a series of paid private interviews between a party and a fact witness. However, Foundry cannot evade its past written and oral statements with a few strokes on a

---

[4] As the sole inventor of the '022 patent, Mr. Virgile has confidential information, including attorney-client privileged information belonging to Enterasys. Foundry's counsel, Proskauer Rose L.L.P., claims that, to its knowledge, Mr. Virgile has not disclosed either confidential or privileged information. Whether Mr. Virgile has previously disclosed such information, which Enterasys has not confirmed, does not preclude future inadvertent disclosures. Moreover, neither Mr. Virgile nor Proskauer Rose L.L.P. nor Orrick, co-counsel for Foundry, has provided the Court with an affidavit certifying that no confidential or privileged information has been disclosed. Regardless, the consulting arrangement between Mr. Virgile and Foundry breaches Mr. Virgile's obligations under the Assignment Agreement even if no confidential or privileged information has been disclosed where Mr. Virgile assists Foundry with its defenses against the '022 patent.

4

keyboard.

As noted in the Enterasys Motion, counsel for Foundry admitted in their April 18, 2007 letter that it has a consulting relationship with Mr. Virgile. In that letter, Foundry's counsel specifically told Enterasys that "Mr. Virgile's assignment agreement does not prohibit him from consulting with Foundry." *See* (Exh. 10, Hensch. Decl.). The letter also acknowledged that Mr. Virgile "has agreed to assist Foundry with its defense." *Id*. Indeed, Foundry went on to accuse Enterasys of committing a tort by its alleged attempts to "interfere with Foundry's contractual consulting relationship with Mr. Virgile … ."[5] *Id.*

Foundry's counsel also expanded upon the scope of the consulting agreement during the May 15, 2007 meet-and-confer, and subsequently in its opposition papers.[6] Counsel for Foundry admitted during the meet-and-confer that Mr. Virgile is paid to assist Foundry in its defense against the '022 patent. *See* (Hensch. Decl., ¶ 33). Foundry's counsel also proclaimed that it had every right to get assistance from Mr. Virgile, including any analysis and opinions regarding the prior art of record. *Id*. In addition, the Opposition Motion stated Foundry's belief that Mr. Virgile can provide a "**frank assessment** of the '022 patent and the relevant prior art," or share with Foundry "his factual knowledge **and expertise**." *See* (Foundry Opp., pp.8, 10) (emphasis added).

Moreover, since Enterasys filed its motion, Mr. Virgile has himself acknowledged he aids Foundry with its defense against the '022 patent. In a letter dated May, 16, 2007, Mr. Virgile sought to explain why his assisting Foundry with its defense is acceptable. *See* (Exh. 1, Sullivan Decl.). Regardless of Mr. Virgile's rationale for working with Foundry, helping contest the '022

---

[5] Enterasys requests that the Court require Foundry to produce all contractual agreements between Mr. Virgile and Foundry and/or its counsel. Although not necessarily conclusive, the agreements may expose the scope of the relationship between Foundry and Mr. Virgile. For example, the consulting agreement may contain a confidentiality and/or exclusivity clause, which would quash Foundry's claims that Mr. Virgile is just a fact-witness.

[6] Many of the statements contained in the letter dated May 24, 2007 from Foundry's counsel are flatly contradicted by the Sullivan Decl., submitted herewith.

5

patent's validity constitutes a breach of Mr. Virgile's contractual obligations to Enterasys. The letter also noted Mr. Virgile's belief that Foundry is his client, and that any discussions between him and Foundry are confidential in nature: "the existence and nature of my relationships with my clients are confidential matters that I am not at liberty to discuss." *Id.* The fact that Mr. Virgile seeks to keep the scope of his relationship with Foundry confidential is further evidence that a consulting relationship exists.

In its opposition papers, Foundry makes no mention of these admissions. Furthermore, Foundry does not refute that Mr. Virgile is still obligated to Enterasys under the Assignment Agreement, nor does Foundry contest that the case law cited in the Enterasys Motion requires that Mr. Virgile comply with his contractual obligations. Instead, Foundry inappropriately seeks to reframe its relationship with Mr. Virgile as paid interviews with a fact witness,[7] and cites one

---

[7] Foundry suggests that Enterasys would cite a "novel proposition" if it claimed that "a third party with factual knowledge cannot be paid for his or her time." *See* (Opp. Mot., p.9). One need look no further than Rule 3.4(g) of the Massachusetts Rules of Professional Conduct. That rule limits payments to: (1) "expenses reasonably incurred by a witness in attending and testifying"; and (2) for "reasonable compensation to a witness for loss of time in attending or testifying." *Id*. Comment [5] notes that Rule 3.4(g) "carries over the provision of former DR 7-109(C)", and that" [a] lawyer may pay a witness reasonable compensation for time lost and for expenses reasonably incurred in attending the proceeding." Even under the Massachusetts Ethics Opinion 91-3, which interprets DR 7-109(C) as slightly more expansive than the textual language, stated that:

> "Witnesses should always testify truthfully and should be free from any financial inducements that might tempt them to do otherwise. Paying witnesses for their time, beyond reimbursement for expenses and financial loss, may well constitute such a financial inducement.
>
> The argument advanced in the previous paragraph seems strongest when the witness is one whose testimony might otherwise be viewed as impartial, such as a fact witness with no relation to the party seeking his or her testimony. Permitting compensation to such witnesses on a time basis for preparation and attendance at trial, would permit a practice of paying all witnesses in all cases. That seems contrary to the purpose of DR 7-109(C). The permissive language of the subsection would have been written quite differently if that were its aim."

Massachusetts Ethics Op. 91-3. *See* (Exh. 3, Sullivan Decl.). The opinion went on to hold that an <u>Employer</u> can pay a former employee for time spent preparing for trial irrespective of the witness' financial loss. At bar, no party has served Mr. Virgile with a deposition notice, nor has Mr. Virgile had to appear before this Court for any proceedings. Furthermore, Foundry did not employ Mr. Virgile at the time of the inventive activities, nor is Foundry a successor to a company that employed Mr. Virgile. Thus, payments to Mr. Virgile for his time spent performing interviews are questionable at best.

6

non-binding case from the New York State Court of Appeals supporting Foundry's claim that it can privately interview a former employee. As noted in multiple letters to Foundry's counsel and Mr. Virgile, and contrary to Foundry's unsubstantiated assertions, Enterasys has never refuted Foundry's ability to talk with Mr. Virgile to obtain relevant factual information.[8] *See*, *e.g.*, (Exh. 11, 15, Hensch. Decl.). However, as the Enterasys Motion alleges, Mr. Virgile's assistance goes well beyond providing historical facts. The submitted Exhibits document Mr. Virgile's consulting agreement with Foundry as well as Foundry's use of Mr. Virgile to help with its defense against the '022 patent. Such conduct, as well as Mr. Virgile's stated unwillingness to assist Enterasys (*see* Hensch. Decl., ¶ 5),[9] constitutes a breach of the Assignment Agreement.

In light of Mr. Virgile's conduct to date,[10] Enterasys cannot be made whole from Mr. Virgile's breach by merely precluding Foundry from further using Mr. Virgile as a consultant with respect to the '022 patent. At bar, Foundry has already directly benefited from actively inducing an individual to breach his contractual obligations to Enterasys, and Enterasys requests that Foundry be precluded from using of Mr. Virgile's work product with respect to the '022 patent, or work product generated by Mr. Virgile's assistance.

---

[8] Moreover, reliance on *Muriel Siebert & Co., Inc. v. Intuit, Inc.*, Slip. Op. 03956, 2007 WL 1319261 (N.Y. May 8, 2007) is misplaced because the witness in *Muriel* did not have a paid contractual relationship with the party, and there was only one interview with the witness.

[9] Foundry stated in its May 24, 2007 letter that it is "willing to affirmatively request that Mr. Virgile take [Enterasys'] calls." *See* (Exh. C, Foundry Opp.). Such statements by Foundry are further evidence that Mr. Virgile has refused to assist Enterasys in breach of his contractual obligations, and that Foundry knew of such a breach.

[10] *See* Enterasys Mot., pp. 9-10, for a detailed explanation of Mr. Virgile's alleged breaching conduct.

B.  **Assignor Estoppel Is Applicable Because Permitting Foundry And/Or Its Counsel To Hire Mr. Virgile For Purposes Of Contesting The '022 Patent Would Lead To An Unfair And Unjust Result In Light Of Mr. Virgile's Patent Assignment And Contractual Obligations To Enterasys**

Foundry claims that "[a]ssignor estoppel has no bearing on any aspect of this case" because Mr. Virgile is not "designing or creating any technology," and therefore is not in privity with Foundry. However, Federal Circuit case law does not limit the application of the assignor estoppel doctrine to situations where an inventor helps an alleged infringer design infringing products:

> Courts frequently mention four justifications for the doctrine of assignor estoppel: (1) to prevent unfairness and injustice; (2) to prevent one [from] benefiting from his own wrong; (3) [to adopt the] analogy [of] … estoppel by deed in real estate; and (4) [to adopt the] analogy to a landlord-tenant relationship.

*Pandrol USA, LP v. Airboss Railway Products, Inc.*, 424 F.3d 1161, 1166 (Fed. Cir. 2005) (internal quotes and citations omitted). The *Pandrol* court applied the "unfairness and injustice" justification to exclude an infringing corporation's use of an inventor's testimony in summary judgment pleadings because the inventor received compensation upon the assignment, therefore barring his later claims that the assignment was worthless. *Id.* at 1167. Here, *Pandrol's* "unfairness and injustice" analysis should apply because Mr. Virgile received compensation to attest to the patent's validity in 1995, and then received payment from Foundry help contest its validity. *See, e.g., Diamond Scientific Co. v. Ambico, Inc.*, 848 F.2d 1220, 1224 (Fed. Cir. 1988) ("[t]o allow the assignor to make [a] representation at the time of the assignment (to his advantage) and later to repudiate it (again to his advantage) could work an injustice against the assignee.").

Foundry's claim that *Pandrol* does not apply because it has not proffered Mr. Virgile's testimony on the issue of validity, and because *Pandrol* allegedly never addressed privity, is

8

wrong. First, Enterasys has requested that future testimony by Mr. Virgile supporting invalidity of the '022 patent be barred under assignor estoppel theory. *See* (Enterasys Mot., pp.3, 20). Indeed, in the case cited by Foundry, *Checkpoint Sys., Inc. v. All-Tag Security S.A.*, 412 F.3d 1331, 1337 (Fed. Cir. 2005), the Federal Circuit remanded the case back to the district court to determine whether assignor estoppel should apply to a defendant who specifically hired the inventor as a consultant and who contested the patent's validity.[11] Second, Enterasys contends Foundry has already used Mr. Virgile's assistance in crafting its invalidity contentions, as well as its *ex parte* re-examination request to the U.S. Patent and Trademark Office to re-examine of the '022 patent - conduct that makes the assignor estoppel doctrine applicable. *Pandrol, et al., v. Airboss Railway, et al.*, No.99-CV-W-SOW, 2003 U.S. Dist. LEXIS 26993, * 10-11 (W.D. Mo. Oct. 15, 2003), *aff'd* 424 F.3d at 1167. Lastly, in deciding *Pandrol*, neither the District Court nor the Federal Circuit could have applied the assignor estoppel doctrine without first finding privity between the inventor and the alleged infringer, regardless of whether the courts' opinions discussed the issue in detail. Accordingly, Enterasys seeks an order prohibiting Foundry from utilizing the testimony of Mr. Virgile to attempt to invalidate the '022 patent.

---

[11] Although the court in *Checkpoint* refused to create an "across the board rule" barring an inventor's testimony, the facts of the case specifically show that the context of the above statement referred to the ability of *other* defendants in the case using the inventor's testimony, as assignor estoppel would not apply to them. 412 F.3d at 1137.

## III.
## CONCLUSION

For the foregoing reasons, Enterasys respectfully requests that the Court grant the Enterasys Motion, and adopt the Proposed Order previously submitted to the Court by Enterasys.

Dated:  June 7, 2007                                    Respectfully submitted,

                                                        ENTERASYS NETWORKS, INC.

                                                        By its attorneys,

                                                        /s/ Christopher P. Sullivan
                                                        Christopher P. Sullivan, Esq. (BBO No. 485120)
                                                        Marc N. Henschke, Esq. (BBO No. 636146)
                                                        Alan E. McKenna, Esq. (BBO No. 644556)
                                                        William J. Rocha, Esq. (BBO No. 657924)
                                                        ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
                                                        800 Boylston Street, 25th Floor
                                                        Boston, MA 02199
                                                        Tel. (617) 267-2300

Of Counsel:

A. James Anderson, Esq. *(pro hac vice)*
Marla R. Butler, Esq. *(pro hac vice)*
Anna R. Carr, Esq. *(pro hac vice)*
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2600 One Atlanta Plaza
Atlanta, GA 30326-1386
Tel. (404) 760-4300

Robert A. Auchter, Esq. *(pro hac vice)*
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
1875 Eye Street, N.W., Suite 300
Washington, DC  20006
Tel. (202) 775-0725

## CERTIFICATE OF SERVICE

I, William J. Rocha, hereby certify that on June 7, 2007, I caused the attached *Reply Brief In Support Of Motion For An Order Precluding Defendant Foundry Networks, Inc. From Obtaining Or Using The Affirmative Assistance Of Kenneth Virgile In Its Defense Against The '022 Patent* to be served electronically pursuant to the Court's CM/ECF electronic filing system upon Defendants' respective counsel of record as indicated by asterisks below:

**Counsel for Defendant Extreme Networks, Inc.:**

William L. Anthony, Jr., Esq.*
I. Neel Chatterjee, Esq.*
Michael F. Heafey, Esq.
Sanjeet K. Dutta, Esq.
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025

Steven M. Bauer, Esq.*
Jeremy P. Oczek, Esq.*
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110-2600

**Counsel for Defendant Extreme Networks, Inc.:**

Terrence P. McMahon, Esq.*
Vera M. Elson, Esq.*
MCDERMOTT, WILL & EMERY LLP
3150 Porter Drive
Palo Alto, CA  94303-1212

Peter L. Resnik, Esq.*
MCDERMOTT, WILL & EMERY LLP
28 State Street
Boston, MA  02109-1775

Christopher D. Bright, Esq.
MCDERMOTT, WILL & EMERY LLP
18191 Von Karman Avenue, Suite 400
Irvine, CA  92612-7107

Dated:  June 7, 2007          /s/ William J. Rocha
                              William J. Rocha

BN1 35039571.2