**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

| | |
|---|---|
| ENTERASYS NETWORKS, INC., ) | Civil Action No: 05-CV-11298 (DPW) |
| Plaintiff, ) | |
| v. ) | **[Leave To File Granted By Court Order Dated June 8, 2007]** |
| FOUNDRY NETWORKS, INC. AND EXTREME NETWORKS, INC., ) | |
| Defendants. ) | |

**DECLARATION OF CHRISTOPHER P. SULLIVAN IN SUPPORT OF ENTERASYS NETWORKS, INC.'S MOTION FOR AN ORDER PRECLUDING DEFENDANT FOUNDRY NETWORKS, INC. FROM OBTAINING OR USING THE AFFIRMATIVE ASSISTANCE OF KENNETH VIRGILE IN ITS DEFENSE AGAINST THE '022 PATENT IN SUIT**

I, **CHRISTOPHER P. SULLIVAN**, declare as follows:

1. I am a partner in the law firm of Robins, Kaplan, Miller & Ciresi L.L.P., counsel of record for the named Plaintiff Enterasys Networks, Inc. ("Enterasys") in the above-referenced action. I submit this Declaration in support of Enterasys' Motion For An Order Precluding Defendant Foundry Networks, Inc. From Obtaining Or Using The Affirmative Assistance Of Kenneth Virgile In Its Defense Against The '022 Patent In Suit, filed concurrently herewith under separate cover. I have personal knowledge of the facts stated herein and, if sworn as a witness, I could and would testify competently thereto.

2. On May 15, 2007, Marc N. Henschke and I participated in a meet-and-confer teleconference with Foundry's counsel Steven M. Bauer, Esq. The meet-and-confer concerned Foundry's use of Kenneth Virgile, the sole inventor of U.S. Patent No. 6,539,022 (the "'022

patent"), as a consultant to assist in Foundry's defense against Enterasys' claims that Foundry's products infringe the '022 patent.

3. On May 24, 2007, I received a copy of the letter of the same date from Mr. Bauer to Enterasys regarding Mr. Bauer's version of what was said during the May 15th meet-and-confer. That letter contained several representations as to Enterasys' statements or conduct that are totally inaccurate.

4. During the meet-and-confer on May 15, 2007, there was no discussion regarding any factual misrepresentations by either side. At the time, Mr. Bauer maintained his previously stated position that Mr. Virgile was hired as a consultant to assist Foundry with its defense to the infringement action Enterasys had brought.

5. During the meet-and-confer, Mr. Henschke reiterated Enterasys' previously stated position that Foundry has the right to interview Mr. Virgile about historical facts. We did not agree, however, that it was proper to pay Mr. Virgile for his time spent working with Foundry. Rather, we told Mr. Bauer that Enterasys objected to Foundry using Mr. Virgile as a consultant on the '022 patent whether he was paid or not.

6. In response to Mr. Bauer's question as to what Enterasys meant by the term "affirmative assistance", we did provide Foundry with examples of "affirmative assistance." Specifically, Mr. Henschke said that acting as a consultant, offering opinions, analyzing prior art relative to the '022 patent were all examples of "affirmative assistance."

7. Mr. Bauer continued to protest that he did not understand what the term "affirmative assistance" meant.

BN1 35039614.1

8. Mr. Bauer said that he thought that asking for Mr. Virgile's "analysis of prior art of record was appropriate." We disagreed and said that soliciting any analysis or opinions from Mr. Virgile as a consultant was improper and objectionable.

9. Mr. Bauer said that he thought that it was proper to ask Mr. Virgile in private any question that he could ask at a deposition, including questions calling for opinions and analysis.

10. Mr. Bauer said the information exchanged between Mr. Virgile and Foundry's counsel was covered by the attorney work product privilege. We disagreed. Mr. Bauer said that Foundry would not give up any further information about its relationship with Mr. Virgile without a court order.

11. Mr. Henschke then asked if the meet and confer had been concluded; to which Mr. Bauer responded, "Go ahead and file your motion."

12. Mr. Bauer's offer to change how Foundry used Mr. Virgile was directed only to future actions. Mr. Henschke and I expressed that we were concerned about how Foundry has already used Mr. Virgile. Mr. Bauer again repeated his belief that seeking Mr. Virgile's opinions and analysis about the prior art of record was permissible, but he refused to reveal the full scope of Mr. Virgile's work.

13. Neither Mr. Henschke nor I ever agreed to wait for a receipt of Mr. Bauer's letter before filing the motion.

14. Attached hereto as Exhibit 1 is a true and correct copy of a letter to Marc N. Henschke from Kenneth Virgile dated May 16, 2007.

15. Attached hereto as Exhibit 2 is a true and correct copy of a letter from Marc N. Henschke to Kenneth Virgile dated November, 1, 2006.

BN1 35039614.1

16.    Attached hereto as Exhibit 3 is a true and correct copy of a letter to Massachusetts Ethics Opinion No. 91-3.

I declare under penalty of perjury that the foregoing is true and correct and that this Declaration is executed on this 7th day of June, 2007 at Boston, Massachusetts.


/s/ Christopher P. Sullivan
CHRISTOPHER P. SULLIVAN

35039614

Case 1:05-cv-11298-DPW    Document 118    Filed 06/08/2007    Page 4 of 5

## CERTIFICATE OF SERVICE

I, Christopher P. Sullivan, hereby certify that on June 7th, 2007, I caused a true and correct copy of the attached *Declaration Of Christopher P. Sullivan In Support of Its Motion For An Order Precluding Defendant Foundry Networks, Inc. From Obtaining Or Using The Affirmative Assistance Of Kenneth Virgile In Its Defense Against The '022 Patent In Suit* to be served electronically pursuant to the Court's CM/ECF electronic filing system upon Defendants' respective counsel of record as indicated by asterisks below:

**Counsel for Defendant Extreme Networks, Inc.:**

William L. Anthony, Jr., Esq.*
I. Neel Chatterjee, Esq.*
Sanjeet K. Dutta, Esq.*
Matthew H. Poppe, Esq.*
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA  94025

Steven M. Bauer, Esq.*
Jeremy P. Oczek, Esq.*
John W. Pint, Esq.*
Proskauer Rose LLP
One International Place
Boston, MA 02110-2600

**Counsel for Defendant Extreme Networks, Inc.:**

Terrence P. McMahon, Esq.*
Vera M. Elson, Esq.*
McDermott, Will & Emery LLP
3150 Porter Drive
Palo Alto, CA  94303-1212

Emily E. Smith-Lee, Esq.*
Peter L. Resnik, Esq.*
McDermott, Will & Emery LLP
28 State Street
Boston, MA  02109-1775

Christopher D. Bright, Esq.
McDermott, Will & Emery LLP
18191 Von Karman Avenue, Suite 400
Irvine, CA  92612-7107

Dated:  June 7th, 2007                    /s/ Christopher P. Sullivan
                                          Christopher P. Sullivan

BN1 35039614.1

# Exhibit 1

May 16, 2007
91 Hill Street
Lexington, MA 02421

Mr. Marc N. Henschke
Robins, Kaplan, Miller & Ciresi, L.L.P.
800 Boylston Street, 25th floor
Boston, MA 02199

   Re: Enterasys Networks v. Foundry Networks and Extreme Networks

Dear Mr. Henschke:

  I am writing in follow up to your letter dated May 2, 2007, which attempts to clarify your request for me to cease and desist my relationship with Orrick, Herrington & Sutcliffe LLP and/or Foundry Networks.

  You state that "by definition the inventions disclosed in the '022 patent are one and the same as those disclosed in the underlying 08/428,403 application". My recollection is that an application was filed on my behalf, for which I signed an Assignment of Patent Application document. My recollection is that the application was modified afterwards. My understanding of the definition of a continuation patent application includes the requirement that the subject matter in the continuation patent application does not change from the subject matter of the final version of the original application, i.e., after the original application has gone through all revisions and has gone through the final patent office action. Your assertion of "by definition" does not show that the '022 patent has the same invention as defined by the Assignment of Patent Application for the initial application.

  Regardless of the above, I see that the Assignment of Patent Application states that I must "when requested, ... aid Assignee ... in enforcing patents ...". I do not see where it states or implies that my obligations are what you describe, i.e., "concomitantly prohibited from acting so as to frustrate Enterasys in carrying out these efforts". Please indicate from where you have obtained such, since that clause is not present in the copy of the Assignment of Patent Application that you sent to me.

  Regardless of the above, you state that your interpretation of "enforcing" is "compelling observance of or obedience to" a particular set of rights. Even if I were to accept your definition, I do not understand how that supports your demands. You state, "Thus, Enterasys is instructing that you *not*, for example, provide affirmative assistance with respect to Foundry's non-infringement ...". If Foundry does not infringe, then my help would not affect Enterasys's rights. If Foundry does infringe, then my help would be to no avail and would not affect the enforcement of Enterasys's rights. In other words, there are no circumstances under which my helping Foundry would affect the enforcement of the rights of Enterasys.

  Furthermore, as I stated in my previous letter, it is well known by all involved parties that I have assisted Enterasys whenever requested. Thus, regardless of the preceding paragraphs, I have been able to completely satisfy all potential contractual

obligations since the Assignment of Patent Application clearly states "when requested, ... aid Assignee ...".

I find your letters and requests intimidating. Your demands place an unwarranted and excessive burden on me. I ask for you to retract your demands.

Finally, the existence and nature of my relationships with my clients are confidential matters that I am not at liberty to discuss.

Sincerely,

*Kenneth Virgile*

Kenneth Virgile

cc: Sanjeet K. Dutta, Esq.
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA  94025-1015

# ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

800 BOYLSTON STREET
25TH FLOOR
BOSTON, MA 02199
TEL: 617-267-2300  FAX: 617-267-8288
www.rkmc.com

ATTORNEYS AT LAW

ALAN E. MCKENNA
617-859-2719

November 1, 2006

Mr. Kenneth E. Virgile
91 Hill Street
Lexington, MA 02421

Re: *Enterasys Networks v. Foundry Networks and Extreme Networks*

Dear Mr. Virgile:

I write in follow-up to our telephone call yesterday afternoon. As you know, this office represents Enterasys Networks (formerly known as Cabletron Systems, Inc.) in the above-referenced patent infringement litigation, currently pending in the U.S. District Court in Boston.

One of the patents at issue in the lawsuit is U.S. Patent No. 6,539,022 (the '022 Patent"), which is a continuation of U.S. Patent No. 5,608,726 (the '726 Patent), on both of which you are the named inventor. For your convenience, I have enclosed copies of both the '726 and '022 Patents.

The initial application that resulted in the '726 Patent was filed on April 25, 1995, and we are searching for documents and other evidence any inventive activities that you may have undertaken prior to that date relative to the technology covered by the '726 Patent. Specifically, we are in search of any engineering notebooks or other documents you may have reflecting any conception or reduction to practice of this technology, which would pre-date the application filing date. If you have any such documents, we would greatly appreciate if you would contact me.

I also wanted to let you know that, as a formal matter as part of the ongoing litigation, we likely need to send you an official subpoena requesting these same types of documents. You can expect to receive that in the coming days.

BN1 35035197.1

ATLANTA · BOSTON · LOS ANGELES · MINNEAPOLIS · NAPLES · SAINT PAUL · WASHINGTON, D.C.

Mr. Kenneth E. Virgile
November 1, 2006
Page 2

  If you should have any questions or concerns, please do not hesitate to contact me or Marc Henschke of our office. My direct dial is 617-859-2719 and Marc's is 617-859-2784.

  Thank you for your cooperation with this matter.

          Very truly yours,

          ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

          Alan E. McKenna

cc: Marc N. Henschke, Esq.

BN1 35035197.1
11/1/06



# Ethics Opinions

## Opinion No. 91-3

**Summary:** Although DR 7-109(C) prohibits a lawyer from paying compensation to ordinary witnesses for attending at, and preparing for, trial beyond the witness' expenses and any financial loss, a lawyer may pay a former employee of a client required to spend a fair amount of his time in trial preparation for that time and attendance irrespective of the witness' financial loss.

**Facts:** Pursuant to Mass. R. Civ. P. 30(b)(6) a corporation designated a former managerial employee to testify on matters as to which no current employee had firsthand knowledge. The employee was apparently required to spend a fair amount of time reviewing documents and refreshing his recollection of the relevant events in order to be able to testify competently. At the time of his deposition, the witness, who was between jobs, held himself out as a consultant and had performed some consulting. After the deposition, the witness submitted an invoice for compensation on an hourly basis for time spent preparing and testifying and for out-of-pocket expenses. While the corporation's law firm had earlier agreed to pay the expenses, nothing had been said about hourly compensation. The witness, who has now found employment and is located beyond the subpoena power of the court, has stated that he will not appear for trial unless he is compensated for time already spent and for time preparing for and attending trial. The inquiring law firm asks (1) may it pay the witness for the time spent on the deposition when he was unemployed but holding himself out as a consultant, (2) may it pay him for time spent in preparing for and attending trial now that he has secured employment, and (3) if we conclude that the witness may be compensated, what is the appropriate basis for determining reasonable compensation.

**Discussion:** Disciplinary Rule 7-109(C) states:

A lawyer shall not pay, offer to pay, or acquiesce in the payment of compensation to a witness contingent upon the content of his testimony or the outcome of the case. But a lawyer may advance, guarantee, or acquiesce in the payment of:

(l) Expenses reasonably incurred by a witness in attending or testifying.
(2) Reasonable compensation to a witness for his loss of time in attending or testifying.
(3) A reasonable fee for the professional services of an expert witness.

The imprecise wording of DR 7-109(C) and the divergent opinions of ethics committees, discussed below, reflect several policy considerations. It is clear that the courts are entitled to every person's testimony, whether the witness is compensated or not, and that giving or accepting payment in order to testify a certain way is unethical and may be criminal. On the other hand, it is acceptable to compensate for their preparation and testimony a wide variety of experts. Moreover, government witnesses, such as policemen, frequently draw overtime for court appearances and are often paid for time spent testifying. In business litigation, corporate employees spend substantial time preparing and testifying for which they are compensated as part of their employment. All such witnesses would be expected, just as would any witness, not to perjure themselves, and the facts of their compensation would provide fair grounds for efforts to impeach their testimony.

The text of DR 7-109(C) does not answer the inquiry whether a former employee may be paid for time spent in testifying or preparing to testify in such circumstances as presented here. Indeed, the wording of the Disciplinary Rule is rather peculiar. The only explicit prohibition is on payment of a contingent fee to a witness. A literal interpretation of the rule would suggest that so long as this prohibition was not violated any other payment may be made. Such an interpretation, however, would make the remainder of DR 7-109(C) surplusage, and we believe that we ought to attempt to give it some meaning. The remainder of the subsection provides that three types of payment may be made. The problem is that none of these three types of payment are prohibited by the first sentence of the subsection. The permission granted thus carries with it an implication of additional prohibitions not mentioned in the first sentence. In view of the explicit prohibition in the first section, we are doubtful the permissive language that follows should be read negatively to prohibit everything that does not fit within the

permissive language. Indeed, the failure of the permissive language to mention payment of statutory witness fees surely does not imply that such payment is prohibited. On the other hand, the permissive language does suggest that some additional prohibitions were intended. Having been asked to try to make some sense of this very badly drafted language, we are inclined to seek a common sense solution in what seem to be the purposes of the prohibitions and the permissions contained in the rule.

The crucial permissive language for purposes of answering this inquiry is that which permits compensation for "loss of time in attending or testifying." Such language could be read as permitting payment beyond reimbursement for lost wages or the like. The language could be read to permit payment for time spent preparing testimony and attending depositions or a trial, whether or not that caused the witness to lose income from other sources.

On the other hand, the Ethical Considerations of the Model Code of Professional Conduct interpret the provision as requiring any payments to witnesses other than expert witnesses to be limited to reimbursement for financial loss. EC 7-28, commenting on DR 7-109, states:

A lawyer should not pay or agree to pay a non-expert witness an amount in excess of reimbursement for expenses and financial loss incident to his being a witness; however, a lawyer may pay or agree to pay an expert witness a reasonable fee for his services as an expert ... .

This interpretation, while relevant, is not conclusive. When the Supreme Judicial Court adopted the Model Code of Professional Conduct as the basis for our Disciplinary Rules, it did not adopt the Ethical Considerations that accompanied them. The court did, however, state that the Ethical Considerations "form a body of principles upon which the Canons of Ethics and Disciplinary Rules are to be interpreted." SJC Rule 3:07, Introduction. A problem with the Ethical Considerations is that they state that they "are aspirational in character and represent objectives toward which every member of the profession should strive." Ethical Considerations, Preliminary Statement. Noting therefore that EC 7-28 uses the term "should," it is difficult to know whether it was meant to be interpretive or aspirational in this instance.

Ethics committees from other jurisdictions that have considered the matter of the appropriate interpretation of DR 7-109(C) have divided. Several committees have concluded that a lawyer may compensate a witness for the reasonable value of the time spent preparing and testifying. See Committee on Professional Ethics, New York State Bar Ass'n, Opinion 547 (1982); Committee on Professional Ethics, Illinois State Bar Ass'n, Opinion 87-5; Standing Committee on Legal Ethics, Virginia State Bar, Opinion 587 (l984); and Committee on Professional Ethics, State Bar of Wisconsin, Opinion E-89-17. The New York committee commented:

Loss of time must therefore be translated into dollars. Clearly, a witness who earns a salary for his livelihood may be paid an amount equivalent to his lost wages. Problems may arise when the witness is self-employed or is compensated on a commission basis, or when weekends and night-hours are devoted to preparation, and in that event, closer consideration should be given to the matter of assessing the amount to be paid. But even recreation time is susceptible to valuation. Attorneys are frequently called upon to elicit proof of unliquidated damages, and should not feel at a loss in coping with the vagaries of the situation.

Other opinions, however, have followed EC 7-28 in concluding that a lawyer may pay to a non-expert witness only compensation to replace lost wages or other monetary loss. See Committee on Ethics, Maryland State Bar Association, Inc., Opinion 83-38 and Alabama State Bar Ethics Opinion 81-549.

We believe that there is substantial merit in the position advanced by EC 7-28. The purpose of DR 7-109(C) is not merely to preclude compensation to a witness contingent upon the content of his or her testimony or the outcome of the case. Another purpose is that stated in the first sentence of EC 7-28: "Witnesses should always testify truthfully and should be free from any financial inducements that might tempt them to do otherwise." Paying witnesses for their time, beyond reimbursement for expenses and financial loss, may well constitute such a financial inducement.

The argument advanced in the previous paragraph seems strongest when the witness is one whose testimony might otherwise be viewed as impartial, such as a fact witness with no relation to the party seeking his or her testimony. Permitting compensation to such witnesses on a time basis for preparation and attendance at trial, would permit a practice of paying all witnesses in all cases. That seems contrary to the purpose of DR 7-109(C). The permissive language of the subsection would have been written quite differently if that were its aim.

The inquiry that has prompted this opinion concerns quite a different type of witness. The witness is a former employee whose knowledge is critical to presentation of the party's case since no current employee has firsthand knowledge. The employee is not subject to the reach of subpoena, but that does not seem crucial to us. The fact is that more than just the appearance of the former employee is needed. The former employee had to spend a fair amount of time reviewing documents and generally refreshing his recollection of the events involved in the case for his testimony to have any value. This situation will not often present itself with the ordinary fact witness but it will often be the case with a former employee of a party. Indeed, it may often be the case with a busy employee of a party who will have to work overtime nights and weekends to prepare for testimony in a case. Since the employee and the former employee have such close ties to the employer-party already, paying them for their time (but only for their time) does not seem to present a substantial additional threat to the integrity of their testimony. Given the enormous ambiguity in the rule, we find it difficult to believe that the Supreme Judicial Court would

conclude that it was a violation of DR 7-109(C) for a law firm to pay for the time of an employee or former employee taken in testifying and preparing to testify about a matter relating to his or her employment, at least in the circumstances of this case.

There are two methods of interpreting DR 7-109(C) to reach the result of permitting such a payment while at the same time not opening the door to payments to all witnesses, including stranger witnesses, in all cases. The first would be to interpret the "loss of time" language in DR 7-109(C) to permit payments for other than financial loss to witnesses with some professional tie to the party--e.g., employees or former employees--but not to others. One might be able to accomplish that by analogizing their situation to that of expert witnesses, but we acknowledge that such an interpretation does put strain on the language of DR 7-109(C). Another possibility is simply to acknowledge that here is yet another situation where the drafters of the code did not write a detailed set of regulations that covered all possible factual permutations and conclude that DR 7-109(C) was not drafted with the situation of witnesses like employees and former employees in the circumstances of this case in mind. It should therefore not be interpreted to include them. This is in fact our view of the most appropriate resolution of this difficult problem, given the very imprecise manner in which the subsection is drafted. We should make clear that we are addressing only the fact situation presented in this inquiry and are leaving other circumstances that raise similar policy considerations for the future.

The final question, what basis should be employed to determine reasonable compensation, is beyond our capacity to decide. We can only warn that any payment in excess of what the witness ordinarily had charged, and previously received, for his time might evidence an impermissible payment to induce testimony in favor of the paying party.

*Permission to publish granted by the Board of Delegates on June 7, 1991. As stated in the Rules of the Committee on Professional Ethics, this advice is that of a committee without official governmental status.*
©2007 Massachusetts Bar Association