**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

ENTERASYS NETWORKS, INC,

       Plaintiff,

   v.

FOUNDRY NETWORKS, INC.

and

EXTREME NETWORKS, INC.,

      Defendants.

Civil Action No. 05-CV-11298 (DPW)

**MEMORANDUM OF LAW IN SUPPORT OF**
**ASSENTED-TO MOTION BY DEFENDANTS TO STAY**
**PROCEEDINGS IN VIEW OF PENDING PATENT REEXAMINATIONS**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ...................................................................................................1

II.   DEFENDANTS' MOTION FOR A STAY SHOULD BE GRANTED ............................3

    A.    This Court Has The Inherent Power To Grant A Stay. ....................................3

    B.    A Stay Is Appropriate In This Case .............................................................3

        1.    A Stay Is Appropriate At This Stage Of The Litigation ............................4

        2.    A Stay Here Will Greatly Simplify Issues For Claim Construction, Discovery and Trial ...........................................................................5

        3.    Plaintiff Has Assented To A Stay Of Proceedings ...................................10

III.  CONCLUSION ...................................................................................................11

## **TABLE OF AUTHORITIES**

### **Cases**

*ASCII Corp. v. STD Entertainment USA, Inc.*,
    844 F. Supp. 1378 (N.D. Cal. 1994)...............................................................................3

*Bausch & Lomb, Inc. v. Alcon Labs, Inc.*,
    914 F. Supp. 951 (W.D.N.Y. 1996). .................................................................................5

*E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*,
    849 F.2d 1430 (Fed. Cir. 1988) .......................................................................................9

*Emhart Industrial v. Sankyo Seiki Mfg. Co.,*
    3 U.S.P.Q.2d 1889 (N.D. Ill. 1987)........................................................................5, 7, 10

*Ethicon Inc. v. Quigg*,
    849 F.2d 1422 (Fed. Cir. 1988) .......................................................................................3

*Gould v. Control Laser Corp.*,
    705 F.2d 1340 (Fed. Cir. 1983). ...................................................................................3, 5

*Grayling Indus.s v. GPAC, Inc.*,
    19 U.S.P.Q.2d 1872 (N.D. Ga. 1991) ..............................................................................5

*Hewlett-Packard Co. v. Acuson Corp.*,
    1993 U.S.Dist. LEXIS 6449 (N.D. Cal. May 6, 1993).....................................................7

*In re Icon Health  & Fitness, Inc.*,
    2007 U.S. App. LEXIS 18244 (Fed. Cir. Aug. 1, 2007)  ..............................................8-9

*KSR International Co. v. Teleflex, Inc.*,
    127 S.Ct. 1727 (2007) .............................................................................................1, 2, 8

*Landis v. North American Co.*,
    299 U.S. 248 (1936) .......................................................................................................3

*Leapfrog Enterprises Inc. v. Fisher-Price Inc.*,
    485 F.3d 1157 (Fed. Cir. 2007) .......................................................................................8

*Loffland Brothers Co. v. Mid-Western Energy Corp.*,
    225 U.S.P.Q. 886 (W.D. Okla. 1985)...............................................................................5

*Nanometrics, Inc. v. Nova Measuring Instruments, Ltd.*,
    2007 U.S. Dist. LEXIS 18785 (N.D. Cal. Feb. 26, 2007)..............................................3, 7

*PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*,
    83 U.S.P.Q.2d 1289 (Fed. Cir. 2007) ...................................................................9

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ............................................................... 9-10

*Ralph Gonnocci Revocable Living Trust v. Three M Tool & Machine, Inc.*,
    68 U.S.P.Q.2d 1755 (D. Mich. 2003) ....................................................................5

*Softview Computer Products Corp. v. Haworth, Inc.*,
    56 U.S.P.Q.2d 1633 (S.D.N.Y. 2000) ..........................................................3, 6, 7

*Target Therapeutics, Inc. v. SciMed Life System, Inc.*,
    33 U.S.P.Q.2d 2022 (N.D. Cal. 1995) ...................................................................7

## Other Cases

*Ex parte Catan*, B.P.A.I., No. 2007-0820 7/03/07 ...............................................................9

*Ex parte Kubin*, B.P.A.I., No. 2007-0819 5/31/07 ...............................................................9

*Ex parte Smith*, B.P.A.I., No. 2007-1925 6/25/07 ...............................................................9

## Statutes

35 U.S.C. § 103 .......................................................................................................................8

35 U.S.C. § 307 .......................................................................................................................2

37 C.F.R. § 1.570(a) ...............................................................................................................2

## TABLE OF EXHIBITS

| **Exhibit** | **Description** |
| --- | --- |
| A | Decision Granting *Ex Parte* Reexamination for U.S. Patent No. 6,539,022 |
| B | Decision Granting *Ex Parte* Reexamination for U.S. Patent No. 6,560,236 |
| C | Decision Granting *Ex Parte* Reexamination for U.S. Patent No. 5,390,173 |
| D | Decision Granting *Ex Parte* Reexamination for U.S. Patent No. 6,147,995 |
| E | Decision Granting *Ex Parte* Reexamination for U.S. Patent No. 5,251,205 |
| F | USPTO *Ex Parte* Reexamination Filing Data, Sept. 30, 2006 |

## I.    **INTRODUCTION.**

Defendants Foundry Networks, Inc. and Extreme Networks, Inc. (collectively, "Defendants") respectfully move this Court for a stay of the present litigation.    Plaintiff Enterasys Networks, Inc. ("Enterasys") has assented to the relief sought by the present motion.

In the past few months, the U.S. Patent Office has granted reexamination requests for five of the patents-in-suit.[1]    Twenty-two of the thirty asserted claims are being reexamined.[2]    For each of these claims, the Patent Office has determined that there are "*substantial new question[s] of patentability*" based on numerous prior art references, many of which were not previously disclosed to the Patent Office by the patent applicants.

A stay is warranted to ensure judicial resources are conserved, as the claims under reexamination will likely change or be cancelled.    In fact, close to three quarters of all patent reexaminations result in the amendment or cancellation of claims.[3]    In addition, the Supreme Court's recent decision in *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007)*,* makes clear that

---

[1]       Beginning in late March 2007, Foundry filed *ex parte* requests for reexamination for five of the patents-in-suit, and did so at or close to the same time it served its invalidity contentions on Enterasys, on April 16, 2007.  Copies of the Orders of Reexamination Issued by the Patent Office for the below-listed patents are attached hereto as Exhibits A through E.

| *Patent No.* | *Reexam Filed* | *Reexam No.* | *Order Date* | *Status* |
|---|---|---|---|---|
| 6,539,022 | 03-23-2007 | 90/008,558 | 06-12-2007 | *Reexamination ordered.* |
| 6,560,236 | 03-26-2007 | 90/008,552 | 05-04-2007 | *Reexamination ordered.* |
| 5,390,173 | 04-17-2007 | 90/008,596 | 06-12-2007 | *Reexamination ordered.* |
| 6,147,995 | 05-03-2007 | 90/008,632 | 06-26-2007 | *Reexamination ordered.* |
| 5,251,205 | 05-04-2007 | 90/008,634 | 07-26-2007 | *Reexamination ordered.* |

[2]       All of the asserted claims of the '173, '205, '236, and '022 Patents are under reexamination.  As for the '995 patent, three asserted claims (claims 1, 19, and 25) are under reexamination and the other three asserted claims (claims 14, 32, and 33) depend from one or more of the claims under reexamination.

[3]       *See* Ex. F (USPTO *Ex Parte* Reexamination Filing Data, Sept. 30, 2006).

the Patent Office was not properly applying the law of patent validity when it issued the patents. In particular, the *KSR* case raises the bar for Enterasys to meet its burden that its patent claims were non-obvious and, therefore, patentable.  This is an excellent reason for the Court to stay the present case, because *KSR* – as the new law on patent obviousness – makes it even *more* likely that the patent claims will not survive reexamination.

Given that none of the claims at issue in this case have yet been construed by this Court, a stay makes sense now because the time-consuming and costly work that the parties and the Court will have to devote to preparing for a three-day *Markman* hearing will likely have to be undone and redone in light of the Patent Office's reexaminations.  Additionally, all expert discovery remains to be taken in this case, including depositions of all the technical and damages experts on both sides and the preparation of the initial and rebuttal expert reports.  Furthermore, no date for the close of discovery and no trial date have been set.

Enterasys will not be unduly prejudiced or disadvantaged if this action is stayed.  A narrowing of the issues for trial benefits all parties.  Moreover, Plaintiff, through its counsel, has told Defendants that it will assent to the relief sought by this motion.

Defendants, therefore, respectfully request that the Court stay the present case[4] until issuance of the last Certificate of Reexamination issued by the Patent Office pursuant to 37 C.F.R. 1.570(a)[5] for the five Enterasys patents in reexamination.

---

[4]    Foundry and Extreme are seeking a stay of the whole litigation, not just the litigation with respect to the five patents that are under reexamination, because the '665 Patent relates to the technology of the patents being reexamined.  As such, it would be most efficient for the Court to learn the technology at issue in the '665 Patent at the same time as the other five patents.

[5]    Stating: "Upon the conclusion of reexamination proceedings, the Commissioner will issue a certificate in accordance with 35 U.S.C. 307 setting forth the results of the reexamination proceeding and the content of the patent following the reexamination proceeding."  37 C.F.R. 1.570(a).

## II.    DEFENDANTS' MOTION FOR A STAY SHOULD BE GRANTED.

### A.    This Court Has The Inherent Power To Grant A Stay.

This Court has the "inherent power to manage [its] dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citing *Landis v. North American Co.*, 299 U.S. 248, 254, (1936)*; Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983).

Because an important purpose of the reexamination statute is to narrow the scope of, or altogether eliminate, issues for trial, "there is a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings." *ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).[6]

In fact, "[c]ourts have routinely stayed infringement actions pending the outcome of reexamination proceedings." *Softview Computer Prods. Corp. v. Haworth, Inc.*, 56 U.S.P.Q.2d 1633, 1635 (S.D.N.Y. 2000) (granting motion for stay) (collecting cases).

### B.    A Stay Is Appropriate In This Case.

A stay is appropriate under the circumstances of this case. Courts consider several factors when determining whether to exercise their discretion to grant a stay pending reexamination: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." *Nanometrics, Inc. v. Nova Measuring Instruments, Ltd.*, No. C-062252-SBA, 2007 U.S. Dist.

---

[6]    "One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is cancelled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *Control Laser Corp.*, 705 F.2d at 1342; 217 U.S.P.Q. at 986.

LEXIS 18785, *4 (N.D. Cal. Feb. 26, 2007).  Each of these factors weighs in favor of staying this case pending the outcome of the Patent Office's reexaminations.

### 1.    A Stay Is Appropriate At This Stage Of The Litigation.

Fact discovery is far from over.  Indeed, no date has been set for the close of discovery.  Much still needs to be done, including, most importantly for the parties' purposes, preparation for the three-day *Markman* hearing scheduled to take place in mid-October, the outcome of which will set the parameters of, and define the issues central to, the present litigation.

None of the claims at issue in this case have yet been construed by this Court.  A stay now would have an especially salutary effect because the time-consuming and costly work that the parties and the Court will have to devote to preparing for a three-day *Markman* hearing will likely have to be undone and redone in light of the Patent Office's reexaminations.  (While the parties' have submitted opening *Markman* briefing, there is still considerable expense associated with preparation for the hearing – including preparation of a tutorial video, attorney preparation time, and travel costs, etc.)

Additionally, all expert discovery remains to be taken in this case, including depositions of all the technical and damages experts on both sides and the preparation of the initial and rebuttal expert reports.  Depositions of Enterasys', Foundry's, and Extreme's 30(b)(6) witnesses, as well as those of many third party witnesses on both sides, also remain to be taken.  Needless to say, trial preparation has not yet begun, no summary judgment or pretrial motions have been filed, there is no pretrial order in place, and a trial date has not been set by this Court.

Courts have granted motions for stay pending reexamination in cases even more advanced than the present case.  For example, "courts have granted stays even where discovery has been completed and even when a trial date has been scheduled or is forthcoming."  *Ralph*

*Gonnocci Revocable Living Trust v. Three M Tool & Mach., Inc.*, 68 U.S.P.Q.2d 1755, 1757 (D. Mich. 2003); *Grayling Indus. v. GPAC, Inc.*, 19 U.S.P.Q.2d 1872, 1874 (D. Ga. 1991) (granting stay two years after case filed and one month after pretrial order submitted); *Emhart Indus. Inc. v. Sankyo Seiki Mfg. Co.*, 3 U.S.P.Q.2d 1889, 1891 (N.D. Ill. 1987) (granting stay after "significant, costly discovery has already taken place," noting that, as here, "substantially no trial preparations have been carried out − there is no pretrial order in place and no trial schedule has been set."); *Loffland Bros. Co. v. Mid-Western Energy Corp.*, 225 U.S.P.Q. 886, 887 (W.D. Okla. 1985) (granting stay after significant discovery, pretrial conference and trial date set); *Control Laser Corp.*, 705 F.2d at 1342 (granting motion to stay proceedings five years into litigation and twenty days before trial).

Indeed, in *Bausch & Lomb, Inc. v. Alcon Lab., Inc.*, 914 F. Supp. 951, 953 (W.D.N.Y. 1996), the district court recognized the "tremendous waste of time and resources of all of those involved in a trial" that would result if the litigation were allowed to proceed while reexamination of the patents-in-suit was underway, and granted a stay of proceedings even though fact discovery had been completed and a trial date had been set.

## 2.     <u>A Stay Here Will Greatly Simplify Issues For Claim Construction, Discovery and Trial</u>.

Enterasys is currently asserting thirty claims against Defendants, and the Court will likely have to examine the validity of those claims based on prior art and on deficiencies in the patents' specifications. This is the very work that the Patent Office has agreed to do by issuing orders of reexamination on five of the patents-in-suit.

At present, because of the large number of claims that remain asserted, the parties disagree on the meaning of over fifty claim terms, which have been submitted to the Court for construction in the opening round of briefs on August 17, 2007. The *Markman* process alone

imposes a substantial burden on the parties because Enterasys has declined to reasonably limit the claims-in-suit. The Court has recognized that thirty claims is an unwieldy number, and that Enterasys will likely have to reduce that number further before trial.[7] The Patent Office reexamination process will, in all likelihood, cause Enterasys to reduce or amend the nature of its asserted claims, which will in turn alter the nature of the parties' dispute.

Staying the litigation pending the Patent Office's reexaminations now, before any of the claims have been construed, and before costly expert discovery, will simplify the issues and save the parties and the Court a great deal of time and resources. *Softview*, 56 U.S.P.Q.2d at 1636 ("If the reexamination proceeding invalidates or narrows a claim or claims, the issues at trial will be simplified."). Indeed, the *Softview* court noted the many simplifying effects that have been found to result from a stay of proceedings pending completion of reexaminations:

"(1)   All prior art presented to the Court will have been first considered by the PTO, with its particular [technical] expertise [in the relevant fields of art].

(2)   Many discovery problems relating to prior art can be alleviated by the PTO examination.

(3)   In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.

(4)   The outcome of the reexamination may encourage a settlement without further use of the Court.

(5)   The record of the reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.

(6)   Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination.

---

[7]   At the Court's June 11, 2007 hearing in this case, while considering Defendant Extreme's Motion to Reduce Claims (Docket No. 86), the Court stated:  "I'm going to leave it at 30 [asserted claims] right now. If it changes and there's substitutes, you're going to make a motion for a substitute showing good cause why that shouldn't be permitted. My own view is you're ratcheted at 30 [claims] and you're going down." In response to this statement, Enterasys counsel stated: "That's our view, too, Your Honor." 6/11/2007 Hearing Tr. at 27:13-17.

(7)     The cost will likely be reduced both for the parties and the Court."

*Id*. at 1635 (citing *Emhart Indus.*, 3 U.S.P.Q.2d at 1890).  Many of these advantages would result from a stay in this case.

First, Patent Office statistics show that claims are cancelled or amended in at least seventy percent of reexamination proceedings.  *See* Ex. F; *see also Nanometrics*, 2007 U.S. Dist. LEXIS 18785 at *7 ("The PTO cancels all claims in approximately twelve percent of all re-examinations, and changes some claims in approximately sixty-four percent.").

Given the strong likelihood that Enterasys' asserted claims will change or be cancelled, proceeding with litigation would be wasteful for both this Court and the parties.  Indeed, "courts need not expend unnecessary judicial resources by attempting to resolve claims which may be amended, eliminated, or lucidly narrowed by the patent reexamination process and the expertise of its officers."  *Hewlett-Packard Co. v. Acuson Corp.,* No. C-93-0808MHP, 1993 U.S. Dist. LEXIS 6449 at *4 (N.D. Cal. May 6, 1993).  As explained by another court:

> The final form of the claims … will remain uncertain until the conclusion of the reexamination procedure.  It makes sense to ascertain the ultimate scope of the claims before trying to figure out whether defendants' products infringe the patent-in-suit.  Absent a stay, the parties may end up conducting a significantly wider scope of discovery than necessary, and the court may waste time examining the validity of claims which are modified or eliminated altogether during reexamination.

*Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*, 33 U.S.P.Q.2d 2022, 2023 (N.D. Cal. 1995) (granting motion for stay pending reexamination).

Because this Court's claim constructions will affect both questions of infringement and validity, as well as damages, the reexamination procedures will affect this Court's involvement in all remaining aspects of the case, up to and including trial.  It would subvert judicial economy to proceed through discovery and potentially to trial on claims that may subsequently be amended or even cancelled up to, and possibly during, trial.  In addition, not only would

*cancelled* claims render the work of expert witnesses worthless, but any *amended* claims will require expert reports and testimony to be redone to conform to any changes in claim language, which would be a significant waste of resources.

Second, the U.S. Supreme Court's decision in *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007)*,* makes clear that the Patent Office was not properly applying the law of patent validity when it issued the patents. *KSR* raises the bar for Enterasys meet its burden, as the patent applicant, to prove to the Patent Office that its claims were non-obvious and, therefore, patentable under 35 U.S.C. § 103. This is an excellent reason for the Court to stay judicial intervention, and allow the Patent Office to evaluate the validity of the claims under *KSR*.

Prior to *KSR*, the Patent Office was constrained in its analysis of obviousness by Federal Circuit precedent requiring that the Patent Office apply certain "rigid rules" before combining prior art references during examination of patent application claims. *See KSR*, 127 S. Ct. at 1741-43. Those rigid rules blocking the combining of prior art references no longer apply, and the Patent Office is now much freer to find that a patent claim would have been obvious over a combination of prior art references. *Id*. As a direct result of this change in law, the Enterasys patent claims currently under reexamination by the Patent Office are even more likely to be defeated or amended by prior art references provided to, or found by, the Patent Office in the course of the reexaminations.

The impact of the *KSR* decision on the Patent Office's assessment of patent validity cannot be overstated. In fact, three Federal Circuit cases and three Patent Office Board of Patent Appeals and Interferences cases that have been decided since *KSR* have <u>*all*</u> found the claims to be obvious and invalid or unpatentable. *See Leapfrog Enterprises Inc. v. Fisher-Price Inc.*, 485 F.3d 1157 (Fed. Cir. 2007); *In re Icon Health & Fitness, Inc.*, No. 2006-1573, 2007 U.S. App.

LEXIS 18244 (Fed. Cir. Aug. 1, 2007); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 83 U.S.

P.Q.2d 1289 (Fed. Cir. 2007); *Ex parte Catan,* B.P.A.I., No. 2007-0820, 7/3/07; *Ex parte Smith*,

B.P.A.I., No. 2007-1925, 6/25/2007; and *Ex parte Kubin,* B.P.A.I., No. 2007-0819, 5/31/07.

This means – for the present case – that the Enterasys patents are even *more* likely to be

found invalid by the Patent Office in the post-*KSR* environment than the Patent Office statistics

showing that claims are cancelled or amended roughly seventy percent of the time.  *See* Ex. F.

Thus, the Court should initially defer to the Patent Office, and stay the case, until the patents are

reexamined by the Patent Office under the *KSR* standard.

Third, discovery problems relating to prior art can be alleviated by the Patent Office

reexamination proceeding.  During reexamination, the Patent Office assesses the prior art and

compares it to the claims of the patents being reexamined.  If the Patent Office were to determine

that prior art renders one or more claims of the reexamination patents unpatentable, the Patent

Office will cancel those claims, unless the patentee can, by some amendment of the claims,

traverse the Patent Office's rejections.  Likewise, the Patent Office may also ascertain whether

the specifications provide support for the claims of the patents under reexamination.  If not, the

claims will be rendered unpatentable and will be cancelled.

Even if the claims are not cancelled or amended, however, Enterasys' representations to

the Patent Office will inform this Court as to the meaning of claim terms because the record of

the reexaminations will become part of the prosecution history of the reexamined patents.  *See*

*e.g.*, *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F. 2d 1430, 1439 (Fed. Cir.

1988) (statements made during Patent Office proceedings are "relevant prosecution history when

interpreting claims").  The prosecution history is a valuable source of intrinsic evidence that may

be used for claim construction purposes.  *Phillips v. AWH Corp.*, 415 F. 3d 1303, 1317 (Fed. Cir.

2005).  And, if Enterasys disclaims any subject matter by amending the claims or by presenting

limiting arguments, its infringement case could undergo considerable change.

In short, this Court should not review or decide any issues of claim construction until the

reexaminations are complete because the claims at issue, and the scope of the claims at issue, is

likely to change.  Absent a stay, this Court's and the parties' resources will be wasted by motion

practice relating to issues that may eventually become moot, and by discovery and related

disputes relating to claims that may either change or cease to exist after reexamination.  By

contrast, staying the litigation pending the Patent Office's reexamination proceedings will not

only conserve resources, but "simplify the issues and reduce the complexity of trial."  *Emhart*

*Indus.*, 3 U.S.P.Q.2d at 1892.

### 3.    Plaintiff Has Assented To A Stay Of Proceedings.

Enterasys will not be unduly prejudiced or disadvantaged if this action is stayed.  Indeed,

it has stated that it will assent to the present motion for a stay of the proceedings.

A narrowing of the issues for trial benefits all parties.  The 30 asserted claims have not

yet been construed by this Court, and a stay would spare both the parties and the Court the effort

and expense of conducting litigation activities related to claims that may be significantly altered

by amendments – thus rendering any claim construction moot – or canceled altogether during

reexamination.   Such litigation activities include the *Markman* process itself, third party

depositions related to prior art that may no longer be relevant after reexamination, expert

discovery on liability and damages issues that depend on claim construction, discovery disputes

related to these issues, and trial preparation.  Moreover, it would be tremendously burdensome

for all parties to be required to respond to changes to the language of the claims on the eve of

trial because such changes affect witness testimony, expert testimony, damages calculations, and jury instructions, among other things.

Foundry's requests for reexamination were filed at or close to the same time it served its invalidity contentions on Enterasys. Each reexamination request involved the preparation of multiple claims charts presenting analysis of several prior art references, and could not have been done until the exhaustive prior art searches were substantially complete. Foundry took every reasonable measure to request Patent Office reexamination as soon as practicable under the circumstances of the case, given the nature of the prior art.

**III.    CONCLUSION.**

The Court should stay the present action pending the outcome of the Patent Office's reexaminations to avoid a wasteful claim construction and litigation of Enterasys' asserted claims, given the likelihood that the asserted claims will be cancelled or amended during reexamination, and since Enterasys has assented to a stay of the proceedings.

Defendants, therefore, respectfully request that the Court stay the present case until issuance of the last Certificate of Reexamination issued by the Patent Office pursuant to 37 C.F.R. 1.570(a) for the five Enterasys patents in reexamination (U.S. Patent Nos. 6,539,022; 6,560,236; 5,390,173; 6,147,995; and 5,251,205).

Dated:  August 28, 2007

Respectfully Submitted,

DEFENDANT FOUNDRY NETWORKS, INC.

By Its Attorneys,

*/s/ Steven M. Bauer*

_____
Steven M. Bauer (BBO #542531)
Jeremy P. Oczek (BBO #647509)
John W. Pint (BBO #660548)
PROSKAUER ROSE LLP
One International Place
Boston, MA  02110-2600
Telephone:     (617) 526-9600

William L. Anthony, Jr. *(pro hac vice)*
Fabio E. Marino *(pro hac vice)*
I. Neel Chatterjee *(pro hac vice)*
Matthew H. Poppe *(pro hac vice)*
Sanjeet K. Dutta *(pro hac vice)*
Brian H. VanderZanden *(pro hac vice)*
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 614-7400

Respectfully Submitted,

DEFENDANT EXTREME NETWORKS, INC.

By Its Attorneys,

*/s/ David L. Larson (by permission)*

_____
Peter L. Resnik, Esq. (BBO #417180)
Emily E. Smith-Lee, Esq. (BBO #634223)
MCDERMOTT, WILL & EMERY LLP
28 State Street
Boston, MA 02109-1775
Telephone:     (617) 535-4000

Terrence P. McMahon, Esq. *(pro hac vice)*
Vera M. Elson, Esq. *(pro hac vice)*
David L. Larson, Esq. *(pro hac vice)*
Steven L. Walker, Esq. *(pro hac vice)*
Firasat M. Ali, Esq. *(pro hac vice)*
MCDERMOTT, WILL & EMERY LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone:     (650) 813-5000

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this document was filed through the ECF system on August 28, 2007 and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Steven M. Bauer*

_____
Steven M. Bauer

# **EXHIBIT A**

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,558 | 03/23/2007 | 6,539,022 B1 | 8156.004.RXUS | 2110 |

23628        7590        06/12/2007

WOLF GREENFIELD & SACKS, P.C.
600 ATLANTIC AVENUE
BOSTON, MA  02210-2206

| EXAMINER |
|---|

| ART UNIT | PAPER NUMBER |
|---|---|

DATE MAILED: 06/12/2007

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Foundary Networks, Inc.
4890 Great America Parkway
Santa Clara, CA 95054

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/008,558*.

PATENT NO. *6,539,022 B1 ET*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| *Order Granting / Denying Request For Ex Parte Reexamination* | Control No. | Patent Under Reexamination |
|---|---|---|
| | 90/008,558 | 6,539,022 B1 ET |
| | Examiner | Art Unit | |
| | Majid A. Banankhah | 3992 | |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>23 March 2007</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☐ PTO-892, b)☒ PTO/SB/08, c)☐ Other: _____

1. ☒ The request for *ex parte* reexamination is GRANTED.

                 RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional): TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐ The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)).  Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)). **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181  ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE  REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

    a) ☐  by Treasury check or,

    b) ☐  by credit to Deposit Account No. _____,  or

    c) ☐  by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

cc:Requester ( if third party requester )

## DECISION GRANTING EX PARTE REEXAMINATION

1.     A substantial new question of patentability affecting claims 1-20 of United States Patent number 6,539,022 is raised by the request for *ex parte* reexamination.

2.     The '022 patent is currently assigned to WELLS FARGO FOOTHILL, INC. of Santa Monica, California. The '022 Patent issued from application Serial No. 09/299,970 ("the '970 Application"), which was filed on Apr. 26, 1999.

### Prior Art that Raises SNQ

3.     In the request for reexamination, the third part requester alleges that '022 patent claims 1-20 of the '22 patent are anticipated or rendered obvious in light of the following references:

I.     U.S. Patent No. 5,511,167 to John Perlman (hereinafter, "Perlman" - Exhibit PA-A).

II.    Stephan E. Deering "Multicast Routing in Internetworks and Extended LANs," Association for Computing Machinery Symposium proceedings on Communications architectures and protocols, pp. 55-74, August 1988; available at http://portal.acm.org/citation.cfm?doid=52324.52331. (hereinafter, "Deering" – Exhibit PA-B).

III.   U.S. Patent No. 5,331,637 to Francis (hereinafter, "Francis"- Exhibit PA-C).

IV.    Stephen E. Deering, "Request for Comment 1112: Host Extensions for IP Multicasting," Stanford University, August 1989, available at http://rfc.net/rfc1112.html. (hereinafter, " RFC 1112"- Exhibit PA-D).

V.     U.S. Patent No. 5,559,883 to Williams (hereinafter, "Wiliams"- Exhibit PA-E).

### Summary of the prosecution History of the '022 Patent

4.     United States Patent 6,539,022 issued from an application with application No. 09/299,970 ('970 application), which was a continuation of application No., 08/766,784, filed Dec. 13, 1996, now patent No. 5,898,686, and a continuation of application No. 08/428,403, filed Apr. 25,1995, now patent No. 5,608,726.

During the prosecution of the '022 patent, the Examiner of record, rejected all original claims of the '022 patent as non-statutory double patenting of U.S. Patent No. 5,898,686 ("the '686 patent") and under 35 U.S.C. 102(b) as being anticipated by U.S. Patent No. 5,530,703 to Liu ("Liu") (paper #7, non-final Office Action dated 05-21-2002). To overcome this rejection, the Patent Owner filed a terminal disclaimer (paper #11, Terminal Disclaimer dated 09-10-2002). In response to the 102(b) rejection of claims being anticipated by Liu, Patent Owner argued that Liu was silent as to how it builds its multicast address table and therefore does not use multicast control packets (paper #9, Patent Owner's Amendment dated 09-10-2002). Additionally, Patent Owner argued Liu does not disclose a method to determine the interface on which a packet arrived. Id. Patent Owner also alleges Liu does not disclose a network bridge as required by claims 1 and 14 since Liu only discloses a remote access server. Id. In response to patent owner's argument, the Examiner issued a notice of allowance (paper #12, Notice of Allowance dated 09-20-2002).

### *Substantial New Question of Patentability*

5.      A prior art patent or printed publication raises a substantial new question of patentability where there is:

    (A)     a substantial likelihood that a reasonable Examiner would consider the prior art patent or printed publication **important** in deciding whether or not the claim is patentable, MPEP §2242 (I) and,

    (B)     the same question of patentability as to the claim has not been decided in a previous or pending proceeding or in a final holding of invalidity by a federal court. See MPEP §2242 (III).

Of the references cited by the third party requester that raises a SNQ, Perlman and Deering were cited on the face of the '022 patent, however, it was not relied upon by the Examiner in rejecting any claims during prosecution of that patent. Additionally, the third party requester alleges that Perlman discloses claims 1-10, 14-18, and 20, and Deering discloses claims 1-10, 14-20, of the '022 patent, including the disclosure for limitations the patent owner argued were not shown in Liu. Further it is noted that Francis was cited on the face of the '022 patent,

but was never relied upon by the Examiner in rejecting any claims during prosecution of that patent. The third party requester also alleges that Francis discloses claims 6-10, 12-13, and 20 of the '022 patent.

The newly cited references of RFC 1112, and Williams were not considered or applied in rejecting any claim by the Examiner during prosecution of the '022 patent and are not cumulative to the art of record in the original file.

Therefore, the request for reexamination is based at least in part on patents and/or printed publications already cited/considered in an earlier concluded examination of the patent being reexamined.

> On November 2, 2002, Public Law 107-273 was enacted. Title III, Subtitle A, Section 13105, part (a) of the Act revised the reexamination statute by adding the following new last sentence to 35 U.S.C. 303(a) and 312(a):
>
> The existence of a substantial new question of patentability is not precluded by the fact that a patent or printed publication was previously cited by or to the Office or considered by the Office.

For any reexamination ordered on or after November 2, 2002, the effective date of the statutory revision, reliance on previously cited/considered art, i.e., "old art," does not necessarily preclude the existence of a substantial new question of patentability (SNQ) that is based exclusively on that old art. Rather, determinations on whether a SNQ exists in such an instance shall be based upon a fact-specific inquiry done on a case-by-case basis.

In the present instance, there exist a SNQ based on Perlman, Deering, and Francis. These references were cited on the face of the '022 patent and is now being looked at in a new light. The RFC 1112, and Williams were considered, but not applied. A discussion of the specifics now follows.

6.     It is agreed that the consideration of Perlman alone raises a substantial new question of patentability as to claims 1-10, 14-18, and 20 of the Virgile '022 patent. Request page 20 through page 21, section II.A, page 25 through page 39, section III.A, and Exhibit CC-A, claim chart pertaining to claim 1-10, 14-18, and 20, are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in Perlman that was not

present in the prosecution of the application which became the Virgile '022 patent. Further, there is a substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not claims 1-10, 14-18, and 20, are patentable. Accordingly, Perlman alone raises a substantial new question of patentability as to claims 1-10, 14-18, and 20, which question has not been decided in a previous examination of the Virgile '022 patent.

7.    It is agreed that the consideration of Perlman with Williams raises a substantial new question of patentability as to claims 11 of the Virgile '022 patent. Request page 21, section II.B, page 39, section III.B, and Exhibit CC-A, claim chart pertaining to claim 11, are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in Perlman and Williams that was not present in the prosecution of the application which became the Virgile '022 patent. Further, there is a substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not claim 11 is patentable. Accordingly, Perlman taken with Williams raises a substantial new question of patentability as to claims 11, which question has not been decided in a previous examination of the Virgile '022 patent.

8.    It is agreed that the consideration of Deering alone raises a substantial new question of patentability as to claims 1-10, and 14-20 of the Virgile '022 patent. Request page 21 through page 22, section II.C, page 40 through page 55, section III.C, and Exhibit CC-B, claim chart pertaining to claim 1-10, and 14-20, are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in Deering that was not present in the prosecution of the application which became the Virgile '022 patent. Further, there is a substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not claims 1-10, and 14-20, are patentable. Accordingly, Deering alone raises a substantial new question of patentability as to claims 1-10, and 14-20, which question has not been decided in a previous examination of the Virgile '022 patent.

9.     It is agreed that the consideration of Deering with Williams raises a substantial new question of patentability as to claims 11 of the Virgile '022 patent. Request page 22, section II.D, page 55, section III.D, and Exhibit CC-B, claim chart pertaining to claim 11, are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in Deering and Williams that was not present in the prosecution of the application which became the Virgile '022 patent. Further, there is a substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not claim 11 is patentable. Accordingly, Deering taken with Williams raises a substantial new question of patentability as to claims 11, which question has not been decided in a previous examination of the Virgile '022 patent.

10.     It is agreed that the consideration of Francis alone raises a substantial new question of patentability as to claims 6-10, 12-13 and 20 of the Virgile '022 patent. Request page 22, section II.E, page 56 through page 63, section III.E, and Exhibit CC-C, claim chart pertaining to claim 6-10, 12-13 and 20, are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in Francis that was not present in the prosecution of the application which became the Virgile '022 patent. Further, there is a substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not claims 6-10, 12-13 and 20, are patentable. Accordingly, Francis alone raises a substantial new question of patentability as to claims 6-10, 12-13 and 20, which question has not been decided in a previous examination of the Virgile '022 patent.

11.     It is agreed that the consideration of Francis with Williams raises a substantial new question of patentability as to claims 11 of the Virgile '022 patent. Request page 23, section II.F, page 63, through page 64, section III.F, and Exhibit CC-C, claim chart pertaining to claim 11, are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in Francis and Williams that was not present in the prosecution of the application which became the Virgile '022 patent. Further, there is a

substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not claim 11 is patentable. Accordingly, Francis taken with Williams raises a substantial new question of patentability as to claims 11, which question has not been decided in a previous examination of the Virgile '022 patent.

12.    It is agreed that the consideration of RFC 1112 alone raises a substantial new question of patentability as to claims 6-10, 12-13 and 20 of the Virgile '022 patent. Request page 23, section II.G, page 64 through page 70, section III.G, and Exhibit CC-D, claim chart pertaining to claim 6-10, 12-13 and 20, are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in RFC 1112 that was not present in the prosecution of the application which became the Virgile '022 patent. Further, there is a substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not claims 6-10, 12-13 and 20, are patentable. Accordingly, RFC 1112 alone raises a substantial new question of patentability as to claims 6-10, 12-13 and 20, which question has not been decided in a previous examination of the Virgile '022 patent.

13.    It is agreed that the consideration of RFC 1112 with Williams raises a substantial new question of patentability as to claims 11 of the Virgile '022 patent. Request page 23, through page 24, section II.H, page 70 through page 71, section III.H, and Exhibit CC-D, claim chart pertaining to claim 11, are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in RFC 1112 and Williams that was not present in the prosecution of the application which became the Virgile '022 patent. Further, there is a substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not claim 11 is patentable. Accordingly, RFC 1112 taken with Williams raises a substantial new question of patentability as to claims 11, which question has not been decided in a previous examination of the Virgile '022 patent.

### *Conclusion*

14.     Extensions of time under 37 C.F.R §1.136(a) will not be permitted in this proceeding because the provisions of 37 C.F.R. §1.136 apply only to "an Applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. §305 requires that *ex parte* reexamination proceedings "will be conducted with special dispatch" (37 C.F.R. §1.550(a)). Extensions of time in *ex parte* reexamination proceedings are provided for in 37 C.F.R. §1.550(c).

15.     The Patent Owner is reminded of the continuing responsibility under 37 C.F.R. § 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent number 6,539,022 throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

### *How to Communicate with the USPTO*

ALL correspondence relating to this *ex parte* reexamination proceeding should be directed as

follows:

**Please mail any communications to:**

> Attn: Mail Stop "Ex Parte Reexam"
> Central Reexamination Unit
> Commissioner for Patents
> P. O. Box 1450
> Alexandria VA  22313-1450

**Please FAX any communications to:**

> (571) 273-9900
> Central Reexamination Unit

**Please hand-deliver any communications to:**

> Customer Service Window
> Attn:  Central Reexamination Unit
> Randolph Building, Lobby Level
> 401 Dulany Street
> Alexandria, VA  22314

Any inquiry concerning this communication or earlier communications from the Reexamination
Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the
Central Reexamination Unit at telephone number (571) 272-7705.

Signed:

Majid A. Banankhah
CRU Examiner
GAU 3992
(571) 272-3770

Conferee:

Conferee:

Application/Control Number: 90/008,558    Page 10

Art Unit: 3992

# EXHIBIT B

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,552 | 03/26/2007 | 6560236 | 8156.004.RXUS | 7389 |

7590    05/04/2007

JAMES H. MORRIS
WOLF GREENFIELD & SACKS PC
600 ATLANTIC AVENUE
BOSTON, MA  02210

| EXAMINER |
|---|
| Albert J. Gagliani |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | IFW |

DATE MAILED: 05/04/2007

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS

5/4/07

TRACY DRUCE

NOVAK DRUCE & QUIGG LLP

1000 LOUISIANA STREET, FIFTY-THIRD FLOOR

HOUSTON, TX 77002

 

### *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO 90/008552

PATENT NO. 6,560,236

ART UNI 3992

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified ex parte reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a replly has passed, no submission on behalf of the ex parte reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| *Order Granting / Denying Request For Ex Parte Reexamination* | Control No. | Patent Under Reexamination |
|---|---|---|
| | 90/008,552 | 6560236 |
| | Examiner | Art Unit | |
| | Albert J. Gagliardi | 3992 | |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>26 March 2007</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments:  a)☐ PTO-892,     b)☒ PTO/SB/08,     c)☐ Other: _____

1. ☒    The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional):  TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐    The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)).  Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)). **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181 ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE  REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

a) ☐  by Treasury check or,

b) ☐  by credit to Deposit Account No. _____ ,  or

c) ☐  by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

Albert J. Gagliardi
Examiner
Art Unit: 3992

cc:Requester ( if third party requester )

UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Foundry Networks, Inc.

4980 Great America Parkway .

Santa Clara, CA 95054

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/008,552*.

PATENT NO. *6560236*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

Application/Control Number: 90/008,552                                    Page 2
Art Unit: 3992

## DETAILED ACTION

### *Decision on Request*

A substantial new question of patentability affecting claims 1-9 and 11-17 of United States Patent Number 5,963,556 is raised by the request for *ex parte* reexamination.

The examiner considers a substantial new question of patentability has been raised by at least the following prior art references:

Ross (US 5,394,402)

Seaman (US 5,644,571)

Burnett *et al.* (US 5,444,702)

Lidinsky *et al.* (US 4,897,874)

Baker, F., Request for Comments: 1220 – "Point-to-Point Protocol Extensions for Bridging"

Deering, S., Request for Comments: 1112 – "Host Extensions for IP Multicasting"

Carmi (US 5,311,593)

Johnson *et al.* (US 5,379,296)

### *Issue(s) Raised by Request*

Issue 1

The requester alleges (p. 30) that Ross (US 5,394,402), either alone or combination with the knowledge of a person of ordinary skill in the art, raises a substantial new question of patentability regarding at least claims 1-9 and 11-17.

Application/Control Number: 90/008,552                                                     Page 3
Art Unit: 3992

Issue 2

The requester alleges (p. 30) that Seaman (US 5,644,571) raises a substantial new question of patentability regarding at least claims 1-4, 6-9 and 11-12.

Issue 3

The requester alleges (p. 31) that Burnett *et al.* (US 5,444,702), either alone or in view of Johnson *et al.* (US 5,379,296, raises a substantial new question of patentability regarding at least claims 1-9 and 11-17.

Issue 4

The requester alleges (p. 31-32) that Lidinsky *et al.* (US 4,897,874), either alone or in view of Johnson *et al.* (US 5,379,296), raises a substantial new question of patentability regarding at least claims 1-6, 8-9 and 11-17.

Issue 5

The requester alleges (p. 32-33) Baker, F., Request for Comments: 1220 – "Point-to-Point Protocol Extensions for Bridging", either alone or in view of Deering, S., Request for Comments: 1112 – "Host Extensions for IP Multicasting", raises a substantial new question of patentability regarding at least claims 1-4, 6, 8-9 and 11-14.

Issue 6

The requester alleges (p. 33-34), that Carmi (US 5,311,593), either alone or in view of Johnson *et al.* (US 5,379,296), raises a substantial new question of patentability regarding at least claims 1-3.

**Note:** The substantial new question of patentability regarding issue 6 is based solely on patents and/or printed publications already cited/considered in an earlier concluded examination

Application/Control Number: 90/008,552                              Page 4
Art Unit: 3992

of the patent being reexamined.  On November 2, 2002, Public Law 107-273 was enacted. Title

III, Subtitle A, Section 13105, part (a) of the Act revised the reexamination statute by adding the

following new last sentence to 35 U.S.C. 303(a) and 312(a):

> The existence of a substantial new question of patentability is not precluded by the fact that a
> patent or printed publication was previously cited by or to the Office or considered by the
> Office.

For any reexamination ordered on or after November 2, 2002, the effective date of the

statutory revision, reliance on previously cited/considered art, i.e., "old art," does not necessarily

preclude the existence of a substantial new question of patentability (SNQ) that is based

exclusively on that old art.  Rather, determinations on whether a SNQ exists in such an instance

shall be based upon a fact-specific inquiry done on a case-by-case basis.

In the present instance, there exists a SNQ based solely on *Carmi* or *Carmi* in view of

*Johnson*.  A discussion of the specifics will be discussed below.

***Background***

Claims 1-18 are the current claims in the Varghese *et al.* (US 6,560,236) patent which

issued May 6, 2003 from application 09/411,773 filed 10/4/1999, which is a continuation of

application 08/731,905 filed 10/22/1996 (US 5,963,556), which is a continuation of application

08/081,622 filed 6/23/1993 and now abandoned.

Of the claims for which reexamination is requested, claims 1 (original independent 21), 9

(dependent 30), 11 (dependent 32) and 15 (independent 36) are independent.

In a first non-final rejection (11/30/2001) the examiner: rejected as obvious at least

claims (21) and (36) in view of Natarajan (US 4,937,856); rejected as indefinite at least claims

(30) and (32) with no art rejection; and indicated as allowable the subject matter in at least

Application/Control Number: 90/008,552                                    Page 5
Art Unit: 3992

original dependent claims (24) and (39) if rewritten in independent form including all the limitations of base claims (21) and (30), respectively.

After additional amendments and office actions, a second non-final rejection (7/30/2002) was issued wherein at least claims (21), (30), (32) and 36), which had been previously indicated to be allowed, were held as indefinite. The claims were subsequently amended to overcome the indefiniteness rejection thereby placing them in their current form corresponding to finally numbered independent claims 1, 9, 11, and 15, respectively.

The claims were indicated to be allowed (final rejection of 6/22/2002) because the prior art does not teach or fairly suggest operating a network bridge having a first plurality of ports comprising the steps of assigning a group identifier to each port; receiving a multicast packet having a multicast destination address on a first port; sending the multicast packet having a multicast destination address out on all other ports having the same group identifier as the first port, as specified in independent claims (21), (30), (32,) (36), and (40), which correspond to claims 1, 9, 11, 15 and 18 of the patent.

Note: although claims 9 and 11 do not specifically recite a limitation of a "multicast packet", it is considered that the concern with group identifiers inherently implies that the communication could have been a multicast communication directed to one or more groups with the same group identifier.

### *Analysis*

<u>Issue 1</u>

The *Ross* patent is new prior art. *Ross* teaches, among other things, a hub including at least one external and one internal port for receiving and transmitting messages including

messages with a group identifier (VLAN designation) and transmitting the messages to all ports

(i.e., multicasting or broadcasting) with the same group identifier (see generally col. 3, line 54 to

col. 4, line 10; and col. 8, lines 48-67).

Since this teaching is directly related to subject matter considered as the basis for

allowability of the patent claims, a reasonable examiner would consider evaluation of the *Ross*

reference as important in determining the patentability of the claims. As such, it is agreed that

the *Ross* reference raises a substantial new question of patentability with respect to at least

claims 1-9 and 11-17 of the *Varghese* patent.

Issue 2

The *Seaman* patent is new prior art. *Seaman* teaches, among other things, a network

communication filtering system wherein messages may be sent to particular groups of devices,

termed multicasting, wherein the groups share a common group identifier (multicast address)

(see generally col. 2, lines 23-37; and col. 8, lines 16-49).

Since this teaching is directly related to subject matter considered as the basis for

allowability of the patent claims, a reasonable examiner would consider evaluation of the

*Seaman* reference as important in determining the patentability of the claims. As such, it is

agreed that the *Seaman* patent raises a substantial new question of patentability with respect to at

least claims 1-9 and 11-17 of the *Varghese* patent.

Issue 3

The *Burnett* patent is new prior art. *Johnson* is old prior art cited but not discussed

during the prosecution of the patent application and is being considered in new light (i.e., in view

of *Burnett*). *Burnett* teaches, among other things, a network communication system

Application/Control Number: 90/008,552                                          Page 7
Art Unit: 3992

implemented as a set of entities sharing a common group identifier for the purpose of establishing multicast connections (col. 5, lines 3-19).

Since this teaching is directly related to subject matter considered as the basis for allowability of the patent claims, a reasonable examiner would consider evaluation of the *Burnett* patent alone or in view of *Johnson* as important in determining the patentability of the claims. As such, it is agreed that the *Burnett* patent, either alone or in view of *Johnson*, raises a substantial new question of patentability with respect to at least claims 1-9 and 11-17 of the *Varghese* patent.

<u>Issue 4</u>

The *Lidinsky* patent is new prior art.  *Johnson* is old prior art cited during the prosecution of the parent application of the *Varghese* patent, and is being considered in new light (i.e., in view of *Lidinsky*).   *Lidinsky* teaches, among other things, a network interface module for receiving and transmitting data including packets with a specific identifier (EUSL port number) and forwards the data to multiple destinations in multicast or broadcast operations (see generally col. 46, lines 17-63).

Since this teaching is directly related to subject matter considered as the basis for allowability of the patent claims, a reasonable examiner would consider evaluation of the *Lidinsky* patent alone or in view of *Johnson* as important in determining the patentability of the claims.  As such, it is agreed that the *Lidinsky* patent, either alone or in view of *Johnson*, raises a substantial new question of patentability with respect to at least claims 1-9 and 11-17 of the *Varghese* patent.

Application/Control Number: 90/008,552                                              Page 8
Art Unit: 3992

Issue 5

The *RFC 1220* and *RFC 112* references are new prior art. *RFC 1220* teaches, among other things, transparent bridging within a network wherein transmissions are received and depending on the identifier may be forwarded to all interfaces except the one it was received on, thus describing multicast behavior (p. 3, § 4.1).

Since this teaching is directly related to subject matter considered as the basis for allowability of the patent claims, a reasonable examiner would consider evaluation of the *RFC 1220*, alone or in view of *RFC 1112* as important in determining the patentability of the claims. As such, it is agreed that the *RFC 1220*, alone or in view of *RFC 1112*, raises a substantial new question of patentability with respect to at least claims 1-9 and 11-17 of the *Varghese* patent.

Issue 6

The *Carmi* and *Johnson* patents are old prior art submitted but not described by the applicant, and not cited or discussed by the examiner during the prosecution of the patent application. The examiner further notes that while the *Carmi* and *Johnson* were discussed and applied in a rejection in a parent application (08/731,905), there is no evidence in the record that the examiner was specifically made aware, or became aware that the references had been applied to similar claims in a parent application (a different examiner examined the parent application). Additionally, a review of the examiner's search strategy shows that at least the *Carmi* reference would not have shown up in any of the examiner's text searches.

In this case, since the *Carmi* reference does suggests at least transmitting multicast packets unchanged (inherently suggesting the ability to distinguish such packets from unicast packets on the basis of a group identifier), which were critical elements in determining the

Application/Control Number: 90/008,552                                    Page 9
Art Unit: 3992

patentability of the claims, and there is no evidence that the examiner was aware of the

disclosure of such elements during the prosecution of the patent, the *Carmi* reference is being

viewed in a new light.

Since this teaching is directly related to subject matter considered as the basis for

allowability of the patent claims, a reasonable examiner would consider evaluation of the *Carmi*

patent alone or in view of *Johnson* as important in determining the patentability of the claims.

As such, it is agreed that the *Carmi* patent, either alone or in view of *Johnson*, raises a substantial

new question of patentability with respect to at least claims 1-3 of the *Varghese* patent.

### Conclusion

### Extensions of Time

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings

because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a

reexamination proceeding. Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination

proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in

ex parte reexamination proceedings are provided for in 37 CFR 1.550(c).

### Waiver of Right to File Patent Owner Statement

In a reexamination proceeding, Patent Owner may waive the right under 37 C.F.R. 1.530

to file a Patent Owner Statement. The document needs to contain a statement that Patent Owner

waives the right under 37 C.F.R. 1.530 to file a Patent Owner Statement and proof of service in

the manner provided by 37 C.F.R. 1.248, if the request for reexamination was made by a third

party requester, see 37 C.F.R 1.550(f). The Patent Owner may consider using the following

statement in a document waiving the right to file a Patent Owner Statement:

Application/Control Number: 90/008,552                              Page 10
Art Unit: 3992

Patent Owner waives the right under 37 C.F.R. 1.530 to file a Patent Owner Statement.

**Amendment in Reexamination Proceedings**

Patent owner is notified that any proposed amendment to the specification and/or claims in this reexamination proceeding must comply with 37 CFR 1.530(d)-(j), must be formally presented pursuant to 37 CFR § 1.52(a) and (b), and must contain any fees required by 37 CFR § 1.20(c). See MPEP § 2250(IV) for examples to assist in the preparation of proper proposed amendments in reexamination proceedings.

**Submissions**

In order to ensure full consideration of any amendments, affidavits or declarations, or other documents as evidence of patentability, such documents must be submitted in response to this Office action. Submissions after the next Office action, which is intended to be a final action, will be governed by the requirements of 37 CFR § 1.116, after final rejection and 37 CFR § 41.33 after appeal, which will be strictly enforced.

If the patent owner fails to file a timely and appropriate response to any Office action or any written statement of an interview required under 37 CFR § 1.560(b), the *ex parte* reexamination proceeding will be terminated, and the Director will proceed to issue a certificate under 37 CFR §1.570 in accordance with the last Office action.

**Service of Papers**

After the filing of a request for reexamination by a third party requester, any document filed by either the patent owner or the third party requester must be served on the other party (or parties where two or more third party requester proceedings are merged) in the reexamination proceeding in the manner provided in 37 CFR 1.248. See 37 CFR 1.550(f).

Application/Control Number: 90/008,552                                    Page 11
Art Unit: 3992

**Notification of Concurrent Proceedings**

  The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to

apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving

Patent No. 5,640,497 throughout the course of this reexamination proceeding.  The third party

requester is also reminded of the ability to similarly apprise the Office of any such activity or

proceeding throughout the course of this reexamination proceeding.  See MPEP §§ 2207, 2282

and 2286.

Application/Control Number: 90/008,552                                        Page 12
Art Unit: 3992

**All** correspondence relating to this ex parte reexamination proceeding should be directed:

By Mail to:           Mail Stop *Ex Parte* Reexam
                           Central Reexamination Unit
                           Commissioner for Patents
                           United States Patent & Trademark Office
                           P.O. Box 1450
                           Alexandria, VA 22313-1450

By FAX to:           (571) 273-9900
                           Central Reexamination Unit

By hand:             Customer Service Window
                           Randolph Building
                           401 Dulany Street
                           Alexandria, VA 22314

Any inquiry concerning this communication should be directed to the Central

Reexamination Unit at telephone number (571) 272-7705.

Signed:                                         Conferees:

Albert J. Gagliardi
Examiner
Art Unit 3992

ROLAND G. FOSTER
CRU EXAMINER-AU 3992

# **EXHIBIT C**

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,596 | 04/17/2007 | 5390173 | 8156.004.RXUS00 | 9968 |

7590        06/12/2007

Therese A. Hendricks
Wolf Greenfield & Sacks P. C.
600 Atlantic Avenue
Boston, MA  02210

| EXAMINER |
|---|
| |

| ART UNIT | PAPER NUMBER |
|---|---|
| | |

DATE MAILED: 06/12/2007

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Tracy W. Druce
Novak Druce & Quigg LLP
1000 Louisiana Street, Fifty-Third Floor
Houston, TX 77002

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/008,596*.

PATENT NO. *5390173*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| *Order Granting / Denying Request For Ex Parte Reexamination* | Control No. | Patent Under Reexamination |
|---|---|---|
| | 90/008,596 | 5390173 |
| | Examiner | Art Unit | |
| | Joseph R. Pokrzywa | 3992 | |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>17 April 2007</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☐ PTO-892,    b)☒ PTO/SB/08,    c)☐ Other: _____

1. ☒    The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional): TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐    The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)).  Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)). **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181  ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE  REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

a) ☐  by Treasury check or,

b) ☐  by credit to Deposit Account No. _____,  or

c) ☐  by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

Joseph R. Pokrzywa
Primary Examiner
Art Unit: 3992

cc:Requester ( if third party requester )
U.S. Patent and Trademark Office
PTOL-471 (Rev. 08-06)          Office Action in *Ex Parte* Reexamination          Part of Paper No. 20070530

Application/Control Number: 90/008,596                                    Page 2
Art Unit: 3992

# DETAILED ACTION

## Response to Request for *ex parte* Reexamination

1.    Reexamination has been requested for claims 1-24 of United States Patent Number

5,390,173.


2.    A substantial new question of patentability affecting claims 1-24 of U.S. Patent Number

5,390,173 (hereafter "the '173 Patent") is raised by the request for *ex parte* reexamination.


3.    The '173 Patent issued on Feb. 14, 1995, from U.S. Application 07/965,651, being filed

on Oct. 22, 1992.


4.    The '173 Patent is the subject of the litigation *Enterasys Networks, Inc. v. Foundry*

*Networks, Inc. et al.*, Civil Action No. 1:05 CV 11298 (U.S. District Court – Massachusetts).


## *Listing of Prior Art*

5.    In the request for reexamination, the third party requester alleges that the '173 Patent

**claims 1-24** are anticipated or unpatentable in light of the following references:

    a.    "Designs of an Integrated Service Packet Network", written by Turner, Johnathan

        S., IEEE Journal of Selected Areas in Communications, Vol. SAC-4, No.0:1373-

        1380 (November 1986) (hereafter "Turner").

Application/Control Number: 90/008,596                                    Page 3
Art Unit: 3992

b.    "Sunshine: A High-Performance Self-Routing Broadband Packet Switch

Architecture", written by Giacopelli, James, IEEE Journal of Selected Areas in

Communications, Vol. 9, No. 8:1289-1298 (October 1991) (hereafter

"Sunshine").

c.    U.S. Patent Number 5,166,926, issued to Cisneros *et al.* (hereafter "Cisneros").

d.    U.S. Patent Number 5,060,228, issued to Tsutsui *et al.* (hereafter "Tsutsui").

e.    U.S. Patent Number 5,115,432, issued to Haas *et al.* (hereafter "Haas").

f.    U.S. Patent Number 5,088,091, issued to Schroeder *et al.* (Schroeder).

g.    U.S. Patent Number 5,121,383, issued to Golestani (hereafter "Golestani").

### *Requester's Position*

6.    The request indicates that the Third Party Requester considers:

a.    Claims 1-10, and 12-24 of the '173 Patent are obvious over the Background of the

Invention section within the '173 Patent.

b.    Claims 1-4, 10-13, 20-21, and 23-24 of the '173 Patent to be anticipated by

Turner.

c.    Claims 1-4, 10-13, and 19-24 of the '173 Patent to be anticipated by Sunshine.

d.    Claims 19 and 20 of the '173 Patent are obvious over Turner.

e.    Claims 19 and 22 of the '173 Patent are obvious over Turner in view of Sunshine.

f.    Claims 19 and 22 of the '173 Patent are obvious over Turner in view of Golestani.

Application/Control Number: 90/008,596                                    Page 4
Art Unit: 3992

     g.     Claims 5-9 and 14-18 of the '173 Patent are obvious over Turner in view of Cisneros, and further in view of Sunshine.

     h.     Claims 5-9 and 14-18 of the '173 Patent are obvious over Sunshine in view of Cisneros.

     i.     Claims 1, 3-4, 10, 12-13, 20-21, and 23-24 of the '173 Patent are obvious over Tsutsui in view of Haas.

     j.     Claims 2, 5, 11, and 14 of the '173 Patent are obvious over Tsutsui in view of Haas, and further in view of Schroeder.

     k.     Claims 19 and 22 of the '173 Patent are obvious over Tsutsui in view of Golestani.

### *Discussion of Substantial New Question of Patentability*

7.     The aforementioned newly cited references of Turner, Sunshine, and Cisneros are not of record in the file of the '173 Patent and are not cumulative to the art of record in the original file. The aforementioned references of Tsutsui, Haas, Schroeder, and Golestani were cited during the prosecution of the application that matured into the '173 Patent.

8.     It is agreed that the newly presented references of Turner and Sunshine would have been individually considered important by a reasonable examiner in deciding whether or not independent **claim 1** was patentable, for the reasons discussed *infra*.

Turner discloses a network comprising:

a first network transfer device [being the incoming Packet Processor PP] having an input connected to said first network segment to receive said message packet and having an output; the first network transfer device applying a second header to said message packet [see page 1377, col. 1, wherein "When a packet is received by a PP, it is placed in a buffer with several additional header fields added."], said second header including a switching address translated from said destination address [see page 1377, cols. 1 and 2, wherein "The destination field (D) identifies the destination port on the SF. … the destination port is determined by the PP using the packet's LCN field and the PP's logical channel translation table (LCXT). Each entry in the LCXT contains an outgoing port number and a new LCN. The outgoing port is placed in the D field of the packet…"], said second header further including local status information and a plurality of status fields to indicate a message packet servicing [see page 1377, cols. 1 and 2, being the switch packet type field (SPTYP), the length field (LNG), the arrival time field (AT)];

a switching device [Switch Fabric SF] having a plurality of ports [see Fig. 4], a first of said ports being connected to said output of said first network transfer device; the switching device receiving said message packet with said second header and sending said message packet with said second header to a second port as selected by said switching address, and in response to said local status information and the plurality of status fields [see Fig. 4; also see page 1377, col. 2, wherein "The packet is then sent on to the switch fabric, which uses the D field to route the packet to the proper outgoing port…"];

a second network transfer device [being the outgoing PP, see page 1377, cols. 1 and 2] having an input connected to said second of said ports of said switching device and having an

output connected to a second network segment, the second network transfer device receiving said

message packet via said switching device to forward to said second network segment; the second

network transfer device removing said second header from said message packet [see page 1377,

col. 2, wherein "When a packet arrives at the outgoing PP, it is buffered and then transmitted on

the HSL with the extra header information stripped off."].


Continuing, the Sunshine reference discloses a network comprising:

a first network transfer device having an input connected to said first network segment to

receive said message packet and having an output; the first network transfer device applying a

second header to said message packet [being the control header, see page 1291, col. 1, second

paragraph, wherein "IPC's terminate the transmission links and format the ATM cells for

transport within the switch by inserting a control header in front of each cell."], said second

header including a switching address translated from said destination address, said second header

further including local status information and a plurality of status fields to indicate a message

packet servicing [see page 1291, col. 1, second paragraph, wherein "The control header identifies

the destination port on the switch and the service priority for the cell being transported.  The

information is organized into separate fields: a routing field followed by a priority field."];

a switching device having a plurality of ports [see Fig. 9, and page 1296, col. 1, para. 2,

being the Switch Fabric], a first of said ports being connected to said output of said first network

transfer device; the switching device receiving said message packet with said second header and

sending said message packet with said second header to a second port as selected by said

switching address, and in response to said local status information and the plurality of status

fields [see page 1296, col. 2, para. 3, wherein "The port controllers convert to and from ATM

cells and the switch-specific format, they queue cells at the output port, and they assist in the

setup and maintenance of network tables.... The port controllers are the central point in the

interface to the switch fabric for the customers and operators of the network."];

     a second network transfer device having an input connected to said second of said ports

of said switching device and having an output connected to a second network segment, the

second network transfer device receiving said message packet via said switching device to

forward to said second network segment; the second network transfer device removing said

second header from said message packet [see page 1296, col. 2, para. 3, wherein "The port

controllers convert to and from ATM cells and the switch-specific format, they queue cells at the

output port, and they assist in the setup and maintenance of network tables."].


9.     Thus, Turner and Sunshine each individually raise a substantial new question as to the

patentability of independent claim 1. Turner and Sunshine are not cumulative to any written

discussion on the record of the teachings of the prior art, were not previously considered nor

addressed during a prior examination, are not the subject of a final holding of invalidity by

Federal Courts, and a reasonable examiner would consider the teachings to be important in

deciding whether or not to allow the aforesaid claim. Thus, the references raise a substantial new

question of the instant '173 Patent.


10.    Further, because a dependent claim carries all of the limitations of the independent claim

from which it stems, by raising a substantial new question of patentability with regard to

independent claim 1, Turner and Sunshine each implicitly raise a substantial new question of

patentability for the corresponding dependent claims. Continuing, the references of Turner or

Sunshine, when viewed in combinations proposed by the Third Party Requester, raise a

substantial new question regarding the respective claims for the same reasons discussed above.

Thus, the combination of Turner in view of Sunshine, the combination of Turner in view of

Golestani, the combination of Turner in view of Cisneros, and further in view of Sunshine, and

the combination of Sunshine in view of Cisneros, each raise a substantial new question as to the

claims indicated in the Request for Reexamination.


11.      However, it is <u>not</u> agreed that the remaining proposed rejections that are in the Request

for Reexamination raise a substantial new question of patentability. First, the proposed rejection

from the Background of the Invention section within the '173 Patent, being an alleged admission

by the Patent Owner, is not seen to raise a substantial new question of patentability. The

Background of the Invention section in the '173 Patent describes the need to translate addresses

in packets due to address length, and that packets can carry various other information that may

be locally useful. However, the Background section does not describe the claimed features of

adding a second header to an existing packet having a first header, with the second header

containing a generated local address and locally useful information, such as status information,

and subsequently stripping off the second header from the packet having the first header when

the packet is sent to another network segment. Thus, there is no specific teaching within the

Background of the Invention that would lead one of ordinary skill in the art to utilize a second

Application/Control Number: 90/008,596                                    Page 9
Art Unit: 3992

header, as claimed.   Therefore, there is no substantial new question of patentability raised by the

teachings within the Background of the Invention section of the '173 Patent.

12.     Continuing, the proposed rejection of Tsutsui in view of Haas was utilized by the

examiner in the original prosecution that matured into the '173 Patent.  During prosecution, the

applicant argued that the combination of Tsutsui in view of Haas fails to teach of the switching

device receiving the message packet with the second header and sending the message packet

with the second header to a second port as selected by the switching address, and in response to

the local status information and the plurality of status fields.  Further, the applicant argued that

there would be no motivation that would lead one skilled in the art to provide the claimed

switching device with this function.  In response to these arguments, the examiner in the original

prosecution allowed the claims.  Presently, the third party requester submits new motivation that

would lead one of ordinary skill in the art to combine the references.

13.     However, since the art was previously cited and utilized in a rejection in the original

prosecution of the '173 Patent, and since the previously cited prior art is applied in the same

manner as indicated in the prosecution of the '173, a substantial new question of patentability is

not provided, as the references are not being viewed in a new light.  The combination of Tsutsui

in view of Haas still can be viewed as failing to teach the feature of the switching device

receiving the message packet with the second header and sending the message packet with the

second header to a second port as selected by the switching address, and in response to the local

status information and the plurality of status fields, as argued in the original prosecution.

Application/Control Number: 90/008,596                                   Page 10
Art Unit: 3992

14.     Thus, the proposed combination by the Third Party of the references of Tsutsui and Haas

does not raise a substantial new question of patentability of the '173 Patent.  Similarly, for the

same reasons discussed above, because the combination of Tsutsui and Haas, and further in view

of Schroeder, as well as the combination of Tsutsui in view of Golestani were previously utilized

in rejections in the original prosecution of the '173 Patent, the combinations do not raise a

substantial new question of patentability of the '173 Patent based on new motivation provided by

the Third Party Requester.


### Service of Papers

15.     After the filing of a request for reexamination by a third party requester, any document

filed by either the patent owner or the third party requester must be served on the other party (or

parties where two or more third party requester proceedings are merged) in the reexamination

proceeding in the manner provided in 37 CFR 1.248.  See 37 CFR 1.550(f).

Application/Control Number: 90/008,596                                    Page 11
Art Unit: 3992

### *Waiver of Right to File Patent Owner Statement*

16.    In a reexamination proceeding, Patent Owner may waive the right under 37 C.F.R. 1.530

to file a Patent Owner Statement.  The document needs to contain a statement that Patent Owner

waives the right under 37 C.F.R. 1.530 to file a Patent Owner Statement and proof of service in

the manner provided by 37 C.F.R. 1.248, if the request for reexamination was made by a third

party requester, see 37 C.F.R 1.550(f).  The Patent Owner may consider using the following

statement in a document waiving the right to file a Patent Owner Statement:


### WAIVER OF RIGHT TO FILE PATENT OWNER STATEMENT

Patent Owner waives the right under 37 C.F.R. 1.530 to file a Patent Owner Statement.


### *Extensions of Time*

17.    Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings

because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a

reexamination proceeding.  Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination

proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)).  Extensions of time in

*ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

Application/Control Number: 90/008,596                                                                    Page 12
Art Unit: 3992

### *Amendment in Reexamination Proceedings*

18.     Patent owner is notified that any proposed amendment to the specification and/or claims

in this reexamination proceeding must comply with 37 CFR 1.530(d)-(j), must be formally

presented pursuant to 37 CFR 1.52(a) and (b), and must contain any fees required by 37 CFR

1.20(c).  See MPEP § 2250(IV) for examples to assist in the preparation of proper proposed

amendments in reexamination proceedings.

### *Submissions*

19.     In order to insure full consideration of any amendments, affidavits or declarations or

other documents as evidence of patentability, such documents must be submitted in response to

the first Office action on the merits (which does not result in a close of prosecution).

Submissions after the second Office action on the merits, which is intended to be a final action,

will be governed by the requirements of 37 CFR 1.116, after final rejection and by 37 CFR 41.33

after appeal, which will be strictly enforced.

Application/Control Number: 90/008,596                                      Page 13
Art Unit: 3992

## NOTICE RE PATENT OWNER'S CORRESPONDENCE ADDRESS

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an *ex parte* reexamination or an *inter partes* reexamination is designated as the correspondence address of the patent.

> *Revisions and Technical Corrections Affecting Requirements for Ex Parte and Inter Partes Reexamination*, 72 FR 18892 (April 16, 2007)(Final Rule)

**The correspondence address for any pending reexamination proceeding not having the same correspondence address as that of the patent is, by way of this revision to 37 CFR 1.33(c), <u>automatically changed to that of the patent file</u> as of the effective date.**

This change is effective for any reexamination proceeding which is pending before the Office as of May 16, 2007, <u>including the present reexamination proceeding</u>, and to any reexamination proceeding which is filed after that date.

Parties are to take this change into account when filing papers, and direct communications accordingly.

In the event the patent owner's correspondence address listed in the papers (record) for the present proceeding is different from the correspondence address of the patent, it is strongly encouraged that the patent owner affirmatively file a Notification of Change of Correspondence Address in the reexamination proceeding and/or the patent (depending on which address patent owner desires), to conform the address of the proceeding with that of the patent and to clarify the record as to which address should be used for correspondence.


Telephone Numbers for reexamination inquiries:

| | |
|---|---|
| Reexamination and Amendment Practice | (571) 272-7703 |
| Central Reexam Unit (CRU) | (571) 272-7705 |
| Reexamination Facsimile Transmission No. | (571) 273-9900 |

Application/Control Number: 90/008,596                                    Page 14
Art Unit: 3992

### *Conclusion*

20.  **Claims 1-24** for U.S. Patent Number 5,390,173 are subject to reexamination.


21.  The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to

apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving

Patent No. 5,390,173 throughout the course of this reexamination proceeding.  The third party

requester is also reminded of the ability to similarly apprise the Office of any such activity or

proceeding throughout the course of this reexamination proceeding.  See MPEP §§ 2207, 2282

and 2286.


22.  ALL correspondence relating to this ex parte reexamination proceeding should be

directed as follows:


**Please mail any communications to:**

Attn: Mail Stop "Ex Parte Reexam"
Central Reexamination Unit
Commissioner for Patents
P. O. Box 1450
Alexandria VA 22313-1450

**Please FAX any communications to:**

(571) 273-9900
Central Reexamination Unit

Application/Control Number: 90/008,596                                Page 15
Art Unit: 3992

**Please hand-deliver any communications to:**

Customer Service Window
Attn: Central Reexamination Unit
Randolph Building, Lobby Level
401 Dulany Street
Alexandria, VA 22314

Any inquiry concerning this communication or earlier communications from the Reexamination
Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the
Central Reexamination Unit at telephone number (571) 272-7705.

Signed:

Joseph R. Pokrzywa
Primary Examiner
Central Reexamination Unit 3992
(571) 272-7410

Conferees:

ROLAND G. FOSTER
CRU EXAMINER-AU 3992

OPQA

# **<u>EXHIBIT D</u>**

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,632 | 05/03/2007 | 6147995 | 8156.004 | 2017 |

7590          06/26/2007

Therese A. Hendricks
WOLF GREENFIELD & SACKS, PC
600 Atlantic Ave.
Federal Reserve Plaza
Boston, MA  02210

| EXAMINER |
|---|

| ART UNIT | PAPER NUMBER |
|---|---|

DATE MAILED: 06/26/2007

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

| *Order Granting / Denying Request For Ex Parte Reexamination* | Control No. | Patent Under Reexamination |
|---|---|---|
| | 90/008,632 | 6147995 |
| | Examiner | Art Unit | |
| | Ovidio Escalante | 3992 | |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>03 May 2007</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments:  a)☐ PTO-892,        b)☒ PTO/SB/08,        c)☒ Other: <u>Decision</u>

1. ☒   The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional):  TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐   The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)).  Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)). **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181  ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE  REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

    a) ☐  by Treasury check or,

    b) ☐  by credit to Deposit Account No. _____,  or

    c) ☐  by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

Ovidio  Escalante
CRU Examiner
Art Unit: 3992

cc:Requester ( if third party requester )
U.S. Patent and Trademark Office
PTOL-471 (Rev. 08-06)                    Office Action in *Ex Parte* Reexamination                    Part of Paper No. 20070529

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Tracy Druce
NOVAK, DRUCE & QUIGG, LLP
1000 Louisiana Ave.,, Wells Fargo Plaza 53rd Floor
Houston, TX 77002

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/008,632*.

PATENT NO. *6147995*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

Application/Control Number: 90/008,632                                          Page 2
Art Unit: 3992

## DECISION

1.    A substantial new question of patentability affecting claims 1-8,10-13,15-17,19-20,25-31

of United States Patent Number 6,147,995 (Dobbins et al.) is raised by the request for *ex parte*

reexamination.

2.    The instant patent issued November 14, 2000 based on US Patent Application Ser. No.

09/387,317, filed August 31, 1999 as a continuation of US Patent 08/960,919, filed October 30,

1997 as a continuation of US Patent Application Ser. No. 08/559,738, filed November 15, 1995.

### *References Cited in the Request*

3.    The request asserts the following printed publications as providing teachings relevant to

the claims of the Dobbins patent:

   1.    Ross US Patent 5,394,402, issued February 28, 1995.

   2.    Hart US patent 5,752,003, issued May 12, 1998.

   3.    Krause US Patent 6,005,864, issued December 21, 1999.

   4.    Lidinksy et al. US Patent 4,922,486, issued May 1, 1990.

   5.    Youchi Ohteru, Interconnecting IEEE 802 LANs by a Wideband Backbone
         Network, 12th Conf. on Local Computer Networks, October 5-7, 1987, IEEE
         Computer Society (Ohteru).

A reasonable examiner would consider the above prior references important in making a

decision as to the patentability of claims 1-8,10-13,15-17,19-20,25-31 of the Dobbins patent.

### *Identification of Every Claim for Which Reexamination is Requested*

4.    The above cited references are separately discussed regarding claims 1-8,10-13,15-17,19-

20,25-31 of the Dobbins Patent. See pages 27-30 of the request.

Application/Control Number: 90/008,632                                        Page 3
Art Unit: 3992

Specifically, the request considers that claims 1-2,4-8,13,15-17,19-20 and 25-31 are

anticipated by Ross.

The request further considers that claims 1-7,10-13,15-17,19-20 and 25-31 are

anticipated by Hart.

The request further considers that claim 8 is obvious over Hart.

The request further considers that claim 16 is obvious over Hart in view of Ohteru.

The request further considers that claims 1,4-8,25 and 28-31 are anticipated by Krause.

The request considers that claims 2 and 26 is obvious over Krause in view of Ross.

The request further considers that claims 1,10-12 and 25 are anticipated by Lidinsky.

### *Substantial New Question of Patentability*

5.      The teachings in each cited prior art document that provides a basis for each substantial

new question of patentability is separately discussed. See the pages 30-78 of the Request, which

point out the teachings in each of the above-cited references.

Independent claim 1 is representative:

**A computer-readable storage medium comprising program instructions for restricting
flooding of a data packet, of one of a broadcast, multicast and unknown destination type, in
a switched data communications network, the network including a plurality of end systems
and switches connected by links, the switches having access ports connected to end systems
and network ports connected to other switches, the program instructions causing the
network to:**

**a. assign at least one identifier to a respective subset of end systems;**

**b. map the at least one assigned identifier to an access port attached to at least one end
system in the respective subset of end systems; and**

**c. when the data packet is received from a source end system at a receiving access port of a
first switch:**

**i) determine one or more identifiers associated with the source end system;**

Application/Control Number: 90/008,632                                      Page 4
Art Unit: 3992

**ii) encapsulate the data packet by adding a header with the one or more determined identifiers;**

**iii) forward the encapsulated data packet to all or a subset of other switches in the network; and**

**iv) determine if at least one access port other than the receiving access port on the first switch is associated with the one or more determined identifiers and forward the data packet out the at least one determined access port.**

### *Ross*

The substantial new question of patentability is based solely on patents and/or printed publications already cited/considered in an earlier concluded examination of the patent being reexamined.  On November 2, 2002, Public Law 107-273 was enacted. Title III, Subtitle A, Section 13105, part (a) of the Act revised the reexamination statute by adding the following new last sentence to 35 U.S.C. 303(a) and 312(a):

> "The existence of a substantial new question of patentability is not precluded by the fact that a patent or printed publication was previously cited by or to the Office or considered by the Office."

For any reexamination ordered on or after November 2, 2002, the effective date of the statutory revision, reliance on previously cited/considered art, i.e., "old art," does not necessarily preclude the existence of a substantial new question of patentability (SNQ) that is based exclusively on that old art.  Rather, determinations on whether a SNQ exists in such an instance shall be based upon a fact-specific inquiry done on a case-by-case basis.

Here Ross was applied by the Examiner during prosecution of the Dobbins patent, however, Ross is being presented in a new light as compared with those it was used in an earlier concluded examination.

A discussion of the specifics now follows:

Application/Control Number: 90/008,632                                          Page 5
Art Unit: 3992

The request considers that Ross identifies VLAN designations associated with messages received by or within the hub and means and transmits to any of the internal ports only messages received within the hub and having associated with them a VLAN designation which matches the stored VLAN designation assigned to the port, (col. 12, lines 23-24).

Ross stores a unique MAC addresses of all of the end stations that are attached to each particular internal port, (col. 9, lines 28-35).

The request shows that Ross teaches that FIG. 5 shows the same message as FIG. 4 with a VLAN designation field 90 appended preparatory to encapsulating the message for transmission out of a hub through an external port over backbone network 90, (col. 7, lines 45-48) and when a message received from an internal port is to be transmitted from the same hub's external port, the appropriate VLAN designation is appended (see FIG. 5) by the flow processing element (FPE), based on the internal port from which the message was received. The message is then encapsulated (see FIGS. 6 and 7) for transmission onto the backbone network 76 by the external port. A message may then only be delivered (1) to an end station that is connected to an internal port having a matching VLAN designation, (2) to an internal port that has a matching VLAN designation, or (3) to an external port connected to a hub having a port with a matching VLAN designation, (col. 8, lines 11-20).

While the Ross patent was previously discussed by the examiner it was not previously applied to claim 1-2,4-8,13,15-17,19-20 and 25-31 in the prior examination of the patent as discussed above.

Application/Control Number: 90/008,632                                    Page 6
Art Unit: 3992

It is agreed that the consideration of Ross raises a SNQ as to claims 11-2,4-8,13,15-

17,19-20 and 25-31 of the Dobbins patent as pointed out above. There is a substantial likelihood

that a reasonable examiner would consider this teaching important in deciding whether or not

these claims are patentable.

Accordingly, Ross raises a substantial new question of claims 1-2,4-8,13,15-17,19-20 and

25-31, which question has not been decided in a previous examination of the Ross Patent nor

was there a final holding of invalidity by the Federal Courts regarding the Ross patent.

### *Hart*

The Hart patent was cited during prosecution of the Dobbins patent, but was not applied

during prosecution in a rejection of a claim. Thus a substantial new question of patentability

would be based on patents and/or printed publications already cited/considered in an earlier

concluded examination of the patent being reexamined.  On November 2, 2002, Public Law 107-

273 was enacted. Title III, Subtitle A, Section 13105, part (a) of the Act revised the

reexamination statute by adding the following new last sentence to 35 U.S.C. 303(a) and 312(a):

> "The existence of a substantial new question of patentability is not precluded by the fact
> that a patent or printed publication was previously cited by or to the Office or considered
> by the Office."

For any reexamination ordered on or after November 2, 2002, the effective date of the

statutory revision, reliance on previously cited/considered art, i.e., "old art," does not necessarily

preclude the existence of a substantial new question of patentability (SNQ) that is based

exclusively on that old art.  Rather, determinations on whether a SNQ exists in such an instance

shall be based upon a fact-specific inquiry done on a case-by-case basis.

Application/Control Number: 90/008,632                                    Page 7
Art Unit: 3992

Here, Hart was not applied by the Examiner during prosecution of the Dobbins patent,

thus Hart is being presented in a new light or a different was as compared with those it was used

in an earlier concluded examination.

A discussion of the specifics now follows:

The Request shows that Hart teaches network traffic management is achieved based on

automatically setting up a plurality of VNETs within a single large virtual LAN and

Multicast/broadcast traffic is confined to the VNET of the source, without imposing constraints

on layer two addressing within the virtual LAN, (col. 3, lines 10-13).

Hart further teaches discloses the network includes a plurality of LAN segments coupled

to end systems or nodes on the network. The LAN segments include segments 10-17 which are

connected to an edge device 18, and segments 19-26 which are coupled to edge device 27. A

backbone network 28 is coupled to each of the edge devices 18 and 27 to provide interconnection

among the LAN segments. Also coupled to the backbone network, may be adapters, such as

ATM adapters 30 and 31 which connect directly to end systems. Within the wired network which

includes the LAN segments, edge devices, adapters and the backbone, a virtual LAN domain 35

may be established as a layer two construct.

Hart teaches in the centralized embodiment, the virtual net server is contained in the

ATM backbone, such as in an improved broadcast and unknown server (BUS). In a distributed

embodiment, the BUS remains unchanged, while edge devices provide management of the multi-

destination packet, (col. 4, lines 1-8). An entry is created in the virtual net BUS membership list

for the source of the packet (block 271). The entry includes a source MAC address and a virtual

channel identifier (block 272). After creating the entry, the virtual net BUS module sends the

Application/Control Number: 90/008,632                                                   Page 8
Art Unit: 3992

source MAC address across the established virtual channel to the originating edge device (block

273). The edge device then stores the received source MAC address in the virtual channel/virtual

net membership list maintained by the agent (block 274), (col. 9, lines 18-23).

The request shows that the edge device, in Hart, stores the received source MAC address in

the virtual channel/virtual net membership list maintained by the agent (block 274). This MAC

address is utilized to map incoming frames on this virtual circuit to the appropriate ports of the

edge device, col. 9, lines 20-25. As shown in FIG. 6, the process executed by the edge device

when it receives a packet from the LAN segment on the user side of the edge device is shown.

Thus, the process begins with receiving a packet from the user side (block 300), (col. 9, lines 45-

49).

Hart teaches VNET encapsulation can be utilized which provides the ability for each of the

virtual net BUS modules to share virtual channels established for each of the edge devices.

However, the agent at the edge device must be able to handle the decapsulation of the frame as it

received and route it appropriately, (col. 8, lines 11-16) and a multicast packet is forwarded using

standard LAN emulation processes, including sending out the packet on local LAN segments and

forwarding the packet to the BUS. Optionally, transmission on the local LAN segments can be

filtered by VNET membership (block 305). The bus which receives a multicast packet forwarded

according to the process of FIG. 6, handles the packet according to the standards and distributes

it to the edge devices within the virtual LAN, (col. 9, lines 56-65).

While the Hart patent was previously cited by the examiner it was not previously applied

to claim 1-7,10-13,15-17,19-20 and 25-31 in the prior examination of the patent as discussed

above.

Application/Control Number: 90/008,632                                    Page 9
Art Unit: 3992

It is agreed that the consideration of Hart raises a SNQ as to claims 1-7,10-13,15-17,19-20 and 25-31 of the Dobbins patent as pointed out above. There is a substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not these claims are patentable.

Accordingly, Hart raises a substantial new question of claims 1-7,10-13,15-17,19-20 and 25-31, which question has not been decided in a previous examination of the Dobbins Patent nor was there a final holding of invalidity by the Federal Courts regarding the Dobbins patent.

### *Hart in view of Ohteru*

The request shows that in addition to the teachings of Hart as shown above, Ohteru provides for node-to-node forwarding inside a backbone is accomplished by broadcasting to all nodes. Ohteru states this is not the broadcast but a groupcast, providing also that several groups of LANs are sharing the backbone. The group address is assigned to each communicating group statically, (Ohteru at 132, col. 2).

It is agreed that the consideration of Ohteru raises a SNQ as to claim 16of the Dobbins patent as pointed out above. There is a substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not these claims are patentable.

Accordingly, Hart in view of Ohteru raises a substantial new question of claim 16, which question has not been decided in a previous examination of the Dobbins Patent nor was there a final holding of invalidity by the Federal Courts regarding the Dobbins patent.

### *Krause*

The substantial new question of patentability is based solely on patents and/or printed publications already cited/considered in an earlier concluded examination of the patent being

Application/Control Number: 90/008,632                                    Page 10
Art Unit: 3992

reexamined. On November 2, 2002, Public Law 107-273 was enacted. Title III, Subtitle A,

Section 13105, part (a) of the Act revised the reexamination statute by adding the following new

last sentence to 35 U.S.C. 303(a) and 312(a):

> "The existence of a substantial new question of patentability is not precluded by the fact that
> a patent or printed publication was previously cited by or to the Office or considered by the
> Office."

For any reexamination ordered on or after November 2, 2002, the effective date of the

statutory revision, reliance on previously cited/considered art, i.e., "old art," does not necessarily

preclude the existence of a substantial new question of patentability (SNQ) that is based

exclusively on that old art. Rather, determinations on whether a SNQ exists in such an instance

shall be based upon a fact-specific inquiry done on a case-by-case basis.

Here Krause was applied by the Examiner during prosecution of the Dobbins patent,

however, Kruase is being presented in a new light as compared with those it was used in an

earlier concluded examination.

A discussion of the specifics now follows:

The request shows that Krause relates to protocols for interconnecting networks using

connection oriented protocols, such as asynchronous transfer mode (ATM), with networks using

connectionless protocols, such as Ethernet or Token Ring; and more particularly to improving

performance of such systems for multicast and broadcast messages, (col. 1, lines 16-21).

Krause provides service which include a LAN emulation configuration server (LECS), a

LAN emulation server (LES), and a broadcast and unknown server (BUS). The LECS contains a

list of all the ports on the edge devices (network intermediate system devices that connect end

Application/Control Number: 90/008,632                                              Page 11
Art Unit: 3992

systems or non-ATM intermediate system devices to the ATM network fabric) on the network.

For each port on each edge device, the LECS identifies the multicast domain (also referred to as

a virtual LAN), of which devices connected to that port are members. In addition, it identifies the

LES and BUS servers that might be used for each port on the edge device. When an edge device

is initialized or reset, it queries the LECS for this information. The LAN emulation server LES is

used by the edge device connecting a particular end station to the ATM network. When it is

initialized, the edge device queries the LECS to find out which LES to connect to, and then

whenever it gets a unicast packet from the end station, the edge device queries the LES to find

out the ATM path address of the destination in the system. That address is then used to route the

packet through the ATM switches, (col. 2, lines 15-36).

Krause also provides an enhanced BUS server in the ATM architecture, which works by

learning network layer protocol information and tying that information to MAC layer address

tables to avoid sending multicast and broadcast packets to end systems that do not have the

protocol software appropriate to respond to the packet, (col. 2, line 66 - col. 3, line 4). The

broadcast and unknown server BUS is used when an edge device receives a broadcast or a

multicast packet from an end station, or when it receives a packet with a destination address that

is not identified by the LES. When such a packet is received, the edge device sends the packet to

the BUS. The BUS then identifies all other end stations which are configured as part of the same

multicast domain, and sends the packet to all end systems that are part of the same multicast

domain, (col. 2, lines 37-45).

While the Krause patent was previously considered by the examiner it was not previously

applied to claim 1,4-8,25 and 28-31 in the prior examination of the patent as discussed above.

It is agreed that the consideration of Krause raises a SNQ as to claims 1,4-8,25 and 28-31 of the Dobbins patent as pointed out above. There is a substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not these claims are patentable.

Accordingly, Krause raises a substantial new question of claims 1,4-8,25 and 28-31, which question has not been decided in a previous examination of the Dobbins Patent nor was there a final holding of invalidity by the Federal Courts regarding the Dobbins patent.

### *Lidinsky*

The request shows that Lidinsky teaches more than one EUSL interface may forward the data if required, as in a broadcast or multicast operation, (col. 49, lines 1-3). The MAN network is hierarchical star architecture with two or three levels depending upon how closely one looks at the topology. FIG. 2 shows the network as consisting of a switching center called a hub 1 linked to network interface modules 2 (NIMs) at the edge of the network, (col. 6, lines 56-62).

Lidinsky teaches a user, such as a workstation or a front end processor acting as a concentrator for stations or even networks, will be required to make a physical connection at a NIM port and then identify itself via its MAN name, virtual network identification, and password security. The network adjusts routing tables to map data destined for this name to a unique NIM port. The capabilities of this user are associated with the physical port, (col. 13, line 61- col. 14, line 1). This login is achieved by the EUS (via its UIM) sending a login transaction to the server through the network. This transaction contains the EUS identification number (its name), its requested virtual network, and a password. In the NIM a port number is prefixed to the transaction before it is forwarded to the MINT for routing to the server. The Login Server notes

the id/port pairing and informs the MINT attached to the source NIM of that pairing, (col. 17, lines 42-49).

A NIM, the outer edge of which delineates the edge of the network, acts as a concentrator/demultiplexer and also identifies network ports. It concentrates when moving information into the network and demultiplexes when moving information out of the network. Its purpose in concentrating/demultiplexing is to interface multiple end user systems 26 (EUSs) to the network in such a way as to use the link efficiently and cost effectively. Up to 20 EUSs 26 can be supported by each NIM depending upon the EUSs networking needs. Examples of such EUSs are the increasingly common advanced function workstations 4 where the burst rates are already in the 10 Mbps range (with the expectation that much faster systems will soon be available) with average rates orders of magnitude lower. If the EUS needs an average rate that is closer to its burst rate and the average rates are of the same order of magnitude as that of a NIM, then a NIM can either provide multiple interfaces to a single EUS 26 or can provide a single interface with the entire NIM and XL dedicated to that EUS, (col. 7, lines 6-27).

It is agreed that the consideration of Lidinksi raises a SNQ as to claims 1,10-12 and 25 of the Dobbins patent as pointed out above. There is a substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not these claims are patentable.

Accordingly, Lidinksi raises a substantial new question of claims 1,10-12 and 25, which question has not been decided in a previous examination of the Dobbins Patent nor was there a final holding of invalidity by the Federal Courts regarding the Dobbins patent.

### *Scope of Reexamination*

Application/Control Number: 90/008,632                                    Page 14
Art Unit: 3992

6.     Claims 1-8,10-13,15-17,19-20,25-31 will be reexamined as requested in the request.

Since requester did not request reexamination of claims 9,14,18, 21-24 and 32-35 and did

not assert the existence of a substantial new question of patentability (SNQP) for such claims

(see 35 U.S.C. § 311(b)(2); see also 37 CFR 1.915b and 1.923), such claims will not be

reexamined. This matter was squarely addressed in *Sony Computer Entertainment America Inc.,*

*et al. v. Jon W. Dudas*, Civil Action No. 1:05CV1447 (E.D.Va. May 22, 2006), Slip Copy, 2006

WL 1472462. (Not Reported in F.Supp.2d.) The District Court upheld the Office's discretion to

not reexamine claims in an *inter partes* reexamination proceeding other than those claims for

which reexamination had specifically been requested.  The Court stated:

> To be sure, a party may seek, and the PTO may grant, *inter partes*
> review of each and every claim of a patent.  Moreover, while the PTO
> in its discretion may review claims for which *inter partes* review was
> not requested, nothing in the statute compels it to do so.  To ensure
> that the PTO considers a claim for *inter partes* review, § 311(b)(2)
> requires that the party seeking reexamination demonstrate why the
> PTO should reexamine each and every claim for which it seeks review.
> Here, it is undisputed that Sony did not seek review of every claim
> under the '213 and '333 patents.  Accordingly, Sony cannot now claim
> that the PTO wrongly failed to reexamine claims for which Sony never
> requested review, and its argument that AIPA compels a contrary
> result is unpersuasive.

(Slip copy at page 9.)

The *Sony* decision's reasoning and statutory interpretation apply analogously to *ex parte*

reexamination, as the same relevant statutory language applies to both *inter partes* and *ex parte*

reexamination.  35 U.S.C. § 302 provides that the *ex parte* reexamination "request must set forth

the pertinency and manner of applying cited prior art to every claim for which reexamination is

requested" (emphasis added), and 35 U.S.C. § 303 provides that "the Director will determine

whether a substantial new question of patentability affecting any claim of the patent concerned is

Application/Control Number: 90/008,632                                    Page 15
Art Unit: 3992

raised by the request..." (Emphasis added). These provisions are analogous to the language of

35 U.S.C. § 311(b)(2) and 35 U.S.C. § 312 applied and construed in *Sony*, and would be

construed in the same manner. As the Director can decline to reexamine non-requested claims in

an *inter partes* reexamination proceeding, the Director can likewise do so in *ex parte*

reexamination proceeding. See *Notice of Clarification of Office Policy To Exercise Discretion in*

*Reexamining Fewer Than All the Patent Claims* (signed Oct. 5, 2006) 1311 OG 197 (Oct. 31,

2006). See also MPEP § 2240, Rev. 5, Aug. 2006.

Therefore, claims 9,14,18, 21-24 and 32-35 will not be reexamined in this *ex parte*

reexamination proceeding.

### *Conclusion*

### NOTICE RE PATENT OWNER'S CORRESPONDENCE ADDRESS

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an *ex parte* reexamination
or an *inter partes* reexamination is designated as the correspondence address of the patent.

*Revisions and Technical Corrections Affecting Requirements for Ex Parte and*
*Inter Partes Reexamination*, 72 FR 18892 (April 16, 2007)(Final Rule)

**The correspondence address for any pending reexamination proceeding not having the
same correspondence address as that of the patent is, by way of this revision to 37 CFR
1.33(c), <u>automatically changed to that of the patent file</u> as of the effective date.**

This change is effective for any reexamination proceeding which is pending before the Office as
of May 16, 2007, <u>including the present reexamination proceeding</u>, and to any reexamination
proceeding which is filed after that date.

Parties are to take this change into account when filing papers, and direct communications
accordingly.

In the event the patent owner's correspondence address listed in the papers (record) for the
present proceeding is different from the correspondence address of the patent, it is strongly
encouraged that the patent owner affirmatively file a Notification of Change of Correspondence

Application/Control Number: 90/008,632                                    Page 16
Art Unit: 3992

Address in the reexamination proceeding and/or the patent (depending on which address patent
owner desires), to conform the address of the proceeding with that of the patent and to clarify the
record as to which address should be used for correspondence.

Telephone Numbers for reexamination inquiries:

| | |
|---|---|
| Reexamination and Amendment Practice | (571) 272-7703 |
| Central Reexam Unit (CRU) | (571) 272-7705 |
| Reexamination Facsimile Transmission No. | (571) 273-9900 |

### *Service of Papers*

7.      After the filing of a request for reexamination by a third party requester, any document

filed by either the patent owner or the third party requester must be service on the other party (or

parties where two or more third party requester proceeding are merged) in the reexamination

proceeding in the manner provided in 37 CFR 1.248. See 37 CFR 1.550(f).

### *Extension of Time*

8.      Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings

because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a

reexamination proceeding.  Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination

proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)).  Extensions of time in

*ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

### *Waiver of Right to File Patent Owner Statement*

9.      In a reexamination proceeding, Patent Owner may waive the right under 37 C.F.R. 1.530

to file a Patent Owner Statement. The document needs to contain a statement that Patent Owner

waives the right under 37 C.F.R. 1.530 to file a Patent Owner Statement and proof of service in

the manner provided by 37 C.F.R. 1.248, if the request for reexamination was made by a third

party requester, see 37 C.F.R 1.550(f).

### *Amendment in Reexamination Proceedings*

Application/Control Number: 90/008,632          Page 17
Art Unit: 3992

10.     Patent Owner is notified that any proposed amendment to the specification and/or claims

in this reexamination proceeding must comply with 37 CFR 1.530(d)-(j), must be formally

presented pursuant to 37 CFR 1.52(a) and (b), and must contain any fees required by 37 CFR

1.20(c).

### *Notification of Concurrent Proceedings*

11.     The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to

apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving

Patent No. 6,147,995 throughout the course of this reexamination proceeding. The third party

requester is also reminded of the ability to similarly apprise the Office of any such activity or

proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282

and 2286.

12.     All correspondence related to this *ex parte* reexamination proceeding should be directed

as follows:

**Please MAIL any communications to:**

Attn: Mail Stop *Ex Parte* Reexam
Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

**Please FAX any communication to:**

(571) 273-9900
Central Reexamination Unit

**Please HAND-DELIVER any communications to:**

Customer Service Window
Attn: Central Reexamination Unit
Randolph Building, Lobby Level
401 Dulany Street

Application/Control Number: 90/008,632                                    Page 18
Art Unit: 3992

Alexandria, VA 22314

13.     Any inquiry by the patent owner concerning this communication or earlier

communications from the Legal Advisor or Examiner, or as to the status of this proceeding,

should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

*Ovidio Escalante*

Ovidio Escalante
Primary Examiner
Central Reexamination Unit - Art Unit 3992
(571) 272-7537

Conferee:                                              Conferee:

**EXHIBIT E**

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,634 | 05/04/2007 | 5215205 | 8156.004 | 2373 |

7590          07/26/2007

Therese A. Hendricks
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Ave.
Boston, MA   02210

| EXAMINER |
|---|
| Long T. Nguyen |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | IFW |

DATE MAILED: 07/26/2007

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

NOVAK DRUCE & QUIGG, LLP
1000 Louisiana Ave
Wells Fargo Plaza
53rd Floor
Houston, Texas 77002

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/008,634*.

PATENT NO. *5215205*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| *Order Granting / Denying Request For Ex Parte Reexamination* | Control No. 90/008,634 | Patent Under Reexamination 5215205 | |
|---|---|---|---|
| | Examiner Long Nguyen | Art Unit 3992 | |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>04 May 2007</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☐ PTO-892,   b)☒ PTO/SB/08,   c)☐ Other: _____

1. ☒   The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional): TWO MONTHS from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐   The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)). Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)). **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181 ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

a) ☐ by Treasury check or,

b) ☐ by credit to Deposit Account No. _____ , or

c) ☐ by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

cc:Requester ( if third party requester )

Application/Control Number: 90/008,634                                      Page 2
Art Unit: 3992

## DECISION GRANTING EX PARTE REEXAMINATION

1.     Reexamination has been requested for claims 1-23 of United States Patent Number 5,251,205 to Callon et al., entitled "MULTIPLE PROTOCOL ROUTING".

2.     A substantial new question of patentability affecting claims 1-23 of United States Patent Number 5,251,205 to Callon et al. (the '205 patent, hereafter) is raised by the request for *ex parte* reexamination.

3.     Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in *ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

4.     The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving the '733 patent throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

Application/Control Number: 90/008,634                                    Page 3

Art Unit: 3992

5.    The Prior Art(s)

a1.    Kenneth O. Zoline et al., An Approach for Interconnecting SNA and XNS
Networks, ACM SIGCOMM Computer Communication Review, Vol. 15, Issue 4,
September 1985 ("Zoline", hereafter).

a2.    Kenneth O. Zoline, An Approach for Interconnecting SNA and XNS Networks,
Master's Thesis, Illinois Institute of Technology, Chicago, Illinois, December 1984
("Zoline Thesis", hereafter).

b.    Ian Y. Chiou et al., CAMPUSNET: A Gateway-Network Approach to
Interconnecting A Campus-Wide Internet, IEEE INFOCOM 85, CH-2153-5/85, March
1985 ("CAMPUSNET", hereafter).

c.    . David Boggs et al. Pub: An Internetwork Architecture, IEEE Txns. On Comms.,
Vol. Com-28, No. 4, 612-624, April 1980 ("Pub", hereafter).

d.    U.S. Patent No. 4,679,189 to Olson et al. ("Olson", hereafter).

e.    Roy C. Dixon et al., Source Routing Bridges: Addressing, Bridging and Source
Routing, IEEE Network Vol. 2, No. 1, January 1988 ("Dixon", hereafter).

f.    David Oran, OSI IS-IS Intra-domain Routing Protocol, RFC 1142, Feb. 1990
("RFC 1142", hereafter).

g.    Shoch et al., Mutual Encapsulation of Internetwork Protocols, Computer
Networks, Vol. 5, pp. 287-300, 1981 ("Shoch", hereafter).

h.    Yogen K. Dalal, Use of Multiple Networks in the Xerox Network System,
Computer Magazine, Vol. 15, Issue 10, pp. 82-92, Oct. 1982 ("Dalal", hereafter).

6.    The request indicates that Requester considers that claims 1-23 of the '205 patent are

unpatentable over Zoline .

It is agreed that the consideration of Zoline raises a substantial new question of

patentability to claims 1-23. As pointed out on pages 15-16, 25-27, 32-49 and Exhibit CC-A of

the request, Zoline teaches a communication network to connect two distinct types of networks

(IBM's SNA network and Xerox's XNS network, Zoline, page 189, Col, 1-2), wherein network

Application/Control Number: 90/008,634                                    Page 4
Art Unit: 3992

independence is maintained so that the SNA network uses the NSA protocol suite and only

recognizes SNA address while the XNS network uses the XNS protocol suite and only

recognizes XNS addresses (Zoline, page 189, Col. 1), using the fixed incremental SNA routing

protocol from the SNA protocol suite for SNA packets (Zoline, page 189, Col. 1), using the fixed

incremental SNA routing protocol from the SNA protocol suite for routing XNS packets when

the XNS packets are encapsulated within an SNA packet in order for the XNS packet to traverse

an SNA network, the gateway is able to read both the SNA addresses and XNS addresses

encapsulated within an SNA packet so that gateway is able to use the SNA fixed incremental

routing protocol to route both SNA packets and XNS packets encapsulated within an SNA

packet without converting the address information in either type of packet (Zoline, page 196,

Col. 1). There is a substantial likelihood that a reasonable examiner would consider these

teachings important in deciding whether or not the claims are patentable. However, the

prosecution history of the base application, U.S. Serial No. 07/577,437 does not indicate that

Zoline was included for consideration by the examiner in charge of the base application.

Accordingly, Zoline raises a substantial new question of patentability as to claims 1-23 which

question has not been decided in the previous examination of the '205 patent.


7.      The request further indicates that Requester considers that claims 1-3, 5-8, 12, 16, 18, and

20-23 of the '205 patent are unpatentable over Zoline and Zoline Thesis.

        It is agreed that the consideration of the combination of Zoline and Zoline Thesis raises a

substantial new question of patentability to claims 1-3, 5-8, 12, 16, 18, and 20-23. As pointed

out on pages 15-16, 25-27, 32-45 and Exhibit CC-A of the request, Zoline teaches a

communication network to connect two distinct types of networks (IBM's SNA network and

Xerox's XNS network, Zoline, page 189, Col, 1-2) as discussed in paragraph 6 above.

Furthermore, as also pointed out on pages 15-16, 25-27, 32-45 and Exhibit CC-A of the request,

Zoline Thesis teaches no packet header translation is required when XNS packets encapsulated

within an SNA packet are traversing a SNA network (Zoline Thesis, page 77). There is a

substantial likelihood that a reasonable examiner would consider these teachings important in

deciding whether or not the claims are patentable. However, the prosecution history of the base

application, U.S. Serial No. 07/577,437 does not indicate that the combination of Zoline and

Zoline Thesis was included for consideration by the examiner in charge of the base application.

Accordingly, the combination of Zoline and Zoline Thesis raises a substantial new question of

patentability as to claims 1-3, 5-8, 12, 16, 18, and 20-23 which question has not been decided in

the previous examination of the '205 patent.


8.      The request further indicates that Requester considers that claims 5-8, 12, 16, 18 and 20-

23 of the '205 patent are unpatentable over CAMPUSNET.

        It is agreed that the consideration of CAMPUSNET raises a substantial new question of

patentability to claims 5-8, 12, 16, 18 and 20-23. As pointed out on pages 16, 27, 49-57and

Exhibit CC-B of the request, CAMPUSNET teaches a communication network with Host

devices capable of only handling packets using a single LAN protocol and gateways devices

capable of handling packets for multiple LAN protocols (Figure 3, and also on page 169, Col. 1),

wherein Host 1 is capable of only communication with LAN A's protocol suite and Gateway 1

(G1) is capable of communication using either LAN A or LAN B's protocol suite, and each LAN

Application/Control Number: 90/008,634                                    Page 6
Art Unit: 3992

can have a different protocol suite such as ISO, ANSI, NBS, and ECMA protocol standards

(page 175, col. 2); the gateways are capable of determining whether to encapsulate or

decapsulate a packet to transmit it (page 170, Col. 1), and the communication network is divided

into individual LAN's and the Gateway-Network, and the hosts in each LAN all use the same

protocol. There is a substantial likelihood that a reasonable examiner would consider these

teachings important in deciding whether or not the claims are patentable. However, the

prosecution history of the base application, U.S. Serial No. 07/577,437 does not indicate that

CAMPUSNET was included for consideration by the examiner in charge of the base application.

Accordingly, CAMPUSNET raises a substantial new question of patentability as to claims 5-8,

12, 16, 18 and 20-23 which question has not been decided in the previous examination of the

'205 patent.


9.      The request further indicates that Requester considers that claims 21-23 of the '205

patent are unpatentable over PUP.

        It is agreed that the consideration of PUP raises a substantial new question of

patentability to claims 21-23. As pointed out on pages 17-18, 27-28, 57-60 and Exhibit CC-C of

the request, PUP teaches an internetworking system based on encapsulating gateway devices

between networks using different protocols (page 612, Col. 1), wherein the devices within a

particular network all use the same network driver and thus recognize and forward packets

conforming to the network protocol that corresponds with that driver (616, Col. 2), wherein

multiple networks with different protocols can be interconnected via multiprotocol gateways

(616, Col. 2), wherein each network protocol is distinct and uses different addressing

conversions (616, Col. 2), and wherein routing information is maintained through an arbitrary

"level 2" routing protocol based on the exchanged of Pub packets between devices to keep

network status and topology information uniform and up-to-date (614, col. 1, and 619, col. 1).

There is a substantial likelihood that a reasonable examiner would consider these teachings

important in deciding whether or not the claims are patentable.  However, the prosecution history

of the base application, U.S. Serial No. 07/577,437 does not indicate that PUP was included for

consideration by the examiner in charge of the base application.  Accordingly, PUP raises a

substantial new question of patentability as to claims 21-23 which question has not been decided

in the previous examination of the '205 patent.


10.      The request further indicates that Requester considers that claims 5-8, 12, 16, 18 and 20

of the '205 patent are unpatentable over PUP and Zoline.

         It is agreed that the consideration of the combination of PUP and Zoline raises a

substantial new question of patentability to claims 5-8, 12, 16, 18, and 20.  As pointed out on

pages 28, 61-71 and Exhibit CC-C of the request, PUP teaches multiprotocol gateways connect

single-protocol networks, which include single-protocol host (612, Col. 2, and Figure 4), devices

within a particular network all use the same network driver and thus recognize and forward

packets conforming to the network protocol that corresponds with that driver (616, Col. 2).

Zoline teaches multiple-routes that can be taken through the interconnected networks such as

SNA-SNA, SNA-XNS, or SNZ-XNS-SNA and vice versa (Zoline, 190, col. 1-2), however, only

the SNA-XNS-SNA and XNS-SNA-XNS routes use encapsulation.  There is a substantial

likelihood that a reasonable examiner would consider these teachings important in deciding

Application/Control Number: 90/008,634                                    Page 8
Art Unit: 3992

whether or not the claims are patentable. However, the prosecution history of the base

application, U.S. Serial No. 07/577,437 does not indicate that the combination of PUP and

Zoline was included for consideration by the examiner in charge of the base application.

Accordingly, the combination of PUP and Zoline raises a substantial new question of

patentability as to claims 5-8, 12, 16, 18, and 20 which question has not been decided in the

previous examination of the '205 patent.


11.     The request further indicates that Requester considers that claims 1-3 of the '205 patent

are unpatentable over Olson.

        It is agreed that the consideration of Olson raises a substantial new question of

patentability to claims 1-3. As pointed out on pages 18-19, 28-29, 71-73 and Exhibit CC-D of

the request, Olson teaches a method to calculate routes through a communication network (Col.

2:22-25), wherein the communication network uses two distinct protocol packet, a fixed routing

protocol packet and an alternate routing protocol packet (col. 3:24-46, col. 13:1-29), wherein a

number of routing algorithms can be used such as always routing packets based on the fixed

routing protocol suite (Col. 4:6-34), wherein routing an alternative routing protocol packet to its

destination by using the fixed routing protocol without alternating the alternative routing

protocol packet (Col. 4:6-34). There is a substantial likelihood that a reasonable examiner would

consider these teachings important in deciding whether or not the claims are patentable.

However, the prosecution history of the base application, U.S. Serial No. 07/577,437 does not

indicate that Olson was included for consideration by the examiner in charge of the base

application. Accordingly, Olson raises a substantial new question of patentability as to claims 1-3 which question has not been decided in the previous examination of the '205 patent.

12.    The request further indicates that Requester considers that claims 1-3 of the '205 patent are unpatentable over Dixon.

It is agreed that the consideration of Dixon raises a substantial new question of patentability to claims 1-3. As pointed out on pages 19-20, 29, 73-76 and Exhibit CC-E of the request, Dixon teaches using source routing with bridges to route packets through a network to a destination address (Dixon, page 25, col. 2), wherein the network includes multi-protocol bridges with end stations using different protocol suites attached (page 25, col. 2, and also see Figure 1), wherein in Figure 1, Bridge 2 must route packets from station X which use protocol suite A as well as packets from station Y which uses protocol suite B, using the source routing protocol algorithm to determine routes regardless of which protocol suite the destination address conforms too (page 25, Col. 2), wherein the route chosen is determined by the destination address, but the destination address does not need to be converted into a different format because intermediate bridges do not need to understand the destination address since they only look at the routing information and not the destination address itself (page 25, Col. 2). There is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether or not the claims are patentable. However, the prosecution history of the base application, U.S. Serial No. 07/577,437 does not indicate that Dixon was included for consideration by the examiner in charge of the base application. Accordingly, Dixon raises a

Application/Control Number: 90/008,634                                    Page 10
Art Unit: 3992

substantial new question of patentability as to claims 1-3 which question has not been decided in

the previous examination of the '205 patent.

13.     The request further indicates that Requester considers that claims 1-2, 5-8, 12 and 20 of

the '205 patent are unpatentable over Shoch.

        It is agreed that the consideration of Shoch raises a substantial new question of

patentability to claims 1-2, 5-8, 12 and 20.  As pointed out on pages 20, 29, 76-83 and Exhibit

CC-F of the request, Shoch teaches a communication network to connect various types of

networks (page 287, Col. 1), two different destination address comprised of addresses from two

protocol suites such as the Xerox network and Arpa network protocol suites (page 287, col. 1),

routing packet through the best possible path regardless of what address convention the packet

uses (page 296, col. 1 to page 297, col. 2), and the packets are encapsulated so that no conversion

of the address of packets is required (page 296, col. 1).  There is a substantial likelihood that a

reasonable examiner would consider these teachings important in deciding whether or not the

claims are patentable.  However, the prosecution history of the base application, U.S. Serial No.

07/577,437 does not indicate that Shoch was included for consideration by the examiner in

charge of the base application.  Accordingly, Shoch raises a substantial new question of

patentability as to claims 1-2, 5-8, 12 and 20 which question has not been decided in the previous

examination of the '205 patent.

14.     The request further indicates that Requester considers that claims 3, 16, 18 and 21-23 of

the '205 patent are unpatentable over Shoch and PUP.

It is agreed that the consideration of the combination of Shoch and PUP raises a

substantial new question of patentability to claims 3, 16, 18 and 21-23. As pointed out on pages

30, 84-88 and Exhibit CC-F of the request, Shoch teaches a communication network to connect

various types of networks as discussed in paragraph 13 above. Furthermore, as discussed on

pages 84-88 and Exhibit CC-F of the request, PUP teaches routing and link state information is

exchanged between neighboring gateways (Pub, page 618 col. 2 to page 619, col. 1). There is a

substantial likelihood that a reasonable examiner would consider these teachings important in

deciding whether or not the claims are patentable. However, the prosecution history of the base

application, U.S. Serial No. 07/577,437 does not indicate that the combination of Shoch and PUP

was included for consideration by the examiner in charge of the base application. Accordingly,

the combination of Shoch and PUP raises a substantial new question of patentability as to claims

3, 6, 18 and 21-23 which question has not been decided in the previous examination of the '205

patent.


15.    The request further indicates that Requester considers that claims 1-3 of the '205 patent

are unpatentable over Dalal.

It is agreed that the consideration of Dalal raises a substantial new question of

patentability to claims 1-3. As pointed out on pages 21, 30, 89-92 and Exhibit CC-G of the

request, Dalal teaches a Network System network interconnecting system (Figure 3) including

connecting multiple networks together within the Xerox Network System (XNS), see page 82,

Col. 1-2, wherein packets are capable of being routed through any of the connected networks

(page 83, col. 2), each communication network within the XNS may have a different form of

internal addressing (page 86, col. 2), all packets are routed the same irregardless of the

addressing convention the packet uses (page 87, col. 2 to page 88, col. 1), and the packets are

encapsulated so that no conversion of the address of packets is required (page 86, col. 2). There

is a substantial likelihood that a reasonable examiner would consider these teachings important

in deciding whether or not the claims are patentable. However, the prosecution history of the

base application, U.S. Serial No. 07/577,437 does not indicate that Dalal was included for

consideration by the examiner in charge of the base application. Accordingly, Dalal raises a

substantial new question of patentability as to claims 1-3 which question has not been decided in

the previous examination of the '205 patent.


16.    The request further indicates that Requester considers that claims 5-8, 12, 16, 18 and 20-

23 of the '205 patent are unpatentable over Dalal and PUP.

It is agreed that the consideration of the combination of Dalal and PUP raises a

substantial new question of patentability to claims 5-8, 12, 16, 18 and 20-23. As pointed out on

pages 92-106 and Exhibit CC-G of the request, Dalal teaches connecting tow networks (networks

A and B, Figure 3), routers on each network are only able to forward data conforming to the

protocol suite of the particular network they are attached to while internetwork routers are

between networks and can forward data conforming to the protocol suite of all attached networks

(page 83, col. 2), and different networks are organized in areas depending so that the same area

will use the same protocol suite. Also, as pointed out on pages 92-106 and Exhibit CC-G of the

request, Pup teaches multiple routes that can be taken through the interconnected networks and it

will choose the one with the shortest hop count (Pup, page 618, col. 2 to page 619, col. 1), the

Application/Control Number: 90/008,634                                Page 13
Art Unit: 3992

gateway which encapsulates the protocol and which protocol it encapsulates the packet with

depends on the route determined. There is a substantial likelihood that a reasonable examiner

would consider these teachings important in deciding whether or not the claims are patentable.

However, the prosecution history of the base application, U.S. Serial No. 07/577,437 does not

indicate that the combination of Dalal and PUP was included for consideration by the examiner

in charge of the base application. Accordingly, the combination of Dalal and PUP raises a

substantial new question of patentability as to claims 5-8, 12, 16, 18 and 20-23 which question

has not been decided in the previous examination of the '205 patent.


17.     Since the Requester did not request reexamination of Claim 24 and did not assert the

existence of a substantial new question of patentability (SNQ) for such claims, these claims will

not be reexamined, see MPEP 2243, which states:

> The Office's determination in both the order for reexamination and the examination stage
> of the reexamination will generally be limited solely to a review of the claim(s) for which
> reexamination was requested. If the requester was interested in having all of the claims
> reexamined, requester had the opportunity to include them in its request for
> reexamination. However, if the requester chose not to do so, those claim(s) for which
> reexamination was not requested will generally not be reexamined by the Office


18.     **All** correspondence relating to this ex parte reexamination proceeding should be directed:

By Mail to:         Mail Stop *Ex Parte* Reexam
                    Central Reexamination Unit
                    Commissioner for Patents
                    United States Patent & Trademark Office
                    P.O. Box 1450
                    Alexandria, VA 22313-1450

By FAX to:          (571) 273-9900
                    Central Reexamination Unit

Application/Control Number: 90/008,634                                    Page 14

Art Unit: 3992

By hand:          Customer Service Window
                  Randolph Building
                  401 Dulany Street
                  Alexandria, VA 22314

19.      Any inquiry concerning this communication or earlier communications from the

Examiner, or as to the status of this proceeding, should be directed to the Central Reexamination

Unit at telephone number (571) 272-7705.


        Conferee #1                  Conferee #2


                                                        Long Nguyen
                                                        Primary Examiner
                                                        Art Unit: 3992

## NOTICE RE PATENT OWNER'S CORRESPONDENCE ADDRESS

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an *ex parte* reexamination or an *inter partes* reexamination is designated as the correspondence address of the patent.

> *Revisions and Technical Corrections Affecting Requirements for Ex Parte and Inter Partes Reexamination*, 72 FR 18892 (April 16, 2007)(Final Rule)

**The correspondence address for any pending reexamination proceeding not having the same correspondence address as that of the patent is, by way of this revision to 37 CFR 1.33(c), automatically changed to that of the patent file as of the effective date.**

This change is effective for any reexamination proceeding which is pending before the Office as of May 16, 2007, including the present reexamination proceeding, and to any reexamination proceeding which is filed after that date.

Parties are to take this change into account when filing papers, and direct communications accordingly.

In the event the patent owner's correspondence address listed in the papers (record) for the present proceeding is different from the correspondence address of the patent, it is strongly encouraged that the patent owner affirmatively file a Notification of Change of Correspondence Address in the reexamination proceeding and/or the patent (depending on which address patent owner desires), to conform the address of the proceeding with that of the patent and to clarify the record as to which address should be used for correspondence.

Telephone Numbers for reexamination inquiries:

Reexamination and Amendment Practice        (571) 272-7703
Central Reexam Unit (CRU)                   (571) 272-7705
Reexamination Facsimile Transmission No.    (571) 273-9900

C:\kiva\kenreex\ RRR-new-PO-address_by-rule.doc
May 1, 2007

# **<u>EXHIBIT F</u>**



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.go

*Ex Parte* Reexamination Filing Data  - September 30, 2006

1.   Total requests filed since start of ex parte reexam on 07/01/81 .....................................8252[3]

      a.  By patent owner                                    3348      41%
      b.  By other member of public                        4739      57%
      c.  By order of Commissioner                          165       2%

2.   Number of filings by discipline

      a.  Chemical Operation                               2538      31%
      b.  Electrical Operation                             2683      32%
      c.  Mechanical Operation                             3031      37%

3.   Annual Ex Parte Reexam Filings

| Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. |
|---|---|---|---|---|---|---|---|
| 1981 | 78 (3 mos.) | 1989 | 243 | 1997 | 376 | 2005 | 524 |
| 1982 | 187 | 1990 | 297 | 1998 | 350 | 2006 | 511 |
| 1983 | 186 | 1991 | 307 | 1999 | 385 | | |
| 1984 | 189 | 1992 | 392 | 2000 | 318 | | |
| 1985 | 230 | 1993 | 359 | 2001 | 296 | | |
| 1986 | 232 | 1994 | 379 | 2002 | 272 | | |
| 1987 | 240 | 1995 | 392 | 2003 | 392 | | |
| 1988 | 268 | 1996 | 418 | 2004 | 441 | | |

4.   Number known to be in litigation.....................................................1934      23%

5.   Determinations on requests ...............................................................................7963

    a. No. granted.................................................................................7268....................91%

        (1)   By examiner                                   7157
        (2)   By Director (on petition)                     111

    b. No. denied .................................................................................695....................9%

---

[3] Of the requests received in FY 2006, 35 requests have not yet been accorded a filing date, and preprocessing of one request was terminated, for failure to comply with the requirements of 37 CFR 1.510. See Clarification of Filing Date Requirements for *Ex Parte* and *Inter Partes* Reexamination Proceedings, Final Rule, 71 Fed. Reg. 44219 (August 4, 2006).

|  |  |  |
|---|---|---|
| (1) By examiner | 660 | |
| (2) Order vacated | 35 | |

6.  Total examiner denials (includes denials reversed by Director) ........................................ 771

| | | |
|---|---|---|
| a. Patent owner requester | 433 | 56% |
| b. Third party requester | 338 | 44% |

7.  Overall reexamination pendency  (Filing date to certificate issue date)

| | | |
|---|---|---|
| a. Average pendency | 22.9 | (mos.) |
| b. Median pendency | 17.8 | (mos.) |

8. Reexam certificate claim analysis:

| Requester | Owner Requester | 3rd Party Initiated | Comm'r Overall | |
|---|---|---|---|---|
| a. All claims confirmed | 23% | 29% | 13% | 26% |
| b. All claims cancelled | 7% | 12% | 20% | 10% |
| c. Claims changes | 70% | 59% | 67% | 64% |

9.  Total ex parte reexamination certificates issued (1981 - present)................................... 5537

| | | |
|---|---|---|
| a. Certificates with all claims confirmed | 1448 | 26% |
| b. Certificates with all claims canceled | 565 | 10% |
| c. Certificates with claims changes | 3524 | 64% |

10.  Reexam claim analysis - requester is patent owner or 3rd party; or Comm'r initiated.

a. Certificates _ PATENT OWNER REQUESTER....................................................... 2403

| | | |
|---|---|---|
| (1)  All claims confirmed | 560 | 23% |
| (2)  All claims canceled | 176 | 7% |
| (3)  Claim changes | 1667 | 70% |

b. Certificates _ 3rd PARTY REQUESTER................................................................. 2992

| | | |
|---|---|---|
| (1)  All claims confirmed | 870 | 29% |
| (2)  All claims canceled | 360 | 12% |
| (3)  Claim changes | 1762 | 59% |

c. Certificates _ COMM'R INITIATED REEXAM.......................................................... 142

| | | |
|---|---|---|
| (1)  All claims confirmed | 18 | 13% |
| (2)  All claims canceled | 29 | 20% |
| (3)  Claim changes | 95 | 67% |