**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

_____

ENTERASYS NETWORKS, INC.,          )          Civil Action No: 05-CV-11298 (DPW)
                                   )
            Plaintiff,             )
                                   )
v.                                 )
                                   )
FOUNDRY NETWORKS, INC. AND         )
EXTREME NETWORKS, INC.,            )
                                   )
            Defendants.            )
_____)

## SUPPLEMENTAL DECLARATION OF REBECCA A. MACDOWELL IN SUPPORT OF ENTERASYS NETWORKS, INC.'S MOTION FOR PROTECTIVE ORDER

**I, REBECCA A. MACDOWELL**, declare as follows:

1.      I am an attorney with the law firm of Robins, Kaplan, Miller & Ciresi L.L.P., counsel of record for the named Plaintiff Enterasys Networks, Inc. ("Enterasys") in the above-referenced action. I submit this Declaration in support of Enterasys' Motion For Protective Order. I have personal knowledge of the facts stated herein and, if sworn as a witness, I could and would testify competently thereto.

2.      Attached hereto as Exhibit 1 is a true and correct copy of a transcribed voice-mail message from Brian H. VanderZanden to Alan E. McKenna dated August 13, 2007.

3.      Attached hereto as Exhibit 2 is a true and correct copy of an email exchange between Alan E. McKenna and Brian H. VanderZanden dated August 16, 2007 regarding the occurrence of the deposition of Mr. Newman.

4.    Attached hereto as Exhibit 3 is a true and correct copy of an Alan E. McKenna email to Brian H. VanderZanden dated August 16, 2007 regarding the attendance of Enterasys' counsel at the deposition of Mr. Newman.

5.    Attached hereto as Exhibit 4 is a true and correct copy of excerpts from the deposition of Peter Newman which was taken in this action on August 21, 2007.

6.    Attached hereto as Exhibit 5 is a true and correct copy of a Brian H. VanderZanden letter to Alan E. McKenna dated August 7, 2007.


I declare under penalty of perjury that the foregoing is true and correct and that this Declaration is executed on this 29th day of August, 2007 at Boston, Massachusetts.

/s/ Rebecca A. MacDowell
REBECCA A. MACDOWELL

35039112

## CERTIFICATE OF SERVICE

I, Marc N. Henschke, hereby certify that on August 29, 2007, I caused a true and correct copy of the attached *Supplemental Declaration of Rebecca A. MacDowell In Support of Plaintiff Enterasys Networks, Inc.'s Motion For Protective Order* to be served electronically pursuant to the Court's CM/ECF electronic filing system upon Defendants' respective counsel of record as indicated by asterisks below:

**Counsel for Defendant Extreme Networks, Inc.:**
William L. Anthony, Jr., Esq.*
I. Neel Chatterjee, Esq.*
Sanjeet K. Dutta, Esq.*
Matthew H. Poppe, Esq.*
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA  94025

Steven M. Bauer, Esq.*
Jeremy P. Oczek, Esq.*
John W. Pint, Esq.*
Proskauer Rose LLP
One International Place
Boston, MA 02110-2600

**Counsel for Defendant Extreme Networks, Inc.:**
Terrence P. McMahon, Esq.*
Vera M. Elson, Esq.*
McDermott, Will & Emery LLP
3150 Porter Drive
Palo Alto, CA  94303-1212

Emily E. Smith-Lee, Esq.*
Peter L. Resnik, Esq.*
McDermott, Will & Emery LLP
28 State Street
Boston, MA  02109-1775

Christopher D. Bright, Esq.
McDermott, Will & Emery LLP
18191 Von Karman Avenue, Suite 400
Irvine, CA  92612-7107

Dated: August 29, 2007          /s/ Marc N. Henschke
                                Marc N. Henschke

# EXHIBIT 1

**Voice-mail message from Brian VanderZanden on August 13, 2007**

Hi, Alan,

This is Brian VanderZanden from Orrick Herrington and Sutcliffe getting back to you regarding the deposition of Floyd Ross scheduled for the day after tomorrow. In light of Enterasys' motion for a protective order, we have decided to take Mr. Ross' deposition off calendar so it will not be proceeding this coming Wednesday, and we would appreciate your giving us a call so we can try to work to reschedule that deposition. However, Mr. Newman's deposition scheduled for August 21st at our offices out here will remain on calendar.

If you have any other question, please give me a call.

# EXHIBIT 2

## McKenna, Alan E.

| | |
|---|---|
| **From:** | VanderZanden, Brian [bvanderzanden@orrick.com] |
| **Sent:** | Thursday, August 16, 2007 4:56 PM |
| **To:** | McKenna, Alan E. |
| **Subject:** | RE: Enterasys v. Foundry |

Alan,

Foundry will proceed with Mr. Newman's deposition as noticed, at our offices in Menlo Park, CA, on Tuesday, August 21st.  Please let me know if Enterasys will attend the deposition.

Regards,
Brian

---

**From:** McKenna, Alan E. [mailto:AEMcKenna@rkmc.com]
**Sent:** Thursday, August 16, 2007 10:48 AM
**To:** VanderZanden, Brian
**Subject:** Enterasys v. Foundry

>>>> Please read the confidentiality statement below <<<<
Brian:

I wanted to follow-up with you to see if Foundry was still intending to go forward with the deposition of Mr. Newman next Tuesday (August 21), despite the fact Enterasys' Motion for Protective Order is pending.

Please let mw know as soon as possible if Foundry is still planning to proceed with the deposition next Tuesday.

Thank you,
Alan

Alan E. McKenna, Esq.
Robins, Kaplan, Miller & Ciresi L.L.P.
Prudential Tower
800 Boylston Street, 25th Floor
Boston, MA 02199
aemckenna@rkmc.com
Direct: 617.859.2719
Main: 617.267.2300
Fax: 617.267.8288
www.rkmc.com

---

Information contained in this e-mail transmission may be privileged, confidential and covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521.

If you are not the intended recipient, do not read, distribute, or reproduce this transmission.

If you have received this e-mail transmission in error, please
notify us immediately of the error by return email and please
delete the message from your system.

Pursuant to requirements related to practice before the U. S. Internal
Revenue Service, any tax advice contained in this
communication (including any attachments) is not intended
to be used, and cannot be used, for purposes of (i) avoiding
penalties imposed under the U. S. Internal Revenue Code
or (ii) promoting, marketing or recommending to another
person any tax-related matter.

Thank you in advance for your cooperation.

Robins, Kaplan, Miller & Ciresi L.L.P.
http://www.rkmc.com

_____

====================================================================

IRS Circular 230 disclosure:
To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice
contained in this communication, unless expressly stated otherwise, was not intended or written to be
used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue
Code or (ii) promoting, marketing or recommending to another party any tax-related matter(s) addressed
herein.

====================================================================

NOTICE TO RECIPIENT: THIS E-MAIL IS MEANT FOR ONLY THE INTENDED RECIPIENT OF
THE TRANSMISSION, AND MAY BE A COMMUNICATION PRIVILEGED BY LAW. IF YOU
RECEIVED THIS E-MAIL IN ERROR, ANY REVIEW, USE, DISSEMINATION, DISTRIBUTION,
OR COPYING OF THIS E-MAIL IS STRICTLY PROHIBITED. PLEASE NOTIFY US
IMMEDIATELY OF THE ERROR BY RETURN E-MAIL AND PLEASE DELETE THIS MESSAGE
FROM YOUR SYSTEM. THANK YOU IN ADVANCE FOR YOUR COOPERATION.
For more information about Orrick, please visit http://www.orrick.com/

# EXHIBIT 3

**From:**    McKenna, Alan E.
**Sent:**    Thursday, August 16, 2007 6:25 PM
**To:**    'VanderZanden, Brian'
**Subject:** RE: Enterasys v. Foundry

Brian,

If Foundry insists on going forward with the deposition on Tuesday, then someone from our office will appear on behalf of Enterasys. However, please note that this person will not be prepared to question Mr. Newman substantively. As we have previously informed you, no one from our team with the requisite technical knowledge is available on the date Foundry unilaterally chose for this deposition. Accordingly, we will appear to assert objections and preserve the record. As you know, Enterasys intends to notice Mr. Newman's deposition for a future date that is convenient for him and all parties, at which deposition Enterasys will be adequately prepared to ask substantive questions of Mr. Newman.

If, for some reason, Foundry alters its position and agrees to reschedule Mr. Newman's deposition for a date that is mutually convenient for all parties, please contact me as soon as possible.

Thank you,
Alan

Alan E. McKenna, Esq.
Robins, Kaplan, Miller & Ciresi L.L.P.
Prudential Tower
800 Boylston Street, 25th Floor
Boston, MA 02199
aemckenna@rkmc.com
Direct: 617.859.2719
Main: 617.267.2300
Fax: 617.267.8288
www.rkmc.com

**From:** VanderZanden, Brian [mailto:bvanderzanden@orrick.com]
**Sent:** Thursday, August 16, 2007 4:56 PM
**To:** McKenna, Alan E.
**Subject:** RE: Enterasys v. Foundry

Alan,

Foundry will proceed with Mr. Newman's deposition as noticed, at our offices in Menlo Park, CA, on Tuesday, August 21st. Please let me know if Enterasys will attend the deposition.

Regards,
Brian

**From:** McKenna, Alan E. [mailto:AEMcKenna@rkmc.com]
**Sent:** Thursday, August 16, 2007 10:48 AM
**To:** VanderZanden, Brian
**Subject:** Enterasys v. Foundry

>>>> Please read the confidentiality statement below <<<<

8/29/2007

Brian:

I wanted to follow-up with you to see if Foundry was still intending to go forward with the deposition of Mr. Newman next Tuesday (August 21), despite the fact Enterasys' Motion for Protective Order is pending.

Please let mw know as soon as possible if Foundry is still planning to proceed with the deposition next Tuesday.

Thank you,
Alan

Alan E. McKenna, Esq.
Robins, Kaplan, Miller & Ciresi L.L.P.
Prudential Tower
800 Boylston Street, 25th Floor
Boston, MA 02199
aemckenna@rkmc.com
Direct: 617.859.2719
Main: 617.267.2300
Fax: 617.267.8288
www.rkmc.com

Information contained in this e-mail transmission may be privileged, confidential and covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521.

If you are not the intended recipient, do not read, distribute, or reproduce this transmission.

If you have received this e-mail transmission in error, please notify us immediately of the error by return email and please delete the message from your system.

Pursuant to requirements related to practice before the U. S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U. S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

Thank you in advance for your cooperation.

Robins, Kaplan, Miller & Ciresi L.L.P.
http://www.rkmc.com

8/29/2007

========================================================

IRS Circular 230 disclosure:
To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication, unless expressly stated otherwise, was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein.

========================================================

NOTICE TO RECIPIENT: THIS E-MAIL IS MEANT FOR ONLY THE INTENDED RECIPIENT OF THE TRANSMISSION, AND MAY BE A COMMUNICATION PRIVILEGED BY LAW. IF YOU RECEIVED THIS E-MAIL IN ERROR, ANY REVIEW, USE, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS E-MAIL IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY OF THE ERROR BY RETURN E-MAIL AND PLEASE DELETE THIS MESSAGE FROM YOUR SYSTEM. THANK YOU IN ADVANCE FOR YOUR COOPERATION.
For more information about Orrick, please visit http://www.orrick.com/

# EXHIBIT 4

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

ENTERASYS NETWORKS, INC.,           )
                                     )
          Plaintiff,                 )
                                     )
     vs.                             ) No.   05-CV-11298(DPW)
                                     )
FOUNDRY NETWORKS, INC., and          )
EXTREME NETWORKS, INC.,              )
                                     )
          Defendants.                )
_____)


VIDEOTAPED DEPOSITION OF PETER NEWMAN, Ph.D.
Menlo Park, California
Tuesday, August 21, 2007


Reported by:
TRACY L. PERRY
CSR No. 9577
JOB No. 75644

```
 1    swear in the witness.

 2

 3                   PETER NEWMAN, Ph.D.,

 4    having been first duly sworn, was examined and testified

 5    as follows:

 6

 7                   EXAMINATION

 8    BY MR. ANTHONY:

 9        Q    Good morning.

10        A    'Morning.

11        Q    Could you state your full name and home address,

12    please.

13        A    My name is Peter Newman.  My address,

14    4670 Hedgewick Avenue, Fremont.

15        MR. McKENNA:  Mr. Anthony, if I may, before you get

16    too far down, I just want to note that Enterasys objects

17    to this deposition, and as you and Mr. Vanderzanden are

18    aware, Enterasys filed a motion for protective order on

19    August 10th with the Court relating to the scheduling of

20    this deposition, as Enterasys indicated it was

21    unavailable and remains unprepared to question Mr. Newman

22    substantively about the technical issues that we assume

23    you are going to cover today.

24            So I just want to note for the record

25    Enterasys's objection and the pending motion and note
```

1   that I am here to ask potentially some foundational

2   questions but nothing substantive, and Enterasys intends

3   to notice Mr. Newman's deposition on a future date that

4   is convenient for all parties.

5       MR. ANTHONY:  Your objection is noted, but I would

6   suggest that you ask any and all questions you may have

7   for this witness.  And we, of course, oppose your motion

8   and will be filing our opposition shortly.

9           Or have we already?

10      MR. VANDERZANDEN:  Friday.

11      MR. ANTHONY:  Friday.

12          So I would suggest out of due caution you ask

13  everything you want to know of this witness.

14  BY MR. ANTHONY:

15      Q   Okay.  Dr. Newman, can you outline -- well,

16  strike that.

17          Dr. Newman, would you tell us whether you've

18  been deposed before?

19      A   No, I haven't.  This is my first deposition.

20      Q   And because this is your first deposition, I

21  will be asking you questions and then your job here is to

22  answer the questions as fairly, fully, and truthfully as

23  you are able to.

24          You are under oath, so this is just the same as

25  if we were in the court testifying before the jury in

Page 66

```
 1        Q    Was the paper actually given in February 1993?

 2        A    I believe it was.

 3        Q    Let me take --

 4        A    Yes.  Yes, I remember it.  It was.

 5        MR. ANTHONY:  Let me take a one-minute conference

 6   with my co-counsel, and then I think that will wrap it up

 7   for us.

 8        MR. McKENNA:  Sure.

 9        THE VIDEOGRAPHER:  We are now going off the video

10   record.  The time is 12:20 p.m.

11             (□Recess taken:  12:20 until 12:21 p.m.)

12        THE VIDEOGRAPHER:  We are now back on the video

13   record.  The time is 12:21 p.m.

14        MR. ANTHONY:  That completes our examination.  Thank

15   you, Dr. Newman.

16

17                         EXAMINATION

18        MR. McKENNA:  I do have just a few brief questions

19   for you, Dr. Newman.  And just so the record's clear, I

20   did want to mark as the next exhibit, I believe 75, a

21   copy of Enterasys Network's motion for protective order

22   that is currently pending with the Court.

23        MR. ANTHONY:  Are we using different exhibit

24   numbers, the plaintiff and the defendant?

25        MR. VANDERZANDEN:  No, we're continuing.
```

Page 67

1          MR. ANTHONY:  Oh, are we?

2          MR. McKENNA:  I believe so.

3          (Deposition Exhibit 75 was marked.)

4    BY MR. McKENNA:

5      Q    And you need not even bother looking at it,

6    Dr. Newman.  It's just more a legal belts and suspenders,

7    if you will.

8          I did have a few questions for you.  First, when

9    were you initially contacted about coming here today to

10   give a deposition?

11     A    I have the subpoena.  That has a date on it, I

12   think.

13     Q    Is the day you received the subpoena the first

14   time you were contacted about appearing here today?

15     A    About appearing here today?  I think so.

16     Q    When were you first contacted by anyone at the

17   law firm Orrick, Herrington & Sutcliffe about this

18   ongoing litigation with Foundry and Enterasys?

19     A    Sometime earlier than the subpoena.  I can't

20   remember a specific date.  I can find out.

21     Q    How were you contacted initially?

22     A    I think the request came by phone or by e-mail.

23     Q    Do you know who it came from?

24     A    I know my first contact was Brian Vanderzan --

25   Vanderzanden.

1     Q    If it was an e-mail, do you still have that

2  e-mail?

3     A    I have some of the e-mails.

4     Q    Have you continued to have e-mail correspondence

5  with Mr. Vanderzanden?

6     A    Yes, I have.

7     Q    Have you had any e-mail correspondence with

8  anyone else at Orrick, Herrington?

9     A    Not regarding this case.

10    Q    In addition to your e-mail correspondence with

11 Mr. Vanderzanden, have you had any discussions with

12 anyone at Orrick, Herrington?

13    A    No, only Mr. Vanderzanden.  I have had oral

14 discussion with Mr. Vanderzanden, yes.

15    Q    And what have you discussed with

16 Mr. Vanderzanden?

17    A    The exhibits we see before us mostly.

18    Q    And what specifically about those exhibits have

19 you discussed with him?

20    A    The fact that they establish prior art and

21 evidence of the invention expressed in the patent '702.

22    Q    Did -- strike that.

23         In addition to that, did you discuss anything

24 else with Mr. Vanderzanden?

25    A    That was the subject of our discussion.

Page 69

1    Q    And do you recall when these discussions took
2    place?
3    A    Not offhand.  I mean I can't give you specific
4    dates, no.
5    Q    And who was it in that discussion that indicated
6    that the exhibits that we've seen here today establish
7    prior art to any of the patents in the ongoing litigation
8    between Foundry and Enterasys?
9    A    I believe that they did, and I submitted them to
10   Mr. Vanderzanden and we discussed them.
11   Q    Did Mr. Vanderzanden request that you provide
12   him with certain documents?
13   A    Mr. Vanderzanden requested that I look for
14   documents that substantiated the fact that -- that could
15   give evidence regarding the dates at which we had come up
16   with our invention.
17   Q    Did you comply with that request?
18   A    I did.
19   Q    And what did you do?
20   A    Searched the attic.
21   Q    Searched the attic?
22   A    Yes.
23   Q    Okay.  The attic at your house?
24   A    Yes.
25   Q    Okay.

Page 70

```
 1        A    And also the lower drawer of the filing cabinet
 2   where stuff gets stuffed.
 3        Q    Where is that filing cabinet?  At your office?
 4        A    It's at my home.
 5        Q    Did you provide to Mr. Vanderzanden everything
 6   that you found in response to his request?
 7        A    Only those things that appeared relevant.
 8   There's a lot of stuff in that attic and a lot of
 9   documents that didn't appear relevant.
10        Q    Did you discuss with Mr. Vanderzanden your
11   availability to appear here for a deposition?
12        A    Presumably.
13        Q    What do you mean --
14        A    I can't remember the discussion.
15        Q    Did -- at any time did he ask you for your
16   availability to appear here for a deposition?
17        A    We must certainly have discussed what days I'm
18   available, yes.
19        Q    Did you --
20        A    Yes, we must certainly have had that discussion
21   because I've had a vacation and I wanted to make sure
22   that we missed my vacation, yes.
23        Q    At any point did Mr. Vanderzanden contact you to
24   try to reschedule your deposition --
25        A    Yes.
```

1      Q    He did.  When was that?

2      A    Before I left for my vacation.  So that must

3  have been at least three weeks, possibly more.

4      Q    Okay.

5      A    About four weeks ago, something like that.

6      Q    And at that time did you provide him with

7  additional days that you were available?

8      A    Yes.

9      Q    What were those dates, do you recall?

10     A    Pretty much anytime after I came back from

11 vacation.

12     Q    And when did you come back from vacation?

13     A    Last week.

14     Q    So do you have general availability, say, over

15 the next couple of months to appear for deposition like

16 you did today?

17     MR. ANTHONY:  Overly broad.  Object.

18 BY MR. McKENNA:

19     Q    Go ahead.

20     A    The amount of time I have available for this

21 activity is limited by the fact that I'm an employee of a

22 company not involved in this litigation, and therefore I

23 have duties to that company.  I can make some time

24 available.

25     Q    Okay.  And you obviously were able to make some

1    time available to come here today, correct?

2        A    I was.

3        Q    And are you being compensated by anyone for your

4    time here today?

5        A    Not by the parties to this litigation.  I am an

6    employee of a corporation.

7        Q    Okay.

8        A    And so -- I'm a salaried employee of a

9    corporation.

10        Q    Aside from that, are you -- have you been paid

11    at all for appearing here today?

12        A    Not for appearing here today, no.

13        Q    Have you been paid at all for any of the work

14    that you've done in connection with your deposition here

15    today, either preparing or looking for documents or

16    talking with Mr. Vanderzanden?

17        A    I have not been paid.  I requested that a

18    charitable contribution be made to a charity I elected.

19        Q    When did you do that?

20        A    A month or so ago.

21        Q    Has that payment to a charity been made?

22        A    I haven't checked yet.

23        Q    What amount did you request be made -- be paid

24    to that charity?

25        A    When I was a consultant I charged $250 an hour

Page 73

1    for this kind of work.

2        Q    Okay.

3        A    And that's the rate that I used.  I forget how

4    many hours I worked on -- I think I worked four hours.

5        Q    Have you requested that a similar payment be

6    made for your time appearing here today?

7        A    I've not made that request, no.

8        Q    Do you intend to make that request?

9        A    I will not make that request for the time I

10   appear here today.

11       Q    If you could just grab Exhibit Number 70 from

12   the pile in front of you, please.

13       A    Right.  I have everything except 70.

14       Q    Let me see if I can help you.

15   MR. ANTHONY:  Which exhibit is that?

16   MR. McKENNA:  It's the Wanda August 6th, 1991

17   article.

18       THE WITNESS:  Here we are.

19   BY MR. McKENNA:

20       Q    There it is.  Again, this was a paper that was

21   only circulated internally within your company, ADAPTIVE,

22   correct?

23       A    Definitely.

24       Q    To your knowledge, was this paper ever made

25   public?

Page 74

1      A    Later, yes.  Sorry.  This paper, no.  The ideas

2    expressed in this paper later were published in various

3    papers of mine.

4      Q    Okay.

5      A    Some of the ideas.

6      Q    But this specific paper was --

7      A    This specific paper was never published.

8      Q    Thank you.

9           Also if you could grab Exhibit Number 73,

10   please.  As you discussed earlier, this relates to the

11   presentation you made in New York on July 7, 1992,

12   correct?

13     A    Correct.

14     Q    Do you see at the top right-hand corner of

15   Exhibit 73 it says, and I quote, "What I think I said,"

16   end quote."  Do you see that?

17     A    I do see that.

18     Q    Is that in your handwriting?

19     A    That is my handwriting.

20     Q    When did you make that notation on Exhibit 73?

21     A    Presumably when I filed it, and that was

22   presumably fairly shortly after producing it.

23     Q    So Exhibit 73 was your attempt to recall what

24   you had said at the meeting on July 7th, 1992, correct?

25     A    It was.

Page 75

1      Q    But it, of course, is not a transcription of

2  what actually was said at that meeting, correct?

3      A    It can't be.

4      Q    You mentioned that there were certain people

5  invited to that presentation, including some members of

6  the press.  Do you recall that?

7      A    I recall I said that.

8      Q    Aside from the members of the press, do you know

9  who else was invited to that meeting, if anyone?

10     A    I don't know.  I didn't do the inviting.  The

11 intention was to publicize the product as widely as

12 possible.

13     Q    And if you could grab Exhibit Number 74, please,

14 sir.  You mentioned that this was a paper that you

15 submitted back in August of 1992.  Do you recall that?

16     A    Yes.  Yes.

17     Q    But do I understand you that your -- you don't

18 recall whether this paper was physically distributed to

19 anyone at that conference?

20     A    At the conference, which occurred February 1993,

21 it will have been part of the proceedings.

22     Q    What do you mean by that?

23     A    The proceedings of a conference are a compendium

24 of all the papers present -- presented.  This will have

25 been one.

1      Q    And do you specifically recall that this paper

2   was made part of the compendium for the conference?

3      A    No, I don't specifically recall.

4      Q    Do you know if you have the compendium that was

5   prepared for the conference?

6      A    I probably don't.  It wasn't -- it wasn't a

7   conference that was terribly important to me.

8          There's no point producing it if it's not going

9   to be distributed, though.  I would think any -- if it

10  wasn't, I would have complained.

11     Q    And do you specifically recall that this paper

12  was, in fact, submitted to the conference?

13     A    This --

14     Q    I'm sorry.  I missed that.  Did you say yes?

15     A    Do I specifically recall?  Yes, of course it was

16  submitted.  I don't specifically recall going down to the

17  post office with it, no, but yes, I remember -- I

18  remember presenting it at the conference, and so yes, it

19  will have been submitted and it will have been submitted

20  when it says.

21     MR. McKENNA:  Okay.  I think that's all I have.

22  Bear with me for just 30 seconds.

23          That's all the questions I have.

24          We would just note again our objection that I

25  stated earlier to the deposition and indicate that we do

# EXHIBIT 5



**ORRICK**

ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 MARSH ROAD
MENLO PARK, CA 94025
*tel 650-614-7400*
*fax 650-614-7401*
WWW.ORRICK.COM

August 7, 2007

Brian H. VanderZanden
(650) 614-7625
bvanderzanden@orrick.com

*VIA E-MAIL (PDF ATTACHMENT)*

Alan E. McKenna, Esq.
Robbins, Kaplan, Miller & Ciresi LLP
800 Boylston Street, 25th Floor
Boston, MA 02199

Re:    Enterasys Networks, Inc. v. Foundry Networks, Inc., et al.

Dear Alan:

I write in response to your letter of August 6, 2007, concerning the depositions of Floyd
Ross and Peter Newman.  Enterasys has yet to provide any reasonable explanation as to why
the noticed dates are inconvenient, or as to why the depositions cannot be rescheduled
before the end of September.  Your letter implies that Enterasys' counsel will be too busy
drafting the Markman briefs to prepare for the depositions as currently scheduled, but this
does not follow.

Foundry is operating under the same briefing schedule as Enterasys.  Any alleged
inconvenience caused to Enterasys would apply equally to Foundry.  Foundry, however, is
able to draft its Markman briefs while simultaneously accommodating the witnesses'
schedules in proceeding with the depositions as noticed.

Moreover, Mr. Newman's deposition is scheduled to go forward on August 21, four days
after the parties are to exchange opening briefs.  We have offered to reschedule Mr. Ross's
deposition for August 23, six days after the opening brief.  By comparison, Enterasys has
proposed dates as early as three days after the rebuttal briefs are due.  This would appear to
undermine your contention that Enterasys cannot properly prepare for depositions that
would occur after a brief is filed.

If there are other reasons why these dates are inconvenient for Enterasys, you have not said
what they are.  When I asked your colleague Rebecca MacDowell this past Friday why these
dates were inconvenient for Enterasys, independent of the Markman briefing, she could not
provide me with an answer.  Enterasys cannot unilaterally decide that no third-party
depositions can go forward simply because the parties are drafting their Markman briefs.

OHS West:260281192.1



**ORRICK**

Alan McKenna
August 7, 2007
Page 2

Since my conversation with Ms. MacDowell, I learned that Mr. Newman has availability at the end of August and in early September. Foundry would be willing to work with Enterasys to reschedule Mr. Newman's deposition during that time. Furthermore, I would like to restate our offer that Mr. Ross's deposition be moved to August 23, provided that Enterasys reimburse Foundry for the cost in changing Mr. Ross's plane ticket.

I hope that Enterasys will reconsider its position. Please let me know immediately if Enterasys will agree to accept Foundry's proposal, otherwise the depositions will go forward on the dates as currently noticed.

Very truly yours,

Brian H. VanderZanden

cc:    Jeremy P. Oczek, Esq. (via email)
        Steven L. Walker, Esq. (via email)

OHS West:260281192.1